UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PAULINE STONEHILL**, Co-executor and Co-special administrator of the Estate of Harry S. Stonehill, Calle Guillermo Tell 14 Churriana 29140 Malaga, ESP<br><br>**Plaintiff,**<br><br>v.<br><br>**INTERNAL REVENUE SERVICE**<br>1111 Constitution Avenue, N.W.<br>Washington, D.C.  20224<br><br>**Defendant.** | Case No. 06 599 (JDB) |

**PLAINTIFF'S OPPOSITION TO THE INTERNAL REVENUE SERVICE'S MOTION FOR ENLARGEMENT OF TIME**

In addition to the initial ninety-day extension that the IRS has already received, the IRS now seeks an additional ninety-day extension, or a total of six months to complete its <u>Vaughn</u> index.  The IRS filed its motion seeking this extension on the day its <u>Vaughn</u> index was due. Many of the reasons the IRS provides to justify three more months are dubious or misleading. Ultimately, a more limited (yet still generous) thirty-day extension is reasonable and would provide the IRS with four months, in total, to complete its <u>Vaughn</u> index.[1]

---

[1] Plaintiff has already offered the IRS one additional month beyond the original three-month extension, but the IRS would not consider anything other than a full three more months. <u>See</u> R. Heggestad Dec. ¶ 11 (Dec. 8, 2006), attached hereto as Exhibit 1.

346771

Among other issues, the IRS alleges that, although "an agreement has been reached" regarding duplication and search costs, "to date no payment has been received from plaintiff."[2] Yet, when Plaintiff offered a compromise concerning duplication and search costs to the IRS, the IRS never communicated that it had accepted the offer. Plaintiff had no idea that the IRS had accepted its offer until receiving the instant motion for an additional three-month extension.[3]

After reviewing the IRS' motion, Plaintiff contacted IRS counsel who informed Plaintiff that she "forgot" to convey the agency's agreement to Plaintiff's offer.[4] Plaintiff has now sent the IRS a check.[5] This exchange typifies the communications between Plaintiff and the IRS over the past three months. The IRS shows Plaintiff courtesy and appears cooperative, but then, for one reason or another, nothing happens (or nothing happens quickly). Instead, things are "forgotten" or otherwise fail to occur.

To provide another example, on September 8, 2006, Plaintiff asked the IRS to produce a legible copy of a June, 29, 1962 memorandum that the IRS had already disclosed, albeit in partly illegible form.[6] Despite multiple further requests, it took the IRS more than two months, until November 14, 2006, to produce a legible copy of this single, already-disclosed document.[7]

---

[2] IRS Motion, at 6.

[3] R. Heggestad Dec. ¶ 2 (Dec. 8, 2006), attached hereto as Exhibit 1.

[4] Id. at ¶ 3.

[5] See Letter from R. Heggestad to B. Campbell (Dec. 8, 2006) (with copy of check), attached hereto as Exhibit 2.

[6] Letter from R. Heggestad to B. Campbell (Sept. 8, 2006), attached hereto as Exhibit 3.

[7] Email from B. Campbell to R. Heggestad (Nov. 14, 2006), attached hereto as Exhibit 4.

Plaintiff has also repeatedly[8] asked the IRS to produce two public documents, a deposition transcript of an IRS agent and a court hearing involving one of Plaintiff's prior lawyers. No privilege could possibly apply to these publicly-filed court documents. Yet, for reasons that Plaintiff does not understand, the IRS will not produce them.

IRS attorney Krista Piersol's declaration demonstrates that the IRS actually has done very little. In her declaration, Ms. Piersol states (or admits) that, over the past three months, she has reviewed only "approximately seven boxes of the requested 48 boxes."[9] At this rate – seven boxes every three months – the IRS will need another 1.5 years to finish its Vaughn index. In reality, of course, the IRS could proceed more quickly if it chose. Plaintiff respectfully requests that the Court deny the IRS' request for a three-month extension and award a thirty-day extension instead.

## I. THE IRS IS EXAGGERATING THE WORKLOAD THE *VAUGHN* INDEX INVOLVES.

The IRS has already reviewed the documents at issue twice. On November 26, 2002, during earlier Freedom of Information Act ("FOIA") proceedings, the IRS reviewed and decided to withhold approximately 3000 documents pursuant to various FOIA exemptions.[10] The 3000-document set includes the 1300 documents at issue here.[11] Subsequently, on October 15, 2004, in the related Stonehill Rule 60(b) litigation, the IRS (through the Department of Justice Tax

---

[8] See, e.g., Letter from R. Heggestad to B. Campbell (Nov. 10, 2006), attached hereto as Exhibit 10; Email from R. Heggestad to B. Campbell (Nov. 8, 2006), attached hereto as Exhibit 9; Email from R. Heggestad to B. Campbell (Oct. 17, 2006), attached hereto as Exhibit 7; Letter from R. Heggestad to B. Campbell (Sept. 8, 2006), attached hereto as Exhibit 3.

[9] K. Piersol Dec. (Dec. 4, 2006), at 4.

[10] R. Heggestad Dec. ¶ 4 (Dec. 8, 2006), attached hereto as Exhibit 1.

[11] Id. at ¶ 5.

Division) submitted a final privilege log, again asserting various privileges to justify its decision to withhold the 3000-document set.[12] And, again, the 3000-document-set includes the 1300 documents at issue here.[13] Accordingly, the IRS (or its counsel) has already reviewed the 1300 documents – twice. Two prior reviews, including a privilege log, should speed the current process.

The Court should also note that the documents at issue have not changed since the August 3, 2006 status conference. There, the IRS initially requested only thirty additional days after filing its answer to complete the Vaughn index, although Plaintiff voluntarily offered the IRS another sixty days.[14] Nothing has changed since then other than the IRS' assessment of how long the index will take – the number of documents that the Vaughn index must address is exactly the same, but the IRS initially sought only one month to complete the index.

Finally, a Vaughn index is essentially a specialized, slightly more elaborate form of privilege log. As the Court is aware, parties regularly complete such logs reflecting thousands of privileged documents with reasonable dispatch. It is unlikely that a party would receive six months to produce a 1300-document privilege log. One additional month, or four months total, will provide the IRS with enough time – and the same amount of additional time, one month, that the IRS originally said it that needed requested to complete the entire process.[15]

---

[12] Id. at ¶ 6.

[13] Id. at ¶ 7.

[14] R. Heggestad Dec. ¶ 8 (Dec. 8, 2006), attached hereto as Exhibit 1.

[15] Although Plaintiff also believes that one additional month, or four months total, should provide the IRS with plenty of time to analyze the reel-to-reel audio tapes as well, the Court could provide the IRS with a separate, longer extension concerning the reel-to-reel audio tapes only. The tapes are not Plaintiff's priority and Plaintiff does not intend to burden IRS personnel unnecessarily.

## II. THE IRS HAS APPARENTLY MADE VERY LITTLE PROGRESS THUS FAR.

Ms. Peirsol's lengthy declaration obscures how little the IRS has actually accomplished after the August 3, 2006 scheduling conference. According to the IRS, it had located and copied the documents by September 8, 2006.[16] Thus, it took the IRS more than one month to locate and copy the 1300 documents, although the 1300 documents were already collected as part of the larger 3000-document set.

To the best of Plaintiff's ability to determine from the IRS' motion and Ms. Persiol's declaration, since September 8, 2006, the IRS has: (1) completed the Vaughn index with respect to "seven of the requested 48 boxes";[17] and (2) "reviewed approximately 40 of the [reel-to-reel] audio tapes expending approximately 60 hours for the review."[18] Despite this paltry progress, the IRS waited until the day its Vaughn index was due to seek an extension.[19]

---

[16] IRS Memorandum, at 5.

[17] IRS Memorandum, at 6; see also K. Piersol Dec. (Dec. 4, 2006), at 4.

[18] IRS Memorandum, at 6. This use of time makes little sense; the IRS knows the tapes are not Plaintiff's priority. It also makes little sense to have reviewed forty tapes given that Plaintiff and the IRS understood that Plaintiff would select only those tapes that interest it, to save time. See Letter from R. Heggestad to B. Campbell (Oct. 12, 2006), attached hereto as Exhibit 5. On October 31, 2006, the IRS provided a list. See Email from B. Campbell to R. Heggestad (Oct. 31, 2006), attached hereto as Exhibit 6. Because of uncertainty about the cost, Plaintiff has not yet identified which tapes it will seek. Plaintiff does not understand why the IRS allocated most of the time that it did spend to the task of reviewing audio tapes that the IRS knows Plaintiff will likely never pursue.

[19] The IRS filed the instant motion on Monday, December 4, 2006. On Friday, December 1, 2006, IRS counsel left a message for Plaintiff's counsel seeking a ninety-day extension. R. Heggestad Dec. ¶ 9 (Dec. 8, 2006), attached hereto as Exhibit 1. Plaintiff's counsel returned her call later that day, leaving a message, but IRS counsel did not return his call until Tuesday, December 5, 2006, after the IRS had already filed this motion. See id. at ¶ 10. During this conversation, Plaintiff offered a one-month additional extension, but the IRS would not agree to anything shorter than three months. See id. at ¶ 11.

The IRS attributes its slow progress largely to Ms. Peirsol's busy docket. But this is not Plaintiff's responsibility and the IRS could, if it chose, either help clear her schedule or provide her with additional assistance.

### III.   THE COST ISSUE IS A "RED HERRING" AND DOES NOT JUSTIFY A THREE-MONTH ADDITIONAL DELAY.

As discussed above, Plaintiff's alleged refusal to pay search and copying costs is unfair – the IRS never notified Plaintiff that it accepted Plaintiff's proposal.[20] Moreover, the IRS completed the "search and copying" phase on September 8, 2006, which means the alleged nonpayment of these expenses does not explain the IRS' failure to review all but seven of the forty-eight boxes of documents. The search and copying expense issue does not justify a three-month additional extension.

Neither do the costs associated with the reel-to-reel audio tape review. The IRS did not contact Plaintiff about the reel-to-reel audio tape expenses until late October, 2006, nearly three months after the scheduling conference.[21] Since then, there has been correspondence between the parties concerning the reel-to-reel audio tape costs and it should take the parties very little time to reach an agreement.[22] It can easily be accomplished within the next month and this outstanding issue certainly does not justify a three-month extension.[23]

---

[20] Plaintiff made the proposal that the IRS has apparently accepted in late October, 2006. See Email from R. Heggestad to B. Campbell (Oct. 5, 2006), attached hereto as Exhibit 8.

[21] R. Heggestad Dec. ¶ 13 (Dec. 8, 2006), attached hereto as Exhibit 1.

[22] See id. at ¶ 14.

[23] Again, the reel-to-reel tapes are less important to Plaintiff and Plaintiff does not oppose an extension longer than one month with respect to the reel-to-reel tapes.

## IV.     CONCLUSION

For the aforementioned reasons, the Court should award the IRS only a one-month extension.

Date:   December 8, 2006.

Respectfully submitted,

 /s/            Robert E. Heggestad
Robert E. Heggestad (D.C. Bar. No. 953380)
John R. Gerstein (D.C. Bar. No. 913228)
Jonathan Cohen (D.C. Bar. No. 483454)
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C. 20006-1040
(202) 662-2000

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **PLAINTIFF'S OPPOSITION TO MOTION FOR ENLARGEMENT OF TIME** was served by United States mail addressed to the following on this 9th day of December 2006:

>Brittney N. Campbell
>David M Katinsky
>TAX DIVISION
>Post Office Box 227
>Ben Franklin Station
>Washington, D.C.  20044

>　/s/　　　Robert E. Heggestad　　
>　　　　Robert E. Heggestad