EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STONEHILL ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:06-cv-0599 |
| ) | |
| INTERNAL REVENUE SERVICE ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF KRISTA L. PIERSOL

I, Krista L. Piersol, being of legal age and pursuant to the provisions of 28 U.S.C. § 1746, declare and say:

1. I am an attorney in the Internal Revenue Service's Office of Chief Counsel, Office of the Associate Chief Counsel (Procedure and Administration), Office of the Assistant Chief Counsel (Disclosure and Privacy Law), in Washington, D.C. I have held this position since February 2006. The duties of attorneys in this office include assisting the Department of Justice (DOJ) and Offices of the United States Attorneys in defending the Government in litigation brought under the Freedom of Information Act (FOIA), the Privacy Act, and 26 U.S.C. § 7431.

2. Within the course and scope of my duties within the Office of the Assistant Chief Counsel (Disclosure and Privacy Law), I have been assigned to assist the DOJ in connection with the above-captioned litigation. The Internal Revenue Service (IRS) is in the process of reviewing and creating a Vaughn Index of the documents responsive to the Plaintiff's FOIA request and withheld pursuant to various FOIA exemptions. This process will not be complete in time to meet the Court's order to file dispositive motions on December 5, 2006, for the following reasons: (1) there is a large amount of

responsive material, over 9,500 pages of documents and 90 hours of audio tapes, to review and index; (2) Plaintiff has refused to pay reasonable search and copying fees; (3) I have a full docket of other cases and opinion work to handle; and (4) it is not possible at the current time to transfer my other work to the other attorneys in my division because they also have large workloads including court and opinion deadlines.

 3. The following summarizes my substantial work on Plaintiff's request to date:

  a. In the original complaint, filed March 31, 2006, the Plaintiff stated that the IRS was improperly withholding documents relating to William Saunders pursuant to exemption (b)(3) in conjunction with IRC § 6103 ("Saunders documents").

  b. The Saunders documents were released to DOJ to be turned over to the Plaintiff on June 20, 2006.

  c. On August 3, 2006, a status conference was held wherein Plaintiff stated that he would file an amended complaint to include other documents. In particular, Plaintiff was interested in receiving a description of the documents.

  d. On August 11, 2006, Plaintiff filed an amended complaint that included "Exhibit A," which is a list of documents he was requesting either be provided to him or that a Vaughn Index be produced for each. The number of documents Plaintiff is requesting is well over 9,500 pages. Exhibit A can be divided into the following three types of document categories:

    i.    **Bates-Stamped Documents** -- These documents (approximately 9,714) are documents withheld either in whole or in part from the responses to Plaintiff's 1998 and 2001 FOIA requests or through discovery in the case US v. Stonehill, 65-cv-0127 (C.D. Cal.). The Bates numbers are those assigned through the litigation.

    ii.    **Non-Bates-Stamped Documents** -- These documents are documents referenced within other documents Plaintiff has already received. The documents are not numbered and there is no way to determine the exact number at this time.

    iii.    **Reel-to-Reel Audio Tapes** -- At a minimum the tapes include 90 hours of audio that necessitates review for possible exemptions.

e.    The following work has been completed for each type of document listed above:

    i.    Saunders Documents

By letter dated March 23, 2006, Plaintiff filed a FOIA request and provided a legally valid consent (i.e. Form 8821) signed by a representative of William Saunders' Estate. Prior to this, Plaintiff had submitted an inadequate Form 8821. On June 20, 2006, the IRS provided the responsive documents to DOJ for release to the Plaintiff. Attached hereto as Attachment A is a completed Vaughn Index for the Saunders

documents. A full discussion of the Vaughn Index and the exemptions claimed is in Paragraphs 6-7 below. There are no further responsive documents to be released.

ii. <u>Bates-Stamped Documents</u>

The IRS received a copy of the Amended Complaint on August 14, 2006 which contained an indecipherable Exhibit A. Plaintiff forwarded a newly formatted Exhibit A on August 15, 2006. On August 30, 2006, the IRS reallocated personnel to perform the search for the documents. Two IRS employees went to DOJ, where the documents are currently stored, and expended 64 hours searching for and copying the documents requested by Plaintiff. This was completed on September 8, 2006. I am currently in the process of reviewing and creating an Index for these documents. I have completed approximately seven boxes of the requested 48 boxes. The cost for the search of these documents is $1054 (excluding two hours as provided for in the Regulations). Until recently the IRS and Plaintiff had been unable to reach an agreement regarding the fees. Therefore, Counsel was reluctant to allocate additional manpower to the review and indexing. I continue working and a paralegal has been assigned in the event that Plaintiff

4

complies with the payment agreement; to date no payment has been made.

iii. <u>Non-Bates-Stamped Documents</u>

The IRS has requested that Plaintiff pay an advance search fee of $5,000 in order to begin searching for the documents. The requested amount is based on two employees working 40 hours per week for approximately four weeks. This is not unreasonable given that the above-mentioned search for the Bates-Stamped documents required two persons 64 hours to complete. In order to determine if the requested non-Bates-Stamped documents are contained within IRS records, personnel would be required to perform a search of the entire set of boxes. It originally took 1400 hours to review the documents for the original FOIA request. While it will not require the same depth of review, it will require someone to review all of the pages contained in the boxes to determine if they match the description Plaintiff has provided. Plaintiff until recently had refused to pay any fees associated with the search for these documents. It is the IRS' understanding that Plaintiff has agreed in writing to forego the search for these documents, therefore at this time personnel will not be allocated for the search.

iv. <u>Reel-to-Reel Audio Tapes</u>

I have spoken with IRS personnel that handled the original FOIA request. They have confirmed that Plaintiff initially requested copies of the audio tapes at the time of the initial document release. Every effort was made at that time to fulfill this request. It is necessary to make the tapes into CD's in order to facilitate copying and in order to redact any portions exempt from disclosure. It is the IRS' understanding that DOJ had these tapes made into CD's at or around the time of Plaintiff's request, but apparently Plaintiff's request was withdrawn. The cost was approximately $6,000 and the IRS has agreed to pro-rate the cost to only the cost of those tapes Plaintiff actually receives. Plaintiff has been provided with a list of the tapes and their contents. Plaintiff stated that he could have the tapes made for less than $6,000. The IRS agreed to negotiate the cost based on estimates Plaintiff obtained from other companies. I personally researched the issue and found three cost estimates. I spoke with the companies providing the tape-to-CD transfer service and they indicated the price can very greatly with the quality and quantity of the tapes and the actual price cannot be determined until the transfer is done. Plaintiff has failed to provide any estimates to DOJ, therefore

> we have been unable to reach an agreement regarding the amount of fees.
>
> In an effort to ensure that Plaintiff received the tapes in a timely manner, as they had not been released previously, I made their review my top priority. I have reviewed approximately 40 of the tapes or approximately 60 hours of audio. I stopped reviewing the tapes when Plaintiff indicated his unwillingness to DOJ Counsel, Brittney Campbell, to pay the fees. When an agreement is reached and payment made, the remaining tapes will be reviewed and all non-exempt materials will be released, if so requested.

4. I currently have a full case load that includes, in addition to the Stonehill litigation, other Freedom of Information Act litigation, opinion projects, and informal advice. Although I have done everything that I could to minimize the work that I devote to these other cases, these assignments require daily attention.

> a. I have informed my supervisors of the significant demands upon my time that is necessary to review and create a Vaughn Index. My supervisors have told me that at the current time it is not possible to transfer my other cases to other attorneys within Branch 1 because they also have large workloads including court and opinion deadlines.
>
> b. In an effort to assist me with the creation of the Vaughn Index, on

7

November 28, 2006, managers within the Office of the Associate Chief Counsel (Procedure and Administration), arranged for a Paralegal Specialist to assist with the creation of the indexing of the documents.

5.  The Disclosure and Privacy Law Division anticipates finishing the Vaughn Index and declarations for a dispositive motion by March 2006. The Office of Chief Counsel is currently in the process of returning operations to the National Office at 1111 Constitution Ave., Washington, DC 20001. The office has been displaced due to the recent flooding of the National Office. This will cause a delay in processing as my office and the office of the paralegal will need to be packed up the week of December 4, 2006 and then unpacked the week of December 10, 2006.

6.  I obtained all the responsive documents that were pertaining to William Saunders, Sr., and were withheld on the basis of FOIA exemption (b)(3) in conjunction with I.R.C. § 6103 from Richard Fultz, Special Counsel, Chief Counsel, International. Mr. Fultz reviewed documents responsive to Plaintiff's 1998 and 2001 FOIA request. Mr. Fultz devised a system whereby all third party taxpayers were given a code number and that specific number was used to mark all documents containing section 6103 protected information referencing that particular taxpayer. This was done to make the documents easily accessible if Plaintiff was able to obtain the necessary consent from the third party taxpayer. There were a total of 62 responsive documents containing information about William Saunders that had been withheld on the basis of section 6103.

7.  I reviewed these documents for possible FOIA exemptions and three

8

documents were withheld in part based on FOIA exemption (b)(3) in conjunction with I.R.C. § 6103. (Attachment A). The three documents contained identifying information for taxpayers other than Stonehill, Brooks and William Saunders. FOIA exemption (b)(3) permits the withholding of information prohibited from disclosure by another statute if that other statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." See 5 U.S.C. § 552(b)(3); Smith v. Dep't of Justice, 251 F.3d 1047, 1048-49 (D.C. Cir. 2001). In such situations "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." Goland v. C.I.A., 607 F.2d 339, 350 (D.C. Cir. 1978) (footnote omitted); accord Ass'n of Retired R.R. Workers v. United States R.R. Ret. Bd., 830 F.2d 331, 335 (D.C. Cir. 1987).

I.R.C. § 6103, which consists of detailed provisions that concern the disclosure of returns and return information, has been held to be a statute meeting the criteria of FOIA exemption (b)(3). See Church of Scientology v. I.R.S., 484 U.S. 9 (1987); Chamberlain v. Kurtz, 589 F.2d 827 (5th Cir. 1979), cert. denied, 444 U.S. 842 (1979). Here, FOIA exemption (b)(3) is asserted in conjunction with I.R.C. § 6103(a) to withhold the return information of individuals and entities other than plaintiffs. I.R.C. § 6103(b)(2) defines "return information," in pertinent part, as:

> (A) a taxpayer's identity ... or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability [under the Internal Revenue Code] ... .

Section 6103 (a) provides that returns and return information shall not be disclosed except as authorized by any provision of the Code. No provision of the Code authorizes the release of third-party return information without the third-party's consent to such disclosure.

9

As such, those portions of pages Box54-1253, Box54-1255 and Box54-1259 that contain the return information of third parties is exempt from disclosure pursuant to FOIA exemption (b)(3) in conjunction with I.R.C. § 6103(a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 4th day of December 2006.

*Krista L. Piersol* (signature)

Krista L. Piersol
Office of Chief Counsel
Crystal Mall 4, Room 1125
1901 S. Bell Street
Arlington, VA 22202-4511