IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULINE STONEHILL, )
   )
   Plaintiff, )
   )
   v. )  Case No. 06 599 (JDB)
   )
INTERNAL REVENUE SERVICE, )
   )
   Defendant. )
_____)

### DECLARATION OF NANCY J. WARD
### ACTING INFORMATION AND PRIVACY COORDINATOR
### CENTRAL INTELLIGENCE AGENCY

I, NANCY J. WARD, hereby declare and say:

1. I am the Acting Chief, Public Information Programs Division (PIPD), Information Management Services (IMS), under the Office of the Chief Information Officer, Central Intelligence Agency (CIA). I am also the Acting CIA Information and Privacy Coordinator (Coordinator). I serve as the Acting Chief, PIPD and the Acting Coordinator when the Chief, PIPD, and Coordinator is absent. I am also the Program Manager, PIPD. I make this declaration in support of defendant's motion for extension of time filed in the above-captioned matter.

2. I have served with the United States Government for over twenty-four years and, in addition to my current


EXHIBIT 2

positions, have held other positions with the CIA in the field of information review and release.

3. In my positions as Acting Chief of PIPD/IMS and as Acting Coordinator, I am responsible for managing the Freedom of Information Act (FOIA), Privacy Act (PA), and Executive Order 12958[1] Mandatory Declassification Review programs in the CIA. These responsibilities include directing searches of CIA records systems in response to public requests for information under these programs, and coordinating the reviews of any records retrieved in such searches. These review processes also include undertaking any intra-agency and inter-agency coordination and referrals.[2]

4. As part of my official duties, I ensure that the Agency administratively processes FOIA and PA requests,

---

[1] Executive Order 12958 was amended by Executive Order 13292, effective March 25, 2003. See Exec. Order No. 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003). All citations to Exec. Order No. 12958 are to the Order as amended by Exec. Order No. 13292. See Exec. Order No. 12958, 3 C.F.R. 333 (1996), reprinted as amended in 50 U.S.C.A. § 435 note at 180 (West Supp. 2006).

[2] A "coordination" occurs when an agency determines that a document it originated contains information from another agency, and the first agency contacts that second agency to obtain guidance on whether to release or withhold that second agency's information. A "referral" occurs when an agency possesses a document that originated with another agency. In such a case, the first agency transmits the document to the originating agency for a direct response to the FOIA or Privacy Act requestor. See Exec. Order No. 12958 (as amended), § 3.6(b), Classified National Security Information, which requires that classified information located by an agency be referred to the originating agency for classification review.

including the search, retrieval, analysis, review, redaction, and release of documents, in accordance with the applicable laws and regulations and as efficiently as possible with the personnel and resources available.

5. Through the exercise of my official duties, I am familiar with plaintiff's request for information that is the subject of this civil action and the request for coordination sent to CIA by defendant, Internal Revenue Service (IRS). I make the following statements based upon my personal knowledge and the information made available to me in my official capacity.

6. The purpose of this declaration is to provide a description of the CIA's process for responding to FOIA/PA requests for coordination, and to explain the Agency's need for a reasonable extension of time to complete processing of the documents sent to us by IRS. I will include in my explanation the additional administrative burdens imposed by the nature of both the records systems involved; the necessity of referring records to various CIA components to ensure that no classified information, intelligence sources and methods, or otherwise exempt information is inadvertently disclosed; and the status of plaintiff's request.

## I. CIA RECORDS SYSTEMS

7. Any intelligence or security agency continually faces the risk that there may be a spy within its ranks or that it may be subject to hostile penetration. Prudence dictates that an agency take appropriate counter-intelligence and security precautions to minimize the potential damage to national security that could result from a spy in the agency's midst or the compromise of its information systems by technical means.

8. The CIA implements this policy by decentralizing and compartmenting its records systems. Records within the CIA are maintained by four directorates — the National Clandestine Service, the Directorate of Intelligence, the Directorate of Science & Technology, and the Directorate of Support — and the independent offices which report directly to the Director/CIA, collectively known as the D/CIA area.

9. Another way the CIA seeks to minimize such damage is to limit strictly the amount of information to which any particular employee has access. The CIA limits employee access to information by employing a "need-to-know" policy, which provides that an employee has access only to that information required to perform the employee's duties.

10. While the counterintelligence advantage of decentralization and compartmentation are obvious, one disadvantage is equally obvious: inherent inefficiencies created in the records review process. These inefficiencies affect not only the day-to-day activities of CIA employees trying to perform their mission, but also the process of responding to FOIA requests for coordination.

II. PROCESSING OF FOIA/PRIVACY ACT REQUESTS

11. The Coordinator is the initial reception point for all FOIA/PA requests, including requests by other agencies for coordination. Under the Coordinator's direction and supervision, FOIA case officers review all incoming requests, including requests for coordinations.

12. Experienced information management professionals in PIPD then analyze each request and determine which CIA components might reasonably be expected to possess records responsive to a particular request. In the case of coordinations, PIPD analyzes each request for coordination and determines which CIA components might have an equity in the information that is the subject of the coordination. PIPD then tasks the request to each relevant directorate. Frequently, PIPD tasks the request to multiple directorates. The information management professionals in

5

.
.

each component conducting FOIA/PA reviews are the same professionals searching records to support the component's daily mission and the same professionals searching for records responsive to FOIA/PA requests made to CIA directly.

13. When a component receives documents that are the subject of a coordination request, officers must carefully review those records line-by line to identify, in non-Agency originated documents, the information belonging to the CIA or in which CIA has an interest; to identify any information which is classified, pertains to intelligence sources or methods, or is otherwise exempt under the FOIA; and to ensure that nonexempt information is released if it is reasonably segregable. The reviewers must further determine whether information identified as classified still requires protection in the interests of national security or is such that it can be declassified and released. Thus, in evaluating the documents, officers must identify and segregate exempt information to avoid the inadvertent disclosure of classified information or compromising intelligence sources and methods. The process is laborious and time consuming.

14. In the course of reviewing documents for exempt information and segregability, a component frequently

6

identifies information that it must coordinate with or refer to another CIA component because the other component originated the information or otherwise has an equity in it. This coordination and referral process itself can be quite time-consuming because other components have their own mission and FOIA/PA priorities.

15. When all of the components complete their respective reviews, professionals in my office incorporate all of their recommendations regarding exemption, segregation, redaction, and release. My office then conducts a review from a corporate perspective on behalf of CIA as a whole. In this review, we resolve conflicting recommendations, ensure that the release or withholding determinations comply with law and published CIA regulations, identify additional exempt information that reflects overall CIA equities, produce the integrated final record copy of each document, and respond to the requestor or agency requesting coordination.

16. During the corporate review, we may make significant changes to initial decisions releasing or withholding information. When considered individually, a particular document may not indicate on its face that it contains exempt information. Nevertheless, when reviewers consider all responsive documents in total, it frequently

becomes apparent that, considered collectively, the documents reveal information exempt from release. For this reason, we cannot make final release determinations with respect to any particular document until we review the recommendations of all involved components.

17. Thus, the nature of the intelligence business, including the compartmentation of records and the need to protect intelligence sources and methods, renders record searches and reviews complex. These procedures, discussed above, are time-consuming, but essential in order to avoid the inadvertent disclosure of exempt information, including classified information and information regarding intelligence sources and methods.

18. In responding to FOIA requests, the overwhelming majority of the CIA redactions are based on FOIA Exemptions (b)(1) and (b)(3). By definition, an error on the part of the CIA that leads to the disclosure of such exempt information would reveal information about intelligence collection, sources, methods, or capabilities and thereby could reasonably be expected to damage this country's national security. Accordingly, the utmost care must be given to ensuring proper and thorough review of responsive documents before they are released.

19. The CIA uses two tracks for processing requests. The first, or main, i.e., complex, track, contains the majority of requests and involves all requests that have to be tasked to one or more CIA directorates for review. The second track contains those requests that concern previously requested information or information previously reviewed, declassified, and released, or that seek information the existence of which would be a classified fact, if indeed such information existed. A request which requires review by components of the Directorate of Support and National Clandestine Service as well as Information Management Services, will require coordination with multiple components, and is properly placed in the first track.

20. CIA makes every attempt to promptly and expeditiously respond to any request but the volume of information review demands as well as the nature of the information involved necessarily results in unavoidable delays in processing in many cases. As previously noted, our review of documents takes longer than would be the case with non-intelligence information because the Agency must carefully scrutinize each responsive document to ensure that it does not reveal intelligence sources or methods. This requires close coordination with or reliance on

experts from various components in CIA who possess the substantive expertise to determine what can be released. In addition, where the documents at issue have been or are related to the subject of litigation, PIPD must coordinate its response closely and carefully with the Office of General Counsel.

21. Additionally, the review of classified material under the FOIA and Executive Order 12958, as amended, sometimes requires consultation with other CIA components regarding whether the release of these records reasonably could be expected to cause identifiable damage to the national security. These judgments cannot always be made solely by FOIA officers without input from subject-matter experts who are actively involved in the conduct and management of intelligence collection or analytical activities.

## III. THE IRS REQUEST FOR COORDINATION

22. On 10 October 2002, IRS sent to CIA for coordination one 21-page IRS document. On 22 January 2003, CIA responded to IRS and stated that the CIA information in that document could be released in part with deletions made on the basis of FOIA exemptions (b)(1) and (b)(3), and PA exemptions (d)(5), (j)(1), and (k)(1). On or about 30

January 2007, IRS informed CIA that it had more than 500 hundred pages of documents responsive to the request that required CIA coordination.

23. Based upon the request, the careful, multi-step review the CIA must conduct to prevent the inadvertent release of classified national security or other exempt information, and given the Agency's current resources, my best estimate is that CIA will be able to complete processing this request by 16 April 2007.

\* \* \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of March 2007.

                                                Nancy J. Ward
                                                Acting Information
                                                & Privacy Coordinator
                                                Central Intelligence Agency