IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULINE STONEHILL, Co-executor )
and Co-special administrator of the )
Estate of Harry S. Stonehill, )
)
       Plaintiff, )
)
v. )     NO. 1:06-cv-00599 JDB
)
INTERNAL REVENUE SERVICE, )
)
       Defendant. )

## INTERNAL REVENUE SERVICE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The Internal Revenue Service, defendant, moves for partial summary judgment.

As grounds for its motion, defendant states that the material facts are not in dispute and

that it is entitled to judgment as a matter of law.  Specifically, defendant states that it

has (1) performed an adequate search for documents responsive to plaintiff's FOIA

request; and (2) with respect to the withheld documents identified on defendant's

Vaughn index, it has withheld only those documents, or portions thereof, authorized by

5 U.S.C. § 552(b).   Accordingly, the Court should dismiss this case.

Attached to this motion as Exhibit 1 is the declaration of Krista Piersol.  Attached

as Exhibit 2 is the declaration of Richard Fultz.  Attached as Exhibit 3 is the declaration

of Mae Lew.  A statement of facts, supporting memorandum of law, and proposed

order are also filed with this motion.

DATED:        March 19, 2007

Respectfully submitted,

/s/ Brittney N. Campbell
DAVID M. KATINSKY
BRITTNEY N. CAMPBELL
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6435

OF COUNSEL:

JEFFREY TAYLOR
United States Attorney

## CERTIFICATE OF SERVICE

IT IS CERTIFIED that service of the foregoing defendant's Motion for Partial

Summary Judgment has been made this 19th day of March, 2007, by mailing, postage

prepaid, addressed to:

> JOHN R. GERSTEIN
> ROBERT E. HEGGESTAD
> JONATHAN COHEN
> Ross, Dixon & Bell, LLP
> 2001 K Street, N.W.
> Washington, D.C. 20006-1040.

> /s/ Brittney N. Campbell
> BRITTNEY N. CAMPBELL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULINE STONEHILL, Co-executor )
and Co-special administrator of the )
Estate of Harry S. Stonehill, )
)
      Plaintiff, )
)
v. )     NO. 1:06-cv-00599 JDB
)
INTERNAL REVENUE SERVICE, )
)
      Defendant. )

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF INTERNAL REVENUE SERVICE'S
## <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

### STATEMENT

The Internal Revenue Service incorporates by reference the facts enumerated in

the Internal Revenue Service's Statement of Material Facts Not in Genuine Dispute.

### SUMMARY OF ARGUMENT

The Court should grant the Internal Revenue Service's for motion for partial

summary judgment here because based upon the material, undisputed facts, the

Service, as a matter of law, has (1) performed an adequate search for documents

responsive to plaintiff's FOIA request; and (2) with respect to the documents set forth in

defendant's <u>Vaughn</u> index withheld only those documents authorized by 5 U.S.C. §

552(b).

4

First, the Service must execute a search reasonably calculated to uncover all relevant documents based upon the four corners of the FOIA request.  Here, the Service searched all logical locations suggested by the FOIA request for the exact material requested.   The Service did not perform a search for those documents for which plaintiff did not agree to pay the search costs.

Likewise, the The Service's withholdings meet the standards prescribed by the FOIA:

- 5 U.S.C. § 552(b)(3), in conjunction with 26 U.S.C. § 6103(a), authorizes the The Service's decision to withhold in part or in full documents that are the actual tax returns of third parties, consist of third party return information in their entirety, and those that reference specific third party taxpayers or the investigations/audits thereof for violations of the Internal Revenue Code.  Those provisions also support the withholding of portions of documents which, although they are not themselves tax return information under § 6103(a), contain such information.

- 5 U.S.C. § 552(b)(5), in conjunction with the governmental deliberative process privilege, protects from compelled disclosure drafts of documents and other records, either in full or in part, containing advisory opinions and recommendations generated during the course of Chief Counsel and DOJ attorneys' review and consideration of various legal guidance in conjunction with agency positions.  To the extent that other documents

reflect the opinions or recommendations of agency personnel involved in the drafting and review of such guidance, that information is also subject to the protections of the deliberative process privilege. Such documents are both predecisional and deliberative in nature. 5 U.S.C. § 552(b)(5), in conjunction with the attorney work product and attorney-client privileges, also protects from disclosure other discrete documents prepared by Chief Counsel attorneys which meet the requirements of these privileges, as well as of 26 U.S.C. § 6103(a).

- 5 U.S.C. § 552(b)(7)(D) justifies withholding of records or information compiled for law enforcement purposes which could reasonably be expected to disclose the identify of a confidential source who furnished information on a confidential basis, and in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

- 5 U.S.C. §552(b)(3), in conjunction with Fed.R.Crim.P. 6(e), prohibits the Internal Revenue Service from disclosing grand jury material such as transcripts of witness testimony given to the grand jury in connection with Stonehill and/or third party taxpayers or contains detailed information which could only have been derived from Grand Jury

6

subpoenas, gathered during the course of the grand jury investigation of

Stonehill and/or third party taxpayers.

- Finally, 5 U.S.C. §552(b)(3), in conjunction with 26 U.S.C. § 6103(e)(7) and

    6105 supports the withholding of documents that constitute tax

    convention information which cannot be disclosed unless the treaty

    partner agrees to its disclosure and/or the Secretary determines that the

    disclosure would not constitute impairment of tax administration.

ARGUMENT

Summary judgment is appropriate if there are no genuine issues of material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); *see also* Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247-48 (1986); Matsushita Electronics Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986). Where the nonmoving party bears the burden of proof

on an issue, the movant need not produce evidence showing the absence of a genuine

issue of material fact, but instead the movant may discharge its burden by showing

"that there is an absence of evidence to support the nonmoving party's case." Celotex,

477 U.S. at 325. To rebut the motion for summary judgement, plaintiff must "point to

some facts in the record that demonstrate a genuine issue of material fact and, with all

reasonable inferences made in plaintiffs' favor, could convince a reasonable jury to find

for the plaintiffs." Reese v. Jefferson School District No. 143, 208 F.3d 736, 738 (9th Cir.

2000). Virtually all FOIA cases are resolved via summary judgment. *See* Manna v.

United States Dep't of Justice, 832 F. Supp. 866, 870, aff'd 51 F.3d 1158 (3d Cir. ), cert. denied, 116 S. Ct. 477 (1995).  Summary judgment may be granted solely on the basis of agency affidavits if they are "sufficiently detailed and are submitted in good faith." Manna, 832 F. Supp. at 870.  Here, the pertinent facts are not in dispute and the issues in this case can be decided as a matter of law.  The Service performed an adequate search for documents responsive to plaintiff's two FOIA requests.  The Service is properly withholding certain information pursuant to FOIA exemptions 3, 5, 6 and 7.

## I.
### THE SERVICE CONDUCTED A REASONABLE SEARCH FOR THE CONTROL NUMBERED DOCUMENTS IDENTIFIED IN PLAINTIFF'S AMENDED COMPLAINT

A.    The Fultz, Piersol and Lew Declarations Establish That the Service Performed a Good Faith Search Reasonably Calculated to Uncover All Responsive Documents.

In order for a FOIA search to pass muster in this circuit, the agency must establish that it executed a search "'reasonably calculated to uncover all relevant documents.'" Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. United States Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("Weisberg II")); accord, Shores v. FBI, 185 F.Supp.2d 77, 82 (D.D.C. 2002); Judicial Watch, Inc. v. Export-Import Bank, 108 F.Supp.2d 19, 25 (D.D.C. 2000).  The focus is on the *reasonableness* of the search, not the *result*:

> The question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.  The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."

8

Steinberg, 23 F.3d at 551 (quoting Weisberg II, 745 F.2d at 1485) (emphasis supplied in original); see also, Meeropol v. Meese, 790 F.2d 942, 952-53, 955 (D.C. Cir. 1986); Export-Import Bank, 108 F.Supp.2d at 25-26.  A search is not inadequate simply because it does not locate every document a requester seeks.  Shores, 185 F.Supp.2d at 82; see also, Kowalczyk v. Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996) (agency not required to look beyond the four corners of the request for leads to responsive documents); Steinberg, 23 F.3d at 552 (holding that the FOIA does not impose a requirement to follow an endless trail of cross references found in responsive documents).  Indeed, it is unreasonable to expect "even the most exhaustive search to uncover *every* responsive file ..."  Meeropol, 790 F.2d at 953 (emphasis supplied in original).

The agency can sustain its burden of establishing a reasonable search by means of reasonably detailed, nonconclusory affidavits or declarations submitted in good faith.  Steinberg, 23 F.3d at 551; Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980); Shores, 185 F.Supp.2d at 82.  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" Safecard Services, Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)); accord, Blanton v. United States Dep't of Justice, 182 F.Supp.2d 81, 84 (D.D.C. 2002).

9

Here, the Internal Revenue Service has produced detailed, nonconclusory declarations– those of Richard Fultz and Mae Lew with the office of Associate Chief Counsel (International)("ACCI") and  Krista Piersol with the Office of Chief Counsel (Disclosure & Privacy Law)("DPL")  –  describing a reasonable search for responsive documents.  The declaration describes the good-faith search undertaken with respect to the FOIA request at issue here and shows how the search was reasonably calculated to produce all responsive documents.

The Service's search for the following documents  identified in plaintiff's Amended Complaint took place in a logical manner: the documents with control numbers ("Control Number Documents"), the documents related to William Saunders Sr. and previously withheld pursuant to 26 U.S.C. §6103 (the "Saunders Documents") and the reel-to-reel audio tapes (the "Audio Tapes").   The initial search for these documents was completed in 2001 pursuant to plaintiff's 2001 FOIA request. (*see* Fultz Declaration.) As part of his duties, Fultz was assigned to coordinate and review documents responsive to plaintiff's initial 1998 and 2001 (identical) FOIA requests. (Fultz Decl. ¶3.)  Initially, the Service was unable to locate responsive documents to plaintiff's 2001 FOIA request. (Fultz ¶4. )  A search in May 2001 located eight files of responsive documents.   It was decided, and plaintiff agreed, that he would be permitted to access the documents, by appointment, in the FOIA reading room at the Service's National Headquarters, Washington, DC. (Id.)  Plaintiff was able to copy

documents, as requested, with the assistance of Carol Field, who, at the time, was a former Service Disclosure Officer responsible for this case. (Id.)

During this time, the Service continued to search for responsive documents. (Fultz Decl. ¶5.)  In September, 2001, 82 additional boxes were discovered in a Federal Records Center in Suitland, Maryland.[1]  Two of the boxes contained the Audio Tapes. (Id.)  It took several months to review the documents for possible exemptions due to the number of documents, the other agencies required to review their documents contained therein, foreign tax treaty partners that had to agree/disagree with release, the delicacy of the paper and the condition of the boxes and documents. (Id.)  Following the removal of all exempt documents, plaintiff was provided access to the 82 boxes on the following dates, again with Field in attendance providing copying services.

The Control Numbered Documents were assigned control numbers pursuant to the discovery process in the Stonehill litigation.  Upon receiving a copy of Exhibit A of plaintiff's Amended Complaint, Piersol contacted Richard Fultz to verify the location of the documents. (Piersol ¶7. )  The original documents are currently stored at the DOJ, Judiciary Center Building, Washington, DC, for use in the Stonehill litigation.  (Id.) The Control Number Documents are documents which were withheld during discovery in the Stonehill litigation.  (Id.) These documents are collectively maintained in numbered binders in the Judiciary Center Building, Washington, DC. (Id.)  Two Chief Counsel

---

[1] Although the boxes have written markings indicating there were a total of 84, there were only 82 boxes maintained and retrieved from the Federal Records Center.

paralegals familiar with the documents were assigned to pull the documents from the binders and make copies for Piersol's review. (Id.)

With respect to search for the Saunders Documents, at the time of both the 1998 and 2001 requests, plaintiff did not have a properly executed Form 8821 Tax Information Authorization signed by the Estate of William Saunders, Sr. (Piersol Decl. ¶3.) During the initial processing of the documents, Fultz determined that many of the Boxes contained returns and return information of third party taxpayers. (Fultz Decl. ¶7.) The documents, or portions thereof, were withheld under FOIA exemption (b)(3) in conjunction with 26 U.S.C. § 6103. In the event that counsel for Stonehill ("Heggestad") was able to obtain consents for release from other taxpayers whose information was contained within the files, Fultz devised a system whereby he could track individual taxpayers and the documents referencing their information. (Id.) Fultz assigned a number to each third party and the privilege logs were marked with the corresponding page number for each withholding made pursuant to (b)(3) and section 6103. When plaintiff obtained the Form 8821 Consent from the Estate of William Saunders, Sr., Fultz was able to access the information relating to William Saunders, Sr. (Fultz. Decl. ¶7). Fultz provided all of the documents related to William Saunders, Sr. that were withheld on the basis of section 6103 to Krista Piersol. (Id.)

Therefore, as a matter of law, the Service has met the requirements for an adequate FOIA search.

B.    <u>The Service is not required to search for documents for which the requester does not agree to pay reasonable search fees nor is the Service required to produce documents for which requester has not agreed to pay the duplication fees.</u>

In addition to identifying specific documents with control numbers in her complaint,  plaintiff listed a number of documents, including a transcript of a 1984 Hawaii District Court hearing and a transcript of the deposition of Internal Revenue Service Special Agent Sterling Powers (the "Transcripts"), that do not have control numbers (the "Non-Control Numbered Documents.")  Other than the identification provided in Exhibit A, the Service has no way to positively determine which documents the plaintiff is seeking and/or where the documents are located within the original boxes.  (Piersol Decl. ¶6.)  Similarly, with respect to the Transcripts,  the Service has no way to positively determine where the Transcripts are located within the original boxes. (Id.)   Further, it is unclear if the Service ever obtained copies of the Transcripts.  (<u>See</u> Fultz Decl. ¶ 8.)

In order to determine if the Non Control-Numbered documents and the Transcripts are contained within the Service's records, personnel would be required to perform a search of the entire set of boxes. (Piersol Decl. ¶6.)  The Service requested that plaintiff pay an advance search fee of $5,000 in order to begin searching for the documents.  The requested dollar amount was based on two employees working 40 hours per week for approximately four weeks.  The search and review of the documents related to the initial FOIA request took personnel 1400 hours to complete (Piersol Decl.

13

¶6.)  Although the search and review for the documents at issue in the Amended Complaint will not require the same depth of review, it will require someone to review all of the pages contained in the boxes to determine if they match the description plaintiff has provided. (Piersol Decl. ¶6.)

Additionally, plaintiff requested Reel-to-Reel Audio Tapes that were located within the original set of boxes.   As set forth in more detail in paragraphs 16-18 of the Service's Statement of Material Facts Not in Genuine Dispute, plaintiff did not agree to pay the cost to have the Reel-to-Reel Audio Tapes duplicated.

An agency may require a requester to pay the search and duplication fees related to his or her FOIA request.   5 U.S.C. §552.  Section 552(4)(A) provides, in relevant part that

> (i) In order to carry out the provisions of this section, each agency shall promulgate regulations, pursuant to notice and receipt of public comment, specifying the schedule of fees applicable to the processing of requests under this section and establishing procedures and guidelines for determining when such fees should be waived or reduced.. ..

> (ii) Such agency regulations shall provide that--

>> (I) fees shall be limited to reasonable standard charges for document search, duplication, and review, when records are requested for commercial use;...

> (iv) Fee schedules shall provide for the recovery of only the direct costs of search, duplication, or review...

> (v) No agency may require advance payment of any fee unless the requester has previously failed to pay fees in a timely fashion, or the agency has determined that the fee will exceed $250.

5 U.S.C.A. § 552(4)(A)(i),(ii),(iv),(v) .

For FOIA requests, the Internal Revenue Service requires that the requester reasonably describe the records and state that she agrees to pay the fees for the search, duplication, and review or request that the fees be reduced or waived.  26 C.F.R. § 601.702(c)(4).[2]  Requesters must comply with the agency's fee requirements.  *See,* Crooker v. United States Secret Service, 577 F. Supp. 1218, 1219 (D.D.C. 1983).  The failure of a FOIA requester to pay required fees amounts to a failure to exhaust administrative remedies.  Oglesby v. Dept. of the Army, 920 F.2d 57, 66 (D.C. Cir. 1990).

The Service determined that the cost of the search for the Transcripts and Non-Control Numbered Documents would exceed $250. (Piersol Decl. ¶6.)  This estimate was based on the original search conducted pursuant to plaintiff's 2001 FOIA request. (Id.)  Plaintiff has not agreed to pay any fees associated with the search for the Transcripts or the Non-Control Numbered Documents; therefore, the Service did not allocate personnel to perform the search. (Piersol Decl.  ¶6.)  Because plaintiff did not agree to pay reasonable search fees, the Service was not required to search for the Transcripts and Non-Control Numbered Documents.   Additionally, plaintiff did not agree to pay the duplication fees associated with the Reel-to-Reel Audio Tapes.  Accordingly, the Service

---

[2] I.R.M. 11.3.5.7.1. *Copies.*

is not required to produce the Reel-to-Reel Audio Tapes; therefore, the Service has not wrongfully withheld the tapes.

II.

THE INTERNAL REVENUE SERVICE'S WITHHOLDINGS ARE JUSTIFIED
UNDER THE GOVERNING FOIA EXEMPTIONS.

**A.    5 U.S.C. § 552(b)(3) in Conjunction with 26 U.S.C. § 6103(a)**

The Service has properly withheld under 5 U.S.C. § 552(b)(3), in conjunction with 26 U.S.C. § 6103(a), certain documents that consist of third party tax return information in their entirety or portions of documents that reference third party taxpayers as described in paragraph 9 of Piersol's Declaration and paragraph 26 of the Service's Statement of Material Facts Not in Genuine Dispute (the "Material Facts").  FOIA Exemption 3 allows the withholding of information prohibited from disclosure by another statute under certain circumstances.  5 U.S.C. § 552(b)(3).  Under this exemption, if the Court determines that a relevant statute exists and that any of the withheld information is within the statute's coverage, the material must be withheld no matter how unwise or self-protective the statute may be.  *See* Fund for Constitutional Gov't v. National Archives & Records Serv., 656 F.2d 856, 868 n.29 (D.C. Cir.1981); Goland v. CIA, 607 F.2d 339, 350 n. 65 (D.C. Cir. 1978) (sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage).

Section 6103 of Title 26 is an exempting statute within the meaning of exemption 3; thus, documents protected under § 6103 are exempt from disclosure.  Long v. United

States, 742 F.2d 1173, 1178-79 (9th Cir. 1984) (the basic policy decision in favor of

nondisclosure was one made by Congress and because its applicability is limited by "a

formula whereby the administrator may determine precisely whether disclosure in any

instance would pose the hazard that Congress foresaw"); Lehrfeld v. Richardson, 132

F.3d 1463, 1466 (D.C. Cir. 1998); Tax Analysts v. Internal Revenue Service, 117 F.2d 607,

611 (D.C. Cir. 1997). Section 6103's prohibitions are clear. The section provides that tax

returns and return information are to be kept confidential, unless disclosure is permitted

by Title 26. Church of Scientology of California v. Internal Revenue Service, 484 U.S. 9

(1987). The term "return information" is broadly defined as follows:

> a taxpayer's identity, the nature, source, or amount of his
> income, payments, receipts, deductions, exemptions, credits,
> assets, liabilities, net worth, tax liability, tax withheld,
> deficiencies, overassessments, or tax payments, whether the
> taxpayer's return was, or is being examined, or subject to
> other investigation or processing, or any other data, received
> by, recorded by, prepared by, furnished to, or collected by
> the Secretary with respect to a return or with respect to the
> determination of the existence, or possible existence of
> liability (or the amount thereof) of any person under this title
> for any tax, penalty, interest, fine, forfeiture, or other
> imposition or offense . . . .

 26 U.S.C. § 6103(b)(2)(A).

     The Court of Appeals has held that this definition covers "'virtually any

information collected by the Internal Revenue Service regarding a person's tax liability.'"

Landmark Legal Foundation v. Internal Revenue Service, 267 F.3d 1132, 1135 (D.C. Cir.

2001) (quoting Allan Karnes & Roger Lirely, Striking Back at the Internal Revenue

Service:  Using Internal Revenue Code Provisions to Redress Unauthorized Disclosures of Tax Returns or Return Information, 23 Seton Hall L.Rev. 924, 933 (1993)); see also, Lehrfield, 132 F.3d at 1467 (deferring to the Service determination that documents it receives or creates during an initial investigation of an organization seeking tax-exempt status is "return information").  Moreover, in the event the document is received or collected during an investigation of a person's tax liability or a determination of whether such an investigation should be undertaken, the entire document is "return information"; the Service is not free to withhold only taxpayer identifying information and release the remainder.  See Church of Scientology of Cal., 484 U.S. at 12. 17; Landmark Legal Foundation, 267 F.3d at 1137 (withheld return information included not only identities of third persons requesting the Service to investigate tax-exempt status of certain entities but also the contents of the letters they wrote).  Thus, Exemption 3 broadly authorizes the withholding here of information collected or received by Service personnel in the investigation of taxpayers as well as taxpayer identifying information in documents which are not themselves return information.

       The withheld information consists of the actual tax returns and attached schedules filed by or on behalf of the third party taxpayer; identifying information of a third party taxpayer consisting of, *inter alia,* the name, address and taxpayer identification number of the third party taxpayer; documents recommending investigation and/or prosecution of a third party taxpayer; all correspondence to and from a third party or the third party's representative and all documents comprising the

investigative and/or audit files of the third party taxpayer.  (Piersol Decl. ¶9).  Thus, the

information constitutes tax return information of the third party(ies) as defined in § 6103.

 The records, therefore, are protected from disclosure by FOIA exemption 3.  *See* DeSalvo

v. Internal Revenue Service, 861 F.2d 1217 (10th Cir. 1988).


**B.    5 U.S.C. § 552(b)(5)**

The Service has also justifiably claimed protection under FOIA Exemption 5 for

withholding the documents, or portions thereof, described in paragraph 11 of the Piersol

declaration.   Section 552(b)(5) protects from disclosure under the FOIA "inter-agency or

intra-agency memorandums or letters which would not be available by law to a party

other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).   As the

language suggests, Exemption 5 incorporates those privileges which the government

enjoys in pretrial discovery under relevant statutes and case law.  See United States v.

Weber Aircraft Corp., 465 U.S. 792, 799 (1984); see also, NLRB v. Sears, Roebuck & Co.,

421 U.S. 132, 148 (1975) ("Exemption 5 withholds from a member of the public

documents which a private party could not discover in litigation with the agency.").

Nor are the needs of a particular FOIA plaintiff relevant to whether Exemption 5 applies;

only documents "normally" or "routinely" disclosable in civil discovery are outside

Exemption 5.  Martin v. Office of Special Counsel, Merit Systems Protection Bd., 819 F.2d

1181, 1184 (D.C. Cir. 1987) (citing Sears, Roebuck & Co., 421 U.S. at 149); see also, Weber

Aircraft Corp., 465 U.S. at 799 (test is whether documents "routinely" or "normally"

disclosed upon a showing of relevance).  The Service has justifiably withheld the documents, or portions thereof, described in paragraphs 11-13 of the Piersol declaration based upon their protection under three well-established common law privileges: (1) the attorney work product doctrine; (2) the attorney-client privilege; and (3) the governmental deliberative process privilege.   Cf. Tax Analysts v. Internal Revenue Service, 294 F.3d 71, 76 (D.C. Cir. 2002) (three privileges encompassed in Exemption 5).

     1.    The Attorney Work Product Doctrine

     The Service has also properly withheld documents described at paragraph 12 of the Piersol declaration and paragraph 31 of the Service's Material Facts pursuant to Exemption 5 and the attorney work product doctrine.  The Supreme Court first extended protection to attorney work product in Hickman v. Taylor, 329 U.S. 495 (1947).  There, the Court held that a party could not obtain from the opposing party, without a showing of necessity, written statements obtained by the opposing party's attorney and the attorney's mental impressions formed in anticipation of litigation.  Id. at 509-13.  Exemption 5 clearly incorporates the attorney work product doctrine, and that doctrine includes, at a minimum, memoranda prepared by government attorneys in anticipation of litigation setting forth the attorney's view of the case and his litigation strategy.  Sears, Roebuck & Co., 421 U.S. at 154; see also, Tax Analysts v.  Internal Revenue Service, 152 F.Supp.2d 1 (D.D.C. 2001) (authorizing withholding of Technical Assistances under Exemption 5 and attorney work product doctrine because they were prepared in anticipation of litigation), aff'd in part, rev'd in part, 294 F.3d 71 (D.C. Cir. 2002);

Delaney, Midgail & Young v. Internal Revenue Service, 826 F.2d 124 (D.C. Cir. 1987) (documents properly withheld even though no litigation actually occurred). Exemption 5 authorizes withholding regardless of whether the applicable material is deliberative or factual, Martin, 819 F.2d at 1185-86, and regardless of whether it constitutes agency working law. Tax Analysts v. Internal Revenue Service, 152 F.Supp.2 at 18.

The Service has properly withheld documents here under Exemption 5 and the attorney work product doctrine. They are documents prepared by Chief Counsel and DOJ attorneys during, and in reasonable anticipation of, various judicial proceedings arising out of the investigation and subsequent prosecutions of Stonehill, Brooks and numerous third party taxpayers. (Piersol Decl. ¶12.) The information being withheld includes the mental impressions, conclusions, opinions and litigation strategy of Chief Counsel attorneys, DOJ attorneys and the investigators (including Special Agents, Revenue Agents and Revenue Service Representatives) for use in, and in anticipation of, various court proceedings. (Id.) Thus, these are clearly exempt under 5 U.S.C. § 552(b)(5) and the attorney work product privilege.

2.    The Attorney-Client Privilege

The Service has also properly withheld documents described at paragraph 11 of the Piersol declaration and paragraph 29 of the Service's Material Facts pursuant to Exemption 5 and the attorney-client privilege. The attorney-client privilege is one of the common law privileges encompassed within Exemption 5. Sears, Roebuck & Co., 421 U.S. at 154. The attorney-client privilege has been defined as "confidential

21

communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *See* Mead Data Central, Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977). The attorney-client privilege operates under the theory that the legal system works best if clients feel free to engage in "full and frank communications" with their attorney. *See* Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); Mead Data Central, Inc. v. United States Dep't of the Air Force, 566 F.2d at 252. While the privilege's purpose is to protect the client's communications with his attorney, the privilege is also extended to attorney communications with the client because divulging the latter communications might inadvertently disclose the former. *See* Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980); *see also*, Upjohn Co., 449 U.S. at 390; Schlefer v. United States, 702 F.2d 233, 245 (D.C. Cir. 1983).

The information being withheld based on the attorney-client privilege contains confidential legal advice and facts necessary to the legal advice, from and/or to Chief Counsel  and DOJ attorneys with expertise in legal issues, *e.g.*, the legal ramifications of entering into settlement agreements and prosecuting simultaneous tax cases having inter-related financial transactions and/or defendants, to their clients. (Piersol Decl. ¶11).  Accordingly, the Service has properly withheld the documents described in paragraph 11 of the Piersol declaration and paragraph 29 of the Service's Statement of Undisputed Material Facts as exempt from disclosure under 5 U.S.C. § 552(b)(5) and the attorney-client privilege.

3. <u>The Governmental Deliberative Process Privilege</u>

The Service has justifiably withheld the documents and portions thereof described at paragraph 13 of the Piersol declaration and paragraph 36 of the Service's Material Facts, under Exemption 5 in conjunction with the governmental deliberative process privilege.   Exemption 5 indisputably includes within its ambit documents falling under the governmental deliberative process privilege. <u>Sears, Roebuck & Co.</u>, 421 U.S. at 150; <u>EPA v. Mink</u>, 410 U.S. 73, 87 (1973).  The privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" <u>Sears, Roebuck & Co.</u>, 421 U.S. at 150 (*quoting* <u>Carl Zeiss Stiftung v. V.E.B. Carl Zeisee, Jena</u>, 40 F.R.D. 318, 324 (D.D.C. 1966)).  It also protects other subjective documents reflecting the author's personal opinions prior to agency adoption of a policy. <u>Tax Analysts</u>, 294 F.3d at 80. Disclosure of such documents could inhibit "'frank discussion of legal or policy matters'" leading to weaker decisions and policies. <u>Sears, Roebuck & Co.</u>, 421 U.S. at 150; *see also*, <u>Mink</u>, 470 U.S. at 87; <u>Tax Analysts</u>, 294 F.3d at 80.  In determining whether the governmental deliberative process privilege protects a particular document, that document must be both predecisional and deliberative in nature. <u>Mapother v. Department of Justice</u>, 3 F.3d 1533, 1537 (D.C. Cir. 1993); <u>Judicial Watch, Inc.</u>, 108 F.Supp.2d at 35.

The Service withheld drafts of documents and other records, either in part or in full, containing advisory opinions and recommendations generated during the course of

23

Chief Counsel and DOJ attorneys' review and consideration of various legal guidance in conjunction with agency positions. (Piersol Decl. ¶13.)  Additionally, the Service withheld documents that reflect the opinions or recommendations of agency personnel involved in the drafting and review of such guidance.

The Documents Are "Predecisional"

The Service's withholdings here meet the first of the two requirements – that the documents must be predecisional.  Predecisional means "antecedent to the adoption of an agency policy."  Jordan v. United States Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc).  Piersol specifically states that "[a]ll of the records being withheld pursuant to the deliberative process privilege are predecisional."  (Piersol Decl. ¶13.) Piersol  further elaborates on the preparation of these documents in a manner that makes clear that the documents, in fact, predate the relevant decisions: "These documents were prepared by components within the agency, primarily within Chief Counsel, to assist the lead DOJ attorney and tax court attorneys handling the various litigation cases around the country involving Stonehill, Brooks and several third party taxpayers before reaching final decisions on how certain issues would be treated."  (Id.)  Thus, there can be no genuine dispute that the withheld documents and portions thereof are predecisional.

<u>The Documents Are "Deliberative in Nature"</u>

The withheld material is also deliberative in nature. The governmental deliberative process privilege does not protect only deliberative – as opposed to factual – communications; it protects from disclosure *all* communications which would expose publicly the agency's deliberative process. <u>Russell v. Department of the Air Force</u>, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *see also*, <u>Dudman Comm. Corp. v. Department of the Air Force</u>, 815 F.2d 1565, 1568 (D.C. Cir. 1987) (asking whether disclosure would expose agency decisionmaking process and discourage candid discussion); <u>Hamilton Securities Group, Inc. v. Department of Housing and Urban Dev.</u>, 106 F.Supp.2d 23, 31 (D.D.C. 2000) (same), <u>aff'd</u>, 2001 WL 238162 (D.C. Cir. Feb. 23, 2001). The withheld information contains opinions and/or recommendations reflecting the "give-and-take" of the agency's deliberative processes prior to the issuance of final guidance. <u>Cf. Hamilton Securities Group, Inc.</u>, 106 F.Supp.2d at 31. As Piersol sets forth in her declaration, the withheld information contains opinions and/or recommendations reflecting the "give-and-take" of the agency's deliberative processes leading to a decision on issues affecting litigation, including but not limited to, whether to file cases in the tax and district courts and what charges should be brought in companion criminal cases. (Piersol Decl. ¶13.) Moreover, the potential for the public seeing the changes made from the draft version of a document to the final version would "stifle the creative thinking and candid exchange of ideas ..." <u>Dudman Comm. Corp</u>., 815 F.2d at 1569 (draft manuscript of history of Air Force in Vietnam between 1961 and 1964 properly withheld); <u>see also</u>, <u>Russell</u>, <u>supra</u>

(draft of Air Force historical document on use of herbicides in the Vietnam War, including factual summaries, properly withheld).  Disclosure of the withheld information would expose the decision-making processes of the agency, including the Office of Chief Counsel, would discourage candid discussion within the agency. (Piersol Decl. ¶13.)  Additionally, with respect to the final decisions that were made by various executives within the agency regarding the positions that should be taken with respect to the cases, the final decision-makers did not adopt or incorporate the deliberations contained in these withheld documents.(Id.)

   To the extent any factual information was so inextricably connected to the deliberative material that its disclosure would cause harm to the agency's deliberations, the information was withheld. (Id.)  Also, when documents contained selective facts upon which analysis, opinions and recommendations were made, such that they too, reflect agency deliberations, those facts were withheld. (Id.)  Finally, the records withheld under FOIA exemption (b)(5) and the deliberative process privilege were not disclosed outside the agency or the Department of Justice personnel serving as counsel in the Stonehill litigation.  (Id.)  Accordingly, the documents described in the Piersol declaration and the Service's Material Facts are deliberative in nature and properly withheld.

### D.  5 U.S.C. § 552(b)(7)

   The documents outlined in the declaration of Piersol under this exemption are documents compiled for law enforcement purposes, thereby meeting the threshold test

of Exemption 7.   With respect to the Service, as a general proposition, the Secretary of

the Treasury and the Commissioner of Internal Revenue are charged with the

responsibility of administering and enforcing the Internal Revenue Code.   The Service's

statutory duty and powers of investigation are stated in very broad terms in section 7601

of the Internal Revenue Code.   In examining the purpose of section 7601, the Supreme

Court, acknowledged that, given our tax system's reliance on self-reporting, some

persons will try to outwit the system:

> Thus, §7601 gives the Internal Revenue Service a broad
> mandate to investigate and audit 'persons who may be liable'
> for taxes and §7602 provides the power to 'examine any
> books, papers, records or other data which may be relevant . .
> . and to summon . . . any person having possession . . . of
> books of account . . . relevant or material to such inquiry.'  Of
> necessity, the investigative authority so provided is not
> limited to situations in which there is probable cause, in the
> traditional sense, to believe that a violation of the tax law
> exists.   The purpose of the statutes is not to accuse, but to
> inquire.   Although such investigations unquestionably
> involve some invasion of privacy, they are essential to our
> self-reporting system, and the alternatives could well involve
> far less agreeable invasions of house, business, and records.

United States v. Bisceglia, 420 U.S. 141, 145 (1975) (citations omitted).

Further, the Supreme Court has explained that the power of the Internal Revenue

Service to investigate does not depend on a case or controversy for power to get

evidence, but can investigate "merely on suspicion that the law is being violated, or even

just because it wants assurance that it is not."   United States v. Powell, 379 U.S. 48, 57

(1964 (quoting United States v. Morton Salt Co., 338 U.S. 632, 643 (1950)).

27

It is clear that documents compiled in investigations or proceedings in the civil or criminal context are within the meaning of "records or information compiled for law enforcement purposes." Tax Analysts v. Internal Revenue Service, 294 F.3d at 77. "A tax audit is certainly performed in aid of enforcement of our tax laws, civil and criminal, and there should be no distinction under (b)(7) between monitoring activities and prosecutorial activities, both of which serve law enforcement purposes." B. & C. Tire Co. v. Internal Revenue Service, 376 F. Supp. 708, 713 n.11 (N.D. Ala. 1974).

In order to invoke Exemption 7, the Service must prove a law enforcement purpose for its compilation of information. *See* John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989), reh'g denied, 493 U.S. 1064 (1990). Since the enactment of the 1986 amendments to the FOIA, the District of Columbia Circuit has held that in order to invoke Exemption 7, the agency need merely establish a nexus "between [its] activity" (not a particular investigation) "and its law enforcement duties." *See* Keys v. Department of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987).

The declaration of Piersol filed in the present case, establishes that the documents claimed exempt were compiled by the Service in carrying out its duty to enforce and administer the Internal Revenue Code. The information withheld pursuant to Exemption 7 was compiled by the Service for several law enforcement reasons. It is clear that the circumstances under which the information withheld by the Service was compiled meets the threshold test of Exemption 7. As a result, there can be little doubt

28

that the documents at issue in this case are "records or information compiled for law enforcement purposes" within the meaning of Exemption 7.

Exemption 7(D) authorizes the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to disclose the identify of a confidential source.  5 U.S.C. § 552(b)(7)(D).  The question is "not whether the requested *document* is the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential."  Billington v. United States Dep't of Justice, 233 F.3d 581, 585 (D.C.Cir. 2000); *see also* Ferguson v. FBI, 957 F.2d 1059, 1069 (2d Cir. 1992) (holding that 5 U.S.C. § 552(b)(7)(D) "is concerned not with the content of the information, but only with the circumstances in which the information was obtained.")

Sources' identities are protected whenever they have provided information either under an express promise of confidentiality or under circumstances from which such an assurance could be reasonably inferred. *See* Rosenfeld v. United States Dep't of Justice, 57 F.3d 803, 814 (9th Cir. 1995); United States Department of Justice v. Landano, 508 U.S. 165 (1993).   Agencies seeking to invoke Exemption 7(D) must prove an expectation of confidentiality based upon the circumstances of each case. Landano, 508 U.S. at 180.  The nature of the crime and the source's relation to it are the primary factors in determining whether implied confidentiality exists. Landano, 508 U.S. at 179.   Additionally, specific showings of confidentiality can be made on a "generic" basis, when certain

circumstances characteristically support an inference of confidentiality. <u>Landano</u>, 508 U.S. at 177, 179.

The informant in this case provided information under circumstances from which an assurance of confidentiality could be reasonably inferred.  First, the circumstances of the case meet the two primary <u>Landano</u> factors: the nature of the crime and the source's relation to it.  As set forth in Piersol's declaration, the information provided by the informant was provided during the course of the investigation of Stonehill and Brooks. (Piersol Decl. ¶14.)  The information provided by the informant was of a financial nature that, due to the limited access of persons other than Stonehill and Brooks to the information, disclosure of the information would necessarily reveal the identity of the informant. (Id.)  Although Stonehill is deceased, it is reasonable to believe that disclosure of certain personal and factual information contained in the memoranda would allow Stonehill's living co-conspirators and/or beneficiaries to identify the informant who provided information against Stonehill and Brooks on a confidential basis, thereby subjecting the witness to possible harm. (Id.)

Additionally, several other factors imply that the informant expected confidentiality.  For example, the informant, at the time of the interview, refused to meet with the agent at the American Embassy and refused to provide further information once he/she suspected that Stonehill and/or Brooks and/or third parties were suspicious of his/her activities. (Id.)  Additionally, the Philippine Government was attempting to deport Stonehill and Brooks for, among other criminal charges, brutally

assaulting a suspected witness, Meinhart Spielman, who subsequently disappeared

during the deportation proceedings and is presumed dead. (Id.)  These types of

circumstances have been considered sufficient to support a finding of implied

confidentiality. *See* <u>Prescott v. Dep't of Justice</u>, No. 00-0187, slip op. at 4 (D.D.C. Aug. 10,

2001)(finding implied confidentiality where agency attested that sources "had a specific

personal or business relationship with plaintiff...[who] was investigated for possession

and distribution of major quantities of narcotics as well as possession of extremely

violent weapons including machine guns and grenades); <u>Billington v. Dep't of Justice</u>, 11

F. Supp. 2d 45, 67 (D.D.C. 1998)( concluding that investigation of violent organization

involved "exactly the type of serious offenses which would warrant an" inference of

implied confidentiality); <u>Coleman v. FBI</u>, 13 F.Supp. 2d 75, 81-82 (D.D.C. 1998)(Where

there is an ongoing relationship between an informant and the Bureau and their

communication occurs via secret rendezvous, it is reasonable to infer confidentiality);

<u>Greenburg v. United States Dep't of Treasury</u>, 10 F.Supp. 2d 3, 19 (D.D.C. 1998)(ruling

that implied assurance can be inferred when source advised agency he received threat to

life.)  Accordingly, the Service properly withheld documents pursuant to 5 U.S.C. §

552(b)(7)(D).

### E.  <u>5 U.S.C. § 552(b)(3) in conjunction with Fed.R.Crim.P. 6(e)</u>

The Service has properly withheld documents pursuant to Exemption 3 in

conjunction with Fed.R.Crim.P. 6(e).  As set forth above, FOIA Exemption 3 allows the

withholding of information prohibited from disclosure by another statute under certain

circumstances.  5 U.S.C. § 552(b)(3).   Fed.R.Crim.P.6(e) regulates disclosure of matters

occurring before a grand jury.  Fed.R.Crim.P. 6(e) satisfies the basic requirement of

Exemption 3. *See* Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656

F.2d 856, 867 (D.C. Cir. 1981); *see also* United States v. Kearse, 30 Fed. Appx. 85 4th Cir.

2002)(holding that Rule 6(e) prohibits FOIA disclosure of grand jury transcripts.)

The documents withheld in this case include the transcripts of witness testimony

given to the grand jury in connection with Stonehill and/or third party taxpayer.

(Piersol Decl. ¶15.)  Certain documents also contain detailed information which could

only have been derived from grand jury subpoenas, gathered during the course of the

grand jury investigations of Stonehill and/or third party taxpayers.  Because the

documents were prepared during the course of grand jury proceedings or investigation

of Stonehill and because the documents were intended to be used as part of grand jury

proceedings, disclosure would tend to reveal secret aspects of the grand jury's

investigation, including the identities of witnesses, details of evidence gathered during

the course of the investigation, and the strategy and direction of the investigation.

(Piersol Decl. ¶16.)  Accordingly, these documents are appropriately protected from

disclosure pursuant to FOIA exemption (b)(3) in conjunction with Fed.R.Crim.P. 6(e).

### F. Exemption 3 and 26 U.S.C. § 6105 and 6103(e)(7)

The Service has properly withheld, pursuant to Exemption 3 and 26 U.S.C. §§

6103(e)(7) and 6105, the information described in paragraph 54 of the Service's Material

Facts.  This information was received from the following five foreign taxing authorities:

Canada, Switzerland, Japan, Germany, and Australia. (Lew Decl. ¶3.) Each of the five

tax treaties provides that the information obtained pursuant to the tax treaty is to be

treated as confidential or secret under the treaty. (Lew Decl. ¶4.)

26 U.S.C. § 6105(a) generally proscribes the disclosure of tax convention

information, including information exchanged pursuant to a tax convention which is

treated as confidential or secret under the convention. Congress intended this to be –

and it is – a qualifying nondisclosure statute under Exemption 3. *See* Tax Analysts v.

Internal Revenue Service, 217 F.Supp.2d 23, 26 (D.D.C. 2002) (citing H.R. Conf. Rep. No.

106-1033, at 1012 (2000)); *see also*, Tax Analysts v. Internal Revenue Service, 152

F.Supp.2d 1, 10 (D.D.C. 2001), aff'd in part, rev'd in part, 294 F.3d 71 (D.C. Cir. 2002).

The withheld information clearly fits within the definition of "tax convention

information." 26 U.S.C. § 6105(c)(1)(E) includes in the definition of tax convention

information "information exchanged pursuant to a tax convention which is treated as

confidential or secret under the tax convention." *See also* Joint Committee on Taxation,

General Explanation of Tax Legislation Enacted in the 106th Congress (JCS-2-01), at 147

(April 19, 2001) ("The Congress intends that tax convention information include

documents and any other information that reflects tax convention information."); *see*

*also*, Tax Analysts, supra (holding that information in internal The Service Technical

Assistance memoranda which was received pursuant to a tax convention was itself "tax

convention information"). Because the information that is being withheld constitutes

"tax convention information" as defined under 26 U.S.C. §6105(c)(1), it is exempt from disclosure.(Lew Decl. ¶8.)

As set forth above, 26 U.S.C. §6103 is an exempting statute within the meaning of exemption 3. Congress has provided in 26 U.S.C. § 6103(a) that tax return information generally may not be disclosed. It further provided in 26 U.S.C. § 6103(e)(7) that a taxpayer may inspect his or her own tax return information only if the Secretary of the Treasury or his delegate determines that such disclosure would not seriously impair Federal tax administration. If the Secretary's delegate has determined the opposite – that disclosure would seriously impair tax administration – Congress has statutorily provided that the return information may not be disclosed. *See e.g.* McQueen v. United States, 264 F. Supp. 2d 502, 516 (S.D. Tex 2003); Gibbs Int'l, Inc. v. Internal Revenue Service, No. 7:96-996-13, slip op. at 1 (D.S.C. 1996)(stating "disclosure of the documents would chill future cooperation with foreign government treaty partners"); Church of Scientology v. Internal Revenue Service, 1991 U.S. Dist. LEXIS 3008, at *3 (C.D.Cal. 1991)(concluding that release of documents referring to information obtainable under various treaties would chill future cooperation of foreign governments and tax-treaty partners.")

If the Secretary (or his delegate), after consultation with each of the five treaty partners, finds that a treaty partner objects to disclosure of any or all of the documents containing information that it provided to the United States, then the disclosure of that information would constitute serious impairment of tax administration. (Lew Decl. ¶8.)

34

In that regard, the Internal Revenue Service is withholding certain documents, either in whole or in part, because a determination has been made by the Secretary (or his delegate) that disclosure of such documents would constitute serious impairment of tax administration. (Id.)  Accordingly, the documents described in paragraph 54 of the Service's Material Facts and more particularly described in the <u>Vaughn</u> index, have been properly withheld pursuant to FOIA exemption (b)(3) in conjunction with 26 U.S.C. §§ 6103 and 6105.

CONCLUSION

For the reasons stated above, the Service search was adequate, and its withholdings justified.  Accordingly, based upon the undisputed facts, the Service is entitled to judgment as a matter of law.  The Service therefore respectfully requests that this Court grant its partial motion for summary judgment and dismiss this action with prejudice.

//

//

//

//

Dated: March 19, 2007.

Respectfully submitted,

/s/ Brittney N. Campbell
DAVID M. KATINSKY
BRITTNEY N. CAMPBELL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6435

OF COUNSEL:

JEFFREY TAYLOR
United States Attorney

<u>CERTIFICATE OF SERVICE</u>

IT IS CERTIFIED that service of the foregoing defendant's Memorandum in

Support of Motion for Partial Summary Judgment has been made this 19th day of

March, 2007, by mailing, postage prepaid, addressed to:

> JOHN R. GERSTEIN
> ROBERT E. HEGGESTAD
> JONATHAN COHEN
> Ross, Dixon & Bell, LLP
> 2001 K Street, N.W.
> Washington, D.C. 20006-1040.

>  /s/ Brittney N. Campbell
> BRITTNEY N. CAMPBELL