1979 WL 182394 (U.S. Treaty), T.I.A.S. No. 10,773, 35 U.S.T. 1999

UNITED STATES OF AMERICA
Australia

Double Taxation: Taxes on Income

Double Taxation: Taxes on Income

Convention signed at Sydney August 6, 1982;
Transmitted by the President of the United States of America to the Senate
September 14, 1982 (Treaty Doc. No. 97-28, 97th Cong., 2d Sess.);
Reported favorably by the Senate Committee on Foreign Relations July 11, 1983
(S. Ex. Rept. No. 98-16, 98th Cong., 1st Sess.);
Advice and consent to ratification by the Senate July 27, 1983;
Ratified by the President August 23, 1983;
Ratified by Australia October 19, 1983;
Ratifications exchanged at Washington October 31, 1983;
Proclaimed by the President December 5, 1983;
Entered into force October 31, 1983.

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA
A PROCLAMATION
CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF AUSTRALIA FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME
ARTICLE 1
Personal Scope
ARTICLE 2
Taxes Covered
ARTICLE 3
General Definitions
ARTICLE 4
Residence
ARTICLE 5
Permanent Establishment
ARTICLE 6
Income from Real Property
ARTICLE 7
Business Profits
ARTICLE 8
Shipping and Air Transport
ARTICLE 9
Associated Enterprises
ARTICLE 10
Dividends
ARTICLE 11
Interest
ARTICLE 12
Royalties
ARTICLE 13
Alienation of Property
ARTICLE 14
Independent Personal Services
ARTICLE 15

Dependent Personal Services
ARTICLE 16
Limitation on Benefits
ARTICLE 17
Entertainers
ARTICLE 18
Pensions, Annuities, Alimony and Child Support
ARTICLE 19
Governmental Remuneration
ARTICLE 20
Students
ARTICLE 21
Income Not Expressly Mentioned
ARTICLE 22
Relief from Double Taxation
ARTICLE 23
Non-Discrimination
ARTICLE 24
Mutual Agreement Procedure
ARTICLE 25
Exchange of Information
ARTICLE 26
Diplomatic and Consular Privileges
ARTICLE 27
Miscellaneous
ARTICLE 28
Entry into Force
ARTICLE 29
Termination

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

CONSIDERING THAT:

   The Convention between the Government of the United States of America and the Government of Australia for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income was signed at Sydney on August 6, 1982, the text of which is hereto annexed;

   The Senate of the United States of America by its resolution of July 27, 1983, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Convention;

   The Convention was ratified by the President of the United States of America on August 23, 1983, in pursuance of the advice and consent of the Senate, and was ratified on the part of Australia;

   The instruments of ratification of the Convention were exchanged at Washington on October 31 1983, and accordingly the Convention entered into force on October 31, 1983, its provisions to have effect as specified in Article 28;

   NOW, THEREFORE, I, Ronald Reagan, President of the United States of America, proclaim and make public the Convention to the end that it be observed and fulfilled with good faith on and after October 31, 1983, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

   IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this fifth day of December in the year of our Lord one thousand nine hundred eighty-three and of the Independence of the United States of America the two hundred eighth.

RONALD REAGAN
[SEAL]

By the President:

GEORGE P. SHULTZ
Secretary of State

CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF AUSTRALIA FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION
OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME

The Government of the United States of America and the Government of Australia,
Desiring to conclude a Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income,
Have agreed as follows:

ARTICLE 1

Personal Scope

(1) Except as otherwise provided in this Convention, this Convention shall apply to persons who are residents of one or both of the Contracting States.
(2) This Convention shall not restrict in any manner any exclusion, exemption, deduction, rebate, credit or other allowance accorded from time to time:
(a) by the laws of either Contracting State; or
(b) by any other agreement between the Contracting States.
(3) Notwithstanding any provision of this Convention, except paragraph (4) of this Article, a Contracting State may tax its residents (as determined under Article 4 (Residence)) and individuals electing under its domestic law to be taxed as residents of that State, and by reason of citizenship may tax its citizens, as if this Convention had not entered into force. For this purpose, the term "citizen" shall, with respect to United States source income according to United States law relating to United States tax, include a former citizen whose: loss of citizenship had as one of its principal purposes the avoidance of tax, but only for a period of 10 years following such loss.
(4) The provisions of paragraph (3) shall not affect:
(a) the benefits conferred by a Contracting State under paragraph (2) of Article 9 (Associated Enterprises), paragraph (2) or (6) of Article 18 (Pensions, Annuities, Alimony and Child Support), Article 22 (Relief from Double Taxation), 23 (Non-Discrimination), 24 (Mutual Agreement Procedure) or paragraph (1) of Article 27 (Miscellaneous); or
(b) the benefits conferred by a Contracting State under Article 19 (Governmental Remuneration), 20 (Students) or 26 (Diplomatic and Consular Privileges) upon individuals who are neither citizens of, nor have immigrant status in, that State (in the case of benefits conferred by the United States), or who are not ordinarily resident in that State (in the case of benefits conferred by Australia).

ARTICLE 2

Taxes Covered

(1) The existing taxes to which this Convention shall apply are:

  (a) in the United States: the Federal income taxes imposed by the Internal Revenue Code, [FN1] but excluding the accumulated earnings tax and the personal holding company tax; and

FN1. 68A Stat. 3; 26 U.S.C. §§ 1-8023.
End of Footnote(s).

  (b) in Australia: the Australian income tax, including the additional tax upon the undistributed amount of the distributable income of a private company.
  (2) This Convention shall also apply to any identical or substantially similar taxes which are imposed by either Contracting State after the date of signature of this Convention in addition to, or in place of, the existing taxes. At the end of each calendar year, the competent authority of each Contracting State shall notify the competent authority of the other Contracting State of any substantial changes which have been made during that year in the laws of his State relating to the taxes to which this Convention applies or in the official interpretation of those laws or of this Convention.

ARTICLE 3

General Definitions

  (1) For the purposes of this Convention, unless the context otherwise requires:
  (a) the term "person" includes an individual, an estate of a deceased individual, a trust, a partnership, a company and any other body of persons;
  (b) the term "company" means any body corporate or any entity which is treated as a company or body corporate for tax purposes;
  (c) the terms "enterprise of one of the Contracting States" and "enterprise of the other Contracting State" mean an enterprise carried on by a resident of Australia or an enterprise carried on by a resident of the United States, as the context requires;
  (d) the term "international traffic" means any transport by a ship or aircraft, except where such transport is solely between places within a Contracting State;
  (e) the term "competent authority" means:
  (i) in the case of the United States: the Secretary of the Treasury or his delegate; and
  (ii) in the case of Australia: the Commissioner of Taxation or his authorized representative;
  (f) the terms "Contracting State", "one of the Contracting States" and "the other Contracting State" mean the United States or Australia, as the context requires;
  (g) (i) the term "United States corporation" means a corporation which, under United States law relating to United States tax, is a domestic corporation or an unincorporated entity treated as a domestic corporation, and which is not, under the law of Australia relating to Australian tax, a resident of Australia; and
  (ii) the term "Australian corporation" means a company, as defined under the law of Australia relating to Australian tax, which, under that law, is a resident of Australia, and which is not, under United States law relating to United States tax, a domestic corporation or an unincorporated entity treated as a domestic corporation;
  (h) the term "State" means any National State, whether or not one of the Contracting States;
  (i) the term "United States tax" means tax imposed by the United States to which this Convention applies by virtue of Article 2 (Taxes Covered) and the term "Australian tax" means tax imposed by Australia to which this Convention applies by virtue of Article 2 (Taxes Covered), but neither term includes any amount which represents a penalty or interest imposed under the law of either Contracting State relating to United States tax or Australian tax;
  (j) (i) the term "United States" means the United States of America; and
  (ii) when used in a geographical sense, the term "United States" means the states thereof and the District of Columbia and also includes:
  (A) the territorial waters thereof; and
  (B) the sea-bed and subsoil of the submarine areas adjacent to the coast thereof, but beyond the territorial waters, over which the United States exercises rights, in accordance with

international law, for the purposes of exploration for, or exploitation of, the natural resources of those areas;

(k) the term "Australia" means the Commonwealth of Australia and, when used in a geographical sense, includes:

(i) the Territory of Norfolk Island;
(ii) the Territory of Christmas Island;
(iii) the Territory of Cocos (Keeling) Islands;
(iv) the Territory of Ashmore and Cartier Islands;
(v) the Coral Sea Islands Territory; and
(vi) any area adjacent to the territorial limits of Australia or of the said Territories in respect of which there is for the time being in force, consistently with international law, a law of Australia or of a State or part of Australia or of a Territory aforesaid dealing with the exploitation of any of the natural resources of the sea-bed and subsoil of the continental shelf;

(l) the terms "resident of one of the Contracting States" and "resident of the other Contracting State" mean a resident of Australia or a resident of the United States, as the context requires.

(2) As regards the application of this Convention by one of the Contracting States, any term not defined herein shall, unless the context otherwise requires, have the meaning which it has under the laws of that State relating to the taxes to which this Convention applies.

ARTICLE 4

Residence

(1) For the purposes of this Convention:
(a) a person is a resident of Australia if the person is:
(i) an Australian corporation; or
(ii) any other person (except a company as defined under the law of Australia relating to Australian tax) who, under that law, is a resident of Australia,
provided that, in relation to any income, a person who:
(iii) is subject to Australian tax on income which is from sources in Australia; or
(iv) is a partnership, an estate of a deceased individual or a trust (other than a trust that is a provident, benefit, superannuation or retirement fund, or that is established for public charitable purposes or for the purpose of enabling scientific research to be conducted by or in conjunction with a public university or public hospital, the income of which is exempt from tax under the law of Australia relating to Australian tax),
shall not be treated as a resident of Australia except to the extent that the income is subject to Australian tax as the income of a resident, either in the hands of that person or in the hands of a partner or beneficiary, or, if that income is exempt from Australian tax, is so exempt solely because it is subject to United States tax; and
(b) a person is a resident of the United States if the person is:
(i) a United States corporation; or
(ii) any other person (except a corporation or unincorporated entity treated as a corporation for United States tax purposes) resident in the United States for purposes of its tax, provided that, in relation to any income derived by a partnership, an estate of a deceased individual or a trust, such person shall not be treated as a resident of the United States except to the extent that the income is subject to United States tax as the income of a resident, either in its hands or in the hands of a partner or beneficiary, or, if that income is exempt from United States tax, is exempt other than because such person, partner or beneficiary is not a United States person according to United States law relating to United States tax.

(2) Where by application of paragraph (1) an individual is a resident of both Contracting States, he shall be deemed to be a resident of the State:
(a) in which he maintains his permanent home;
(b) if the provisions of sub-paragraph (a) do not apply, in which he has an habitual abode if he has his permanent home in both Contracting States or in neither of the Contracting States; or

(c) if the provisions of sub-paragraphs (a) and (b) do not apply, with which his personal and economic relations are closer if he has an habitual abode in both Contracting States or in neither of the Contracting States.

For the purposes of this paragraph, in determining an individual's permanent home, regard shall be given to the place where the individual dwells with his family, and in determining the Contracting State with which an individual's personal and economic relations are closer, regard shall be given to his citizenship (if he is a citizen of one of the Contracting States).

(3) An individual who is deemed to be a resident of one of the Contracting States for any year of income, or taxable year, as the case may be by reason of the provisions of paragraph (2) shall, for all purposes of this Convention, be deemed to be a resident only of that State for such year.

## ARTICLE 5

### Permanent Establishment

(1) For the purposes of this Convention, the term "permanent establishment" means a fixed place of business through which the business of an enterprise is wholly or partly carried on.

(2) The term "permanent establishment" shall include especially:
(a) a place of management;
(b) a branch;
(c) an office;
(d) a factory;
(e) a workshop;
(f) a mine, an oil or gas well, a quarry or any other place of extraction of natural resources;
(g) an agricultural, pastoral or forestry property;
(h) a building site or construction, assembly or installation project which exists for more than 9 months; and
(i) an installation, drilling rig or ship that, for an aggregate period of at least 6 months in any 24 month period, is used by an enterprise of one of the Contracting States in the other Contracting State for dredging or for or in connection with the exploration or exploitation of natural resources of the sea-bed and subsoil.

(3) Notwithstanding paragraphs (1) and (2), an enterprise of one of the Contracting States shall not be regarded as having a permanent establishment solely as a result of one or more of the following:
(a) the use of facilities for the purpose of storage, display or delivery of goods or merchandise belonging to the enterprise;
(b) the maintenance of a stock of goods or merchandise belonging to the enterprise for the purpose of storage, display or delivery;
(c) the maintenance of a stock of goods or merchandise belonging to the enterprise for the purpose of processing by another enterprise;
(d) the maintenance of a fixed place of business for the purpose of purchasing goods or merchandise, or for collecting information, for the enterprise;
(e) the maintenance of a fixed place of business for the purpose of activities which have a preparatory or auxiliary character, such as advertising or scientific research, for the enterprise;
(f) the maintenance of a building site or construction, assembly or installation project which does not exist for more than 9 months; or
(g) the use by that enterprise in the other Contracting State, of an installation, drilling rig or ship for dredging, or for or in connection with the exploration or exploitation of natural resources of the sea-bed and subsoil, provided that such use is not for an aggregate period of at least 6 months in any 24 month period.

(4) Notwithstanding paragraphs (1) and (2), an enterprise of one of the Contracting States shall be deemed to have a permanent establishment in the other Contracting State if:
(a) it carries on business in that other State through a person, other than an agent of independent status to whom paragraph (5) applies, who has authority to conclude contracts on behalf of that enterprise and habitually exercises that authority in that other State, unless the

activities of such person are limited to those mentioned in paragraph (3) which, if exercised through a fixed place of business, would not make that fixed place of business a permanent establishment under the provisions of that paragraph;
   (b) it maintains substantial equipment for rental or other purposes within that other State (excluding equipment let under a hire-purchase agreement) for a period of more than 12 months;
   (c) it engages in supervisory activities in that other State for more than 9 months in any 24 month period in connection with a building site or construction, assembly or installation project in that other State; or
   (d) it has goods or merchandise belonging to it that:
   (i) were purchased by it in that other State, and not subjected to prior substantial processing outside that other State; or
   (ii) were produced by it or on its behalf in that other State,
   and are, after such purchase or production, subjected to substantial processing in that other State by an enterprise where either enterprise participates directly or indirectly in the management, control or capital of the other enterprise, or where the same persons participate directly or indirectly in the management, control or capital of both enterprises.
   (5) An enterprise of one of the Contracting States shall not be deemed to have a permanent establishment in the other Contracting State merely because that enterprise carries on business in that other State through a broker, general commission agent, or any other agent of independent status, where such broker or agent is acting in the ordinary course of his business as a broker, general commission agent or other agent of independent status.
   (6) The fact that a company which is a resident of one of the Contracting States controls or is controlled by a company which is a resident of the other Contracting State, or which carries on business in that other State (whether through a permanent establishment or otherwise), shall not of itself constitute either company a permanent establishment of the other.
   (7) The principles set forth in the preceding paragraphs of this Article shall be applied in determining for purposes of this Convention whether there is a permanent establishment in a State other than one of the Contracting States and whether an enterprise other than an enterprise of one of the Contracting States has a permanent establishment in one of the Contracting States.

ARTICLE 6

Income from Real Property

   (1) Income from real property may be taxed by the Contracting State in which such real property is situated.
   (2) For the purposes of this Convention:
   (i) a leasehold interest in land, whether or not improved, shall be regarded as real property situated where the land to which the interest relates is situated; and
   (ii) rights to exploit or to explore for natural resources shall be regarded as real property situated where the natural resources are situated or sought.

ARTICLE 7

Business Profits

   (1) The business profits of an enterprise of one of the Contracting States shall be taxable only in that State unless the enterprise carries on business in the other Contracting State through a permanent establishment situated therein. If the enterprise carries on business as aforesaid, the business profits of the enterprise may be taxed in the other State but only so much of them as is attributable to that permanent establishment.
   (2) Subject to the provisions of paragraph (3), where an enterprise of one of the Contracting States carries on business in the other Contracting State through a permanent establishment situated therein, there shall in each Contracting State be attributed to that permanent

establishment the business profits which it might be expected to make if it were a distinct and independent enterprise engaged in the same or similar activities under the same or similar conditions and dealing wholly independently with the enterprise of which it is a permanent establishment or with other enterprises with which it deals.

(3) In the determination of the business profits of a permanent establishment, there shall be allowed as deductions expenses which are reasonably connected with the profits (including executive and general administrative expenses) and which would be deductible if the permanent establishment were an independent entity which paid those expenses, whether incurred in the Contracting State in which the permanent establishment is situated or elsewhere.

(4) No business profits shall be attributed to a permanent establishment by reason of the mere purchase by that permanent establishment of goods or merchandise for the enterprise.

(5) For the purposes of the preceding paragraphs of this Article, the business profits to be attributed to the permanent establishment shall be determined by the same method year by year unless there is good and sufficient reason to the contrary.

(6) Where business profits include items of income which are dealt with separately in other Articles of this Convention, then the provisions of those Articles shall not be affected by the provisions of this Article.

(7) Nothing in this Article shall affect the application of any law of a Contracting State relating to the determination of the tax liability of a person in cases where the information available to the competent authority of that State is inadequate to determine the profits to be attributed to a permanent establishment, provided that, on the basis of the available information, the determination of the profits of the permanent establishment is consistent with the principles stated in this Article.

(8) Nothing in this Article shall in a Contracting State prevent the operation in that State of its law relating specifically to the taxation of any person who carries on the business of any form of insurance (as long as that law as in effect on the date of signature of this Convention is not varied otherwise than in minor respects so as not to affect its general character).

## ARTICLE 8

### Shipping and Air Transport

(1) Profits derived by a resident of one of the Contracting States from the operation in international traffic of ships or aircraft shall be taxable only in that State. For the purposes of this Article, profits from the operation in international traffic of ships or aircraft include:

(a) profits from the lease on a full basis of ships or aircraft operated in international traffic by the lessee, provided that the lessor either operates, ships or aircraft otherwise than solely between places in the other Contracting State or regularly leases ships or aircraft on a full basis; and

(b) profits from the lease of ships or aircraft on a bare boat basis or of containers and related equipment, provided that such lease is merely incidental to the operation in international traffic of ships or aircraft by the lessor and the leased ships or aircraft are operated in international traffic, or the containers and related equipment are used in international traffic, by the lessee.

(2) The provisions of paragraph (1) shall apply to the share of the profits from the operation in international traffic of ships or aircraft derived by a resident of one of the Contracting States through participation in a pool service, in a joint transport operating organization or in an international operating agency.

(3) For the purposes of this Article, profits derived from the carriage by ships or aircraft of passengers, livestock, mail, goods or merchandise shipped in a Contracting State for discharge at another place in that State shall not be treated as profits from the operation in international traffic of ships or aircraft and may be taxed in that State.

## ARTICLE 9

### Associated Enterprises

Where:
(a) an enterprise of one of the Contracting States participates directly or indirectly in the management, control or capital of an enterprise of the other Contracting State; or
(b) the same persons participate directly or indirectly in the management, control or capital of an enterprise of one of the Contracting States and an enterprise of the other Contracting State, and in either case conditions operate between the two enterprises in their commercial or financial relations which differ from those which might be expected to operate between independent enterprises dealing wholly independently with one another, then any profits which, but for those conditions, might have been expected to accrue to one of the enterprises, but, by reason of those conditions, have not so accrued, may be included in the profits of that enterprise and taxed accordingly.
(2) Where profits on which an enterprise of one of the Contracting States has been charged to tax in that State are also included, by virtue of paragraph (1), in the profits of an enterprise of the other Contracting State and taxed accordingly, and the profits so included are profits which might have been expected to have accrued to that enterprise of the other State if the conditions operative between the enterprises had been those which might have been expected to have operated between independent enterprises dealing wholly independently with one another, then the first-mentioned State shall make an appropriate adjustment. to the amount of tax charged on those profits in the first-mentioned State. In determining such an adjustment, due regard shall be had to the other provisions of this Convention and the competent authorities of the Contracting States shall if necessary consult each other.
(3) Nothing in this Article shall affect the application of any law of a Contracting State relating to the determination of the tax liability of a person, including determinations in cases where the information available to the competent authority of that State is inadequate to determine the income to be attributed to an enterprise, provided that, on the basis of the available information, the determination of that tax liability is consistent with the principles stated in this Article.

ARTICLE 10

Dividends

(1) Dividends paid by a company which is a resident of one of the Contracting States for the purposes of its tax, being dividends to which a resident of the other Contracting State is beneficially entitled, may be taxed in that other State.
(2) Such dividends may be taxed in the Contracting State of which the company paying the dividends is a resident for the purposes of its tax, and according to the law of that State, but the tax so charged shall not exceed 15 percent of the gross amount of the dividends.
(3) The term "dividends" in this Article means income from shares and other income assimilated to income from shares by the taxation law of the Contracting State of which the company making the distribution is a resident for the purposes of its tax.
(4) The provisions of paragraph (2) shall not apply if the person beneficially entitled to the dividends, being a resident of one of the Contracting States, carries on business in the other Contracting State, being the State of which the company paying the dividends is a resident, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the holding in respect of which the dividends are paid is effectively connected with such permanent establishment or fixed base. In such a case, the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.
(5) Where a company is a resident of one of the Contracting States, the other Contracting State may not impose any tax on dividends paid by the company, except insofar as:
(a) a resident of that other State is beneficially entitled to the dividends;
(b) the holding in respect of which the dividends are paid is effectively connected with a permanent establishment or a fixed base situated in that other State; or
(c) that other State does not impose a tax of the kind described in paragraph (6) (excluding the accumulated earnings tax and the personal holding company tax imposed by the United States) and the dividends are paid out of profits attributable to one or more permanent

establishments which such company had in that other State, provided that the gross income attributable to such permanent establishments constituted at least 50 percent of such company's gross income from all sources.
Where sub-paragraph (c) applies and sub-paragraphs (a) and (b) do not apply, any such tax shall not exceed 15 percent of the dividends.

(6) Nothing in this Convention shall be construed as preventing a Contracting State from imposing on the income of a company which is a resident of the other Contracting State, tax in addition to the taxes referred to in Article 2 in relation to the first-mentioned Contracting State which are payable by a company which is a resident of the first-mentioned State, provided that any such additional tax shall not exceed 15 percent of the amount by which the taxable income of the first-mentioned company of a year of income exceeds the tax payable on that taxable income to the first-mentioned State. Any tax payable to a Contracting State on the undistributed profits of a company which is a resident of the other Contracting State shall be calculated as if that company were not liable to the additional tax referred to in this paragraph and had paid dividends of such amount that tax equal to the amount of that additional tax would have been payable on the dividends in accordance with paragraph (2) of this Article.

## ARTICLE 11

### Interest

(1) Interest from sources in one of the Contracting States, being interest to which a resident of the other Contracting State is beneficially entitled, may be taxed in that other State.

(2) Such interest may be taxed in the Contracting State in which it has its source, and according to the law of that State, but the tax so charged shall not exceed 10 percent of the gross amount of the interest.

(3) Paragraph (2) shall not apply if the person beneficially entitled to the interest, being a resident of one of the Contracting States, has a permanent establishment in the other Contracting State or performs independent personal services in that other State from a fixed base situated therein and the indebtedness giving rise to the interest is effectively connected with such permanent establishment or fixed base. In such a case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.

(4) Where, owing to a special relationship between the payer and the person beneficially entitled to the interest, or between both of them and some other person, the amount of the interest paid, having regard to the indebtedness for which it is paid, exceeds the amount which might have been expected to have been agreed upon by the payer and the person so entitled in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In that case, the excess part of the amount of the interest paid shall remain taxable according to the law of each Contracting State, but subject to the other provisions of this Convention.

(5) The term "interest" as used in this Convention includes income which, under the taxation Law of the Contracting State in which the income has its source, is assimilated to income from money lent.

(6) A Contracting State may not impose any tax on interest paid by a resident of the other Contracting State, except insofar as:

(a) such interest has its source in the first-mentioned State, or is interest to which a resident of that State is beneficially entitled; or

(b) the indebtedness in respect of which the interest is paid is effectively connected with a permanent establishment or a fixed base of the beneficial owner of the interest situated in the first-mentioned State.

(7) Interest shall be treated as income from sources in a Contracting State when the payer is that State itself or a political subdivision or local authority of that State or a person who is a resident of that State for the purposes of its tax. Where, however, the person paying the interest, whether he is a resident of one of the Contracting States or not, has in one of the Contracting States or outside both Contracting States a permanent establishment or fixed base in connection with which the indebtedness on which the interest is paid was incurred, and such

interest is borne by such permanent establishment or fixed base, then such interest shall be deemed to have its source in the State in which the permanent establishment or fixed base is situated.

ARTICLE 12

Royalties

(1) Royalties from sources in one of the Contracting States, being royalties to which a resident of the other Contracting State is beneficially entitled, may be taxed in that other State.

(2) Such royalties may be taxed in the Contracting State in which they have their source, and according to the law of that State, but the tax so charged shall not exceed 10 percent of the gross amount of the royalties.

(3) Paragraph (2) shall not apply if the person beneficially entitled to the royalties, being a resident of one of the Contracting States, has a permanent establishment in the other Contracting State or performs independent personal services in that other State from a fixed base situated therein, and the property or rights giving rise to the royalties are effectively connected with such permanent establishment or fixed base. In such a case, the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.

(4) The term "royalties" in this Article means:

(a) payments or credits of any kind to the extent to which they are consideration for the use of or the right to use any:

(i) copyright, patent, design or model, plan, secret formula or process, trademark or other like property or right;

(ii) industrial, commercial or scientific equipment, other than equipment let under a hire purchase agreement;

(iii) motion picture films; or

(iv) films or video tapes for use in connection with television or tapes for use in connection with radio broadcasting;

(b) payments or credits of any kind to the extent to which they are consideration for:

(i) the supply of scientific, technical, industrial or commercial knowledge or information owned by any person;

(ii) the supply of any assistance of an ancillary and subsidiary nature furnished as a means of enabling the application or enjoyment of knowledge or information referred to in sub-paragraph (b)(i) or of any other property or right to which this Article applies; or

(iii) a total or partial forbearance in respect of the use or supply of any property or right described in this paragraph; or

(c) income derived from the sale, exchange or other disposition of any property or right described in this paragraph to the extent to which the amounts realized on such sale, exchange or other disposition are contingent on the productivity, use or further disposition of such property or right.

(5) Where, owing to a special relationship between the payer and the person beneficially entitled to the royalties or between both of them and some other person, the amount of the royalties paid or credited, having regard to what they are paid or credited for, exceeds the amount which might have been expected to have been agreed upon by the payer and the person so entitled in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In that case, the excess part of the amount of the royalties paid or credited shall remain taxable according to the law of each Contracting State, but subject to the other provisions of this Convention.

(6) (a) Royalties shall be treated as income from sources in a Contracting State when the payer is that State itself or a political subdivision or local authority of that State or a person who is a resident of that State for the purposes of its tax. Where, however, the person paying the royalties, whether he is a resident of one of the Contracting States or not, has in one of the Contracting States or outside both Contracting States a permanent establishment or fixed base in connection with which the liability to pay the royalties was incurred, and the royalties are

borne by the permanent establishment or fixed base, then the royalties shall be deemed to have their source in the State in which the permanent establishment or fixed base is situated.

(b) Where sub-paragraph (a) does not operate to treat royalties as being from sources in one of the Contracting States, and the royalties relate to use or the right to use in one of the Contracting States of any property or right described in paragraph (4), the royalties shall be treated as income from sources in that State.

ARTICLE 13

Alienation of Property

(1) Income or gains derived by a resident of one of the contracting States from the alienation or disposition of real property situated in the other Contracting State may be taxed in that other State.

(2) For the purposes of this Article:

(a) the term "real property situated in the other Contracting State", where the United States is that other Contracting State, includes a United States real property interest, and real property referred to in Article 6 which is situated in the United States; and

(b) the term "real property", in the case of Australia, shall have the meaning which it has under the Laws in force from time to time in Australia and, without Limiting the foregoing, includes:

(i) real property referred to in Article 6;

(ii) shares or comparable interests in a company, the assets of which consist wholly or principally of real property situated in Australia; and

(iii) an interest in a partnership, trust or estate of a deceased individual, the assets of which consist wholly or principally of real property situated in Australia.

(3) Income or gains derived by an enterprise of one of the Contracting States from the alienation of ships, aircraft or containers operated or used by it in international traffic shall, except to the extent to which that enterprise has been allowed depreciation in the other Contracting State in respect of those ships, aircraft or containers, be taxable only in that State, and income described in sub-paragraph (4)(c) of Article 12 (Royalties) shall be taxable only in accordance with the provisions of Article 12.

(4) For the purposes of this Article, real property consisting of shares in a company referred to in sub-paragraph (2)(b)(ii), and interests in a partnership, trust or estate referred to in sub-paragraph (2)(b)(iii), shall be deemed to be situated in Australia.

ARTICLE 14

Independent Personal Services

Income derived by an individual who is a resident of one of the Contracting States from the performance of personal services in an independent capacity shall be taxable only in that State unless such services are performed in the other Contracting State and:

(a) the individual is present in that other State for a period or periods aggregating more than 183 days in the taxable year or year of income of that other State; or

(b) the individual has a fixed base regularly available to him in that other State for the purpose of performing his activities, in which case so much of the income as is attributable to that fixed base may be taxed in such other State.

ARTICLE 15

Dependent Personal Services

(1) Subject to the provisions of Articles 18 (Pensions, Annuities, Alimony and Child Support) and 19 (Governmental Remuneration), salaries, wages and other similar remuneration derived by an individual who is a resident of one of the Contracting States in respect of an employment

or in respect of services performed as a director of a company shall be taxable only in that State unless the employment is exercised or the services performed in the other Contracting State. If the employment is so exercised or the services so performed, such remuneration as is derived from that exercise or performance may be taxed in that other State.

(2) Notwithstanding the provisions of paragraph (1), remuneration derived by an individual who is a resident of one of the Contracting States in respect of an employment exercised in the other Contracting State or in respect of services performed in the other Contracting State as a director of a company shall be taxable only in the first-mentioned State if:

(a) the recipient is present in that other State for a period or periods not exceeding in the aggregate 183 days in the taxable year or year of income of that other State;

(b) the remuneration is paid by, or on behalf of, an employer or company who is not a resident of that other State; and

(c) the remuneration is not deductible in determining taxable profits of a permanent establishment, a fixed base or a trade or business which the employer or company has in that other State.

(3) Notwithstanding the preceding provisions of this Article, remuneration in respect of an employment exercised aboard a ship or aircraft operated in international traffic by a resident of one of the Contracting States may be taxed in that State.

## ARTICLE 16

### Limitation on Benefits

(1) A person (other than an individual) which is a resident of one of the Contracting States shall not be entitled under this Convention to relief from taxation in the other Contracting State unless:

(a) more than 75 percent of the beneficial interest in such person (or in the case of a company, more than 75 percent of the number of shares of each class of the company's shares) is owned, directly or indirectly, by any combination of one or more of:

(i) individuals who are residents of the United States;
(ii) citizens of the United States;
(iii) individuals who are residents of Australia;
(iv) companies as described in sub-paragraph (b); and
(v) the Contracting States;

(b) it is a company in whose principal class of shares there is substantial and regular trading on a recognized stock exchange in one of the Contracting States; or

(c) the establishment, acquisition and maintenance of such person and the conduct of its operations did not have as one of its principal purposes the purpose of obtaining benefits under the Convention.

(2) For the purposes of sub-paragraph (1)(b), the term "a recognized stock exchange" includes, in relation to the United States, the NASDAQ System owned by the National Association of Securities Dealers, Inc.

(3) Where:

(a) income derived by a trustee is to be treated for the purposes of this Convention as income of a resident of one of the Contracting States; and

(b) the trustee derived the income in connection with a scheme a principal purpose of which was to obtain a benefit under this Convention,

then, notwithstanding any other provision of this Convention, the Convention does not apply in relation to that income.

## ARTICLE 17

### Entertainers

(1) Notwithstanding the provisions of Articles 14 (Independent Personal Services) and 15 (Dependent Personal Services), income derived by entertainers (such as theatrical, motion

picture, radio or television artistes, musicians and athletes) from their personal activities as such may be taxed in the Contracting State in which these activities are exercised, except where the amount of the gross receipts derived by any such entertainer, including expenses reimbursed to him or borne on his behalf, from such activities does not exceed ten thousand United States dollars ($10,000) or its equivalent in Australian dollars for the taxable year or year of income concerned.

(2) Where income in respect of activities exercised by an entertainer in his capacity as such accrues not to the entertainer but to another person, that income may, notwithstanding the provisions of Articles 7 (Business Profits), 14 (Independent Personal Services) and 15 (Dependent Personal Services), be taxed in the Contracting State in which the activities of the entertainer are exercised, unless it is established that neither the entertainer nor any person related to him participates directly or indirectly in any profits of such other person in any manner, including the receipt of deferred remuneration, bonuses, fees, dividends, partnership distributions or other distributions.

ARTICLE 18

Pensions, Annuities, Alimony and Child Support

(1) Subject to the provisions of Article 19 (Governmental Remuneration), pensions and other similar remuneration paid to an individual who is a resident of one of the Contracting States in consideration of past employment shall be taxable only in that State.

(2) Social security payments and other public pensions paid by one of the Contracting States to an individual who is a resident of the other Contracting State or a citizen of the United States shall be taxable only in the first-mentioned State.

(3) Annuities paid to an individual who is a resident of one of the Contracting States shall be taxable only in that State.

(4) The term "pensions and other similar remuneration", as used in this Article, means periodic payments made by reason of retirement or death, in consideration for services rendered, or by way of compensation paid after retirement for injuries received in connection with past employment.

(5) The term "annuities", as used in this Article, means stated sums paid periodically at stated times during life, or during a specified or ascertainable number of years, under an obligation to make the payments in return for adequate and full consideration (other than services rendered or to be rendered).

(6) Any alimony or other maintenance payments, including payments for the support of a minor child, arising in one of the Contracting States and paid to a resident of the other Contracting State, shall be taxable only in the first-mentioned State.

ARTICLE 19

Governmental Remuneration

Wages, salaries, and similar remuneration, including pensions, paid from funds of one of the Contracting States, of a state or other political subdivision thereof or of an agency or authority of any of the foregoing for labor or personal services performed as an employee of any of the above in the discharge of governmental functions to a citizen of that State shall be exempt from tax by the other Contracting State.

ARTICLE 20

Students

Where a student, who is a resident of one of the Contracting States or who was a resident of that State immediately before visiting the other Contracting State and who is temporarily present in that other State for the purpose of his full-time education, receives payments from sources

outside that other State for the purpose of his maintenance or education, those payments shall be exempt from tax in that other State.

ARTICLE 21

Income Not Expressly Mentioned

(1) Items of income of a resident of one of the Contracting States which are not expressly mentioned in the foregoing - Articles of this Convention shall be taxable only in that State.
(2) However, if such income is derived by a resident of one of the Contracting States from sources in the other Contracting State, such income may also be taxed in the State in which it has its source.
(3) The provisions of paragraph (1) shall not apply to income derived by a resident of one of the Contracting States which is effectively connected with a permanent establishment situated in the other Contracting State. In such a case, the provisions of Article 7 (Business Profits) shall apply.

ARTICLE 22

Relief from Double Taxation

(1) Subject to paragraph (4) and in accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), in the case of the United States, double taxation shall be avoided as follows:
   (a) the United States shall allow to a resident or citizen of the United States as a credit against United States tax the appropriate amount of income tax paid to Australia; and
   (b) in the case of a United States corporation owning at least 10 percent of the voting stock of a company which is a resident of Australia from which it receives dividends in any taxable year, the United States shall also allow as a credit against United States tax the appropriate amount of income tax paid to Australia by that company with respect to the profits out of which such dividends are paid.
Such appropriate amount shall be based upon the amount of income tax paid to Australia. For purposes of applying the United States credit in relation to income tax paid to Australia the taxes referred to in sub-paragraph (1)(b) and paragraph (2) of Article 2 (Taxes Covered) shall be considered to be income taxes. No provision of this Convention relating to source of income shall apply in determining credits against United States tax for foreign taxes other than those referred to in sub-paragraph (1)(b) and paragraph (2) of Article 2 (Taxes Covered).
(2) Subject to paragraph (4), United States tax paid under the law of the United States and in accordance with this Convention, other than United States tax imposed in accordance with paragraph (3) of Article 1 (Personal Scope) solely by reason of citizenship or by reason of an election by an individual under United States domestic law to be taxed as a resident of the United States, in respect of income derived from sources in the United States by a person who, under Australian law relating to Australian tax, is a resident of Australia shall be allowed as a credit against Australian tax payable in respect of the income. The credit shall not exceed the amount of Australian tax payable on the income or any class thereof or on income from sources outside Australia. Subject to these general principles, the credit shall be in accordance with the provisions and subject to the limitations of the law of Australia as that law may be in force from time to time.
(3) An Australian corporation that owns at least 10 percent of the voting power in a United States corporation is, in accordance with the law of Australia as in force at the date of signature of this Convention, entitled to a rebate in its assessment, at the average rate of tax payable by it, in respect of dividends paid by the United States corporation that are included in the taxable income of the Australian corporation. However, should the law as so in force be amended so that the rebate in relation to the dividends ceases to be allowable under that law, Australia shall allow

credit under paragraph (2) for the United States tax paid on the profits out of which the dividends are paid as well as for the United States tax paid on the dividends.

(4) For the purposes of computing United States tax, where a United States citizen is a resident of Australia, the United States shall allow as a credit against United States tax the income tax paid to Australia after the credit referred to in paragraph (2). The credit so allowed against United States tax shall not reduce that portion of the United States tax that is creditable against Australian tax in accordance with paragraph (2).

ARTICLE 23

Non-Discrimination

(1) Each Contracting State in enacting tax measures shall ensure that:

(a) citizens of a Contracting State who are residents of the other Contracting State shall not be subjected in that other State to any taxation or any requirement connected therewith which is more burdensome than the taxation or connected requirements to which citizens of that other State who are residents of that other State in the same circumstances are or may be subjected;

(b) except where the provisions of paragraph (1) of Article 9 (Associated Enterprises), paragraph (4) of Article 11 (Interest) or paragraph (5) of Article 12 (Royalties) apply, interest, royalties and other disbursements paid by a resident of a Contracting State to a resident of the other Contracting State shall, for the purpose of determining the taxable profits of the resident of the first-mentioned State, be deductible under the same conditions as if they had been paid to a resident of the first-mentioned State;

(c) a corporation of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned State to any taxation or any requirement connected therewith which is more burdensome than the taxation or connected requirements to which other similar corporations of the first-mentioned State in the same circumstances are or may be subjected; and

(d) the taxation on a permanent establishment which a resident of a Contracting State has in the other Contracting State shall not be less favorably levied in that other State than the taxation levied on residents of that other State that carry on the same activities in the same circumstances.

(2) Nothing in this Article relates to any provision of the taxation laws of a Contracting State:

(a) in force on the date of signature of this Convention;

(b) adopted after the date of signature of this Convention but which is substantially similar in general purpose or intent to a provision covered by sub-paragraph (a); or

(c) reasonably designed to prevent the avoidance or evasion of taxes;

provided that, with respect to provisions covered by sub-paragraphs (b) or (c), such provisions (other than provisions in international agreements) do not discriminate between citizens or residents of the other Contracting State and those of any third State.

(3) Without limiting by implication the interpretation of this Article, it is hereby declared that, except to the extent expressly so provided, nothing in the Article prevents a Contracting State from distinguishing in its taxation laws between residents and non-residents solely on the ground of their residence.

(4) Where one of the Contracting States considers that the taxation measures of the other Contracting State infringe the principles set forth in this Article the Contracting States shall consult together in an endeavor to resolve the matter.

ARTICLE 24

Mutual Agreement Procedure

(1) (a) Where a resident of one of the Contracting States considers that the action of one or both of the Contracting States results or will result for him in taxation not in accordance with this Convention, he may, notwithstanding the remedies provided by the domestic laws of those

States, present his case to the competent authority of the Contracting State of which he is a resident or citizen. The case must be presented within three years from the first notification of that action.

   (b) Should the claim be considered to have merit by the competent authority of the Contracting State to which the claim is made, that competent authority shall seek to come to an agreement with the competent authority of the other Contracting State with a view to the avoidance of taxation contrary to the provisions of this Convention. Any agreement reached shall be implemented notwithstanding any time limits or other procedural limitations in the domestic law of the Contracting States.

   (2) The competent authorities of the Contracting States shall seek to resolve by agreement any difficulties or doubts arising as to the application or interpretation of this Convention. In particular the competent authorities of the Contracting States may agree:

   (a) to the same attribution of income, deductions, credits, or allowances of an enterprise of one of the Contracting States to its permanent establishment situated in the other Contracting State;
   (b) to the same allocation of income, deductions, credits, or allowances between persons;
   (c) to the same determination of the source of particular items of income;
   (d) to the same meaning of any term used in this Convention; or
   (e) to which of the Contracting States an individual described in sub-paragraph (2) (c) of Article 4 (Residence) has closer personal and economic relations.

   (3) The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of this Article.

ARTICLE 25

Exchange of Information

   (1) The competent authorities shall exchange such information as is necessary for carrying out the provisions of this Convention or for the prevention of fraud or for the administration of statutory provisions concerning taxes to which this Convention applies provided the information is of a class that can be obtained under the laws and administrative practices of each Contracting State with respect to its own taxes.
   (2) Any information so exchanged shall be treated as secret and shall not be disclosed to any persons other than those (including a Court or administrative body) concerned with the assessment, collection, administration or enforcement of, or with litigation with respect to, the taxes to which this Convention applies.
   (3) No information shall be exchanged which would be contrary to public policy.
   (4) If specifically requested by the competent authority of one of the Contracting States, the competent authority of the other Contracting State shall provide information under this Article in the form of copies of unedited original documents (including books, papers, statements, records, accounts or writings) to the same extent such documents can be obtained under the laws and administrative practices of that other State with respect to its own taxes.
   (5) Each of the Contracting States shall endeavor to Collect on behalf of the other Contracting State amounts equal to such taxes imposed by the other State as will ensure that any exemption or reduction in rate of tax granted under this Convention by that other State shall not be enjoyed by persons not entitled to such benefits.

ARTICLE 26

Diplomatic and Consular Privileges

   Nothing in this Convention shall affect diplomatic and consular privileges under the general rules of international law or under the provisions of special agreements.

ARTICLE 27

Miscellaneous

(1) (a) Income derived by a resident of the United States which, under this Convention, may be taxed in Australia shall for the purposes of the income tax law of Australia and of this Convention be deemed to be income from sources in Australia.

(b) Income derived by a resident of Australia which, under this Convention, may be taxed in the United States, other than income taxed by the United States in accordance with paragraph (3) of Article 1 (Personal Scope) solely by reason of citizenship or by reason of an election by an individual under United States domestic law to be taxed as a resident of the United States, shall for the purposes of paragraph (2) of Article 22 (Relief from Double Taxation) and of the income tax law of Australia be deemed to be income from sources in the United States.

(c) Where paragraph (4) of Article 22 (Relief from Double Taxation) applies, income referred to in that paragraph shall be deemed to have its source in Australia to the extent necessary to give effect to the provisions of that paragraph.

(2) Any exemption from tax by one of the Contracting States provided for in Article 14 (Independent Personal Services), 15 (Dependent Personal Services), 17 (Entertainers) or 19 (Governmental Remuneration) shall be inapplicable to the extent that the income to which the exemption relates is not or, upon the application of the relevant Article of this Convention (prior to application of this paragraph), will not be subject to tax by the other Contracting State.

ARTICLE 28

Entry into Force

(1) This Convention shall be subject to ratification in accordance with the applicable procedures of each Contracting State, and instruments of ratification shall be exchanged at Washington, D.C., as soon as possible.

(2) The Convention shall enter into force upon the exchange of instruments of ratification [FN2] and its provisions shall have effect:

FN2. Oct. 31, 1983.

End of Footnote(s).

(a) with respect to those dividends, interest and royalties to which Articles 10 (Dividends), 11 (Interest) and 12 (Royalties), respectively, apply and which are paid, credited or otherwise derived on or after the first day of the second month following the date on which the Convention enters into force; and

(b) with respect to all other income of a taxpayer, for the taxpayer's years of income or taxable years, as the case may be, commencing on or after the first day of the second month following the date on which the Convention enters into force.

(3) Subject to paragraph (4), the Convention between the Government of the United States of America and the Government of the Commonwealth of Australia for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income signed at Washington on May 14, 1953 [FN3] (in this Article referred to as the 1953 Convention) shall cease to have effect with respect to taxes to which this Convention applies under paragraph (2).

FN3. TIAS 2880; 4 UST 2274.

End of Footnote(s).

(4) The 1953 Convention shall terminate on the expiration of the last date on which it has effect in accordance with the foregoing provisions of this Article.

ARTICLE 29

Termination

(1) This Convention shall remain in force until terminated by a Contracting State. Either Contracting State may terminate the Convention at any time after 5 years from the date on which the Convention enters into force, provided that at least 6 months prior notice of termination has been given through the diplomatic channel. In such event, the Convention shall cease to have effect:

(a) with respect to those dividends, interest and royalties to which Articles 10 (Dividends), 11 (Interest) and 12 (Royalties) respectively apply, and which are paid, credited or otherwise derived on or after the first day of January following the expiration of the 6 month period; and

(b) with respect to all other income of a taxpayer, for the taxpayer's years of income or taxable years, as the case may be, commencing on or after the first day of January following the expiration of the 6 month period.

(2) Notwithstanding the provisions of paragraph (1), upon prior notice to be given through the diplomatic channel, the provisions of paragraph (2) of Article 18 (Pensions, Annuities, Alimony and Child Support) may be terminated by either Contracting State at any time after this Convention enters into force.

DONE in duplicate at Sydney this sixth day of August 1982
(Signature)

R. D. Nesen
[SEAL]
(Signature)

John Howard
[SEAL]
1979 WL 182394 (U.S. Treaty), T.I.A.S. No. 10,773, 35 U.S.T. 1999
END OF DOCUMENT