CONVENTION
BETWEEN
THE UNITED STATES OF AMERICA
AND
THE FEDERAL REPUBLIC OF GERMANY

FOR THE AVOIDANCE OF DOUBLE TAXATION
AND THE PREVENTION OF FISCAL EVASION
WITH RESPECT TO TAXES ON INCOME AND CAPITAL
AND TO CERTAIN OTHER TAXES

GENERAL EFFECTIVE DATE UNDER ARTICLE 32: 1 JANUARY 1990
FOR FORMER GERMAN DEMOCRATIC REPUBLIC: 1 JANUARY 1991

TABLE OF ARTICLES

Article 1---------------------------------Personal Scope
Article 2---------------------------------Taxes Covered
Article 3---------------------------------General Definitions
Article 4---------------------------------Residence
Article 5---------------------------------Permanent Establishment
Article 6---------------------------------Income from Immovable (Real) Property
Article 7---------------------------------Business Profits
Article 8---------------------------------Shipping and Air Transport
Article 9---------------------------------Associated Enterprises
Article 10--------------------------------Dividends
Article 11--------------------------------Interest
Article 12--------------------------------Royalties
Article 13--------------------------------Gains
Article 14--------------------------------Independent Personal Services
Article 15--------------------------------Dependent Personal Services
Article 16--------------------------------Directors' Fees
Article 17--------------------------------Artistes and Athletes
Article 18--------------------------------Pensions, Annuities, Alimony, and Child Support
Article 19--------------------------------Government Service; Social Security
Article 20--------------------------------Visiting Professors and Teachers; Students and Trainees
Article 21--------------------------------Other Income
Article 22--------------------------------Capital
Article 23--------------------------------Relief from Double Taxation
Article 24--------------------------------Nondiscrimination
Article 25--------------------------------Mutual Agreement Procedure
Article 26--------------------------------Exchange of Information and Administrative Assistance
Article 27--------------------------------Exempt Organizations

Article 28-------------------------------Limitation on Benefits
Article 29-------------------------------Refund of Withholding Tax
Article 30-------------------------------Members of Diplomatic Missions and Consular Posts
Article 31-------------------------------Berlin Clause
Article 32-------------------------------Entry into Force
Article 33-------------------------------Termination
Protocol --------------------------------of 29 August, 1989
Letter of Submittal---------------------of 24 October, 1989
Letter of Transmittal------------------of 5 February, 1990
Notes of Exchange 1-------------------of 29 August, 1989
Memorandum of Understanding -----of 29 August, 1989
Notes of Exchange 2-------------------of 29 August, 1990
The "Saving Clause"-------------------Paragraph 1 a) of Protocol

TAX CONVENTION WITH THE FEDERAL REPUBLIC OF GERMANY

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE CONVENTION BETWEEN THE UNITED STATES OF AMERICA
AND THE FEDERAL REPUBLIC OF GERMANY FOR THE AVOIDANCE OF DOUBLE
TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES
ON INCOME AND CAPITAL AND TO CERTAIN OTHER TAXES, TOGETHER WITH A
RELATED PROTOCOL, SIGNED AT BONN ON AUGUST 29, 1989

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, October 24, 1989.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate for advice and consent to ratification, the Convention between the United States of America and the

Federal Republic of Germany for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on income and Capital and to Certain Other Taxes, together with a related Protocol, signed at Bonn on August 29, 1989.

The Convention will replace the existing convention which was signed at Washington on July 22, 1954 and amended by the protocol of September 17, 1965.

The Convention will reduce the withholding tax on direct investment dividends, on a reciprocal basis, from the present 15 percent to 10 percent in 1990 and to the permanent rate of 5 percent in 1992. This will be a major benefit to United States multinationals with investments, or plans to invest, in the Federal Republic of Germany. The United States Government and the United States business community have been pressing the Germans for such a change since the introduction of the present German integrated tax system in 1977. This withholding reduction will also increase the attractiveness of investment in the United States for German multinationals.

The Convention also introduces several changes necessary to accommodate important aspects of the Tax Reform Act of 1986. These include, principally, provision for the imposition of a branch tax and strong measures to prevent "treaty shopping." The United States branch tax, prohibited under the existing convention, will be imposed on United States branches of German corporations for taxable years beginning on or after January 1, 1991. The proposed anti-abuse provision is uniquely tailored to take account of the practical realities of European integration in a manner that promises to become a model for future treaties with European partners.

A number of provisions in the Convention will have significant impact on particular groups of income recipients.

The Federal Republic of Germany will reduce its withholding rate on dividends paid to United States portfolio investors, on a non-reciprocal basis, from 15 percent to 10 percent. The United States will treat this reduction as a partial imputation refund, analogous to the imputation credit for corporate tax which German shareholders receive in the Federal Republic with respect to such dividends. This treatment in the United States will assure that the benefit of the German reduction inures to the United States shareholders rather than to the United States Treasury. The United States withholding rate on such dividend to German investors will remain at 15 percent.

Provisions of the existing convention permit German resident investors to make portfolio investments in the United States through United States Regulated Investment Companies (RICs) and receive an exemption on the income in the Federal Republic. This exemption had been intended only for direct investment income. The Convention will correct this abuse and make such income taxable in the Federal Republic, with a credit for United States tax, effective in 1991, one year after the general effective date for the Convention's provisions. The additional year is intended to allow German investors to adjust to the change in a way which would minimize market disruption. A similar rule will apply to certain German investments in United States Real Estate Investment Trusts (REITs).

In addition, the Convention will provide for exemption of German residents from United States tax on United States Social Security benefits.

The Convention further provides both States with the flexibility to deal with "hybrid" financial instruments that have both debt and equity features. In the Federal Republic of Germany this will include sleeping partnership interests and in the United States equity kicker loans. As long as the State in which payments with respect to such instruments arise permits such payments to be deducted in calculating the taxable income of the payer, that State will be permitted to apply its statutory withholding rate rather than the reduced treaty rate otherwise applicable to the payments.

In general, the provisions of the Convention will have effect in 1990. For taxes levied on an assessment basis, the Convention will have effect for taxable years beginning on or after January 1, 1990. For income subject to withholding at source, the Convention will have effect for payments made on or after January 1, 1990.

Two exchanges of notes and a memorandum of understanding are included for information only.

A technical memorandum explaining in detail the provisions of the Convention is being prepared by the Department of the Treasury and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of the Treasury, with the cooperation of the Department of State, was primarily responsible for the negotiation of the Convention. It has the full approval of both Departments.

Respectfully submitted,

JAMES BAKER III.

Enclosures: As stated.

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *February 5, 1990.*

*To the Senate of the United States:*

I transmit herewith for Senate advice and consent to ratification the Convention between the United States of America and the Federal Republic of Germany for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income and Capital and to Certain Other Taxes, together with a related Protocol, signed at Bonn on August 29, 1989. I also transmit the report of the Department of State on the convention.

The convention replaces the tax convention that was signed with the Federal Republic of Germany on July 22, 1954, and amended by the protocol of September 17, 1965. It is based on model income tax treaties developed by the Department of the Treasury and the Organization for Economic Cooperation and Development. However, it includes a number of new provisions to accommodate important aspects of the Tax Reform Act of 1986, such as the imposition of a branch tax and strong measures to prevent "treaty shopping."

I recommend the Senate give early and favorable consideration to the convention, together with a related protocol, and give its advice and consent to ratification.

GEORGE BUSH.

NOTES OF EXCHANGE 1

DER STAATSSEKRETAR
DES AUSWARTIGEN AMTS

BONN, 29, August 1989

His Excellency
Mr. Vernon Walters
Ambassador of the United States of America
Bonn

Excellency,

I have the honor to refer to the Convention signed today between the Federal Republic of Germany and the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income and Capital and to certain ether Taxes and to inform you on behalf of the Government of the Federal Republic of Germany of the following:

In the course of the negotiations leading to the conclusion of the Convention signed today, the negotiators developed and agreed upon a memorandum of understanding intended to give guidance both to the taxpayers and the tax authorities of our two countries in interpreting Article 28 (Limitation on Benefits). This memorandum of understanding, attached to this Note, represents the current views of the Government of the Federal Republic of Germany with respect to Article 28. It is my Government's view that as we both gain experience in administering the Convention, and particularly Article 28, the

competent authorities may develop and publish amendments and further understandings and interpretations.

If this position meets with the approval of the Government of the United States of America, this Note and your Note in reply thereto will indicate that our Governments share a common understanding of the role of the memorandum of understanding relating to Article 28 of the Convention.

Accept, Excellency, the expression of my highest consideration.

(s) Dr. Hans Werner Lautenschlager

EMBASSY OF THE
UNITED STATES OF AMERICA
Bonn, August 29, 1989

His Excellency,
Dr. Hans Werner Lautenschlager
State Secretary of the Foreign Office
Bonn

Excellency,

I have the honor to confirm receipt of your Note of today's date which reads as follows:

"I have the honor to refer to the Convention signed today between the Federal Republic of Germany and the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income and Capital and to certain other Taxes and to inform you on behalf of the Government of the Federal Republic of Germany of the following:

In the course of the negotiations leading to the conclusion of the Convention signed today, the negotiators developed and agreed upon a memorandum of understanding intended to give guidance both to the taxpayers and the tax authorities of our two countries in interpreting Article 28 (Limitation on Benefits). This memorandum of understanding, attached to this Note, represents the current views of the Government of the Federal Republic of Germany with respect to Article 28. It is my Government's view that as we both gain experience in administering the Convention, and particularly Article 28, the competent authorities may develop and publish amendments and further understandings and interpretations.

If this position meets with the approval of the Government of the United States of America, this Note and your Note in reply thereto will indicate that our Governments share a common understanding of the role of the memorandum of understanding relating to Article 28 of the Convention."

I have the honor to inform you. that my Government agrees to the above.

Accept, Excellency, the expression of my highest consideration.

(s) V.A.W.

## MEMORANDUM OF UNDERSTANDING

## UNDERSTANDINGS REGARDING THE SCOPE OF THE LIMITATION ON BENEFITS ARTICLE IN THE CONVENTION BETWEEN THE FEDERAL REPUBLIC OF GERMANY AND THE UNITED STATES OF AMERICA

### A. <u>BUSINESS CONNECTION</u>

Paragraph 1 (c) of Article 28 (Limitation on Benefits) of the Convention provides that benefits will be granted with respect to income derived in connection with or incidental to an active trade or business in the State in which the income recipient resides. This provision is self-executing; unlike the provisions of paragraph 2, discussed in section B, below, it does not require advance competent authority ruling or approval.

The following examples illustrate the intention of the negotiators with respect to the interpretation of the provisions of paragraph 1 (c). The examples are not intended to be exhaustive of the kinds of cases which would fall within the scope of the paragraph.

For purposes of exposition, the examples are structured in terms of a German entity claiming U.S. treaty benefits; they are intended to be understood reciprocally. Paragraph 1(c) is relevant only in cases in which the entity claiming treaty benefits is not entitled to benefits under either the ownership and base erosion tests of paragraph 1(e) or the public trading test of paragraph 1(d).

### Example I

Facts:          A German resident company is owned by three persons, each resident in a different third country. The company is engaged in an active manufacturing business in the Federal Republic of Germany (Germany). It has a wholly-owned subsidiary in the United States which has been capitalized with debt and equity. The subsidiary is engaged in selling the output of the German parent. The active manufacturing business in Germany is substantial in relation to the activities of the U.S. subsidiary. Are the subsidiary's interest and dividend payments to its German parent eligible for treaty benefits in the United States?

Analysis:      Treaty benefits would be allowed because the treaty requirement that the U.S. income "is derived in connection with or is incidental to" the German active business is satisfied. This conclusion is based on two elements in the fact pattern presented: (1) the income is connected with the active German business --- in this example in the form of a "downstream" connection; and (2) the active German business is substantial in relation to the business of the U.S. subsidiary.

.

## Example II

Facts:      The facts are the same as in Example I except that while the income is derived by the German parent of the U.S. subsidiary, the relevant business activity in Germany is carried on by a German subsidiary company. The German subsidiary's activities meet the business relationship and substantiality tests of the business connection provision as described in the preceding example. Are the U.S. subsidiary's dividends and interest payments to the German parent eligible for U.S. treaty benefits?

Analysis:      Benefits are allowed because the two German entities (i.e., the one deriving the income and the one carrying on the substantial active business in Germany) are related. Benefits are not denied merely because the income is earned by a German holding company and the relevant activity is carried on in Germany by a German subsidiary. The existence of a similar holding company structure in the United States would not affect the right of the German parent to treaty benefits. Thus, if the German parent owns a subsidiary in the United States which is, itself, a holding company for the group's U.S. activities, which are related to the business activity in Germany, dividends paid by the U.S. holding company to the German parent holding company would be tested for eligibility for benefits in the same way as described above, ignoring the fact that the activities are carried on by one entity and the income in respect of which benefits are claimed is paid by another, related, entity.

## Example III

Facts:      A German resident company is owned by three persons, each resident in a different third country. The company is the worldwide headquarters and parent of an integrated international business carried on through subsidiaries in many countries. The company's wholly-owned U.S. and German subsidiaries manufacture, in their countries of residence, products which are part of the group's product line. The United States subsidiary has been capitalized with debt and equity. The active manufacturing business of the German subsidiary is substantial in relation to the activities of the U.S. subsidiary. The German parent manages the worldwide group and also performs research and development to improve the manufacture of the group's product line. Are the U.S. subsidiary's dividend and interest payments to its German parent eligible for treaty benefits in the United States?

Analysis:    Treaty benefits would be allowed because the treaty requirement that the United States income "is derived in connection with or is incidental to" the German active business is satisfied. This conclusion is based on two elements in the fact pattern presented: (1) the income is connected with the German active business because the United States subsidiary and the German subsidiary manufacture products which are part of the group's product line, the German parent manages the worldwide group, and the parent performs research and development that benefits both subsidiaries; and (2) the active German business is substantial in relation to the business of the U.S. subsidiary.

## Example IV

\Facts:    A third-country resident establishes a German company for the purpose of acquiring a large U.S. manufacturing company. The sole business activity of the German company (other than holding the stock of the U.S. company) is the operation of a small retailing outlet which sells products manufactured by the U.S. company. Is the German company entitled to treaty benefits under paragraph 1(c) with respect to dividends it receives from the U.S. manufacturer?

Analysis:    The dividends would not be entitled to benefits. Although there is, arguably, a business connection between the U.S. and the German businesses, the "substantiality" test described in the preceding examples is not met.

## Example V

Facts:        German, French and Belgian companies create a joint venture in the form of a partnership organized in Germany to manufacture a product in a developing country. The joint venture owns a U.S. sales company, which pays dividends to the joint venture. Are these dividends eligible for benefits of the Convention?

Analysis:    Under Article 4, only the German partner is a resident of Germany for purposes of the Convention. The question arises under this Convention, therefore, only with respect to the German partners share of the dividends. If the German partner meets the ownership and base erosion tests, or the public trading test of paragraph 1 (d) or (e) , it is entitled to benefits without reference to paragraph 1 (c). If not, the analysis of the previous examples would be applied to determine eligibility for benefits under 1 ( c ). The determination of treaty benefits available to the French and Belgian partners will be made under the United States Conventions with France and Belgium.

## Example VI

Facts:          A German company, a French company and a Belgian company create a joint
                venture in the form of a German resident company in which they take equal
                shareholdings. The joint venture company engages in an active manufacturing business in
                Germany. Income derived from that business that is retained as working capital is
                invested in U.S. Government securities and other U.S. debt instruments until needed for
                use in the business. Is interest paid on these instruments eligible for benefits of the
                Convention?

Analysis:       The interest would be eligible for treaty benefits. Interest income earned from short-term
                investment of working capital is incidental to the business in Germany of the German
                joint venture company.


## B. COMPETENT AUTHORITY DISCRETION UNDER PARAGRAPH 2

As indicated above, treaty benefits may be claimed by the taxpayer under the provisions of
paragraph 1 (ownership, base erosion, public trading, or business connection) without reference to
competent authority. It is anticipated that in the vast majority of cases, eligibility for treaty benefits will
be determinable without resort to competent authorities. The tax authorities of the Contracting States
may, of course, in reviewing a case determine that the taxpayer has improperly interpreted the
provisions of paragraph 1, and that benefits should not have been granted. Furthermore, under
paragraph 2 the competent authority of the source State may determine that, notwithstanding failure to
qualify for benefits under paragraph 1, benefits should be granted.

It is assumed that, for purposes of implementing paragraph 2, taxpayers will be permitted to present
their cases to the competent authority for an advance determination based on the facts, and will not be
required to wait until the tax authorities of one of the Contracting States have determined that benefits
are denied. In these circumstances, it is also expected that if the competent authority determines that
benefits are to be allowed, they will be allowed retroactively to the time of entry into force of the
relevant treaty provision or the establishment of the structure in question, whichever is later.

In making determinations under paragraph 2, it is understood that the competent authorities will take
into account all relevant facts and circumstances. The factual criteria which the competent authorities are
expected to take into account include the existence of a clear business purpose for the structure and
location of the income earning entity in question; the conduct of an active trade or business (as opposed
to a mere investment activity) by such entity; and a valid business nexus between that entity and the
activity giving rise to the income. The competent authorities will, furthermore, consider, for example,
whether and to what extent a substantial headquarters operation conducted in a Contracting State by
employees of a resident of that State contribute to such valid business nexus, and should not, therefore,
be treated merely as the "making or managing <of> investments" within the meaning of paragraph 1 (c)
of Article 28.

The discretionary authority granted to the competent authorities in paragraph 2 is particularly important in view of, and should be exercized with particular cognizance of, the developments in, and objectives of, international economic integration, such as that between the member countries of the European Communities and between the United States and Canada.

The following example illustrates the application of the principles described in Section B, above.

<u>Example VII</u>

Facts:           German, French and Belgian companies, each of which is engaged directly or through its affiliates in substantial active business operations in its country of residence, decide to cooperate in the development, production, and marketing of an advanced passenger aircraft through a corporate joint venture with its statutory seat in Germany. The development, production and marketing aspects of the project are carried out by the individual joint venturers. The joint venture company, which is staffed with a significant number of managerial and financial personnel seconded by the joint venturers, acts as the general headquarters for the joint venture, responsible for the overall management of the project including coordination of the functions separately performed by the individual joint venturers on behalf of the joint venture company, the investment of working capital contributed by the joint venturers and the financing of the project's additional capital requirements through public and private borrowings. The joint venture company derives portfolio investment income from U.S. sources. Is this income eligible for benefits of the Convention?

Analysis:      If the joint venture company's activities constitute an active business and the income is connected to that business, benefits would he allowed under paragraph 1 (c). If not, it is expected that the U.S. competent authority would determine that treaty benefits should be allowed in accordance with paragraph (2) under the facts presented, particularly in view of (1) the clear business purpose for the formation and location of the joint venture company; (2) the significant headquarters functions performed by that company in addition to financial functions; and (3) the fact that all of the joint venturers are companies resident in EC member countries in which they are engaged directly or through their affiliates in substantial active business operations.

The competent authorities shall consult further on these issues, and may also take into account the views of the tax authorities of other States, including, in particular, member States of the European Communities.

CONVENTION

BETWEEN

THE UNITED STATES OF AMERICA

AND THE FEDERAL REPUBLIC OF GERMANY

FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL
EVASION WITH RESPECT TO TAXES ON INCOME AND CAPITAL
AND TO CERTAIN OTHER TAXES

THE UNITED STATES OF AMERICA

AND

THE FEDERAL REPUBLIC OF GERMANY,

Desiring to conclude a new Convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and capital and to certain other taxes,

Have agreed as follows:

ARTICLE 1
Personal Scope

This Convention shall apply to persons who are residents of one or both of the Contracting States, except as otherwise provided in this Convention.

ARTICLE 2
Taxes Covered

1. The existing taxes to which this Convention shall apply are:
    a) In the United States:
        aa) the federal income taxes imposed by the Internal Revenue Code (but excluding the accumulated earnings tax, the personal holding company tax, and social security taxes); and
        bb) the excise tax imposed on insurance premiums paid to foreign insurers (hereinafter referred to as "United States tax").

This Convention shall, however, apply to the excise tax imposed on insurance premiums paid to foreign insurers only to the extent that the risks covered by such premiums are not reinsured with a person not entitled to the benefits of this or any other convention that provides exemption from such tax.
    b) In the Federal Republic of Germany:
        aa) the income tax (Einkommensteuer);

bb) the corporation tax (Körperschaftsteuer);
cc) the trade tax (Gewerbesteuer); and
dd) the capital tax (Vermögensteuer)

(hereinafter referred to as "German tax").

2. This Convention shall apply also to any identical or substantially similar taxes that are imposed after the date of signature of this Convention in addition to, or in place of, the existing taxes. The competent authorities of the Contracting States shall notify each other of any significant changes that have been made in their taxation laws.

## ARTICLE 3
### General Definitions

1. For the purposes of this Convention, unless the context otherwise requires:

a) the term "a Contracting State" and "the other Contracting State" mean the United States or the Federal Republic of Germany as the context requires;

b) the term "United States", when used in a geographical sense, means the United States of America, but does not include Puerto Rico, the Virgin Islands, Guam or any other possession or territory of the United States of America;

c) the term "Federal Republic of Germany", when used in a geographical sense, means the area in which the tax law of the Federal Republic of Germany is in force;

d) the term "person" includes but is not limited to an individual and a company;

e) the term "company" means any body corporate or any entity that is treated as a body corporate for tax purposes;

f) the terms "enterprise of a Contracting State" and "enterprise of the other Contracting State" mean respectively an enterprise carried on by a resident of a Contracting State and an enterprise carried on by a resident of the other Contracting State;

g) the term "international traffic" means any transport by a ship or aircraft, except when the ship or aircraft is operated solely between places in one of the Contracting States;

h) the term "national" means:

aa) in respect of the United States, United States citizens and any legal person, partnership, or association deriving its status as such from the law in force in the United States; and

bb) in respect of the Federal Republic of Germany, any German within the meaning of paragraph 1 of Article 116 of the Basic Law of the Federal Republic of Germany and any legal person, partnership, or association deriving its status as such from the law in force in the Federal Republic of Germany; and

i) the term "competent authority" means:

aa) in the United States, the Secretary of the Treasury or his delegate; and

bb) in the Federal Republic of Germany, the Federal Minister of Finance or his delegate.

2. As regards the application of this Convention by a Contracting State any term not defined therein shall, unless the context otherwise requires or the competent authorities agree to a common meaning pursuant to the provisions of Article 25 (Mutual Agreement Procedure), have the meaning that it has under the laws of that State concerning the taxes to which this Convention applies.


## ARTICLE 4
### Residence

1. For the purposes of this Convention, the term "resident of a Contracting State" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management, place of incorporation, or any other criterion of a similar nature, provided, however, that

a) this term does not include any person who is liable to tax in that State in respect only of income from sources in that State or capital situated therein; and

b) in the case of income derived or paid by a partnership, estate, or trust, this term applies only to the extent that the income derived by such partnership, estate, or trust is subject to tax in that State as the income of a resident, either in its hands or in the hands of its partners or beneficiaries.

2. Where by reason of the provisions of paragraph 1 an individual is a resident of both Contracting States, then his status shall be determine as follows:

a) he shall be deemed to be a resident of the State in which he has a permanent home available to him; if he has a permanent home available to him in both States, he shall be deemed to be a resident of the State with which his personal and economic relations are closer (center of vital interests);

b) if the State in which he has his center of vital interests cannot be determined, or if he has not a permanent home available to him in either State, he shall be deemed to be a resident of the State in which he has an habitual abode;

c) if he has an habitual abode in both States or in neither of them, he shall be deemed to be a resident of the State of which he is a national; and

d) if he is a national of both States or of neither of them, the competent authorities of the Contracting States shall settle the question by mutual agreement.

3. Where by reason of the provisions of paragraph 1 a person other than an individual is a resident of both Contracting States, then the competent authorities of the Contracting States shall seek to determine through consultation the Contracting State of which the person shall be deemed to be a resident for the purposes of this Convention, and, if they are unable so to determine, such person shall not be considered to be a resident of either Contracting State for purposes of enjoying benefits under this Convention.


## ARTICLE 5
### Permanent Establishment

1. For the purposes of this Convention, the term "permanent establishment" means a fixed place of business through which the business of an enterprise is wholly or partly carried on.

2. The term "permanent establishment" includes especially;
>    a) a place of management;
>    b) a branch;
>    c) an office;
>    d) a factory;
>    e) a workshop; and
>    f) a mine, an oil or gas well, a quarry, or any other place of extraction of natural resources.

3. A building site or a construction, assembly or installation project constitutes a permanent establishment only if it lasts more than twelve months.

4. Notwithstanding the foregoing provisions of this Article, the term "permanent establishment" shall be deemed not to include:
>    a) the use of facilities solely for the purpose of storage, display, or delivery of goods or merchandise belonging to the enterprise;
>    b) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of storage, display. or delivery;
>    c) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of processing by another enterprise;
>    d) the maintenance of a fixed place of business solely for the purpose of purchasing goods or merchandise, or of collecting information, for the enterprise;
>    e) the maintenance of a fixed place of business solely for the purpose of advertising, of the supply of information, of scientific activities, or of similar activities that have a preparatory or auxiliary character for the enterprise; or
>    f) the maintenance of a fixed place of business solely for any combination of activities mentioned in subparagraphs a) to e), provided that the overall activity of the fixed place of business resulting from this combination is of a preparatory or auxiliary character.

5. Notwithstanding the provisions of paragraphs 1 and 2, where a person (other than an agent of an independent status to whom paragraph 6 applies) is acting on behalf of an enterprise and has, and habitually exercises, in a Contracting State an authority to conclude contracts in the name of the enterprise, that enterprise shall be deemed to have a permanent establishment in that State in respect of any activities which that person undertakes for the enterprise, unless the activities of such person are limited to those mentioned in paragraph 4 that, if exercised through a fixed place of business, would not make this fixed place of business a permanent establishment under the provisions of that paragraph.

6. An enterprise shall not be deemed to have a permanent establishment in a Contracting State merely because it carries on business in that State through a broker, general commission agent, or any

other agent of an independent status, provided that such persons are acting in the ordinary course of their business.

7. The fact that a company that is a resident of a Contracting State controls or is controlled by a company that is a resident of the other Contracting State, or that carries on business in that other State (whether through a permanent establishment or otherwise), shall not of itself constitute either company a permanent establishment of the other.


## ARTICLE 6
### Income from Immovable (Real) Property

1. Income derived by a resident of a Contracting State from immovable (real) property (including income from agriculture or forestry) situated in the other Contracting State may be taxed in that other State.

2. The term "immovable property" shall have the meaning that it has under the law of the Contracting State in which the property in question is situated. The term shall in any case include property accessory to immovable property; livestock and equipment used in agriculture and forestry; rights to which the provisions of general law respecting landed property apply; usufruct of immovable property; and rights to variable or fixed payment as consideration for the working of, or the right to work, mineral deposits, sources, and other natural resources. Ships and aircraft shall not be regarded as immovable property.

3. The provisions of paragraph 1 shall apply to income derived from the direct use, letting, or use in any other form of immovable property.

4. The provisions of paragraphs 1 and 3 shall also apply to the income from immovable property of an enterprise and to income from immovable property used for the performance of independent personal services.


## ARTICLE 7
### Business Profits

1. The business profits of an enterprise of a Contracting State shall be taxable only in that State unless the enterprise carries on business in the other Contracting State through a permanent establishment situated therein. If the enterprise carries on business as aforesaid, the business profits of the enterprise may be taxed in the other State but only so much of them as is attributable to that permanent establishment.

2. Subject to the provisions of paragraph 3, where an enterprise of a Contracting State carries on business in the other Contracting State through a permanent establishment situated therein, there shall in each Contracting State be attributed to that permanent establishment the business profits that it might be

expected to make if it were a distinct and independent enterprise engaged in the same or similar activities under the same or similar conditions.

3. In determining the business profits of a permanent establishment, there shall be allowed as deductions expenses that are incurred for the purposes of the permanent establishment, including research and development expenses, interest, and other similar expenses and a reasonable amount of executive and general administrative expenses, whether incurred in the State in which the permanent establishment is situated or elsewhere.

4. No business profits shall be attributed to a permanent establishment by reason of the mere purchase by that permanent establishment of goods or merchandise for the enterprise.

5. For the purposes of this Convention, the business profits to be attributed to the permanent establishment shall include only the profits derived from the assets or activities of the permanent establishment.

6. Where business profits include items of income that are dealt with separately in other Articles of this Convention, then the provisions of those Articles shall not be affected by the provisions of this Article.

7. For the purposes of this Convention the term "business profits" includes income derived from the rental of tangible personal property and the rental or licensing of cinematographic films or works on film, tape, or other means of reproduction for use in radio or television broadcasting.

## ARTICLE 8
### Shipping and Air Transport

1. Profits of an enterprise of a Contracting State from the operation of ships or aircraft in international traffic shall be taxable only in that State.

2. Profits of an enterprise of a Contracting State from the use or rental of containers (including trailers, barges, and related equipment for the transport of containers) used in international traffic shall be taxable only in that State.

3. The provisions of paragraphs 1 and 2 shall also apply to profits from the participation in a pool, a joint business, or an international operating agency.

## ARTICLE 9
### Associated Enterprises

1. Where

a) an enterprise of a Contracting State participates directly or indirectly in the management, control or capital of an enterprise of the other Contracting State, or

b) the same persons participate directly or indirectly in the management, control, or capital of an enterprise of a Contracting State and an enterprise of the other Contracting State,

and in either case conditions are made or imposed between the two enterprises in their commercial or financial relations that differ from those that would be made between independent enterprises, then any profits which would, but for those conditions, have accrued to one of the enterprises, but, by reason of those conditions, have not so accrued, may be included in the profits of that enterprise and taxed accordingly.

2. Where a Contracting State includes in the profits of an enterprise of that State, and taxes accordingly, profits on which an enterprise of the other Contracting State has been charged to tax in that other State, and that other Contracting State agrees that profits so included are profits that would have accrued to the enterprise of the first-mentioned State if the conditions made between the two enterprises had been those that would have been made between independent enterprises, then that other State shall make an appropriate adjustment to the amount of the tax charged therein on those profits. In determining such adjustment, due regard shall be paid to the other provisions of this Convention and the competent authorities of the Contracting States shall if necessary consult each other.

ARTICLE 10
Dividends

1. Dividends paid by a company that is a resident of a Contracting State to a resident of the other Contracting State may be taxed in that other State.

2. However, such dividends may also be taxed in the Contracting State of which the company paying the dividends is a resident and according to the laws of that State, but if the beneficial owner of the dividends is a resident of the other Contracting State the tax so charged shall not exceed:

a) 5 percent of the gross amount of the dividends if the beneficial owner is a company that holds directly at least 10 percent of the voting shares of the company paying the dividends, and

b) 15 percent of the gross amount of the dividends in all other cases.

Subparagraph b) and not subparagraph a) shall apply in the case of dividends paid by a United States person that is a Regulated Investment Company or of distributions on certificates of a German investment trust (Kapitalanlagegesellschaft). Subparagraph a) shall not apply to dividends paid by a United States person that is a Real Estate Investment Trust, and subparagraph b) shall apply only if the dividend is beneficially owned by an individual holding a less than 10 percent interest in the Real Estate Investment Trust. This paragraph shall not affect the taxation of the company in respect of the profits out of which the dividends are paid.

3. As long as a natural person resident in the Federal Republic of Germany is entitled under German law to a tax credit (Anrechnung der Körperschaftsteuer) in respect of dividends paid by a company that is a resident of the Federal Republic of Germany, the following rules shall apply to dividends paid by such company:

> a) the beneficial owner of dividends subject to paragraph 2 b) shall be entitled to a further relief of tax of 5 percent of the gross amount of the dividends; and

> b) for United States income tax purposes (including for the purposes of credit for foreign taxes paid) the benefit resulting from the application of subparagraph a) shall be treated as a dividend paid to a beneficial owner resident in the United States.

The provisions of this paragraph shall not apply to distributions on certificates of an investment trust.

4. The term "dividends" as used in this Article means income from shares, "jouissance" shares or "jouissance" rights, mining shares, founders' shares, or other rights (not being debt claims) participating in profits, as well as other income derived from other rights that is subjected to the same taxation treatment as income from shares by the laws of the Contracting State of which the company making the distribution is a resident. The term "dividends" also includes in the Federal Republic of Germany income under a sleeping partnership (Stille Gesellschaft), "partiarisches Darlehen", or "Gewinnobligation" as well as distributions on certificates of an investment trust.

5. Notwithstanding the first sentence of paragraph 2 of this Article and paragraph 1 of Article 11 (Interest), income from arrangement, including debt obligations, carrying the right to participate in profits (including in the Federal Republic of Germany income under a sleeping partnership (Stille Gesellschaft), "partiarisches Darlehen", "Gewinnobligation" or "jouissance" shares or "jouissance" rights) that is deductible in determining the profits of the payor may be taxed in the Contracting State in which it arises according to the laws of that State.

6. The provisions of paragraphs 1 and 2 shall not apply if the beneficial owner of the dividends, being a resident of a Contracting State, carries on business in the other Contracting State of which the company paying the dividends is a resident through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the holding in respect of which the dividends are paid forms part of the business property of such permanent establishment or fixed base. In such a case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.

7. Where a company that is a resident of a Contracting State derives profits or income from the other Contracting State, that other State may not impose any tax on the dividends paid by the company, except insofar as such dividends are paid to a resident of that other State or insofar as the holding in respect of which the dividends are paid forms part of the business property of a permanent establishment or a fixed base situated in that other State, even if the dividends paid consist wholly or partly of profits or income arising in such other State.

8. A company that is a resident of a Contracting State and that has a permanent establishment in the other Contracting State, or that is subject to tax on a net basis in that other Contracting State on items of income that may be taxed in that other State under Article 6 ( Income from Immovable (Real) Property) or under paragraph 1 of Article 13 (Gains), may be subject in that other Contracting State to a tax in addition to the tax allowable under the other provisions of this Convention. Such tax, however, may

> a) in the case of the United States be imposed only on
>> aa) the portion of the business profits of the company attributable to the permanent establishment, and
>> bb) the portion of the income referred to in the preceding sentence that is
> subject to tax under Article 6 or paragraph 1 of Article 13,

that represents the "dividend equivalent amount" of those profits and income; the term "dividend equivalent amount" shall, for the purposes of this subparagraph, have the meaning that it has under the law of the United States as it may be amended from time to time without changing the general principle thereof; and

> b) in the case of the Federal Republic of Germany be imposed only on that portion of the income described in subparagraph a) that is comparable to the amount that would be distributed as a dividend by a locally incorporated subsidiary.

9. The tax referred to in paragraph 8 a) shall not be imposed at a rate exceeding the rate specified in paragraph 2 a).

10. The tax described in paragraph 8 b) may be imposed only if, under German law, a company that is not a resident of the Federal Republic of Germany is subject to corporation tax on items of income mentioned in paragraph 8 a) at a rate that does not exceed the rate of corporation tax applicable to the distributed profits of a German company by 5 percentage points or more. The maximum rate at which the tax described in paragraph 8 b) may be applied may not, when added to the excess of the corporation tax rate on a permanent establishment over the rate of corporation tax on the distributed profits of a German company, exceed 5 percent.


ARTICLE 11
Interest

1. Interest derived and beneficially owned by a resident of a Contracting State shall be taxable only in that State.

2. The term "interest" as used in this Article means income from debt clams of every kind, whether or not secured by mortgage, and, in particular, income from government securities and income from bonds or debentures, including premiums and prizes attaching to such securities, bonds or debentures, as well as all other income that is treated as income from money lent by the taxation law of the Contracting State in which the income arises. Penalty charges for late payment shall not be regarded as

interest for the purposes of this Convention. However, the term "interest" does not include income dealt with in Article 10 (Dividends).

3. The provisions of paragraph 1 shall not apply if the beneficial owner of the interest, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the debt claim in respect of which, the interest is paid forms part of the business property of such permanent establishment or fixed base. In such a case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.

4. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the interest, having regard to the debt clam for which it is paid, exceeds the amount that would have been agreed upon by the payor and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such a case the excess part of the payments shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of this Convention.

5. Where a company that is a resident of a Contracting State derives profits or income from the other Contracting State, then that other State may not impose any tax on interest paid by the company except insofar as such interest is paid by a permanent establishment of such company located in that other State, or out of income described in paragraph 8 a) bb) of Article 10 (Dividends), or insofar as such interest is paid to a resident of that other State, or insofar as the debt clam underlying such interest payment forms part of the business property of a permanent establishment or a fixed base situated in that other State.


ARTICLE 12
Royalties

1. Royalties derived and beneficially owned by a resident of a Contracting State shall be taxable only in that State.

2. The term "royalties" as used in this Article means payments of any kind received as a consideration for the use of, or the right to use, any copyright of a literary, artistic, or scientific work (but not including cinematographic films, or works on film, tape, or other means of reproduction for use in radio or television broadcasting); for the use of, or the right to use, any patent, trademark, design or model, plan, secret formula or process, or other like right or property; or for information concerning industrial, commercial, or scientific experience. The term "royalties" also includes gains derived from the alienation of any such right or property that are contingent on the productivity, use, or further alienation thereof.

3. The provisions of paragraph 1 shall not apply if the beneficial owner of the royalties, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the right or property in respect of which the royalties are paid forms part of the business property of such permanent establishment or fixed base. In such a case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services), as the case may be, shall apply.

4. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the royalties, having regard to the use, right, or information for which they are paid, exceeds the amount that would have been agreed upon by the payor and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such a case the excess part of the payments shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of this Convention.

## ARTICLE 13
### Gains

1. Gains derived by a resident of a Contracting State from the alienation of immovable property referred to in Article 6 (Income from Immovable (Real) Property) and situated in the other Contracting State may be taxed in that other State.

2. For the purposes of this Article, the term "immovable" property situated in the other Contracting State shall include
> a) immovable property referred to in Article 6 ( Income from Immovable (Real) Property); and
> b) shares or comparable interests in a company that is, or is treated as, a resident of that other Contracting State, the assets of which company consist or consisted wholly or principally of immovable property situated in such other Contracting State, and an interest in a partnership, trust, or estate, to the extent that its assets consist of immovable property situated in that other Contracting State,

3. Gains from the alienation of immovable property forming part of the business property of a permanent establishment that an enterprise of a Contracting State has in the other Contracting State or of immovable property pertaining to a fixed base available to a resident of a Contracting State in the other Contracting State for the purpose of performing independent personal services, including such gains from the alienation of such a permanent establishment (alone or with the whole enterprise) or of such fixed base, may be taxed in that other State.

4. Gains from the alienation of ships, aircraft or containers operated in international traffic or movable property pertaining to the operation of such ships, aircraft, or containers shall be taxable only in

the Contacting State in which the profits of the enterprise deriving such income are taxable according to Article 8 (Shipping and Air Transport).

5. Gains from the alienation of any property other than that referred to in the preceding paragraphs shall be taxable only in the Contracting State of which the alienator is a resident.

6. In the case of an individual who was a resident of a Contacting State and who, after giving up residence in that State, has become a resident of the other Contracting State under the rules of Article 4 (Residence), paragraph 5 shall not affect the right of the first-mentioned State under its national laws to tax the individual in respect of a capital gain from the alienation of shares of any kind forming part of an interest of at least 25 percent in a company that is a resident of the first-mentioned State, provided such alienation occurs within 10 years of the date on which he gave up residence in the first-mentioned State. Gains subject to tax pursuant to the preceding sentence shall be limited to gains accrued during the period the individual was resident in the first-mentioned State. The other Contracting State shall calculate the gain in the case of a subsequent alienation on the basis of the value of such shares on the date on which the individual has ceased to be a resident of the first-mentioned State but shall not be prevented from including in income any gain accrued up to this date which has not been subject to tax in that first-mentioned State.

## ARTICLE 14
### Independent Personal Services

1. Income derived by an individual who is a resident of a Contracting State from the performance of personal services in an independent capacity shall be taxable only in that State, unless such services are performed in the other Contracting State and the income is attributable to a fixed base regularly available to the individual in that other State for the purpose of performing his activities.

2. The term "personal services in an independent capacity" includes but is not limited to independent scientific, literary, artistic, educational, or teaching, activities as well as the independent activities of physicians, lawyers, engineers, economists, architects, dentists, and accountants.

## ARTICLE 15
### Dependent Personal Services

1. Subject to the provisions of Articles 16 (Directors' Fees), 17 (Artistes and Athletes), 18 (Pensions, Annuities, Alimony, and Child Support), 19 (Government Service; Social Security), and 20 (Visiting Professors and Teachers; Students and Trainees), salaries, wages, and other similar remuneration derived by a resident of a Contracting State in respect of an employment shall be taxable only in that State, unless the employment is exercised in the other Contracting State. If the employment is so exercised, such remuneration as is derived therefrom may be taxed in that other State.

2. Notwithstanding the provisions of paragraph 1, remuneration derived by a resident of a Contracting State in respect of an employment exercised in the other Contracting State shall be taxable only in the first-mentioned State if:

        a) the recipient is present in the other State for a period or periods not exceeding in the aggregate 183 days in the calendar year concerned; and

        b) the remuneration is paid by, or on behalf of, an employer who is not a resident of the other State; and

        c) the remuneration is not borne by a permanent establishment or a fixed base that the employer has in the other State.

3. Notwithstanding the foregoing provisions of this Article, remuneration derived by a resident of a Contracting State in respect of an employment as a member of the regular complement of a ship or aircraft operated in international traffic may be taxed only in that State.

ARTICLE 16
Directors' Fees

Directors' fees and other similar payments derived by a resident of a Contracting State for services rendered in the other Contracting State in his capacity as a member of the board of directors of a company that is a resident of the other Contracting State may be taxed in that other Contracting State.

ARTICLE 17
Artistes and Athletes

1. Notwithstanding the provisions of Articles 7 (Business Profits), 14 (Independent Personal Services), and 15 (Dependent Personal Services), income derived by a resident of a Contracting State as an entertainer (such as a theater, motion picture, radio or television artiste, or a musician), or as an athlete, from his personal activities as such exercised in the other Contracting State may be taxed in that other State, except where the amount of the gross receipts derived by such entertainer or athlete, including expenses reimbursed to him or borne on his behalf, from such activities does not exceed $20,000 (twenty thousand United States dollars) or its equivalent in Deutsche mark for the calendar year concerned.

2. Where income in respect of activities exercised by an entertainer or an athlete in his capacity as such accrues not to the entertainer or athlete but to another person, that income of that other person may, notwithstanding the provisions of Articles 7 (Business Profits) and 14 (Independent Personal Services), be taxed in the Contracting State in which the activities of the entertainer or athlete are exercised, unless it is established that neither the entertainer or athlete nor persons related thereto participate directly or indirectly in the profits of that other person in any manner, including the accrual or receipt of deferred remuneration, bonuses, fees, dividends, partnership income, or other income or distributions.

3. The provisions of paragraphs 1 and 2 shall not apply to income derived from activities performed in a Contracting State by entertainers or athletes if the visit to that State is substantially supported, directly or indirectly, by public funds of the other Contracting State or a political subdivision or a local authority thereof. In such a case the income shall be taxable only in the Contracting State of which the entertainer or athlete is a resident.


# ARTICLE 18
## Pensions, Annuities, Alimony, and Child Support

1. Subject to the provisions of Article 19 (Government Service; Social Security). pensions and other similar remuneration derived and beneficially owned by a resident of a Contracting State in consideration of past employment shall be taxable only in that State.

2. Subject to the provisions of Article 19 (Government Service; Social Security), annuities derived and beneficially owned by a resident of a Contracting State shall be taxable only in that State. The term "annuities" as used in this paragraph means a stated sum paid periodically at stated times during a specified number of years, under an obligation to make the payment in return for adequate and full consideration (other than services rendered).

3. Alimony paid by a resident of a Contracting State and deductible there to a resident of the other Contracting State shall be taxable only in that other State. The term "alimony" as used in this Article means periodic payment (made pursuant to a written separation agreement or a decree of divorce, separate maintenance, or compulsory support) that are taxable to the recipient under the laws of the State of which he is a resident.

4. Nondeductible alimony, and periodic payment for the support of a minor child (made pursuant to a written separation agreement or a decree of divorce, separate maintenance, or compulsory support), paid by a resident of a Contracting State to a resident of the other Contracting State shall be taxable only in the first-mentioned State.


# ARTICLE 19
## Government Service; Social Security

1.

    a) Wages, salaries, and similar compensation and pensions paid by the United States or by its states or political subdivisions to a natural person, other than a German national, shall be exempt from tax by the Federal Republic of Germany.

    b) Wages, salaries, and similar compensation and pensions paid by the Federal Republic of Germany or by its Laender or by municipalities, or pensions paid by a public pension fund thereof to a natural person, other than a citizen of the United States and other than

an individual who has been admitted to the United States for permanent residence therein, shall be exempt from tax by the United States.

     c) Pensions, annuities, and other amounts paid by one of the Contracting States or by a juridical person organized under the public laws of that State as compensation for an injury or damage sustained as a result of hostilities or political persecution shall be exempt from tax by the other State.

     d) For the purposes of this paragraph the term "pensions" includes annuities paid to a retired civilian government employee.

2. Social security benefits paid under the social security legislation of a Contracting State and other public pensions (not dealt with in paragraph 1) paid by a Contracting State to a resident of the other Contracting State shall he taxable only in that other Contracting State. In applying the preceding sentence, that other Contracting State shall treat such benefit or pension as though it were a social security benefit paid under the social security legislation of that other Contracting State.


ARTICLE 20
Visiting Professors and Teachers; Students and Trainees

1. Remuneration that a professor or teacher who is a resident of a Contracting State and who is present in the other Contracting State for a period not exceeding two years for the purpose of carrying out advanced study or research or for teaching at an accredited university, college, school, or other educational institution, or a public research institution or other institution engaged in research for the public benefit, receives for such work shall be taxable only in the first-mentioned State. This Article shall not apply to income from research if such research is undertaken not in the public interest but primarily for the private benefit of a specific person or persons. The benefits provided in this paragraph shall not be granted to an individual who, during the immediately preceding period, enjoyed the benefits of paragraph 2, 3, or 4.

2. Payments other than compensation for personal services that a student or business apprentice (including Volontäre and Praktikanten in the Federal Republic of Germany) who is or was immediately before visiting a Contracting State a resident of the other Contracting State and who is present in the first-mentioned State for the purpose of his full-time education or training receives for the purpose of his maintenance, education, or training shall not be taxed in that State, provided that such payment arise from sources, or are remitted from, outside that State.

3. Payment other than compensation for personal services that a person who is or was immediately before visiting a Contracting State a resident of the other Contracting State receives as a grant, allowance, or award from a non-profit religious, charitable, scientific, literary, or educational private organization or a comparable public institution shall not be taxed in the first-mentioned State.

4. A student or business apprentice within the meaning of paragraph 2, or a recipient of a grant, allowance, or award within the meaning of paragraph 3, who is present in a Contracting State for a

period not exceeding four years shall not be taxed in that State on any income from dependent personal services that is not in excess of $ 5,000 (five thousand United States dollars) or its equivalent in Deutsche mark per taxable year, provided that such services are performed for the purpose of supplementing funds available otherwise for maintenance, education, or training.

5. A resident of one of the Contracting States who is an employee of an enterprise of such State or of an organization or institution described in paragraph 3, and who is temporarily present in the other Contracting State for a period not exceeding one year solely to acquire technical, professional, or business experience from any person other than such enterprise, organization, or institution, shall be exempt from tax by that other State on compensation remitted from outside that other State for services wherever performed paid by such enterprise, organization, or institution if such compensation does not exceed $10,000 (ten thousand United States dollars) or its equivalent in Deutsche mark.

ARTICLE 21
Other Income

1. Items of income of a resident of a Contracting State, wherever arising, not dealt with in the foregoing Articles of this Convention shall be taxable only in that State.

2. The provisions of paragraph 1 shall not apply to income, other than income from immovable property as defined in paragraph 2 of Article 6 (Income from Immovable (Real) Property), if the recipient of such income, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein, and the right or property in respect of which the income is paid from part of the business property of the permanent establishment; or the recipient performs in that other State independent personal services from a fixed base situated therein, and the income is attributable to the fixed base.

ARTICLE 22
Capital

1. Capital represented by immovable property referred to in Article 6 (Income from Immovable (Real) Property), owned by a resident of a Contracting State, and situated in the other Contracting State may be taxed in that other State.

2. Capital represented by immovable property forming part of the business property of a permanent establishment that an enterprise of a Contracting State has in the other Contracting State, or by immovable property pertaining to a fixed base available to a resident of a Contracting State in the other Contracting State for the purpose of performing independent personal services, may be taxed in that other State.

3. Capital represented by ships, aircraft, or containers operated in international traffic and by immovable property pertaining to the operation of such ships, aircraft, or containers shall be taxable only in the Contracting State in which the profits of the enterprise owning such capital are taxable according to Article 8 (Shipping and Air Transport).

4. All other elements of capital of a resident of a Contacting State shall be taxable only in that State.


ARTICLE 23
Relief From Double Taxation

1. Tax shall be determined in the case of a resident of the United States or a citizen thereof as follows: In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a resident or citizen of the United States as a credit against the United States tax on income

a) the income tax paid to the Federal Republic of Germany by or on behalf of such citizen or resident; and

b) in the case of a United States company owning at least 10 percent of the voting shares of a company that is a resident of the Federal Republic of Germany and from which the United States company receives dividends, the income tax paid to the Federal Republic of Germany by or on behalf of the distributing company with respect to the profits out of which the dividends are paid.

For the purposes of this paragraph, the taxes referred to in paragraphs 1 b) and 2 of Article 2 (Taxes Covered), other than the capital tax (Vermögensteuer) and that portion of the trade tax (Gewerbesteuer) computed on a basis other than profits, shall be considered income taxes paid to the Federal Republic of Germany. Credits allowed solely by reason of this Article, when added to otherwise allowable credits for taxes referred to in paragraphs 1 b) and 2 of Article 2, shall not in any taxable year exceed that proportion of the United States tax on income that taxable income arising in the Federal Republic of Germany bears to total taxable income.

2. Tax shall be determined in the case of a resident of the Federal Republic of Germany as follows:

a) Except as provided in subparagraph b), there shall be excluded from the basis upon which German tax is imposed any item of income from sources within the United States and any item of capital situated within the United States that, according to this Convention, may be taxed in the United States. The Federal Republic of Germany. however retains the right to take into account in the determination of its rate of tax the items of income and capital so excluded. In the case of income from dividends the foregoing provisions shall apply only to such income from distributions of profits on corporate rights subject to tax under United States law as are paid to a company (not including partnerships) being a resident of the Federal Republic of Germany by a company being a resident of the United States at least 10 percent of the voting shares of which is owned directly by the German company. The preceding sentence shall not apply to dividends paid by a Regulated Investment Company and distributions of amounts that have been

deducted when calculating for United States tax purposes the profits of the company distributing them. For the purposes of taxes on capital there shall also be excluded from the basis upon which German tax is imposed any shareholding the dividends of which, if paid, would be excluded according to the two immediately foregoing sentences, from the basis upon which German tax is imposed.

b) There shall be allowed as a credit against German tax on income, subject to the provisions of German tax law regarding credit for foreign tax, the United States tax paid in accordance with the law of the United States and with the provisions of this Convention on the following items of income:

aa) income from dividends within the meaning or Article 10 (Dividends) to which subparagraph a) does not apply;

bb) gains to which Article 13 (Gains) applies provided such gains are taxable in the United States by reason only of paragraph 2 b) of Article 13;

cc) income to which Article 16 (Directors' Fees) applies;

dd) income to which Article 17 (Artistes and Athletes) applies;

ee) income within the meaning of paragraph 1 a) of Article 19 (Government Service; Social Security) paid to a German national;

ff) income which would, but for Article 28 (Limitation on Benefits), remain exempt from United States tax under this Convention; and

gg) income to which Paragraph 21 of the Protocol applies.

For the purposes of this paragraph, profits, income, or gains of a resident of the Federal Republic of Germany shall be deemed to arise from sources in the United States if they are taxed in the United States in accordance with this Convention.

3. Where a United States citizen is a resident of the Federal Republic of Germany:

a) with respect to items of income not excluded from the basis of German tax under paragraph 2 that are exempt from United States tax or that are subject to a reduced rate of United States tax when derived by a resident of the Federal Republic of Germany who is not a United States citizen, the Federal Republic of Germany shall allow as a credit against German tax, subject to the provisions of German tax law regarding credit for foreign tax, only the tax paid, if any, that the United States may impose under the provisions of this Convention, other than taxes that may be imposed solely by reason of citizenship under paragraph 1 of the Protocol;

b) for purposes of computing United States tax, the United States shall allow as a credit against United States tax the income tax paid to the Federal Republic of Germany after the credit referred to in subparagraph a); the credit so allowed shall not reduce that portion of the United States tax that is creditable against the German tax in accordance with subparagraph a); and

c) for the exclusive purpose of relieving double taxation in the United States under subparagraph b), items of income referred to in subparagraph a) shall be deemed to arise in the Federal Republic of Germany to the extent necessary to avoid double taxation of such income under subparagraph b).

4. Where a company that is a resident of the Federal Republic of Germany distributes income derived from sources within the United States, this Article shall not preclude the compensatory imposition of corporation tax on such distributions in accordance with the provisions of the tax law of the Federal Republic of Germany.

ARTICLE 24
<u>Nondiscrimination</u>

1. Nationals of a Contracting State shall not be subjected in the other Contracting State to any taxation or any requirement connected therewith that is other or more burdensome than the taxation and connected requirements to which nationals of that other State in the same circumstances are or may be subjected. Notwithstanding the provisions of Article 1, this provision shall also apply to persons who are not residents of one or both of the Contracting States.

2. The taxation on a permanent establishment that an enterprise of a Contracting State has in the other Contracting State shall not be less favorably levied in that other State than the taxation levied on enterprises of that other State carrying on the same activities. This provision shall not be construed as obliging a Contracting State to grant to residents of the other Contracting State any personal allowances, reliefs, and reductions for taxation purposes on account of civil status or family responsibilities that it grants to its own residents.

3. Except where the provisions of paragraph 1 of Article 9 (Associated Enterprises), paragraph 4 of Article 11 (Interest), or paragraph 4 of Article 12 (Royalties) apply, interest, royalties, and other disbursements paid by an enterprise of a Contracting State to a resident of the other Contracting State shall, for purposes of determining the taxable profits of such enterprise, be deductible under the same conditions as if they had been paid to a resident of the first-mentioned State. Similarly, any debts of an enterprise of a Contracting State to a resident of the other Contracting State shall, for purposes of determining the taxable capital of such enterprise, be deductible under the same conditions as if they had been contracted to a resident of the first-mentioned State.

4. Enterprises of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned State to any taxation or any requirement connected therewith that is other or more burdensome than the taxation and connected requirements to which other similar enterprises of the first-mentioned State are or may be subjected.

5. Nothing in this Article shall prevent a Contracting State from imposing the tax described in paragraph 8 of Article 10 (Dividends).

6. The provisions of this Article shall, notwithstanding the provisions of Article 2 (Taxes Covered), apply to taxes of every kind and description imposed by a Contracting State or a political subdivision or local authority thereof.


ARTICLE 25
Mutual Agreement Procedure

1. Where a person considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with the provisions of this Convention, he may, irrespective of the remedies provided by the domestic law of those States, present his case to the competent authority of the Contracting State of which he is a resident or, if his case comes under paragraph 1 of Article 24 (Nondiscrimination), to that of the Contracting State of which he is a national. The case must be presented within four years from the notification of the assessment giving rise to double taxation or to taxation not in accordance with the provisions of this Convention.

2. The competent authority shall endeavor, if the objection appears to it to be justified and if it is not itself able to arrive at a satisfactory solution, to resolve the case by mutual agreement with the competent authority of the other Contracting State, with a view to the avoidance of taxation which is not in accordance with this Convention. Any agreement reached shall be implemented notwithstanding any time limits or other procedural limitations in the domestic law of the Contracting States.

3. The competent authorities of the Contracting States shall endeavor to resolve by mutual agreement any difficulties or doubts arising as to the interpretation or application of this Convention. In particular the competent authorities of the Contracting States may agree
a) to the same attribution of income, deductions, credits, or allowances of an enterprise of a Contracting State to its permanent establishment situated in the other Contracting State;
b) to the same allocation of income, deductions, credits, or allowances between associated enterprises and other persons in accordance with the principles of Article 9 (Associated Enterprises);
c) to the settlement of conflicting application of this Convention, including conflicts regarding
aa) the characterization of particular items of income;
bb) the characterization of persons;
cc) the application of source rules with respect to particular items of income, and
dd) to the treatment of income that is assimilated to income from shares by the taxation law of the State of source and that is treated as a different class of income in the other State;
d) to a common meaning of a term;
e) to the application of the procedural provisions of domestic law including those regarding penalties, fines, and interest, in a manner consistent with the purposes of this Convention; and

f) to increase the amounts referred to in Articles 17 (Artistes and Athletes) and 20 (Visiting Professors and Teachers; Students and Trainees) to reflect economic or monetary developments.

They may also consult together for the elimination of double taxation in cases not provided for in this Convention.

4. The competent authorities of the Contracting States may communicate with each other directly for purposes of reaching an agreement in the sense of the preceding paragraphs. Where the procedure relates to a particular case, the persons concerned shall be permitted to present their views to the competent authority of either or both of the Contracting States. When it seems advisable in order to reach agreement to have an oral exchange of opinions, such exchange may take place through a Commission consisting of representatives of the competent authorities of the Contracting States.

5. Disagreements between the Contracting States regarding the interpretation or application of this Convention shall, as far as possible, be settled by the competent authorities. If a disagreement cannot be resolved by the competent authorities it may, if both competent authorities agree, be submitted for arbitration. The procedures shall be agreed upon and shall be established between the Contracting States by notes to be exchanged through diplomatic channels.

## ARTICLE 26
### Exchange of Information and Administrative Assistance

1. The competent authorities of the Contracting States shall exchange such information as is necessary for carrying out the provisions of this Convention and of the domestic law of the Contracting States concerning taxes covered by this Convention insofar as the taxation thereunder is not contrary to this Convention. The exchange of information is not restricted by Article 1 (Personal Scope). Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the domestic laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment, collection, or administration of, the enforcement or prosecution in respect of, or the determination of appeals in relation to the taxes covered by this Convention. Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions, unless the competent authority of the Contracting State supplying the information raises an objection.

2. In no case shall the provisions of paragraph 1 be construed to impose on a Contracting State the obligation:

a) to carry out administrative measures at variance with the laws and administrative practice of that or of the other Contracting State;

b) to supply information that is not obtainable under the laws or in the normal course of the administration of that or of the other Contracting State;

c) to supply information that would disclose any trade, business, industrial, commercial, or professional secret or trade process, or information, the disclosure of which would be contrary to public policy.

3. If information is requested by a Contracting State in accordance with this Article, the other Contracting State shall obtain the information to which the request relates in the same manner and to the same extent as if the tax of the first-mentioned State were the tax of that other State and were being imposed by that other State. If specifically requested by the competent authority of a Contracting State, the competent authority of the other Contracting State shall, if possible, provide information under this Article in the form of depositions of witnesses and authenticated copies of unedited original document (including books, papers, statements, records, accounts, and writings) to the same extent such depositions and document can be obtained under the laws and administrative practices of that other State with respect to its own taxes.

4. Each of the Contracting States shall endeavor to collect on behalf of the other Contracting State such amounts of tax as may be necessary to ensure that relief granted by this Convention from taxation imposed by that other State does not inure to the benefit of persons not entitled thereto.

5. Paragraph 4 shall not impose upon either of the Contracting States the obligation to carry out administrative measures that are of a different nature from those used in the collection of its own taxes, or that would be contrary to its sovereignty, security, or public policy.

6. The Contracting States may, through diplomatic channels, exchange notes under which they may, subject to the provisions of this Article, exchange information for the purposes of taxes imposed by a Contracting State not referred to in Article 2 (Taxes Covered).

ARTICLE 27
Exempt Organizations

1. Notwithstanding the provisions of Article 28 (Limitation on Benefits), a German company or organization operated exclusively for religious, charitable, scientific. educational, or public purposes shall be exempt from tax by the United States in respect of items of income, if and to the extent that
a) such company or organization is exempt from tax in the Federal Republic of Germany, and
b) such company or organization would be exempt from tax in the United States in respect of such items of income if it were organized, and carried on all its activities, in the United States.

2. Notwithstanding the provisions of Article 28 (Limitation on Benefits), a United States company or organization operated exclusively for religious, charitable, scientific, educational, or public purposes shall be exempt from tax by the Federal Republic of Germany in respect of items of income if and to the extent that
a) such company or organization is exempt from tax in the United States, and

b) such company or organization would be exempt from tax in the Federal Republic of Germany in respect of such items of income if it were a German company or organization and carried on all its activities in the Federal Republic of Germany.


ARTICLE 28
Limitation on Benefits

1. A person that is a resident of a Contracting State and derives income from the other Contracting State shall be entitled, in that other Contracting State, to all the benefits of this Convention only if such person is:

a) an individual;

b) a Contracting State, or a political subdivision or local authority thereof;

c) engaged in the active conduct of a trade or business in the first-mentioned Contracting State (other than the business of making or managing investments, unless these activities are banking or insurance activities carried on by a bank or insurance company), and the income derived from the other Contracting State is derived in connection with, or is incidental to, that trade or business;

d) a company in whose principal class of shares there is substantial and regular trading on a recognized stock exchange;

e)        aa) a person, more than 50 percent of the beneficial interest in which (or in the case of a company, more than 50 percent of the number of shares of each class of whose shares) is owned, directly or indirectly, by persons entitled to benefits of this Convention under subparagraphs a), b), d), or f) or who are citizens of the United States; and

bb) a person, more than 50 percent of the gross income of which is not used, directly or indirectly, to meet liabilities (including liabilities for interest or royalties) to persons not entitled to benefits of this Convention under subparagraphs a), b), d), or f) or who are not citizens of the United States; or

f) a not-for-profit organization that, by virtue of that status, is generally exempt from income taxation in its Contracting State of residence, provided that more than half of the beneficiaries, members, or participants, if any, in such organization are persons that are entitled, under this Article, to the benefits of this Convention.


2. A person that is not entitled to the benefits of this Convention pursuant to the provisions of paragraph 1 may, nevertheless, be granted the benefits of the Convention if the competent authority of the State in which the income in question arises so determines.


3. For the purposes of paragraph 1, the term recognized stock exchange means:

a) the NASDAQ System owned by the National Association of Securities Dealers, Inc. and any stock exchange registered with the Securities and Exchange Commission as a national securities exchange for purposes of the Securities Exchange Act of 1934;

b) any German stock exchange on which registered dealings in shares take place;

        c) any other stock exchange agreed upon by the competent authorities of the Contracting States.

4. The competent authorities of the Contracting States shall consult together with a view to developing a commonly agreed application of the provisions of this Article. The competent authorities shall, in accordance with the provisions of Article 26 (Exchange of Information and Administrative Assistance) exchange such information, as is necessary for carrying out the provisions of this Article and safe-guarding, in cases envisioned therein, the application of their domestic law.

## ARTICLE 29
### Refund of Withholding Tax

1. If in one of the Contracting States the taxes on dividends, interest, royalties, or other items of income are levied by withholding at source, then the right to apply the withholding of tax at the rate provided for under the domestic law of that State is not affected by the provisions of this Convention.

2. The tax so withheld at source shall be refunded on application to the extent that its levying is limited by this Convention.

3. The period for application for a refund is four years from the end of the calendar year in which the dividends, interest, royalties, or other items of income have been received.

4. The Contracting State in which the income arises may require an administrative certification by the Contracting State of which the taxpayer is a resident, with respect to the fulfillment of the conditions for the unlimited tax liability in that State.

5. The competent authorities of the Contracting States shall implement the foregoing provisions by mutual agreement pursuant to Article 25 (Mutual Agreement Procedure).

6. The competent authorities of the Contracting States may establish by mutual agreement other procedures for the implementation of tax reductions provided under this Convention.

## ARTICLE 30
### Members of Diplomatic Missions and Consular Posts

1. Nothing in this Convention shall affect the fiscal privileges of diplomatic agents or consular officers under the general rules of international law or under the provisions of special agreement.

2. To the extent that, due to such privileges, income or capital is not taxed in the receiving State, the sending State shall have the right to tax such income or capital.

3. Notwithstanding the provisions of Article 4 (Residence), an individual who is a member of a diplomatic mission or a consular post of a Contracting State that is situated in the other Contracting State or in a third State shall be deemed for the purposes of this Convention to be a resident of the sending State if:

      a) in accordance with international law he is not liable to tax in the receiving State in respect of income from sources outside that State or on capital situated outside that State, and

      b) he is liable in the sending State to the same obligations in relation to tax on his total income or on capital as are residents of that State.

4. This Convention shall not apply to international organizations, to organs or officials thereof, or to persons who are members of a diplomatic mission, consular post, or permanent mission of a third State, being present in a Contracting State and not liable in either Contracting State to the same obligations in respect of taxes on income or on capital as are residents.


## ARTICLE 31
### Berlin Clause

This Convention shall also apply to Land Berlin, provided that the Government of the Federal Republic of Germany does not make a contrary declaration to the Government of the United States of America within three months of the date of entry into force of this Convention.


## ARTICLE 32
### Entry into Force

1. This Convention shall be ratified and the instruments of ratification shall be exchanged at Washington as soon as possible.

2. This Convention shall enter into force on the date on which the instruments of ratification are exchanged and shall have effect in both Contracting States

      a) in respect of taxes withheld at source as well as excise taxes imposed on insurance premiums for amounts paid or credited on or after 1 January, 1990;

      b) in respect of other taxes on income for any taxable year (Steuerjahr) or assessment period (Veranlagungszeitraum), as the case may be, beginning on or after 1 January, 1990, but excluding any fiscal year (Wirtschaftsjahr) commencing before such date; and

      c) in respect of taxes on capital for the taxes levied on items of capital owned on or after 1 January, 1990.

3.Where any greater relief from tax would have been afforded to a person entitled to the benefits of the Convention between the United States of America and the Federal Republic of Germany for the Avoidance of Double Taxation with Respect to Taxes on Income and to certain other Taxes, signed on 22 July, 1954, as amended by the Protocol signed on 17 September, 1965 ("the 1954 Convention"),

under that Convention than under this Convention, the 1954 Convention shall, at the election of such person, continue to have effect in its entirety for the first assessment period, or taxable year, with respect to which the provisions of this Convention would otherwise have effect under paragraph 2 b).

4. Notwithstanding the foregoing provisions of this Article, the tax charged pursuant to paragraph 2 a) of Article 10 (Dividends) on dividends (within the meaning of paragraph 4 of that Article) paid or credited before 1 January, 1992, may exceed 5 percent of the gross amount of the dividends, but shall not exceed 10 percent thereof.

5. Notwithstanding the foregoing provisions of this Article,
 a) the provisions of paragraph 8 of Article 10 (Dividends) shall have effect in respect of taxes levied on the dividend equivalent amount for assessment periods or taxable years beginning on or after 1 January, 1991, but excluding fiscal years commencing before such date; for purposes of the preceding sentence the dividend equivalent amount shall be treated as paid on the last day of the company's fiscal year;
 b) the provisions of the fourth sentence of paragraph 2 a) of Article 23 (Relief from Double Taxation) shall not have effect on dividends paid by a Regulated Investment Company prior to 1 January, 1991, provided that such Regulated Investment Company was in existence on 1 October, 1988.

6. Notwithstanding the foregoing provisions of this Article, the following shall apply with respect to items of income described in Article 11 (Interest) and in paragraphs 4 and 5 of Article 10 (Dividends):
 a) the 1954 Convention, and not this Convention, shall apply to interest as that term is used in the 1954 Convention, including interest derived from a "partiarisches Darlehen" or a "Gewinnobligation", paid or credited before 1 January, 1991;
 b) income from debt obligations to which paragraph 4 of Article 10 (Dividends) applies, and income derived from a "partiarisches Darlehen" or a "Gewinnobligation" to which paragraph 5 of Article 10 (Dividends) does not apply, and that is paid or credited on or after 1 January, 1991, shall be taxable in the Contracting State in which it arises at the rates provided for in paragraphs 2 and 3 of Article 10;
 c) income derived under a "Stille Gesellschaft", and income derived from "jouissance" shares or "jouissance" rights, to which paragraph 5 of Article 10 (Dividends) applies and that is paid or credited before 1 January, 1991 shall be taxable in the Contracting State in which it arises at a rate not exceeding 15 percent of the gross. amount;
 d) income derived under a "Stille Gesellschaft", and income derived from "jouissance" shares or "jouissance" rights, to which paragraph 5 of Article 10 (Dividends) does not apply, shall be taxable in the Contracting State in which it arises at the rates provided for in paragraphs 2 and 3 of Article 10 if such income is paid or credited on or after 1 January, 1990; and
 e) the foregoing provisions of this paragraph shall not apply to income described in paragraph 6 of Article 10 (Dividends) or in paragraph 3 of Article 11 (Interest).

7. The 1954 Convention shall cease to have effect when the provisions of this Convention take effect in accordance with this Article.

ARTICLE 33
Termination

This Convention shall continue in effect indefinitely but either of the Contracting States may, on or before the thirtieth day of June in any calendar year beginning after the expiration of a period of five years from the date of its entry into force, give to the other Contracting State, through diplomatic channels, written notice of termination and, in such event, this Convention shall cease to have effect

a) in respect of taxes withheld at source as well as excise taxes imposed on insurance premiums for amounts paid or credited on or after 1 January of the calendar year following the year in which the notice of termination is given;

b) in respect of other taxes on income for taxes levied for taxable years or assessment periods beginning on or after 1 January of the calendar year following the year in which the notice of termination is given (but excluding any fiscal year commencing before such date); and

c) in respect of taxes on capital for taxes levied on items of capital existing on or after 1 January of the calendar year following the year in which the notice of termination is given.

Done in duplicate at Bonn this *29th day of August 1989,* in the English and German languages, both texts being equally authentic.

For the
United States of America

(s) Vernon A. Walters

For the
Federal Republic of Germany

(s) Dr. Hans Werner Lautenschlager
(s) Theodor Waigel

PROTOCOL

At the signing today of the Convention between the United States of America and the Federal Republic of Germany for the "Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital and to Certain Other Taxes, the undersigned have agreed upon the following provision, which shall form an integral part of the Convention:

1. With reference to the general effects of the Convention

a) Notwithstanding any provision of the Convention or this Protocol except subparagraph b), the United States may tax its residents (as determined under Article 4 (Residence)) and its citizens as if the Convention had not come into effect. For this purpose, the term "citizen" shall include a former citizen whose loss of citizenship had as one of its principal purposes the avoidance of income tax, but only for a period of 10 years following such loss.

b) The provisions of subparagraph a) shall not affect the benefits conferred by the United States

aa) under paragraph 2 of Article 9 (Associated Enterprises), paragraph 6 of Article 13 (Gains), paragraphs 3 and 4 of Article 18 (Pensions, Annuities, Alimony, and Child Support) and paragraphs 1 c) and 2 of Article 19 (Government Service; Social Security), and under Articles 23 (Relief from Double Taxation), 24 (Nondiscrimination), and 25 (Mutual Agreement Procedure); and

bb) under paragraph 1 b) of Article 19 (Government Service; Social Security), and under Articles 20 (Visiting Professors and Teachers; Students and Trainees) and 30 (Members of Diplomatic Missions and Consular Posts), upon individuals who are neither citizens of, nor have immigrant status in, the United States.

c) The Convention shall not restrict in any manner any exclusion, exemption, deduction, credit, or other allowance now or hereafter accorded

aa) by the laws of either Contracting State; or

bb) by any other agreement between the Contracting States.

d) Nothing in the Convention shall be construed to prevent the Federal Republic of Germany from imposing its taxes on amounts included in the income of a resident of the Federal Republic of Germany according to part 4 of the German "Aussensteuergesetz". Where such imposition of tax gives rise to a double taxation, the competent authorities shall consult for the elimination of such double taxation according to paragraph 3 of Article 25 (Mutual Agreement Procedure).

2. <u>With reference to Paragraph 1 of Article 4 (Residence)</u>

The Federal Republic of Germany shall treat a United States citizen or an alien lawfully admitted for permanent residence (a "green card" holder) as a resident of the United States only if such person has a substantial presence, permanent home, or habitual abode in the United States.

3. <u>With reference to Article 5 (Permanent Establishment) and Article 14 (Independent Personal Services)</u>

A resident of a Contracting State that performs in the other Contracting State concerts, theatrical or artistic performances, or similar shows and revues and that may not be taxed in that other State under the provision of Article 17 (Artistes and Athletes) shall not be deemed to have a permanent establishment or fixed base in that State if its presence does not exceed in the aggregate 183 days in the calendar year concerned.

4. <u>With reference to paragraphs 1 and 2 of Article 7 (Business Profits) and paragraph 3 of Article 13 (Gains)</u>

For the implementation of paragraphs 1 and 2 of Article 7 and paragraph 3 of Article 13 any income, gain, or expense attributable to a permanent establishment or a fixed base during its existence is taxable or deductible in the Contracting State where such permanent establishment or fixed base is situated even if the payments are deferred until such permanent establishment or fixed base has ceased to exist. Nothing in the preceding sentence shall affect the application to such deferred payments of rules regarding the accrual of income and expenses according to the domestic law of a Contracting State.

5. <u>With reference to Article 7 (Business Profits) and Article 13 (Gains)</u>

Gains from the alienation of immovable property that at any time formed part of the business property of a permanent establishment or fixed base that a resident of one Contracting State has or had in the other Contracting State may be taxed by that other State only to the extent of the gain that accrued during that time. Notwithstanding any provision of Article 7 or Article 13, such tax may be imposed on such gains at the time when realized and recognized under the laws of that other State, if it is within ten years of the date on which the property ceases to be part of the business property of the permanent establishment or fixed base (or such shorter period provided by the laws of either Contracting State).

6. <u>With reference to paragraph 3 of Article 7 (Business Profits)</u>

The competent authorities may mutually agree to common procedures different from those under national law for the allocation to a permanent establishment of expenses mentioned in paragraph 3 of Article 7.

7. <u>With reference to Article 9 (Associated Enterprises)</u>

Either State may apply the rules of its national law that permit the distribution, apportionment, or allocation of income, deductions, credits, or allowances between related persons with a view to apportioning or allocating such deductions, credits, or allowances in accordance with the general principles of paragraph 1 of Article 9. Article 9 shall not be construed to limit either Contracting State in allocating income between persons that are related other than by direct or indirect participation within the meaning of paragraph 1, such as by commercial or contractual relationships resulting in controlling influence, so long as such allocation is otherwise in accordance with the general principles of paragraph 1 of Article 9.

8. <u>With reference to paragraph 3 of Article 10 (Dividends)</u>

For United States income tax purposes, the United States shareholder shall be treated as if it had received as a dividend a refund of German tax equal to 5.88 percent of the dividend actually paid, determined before the German withholding tax on such dividend. The sum of this refund and such actual dividend shall be deemed to have been subject to German withholding tax at the rate prescribed in paragraph 2 b) of Article 10.

9. <u>With reference to paragraph 8 of Article 10 (Dividends)</u>

The general principle of the "dividend equivalent amount", as used in the United States law, is to approximate that portion of the income mentioned in paragraph 8 a) that is comparable to the amount that would be distributed as a dividend if such income were earned by a locally incorporated subsidiary.

10. <u>With reference to Articles 10 (Dividends), 11 (Interest), and 12 (Royalties)</u>

A Contracting State shall deem the recipient of dividends, interest, or royalties who is a resident of the other Contracting State to be the beneficial owner for the purposes of Articles 10, 11, and 12 if the recipient is the person to which the income is attributable for tax purposes under the laws of the first-mentioned State.

11. With reference to Article 11 (Interest)

The excess of the amount of interest deductible by a United States permanent establishment of a German company over the interest actually paid by such permanent establishment shall be treated as interest derived and beneficially owned by a resident of the Federal Republic of Germany.

12. With reference to Article 12 (Royalties)

Where an artiste resident in one Contracting State records a performance in the other Contracting State, has a copyrightable interest in the recording, and receives consideration for the right to use the recording based on the sale or public playing of such recording, then such consideration shall be governed by this Article.

13. With reference to paragraph 2 of Article 13 (Gains)

The term "immovable property situated in the other Contracting State", as described in this paragraph, when the United States is that other Contracting State includes a United States real property interest.

14. With reference to paragraph 3 of Article 13 (Gains)

Nothing in this Article shall prevent gains from the alienation by a resident of a Contracting State of an interest in a partnership, trust, or estate that has a permanent establishment situated in the other Contracting State from being treated as gain under paragraph 3.

15. With reference to paragraph 1 of Article 17 (Artistes and Athletes)

If an artiste or athlete is not subject to tax in the Federal Republic of Germany under the provisions of paragraph 1 of Article 17, tax may be withheld at source in the Federal Republic of Germany and shall be refunded to the taxpayer only upon application at the end of the calendar year concerned. Paragraph 6 of Article 29 (Refund of Withholding Tax) shall remain unaffected.

16. With reference to paragraph 3 of Article 18. (Pensions, Annuities, Alimony, and Child Support)

In determining the taxable income of an individual who is a resident of the Federal Republic of Germany there shall be allowed as a deduction in respect of alimony or similar allowances paid to an individual who is a resident of the United States the amount that would be allowed as a deduction if that last-mentioned individual were subject to unlimited tax liability in the Federal Republic of Germany.

17. With reference to paragraph 2 of Article 20 (Visiting Professors and Teachers; Students and Trainees)

Payments that are made out of public funds of a Contracting State or by a scholarship organization endowed with such funds shall be considered to arise in full from sources outside the other State. The preceding sentence shall also apply when such payments are made under programs funded jointly by organizations of both Contracting States if more than 50 percent of these funds are provided out of public funds of the first-mentioned State or by a scholarship organization endowed with such funds. The competent authorities shall consult with each other to identify those scholarship programs whose payments shall be treated as arising from sources outside a Contracting State under the foregoing rules.

18. With reference to paragraphs 1, 4, and 5 of Article 20 (Visiting Professors and Teachers; Students and Trainees)

If a resident of a Contracting State remains in the other Contracting State for a period of time exceeding that prescribed, that other State may tax the individual under its national law for the entire period of the visit, unless in a particular case the competent authorities of the Contracting States agree otherwise.

19. With reference to paragraph 2 of Article 21 (Other Income)

Where the recipient and the payor of a dividend are both residents of the Federal Republic of Germany and the dividend is attributed to a permanent establishment or a fixed base that the recipient of the dividend has in the United States, the Federal Republic of Germany may tax such a dividend at the rates provided for in paragraph 2 and 3 of Article 10 (Dividends). The United States shall give a credit for such tax according to the provisions of Article 23 (Relief from Double Taxation).

20. With reference to paragraph 1 of Article 23 (Relief from Double Taxation)

In cases where the Convention gives to the Federal Republic of Germany the right to tax income and such income is regarded as United States source income under United States law the United States shall grant the credit provided for in paragraph 1 of Article 23, subject to any law of the United States limiting the foreign tax credit in a way that prevents the crediting of a foreign tax against United States source income, and the credit provided for in paragraph 3 of Article 23. For purposes of paragraph 1 of Article 23, the "general principle hereof " means the avoidance of double taxation by allowing a credit for taxes imposed on items of income arising in Germany, as determined under applicable United States source rules, as modified by the Convention. While the details and limitations of the credit pursuant to this paragraph may change as provisions of United States law change, any such changes must preserve a credit for German taxes paid or accrued with respect to items of German source income.

21. With reference to Article 23 (Relief from Double Taxation) and Article 25 (Mutual Agreement Procedure)

The Federal Republic of Germany shall avoid double taxation by a tax credit as provided for in paragraph 2 b) of Article 23, and not by a tax exemption under paragraph 2 a) of Article 23,

a) if in the Contracting States income or capital is placed under differing provisions of the Convention or attributed to different persons (other than under Article 9 (Associated Enterprises)) and this conflict cannot be settled by a procedure pursuant to Article 25 and

aa) if as a result of such placement or attribution the relevant income or capital would be subject to double taxation; or

bb) if as a result of such placement or attribution the relevant income or capital would remain untaxed or be subject only to inappropriately reduced taxation in the United States and would (but for the application of this paragraph) remain exempt from tax in the Federal Republic of Germany; or

b) if the Federal Republic of Germany has, after due consultation and subject to the limitations of its internal law, notified the United States through diplomatic channels of other items of income to which it intends to apply this paragraph in order to prevent the exemption of

income from taxation in both Contracting States or other arrangements for the improper use of the Convention.

In the case of a notification under subparagraph b), the United States may, subject to notification through diplomatic channels, characterize such income under the Convention consistently with the characterization of that income by the Federal Republic of Germany. A notification made under this paragraph shall have effect only from the first day of the calendar year following the year in which it was transmitted and any legal prerequisites under the domestic law of the notifying State for giving it effect have been fulfilled.

22. With reference to paragraph 1 of Article 24 (Nondiscrimination)
    Paragraph 1 of Article 24 does not obligate the United States to subject an individual who is a German national not resident in the United States to the same taxing regime as that applied to a citizen of the United States not resident in the United States.

23. With reference to Article 25 (Mutual Agreement Procedure)
    Nothing in this Article shall be construed to obligate a Contracting State to disregard a person's waiver of rights under this Article.

24. With reference to paragraph 5 of Article 25 (Mutual Agreement Procedure)
    The decision of the arbitration board in a particular case shall be binding on both Contracting States with respect to that case.

25. With reference to paragraph 5 of Article 25 (Mutual Agreement Procedure) and Article 26 (Exchange of Information and Administrative Assistance)
    The Contracting States may release to the arbitration board such information as is necessary for carrying out the arbitration procedure, provided that the members of the arbitration board shall be subject to the limitations on disclosure described in Article 26.

26. With reference to Article 26 (Exchange of Information and Administrative Assistance)
    The Federal Republic of Germany shall under this Article exchange information with or without request to the extent provided for in the law of 19 December, 1985 (EG-Amtshilfegesetz) as amended from time to time without changing the general principles thereof.

27. With reference to Article 27 (Exempt Organizations)
    The competent authorities of the Contracting States shall develop procedures for implementing this Article.

28. With reference to paragraph 1 f) of Article 28 (Limitation on Benefits)
    The not-for-profit organizations described in paragraph 1 f) of Article 28 include, but are not limited to, pension funds, pension trusts, private foundations, trade unions, trade associations, and similar organizations. In all events, a pension fund, pension trust, or similar entity organized for purposes of providing retirement, disability, or other employment benefits that is organized under the laws of a

Contracting State shall be entitled to the benefits of the Convention if the organization sponsoring such fund, trust, or entity is entitled to the benefits of the Convention under Article 28.

Done in duplicate at Bonn this *29th day of August, 1989,* in the English and German languages, both texts being equally authentic.

For the United States of America          For the Federal Republic of Germany

(s) Vernon A. Walters                     (s) Dr. Hans Werner Lautenschlager
                                          (s) Theodor Waigel


NOTES OF EXCHANGE 2


DER STAATSSEKRETAR
DES AUSWARTIGEN AMTS


BONN, 29, August 1989

His Excellency
Mr. Vernon Walters
Ambassador of the United States of America
Bonn

Excellency,

I have the honor to refer to the Convention signed today between the Federal Republic of Germany and the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income and Capital and to certain other Taxes and to inform you on behalf of the Government of the Federal Republic of Germany of the following:

If the competent authorities of both Contracting States agree to submit a disagreement regarding the interpretation or application of this Convention to arbitration according to paragraph 5 of Article 25, the following procedures will apply:

1. The competent authorities may agree to invoke arbitration in a specific case only after fully exhausting the procedures available under paragraphs 1 to 4 of Article 25, and if the taxpayer(s) consent(s) to the arbitration and agree(s) in writing to be bound by the arbitration decision. The

competent authorities will not generally accede to arbitration with respect to matters concerning the tax policy or domestic tax law of either Contracting State.

2. The competent authorities shall establish an arbitration board for each specific case in the following manner:

(a) An arbitration board shall consist of not less than three members. Each competent authority shall appoint the same number of members, and these members shall agree on the appointment of the other member(s).

(b) The other member(s) of the arbitration board shall be from either Contracting State or from another OECD member country. The competent authorities may issue further instructions regarding the criteria for selecting the other member(s) of the arbitration board.

(c) Arbitration board members (and their staffs) upon their appointment must agree in writing to abide by and be subject to the applicable confidentiality and disclosure provisions of both Contracting States and the Convention. In case those provisions conflict, the most restrictive condition will apply.

3. The competent authorities may agree on and instruct the arbitration board regarding specific rules of procedure, such as appointment of a chairman, procedures for reaching a decision, establishment of time limits, etc. Otherwise, the arbitration board shall establish its own rules of procedure consistent with generally accepted principles of equity.

4. Taxpayers and/or their representatives shall be afforded the opportunity to present their views to the arbitration board.

5. The arbitration board shall decide each specific case on the basis of the Convention, giving due consideration to the domestic laws of the Contracting States and the principles of international law. The arbitration board will provide to the competent authorities an explanation of its decision. The decision of the arbitration board in a particular case shall be binding on both Contracting States and the taxpayer(s) with respect to that case. While the decision of the arbitration board shall not have precedential effect, it is expected that such decisions ordinarily will be taken into account in subsequent competent authority cases involving the same taxpayer(s), the same issue(s), and substantially similar facts, and may also be taken into account in other cases where appropriate.

6. Costs for the arbitration procedure will be borne in the following manner:

(a) Each Contracting State shall bear the cost of remuneration for the member(s) appointed by it, as well as for its representation in the proceedings before the arbitration board;

(b) the cost of remuneration for the other member(s) and all other costs of the arbitration board shall be shared equally between the Contracting States; and

(c) the arbitration board may decide on a different allocation of costs.

However, if it deems appropriate in a specific case, in view of the nature of the case and the roles of the parties, the Competent Authority of a Contracting State may require the taxpayer(s) to agree to bear that Contracting State's share of the costs as a prerequisite for arbitration.

7. The competent authorities may agree to modify or supplement these procedures; however, they shall continue to be bound by the general principles established herein.

If this proposal meets with the approval of the Government of the United States of America, this Note and your reply thereto shall constitute the agreement of our two governments on these matters.

Accept, Excellency, the expression of my highest consideration.


(s) Lautenschlager


EMBASSY OF THE
UNITED STATES OF AMERICA
Bonn, August 29, 1989


His Excellency
Dr. Hans Werner Lautenschlager
State Secretary of the Foreign Office
Bonn

Excellency,

I have the honor to confirm receipt of your Note of today's date which roads as follows:

"I have the honor to refer to the Convention signed today between the Federal Republic of Germany and the United States of America for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income and Capital and to certain other Taxes and to inform you on behalf of the Government of the Federal Republic of Germany of the following:

If the competent authorities of both Contracting States agree to submit a disagreement regarding the interpretation or application of this Convention to arbitration according to paragraph 5 of Article 25, the following procedures will apply:

1. The competent authorities may agree to invoke arbitration in a specific case only after fully exhausting the procedures available under paragraphs 1 to 4 of Article 25, and if the taxpayer(s) consent(s) to the arbitration and agree(s) in writing to be bound by the arbitration decision. The competent authorities will not generally accede to arbitration with respect to matters concerning the tax policy or domestic tax law of either Contracting State.

2. The competent authorities shall establish an arbitration board for each specific case in the following manner:

      (a) An arbitration board shall consist of not less than three members. Each competent authority shall appoint the same number of members, and these members shall agree on the appointment of the other member(s).

      (b) The other member(s) of the arbitration board shall be from either Contracting State or from another OECD member country. The competent authorities may issue further instructions regarding the criteria for selecting the other member(s) of the arbitration board.

      (c) Arbitration board members (and their staffs) upon their appointment must agree in writing to abide by and be subject to the applicable confidentiality and disclosure provisions of both Contracting States and the Convention. In case those provisions conflict, the most restrictive condition will apply.

3. The competent authorities may agree on and instruct the arbitration board regarding specific rules of procedure, such as appointment of a chairman, procedures for reaching a decision, establishment of time limits, etc. Otherwise, the arbitration board shall establish its own rules of procedure consistent with generally accepted principles of equity.

4. Taxpayers and/or their representatives shall be afforded the opportunity to present their views to the arbitration board.

5. The arbitration board shall decide each specific case on the basis of the Convention, giving due consideration to the domestic laws of the Contracting States and the principles of international law. The arbitration board will provide to the competent authorities an explanation of its decision. The decision of the arbitration board in a particular case shall be binding on both Contracting States and the taxpayer(s) with respect to that case. While the decision of the arbitration board shall not have precedential effect, it is expected that such decisions ordinarily will be taken into account in subsequent competent authority cases involving the same taxpayer(s), the same issue(s), and substantially similar facts, and may also be taken into account in other cases where appropriate.

6. Costs for the arbitration procedure will be borne in the following manner:

      (a) Each Contracting State shall bear the cost of remuneration for the member(s) appointed by it, as well as for its representation in the proceedings before the arbitration board;

      (b) the cost of remuneration for the other member(s) and all other costs of the arbitration board shall be shared equally between the Contracting States; and

      (c) the arbitration board may decide on a different allocation of costs.

However, if it deems appropriate in a specific case, in view of the nature of the case and the roles of the parties, the Competent Authority of a Contracting State may require the taxpayer(s) to agree to bear that Contracting State's share of the costs as a prerequisite for arbitration.

7. The competent authorities may agree to modify or supplement these procedures; however, they shall continue to be bound by the general principles established herein.

If this proposal meets with the approval of the Government of the United States of America, this Note and your reply thereto shall constitute the agreement of our two governments on these matters."

I have the honor to inform you, that my Government agrees to the above.

Accept, Excellency, the expression of my highest consideration.

(s) V.A.W.