UNITED STATES - JAPAN INCOME TAX CONVENTION

*A Convention Between The United States And Japan For The Avoidance of Double Taxation And The Prevention of*
*Fiscal Evasion With Respect to Taxes on Income Was Signed at Tokyo on March 8, 1971.*
*Ratification Was Advised by The Senate of The United States on November 29, 1971.*
*It Was Ratified by the President of the United States on*
*December 28, 1971, And by Japan on June 2, 1972.*
*The Instruments of Ratification Were Exchanged at Washington on*
*June 9, 1972.*
*The Convention Was Proclaimed by the President on July 25, 1972, and Entered into Force on*
*July 9,1972.*

GENERAL EFFECTIVE DATE UNDER ARTICLE 28: 1 JANUARY 1973

TABLE OF ARTICLES

Article 1---------------------------------Taxes Covered
Article 2---------------------------------Definitions
Article 3---------------------------------Residence
Article 4---------------------------------General Treaty Rules
Article 5---------------------------------Avoidance of Double Taxation
Article 6---------------------------------Source Rules
Article 7---------------------------------Non-discrimination
Article 8---------------------------------Business Profits
Article 9---------------------------------Permanent Establishment
Article 10-------------------------------Income from Ships and Aircraft
Article 11-------------------------------Associated Enterprises
Article 12-------------------------------Dividends
Article 13-------------------------------Interest
Article 14-------------------------------Royalties
Article 15-------------------------------Income from Real Property
Article 16-------------------------------Capital Gains
Article 17-------------------------------Independent Personal Services
Article 18-------------------------------Dependent Personal Services
Article 19-------------------------------Teachers and Researchers
Article 20-------------------------------Students and Trainees
Article 21-------------------------------Government Employees
Article 22-------------------------------Rules Regarding Personal Income Articles
Article 23-------------------------------Private Pensions and Annuities
Article 24-------------------------------Diplomatic and Consular Officials
Article 25-------------------------------Mutual Agreement Procedure
Article 26-------------------------------Exchange of Information
Article 27-------------------------------Mutual Assistance
Article 28-------------------------------Entry into Force
Article 29-------------------------------Termination
Notes of Exchange I--------------------of 8 March, 1971
Notes of Exchange II-------------------of 8 March, 1971
Letter of Submittal----------------------of 26 April, 1971
Letter of Transmittal--------------------of 11 May, 1971
The "Saving Clause"-------------------Paragraph 3 of Article 4

TAX CONVENTION WITH JAPAN

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND JAPAN FOR THE AVOIDANCE
OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON
INCOME, SIGNED AT TOKYO
ON MARCH 8, 1971

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, April 26, 1971.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate for advice
and consent to ratification, a convention between the United States of America and Japan for the avoidance of
double taxation and the prevention of fiscal evasion with respect to taxes on income, signed at Tokyo on March
8,1971.

This convention, upon entry into force, would replace the convention of April 16, 1954, relating to the avoidance
of double taxation with respect to taxes on income, as modified and supplemented by protocols of May 7,1960, and
August 14,1962 (6 UST 149; 15 UST 1538; 16 UST 697; Treaties and Other International Acts Series 3176, 5637,
and 5798).

On the occasion of the signing of the new convention, the American Ambassador to Japan. and the Japanese
Minister for Foreign Affairs also signed two exchanges of notes relating to understandings in regard to certain
provisions of the convention, as explained more fully hereinafter. The exchanges of notes are also submitted
herewith with a view to their transmission, for the information of the Senate, along with the convention.

The new convention reflects changes in the internal tax laws of the United States and Japan and takes into
account recent developments in treaty policy of the two countries. It follows as closely as policy and technical
considerations permit the model draft convention published in 1963 by the Organization for Economic Cooperation
and Development which the United States joined on September 30,1961 and Japan joined on April 28,1964.

Except for maximum rates on investment income, the substance of the new convention is similar to that of
income tax conventions recently concluded by the United States with France, Finland and Belgium. The new
Japanese convention provides, in general, the same maximum rates on investment income as in the existing (1954)
(convention, i.e., 10 percent on direct investment dividends, 15 percent on other dividends, 10 percent on interest
and 10 percent on royalties (including motion picture royalties).

The following changes from the existing convention represent substantive improvements:

1. The force of attraction rule would be eliminated. Under the new convention the reductions in the rate of
withholding tax on investment income would be applicable as long as the investment income is not effectively
connected with a permanent establishment which the taxpayer has in the taxing country. Under the existing
convention the mere existence of a permanent establishment makes the reductions inapplicable.

2.Interest income can be taxed at 10 percent under both the existing and new conventions, and both conventions provide an exemption for interest received by the Bank of Japan and the Export-Import Bank of Japan and the Federal Reserve Banks of the United States and the Export-Import Bank of the United States. The new convention extends the exemption from Japanese tax to interest received by residents of the United States on debt obligations guaranteed or insured or indirectly financed by those United States banks and reciprocally extends the exemption from United States tax to interest received by residents of Japan on debt obligations guaranteed or insured or indirectly financed by those Japanese banks or insured by the Government of Japan.

3.The definition of direct investments for purposes of the 10 percent withholding rate on dividends would be changed to reduce the stock ownership requirement from more than 50 percent of the stock to at least 10 percent of the voting stock.

4.Rental income from tangible personal property not connected with a permanent establishment of the recipient would be exempt under the new convention, whereas the existing convention applies the 10 percent royalty rate to rental income. The exemption would not, however, apply to rent from leases of ships or aircraft by a person not engaged in the operation of ships or aircraft in international traffic.

The convention contains a preamble and 29 articles.

Article 1 describes the taxes to which the convention relates: in the case of the United States, the Federal income taxes imposed by the Internal Revenue Code; in the case of Japan, the income tax and the corporation tax. It also provides that, for the purpose of Article 7 (non-discrimination), the convention shall also apply to taxes of every kind imposed by a contracting state or a political subdivision or local authority thereof, and that, for the purpose of Article 26 (exchange of information), the convention shall also apply to taxes of every kind imposed by a contracting state.

Article 2 contains definitions of various terms found in the convention.

Article 3 defines "residents". In general, the convention is applicable only to persons (including corporations) resident in either Japan or the United States.

Article 4 sets forth the rule that a resident of one state may be taxed by the other state only on income from sources within that other state. The article, with certain exceptions, reserves to each state the right to tax its residents, and, in the case of the United States, its citizens, as if there were no convention. In addition, the article provides that the exemptions or reductions in rate of tax, in the state of source otherwise afforded by the convention, shall not apply to income which is taxed by the state of residence only if remitted, when the income is not actually remitted.

Article 5 provides, consistent with the laws of each country, for a credit for taxes paid to the other country.

Article 6 sets forth rules for determining the source of various types of income.

Article 7 provides for nondiscriminatory treatment by one state of the citizens of the other state resident in the first state, of permanent establishments maintained in the first state by residents of the other state and of corporations of the first state owned by residents of the other state.

Article 8 provides that industrial and commercial profits of a resident of one state may be taxed by the other only to the extent attributable to a permanent establishment in the other state.

Article 9 defines a permanent establishment.

Article 10, to which the two exchanges of notes described below are related, provides a reciprocal exemption of income earned from the operation of ships or aircraft in international traffic.

Article 11 recognizes the right of each state to reallocate income among related persons, where necessary, to reflect the amounts which would be earned through arm's length relationships.

Articles 12 through 14 establish the maximum withholding rates, noted above, on direct investment dividends, other dividends, interest and royalties.

Article 15 provides for the taxation of real property income in the state where the property is situated.

Under Article 16, capital gains derived by a resident of one state are, except in certain circumstances, exempt from tax by the other state.

Articles 17 and 18 provide that under certain circumstances an individual who is a resident of one state shall be exempt from tax on income from personal services in the other state if he is present in the other state for 183 days or less. In the case of a public entertainer who is not an employee, the exemption applies only if he is present for 90 days or less and his income does not exceed $3,000.

Articles 19 and 20 provide, under certain conditions, that residents of one state who are present in the other as teachers, students, or trainees are exempt from tax in the latter state.

Article 21 provides that government employees of one state working in the other state are exempt from tax in that other state.

Article 22 sets forth rules for applying Articles 17 through 21.

Article 23 provides that pensions and annuities may be taxed only in the state of residence of the recipient.

Article 24 specifically preserves the fiscal privileges of diplomatic and consular officials.

Articles 25 through 27 provide authority for the two states to agree to, and carry out, solutions to problems arising under the treaty, including problems arising from inconsistent allocations of income, to exchange information pertinent to carrying out the provisions of the convention and to preventing tax fraud or fiscal evasion, and to assist each other in the collection of taxes to ensure that treaty benefits are not enjoyed by persons not entitled to them.

It is provided in Article 28 that the convention will enter into force on the thirtieth day after the date on which instruments of ratification are exchanged, the provisions to have effect for the first time for taxable years beginning on or after January 1 of the year following the year in which the treaty enters into force. Article 28 also provides for the termination of the 1954 convention as modified and supplemented.

Pursuant to Article 29, the convention would remain in force until terminated by one of the parties. Either party has the right to terminate the convention at any time after five years from the date of its entry into force by giving a six-month prior written notice of termination.

One of the related exchanges of notes deals with exemption of United States residents deriving international shipping or aircraft income from Japanese enterprise tax (or tax substantially similar to the enterprise tax) if State, county, or local governments in the United States do not impose an income tax (or a tax substantially similar to the Japanese enterprise tax) on the operation by a Japanese resident of ships or aircraft in international traffic.

The other exchange of notes relates to the application of the exemption for international shipping and aircraft income to income from containers used in international shipping and to income from a lease of a ship or aircraft by a person engaged in international traffic to another person engaged in international traffic. This exchange also recognizes that interest income is derived from a debt obligation indirectly financed by the Export-Import Bank of Japan where that bank provides funds in the form of export, import, or investment credit to a resident of Japan for the purpose of making a loan to a U.S. resident.

The Department of the Treasury, with the cooperation of the Department of State, was primarily responsible for the negotiation of the convention submitted herewith. It has the approval of both Departments.

Respectfully submitted,

JOHN N. IRWIN II.

(Enclosures: (1) Report of the Acting Secretary of State. (2) Tax convention of March 8, 1971 with Japan. (3) Exchange of notes on state or local tax. (4) Exchange of notes on containers and leases international traffic.)

LETTER OF TRANSMITTAL

THE WHITE HOUSE, *May 11, 1971.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the convention between the United States of America and Japan for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income, signed at Tokyo on March 8,1971.

For the information of the Senate, I transmit also the report of the Acting Secretary of State with respect to the convention and copies of two exchanges of notes of March 8, 1971, relating to understandings in regard to certain provisions of the convention, as explained in the Secretary's report.

The existing income-tax convention of April 16,1954, with Japan, as modified and supplemented by protocols of May 7, 1960, and August 14, 1962, would be terminated and replaced by the new convention upon the coming into force of the latter.

The new convention follows in general the pattern of bilateral income-tax conventions now in force between the United States and a number of other countries and reflects changes in United States and Japanese tax laws and recent developments in treaty policy of the two countries. So far as policy and technical considerations permit, the convention follows the model draft convention of the Organization for Economic Cooperation and Development published in 1963. The substance of the new convention with Japan is similar to that of income-tax conventions recently concluded by the United States with France, Finland and Belgium, except with respect to maximum rates on investment income. The Senate has given its advice and consent to those three conventions; the conventions with France and Finland have been brought into force.

In general, the maximum rates of taxation on investment income provided in the new convention with Japan are the same as those in the existing (1954) convention. Some of the major changes from the existing convention which are regarded as substantive improvements are outlined in the Secretary's report.

The convention has the approval of the Department of State and the Department of the Treasury.

I recommend that the Senate give early and favorable consideration to the convention.

RICHARD NIXON.

(Enclosures: (1) Report of the Acting Secretary of State. (2) Tax convention of March 8, 1971 with Japan. (3) Exchange of notes on state or local tax. (4) Exchange of notes on containers and leases international traffic.)

The official text of the convention is contained in the pamphlet of the Treaties and Other International Act Series and is designated TIAS 7365. The English text of the convention follows:

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

CONSIDERING THAT:

The Convention between the United States of America and Japan for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income was signed at Tokyo on March 8, 1971, the text of which Convention is annexed;

The Senate of the United States of America by its resolution of November 29, 1971, two-thirds of the Senators present concurring therein, gave its advice and consent to the ratification of the Convention;

The Convention was duly ratified by the President of the United States of America on December 28, 1971, and was duly ratified on the part of Japan;

It is provided in Article 28 of the Convention that the Convention shall enter into force on the thirtieth day after the date on which instruments of ratification are exchanged;

The instruments of ratification of the Convention were duly exchanged at Washington on June 9, 1972, and the Convention accordingly enters into force on July 9, 1972;

NOW, THEREFORE, I, Richard Nixon, President of the United States of America, proclaim and make public the Convention of March 8, 1971 between the United States of America and Japan to the end that it shall be observed and fulfilled with good faith by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this twenty-fifth day of July in the year of our Lord one thousand nine hundred seventy-two and of the Independence of the United States of America the one hundred ninety-seventh.

RICHARD NIXON

By the President:
WILLIAM P. ROGERS
*Secretary of State*

CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND JAPAN FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME

The United States of America and Japan

Desiring to conclude a new convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income,

Have agreed upon the following articles:

ARTICLE 1
(Taxes Covered)

(1) The taxes which are the subject of this Convention are:
(a) In the case of the United States, the Federal income taxes imposed by the Internal Revenue Code, hereinafter referred to as "United States tax", and
(b) In the case of Japan, the income tax and the corporation tax, hereinafter referred to as "Japanese tax".

(2) This Convention shall also apply to taxes substantially similar to those covered by paragraph (1) of this article which are imposed in addition to, or in place of, existing taxes after the date of signature of this Convention.

(3) For the purpose of Article 7, this Convention shall also apply to taxes of every kind imposed by a Contracting State or a political subdivision or local authority thereof. For the purpose of Article 26, this Convention shall also apply to taxes of every kind imposed by a Contracting State.

ARTICLE 2
(Definitions)

(1) In this Convention, unless the context otherwise requires:

(a) The term "United States" means the United States of America and, when used in a geographical sense, means the states thereof and the District of Columbia.

(b) The term "Japan", when used in a geographical sense, means all the territory in which the laws relating to Japanese tax are in force.

(c) The term "a Contracting State" or "the other Contracting State" means the United States or Japan, as the context requires.

(d) The term "person" means an individual, a corporation, or any other body of persons.

(e)　　(i) The term "United States corporation" means a corporation which is created or organized under the laws of the United States or any state thereof or the District of Columbia, or any unincorporated entity treated as a United States corporation for purposes of United States tax; and

(ii) The term "Japanese corporation" means a juridical person which has its head or main office in Japan or any organization without juridical personality treated for purposes of Japanese tax as a Japanese juridical person.

(f) The term "competent authority" means:

(i) In the case of the United States, the Secretary of the Treasury or his delegate, and

(ii) In the case of Japan, the Minister of Finance or his authorized representative.

(g) The term "citizen" means:

(i) In the case of the United States, a citizen of the United States, and

(ii) In the case of Japan, a national of Japan.

(2) As regards the application of this Convention by a Contracting State, any term used in this Convention and not otherwise defined shall, unless the context otherwise requires, have the meaning which it has under the laws of that Contracting State relating to the taxes which are the subject of this Convention.

ARTICLE 3
(Residence)

In this Convention:

(1) The term "resident of Japan" means:

(a) A Japanese corporation, or

(b) Any other person resident in Japan for purposes of Japanese tax.

(2) The term "resident of the United States" means:

(a) A United States corporation, or

(b) Any other person (except a corporation or any entity treated under United States law as a corporation) resident in the United States for purposes of United States tax, but in the case of an estate or trust only to the extent that the income derived by such person is subject to United States tax as the income of a resident.

(3) An individual who is a resident of both Contracting States shall be deemed to be a resident of that Contracting State in which he maintains his permanent home. If he has a permanent home in both Contracting States or in neither Contracting State, he shall be deemed to be a resident of that Contracting State with which his personal

and economic relations are closest (center of vital interests). If the Contracting State in which he has his center of vital interests cannot be determined, he shall be deemed to be a resident of that Contracting State in which he has a habitual abode. If he has a habitual abode in both Contracting States or in neither Contracting State, he shall be deemed to be a resident of that Contracting State of which he is a citizen. If he is a citizen of both Contracting States or of neither Contracting State, the competent authorities of the Contracting States shall settle the question by mutual agreement. An individual who is deemed to be a resident of a Contracting State and not a resident of the other Contracting State by reason of the provisions of this paragraph shall be deemed to be a resident only of the first-mentioned Contracting State for all purposes of this Convention, including Article 4.


ARTICLE 4
(General Treaty Rules)

(1) A resident of a Contracting State may be taxed by the other Contracting State on any income from sources within that other Contracting State and only on such income, subject to any limitations set forth in this Convention. For this purpose, the rules set forth in Article 6 shall be applied to determine the source of income.

(2) The provisions of this Convention shall not be construed to restrict in any manner any exclusion, exemption, deduction, credit, or other allowance now or hereafter accorded-
            (a) By the laws of a Contracting State in the determination of the tax imposed by that Contracting State, or
            (b) By any other agreement between the Contracting States.

(3) Except to the extent provided in paragraph (4) of this article, this Convention shall not affect the taxation by a Contracting State of its residents (and, in the case of the United States, its citizens).

(4) The provisions of paragraph (3) of this article shall not affect:
            (a) The benefits provided under Articles 5, 7, 21, and 25; and
            (b) The benefits provided under Articles 19, 20, and 22, but in the case of benefits conferred by the United States only if the person claiming the benefits neither is a citizen of, nor has immigrant status in, the United States.

(5) There shall be allowed, for purposes of United States tax, in the case of a resident of Japan who is not a resident of the United States (other than an officer or employee of the Government of Japan or local authority thereof), in addition to the deduction for one personal exemption provided in section 873 of the United States Internal Revenue Code as in effect on the first day of December 1968, a deduction for personal exemptions, subject to the conditions prescribed in sections 151 through 154 of the Internal Revenue Code as in effect on the said date, for the spouse of the taxpayer and for each child of the taxpayer present in the United States and residing with him in the United States at any time during the taxable year, but such additional deduction shall not exceed that proportion thereof which the taxpayer's gross income from sources within the United States which is treated as effectively connected with the conduct of a trade or business within the United States within the meaning of section 864 (c) of the Internal Revenue Code for the taxpayer's taxable year bears to his entire income from all sources for such taxable year.

(6) The United States may impose its personal holding company tax and its accumulated earnings tax notwithstanding any provision of this Convention. However, a Japanese corporation shall be exempt from the United States personal holding company tax in any taxable year if all of its stock is owned, directly or indirectly, by one or more individuals who are residents of Japan (and not citizens of the United States) for that entire year. A Japanese corporation shall be exempt from the United States accumulated earnings tax in any taxable year unless such corporation is engaged in trade or business in the United States through a permanent establishment at any time during such year.

(7) Where, pursuant to any provision of this Convention, a Contracting State reduces the rate of tax on, or exempts from tax, income of a resident of the other Contracting State and under the law in force in that other Contracting State the resident is subject to tax by that other Contracting State only on that part of such income which

is remitted to or received in that other Contracting State, then the reduction or exemption shall apply only to so much of such income as is remitted to or received in that other Contracting State.

## ARTICLE 5
### (Avoidance of Double Taxation)

(1) Double taxation of income shall be avoided in the following manner:

(a) In accordance with the provisions of the law of the United States, as in force from time to time, regarding the allowance of a credit against United States tax of tax payable in any country other than the United States, the United States shall allow to a citizen or resident of the United States as a credit against United States tax the appropriate amount of Japanese tax and, in the case of a United States corporation owning at least 10 percent of the voting power of a Japanese corporation from which it receives dividends, shall allow credit for the appropriate amount of Japanese tax paid by the Japanese corporation paying such dividends with respect to the profits out of which such dividends are paid. For the purpose of applying the United States credit in relation to taxes paid to Japan, the rules set forth in Article 6 shall be applied to determine the source of income.

(b) In accordance with the provisions of the laws of Japan, as in force from time to time, regarding the allowance of a credit against Japanese tax of tax payable in any country other than Japan, Japan shall allow to a resident of Japan as a credit against Japanese tax the appropriate amount of United States tax and, in the case of a Japanese corporation owning at least 10 percent of the voting shares of a United States corporation from which it receives dividends, shall allow credit for the appropriate amount of United States tax paid by the United States corporation paying such dividends with respect to the profits out of which such dividends are paid. For the purpose of applying the Japanese credit in relation to taxes paid to the United States, the rules set forth in Article 6 shall be applied to determine the source of income.

(2) The tax of a Contracting State which shall be credited by the other Contracting State in accordance with this article shall include any tax on income or profits imposed by any political subdivision or any local authority of the first-mentioned Contracting State.

## ARTICLE 6
### (Source Rules)

For purposes of this Convention:

(1) Dividends shall be treated as income from sources within a Contracting State only if paid by a corporation of that Contracting State.

(2) Interest shall be treated as income from sources within a Contracting State only if paid by that Contracting State, a political subdivision or local authority thereof, or by a resident of that Contracting State. Notwithstanding the preceding sentence, if the person paying the interest (other than interest paid on indebtedness incurred in connection with the purchase of ships or aircraft)-

(a) Whether or not such person is a resident of a Contracting State, has a permanent establishment in a Contracting State in connection with which the indebtedness on which the interest is paid was incurred and such interest is borne by such permanent establishment, or

(b) Is a resident of a Contracting and has a permanent establishment in a State other than the Contracting States in connection with which the indebtedness on which the interest is paid was incurred and such interest is borne by such permanent establishment,

such interest shall be deemed to be from sources within the State in which the permanent establishment is located.

(3) Royalties for the use of, or the right to use, property (other than ships or aircraft) or rights described in paragraph (3) (a) of Article 14, and gains to the extent that they are contingent on the productivity, use, or disposition of such property or rights described in paragraph (3) (b) of Article 14, shall be treated as income from sources within a Contracting State only if the royalties, or the amount realized on the sale, exchange, or other disposition from which the gain is derived is paid for the use of, or the right to use, such property or rights within that Contracting State.

(4) Income from real property, including royalties in respect of the operation of mines or quarries, or the exploitation of any natural resources and gains derived from the sale, exchange, or other disposition of such property or of the right giving rise to such royalties, shall be treated as income from sources within a Contracting State only if such property is situated in that Contracting State.

(5) Income from the rental of tangible personal property (other than from the rental of ships or aircraft) shall be treated as income from sources within a Contracting State only if such property is situated in that Contracting State. Income from the rental of ships or aircraft derived by a person not engaged in the operation of ships or aircraft in international traffic shall be treated as income from sources within a Contracting State only if the lessee is a resident of that Contracting State.

(6) Income (other than directors' fees described in paragraph (5) of Article 18) received by an individual for his performance of labor or personal services whether as an employee or in an independent capacity shall be treated as income from sources within a Contracting State only if such services are performed in that Contracting State. Income from labor or personal services performed aboard ships or aircraft operated by a resident of a Contracting State in international traffic shall be treated as income from sources within that Contracting State, if rendered by a member of the regular complement of the ship or aircraft. For purposes of this paragraph, income from labor or personal services includes pensions (as defined in paragraph (2) of Article 23) paid in respect of such services. Notwithstanding the preceding provisions of this paragraph, remuneration described in Article 21 shall be treated as income from sources within a Contracting State only if paid by, or out of the funds to which contributions are made by, that Contracting State or a political subdivision or local authority thereof. Directors' fees described in paragraph (5) of Article 18 shall be treated as income from sources within a Contracting State only if the corporation of which the individual is a director is a corporation of that Contracting State.

(7) Income from the purchase and sale of personal property (other than gains defined as royalties in paragraph (3) (b) of Article 14) shall be treated as income from sources within a
Contracting State only if such property is sold in that Contracting State.

(8) Notwithstanding paragraphs (1) through (7) of this article, industrial or commercial profits which are attributable to a permanent establishment which the recipient, being a resident of a Contracting State, has in the other Contracting State, including income derived from real property and natural resources and dividends, interest, royalties (as defined in paragraph (3) of Article 14), and capital gains, but only if the property or rights giving rise to such income, dividends, interest, royalties, or capital gains are effectively connected with such permanent establishment, shall be treated as income from sources within that other Contracting State. To determine whether property or rights are effectively connected with a permanent establishment, the factors taken into account shall include whether the property or rights are used in or held for use in carrying on industrial or commercial activity through such permanent establishment, and whether the activities carried on through such permanent establishment were a material factor in the realization of the income derived from such property or rights. For this purpose, due regard shall be given to whether or not such property or rights or such income were accounted for through such permanent establishment.

(9) The source of any item of income to which paragraphs (1) through (8) of this article are not applicable shall be determined by each of the Contracting States in accordance with its own law.

ARTICLE 7
(Non-discrimination)

(1) A citizen of a Contracting State who is a resident of the other Contracting State shall not be subjected in that other Contracting State to more burdensome taxes than a citizen of that other Contracting State who is a resident thereof.

(2) A permanent establishment which a resident of a Contracting State has in the other Contracting State shall not be subjected in that other Contracting State to more burdensome taxes than a resident of that other Contracting State carrying on the same activities. This paragraph shall not be construed as obliging a Contracting State to grant

to individual residents of the other Contracting State any personal allowances, reliefs, and deductions for taxation purposes on account of civil status or family responsibilities which it grants to its own individual residents.

(3) A corporation of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned Contracting State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which a corporation of the first-mentioned Contracting State carrying on the same activities, the capital of which is wholly owned or controlled by one or more residents of the first-mentioned Contracting State, is or may be subjected.


ARTICLE 8
(Business Profits)

(1) Industrial or commercial profits of a resident of a Contracting State shall be exempt from tax by the other Contracting State unless such resident is engaged in industrial or commercial activity in that other Contracting State through a permanent establishment situated therein. If such resident is so engaged, tax may be imposed by that other Contracting State on the industrial or commercial profits of such resident but only on so much of such profits as are attributable to the permanent establishment.

(2) Where a resident of a Contracting State is engaged in industrial or commercial activity in the other Contracting State through a permanent establishment situated therein, there shall in each Contracting State be attributed to the permanent establishment the industrial or commercial profits which would be attributable to such permanent establishment if such permanent establishment were an independent entity engaged in the same or similar activities under the same or similar conditions and dealing wholly independently with the resident of which it is a permanent establishment.

(3) In the determination of the industrial or commercial profits of a permanent establishment, there shall be allowed as deductions expenses which are reasonably connected with such profits, including executive and general administrative expenses, whether incurred in the Contracting State in which the permanent establishment is situated or elsewhere.

(4) No profits shall be attributed to a permanent establishment if a resident of a Contracting State in the other Contracting State merely by reason of the purchase of goods or merchandise by that permanent establishment, or by the resident of which it is a permanent establishment, for the account of that resident.

(5) The term "industrial or commercial profits" includes income derived from manufacturing, mercantile, insurance, agricultural, fishing, or mining activities, from the operation of ships or aircraft, from the furnishing of personal services, and from the rental of tangible personal property (other than ships or aircraft). Such term also includes income derived from real property and natural resources; dividends, interest, royalties (as defined in paragraph (3) of Article 14); and capital gains but only if the right or property giving rise to such income, dividends, interest, royalties, or capital gains is effectively connected with a permanent establishment which the recipient, being a resident of a Contracting State, has in the other Contracting State. Such term does not include-
      (a) Income received by an individual as compensation for his personal services either as an employee or in an independent capacity, or
      (b) Income derived by a corporation or other entity of a Contracting State from sources within the other Contracting State from furnishing personal services of an individual who does not or would not qualify for exemption under paragraph (2) of Article 18 by reason of paragraph (3) thereof.


ARTICLE 9
(Permanent Establishment)

(1) For the purpose of this Convention, the term "permanent establishment" means a fixed place of business through which a resident of a Contracting State engages in industrial or commercial activity.

(2) The term "fixed place of business" includes but is not limited to:

      (a) A branch;

      (b) An office;

      (c) A factory;

      (d) A workshop;

      (e) A warehouse;

      (f) A mine, quarry, or other place of extraction of natural resources; and

      (g) A building site or construction or installation project which exists for more than 24 months.

(3) Notwithstanding paragraphs (1) and (2) of this article, a permanent establishment shall not include a fixed place of business used only for one or more of the following;

      (a) The use of facilities for the purpose of storage, display, or delivery of goods or merchandise belonging to the resident;

      (b) The maintenance of a stock of goods or merchandise belonging to the resident for the purpose of storage, display, or delivery;

      (c) The maintenance of a stock of goods or merchandise belonging to the resident for the purpose of processing by another person;

      (d) The purchase of goods or merchandise, or the collection of information, for the resident; or

      (e) Advertising, the supply of information, the conduct of scientific research, or similar activities which have a preparatory or auxiliary character, for the resident.

(4) A person acting in a Contracting State on behalf of a resident of the other Contracting State, other than an agent of an independent status to whom paragraph (5) of this article applies, shall be deemed to be a permanent establishment in the first-mentioned Contracting State if such person has, and habitually exercises in the first-mentioned Contracting State, an authority to conclude contracts in the name of that resident, unless the exercise of such authority is limited to the purchase of goods or merchandise for that resident.

(5) A resident of a Contracting State shall not be deemed to have a permanent establishment in the other Contracting State merely because such resident engages in industrial or commercial activity in that other Contracting State through a broker, general commission agent, or any other agent of an independent status, where such broker or agent is acting in the ordinary course of his business.

(6) The fact that a resident of a Contracting State is a related person with respect to a resident of the other Contracting State or with respect to a person who engages in industrial or commercial activity in that other Contracting State (whether through a permanent establishment or otherwise) shall not be taken into account in determining whether that resident of the first-mentioned Contracting State has a permanent establishment in that other Contracting State.

ARTICLE 10
(Income from Ships and Aircraft)

(1) Notwithstanding Article 8 and Article 16, income which a resident of the United States derives from operation in international traffic of ships or aircraft registered in the United States and gains which a resident of the United States derives from the sale, exchange, or other disposition of ships or aircraft operated in international traffic by such resident and registered in the United States shall be exempt from Japanese tax.

(2) Notwithstanding Article 8 and Article 16, income which a resident of Japan derives from the operation in international traffic of ships or aircraft which are either registered in Japan or leased by such resident and gains which a resident of Japan derives from the sale, exchange, or other disposition of ships or aircraft operated in international traffic by such resident and registered in Japan shall be exempt from United States tax.

ARTICLE 11
(Associated Enterprises)

(1) Where a resident of a Contracting State and any other person are related and where such related persons make arrangements or impose conditions between themselves which are different from those which would be made between independent persons, then any income, deductions, credits, or allowances which would, but for those arrangements or conditions, have been taken into account in computing the income (or loss) of, or the tax payable by, one of such persons, may be allocated and utilized in computing the amount of the income subject to tax and the taxes payable by such resident of that Contracting State.

(2) A person is related to another person if either person owns or controls directly or indirectly the other, or if any third person or persons own or control directly or indirectly both. For this purpose, the term "control" includes any kind of control, whether or not legally enforceable, and however exercised or exercisable.

ARTICLE 12
(Dividends)

(1) Dividends derived from sources within a Contracting State by a resident of the other Contracting State may be taxed by both Contracting States.

(2) The rate of tax imposed by a Contracting State on dividends derived from sources within that Contracting State by a resident of the other Contracting State shall not exceed-
    (a) 15 percent of the gross amount actually distributed; or
    (b) When the recipient is a corporation, 10 percent of the gross amount actually distributed if-
        (i) During the part of the paying corporation's taxable year which precedes the date of payment of the dividend and during the whole of its prior taxable year (if any), at least 10 percent of the voting shares of the paying corporation was owned by the recipient corporation, and
        (ii) Not more than 25 percent of the gross income of the paying corporation for such prior taxable year (if any) consists of interest or dividends (other than interest derived from the conduct of a banking, insurance, or financing business and dividends or interest received from subsidiary corporations, 50 percent or more of the outstanding shares of the voting stock of which is owned by the paying corporation at the time such dividends or interest is received).

(3) Paragraph (2) of this article shall not apply if the recipient of the dividends, being a resident of a Contracting State, has a permanent establishment in the other Contracting State and the shares with respect to which the dividends are paid are effectively connected with such permanent establishment.

ARTICLE 13
(Interest)

(1) Interest derived from sources within a Contracting State by a resident of the other Contracting State may be taxed by both Contracting States.

(2) Notwithstanding paragraph (1) of this article, interest derived from sources within the United States by the Bank of Japan or by the Export-Import Bank of Japan, or by any resident of Japan with respect to debt obligations guaranteed or indirectly financed by either of such banks or with respect to debt obligations insured by the Government of Japan pursuant to the Law concerning Export Insurance of March 31, 1950 (Law No. 67), shall be exempt from United States tax.

(3) Notwithstanding paragraph (1) of this article, interest derived from sources within Japan by any Federal Reserve bank in the United States or by the Export-Import Bank of the United States, or by any resident of the United States with respect to debt obligations guaranteed or insured or indirectly financed by any of such banks, shall be exempt from Japanese tax.

(4) The rate of tax imposed by a Contracting State on interest derived from sources within that Contracting State by a resident of the other Contracting State shall not exceed 10 percent.

(5) Paragraphs (2), (3), and (4) of this article shall not apply if the recipient of the interest, being a resident of a Contracting State, has a permanent establishment in the other Contracting State and the indebtedness giving rise to the interest is effectively connected with such permanent establishment.

(6) Where any interest paid by a person to any related person exceeds an amount which would have been paid to an unrelated person, the provisions of this article shall apply only to so much of the interest as would have been paid to an unrelated person. In such a case, the excess payment may be taxed by each Contracting State according to its own law, including the provisions of this Convention where applicable.

(7) The term "interest", as used in this Convention, means income from bonds, debentures, Government securities, notes, or other evidences of indebtedness, whether or not secured, and whether or not carrying a right to participate in profits, and debt-claims of every kind, as well as all other income assimilated to income from money lent by the taxation law of the Contracting State in which the income has its source.

ARTICLE 14
(Royalties)

(1) Royalties derived from sources within a Contracting State by a resident of the other Contracting State may be taxed by both Contracting States.

(2) The rate of tax imposed by a Contracting State on royalties derived from sources within that Contracting State by a resident of the other Contracting State shall not exceed 10 percent.

(3) The term "royalties", as used in, this article, means-
 (a) Payment of any kind made as consideration for the use of, or the right to use, copyrights of literary, artistic, scientific works, or motion picture films or films or tapes used for radio or television broadcasting, patents, designs or models, plans, secret processes or formulae, trademarks, or other like property or rights, or know-how, or ships or aircraft (but only if the lessor is a person not engaged in the operation in international traffic of ships or aircraft), and
 (b) Gains derived from the sale, exchange, or other disposition of any property or rights referred to in subparagraph (a) of this paragraph (other than ships or aircraft) to the extent that the amounts realized on such sale, exchange, or other disposition for consideration are contingent on the productivity, use, or disposition of such property or rights.

(4) Paragraph (2) of this article shall not apply if the recipient of the royalty, being a resident of a Contracting State, has in the other Contracting State a permanent establishment and the property or rights giving rise to the royalty are effectively connected with such permanent establishment.

(5) Where any royalty paid by a person to any related person exceeds an amount which would have been paid to an unrelated person, the provisions of this article shall apply only to so much of the royalty as would have been paid to an unrelated person. In such a case, the excess payment may be taxed by each Contracting State according to its own law, including the provisions of this Convention where applicable.

ARTICLE 15
(Income from Real Property)

(1) Income from real property, including royalties in respect of the operation of mines or quarries, or the exploitation of any natural resources and gains derived from the sale, exchange, or other disposition of such property or of the right giving rise to such royalties, may be taxed by the Contracting State in which such real property, mines, quarries, or natural resources are situated. For the purposes of this Convention, interest on indebtedness secured by real property or secured by a right giving rise to royalties in respect of the operation of mines or quarries, or the exploitation of any natural resources shall not be regarded as income from real property.

(2) Paragraph (1) of this article shall apply to income derived from the usufruct, direct use, letting, or use in any other form of real property.


ARTICLE 16
(Capital Gains)

Gains from the sale, exchange, or other disposition of capital assets derived by a resident of a Contracting State shall be exempt from tax by the other Contracting State unless-

(1) The gain is derived by a resident of a Contracting State from the sale, exchange, or other disposition of property, described in Article 15 situated within the other Contracting State,

(2) The gain arises out of the sale, or other disposition described in paragraph (3) (b) of Article 14,

(3) The recipient of the gain, being a resident of a Contracting State, has a permanent establishment in the other Contracting State and the property giving rise to the gain is effectively connected with such permanent establishment, or

(4) The recipient of the gain, being an individual who is a resident of a Contracting State-
      (a) Maintains a fixed base in the other Contracting State for a period or periods aggregating more than 183 days during the taxable year and the property giving rise to such gains is effectively connected with such fixed base, or
      (b) Is present in the other Contracting State for a period or periods aggregating more than 183 days during the taxable year.


ARTICLE 17
(Independent Personal Services)

(1) Income derived by an individual who is a resident of a Contracting State from the performance of personal services in an independent capacity may be taxed by that Contracting State. Except as provided in paragraph (2) of this article, such income shall be exempt from tax by the other Contracting State.

(2) Income derived by an individual who is a resident of a Contracting State from the performance of personal services in an independent capacity in the other Contracting State may be taxed by that other Contracting State, if:
      (a) The individual is present in that other Contracting State for a period or periods aggregating more than 183 days in the taxable year, or
      (b) The individual maintains a fixed base in that other Contracting State for a period or periods aggregating more than 183 days in the taxable year, but only so much of it as is attributable to such fixed base, or
      (c) The individual is a public entertainer, such as a theater, motion picture or television artist, musician, or athlete, and the income is derived from his personal services as such public entertainer, unless such individual is present in that other Contracting State for a period or periods not exceeding a total of 90 days during the taxable year and such income does not exceed 3,000 United States dollars in the aggregate or its equivalent in Japanese yen in the aggregate during the taxable year.


ARTICLE 18
(Dependent Personal Services)

(1) Wages, salaries, and similar remuneration derived by an individual who is a resident of a Contracting State from labor or personal services performed as an employee, including remuneration derived by an officer or a member of the board of directors of a corporation, may be taxed by that Contracting State. Except as provided in paragraph (2) of this article, such remuneration derived from sources within the other Contracting State may also be taxed by that other Contracting State.

(2) Remuneration of the type described in paragraph (1) of this article derived by an individual who is a resident of a Contracting State shall be exempt from tax by the other Contracting State if-

       (a) He is present in that other Contracting State for a period or periods not exceeding in the aggregate 183 days in the taxable year;

       (b) He is an employee of a resident of the first-mentioned Contracting State or of a permanent establishment of a resident of a State other than the first-mentioned Contracting State if such permanent establishment is situated in the first-mentioned Contracting State (such resident, including a corporation or other entity to which the permanent establishment belongs, is referred to in this article as "the employer") ; and

       (c) The remuneration is not borne as such by a permanent establishment which the employer has in that other Contracting State.

(3) Paragraph (2) of this article shall not apply to remuneration of the type described in paragraph (1) of this article if the individual receiving such remuneration is a substantial owner of the employer and 50 percent or more of the income of the employer for the taxable year from sources within that other Contracting State is derived from furnishing the labor or personal services of one or more individuals (computed without deductions for compensation paid to such individuals) each of whom is a substantial owner of the employer. For purposes of the preceding sentence, an individual shall be treated as the substantial owner of the employer if the employer is a corporation or other entity and such individual-

       (a) Owns directly or indirectly 25 percent or more of the total voting power of all classes of stock entitled to vote, or of the total value of all classes of stock, of such corporation or other entity, or

       (b) Has directly or indirectly an interest of 25 percent or more in assets, or has a right to 25 percent or more of the profits of such other entity.

In computing the ownership of an individual, he shall be deemed to own the stock, assets, or rights owned directly or indirectly by his brother, sister, spouse, ancestor, or descendant.

(4) Notwithstanding paragraph (2) of this article, remuneration derived by an individual from the performance of labor or personal services as an employee aboard ships or aircraft operated by a resident of a Contracting State in international traffic shall be exempt from tax by the other Contracting State if such individual is a member of the regular complement of the ship or aircraft.

(5) Notwithstanding paragraph (2) of this article and Article 17, a director's fee derived by an individual resident of a Contracting State in his capacity as a member of the board of directors of a corporation of the other Contracting State, which cannot be taken as a deduction by the corporation but is treated as being a distribution of profits in that other Contracting State, may be taxed by that other Contracting State.

ARTICLE 19
(Teachers and Researchers)

(1) An individual-

       (a) Who is a resident of a Contracting State at the beginning of his visit to the other Contracting State, or

       (b) Who was, immediately before receiving the invitation referred to below, exempt from tax in that other Contracting State under paragraph (1) (a) of Article 20,

and who, at the invitation of the Government of that other Contracting State or of a university or other accredited educational institution situated in that other Contracting State, is temporarily present in that other Contracting State for the primary purpose of teaching or engaging in research, or both, at a university or other accredited educational institution shall be exempt from tax by that other Contracting State on his income from personal services for teaching or research at such university or educational institution, for a period not exceeding two years from the date of his arrival or the date he completed the study, training, or research in that other Contracting State with respect to which the exemption in paragraph (1) (a) of Article 20 applied.

(2) This article shall not apply to income from research if such research is undertaken not in the public interest but primarily for the private benefit of a specific person or persons.

ARTICLE 20
(Students and Trainees)

(1)             (a) An individual who is a resident of a Contracting State at the beginning of his visit to the other Contracting State and who is temporarily present in that other Contracting State for the primary purpose of-
                (i) Studying at a university or other accredited educational institution in that other Contracting State, or
                (ii) Securing training required to qualify him to practice a profession or professional specialty, or
                (iii) Studying or doing research as a recipient of a grant, allowance, or award from a governmental, religious charitable, scientific, literary, or educational organization,

shall be exempt from tax by that other Contracting State with respect to the amounts described in subparagraph (b) of this paragraph for a period not exceeding five taxable years from the date of his arrival in that other Contracting State.
                (b) The amounts referred to in, subparagraph (a) of this paragraph are-
                (i) Gifts from abroad for the purpose of his maintenance, education, study, research, or training;
                (ii) The grant, allowance, or award; and
                (iii) Income from personal services performed in that other Contracting State in an aggregate amount not in excess of 2,000 United States dollars or its equivalent in Japanese yen for any taxable year.

(2) An individual who is a resident of a Contracting State at the beginning of his visit to the other Contracting State and who is temporarily present in that other Contracting State as an employee of, or under contract with, a resident of the first-mentioned Contracting State, for the primary purpose of-
                (a) Acquiring technical, professional, or business experience from a person other than that resident of the first-mentioned Contracting State, or
                (b) Studying at a university or other accredited educational institution in that other Contracting State,

shall be exempt from tax by that other Contracting State for a period of 12 consecutive months with respect to his income from personal services in an aggregate amount not in excess of 5,000 United States dollars or its equivalent in Japanese yen.

(3) An individual who is a resident of a Contracting State at the beginning of his visit to the other Contracting State and who is temporarily present in that other Contracting State for a period not exceeding one year, as a participant in a program sponsored by the Government of that other Contracting State, for the primary purpose of training, research, or study, shall be exempt from tax by that other Contracting State with respect to his income from personal services in respect of such training, research, or study, performed in that other Contracting State in an aggregate amount not in excess of 10,000 United States dollars or its equivalent in Japanese yen.

ARTICLE 21
(Government Employees)

(1) Wages, salaries, and similar remuneration, including pensions or similar benefits, paid by, or from public funds of, the United States, or a political subdivision or local authority thereof to a citizen of the United States for labor or personal services performed for the United States or for any of its political subdivisions or local authorities in the discharge of governmental functions shall not be subject to Japanese tax, if such individual is not a national of Japan and has not been admitted to Japan for permanent residence.

(2) Wages, salaries, and similar remuneration, including pensions or similar benefits, paid by, or out of funds to which contributions are made by, Japan, or local authority thereof to an individual who is a national of Japan for labor or personal services performed for Japan or for any of its local authorities in the discharge of governmental functions shall not be subject to United States tax, if such individual is not a citizen of the United States and does not have immigrant status in the United States.


ARTICLE 22
(Rules Regarding Personal Income Articles)

(1) Reimbursed travel expenses shall be subject to Articles 17 through 21, but such expenses shall not be taken into account in computing the maximum amount of exemptions specified in paragraph (2) of Article 17 and in Article 20.

(2) If an individual qualifies for benefits under more than one of the provisions of Articles 17 through 21, he may apply those provisions which are most favorable to him. He may not claim benefits under more than one of the provisions of such articles with respect to the same income.

(3) The benefits provided under Article 19 and paragraph (1) of Article 20 shall extend only for such period of time as may be reasonably or customarily required to effectuate the purpose of the visit, but in no case shall any individual have the benefits provided therein for more than a total of five taxable years from the date of his arrival.


ARTICLE 23
(Private Pensions and Annuities)

(1) Except as provided in Article 21, pensions and annuities paid to an individual who is a resident of a Contracting State shall be taxable only in that Contracting State.

(2) The term "pensions", as used in this article, includes periodic payments made after retirement or death in consideration for services rendered, or by way of compensation for injuries received, in connection with past employment, including United States and Japanese social security payments.

(3) The term "annuities", as used in this article, includes a stated sum paid periodically at stated times during life, or during a specified number of years, under an obligation to make the payments in return for adequate and full consideration (other than services rendered).


ARTICLE 24
(Diplomatic and Consular Officials)

Nothing in this Convention shall affect the fiscal privileges of diplomatic and consular officials under the general rules of international law or under the provisions of special agreements.


ARTICLE 25
(Mutual Agreement Procedure)

(1) Where a resident of a Contracting State considers that the action of one or both of the Contracting States results or will result for him in taxation not in accordance with this Convention, he may, notwithstanding the remedies provided by the national laws of the Contracting States, present his case to the competent authority of the Contracting State of which he is a resident. Should the resident's claim be considered to have merit by the competent authority of the Contracting State to which the claim is made, it shall endeavor to come to an agreement with the competent authority of the other Contracting State with a view to the avoidance of taxation contrary to the provisions of this Convention.

(2) The competent authorities of the Contracting States shall endeavor to resolve by mutual agreement any difficulties or doubts arising as to the interpretation or application of this Convention. In particular, the competent authorities of the Contracting States may consult together to endeavor to agree --

(a) To the same attribution of industrial or commercial profits to a resident of a Contracting State and its permanent establishment situated in the other Contracting State;

(b) To the same allocation of income, deductions, credits, or allowances between a resident of a Contracting State and any related person;

(c) To the same determination of the source of particular items of income; or

(d) To the same meaning of any term used in this Convention.

(3) The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of this article. When it seems advisable for the purpose of reaching agreement, the competent authorities may meet together for an oral exchange of opinions.

(4) In the event that the competent authorities reach such an agreement, taxes shall be imposed, and refund or credit of taxes shall be allowed, by the Contracting States in accordance with such agreement.

ARTICLE 26
(Exchange of Information)

(1) The competent authorities of the Contracting States shall exchange such information as is pertinent to carrying out the provisions of this Convention or preventing fraud or fiscal evasion in relation to the taxes which are the subject of this Convention. Any information so exchanged shall be treated as secret and shall not be disclosed to any persons other than those (including a court or administrative body) concerned with assessment, collection, enforcement, or prosecution in respect of the taxes which are the subject of this Convention.

(2) In no case shall the provisions of paragraph (1) of this article be construed so as to impose on a Contracting State the obligation-

(a) To carry out administrative measures at variance with the laws or the administrative practice of that Contracting State or the other Contracting State;

(b) To supply particulars which are not obtainable under the laws or in the normal course of the administration of that Contracting State or of the other Contracting State; or

(c) To supply information which would disclose any trade, business, industrial, commercial, or professional secret or trade process, or information, the disclosure of which would be contrary to public policy.

(3) The exchange of information shall be either on a routine basis or on request with reference to particular cases. The competent authorities of the Contracting States shall agree on the list of information which shall be furnished on a routine basis.

(4) The competent authorities of the Contracting States shall notify each other of any amendments of the laws relating to the taxes referred to in paragraph (1) of Article 1 and of the adoption of any taxes referred to in paragraph (2) of Article 1 by transmitting the texts of any amendments or new statutes at least once a year.

(5) The competent authorities of the Contracting States shall exchange the texts of all published material interpreting this Convention under their respective laws, whether in the form of regulations, rulings, or judicial decisions.

ARTICLE 27
(Mutual Assistance)

(1) Subject to the provisions of paragraph (2) of this article, each of the Contracting States shall endeavor to collect such taxes imposed by the other Contracting State as will ensure that any exemption or reduced rate of tax granted under this Convention by that other Contracting State shall not be enjoyed by persons not entitled to such

benefits. The Contracting State making such collections shall be responsible to the other Contracting State for the sums thus collected. The competent authorities of the Contracting States may consult together for the purpose of giving effect to this article.

(2) In no case shall this article be construed so as to impose upon a Contracting State the obligation to carry out administrative measures at variance with the regulations and practices of either Contracting State or which would be contrary to the first-mentioned Contracting State's sovereignty, security, or public policy.

ARTICLE 28
(Entry into Force)

(1) This Convention shall be ratified and instruments of ratification shall be exchanged at Washington as soon as possible. It shall enter into force on the thirtieth day after the day of the exchange of instruments of ratification. Its provisions shall for the first time have effect:
           (a) In the case of Japan -
                For income derived during any taxable year beginning on or after January 1 of the year next following the year in which this Convention enters into force; and
           (b) In the case of the United States -
                (i) As respects taxes withheld at source on dividends, interest, royalties, and similar payments, to any obligation to pay such taxes arising on or after January 1 of the year next following the year in which this Convention enters into force; and
                (ii) As respects other taxes on income, to taxable years beginning on or after January 1 of the year next following the year in which this Convention enters into force.

(2) The Convention between the United States of America and Japan for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income signed at Washington, D.C. on April 16, 1954 [C.B. 1955-1, 658], modified and supplemented by the Protocols signed at Tokyo on May 7, 1960 [C.B. 1965-1, 611], and August 14, 1962 [C.B. 1965-2, 562], shall terminate and cease to have effect in respect of income to which this Convention applies under paragraph (1) of this article.

ARTICLE 29
(Termination)

This Convention shall remain in force until terminated by a Contracting State. Either Contracting State may terminate the Convention at any time after five years from the date on which this Convention enters into force by giving to the other Contracting State notice of termination at least six months before the end of any calendar year through diplomatic channels. In such event, this Convention shall cease to have effect:

(1) In the case of Japan-
For income derived during any taxable year beginning on or after January 1 of the year next following the year in which the notice of termination is given; and

(2) In the case of the United States -
                (a) As respects taxes withheld at source on dividends, interest, royalties, and similar payments, on January 1 of the year next following the year in which the notice of termination is given; and
                (b) As respects other taxes on income, for any taxable year beginning on or after January 1 of the year next following the year in which the notice of termination is given.

IN WITNESS WHEREOF, the undersigned, duly authorized thereto, have signed this Convention.

DONE at Tokyo, in duplicate, in the English and Japanese languages, the two texts having equal authenticity, this eighth day of March, 1971.

FOR THE UNITED STATES OF AMERICA:                        FOR JAPAN

Armin H. Meyer

Kiichi Aichi

[SEAL]

[SEAL]

## NOTES OF EXCHANGE I

[Copy]

TOKYO, *March (8), (1971)*

No.98

His Excellency
KIICHI AICHI,
Minister for Foreign Affairs,
Tokyo.

EXCELLENCY: I have the honor to refer to the Convention between the United States of America and Japan for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income which was signed today and to confirm, on behalf of the Government of the United States of America, the following agreement reached between the two Governments:

Provided that any State, county, or local government in the United States does not levy any income tax or tax of a character substantially similar to the enterprise tax in Japan (hereinafter referred to as "State or local tax") on the operation in international traffic of ships or aircraft referred to in Article 10 of the Convention (hereinafter referred to as "the operation in international traffic") which is carried on by a resident of Japan and also there is no requirement to complete and file a tax return and its attached materials with regard to such tax, the Government of Japan will take necessary measures, on a reciprocal basis, to exempt the operation in international traffic which is carried on by a resident of the United States from the enterprise tax in Japan.

However, if subsequently any State, county, or local government in the United States levied State or local tax on the operation in international traffic carried on by a resident of Japan, or required the completion and filing of a tax return and its attached materials with regard to such tax, the Government of Japan would take necessary measures to let local authorities of Japan levy the enterprise tax on the operation in international traffic carried on by a resident of the United States on and after the accounting period which includes the first day of the accounting period of the aforesaid resident of Japan as to which State or local tax is levied.

This agreement shall have effect for accounting periods to which Article 10 of the Convention is applicable.

I have further the honor to request Your Excellency to be good enough to confirm the foregoing agreement on behalf of Your Excellency's Government.

I avail myself of this opportunity to renew to Your Excellency the assurance of my highest consideration.

ARMIN H. MEYER
*Ambassador Extraordinary and Plenipotentiary of*
*The United States of America*

[Translation]

## MINISTRY OF FOREIGN AFFAIRS

TOKYO, *March 8, 1971*

ARMIN H. MEYER
*Ambassador Extraordinary and*
*Plenipotentiary of the United States of America*

The Minister for Foreign Affairs presents his complements and has the honor of confirming receipt of the following note:

[Japanese translation of the American Embassy's note No. 98 dated March 8, 1971.]

The Minister for Foreign Affairs has the honor to confirm the above understanding on behalf of the Government of Japan.

KIICHI AICHI
*Minister for Foreign Affairs, Japan.*

NOTES OF EXCHANGE II

[Copy]

TOKYO, *March 8, 1971*

No. 99

His Excellency
KIICHI AICHI,
*Minister for Foreign Affairs,*
*Tokyo*

EXCELLENCY: I have the honor to refer to the Convention between the United States of America and Japan for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income which was signed today and to confirm, on behalf of the Government of the United States of America, the following understandings reached between the two Governments:

1. With respect to the development of "containerization" in the field of international transportation, the following was understood without prejudice to the applicable provisions of Article VII of the "Treaty of Friendship, Commerce and Navigation between Japan and the United States of America" signed at Tokyo on April 2, 1953:

(a) The income, if any, derived by a resident of a Contracting State engaged in the operation in international traffic of ships or aircraft (hereinafter referred to as the "international transportation company") from the use, maintenance, and lease of containers and related equipment (including trailers for the inland transport of containers) in connection with the operation in international traffic of ships or aircraft described in Article 10 of the Convention falls within the scope of the income described in that article and therefore is exempt from tax in the other Contracting State.

(b) It is noted that sometimes after containers, or containers and their trailers, have been used in international traffic, an inland transportation company will haul the containers, or containers and their trailers, to a container freight station or some other point where the containers are again packed with cargo for international traffic by the international transportation company. It may be that, in the case where the inland transportation company has obtained the right to load freight it is transporting into the containers, it will pay to the international transportation company a small service charge which will only partly offset the international transportation company's costs. In some instances, no such charge will be paid. It was understood that if the inland transportation company is only permitted to use the container, or the container and trailer, on its way to a point where it can again be used in international traffic and the service charge, if any, does not result in a profit to the international transportation company, such rental activity will be considered a part of international traffic. Accordingly, it was understood that the revenue which a resident of a Contracting State engaged in the operation in international traffic of ships or aircraft described in

Article 10 of the Convention derives from transactions of the type described in this paragraph is also exempt from tax in the other Contracting State.

2. In the course of the discussions which have led to the conclusion of the Convention, it is noted that it is often the case that a person engaged in international traffic will lease a ship or aircraft to another person also engaged in international traffic either on a bareboat or full basis. It was agreed that the income derived by the lessor from such a lease is income from international traffic and, therefore, falls within the scope of the reciprocal exemption provision of Article 10 of the Convention.

3. With respect to paragraph (2) of Article 13 of the Convention, it was understood that a debt obligation would be treated as indirectly financed by the Export-Import Bank of Japan in cases where such Bank provides funds in the form of export credit, import credit, or investment credit to a resident of Japan for the purpose of permitting the resident of the United States and the debt obligation represents such extension of credit to the resident of the United States. With respect to paragraph (3) of Article 13 of the Convention it was understood that at the present time the Export-Import Bank of the United States is not indirectly financing debt obligations within the meaning of said paragraph (3).

I have further the honor to request Your Excellency to be good enough to confirm the foregoing understandings on behalf of Your Excellency's Government.

I avail myself of this opportunity to renew to Your Excellency the assurance of my highest consideration.

ARMIN H. MEYER
*Ambassador Extraordinary and Plenipotentiary of*
*the United States of America*


[Translation]

MINISTRY OF FOREIGN AFFAIRS

TOKYO, *March 8, 1971*

ARMIN H. MEYER
*Ambassador Extraordinary and*
*Plenipotentiary of the United States of America*

The Minister for Foreign Affairs presents his complements and has the honor of confirming receipt of the following note:

[Japanese translation of the American Embassy's note No. 99 dated March 8, 1971.]

The Minister for Foreign Affairs has the honor to confirm the above understanding on behalf of the Government of Japan.

KIICHI AICHI
*Minister for Foreign Affairs, Japan.*