BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

CONSIDERING THAT:

The Convention between the United States of America and the Republic of the Philippines with Respect to Taxes on Income was signed at Manila on October 1, 1976, and an exchange of notes interpreting Article 23(2) of the Convention was signed at Washington on November 24, 1976, the texts of which are hereto annexed;

The Senate of the United States of America by its resolution of December 16, 1981, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Convention and interpretative notes, subject to the following:

(1) reservation that, notwithstanding the provisions of Article 14 relating to capital gains, both the United States and the Philippines may tax gain from the disposition of an interest in a corporation if its assets consist principally of a real property interest located in that country. Likewise, both countries may tax gain from the disposition of an interest in a partnership, trust or estate to the extent the gain is attributable to a real property interest in one of the countries. The term "real property interest" is to have the meaning it has under the law of the country in which the underlying real property is located;

(2) reservation that, notwithstanding the provisions of paragraph (2) of Article 9 of the Convention, the tax imposed on profits derived by a resident of one of the Contracting States from sources within the other Contracting State from the operation of aircraft in international traffic may be as much as, but shall not exceed, the lesser of one and one-half percent of the gross revenue derived from sources within that State, and the lowest rate of Philippine tax that may be imposed on profits of the same kind derived under similar circumstances by a resident of a third State;

(3) understanding that under Article 9 and paragraph (6) of Article 11 of the Convention, the Philippines may not impose on the earnings of a corporation attributable to a permanent establishment in the Philippines, which earnings are described in Article 9 of the Convention, a tax in addition to the tax which would be chargeable on the earnings of a Philippine corporation; and

(4) understanding that appropriate Congressional committees and the General Accounting Office shall be afforded access to the information exchanged under this Convention where such access to the information exchanged is necessary to carry out their oversight responsibilities, subject only to the limitations and procedures of the Internal Revenue Code.

The Convention, together with the interpretative notes, was ratified, subject to the aforesaid reservations and understandings by the President of the United States of America on January 20, 1982, in pursuance of the advice and consent of the Senate, and was ratified on the part of the Republic of the Philippines;

The instruments of ratification of the Convention and interpretative notes were exchanged at Washington on September 16, 1982, and accordingly the Convention enters into force on October 16, 1982, effective as specified in Article 29 of the Convention;

NOW, THEREFORE, I, Ronald Reagan, President of the United States of America, proclaim and make public the Convention and interpretative notes to the end that they be observed and fulfilled with good faith on and after October 16, 1982, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this fourth day of October in the year of our Lord one thousand nine hundred eighty-two and of the Independence of the United States of America the two hundred seventh.

RONALD REAGAN
[SEAL]

By the President:

GEORGE P. SHULTZ,
Secretary of State

CONVENTION BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE REPUBLIC OF THE PHILIPPINES WITH RESPECT TO TAXES ON INCOME

The Government of the United States of America and the Government of the Republic of the Philippines, desiring to conclude a convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income, have agreed as follows:

Article 1

TAXES COVERED

(1) The taxes which are the subject of this Convention are:
(a) In the case of the United States, the Federal income taxes imposed by the Internal Revenue Code [FN1] (but not including the tax on improperly accumulated earnings or the personal holding company tax), and

FN1. 68A Stat. 3; 26 U.S.C. §§ 1-8023.
End of Footnote(s).

(b) In the case of the Philippines, the income tax imposed by Title II of the National Internal Revenue Code (but not including the tax on improperly accumulated earnings or the personal holding company tax).
(2) This Convention shall also apply to taxes substantially similar to those covered by paragraph (1) which are imposed in addition to, or in place of, existing taxes after the date of signature of this Convention.
(3) The competent authorities of the Contracting States shall notify each other of any amendments of the tax laws referred to in paragraph (1) or (2) and of the adoption of any taxes referred to in paragraph (2) by transmitting the texts of any amendments or new statutes at least once a year.
(4) The competent authorities of the Contracting States shall notify each other of the publication by their respective Contracting States of any material concerning the application of this Convention, whether in the form of regulations, rulings, or judicial decisions by transmitting the texts of any such material at least once a year.

Article 2

GENERAL DEFINITIONS

(1) In this Convention, unless the context otherwise requires:
(a) (i) The term "United States" means the United States of America; and
(ii) When used in a geographical sense, the term "United States" means the states thereof and the District of Columbia.
(b) (i) The term "Philippines" means the Republic of the Philippines; and
(ii) When used in a geographical sense, the term "Philippines" means the territory comprising the Republic of the Philippines.
(c) The term "Contracting State" means the United States or the Philippines, as the context requires.
(d) The term "person" includes an individual, a partnership, a corporation, an estate, or a trust.
(e) (i) The term "United States corporation" means a corporation (or any unincorporated entity treated as a corporation for United States tax purposes) which is created or organized in or under the laws of the United States or any state thereof or the District of Columbia; and

(ii) The term "Philippine corporation" means a corporation (or any unincorporated entity treated as a corporation for Philippine tax purposes) which is created or organized in the Philippines or under its laws.

(f) The term "competent authority" means:

(i) In the case of the United States, the Secretary of the Treasury or his delegate, and

(ii) In the case of the Philippines, the Secretary of Finance or his delegate.

(g) The term "tax" means tax imposed by the United States or the Philippines, whichever is applicable, to which this Convention applies by virtue of Article 1 (Taxes Covered).

(h) The term "international traffic" means any transport by a ship or aircraft operated by a resident of one of the Contracting States except where such transport is confined solely to places within a Contracting State.

(2) Any other term used in this Convention and not defined in this Convention shall, unless the context otherwise requires, have the meaning which it has under the laws of the Contracting State whose tax is being determined. Notwithstanding the preceding sentence, if the meaning of such a term under the laws of one of the Contracting States is different from the meaning of the term under the laws of the other Contracting State, or if the meaning of such a term is not readily determinable under the laws of one of the Contracting States, the competent authorities of the Contracting States may, in order to prevent double taxation or to further any other purpose of this Convention, establish a common meaning of the term for the purposes of this Convention.

Article 3

FISCAL RESIDENCE

(1) In this Convention:

(a) The term "resident of the Philippines" means:

(i) A Philippine corporation, and

(ii) Any other person (except a corporation or any entity treated as a corporation for Philippine tax purposes) resident in the Philippines for purposes of Philippine tax, but in the case of a professional partnership, estate, or trust only to the extent that the income derived by such partnership, estate, or trust is subject to Philippine tax as the income of a resident either in the hands of the respective entity or of its partners or beneficiaries.

(b) The term "resident of the United States" means:

(i) A United States corporation, and

(ii) Any other person (except a corporation or any entity treated as a corporation for United States tax purposes) resident in the United States for purposes of United States tax, but in the case of a partnership, estate, or trust only to the extent that the income derived by such partnership, estate, or trust is subject to United States tax as the income of a resident either in the hands of the respective entity or of its partners or beneficiaries.

(2) Where by reason of the provisions of paragraph (1) an individual is a resident of both Contracting States:

(a) He shall be deemed to be a resident of that Contracting State in which he maintains his permanent home. If he has a permanent home in both Contracting States or in neither of the Contracting States, he shall be deemed to be a resident of that Contracting State with which his personal and economic relations are closest (center of vital interests);

(b) If the Contracting State in which he has his center of vital interests cannot be determined, he shall be deemed to be a resident of that Contracting State in which he has a habitual abode;

(c) If he has a habitual abode in both Contracting States or in neither of the Contracting States, he shall be deemed to be a resident of the Contracting State of which he is a citizen; and

(d) If he is a citizen of both Contracting States or of neither Contracting State, the competent authorities of the Contracting States shall settle the question by mutual agreement.

Article 4

SOURCE OF INCOME

For purposes of this Convention:

(1) Dividends shall be treated as income from sources within a Contracting State only if--

(a) Paid by a corporation of that Contracting State, or

(b) Paid by a corporation of any State if, for the 3-year period ending with the close of such corporation's taxable year preceding the declaration of the dividends (or for such part of that period as such corporation has been in existence), at least 50 percent of such corporation's gross income from all sources was business profits attributable to a permanent establishment which such corporation had in that Contracting State; but only in an amount which bears the same ratio to such dividends as the amount of the business profits attributable to that permanent establishment bears to the corporation's gross income from all sources.

If a dividend would be treated under this paragraph as income from sources within both Contracting States, it shall be deemed to be income from sources only within the Contracting State described in subparagraph (b), to the extent provided therein.

(2) Interest shall be treated as income from sources within a Contracting State only if paid by such Contracting State, a political subdivision or local authority thereof, or by a resident of that Contracting State. Notwithstanding the preceding sentence, if such interest is paid on an indebtedness incurred in connection with a permanent establishment which bears such interest, then such interest shall be deemed to be from sources within the State (whether or not a Contracting State) in which the permanent establishment is situated.

(3) Royalties for the use of, or the right to use, property or rights shall be treated as income from sources within a Contracting State only to the extent that such royalties are for the use of, or the right to use, such property or rights within that Contracting State. Notwithstanding the preceding sentence, if such royalty is paid with respect to a liability to pay the royalty that was incurred in connection with a permanent establishment which bears such royalty, then such royalty shall be deemed to be from sources within the State (whether or not a Contracting State) in which the permanent establishment is situated.

(4) Income from real property (including royalties) described in Article 7 (Income from Real Property) shall be treated as income from sources within a Contracting State only if such property is situated in that Contracting State.

(5) Income received by an individual for his performance of labor or personal services, whether as an employee or in an independent capacity, shall be treated as income from sources within a Contracting State only to the extent that such services are performed in that Contracting State. However, income from personal services performed aboard ships or aircraft operated by a resident of one of the Contracting States in international traffic shall be treated as income from sources within that Contracting State if rendered by a member of the regular complement of the ship or aircraft. Notwithstanding the preceding provisions of this paragraph, remuneration described in Article 20 (Governmental Functions) and payments described in Article 19 (Social Security Payments) paid from the public funds of a Contracting State or a political subdivision or local authority thereof shall be treated as income from sources within that Contracting State only.

(6) Notwithstanding paragraphs (1) through (4), business profits which are attributable to a permanent establishment which the recipient, a resident of one of the Contracting States, has in the other Contracting State shall be treated as income from sources within that other Contracting State.

(7) Gross revenues from the operation of ships in international traffic shall be treated as from sources within a Contracting State to the extent they are derived from outgoing traffic originating in that State.

(8) The source of any item of income to which paragraphs (1) through (7) are not applicable shall be determined by each of the Contracting States in accordance with its own law. Notwithstanding the preceding sentence, if the source of any item of income under the laws of one Contracting State is different from the source of such item of income under the laws of the other Contracting State or if the source of such income is not readily determinable under the laws of one of the Contracting States, the competent authorities of the Contracting States may, in order to prevent double taxation or further any other purpose of this Convention, establish a common source of the item of income for purposes of this Convention.

Article 5

PERMANENT ESTABLISHMENT

(1) For the purposes of this Convention, the term "permanent establishment" means a fixed place of business through which a resident of one of the Contracting States engages in a trade or business.

(2) The term "fixed place of business" includes but is not limited to:

(a) A seat of management;
(b) A branch;
(c) An office;
(d) A store or other sales outlet;
(e) A factory;
(f) A workshop;
(g) A warehouse;
(h) A mine, quarry, or other place of extraction of natural resources;
(i) A building site or construction or assembly project or supervisory activities in connection therewith, provided such site, project or activity continues for a period of more than 183 days; and
(j) The furnishing of services, including consultancy services, by a resident of one of the Contracting States through employees or other personnel, provided activities of that nature continue (for the same or a connected project) within the other Contracting State for a period or periods aggregating more than 183 days.

(3) Notwithstanding paragraphs (1), (2), and (4), a permanent establishment shall be deemed not to include any one or more of the following:

(a) The use of facilities solely for the purpose of storage, display, or occasional delivery of goods or merchandise belonging to the resident;
(b) The maintenance of a stock of goods or merchandise belonging to the resident solely for the purpose of storage, display, or occasional delivery;
(c) The maintenance of a stock of goods or merchandise belonging to the resident solely for the purpose of processing by another person;
(d) The maintenance of a fixed place of business solely for the purpose of purchasing goods or merchandise, or for collecting information, for the resident;
(e) The maintenance of a fixed place of business solely for the purpose of advertising, for the supply of information, for scientific research, or for similar activities which have a preparatory or auxiliary character, for the resident; or
(f) The furnishing of services, including the provision of equipment, in one of the Contracting States by a resident of the other Contracting State, including consultancy firms, in accordance with, or in the implementation of, an agreement between the Contracting States regarding technical cooperation.

(4) A person acting in one of the Contracting States on behalf of a resident of the other Contracting State, other than an agent of an independent status to whom paragraph (5) applies, shall be deemed to give rise to a permanent establishment in the first-mentioned Contracting State if--

(a) Such person has, and habitually exercises in the first-mentioned Contracting State, an authority to conclude contracts in the name of that resident, unless the exercise of such authority is limited to the purchase of goods or merchandise for that resident; or
(b) He has no such authority, but habitually maintains in the first-mentioned State a stock of goods or merchandise from which he regularly delivers goods and merchandise on behalf of the resident.

(5) A resident of one of the Contracting States shall not be deemed to have a permanent establishment in the other Contracting State merely because such resident carries on business in that other Contracting State through a broker, general commission agent, or any other agent of an independent status, where such broker or agent is acting in the ordinary course of his business. However, when the activities of such an agent are devoted wholly or almost wholly on

behalf of that resident, he shall not be considered an agent of independent status within the meaning of this paragraph if the transactions between the agent and the resident were not made under arm's length conditions.

(6) Except with respect to reinsurance, a resident of a Contracting State shall be deemed to have a permanent establishment in the other Contracting State if it collects premiums in that other State, or insures risks situated therein, through an employee or representative situated therein who is not an agent of independent status to whom paragraph (5) applies.

(7) A resident of one of the Contracting States shall not be deemed to have a permanent establishment in the other Contracting State merely because such resident sells at the termination of a trade fair or convention in such other Contracting State goods or merchandise which such resident displayed at such trade fair or convention.

(8) The fact that a corporation of one of the Contracting States controls or is controlled by or is under common control with--

(a) A corporation of the other Contracting State or

(b) A corporation which carries on business in that other Contracting State (whether through a permanent establishment or otherwise)

shall not be taken into account in determining whether the activities or fixed place of business of either corporation constitutes a permanent establishment of the other corporation.

(9) The principles set forth in paragraphs (1) through (8) shall be applied in determining for purposes of this Convention whether there is a permanent establishment in a State other than one of the Contracting States or whether a person other than a resident of one of the Contracting States has a permanent establishment in one of the Contracting States.

Article 6

GENERAL RULES OF TAXATION

(1) A resident of one of the Contracting States may be taxed by the other Contracting State on any income from sources within that other Contracting State and only on such income, subject to any limitations set forth in this Convention. For this purpose, the rules set forth in Article 4 (Source of Income) shall be applied to determine the source of income.

(2) The provisions of this Convention shall not be construed to restrict in any manner any exclusion, exemption, deduction, credit, or other allowance now or hereafter accorded--

(a) By the laws of one of the Contracting States in the determination of the tax imposed by that Contracting State, or

(b) By any other agreement between the Contracting States.

(3) Notwithstanding any provisions of this Convention except paragraph (4), a Contracting State may tax its residents (as determined under Article 3 (Fiscal Residence)) and its citizens as if this Convention had not come into effect.

(4) The provisions of paragraph (3) shall not affect:

(a) The benefits conferred by a Contracting State under Articles 19 (Social Security Payments), 23 (Relief from Double Taxation), 24 (Nondiscrimination), and 25 (Mutual Agreement Procedure); and

(b) The benefits conferred by a Contracting State under Articles 20 (Governmental Functions), 21 (Teachers), 22 (Students and Trainees), and 28 (Diplomatic and Consular Officers) upon individuals who are neither citizens of, nor have immigrant status in, that Contracting State.

(5) The competent authorities of the two Contracting States may each prescribe regulations necessary to carry out the provisions of this Convention.

Article 7

INCOME FROM REAL PROPERTY

(1) Income from real property, including royalties and other payments in respect of the exploitation of natural resources and gains derived from the alienation of such property or of the right giving rise to such royalties or other payments, may be taxed by the Contracting State in

which such real property or natural resources are situated. For purposes of this Convention, interest on indebtedness secured by real property or secured by a right giving rise to royalties or other payments in respect of the exploitation of natural resources shall not be regarded as income from real property.

(2) Paragraph (1) shall apply to income derived from the usufruct, direct use, letting, or use in any other form of real property.

Article 8

BUSINESS PROFITS

(1) Business profits of a resident of one of the Contracting States shall be taxable only in that State unless the resident has a permanent establishment in the other Contracting State. If the resident has a permanent establishment in that other Contracting State, tax may be imposed by that other Contracting State on the business profits of the resident but only on so much of them as are attributable to the permanent establishment.

(2) Where a resident of one of the Contracting States has a permanent establishment in the other Contracting State, there shall in each Contracting State be attributed to the permanent establishment the business profits which would reasonably be expected to have been derived by it if it were an independent entity engaged in the same or similar activities under the same or similar conditions and dealing wholly independently with the resident of which it is a permanent establishment.

(3) There may also be attributed to that permanent establishment the business profits derived from the sale of goods or merchandise of the same or similar kind as those sold, or from other business activities of the same or similar kind as those effected, through that permanent establishment if the sale or activities had been resorted to in order to avoid taxation.

(4) In the determination of the business profits of a permanent establishment, there shall be allowed as deductions ordinary and necessary expenses which are reasonably allocable to such profits, including executive and general administrative expenses, whether incurred in the Contracting State in which the permanent establishment is situated or elsewhere. However, no such deductions shall be allowed in respect of amounts paid or payable (other than reimbursement of actual expenses) by the permanent establishment to the head office of the resident of which it is a permanent establishment or any of its other offices, by way of--

(a) Royalties, fees or other similar payments in return for the use of patents or other rights;
(b) Commission, for specific services performed or for management; and
(c) Interest on moneys lent to the permanent establishment, except in the case of a banking institution.

(5) No profits shall be attributed to a permanent establishment of a resident of one of the Contracting States in the other Contracting State merely by reason of the purchase of goods or merchandise by that permanent establishment for the account of the resident.

(6) The term "business profits" means income derived from any trade or business whether carried on by an individual, corporation or any other person, or group of persons, including the rental of tangible personal (movable) property.

(7) Where business profits include items of income which are dealt with separately in other articles of this Convention, then the provisions of those articles shall not be affected by the provisions of this article.

Article 9 [FN2]

FN2. See reservation and understanding, p. 1278.
End of Footnote(s).

SHIPPING AND AIR TRANSPORT

(1) Notwithstanding any other provision of this Convention, profits derived by a resident of one of the Contracting States from sources within the other Contracting State from the operation of

ships in international traffic may be taxed by both Contracting States; however, the tax imposed by the other Contracting State may be as much as, but shall not exceed, the lesser of--
   (a) One and one-half percent of the gross revenues derived from sources in that State; and
   (b) The lowest rate of Philippine tax that may be imposed on profits of the same kind derived under similar circumstances by a resident of a third State.
   (2) Nothing in the Convention shall affect the right of a Contracting State to tax, in accordance with domestic laws, profits derived by a resident of the other Contracting State from sources within the first-mentioned Contracting State from the operation of aircraft in international traffic.
   (3) The provisions of paragraphs (1) and (2) shall also apply to profits derived from the participation in a pool, a joint business or in an international operating agency.

Article 10

RELATED PERSONS

   (1) Where a person subject to the taxing jurisdiction of one of the Contracting States and any other person are related and where such related persons make arrangements or impose conditions between themselves which are different from those which would be made between independent persons, any income, deductions, credits, or allowances which would, but for those arrangements or conditions, have been taken into account in computing the income (or loss) of, or the tax payable by, one of such persons may be taken into account in computing the amount of the income subject to tax and the taxes payable by such person.
   (2) Where a redetermination has been made by one Contracting State to the income of one of its residents in accordance with paragraph (1), then the other Contracting State shall, if it agrees with such redetermination and if necessary to prevent double taxation, make a corresponding adjustment to the income of a person in such other Contracting State related to such resident. In the event the other Contracting State disagrees with such redetermination, the two Contracting States shall endeavor to reach agreement in accordance with the mutual agreement procedure in paragraph (2) of Article 25 (Mutual Agreement Procedure).
   (3) For purposes of this Convention, a person is related to another person if either person owns or controls directly or indirectly the other, or if any third person or persons own or control directly or indirectly both. For this purpose, the term "control" includes any kind of control, whether or not legally enforceable, and however exercised or exercisable.

Article 11 [FN3]

FN3. See understanding, p. 1278.

End of Footnote(s).

DIVIDENDS

   (1) Dividends derived from sources within one of the Contracting States by a resident of the other Contracting State may be taxed by both Contracting States.
   (2) The rate of tax imposed by one of the Contracting States on dividends derived from sources within that Contracting State by a resident of the other Contracting State shall not exceed--
   (a) 25 percent of the gross amount of the dividend; or
   (b) When the recipient is a corporation, 20 percent of the gross amount of the dividend if during the part of the paying corporation's taxable year which precedes the date of payment of the dividend and during the whole of its prior taxable year (if any), at least 10 percent of the outstanding shares of the voting stock of the paying corporation was owned by the recipient corporation.
   (3) Dividends paid by a corporation of one of the Contracting States to a person other than a citizen or resident of the other Contracting State may be taxed by the other Contracting State, but only if--

(a) Such dividends are treated as income from sources within that other Contracting State and, in the case of the Philippines, the additional tax described in paragraph (6) has not been paid with respect to the earnings distributed, or

(b) The recipient of the dividends has a permanent establishment or fixed base in the other Contracting State and the holding in respect of which the dividends are paid is effectively connected with such permanent establishment or fixed base.

(4) Paragraph (2) shall not apply if the recipient of dividends derived from sources within one of the Contracting States, being a resident of the other Contracting State, carries on business in the first-mentioned Contracting State through a permanent establishment situated therein or performs in that other State independent personal services from a fixed base situated therein, and the holding in respect of which the dividends are paid is effectively connected with such permanent establishment or fixed base. In such a case, the provisions of Article 8 (Business Profits) or Article 15 (Independent Personal Services), as the case may be, shall apply.

(5) The term "dividends" as used in this Convention means income from shares, mining shares, founders' shares or other rights, not being debt-claims, participating in profits, as well as income from other corporate rights assimilated to income from shares by the taxation law of the State of which the corporation making the distribution is a resident.

(6) Nothing in this Convention (except Article 9 (Shipping and Air Transport)) shall be construed as preventing the Philippines from imposing on the earnings of a corporation (other than a Philippine corporation) attributable to a permanent establishment in the Philippines, a tax in addition to the tax which would be chargeable on the earnings of a Philippine corporation, provided that any additional tax so imposed shall not exceed 20 percent of the amount of such earnings which have not been subjected to such additional tax in previous taxable years. For the purpose of this provision, the term "earnings" means business profits attributable to a permanent establishment in the Philippines in a year and previous years after deducting therefrom all taxes, other than the additional tax referred to herein, imposed on such profits by the Philippines.

Article 12

INTEREST

(1) Interest derived by a resident of one of the Contracting States from sources within the other Contracting State may be taxed by both Contracting States.

(2) Interest derived by a resident of one of the Contracting States from sources within the other Contracting State shall not be taxed by the other Contracting State at a rate in excess of 15 percent of the gross amount of such interest.

(3) Interest derived by a resident of one of the Contracting States from sources within the other Contracting State with respect to public issues of bonded indebtedness shall not be taxed by the other Contracting State at a rate in excess of 10 percent of the gross amount of such interest.

(4) Notwithstanding paragraphs (1), (2), and (3), interest derived by--

(a) One of the Contracting States, or an instrumentality thereof (including the Central Bank of the Philippines, the Federal Reserve Banks of the United States, the Export-Import Bank of the United States, the Overseas Private Investment Corporation of the United States, and such other institutions of either Contracting State as the competent authorities of both Contracting States may determine by mutual agreement), or

(b) A resident of one of the Contracting States with respect to debt obligations guaranteed or insured by that Contracting State or an instrumentality thereof,
shall be exempt from tax by the other Contracting State.

(5) Paragraphs (2), (3), and (4) shall not apply if the recipient of interest from sources within one of the Contracting States, being a resident of the other Contracting State, carries on business in the first-mentioned Contracting State through a permanent establishment situated therein or performs in that other State independent personal services from a fixed base situated therein and the debt claim in respect of which the interest is paid is effectively connected with

such permanent establishment or fixed base. In such a case, the provisions of Article 8 (Business Profits) or Article 15 (Independent Personal Services), as the case may be, shall apply.

(6) Where an amount is paid to a related person and would be treated as interest but for the fact that it exceeds an amount which would have been paid to an unrelated person, the provisions of this article shall apply only to so much of the amount as would have been paid to an unrelated person. In such a case, the excess amount may be taxed by each Contracting State according to its own law, including the provisions of this Convention where applicable.

(7) The term "interest" as used in this Convention means income from debt-claims of every kind, whether or not secured by mortgage, and whether or not carrying a right to participate in the debtor's profits, and in particular, income from government securities and income from bonds or debentures, including premiums and prizes attaching to such securities, bonds or debentures, as well as income assimilated to income from money lent by the taxation law of the Contracting State in which the income arises, including interest on deferred payment sales.

Article 13

ROYALTIES

(1) Royalties derived by a resident of one of the Contracting States from sources within the other Contracting State may be taxed by both Contracting States.

(2) However, the tax imposed by that other Contracting State shall not exceed--

(a) In the case of the United States, 15 percent of the gross amount of the royalties, and

(b) In the case of the Philippines, the least of:

(i) 25 percent of the gross amount of the royalties,

(ii) 15 percent of the gross amount of the royalties, where the royalties are paid by a corporation registered with the Philippine Board of Investments and engaged in preferred areas of activities, and

(iii) The lowest rate of Philippine tax that may be imposed on royalties of the same kind paid under similar circumstances to a resident of a third State.

(3) The term "royalties" as used in this article means payments of any kind received as a consideration for the use of, or the right to use, any copyright of literary, artistic or scientific work, including cinematographic films or films or tapes used for radio or television broadcasting, any patent, trade mark, design or model, plan, secret formula or process, or other like right or property, or for information concerning industrial, commercial or scientific experience. The term "royalties" also includes gains derived from the sale, exchange or other disposition of any such right or property which are contingent on the productivity, use, or disposition thereof.

(4) The provisions of paragraphs (1) and (2) shall not apply if the recipient of the royalties, being a resident of a Contracting State, carries on business in the other Contracting State in which the royalties arise, through a permanent establishment situated therein, or performs in that other State professional services from a fixed base situated therein, and the right or property in respect of which the royalties are paid is effectively connected with such permanent establishment or fixed base. In such a case, the provisions of Article 8 (Business Profits) or Article 15 (Independent Personal Services), as the case may be, shall apply.

(5) Where an amount is paid to a related person and would be treated as a royalty but for the fact that it exceeds an amount which would have been paid to an unrelated person, the provisions of this article shall apply only to so much of the amount as would have been paid to an unrelated person. In such a case, the excess amount may be taxed by each Contracting State according to its own law, including the provisions of this Convention where applicable.

Article 14 [FN4]

FN4. See reservation, p. 1277.

End of Footnote(s).

CAPITAL GAINS

(1) Gains from the alienation of tangible personal (movable) property forming part of the business property of a permanent establishment which a resident of a Contracting State has in the other Contracting State or of tangible personal (movable) property pertaining to a fixed base available to a resident of a Contracting State in the other Contracting State for the purpose of performing independent personal services, including such gains from the alienation of such a permanent establishment (alone or together with the whole enterprise) or of such a fixed base, may be taxed in the other State. However, gains derived by a resident of a Contracting State from the alienation of ships, aircraft or containers operated by such resident in international traffic shall be taxable only in that State, and gains described in Article 13 (Royalties) shall be taxable only in accordance with the provisions of Article 13.

(2) Gains from the alienation of any property other than those mentioned in paragraph (1) or in Article 7 (Income From Real Property) shall be taxable only in the Contracting State of which the alienator is a resident.

Article 15

IND EPENDENT PERSONAL SERVICES

(1) Income derived by an individual who is a resident of one of the Contracting States from the performance of personal services in an independent capacity may be taxed by that Contracting State. Except as provided in paragraph (2), such income shall be exempt from tax by the other Contracting State.

(2) Income derived by an individual who is a resident of one of the Contracting States from the performance of personal services in an independent capacity in the other Contracting State may be taxed by that other Contracting State, if:

(a) He has a fixed base regularly available to him in the other Contracting State for the purpose of performing his activities; in that case, only so much of the income as is attributable to that fixed base may be taxed in that other Contracting State;

(b) He is present in that other Contracting State for a period or periods aggregating 90 days or more in the taxable year; or

(c) The gross remuneration derived in the taxable year from residents of that other Contracting State for the performance of such services in the other Contracting State exceeds 10,000 United States dollars or its equivalent in Philippine pesos or such higher amount as may be specified and agreed in letters exchanged between the competent authorities of the Contracting States.

(3) The term "income" as used in paragraph (2) means net income.

Article 16

DEPENDENT PERSONAL SERVICES

(1) Except as provided in Article 20 (Governmental Functions), wages, salaries, and similar remuneration derived by an individual who is a resident of one of the Contracting States from labor or personal services performed as an employee, including income from services performed by an officer of a corporation, may be taxed by that Contracting State. Except as provided by paragraphs (2) and (3) and in Articles 20 (Governmental Functions), 21 (Teachers), and 22 (Students and Trainees), such remuneration derived from sources within the other Contracting State may also be taxed by that other Contracting State.

(2) Remuneration described in paragraph (1) derived by an individual who is a resident of one of the Contracting States shall be exempt from tax by the other Contracting State if--

(a) He is present in that other Contracting State for a period or periods aggregating less than 90 days in the taxable year;

(b) He is an employee of a resident of, or of a permanent establishment maintained in, the first-mentioned Contracting State; and

(c) The remuneration is not borne as such by a permanent establishment which the employer has in that other Contracting State.

(3) Notwithstanding the preceding provisions of this article, remuneration derived by an employee of a resident of one of the Contracting States for labor or personal services performed as a member of the regular complement of a ship or aircraft operated in international traffic by a resident of that Contracting State may be taxed only by that Contracting State.

Article 17

ARTISTES AND ATHLETES

(1) Notwithstanding the provisions of Articles 15 (Independent Personal Services) and 16 (Dependent Personal Services), income derived by public entertainers such as theater, motion picture, radio or television artistes, and musicians, and by athletes, from their personal activities as such may be taxed in the Contracting State in which these activities are exercised provided that--
  (a) Such income exceeds 100 United States dollars or its equivalent in Philippine pesos per day, or
  (b) Such income exceeds in the aggregate 3,000 United States dollars or its equivalent in Philippine pesos during the taxable year.
  (2) Where income in respect of personal activities as such of a public entertainer or athlete accrues not to that entertainer or athlete himself but to another person, that income may, notwithstanding the provisions of Articles 8 (Business Profits), 15 (Independent Personal Services) and 16 (Dependent Personal Services), be taxed in the Contracting State in which the activities of the entertainer or athlete are exercised.
  (3) Notwithstanding the provisions of paragraph (1) and Articles 15 (Independent Personal Services) and 16 (Dependent Personal Services), income derived from activities performed in a Contracting State by public entertainers or athletes shall be exempt from tax in that Contracting State if the visit to that State is substantially supported or sponsored by the other Contracting State and the public entertainer or athlete is certified as qualified under this provision by the competent authority of the sending State.

Article 18

PRIVATE PENSIONS AND ANNUITIES

(1) Except as provided in Article 20 (Governmental Functions), pensions and other similar remuneration paid to an individual in consideration of past employment shall be taxable by the Contracting State where the service is rendered.
  (2) Annuities paid to an individual who is a resident of one of the Contracting States shall be taxable only in that Contracting State.
  (3) Child support payments made by an individual who is a resident of one of the Contracting States to an individual who is a resident of the other Contracting State shall be exempt from tax in that other Contracting State.
  (4) The term "pensions and other similar remuneration", as used in this article, includes periodic payments other than social security payments covered in Article 19 (Social Security Payments) made--
  (a) By reason of retirement or death and in consideration for services rendered or
  (b) By way of compensation for injuries or sickness received in connection with past employment.
  (5) The term "annuities", as used in this article, means a stated sum paid periodically at stated times during life, or during a specified number of years, under an obligation to make the payments in return for adequate and full consideration (other than services rendered).
  (6) The term "child support payments", as used in this article, means periodic payments for the support of a minor child made pursuant to a written separation agreement or a decree of divorce, separate maintenance, or compulsory support.

Article 19

SOCIAL SECURITY PAYMENTS

Social security payments and other public pensions paid by one of the Contracting States to an individual who is a resident of the other Contracting State (or in the case of such payments by the Philippines to an individual who is a citizen of the United States) shall be taxable only in the first-mentioned Contracting State. This article shall not apply to payments described in Article 20 (Governmental Functions).

Article 20

GOVERNMENTAL FUNCTIONS

Wages, salaries and similar remuneration, including pensions, annuities, or similar benefits, paid from public funds of one of the Contracting States:
  (a) To a citizen of that Contracting State, or
  (b) To a citizen of a State other than a Contracting State who comes to the other Contracting State expressly for the purpose of being employed by the first-mentioned Contracting State for labor or personal services performed as an employee of the national Government of that Contracting State, or any agency thereof, in the discharge of functions of a governmental nature shall be exempt from tax by the other Contracting State.

Article 21

TEACHERS

  (1) Where a resident of one of the Contracting States is invited by the Government of the other Contracting State, a political subdivision or local authority thereof, or by a university or other recognized educational institution in that other Contracting State to come to that other Contracting State for a period not expected to exceed 2 years for the purpose of teaching or engaging in research, or both, at a university or other recognized educational institution and such resident comes to that other Contracting State primarily for such purpose, his income from personal services for teaching or research at such university or educational institution shall be exempt from tax by that other Contracting State for a period not exceeding 2 years from the date of his arrival in that other Contracting State.
  (2) This article shall not apply to income from research if such research is undertaken not in the general interest but primarily for the private benefit of a specific person or persons.

Article 22

STUDENTS AND TRAINEES

  (1) (a) An individual who is a resident of one of the Contracting States at the time he becomes temporarily present in the other Contracting State and who is temporarily present in that other Contracting State for the primary purpose of--
  (i) Studying at a university or other recognized educational institution in that other Contracting State, or
  (ii) Securing training required to qualify him to practice a profession or professional specialty, or
  (iii) Studying or doing research as a recipient of a grant, allowance, or award from a governmental, religious, charitable, scientific, literary, or educational organization,
shall be exempt from tax by that other Contracting State with respect to amounts described in subparagraph (b) for a period not exceeding 5 taxable years from the date of his arrival in that other Contracting State.
  (b) The amounts referred to in subparagraph (a) are--

(i) Gifts from abroad for the purpose of his maintenance, education, study, research, or training;

(ii) The grant, allowance, or award; and

(iii) Income from personal services performed in that other Contracting State in an amount not in excess of 3,000 United States dollars or its equivalent in Philippine pesos for any taxable year.

(2) An individual who is a resident of one of the Contracting States at the time he becomes temporarily present in the other Contracting State and who is temporarily present in that other Contracting State as an employee of, or under contract with, a resident of the first-mentioned Contracting State, for the primary purpose of--

(a) Acquiring technical, professional, or business experience from a person other than that resident of the first-mentioned Contracting State or other than a person related to such resident, or

(b) Studying at a university or other recognized educational institution in that other Contracting State,

shall be exempt from tax by that other Contracting State for a period not exceeding 12 consecutive months with respect to his income from personal services in an aggregate amount not in excess of 7,500 United States dollars or its equivalent in Philippine pesos for any taxable year.

(3) An individual who is a resident of one of the Contracting States at the time he becomes temporarily present in the other Contracting State and who is temporarily present in that other Contracting State for a period not exceeding 1 year, as a participant in a program sponsored by the Government of that other Contracting State, for the primary purpose of training, research, or study, shall be exempt from tax by that other Contracting State with respect to his income from personal services in respect of such training, research, or study performed in that other Contracting State in an aggregate amount not in excess of 10,000 United States dollars or its equivalent in Philippine pesos in any taxable year.

(4) The benefits provided under Article 21 (Teachers) and paragraph (1) of this article shall, when taken together, extend only for such period of time, not to exceed 5 taxable years from the date of arrival of the individual claiming such benefits, as may reasonably or customarily be required to effectuate the purpose of the visit. The benefits provided under Article 21 (Teachers) shall not be available to an individual if, during the immediately preceding period, such individual enjoyed the benefits of paragraph (1) of this article.

Article 23 [FN5]

FN5. See exchange of notes, pp. 1342-1343.
End of Footnote(s).

RELIEF FROM DOUBLE TAXATION

Double taxation of income shall be avoided in the following manner:

(1) In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a citizen or resident of the United States as a credit against the United States tax the appropriate amount of taxes paid or accrued to the Philippines and, in the case of a United States corporation owning at least 10 percent of the voting stock of a Philippine corporation from which it receives dividends in any taxable year, shall allow credit for the appropriate amount of taxes paid or accrued to the Philippines by the Philippine corporation paying such dividends with respect to the profits out of which such dividends are paid. Such appropriate amount shall be based upon the amount of tax paid or accrued to the Philippines, but the credit shall not exceed the limitations (for the purpose of limiting the credit to the United States tax on income from sources within the Philippines or on income from sources outside the United States) provided by United States law for the taxable year. For the purpose of applying the United States credit in relation to taxes paid or accrued to the Philippines, the rules set forth in Article 4 (Source of Income) shall be applied to determine the source of income. For purposes of applying the United States credit in relation to taxes paid or accrued to the Philippines, the

taxes referred to in paragraphs (1)(b) and (2) of Article 1 (Taxes Covered) shall be considered to be income taxes.

(2) In accordance with the provisions and subject to the limitations of the law of the Philippines (as it may be amended from time to time without changing the general principle hereof), the Philippines shall allow to a citizen or resident of the Philippines as a credit against the Philippine tax the appropriate amount of taxes paid or accrued to the United States and, in the case of a Philippine corporation owning more than 50 percent of the voting stock of a United States corporation from which it receives dividends in any taxable year, shall allow credit for the appropriate amount of taxes paid or accrued to the United States by the United States corporation paying such dividends with respect to the profits out of which such dividends are paid. Such appropriate amount shall be based upon the amount of tax paid or accrued to the United States, but the credit shall not exceed the limitations (for the purpose of limiting the credit to the Philippine tax on income from sources within the United States, and on income from sources outside the Philippines) provided by Philippine law for the taxable year. For the purpose of applying the Philippine credit in relation to taxes paid or accrued to the United States, the rules set forth in Article 4 (Source of Income) shall be applied to determine the source of income. For purposes of applying the Philippine credit in relation to taxes paid or accrued to the United States, the taxes referred to in paragraphs (1) (a) and (2) of Article 1 (Taxes Covered) shall be considered to be income taxes.

Article 24

NONDISCRIMINATION

(1) A citizen of one of the Contracting States who is a resident of the other Contracting State shall not be subject in that other Contracting State to more burdensome taxes than a citizen of that other Contracting State who is a resident thereof.

(2) A permanent establishment which a resident of one of the Contracting States has in the other Contracting State shall not be subject in that other Contracting State to more burdensome taxes than a resident of that other Contracting State carrying on the same activities. This paragraph shall not be construed as obliging a Contracting State to grant to individual residents of the other Contracting State any personal allowances, reliefs, or deductions for taxation purposes on account of civil status or family responsibilities which it grants to its own individual residents.

(3) A corporation of one of the Contracting States, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned Contracting State to any taxation or any requirement connected with taxation which is other or more burdensome than the taxation and requirements to which a corporation of the first-mentioned Contracting State carrying on the same activities, the capital of which is wholly owned or controlled by one or more residents of the first-mentioned Contracting State, is or may be subjected.

(4) Notwithstanding any other provision of this Convention, the term "taxes" or "taxation" means, for the purpose of this article, taxes or taxation of every kind imposed at the national, state, or local level.

(5) With respect to the taxes referred to in Article 1 (Taxes Covered), nothing in this article shall prevent the Philippines from limiting to its citizens or corporations the enjoyment of tax incentives granted under the following enactments:

(a) Section 6 of the Investment Incentives Act (Republic Act No. 5186),
(b) Section 5 and Section 7(b) of the Export Incentives Act (Republic Act No. 6135), and
(c) Section 9 of the Investment Incentives Program for the Tourism Industry (Presidential Decree No. 535)

so far as they were in force on, and have not been modified since, the date of signature of this Convention, or have been modified only in minor respects so as not to affect their general character.

(6) With respect to taxes other than the taxes referred to in Article 1 (Taxes Covered), nothing in this article shall prevent the Philippines or a political subdivision or local authority thereof from

limiting to Philippine citizens or corporations the enjoyment of tax incentives for the promotion of industry or business similar to those described in subparagraphs (a), (b), and (c) of paragraph (5) so far as they were in force on, and have not been modified since, the date of signature of this Convention, or have been modified only in minor respects so as not to affect their general character.

Article 25

MUTUAL AGREEMENT PROCEDURE

(1) Where a resident or citizen of one of the Contracting States considers that the action of one or both of the Contracting States results or will result for him in taxation not in accordance with this Convention, he may, notwithstanding the remedies provided by the national laws of the Contracting States, present his case to the competent authority of the Contracting State of which he is a resident or citizen. Should the resident's or citizen's claim be considered to have merit by the competent authority of the Contracting State to which the claim is made, it shall endeavor to come to an agreement with the competent authority of the other Contracting State with a view to the avoidance of taxation not in accordance with the provisions of this Convention.

(2) The competent authorities of the Contracting States shall endeavor to resolve by mutual agreement any difficulties or doubts arising as to the application of this Convention. In particular, the competent authorities of the Contracting States may agree--

(a) To the same attribution of industrial or commercial profits to a resident of one of the Contracting States and its permanent establishment situated in the other Contracting State;

(b) To the same allocation of income, deductions, credits, or allowances between a resident of one of the Contracting States and any related person and to the readjustment of taxes imposed by each Contracting State to reflect such allocation;

(c) To the same determination of the source of particular items of income; or

(d) To the same characterization of particular items of income.

(3) The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of this article. When it seems advisable for the purpose of reaching agreement, the competent authorities may meet together for an oral exchange of opinions.

(4) In the event that the competent authorities reach such an agreement, taxes shall be imposed on such income in accordance with such agreement, and--

(a) In the case of the United States, refund or credit of taxes shall be allowed in accordance with such agreement, notwithstanding any procedural rule (including statutes of limitations) applicable under United States law.

(b) In the case of the Philippines, refund or credit of taxes shall be allowed in accordance with such agreement, subject to any procedural rule (including statutes of limitations) applicable under Philippine law. However, notwithstanding any such Philippine procedural rule, a tax credit certificate shall be issued if a claim is filed with the competent authority of the Philippines no later than 2 years from the close of the taxable year in which the United States tax imposed under this paragraph is paid and such claim is filed within 5 taxable years from the close of the taxable year in issue. A tax credit certificate shall be issued with respect to a claim filed after the aforementioned 5-year period only if the claim is supported by the books and records of the taxpayer. The amount of the tax credit certificate shall be computed in the same manner as an actual refund (whether or not an actual refund of tax can be made), but may only be used as a credit against Philippine tax liability without giving rise to a refund.

Article 26

EXCHANGE OF INFORMATION

(1) The competent authorities shall exchange such information as is necessary for carrying out the provisions of this Convention or for the prevention of fraud or for the administration of statutory provisions concerning taxes to which this Convention applies provided the information

is of a class that can be obtained under the laws and administrative practices of each Contracting State with respect to its own taxes.

(2) Any information so exchanged shall be treated as secret, except that such information may be--

(a) Disclosed to any person concerned with, or

(b) Made part of a public record with respect to, the assessment, collection, or enforcement of, or litigation with respect to, the taxes to which this Convention applies.

(3) No information shall be exchanged which would be contrary to public policy.

(4) If information is requested by a Contracting State in accordance with this article, the other Contracting State shall obtain the information to which the request relates from or with respect to its residents or corporations in the same manner and to the same extent as if the tax of the requesting State were the tax of the other State and were being imposed by that other State. A Contracting State may obtain information from or with respect to its residents or corporations in accordance with this paragraph for the sole purpose of assisting the other Contracting State in the determination of the taxes of that other State.

(5) If specifically requested by the competent authority of a Contracting State, the competent authority of the other Contracting State shall provide information under this article in the form of depositions of witnesses and copies of unedited original documents (including books, papers, statements, records, accounts, or writings) to the same extent such depositions and documents can be obtained under the laws and administrative practices of each Contracting State with respect to its own taxes.

(6) The exchange of information shall be either on a routine basis or on request with reference to particular cases. The competent authorities of the Contracting States may agree on the list of information which shall be furnished on a routine basis.

Article 27

ASSISTANCE IN COLLECTION

(1) Each of the Contracting States shall endeavor to collect on behalf of the other Contracting State such taxes imposed by that other Contracting State as will ensure that any exemption or reduced rate of tax granted under this Convention by that other Contracting State shall not be enjoyed by persons not entitled to such benefits.

(2) In no case shall this article be construed so as to impose upon a Contracting State the obligations to carry out measures at variance with the laws or administrative practices of either Contracting State with respect to the collection of its own taxes.

Article 28

DIPLOMATIC AND CONSULAR OFFICERS

Nothing in this Convention shall affect the fiscal privileges of diplomatic and consular officials under the general rules of international law or under the provisions of special agreements.

Article 29

ENTRY INTO FORCE

(1) This Convention shall be subject to ratification in accordance with the constitutional procedures of each Contracting State and instruments of ratification shall be exchanged at Washington as soon as possible. It shall enter into force 30 days after the date of exchange of instruments of ratification and [FN6] shall then have effect for the first time:

FN6. Oct. 16, 1982.

End of Footnote(s).

(a) As respects the rate of withholding tax, to amounts paid on or after the first day of January immediately following the year in which this Convention enters into force;

(b) As respects other taxes, to taxable years beginning on or after January 1 of the year following the date on which this Convention enters into force.

(2) However, in the case of payments received as a consideration for the use of, or the right to use, a copyright of cinematographic films or films or tapes used for radio or television broadcasting, paragraph (2)(b)(iii) of Article 13 (Royalties) shall not have effect before January 1, 1979.

## Article 30

### TERMINATION

This Convention shall remain in force until terminated by one of the Contracting States. Either Contracting State may terminate the Convention at any time after 5 years from the date on which this Convention enters into force provided that at least 6 months' prior notice of termination has been given through diplomatic channels. In such event, the Convention shall cease to have force and effect as respects income of calendar years or taxable years beginning (or, in the case of taxes payable at the source, payments made) on or after January 1 next following the expiration of the 6-month period.

Done at Manila in duplicate this first day of October, 1976.
(Signature)

William E. Simon.
(Signature)

Cesar Virata.

### [EXCHANGE OF NOTES]

November 24, 1976
Excellency:

I have the honor to refer to the recent discussions between representatives of our two Governments concerning the Convention between the Government of the United States of America and the Government of the Republic of the Philippines with Respect to Taxes on Income, signed at Manila on October 1, 1976.

It is our understanding that Philippine citizens residing outside of the Philippines are subject to Philippine tax on their worldwide income but at reduced rates of 1, 2, or 3 percent, and that foreign income taxes paid are deductible in computing their taxable income. We further understand that the Government of the Philippines, when applying paragraph 2 of Article 23 (Relief from Double Taxation to such nonresident citizens, interprets the reference to "in accordance with the provisions of the law of the Philippines…" to allow the Government of the Philippines to continue to grant a deduction rather than a credit for U. S. taxes paid in such cases. We accept this interpretation subject to confirmation by your Government that, should the present rates of Philippine income tax applicable to nonresident citizens of the Philippines be increased, the Government of the Philippines understands that the treaty would require a foreign tax credit and agrees to consult with the Government of the United States for the purpose of modifying this note to that effect.

I have the honor to propose to you that the present note and your Excellency's reply thereto indicating acceptance constitute the agreement of our two Governments on these various points.

Accept, Excellency, the renewed assurances of my highest consideration.
William E. Simon
The Honorable

Cesar Virata
Secretary of Finance

November 24, 1976
Excellency:

I have the honor to acknowledge receipt of your note of November 24, 1976, which reads as follows:

"Excellency:

I have the honor to refer to the recent discussions between representatives of our two Governments concerning the Convention between the Government of the United States of America and the Government of the Republic of the Philippines with Respect to Taxes on Income, signed at Manila on October 1, 1976.

It is our understanding that Philippine citizens residing outside of the Philippines are subject to Philippine tax on their world-wide income but at reduced rates of 1, 2, or 3 percent, and that foreign income taxes paid are deductible in computing their taxable income. We further understand that the Government of the Philippines, when applying paragraph 2 of Article 23 (Relief from Double Taxation) to such nonresident citizens, interprets the reference to 'in accordance with the provisions of the law of the Philippines...' to allow the Government of the Philippines to continue to grant a deduction rather than a credit for U. S. taxes paid in such cases. We accept this interpretation subject to confirmation by your Government that, should the present rates of Philippine income tax applicable to nonresident citizens of the Philippines be increased, the Government of the Philippines understands that the treaty would require a foreign tax credit and agrees to consult with the Government of the United States for the purpose of modifying this note to that effect.

I have the honor to propose to you that the present note and your Excellency's reply thereto indicating acceptance constitute the agreement of our two Governments on these various points.

Accept, Excellency, the renewed assurances of my highest consideration."

I have the honor to inform your Excellency that the foregoing is acceptable and reflects correctly the understanding of the Government of the Republic of the Philippines and that your Excellency's note and this note in reply constitute an agreement between our two Governments concerning the Convention between the Government of the Republic of the Philippines and the Government of the United States of America with respect to Taxes on Income signed at Manila on October 1, 1976.

Accept, Excellency, the renewed assurances of my highest consideration.
(Signature)
William E. Simon
Secretary of the Treasury
1982 WL 592838 (U.S. Treaty), T.I.A.S. No. 10,417, 34 U.S.T. 1277
END OF DOCUMENT