TAX CONVENTION WITH SWISS CONFEDERATION

MESSAGE

FROM

THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND
THE SWISS CONFEDERATION FOR THE AVOIDANCE OF DOUBLE
TAXATION WITH RESPECT TO TAXES ON INCOME, SIGNED AT
WASHINGTON, OCTOBER 2, 1996, TOGETHER WITH A PROTOCOL
TO THE CONVENTION

GENERAL EFFECTIVE DATE UNDER ARTICLE 29: 1 JANUARY 1998

TABLE OF ARTICLES

Article 1------------------------------- Personal Scope
Article 2------------------------------- Taxes Covered
Article 3------------------------------- General Definitions
Article 4------------------------------- Resident
Article 5------------------------------- Permanent Establishment
Article 6------------------------------- Income from Real Property
Article 7------------------------------- Business Profits
Article 8------------------------------- Shipping and Air Transport
Article 9-------------------------------Associated Enterprises
Article 10------------------------------Dividends
Article 11 ----------------------------- Interest
Article 12------------------------------Royalties
Article 13------------------------------Gains
Article 14------------------------------Independent Personal Services
Article 15------------------------------Dependent Personal Services
Article 16------------------------------Director's Fees.
Article 17------------------------------Artistes and Sportsmen
Article 18------------------------------Pensions and Annuities
Article 19------------------------------Government Service and Social Security
Article 20------------------------------Students and Trainees
Article 21 ----------------------------Other Income
Article 22------------------------------Limitation on Benefits
Article 23------------------------------Relief from Double Taxation

Article 24------------------------------Non-Discrimination
Article 25------------------------------Mutual Agreement Procedure
Article 26------------------------------Exchange of Information
Article 27 -----------------------------Members of Diplomatic Missions and Consular Posts
Article 28 -----------------------------Miscellaneous
Article 29------------------------------Entry into Force
Article 30------------------------------Termination
Protocol --------------------------------of 2 October, 1996
Letter of Submittal--------------------of 29 May, 1997
Letter of Transmittal-----------------of 25 June, 1997
Notes of Exchange--------------------of 2 October, 1996
Memorandum of Understanding----of 2 October, 1996
The "Saving Clause"------------------Paragraph 2 of Article 1

LETTER OF SUBMITTAL

DEPARTMENT OF *STATE,*
*Washington*, May 29, 1997.

The PRESIDENT,
*The White House*.

The PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate for advice and consent to ratification, the Convention Between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income, signed at Washington on October 2, 1996, ("the Convention") together with a Protocol. Also enclosed for the information of the Senate is an exchange of notes with an attached Memorandum of Understanding, which provides clarification with respect to the application of the Convention in specified cases.

This Convention will replace the existing Convention Between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income signed at Washington on May 24, 1951. The new Convention maintains many provisions of the existing convention, but it also provides certain additional benefits and updates the text to reflect current tax treaty policies.

This Convention is similar to the tax treaties between the United States and other OECD nations. It provides for maximum rates of tax to be applied to various types of income, protection from double taxation of income, exchange of information, and rules to limit the benefits of the Convention to persons that are not engaged in treaty shopping.

Like other U.S. tax conventions, this Convention provides rules specifying when income that arises in one of the countries and is attributable to residents of the other country may be taxed by the country

in which the income arises (the "source" country). In most respects, the rates under the new Convention are the same as those in many recent U.S. tax treaties with OECD countries.

The maximum rates of tax that may be imposed on dividend and royalty income are generally the same as in the current U.S. - Switzerland treaty. Pursuant to Article 10, dividends from direct investments are subject to tax by the source country at a rate of five percent. The threshold criterion for direct investment has been reduced from 95 percent ownership of the equity of a firm to ten percent consistent with other modern U.S. treaties, in order to facilitate direct investment. Other dividends are generally taxable at 15 percent. Under Article 12, royalties derived and beneficially owned by a resident of a Contracting State are generally taxable only in that State.

The current convention, at Article 11, provides for a five percent rate of tax by the source country on most interest payments. Interest is exempt from taxation by the country in which the interest arises under the new Convention. The restrictions on the taxation of royalty and interest income do not apply, however, if the beneficial owner of the income is a resident of one Contracting State who carries on business in the other Contracting State in which the income arises and the income is attributable to a permanent establishment in that State. In that situation, the income is to be considered either business profit or income from independent personal services.

The maximum rates of withholding tax described in the preceding paragraphs are subject to the standard anti- abuse rules for certain classes of investment income found in other U.S. tax treaties and agreements.

The taxation of capital gains, described in Article 13 of the Convention, generally follows the rule of recent U.S. tax treaties as well as the OECD model. Gains on real property are taxable in the country in which the property is located, and gains from the sale of personal property are taxed only in the State of residence of the seller, unless attributable to a permanent establishment or fixed base in the other State. The Convention, at Sections 6 and 7 of Article 13, also contains rules, found in a few other U.S. tax treaties, that allow for adjustments to the timing of the taxation of certain classes of capital gains. These rules serve to minimize possible double taxation that could otherwise result.

Article 7 of the new Convention generally follows the standard rules for taxation by one country of the business profits of a resident of the other. The non-residence country's right to tax such profits is generally limited to cases in which the profits are attributable to a permanent establishment located in that country.

As do all recent U.S. treaties, this Convention preserves the right of the United States to impose its branch profits tax in addition to the basic corporate tax on a branch's business (Article 7). This tax, which was introduced in 1986, is not imposed under the present treaty. The new Convention, at Article 28, also accommodates a provision of the 1986 Tax Reform Act that attributes to a permanent establishment income that is earned during the life of the permanent establishment but is deferred and not received until after the permanent establishment no longer exists.

Consistent with U.S. treaty policy, Article 8 of the new Convention permits only the country of residence to tax profits from international carriage by ships or airplanes. This reciprocal exemption also extends to income from the rental of ships and aircraft if the rental income is incidental to income from the operation of ships or aircraft in international traffic. Other income from the rental of ships or aircraft and income from the use or rental of containers, however, is treated as business profits.

The taxation of income from the performance of personal services under Articles 14 through 17 of the new Convention is essentially the same as that under other recent U.S. treaties with OECD countries. Unlike many U.S. treaties, however, the new Convention, at Article 28, provides for the deductibility of cross-border contributions by temporary residents of one State to pension plans registered in the other State under limited circumstances.

Article 22 of the new Convention contains significant anti-treaty-shopping rules making its benefits unavailable to persons engaged in treaty shopping. The current convention contains no such anti-treaty-shopping rules.

The proposed Convention also contains rules necessary for administering the Convention, including rules for the resolution of disputes under the Convention (Article 25) and for exchange of information (Article 26). The proposed Convention significantly expands the scope of the exchange of information between the United States and Switzerland. For example, as elaborated in the Protocol and Memorandum of Understanding, U.S. tax authorities will be given access to Swiss bank information in cases of tax fraud. The Protocol contains a broad definition of tax fraud that should ensure that more information will be made available to U.S. authorities. Furthermore, the new Convention provides for information to be provided in a form acceptable for use in court proceedings (Article 26, Section 1).

The Convention would permit the General Accounting Office and the tax-writing committees of Congress to obtain access to certain tax information exchanged under the Convention for use in their oversight of the administration of U.S. tax laws and treaties.

This Convention is subject to ratification. In accordance with Article 29, it will enter into force upon the exchange of instruments of ratification and will have effect for payments made or credited on or after the first day of the second month following entry into force with respect to taxes withheld by the source country; with respect to other taxes, the Convention will take effect for taxable periods beginning on or after the first day of January following the date on which the Convention enters into force. When the present convention affords a more favorable result for a taxpayer than the proposed Convention, the taxpayer may elect to continue to apply the provisions of the present convention, in its entirety, for one additional year.

This Convention will remain in force indefinitely unless terminated by one of the Contracting States, pursuant to Article 30. Either State may terminate the Convention by giving at least six months of prior notice through diplomatic channels.

A Protocol and an exchange of notes with an attached Memorandum of Understanding accompany the Convention and provide clarification with respect to the application of the Convention in specified cases. The Protocol, which is an integral part of the Convention, elaborates on the meaning of certain terms used in the Convention. The exchange of notes, with its attached Memorandum of Understanding, provides clarification and is submitted for the information of the Senate. It includes examples of the application of various provisions of the Convention, particularly those concerning the limitation of benefits.

A technical memorandum explaining in detail the provisions of the Convention will be prepared by the Department of the Treasury and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of the Treasury and the Department of State cooperated in the negotiation of the Convention It has the full approval of both Departments.

Respectfully submitted,

(s) LYNN E. DAVIS.

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *June 25, 1997.*

*To the Senate of the United States:*

I transmit herewith for Senate advice and consent to ratification the Convention Between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income, signed at Washington, October 2, 1996, together with a Protocol to the Convention. An enclosed exchange of notes with an attached Memorandum of Understanding, transmitted for the information of the Senate, provides clarification with respect to the application of the Convention in specified cases. Also transmitted is the report of the Department of State concerning the Convention.

This Convention, which is similar to tax treaties between the United States and other Organization for Economic Cooperation and Development (OECD) nations, provides maximum rates of tax to be applied to various types of income and protection from double taxation of income. The Convention also provides for exchange of information and sets forth rules to limit the benefits of the Convention so that they are available only to residents that are not engaged in treaty shopping.

I recommend that the Senate give early and favorable consideration to this Convention and give its advice and consent to ratification.

(s) WILLIAM J. CLINTON.

NOTES OF EXCHANGE

DEPARTMENT OF STATE
WASHINGTON
October 2, 1996

Excellency:

I have the honor to refer to the Convention signed today between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income and to the Protocol also signed today which forms an integral part of the Convention and to propose on behalf of the Government of the United States the following:

In the course of the negotiations leading to the conclusion of the Convention and the Protocol signed today, the negotiators developed and agreed upon the Memorandum of Understanding that is attached to this note. The Memorandum of Understanding is a statement of intent setting forth a common understanding and interpretation of certain provisions of the Convention reached by the delegations of the Swiss Confederation and the United States acting on behalf of their respective governments. These understandings and interpretations are intended to give guidance both to the taxpayers and the tax authorities of our two countries in interpreting these provisions.

If the understandings and interpretations in the Memorandum of Understanding are acceptable, this note and your note reflecting such acceptance will memorialize the understandings and interpretations that the parties have reached.

Accept, Excellency, renewed assurances of my highest consideration.

For the Secretary of State:
(s) Alan Larson

Attachment:
    As stated.

*The Ambassador of Switzerland*

Washington, October 2, 1996

Dear Mr. Secretary,

I have the honor to confirm the receipt of your Note of today's date which reads as follows:

"Excellency:

I have the honor to refer to the Convention signed today between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income and to the Protocol also signed today which forms an integral part of the Convention and to propose on behalf of the Government of the United States the following:

In the course of the negotiations leading to the conclusion of the Convention and the Protocol signed today, the negotiators developed and agreed upon the Memorandum of Understanding that is attached to this note. The Memorandum of Understanding is a statement of intent setting forth a common understanding and interpretation of certain provisions of the Convention reached by the delegations of the Swiss Confederation and the United States acting on behalf of their respective governments. These understandings and interpretations are intended to give guidance both to the taxpayers and the tax authorities of our two countries in interpreting these provisions.

If the understandings and interpretations in the Memorandum of Understanding are acceptable, this note and your note reflecting such acceptance will memorialize the understandings and interpretations that the parties have reached.

Accept, Excellency, renewed assurances of my highest consideration.

For the Secretary of State:"

Attachment:

The Honorable
Warren Christopher
Secretary of State
United States Department of State
Washington, D.C.

I have the honor to inform you that the understandings and interpretations in the Memorandum of Understanding are acceptable.

Accept, Mr. Secretary, renewed assurances of my highest consideration.

(s) Carlo Jagmetti

## MEMORANDUM OF UNDERSTANDING

1. <u>In reference to subparagraph 1 b) of Article 4 (Resident)</u>

It is understood that the term "government" includes any body, however designated, including agencies, bureaus, funds, or organizations, that constitute a governing authority of the Contracting State, Cantons, States, Municipalities, or political subdivisions. The net earnings of the governing authority must be credited to its own account or to other accounts of the Contracting State, Canton, State, Municipality, or political subdivision with no portion inuring to the benefit of any private person.

The term "government" also includes a corporation (other than a corporation engaged in commercial activities), that is wholly owned, directly or indirectly, by a Contracting State, Canton, State, Municipality or a political subdivision, provided (A) it is organized under the laws of the Contracting State, Canton, State, Municipality, or political subdivision, (B) its earnings are credited to its own account or to other accounts of the Contracting State, Canton, State, Municipality or political subdivision with no portion of its income inuring to the benefit of any private person and (C) its assets vest in the Contracting State, Canton, State, Municipality, or political subdivision upon dissolution.

The term "government" also includes a pension trust of a Contracting State, Canton, State, Municipality, or a political subdivision that is established and operated exclusively to provide pension benefits to employees or former employees of the Contracting State, Canton, State, Municipality, or a political subdivision provided that the pension trust does not engage in commercial activities.

2.  In reference to Article 7 (Business Profits)

It is understood that, in the case of contracts for the survey, supply, installation or construction of industrial, commercial or scientific equipment or premises, or of public works, when the enterprise has a permanent establishment, the profits attributable to such permanent establishment shall not be determined on the basis of the total amount of the contract, but shall be determined on the basis only of that part of the contract that is effectively carried out by the permanent establishment. The profits related to that part of the contract that is carried out by the head office of the enterprise shall not be taxable in the State in which the permanent establishment is situated.

3.  In reference to paragraph 2 of Article 15 (Dependent Personal Services) and to Article 17 (Artistes and Sportsmen)

It is understood that nothing shall preclude a Contracting State from withholding tax from such payments according to its domestic laws. However, if according to the provisions of these Articles, such remuneration or income may only be taxed in the other Contracting State, the first-mentioned Contracting State shall make a refund of the tax so withheld upon a duly filed claim. Such claim must be filed with the tax authorities that have collected the withholding tax within five years after the close of the calendar year in which the tax was withheld.

4.  In reference to subparagraph 1 c) of Article 22 (Limitation on Benefits)

This paragraph provides a test for eligibility for benefits for residents of one of the Contracting States that do not qualify for benefits under the other tests of paragraph 1 (because, for example, a company is not publicly traded, and cannot pass the "predominant interest" test). This is the "active trade or business" test. In general, it is expected that if a person qualifies for benefits under one of the other tests of the paragraph, no inquiry will be made into the person's

qualification for benefits under subparagraph c). Upon satisfaction of any of the other tests of paragraph 1, all income derived by the beneficial owner from the other Contracting State is entitled to treaty benefits. Under subparagraph c), however, the test is applied separately for each item of income. Under this provision, therefore, a person may receive benefits with respect to one item of income and not with respect to another.

Under the active trade or business test, a resident of a Contracting State deriving an item of income from the other Contracting State is entitled to benefits with respect to that income if that person (or a person related to that person) is engaged in an active trade or business, as defined in paragraph 7 of the Protocol, in the first-mentioned State and the income in question is derived from the other State in connection with, or is incidental to, that trade or business.

The active conduct of a trade or business need not involve manufacturing or sales activities but may instead involve services. However, income that is derived in connection with, or is incidental to, the business of making, managing or simply holding investments for the resident's own account generally will not qualify for benefits under this provision, whether or not those activities would otherwise constitute an active trade or business. Therefore, a company the business of which consists solely of managing investments (including group financing) will not be considered to be engaged in an active trade or business. However, if such company also engages in activities such as active licensing or leasing that would otherwise qualify under subparagraph 1 c), it will be entitled to the benefits to the extent provided therein. The limitation relating to investments does not apply to banking, insurance or securities activities carried on by a bank, insurance company or registered securities dealer in the ordinary course of business. Of course, this rule does not affect the status of investment advisors or others who are actively conducting the business of managing investments that are beneficially owned by others.

Income is considered derived "in connection" with an active trade or business in a Contracting State if the income-generating activity in the other Contracting State is a line of business which forms a part of, or is complementary to, the trade or business conducted in the first-mentioned State. The line of business in the first-mentioned State may be "upstream" to that going on in the other State (e.g., providing inputs to a manufacturing process that occurs in that other State), "downstream" (e.g., selling the output of the manufacturer resident in the other State) or "parallel" (e.g., selling in one Contracting State the same sorts of products that are being sold by the trade or business carried on in the other Contracting State).

Income derived from a Contracting State would be considered "incidental" to the trade or business carried on in the other Contracting State if the income is not produced by a line of business which forms a part of, or is complementary to, the trade or business conducted in that other Contracting State by the recipient of the income, but the production of such income facilitates the conduct of the trade or business in that other Contracting State. An example of such "incidental" income is interest income earned from the short-term investment of working capital of a resident of a Contracting State in securities issued by persons in the other Contracting State.

An item of income will be considered to be earned in connection with or to be incidental to an active trade or business in a Contracting State if the resident claiming the benefits is itself engaged in business, or it is deemed to be so engaged through the activities of related persons that are residents of one of the Contracting States. Thus, for example, a resident in a Contracting State could claim benefits with respect to an item of income earned by an operating subsidiary in the other Contracting State but derived by the resident indirectly through a wholly-owned holding company resident in the other Contracting State and interposed between it and the operating subsidiary.

Income that is derived from a related party in connection with an active trade or business in a Contracting State must pass an additional test to qualify for benefits granted by the other Contracting State. The trade or business in the first-mentioned State must be substantial in relation to the activity carried on by the related party in the other Contracting State that gave rise to the income in respect of which treaty benefits are being claimed. The substantiality requirement is intended to prevent a narrow case of treaty-shopping abuses in which a company attempts to qualify for benefits by engaging in de minimis connected business activities that have little economic cost or effect with respect to the company's business as a whole.

The application of the substantiality test only to income from related parties focuses only on potential abuse cases, and does not hamper certain other kinds of non-abusive activities, even though the income recipient resident in a Contracting State may be very small in relation to the entity generating the income in the other Contracting State. For example, if a small U.S. research firm develops a process that it licenses to a very large, unrelated, Swiss pharmaceutical manufacturer, the size of the U.S. research firm would not have to be tested against the size of the Swiss manufacturer. Similarly, a small U.S. bank that makes a loan to a very large unrelated Swiss business would not have to pass a substantiality test to receive treaty benefits under subparagraph c).

The following examples are intended to help clarify how the rules of subparagraph c) are intended to operate:

<u>Example 1</u>

Facts:    P, a holding corporation resident in Switzerland, is owned by three persons that are residents of third countries. P has a participation of 50 percent in the Swiss resident P-l, which performs all of the principal economic functions related to the manufacture and sale of widgets and nidgets in Switzerland. P, which does not conduct any business activities, also owns all of the stock and debt issued by R-1, a United States corporation. R-l performs all of the principal economic functions in the manufacture and sale of widgets in the United States. R-1 purchases nidgets from P-1. R-1 performs all of the economic functions for the sale and distribution of nidgets in the United States and neighboring countries. P-1's activities are substantial in comparison to the activities of R-1.

Analysis:    Treaty benefits may be obtained by P on the payment of dividends or interest from R-1. The income received by P from R-1 is derived in connection with P's active and substantial business (through P-1) in Switzerland. For this purpose, 50 percent of P-1's activities may be attributed to P since P owns a 50 percent participation in P-1. The same result would occur if R, a wholly owned United States subsidiary of P, owned all of the stock and debt of R-1.

## Example II

Facts:    T, a corporation resident in the United States, is owned by U (10 percent), a U.S. resident, and V, W, and X (90 percent), residents of other countries. T owns the rights to various international franchises that it has acquired, and through its staff in the United States performs all of the principal economic functions and technical support in the licensing of the franchises to regional corporations. T owns all of the stock and debt of T-1, a subsidiary resident in Switzerland, that owns the right to use related franchises within Switzerland and neighboring countries. T-l licenses the franchises to Swiss and regional corporations. T also owns all of the stock and debt of T-2, a subsidiary resident in Switzerland that it acquired several years ago, that owns only the patent right for the manufacture of a major pharmaceutical product licensed to a corporation resident in Switzerland. Ts activities are substantial in comparison to the activities of T-l.

Analysis:    Treaty benefits may be obtained by T on the payment of dividends or interest from T-1. The income received by T from T-l is derived in connection with T's active and substantial business of licensing franchises. However, treaty benefits may not be obtained by T on payments from T-2. Although T has a substantial business for the licensing of franchises, the income received by T from T-2's licensing of a pharmaceutical product is not derived in connection with and is not incidental to T's franchise licensing business.

## Example III

Facts:    G is a corporation resident in Switzerland, the stock and debt of which is wholly owned by F, a major corporation resident in a third country. F, directly and through various subsidiaries located worldwide, manufactures electronic products. G, through its staff and facilities in Switzerland, performs all of the principal economic functions for the worldwide distribution and marketing of products manufactured by F. G owns all of the stock and debt of H, a subsidiary resident in the United States. H purchases the electronic products manufactured by F and its subsidiaries from G, F or other F subsidiaries and distributes those products in the United States and neighboring countries. H also arranges in the United States advertisements and warranty coverage for products manufactured by F and its subsidiaries. G also owns all of the stock and debt of I and J, subsidiaries resident in the United States that are engaged in the

manufacturing of electronic products (I) and the ownership and development of residential housing (J). G's activities are substantial in comparison to the activities of H.

Analysis:     Treaty benefits may be obtained by G on the payment of dividends or interest from H and I. The income received by G from H is derived in connection with G's active and substantial distribution business because H's business forms a part of G's business. The income received by G from I is derived in connection with G's active and substantial distribution business because the manufacturing business of I is complementary to G's distribution business. However, treaty benefits may not be obtained by G on the payments of dividends or interest from J because any income received by G from J is not derived in connection with or incidental to G's distribution business.

## Example IV

Facts:     V, a resident of a country that does not have a treaty with Switzerland, wants to acquire a Swiss financial institution. However, since its country of residence has no tax treaty with Switzerland, any dividends generated by the investment would be subject to a Swiss withholding tax of 35 percent. V establishes a U.S. corporation with one office in a small town to provide investment advice to local residents. That U.S. corporation acquires the Swiss financial institution with capital provided by V.

Analysis:     The Swiss source income is generated from business activities in Switzerland related to the investment advisory business conducted by the U.S. parent. However, the substantiality test would not be met in this example, so the dividends would remain subject to withholding in Switzerland at a rate of 35 percent rather than the 5 percent rate provided by Article 10 of the Convention.

## Example V

Facts:     United States, United Kingdom and French corporations create a joint venture to make a market in over-the-counter derivative instruments, which is in the form of a Delaware limited liability company that is treated as a partnership for U.S. tax purposes. The joint venture establishes a Swiss financial institution in order to market derivative financial instruments to Swiss customers. The Swiss institution pays dividends to the joint venture.

Analysis:     Under Article 4, only the U.S. partner is a resident of the United States for purposes of the treaty. The question arises under this treaty, therefore, only with respect to the U.S. partner's share of the dividends. If the U.S. partner meets the predominant interest or the public trading tests of subparagraph 1 e) or f) it is entitled to benefits without reference to subparagraph 1 c) . If not, the U.S. partner's share of the dividends would be eligible for benefits under subparagraph 1 c). The determination of treaty benefits

available to the United Kingdom and French partners will be made under the Swiss treaties with the United Kingdom and France.

Example VI

Facts:        A Swiss corporation, a German corporation and a Belgian corporation create a joint venture in the form of a Swiss resident corporation in which they take equal shareholdings. The joint venture corporation engages in an active manufacturing business in Switzerland. Income derived from that business that is retained as working capital is invested in short-term U.S. debt instruments so that it is available when needed for use in the business.

Analysis:     The interest would be eligible for treaty benefits. Interest income earned from short-term investment of working capital is incidental to the business in Switzerland of the Swiss joint venture corporation.

5.    In reference to subparagraph 1 e) of Article 22 (Limitation on Benefits)
      It is understood that a company is described in clause i) of subparagraph 1 e) of Article 22 within the meaning of clause ii) of subparagraph 1 e) of Article 22 only if that company is a resident of one of the Contracting States that is entitled to the benefits of the Convention by reason of clause i) of subparagraph 1 e) of Article 22.

6.    In reference to subparagraph 1 f) of Article 22 (Limitation on Benefits)
      The following examples demonstrate the manner in which Article 22, subparagraph 1 f) may be applied:

Example I

Facts:        All of the stock of a U.S. resident company is owned by a U.S. individual. The stock is worth 100x and the company pays a dividend each year of approximately 10x. The company has outstanding debt of l000x, all of which is held by three members of a single family, none of which is resident in the United States. The debt pays interest each year of 100x.

Analysis:     The U.S. company would not satisfy the requirements of subparagraph 1 f) of Article 22 of the Convention because the debt represents a predominant interest in the company, the ultimate beneficial owners of which are persons who are not residents of the United States Therefore, the U.S. company will be entitled to the benefits of the Convention only if it qualifies under some other provision of Article 22.

<u>Example II</u>

Facts:        An individual who is not a resident of the United States owns 49% of the stock of a U.S. company that holds passive investments in other companies; the other 51% of the stock in the company is owned by several unrelated U.S. individuals. The non-resident individual also has a contract to provide investment advice to the company under which the individual is to receive l0x each year, regardless of the profits of the company. The company's gross profits are approximately 60x each year.

Analysis:    Whether the non-resident individual has a predominant interest in the U.S. company will depend on whether l0x is an arm's length remuneration for the services. If l0x is arm's length remuneration, then the payments are not taken into account for purposes of determining whether the individual has a predominant interest in the company. As a result, because U.S. individuals own a majority of the stock in the company, the company would qualify for benefits under Article 22, subparagraph 1 f). If the remuneration is not arm's length, then the non-resident individual would have a predominant interest in the company when the service payments are combined with his equity interest and the company would not be entitled to benefits under Article 22, subparagraph 1 f).

<u>Example III</u>

Facts:        Assume the same facts as in Example II, except that the individual does not have an investment contract with the U.S. company and performs only nominal, if any, service. Nevertheless, each year the company sends the individual a check equal to 50% of the company's gross profits as a "bonus" for "services rendered".

Analysis:    The U.S. company would not satisfy the requirements of subparagraph 1 f) of Article 22 of the Convention because the facts indicate that, even though the individual owns less than 50% of the stock of the company and does not have a contract to provide services, he in fact is the ultimate beneficial owner of a predominant interest in the company. Therefore, the U.S. company will be entitled to the benefits of the Convention only if it qualifies under some other provision of Article 22.

<u>Example IV</u>

Facts:        A single Swiss resident individual owns 100% of the stock of a Swiss company. The stock of the Swiss company is worth l00x. The Swiss company's only asset is a license for the worldwide rights to a product developed by a corporation organized in a jurisdiction that does not have a tax treaty with the United States. The Swiss company licenses those rights to companies throughout the world, including to a U.S. corporation. The Swiss company receives 100x each year in royalties. It pays 95x in royalties, which is an arm's length rate, to the licensor.

Analysis:      The Swiss company would not satisfy the requirements of subparagraph 1 f) of Article 22 of the Convention because the license represents a predominant interest in the company, the ultimate beneficial owners of which are persons who are not residents of Switzerland. Therefore, the Swiss company will be entitled to the benefits of the Convention only if it qualifies under some other provision of Article 22.

<u>Example V</u>

Facts:         A Swiss individual and a corporation organized in a jurisdiction that does not have a tax treaty with the United States create a joint venture in the form of a partnership organized in Switzerland. The partnership provides management consulting services to unrelated companies. The Swiss individual owns 60 percent of the joint venture and the corporation owns 40 percent of the joint venture. The joint venture's debt is held by Swiss banks and its only significant contract is with the Swiss individual who is to provide the consulting services. The Swiss partnership receives fees from the United States for providing management consulting services as well as interest and dividends that are unrelated to the consulting business.

Analysis:      Under Article 4, the Swiss partnership is a resident of Switzerland for purposes of the treaty because the worldwide income of the partnership is subject to tax in Switzerland (albeit in the hands of the partners). Accordingly, the predominant interest test is applied at the level of the partnership. Because the Swiss individual is the ultimate beneficial owner of a predominant interest in the partnership as a result of its 60% ownership interest, the income earned by the partnership is entitled to treaty benefits pursuant to paragraph 1 f).

7.   <u>In reference to paragraph 6 of Article 22 (Limitation on Benefits)</u>

a) It is understood that a company resident in one of the Contracting States will be granted the benefits of the Convention under paragraph 6 of Article 22 with respect to the income it derives from the other Contracting State if:

i) the ultimate beneficial owners of 95 percent or more of the aggregate vote and value of all of its shares are seven or fewer persons that are residents of a member State of the European Union or of the European Economic Area or a party to the North American Free Trade Agreement that meet the requirements of subparagraph 3 b) of Article 22; and

ii) the amount of the expenses (including payments for interest or royalties, but not payments at arm's length for the purchase or use of or the right to use tangible property in the ordinary course of business or remuneration at arm's length for services) deductible from gross income that are paid or payable by the company for its preceding fiscal period (or, in the case of its first fiscal period, that period) to persons that are neither U.S. citizens nor residents of a member state of the European Union or of the European Economic Area or a party to the North American Free Trade Agreement that

meet the requirements of subparagraph 3 b) of Article 22 is less than 50 percent of the gross income of the company for that period.

b)  However, a company otherwise entitled to benefits under subparagraph a) shall not be entitled to the benefits of the Convention if that company, or a company that controls such company, has outstanding a class of shares:

i)  the terms of which, or which is subject to other arrangements that entitle its holders to a portion of the income of the company derived from the other  Contracting State that is larger than the portion such holders would receive absent such terms or arrangements; and

ii) 50 percent or more of the vote or value of which is owned by persons who are neither U.S. citizens nor residents of a member state of the European Union or of the European Economic Area or a Party to the North American Free Trade Agreement that meet the requirements of subparagraph 3 b) of Article 22.

Thus, for example, if 100% of the common stock of a U.S. company (representing 100 percent of the voting power in, and 95 percent of the value of, the company) was owned by a Canadian company, it generally would be entitled to benefits under subparagraph a) with respect to its Swiss source income, assuming that it met the base erosion test of clause a) ii). However, if the remaining five percent of the value of the company consisted of a class of stock that paid dividends determined by reference to the income derived from the U.S. company's Swiss subsidiary (sometimes known as "tracking" or "alphabet" stock) and 50 percent or more of the value (or vote, if relevant) of the class of stock were held by resident of a third country that does not have a double tax treaty with Switzerland, the U.S. company would not be entitled to benefits under this paragraph as a result of the application of subparagraph b).

8.  In reference to Article 26 (Exchange of Information)

a) The definition of tax fraud applicable for purposes of Article 26 of this Convention shall apply in cases where a Contracting State may need to resort to other legal means applicable to mutual assistance between the Contracting States in matters involving tax fraud, such as the Swiss Federal Law on International Mutual Assistance in Criminal Matters of 20 March, 1981, in order to obtain certain types of assistance, such as the deposition of witnesses.

b) The term "records or documents" used in Article 26 is an all-inclusive term covering all forms of recorded information whether held by public or private individuals or entities.

c) Persons or authorities to whom information is disclosed in accordance with paragraph 1 of Article 26 may disclose the information in public court proceedings or in judicial decisions.

d) It is understood that in cases of tax fraud Swiss banking secrecy does not hinder the gathering of documentary evidence from banks or its being forwarded under the Convention to the competent authority of the United States of America.

CONVENTION

BETWEEN THE UNITED STATES OF AMERICA

AND
THE SWISS CONFEDERATION FOR THE AVOIDANCE OF
DOUBLE TAXATION WITH RESPECT TO TAXES ON INCOME

The United States of America and the Swiss Confederation, desiring to conclude a Convention for the avoidance of double taxation with respect to taxes on income, have agreed as follows:

ARTICLE 1
Personal Scope

1. Except as otherwise provided in this Convention, this Convention shall apply to persons who are residents of one or both of the Contracting States.

2 Notwithstanding any provision of this Convention except paragraph 3 of this Article, the United States may tax a person who is treated as a resident under its taxation laws (except where such person is determined to be a resident of Switzerland under the provisions of paragraphs 3 or 4 of Article 4 (Resident)) and its citizens (including its former citizens) as if this Convention had not come into effect.

3. The provisions of paragraph 2 shall not affect:
        a) the benefits conferred by the United States under paragraph 2 of Article 9 (Associated Enterprises), paragraphs 6 and 7 of Article 13 (Gains), Articles 23 (Relief from Double Taxation), 24 (Non-Discrimination), and 25 (Mutual Agreement procedure); and
        b) the benefits conferred by the United States under paragraphs 1 and 2 of Article 19 (Government Service and Social Security), and under Articles 20 (Students and Trainees) and 27 (Members of Diplomatic Missions and Consular Posts) and paragraph 4 of Article 28 (Miscellaneous), upon individuals who are neither citizens of, nor have immigrant status in, the United States.

ARTICLE 2
Taxes Covered

1. This Convention shall apply to taxes on income imposed on behalf of a Contracting State.

2. The existing taxes to which the Convention shall apply are:
        a) in Switzerland: the federal, cantonal and communal taxes on income (total income, earned income, income from property, business profits, etc.);
        b) in the United States: the Federal income taxes imposed by the Internal Revenue Code and the excise taxes imposed on insurance premiums paid to foreign insurers and with respect to private foundations. The Convention shall, however, apply to the excise taxes imposed on insurance premiums paid to foreign insurers only to the extent that the risks covered

by such premiums are not reinsured with a person not entitled to the benefits of this or any other Convention which provides exemption from these taxes.

3. The Convention shall apply also to any identical or substantially similar taxes which are imposed after the date of signature of the Convention in addition to, or in place of, the existing taxes. The competent authorities of the Contracting States shall notify each other of any significant changes which have been made in their respective taxation laws.

## ARTICLE 3
## <u>General Definitions</u>

1. For the purposes of this Convention, unless the context otherwise requires:

a) the term "person" includes an individual, a partnership, a company, an estate, a trust and any other body of persons;

b) the term "company" means any body corporate or any entity which is treated as a body corporate for tax purposes under the laws of the Contracting State in which it is organized;

c) the terms "enterprise of a Contracting State" and "enterprise of the other Contracting State" mean respectively an enterprise carried on by a resident of a Contracting State and an enterprise carried on by a resident of the other Contracting State;

d) the term "nationals" means:

i) all individuals possessing the nationality (i.e., citizenship, in the case of the United States) of a Contracting State; and

ii) all legal persons, partnerships and associations deriving their status as such from the laws in force in a Contracting State;

e) the term "international traffic" means any transport by a ship or aircraft, except when such transport is solely between places in the other Contracting State;

f) the term "competent authority" means:

i) in Switzerland: the Director of the Federal Tax Administration or his authorized representative; and

ii) in the United States: the Secretary of the Treasury or his delegate;

g) the term "Switzerland" means the Swiss Confederation;

h) the term "United States" means the United States of America, but does not include Puerto Rico, the Virgin Islands, Guam, or any other United States possession or territory.

2. As regards the application of the Convention by a Contracting State any term not defined therein shall, unless the context otherwise requires or the competent authorities agree to a common meaning according to the provisions of Article 25 (Mutual Agreement Procedure), have the meaning which it has under the laws of that State concerning the taxes to which the Convention applies.

ARTICLE 4
Resident

1. For the purposes of this Convention, the term "resident of a Contracting State" means:

a) any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, nationality, place of management, place of incorporation, or any other criterion of a similar nature, except that a United States citizen or alien lawfully admitted for permanent residence (a "green card" holder) who is not a resident of Switzerland by virtue of this paragraph or paragraph 5 shall be considered to be a resident of the United States only if such person has a substantial presence, permanent home or habitual abode in the United States; if, however, such person is also a resident of Switzerland under this paragraph, such person also will be treated as a United States resident under this paragraph and such person's status shall be determined under paragraph 3;

b) the Government of that State or a political subdivision or local authority thereof or any agency or instrumentality of any such Government, subdivision or authority;

c)     i) a pension trust and any other organization established in that State and maintained exclusively to administer or provide pensions, retirement or employee benefits, that is established or sponsored by a person resident in that State under this Article; and

ii) a not-for-profit organization established and maintained in that State for religious, charitable, educational, scientific, cultural or other public purposes; that by reason of its nature as such is generally exempt from income taxation in that State; or

d) a partnership, estate, or trust, but only to the extent that the income derived by such partnership, estate, or trust is subject to tax in that State in the same manner as the income of a resident of that State, either in its hands or in the hands of its partners or beneficiaries.

2. Notwithstanding paragraph 1, the term "resident of a Contracting State" does not include any person who is liable to tax in that State in respect only of income from sources in that State.

3. Where by reason of the provisions of paragraph 1 an individual is a resident of both Contracting States, then his status shall be determined as follows:

a) he shall be deemed to be a resident of the State in which he has a permanent home available to him; if he has a permanent home available to him in both States, he shall be deemed to be a resident of the State with which his personal and economic relations are closer (center of vital interests);

b) if the State in which he has his center of vital interests cannot be determined, or if he has no permanent home available to him in either State, he shall be deemed to be a resident of the State in which he has an habitual abode;

c) if he has an habitual abode in both States or in neither of them, he shall be deemed to be a resident of the State of which he is a national;

d) if he is a national of both States or of neither of them, the competent authorities of the Contracting States shall settle the question by mutual agreement.

4 Where by reason of the provisions of paragraph 1 a person other than an individual is a resident of both Contracting States, such person shall be treated as a resident only if and to the extent that the competent authorities of the Contracting States so agree pursuant to Article 25 (Mutual Agreement Procedure), including paragraph 6 thereof.

5. An individual who would be a resident of Switzerland by reason of the provisions of paragraphs 1 and 3, but who elects not to be subject to the generally imposed income taxes in Switzerland with respect to all income from sources in the United States, shall not be considered a resident of Switzerland for the purposes of this Convention.

ARTICLE 5
Permanent Establishment

1. For the purposes of this Convention, the term "permanent establishment" means a fixed place of business through which the business of an enterprise is wholly or partly carried on.

2. The term "permanent establishment" shall include especially:
> a) a place of management;
> b) a branch;
> c) an office;
> d) a factory;
> e) a workshop; and
> f) a mine, an oil or gas well, a quarry or any other place of extraction of natural resources.

3. A building site or construction or installation project, or an installation or drilling rig or ship used for the exploration or development of natural resources, constitutes a permanent establishment only if it lasts more than twelve months.

4. Notwithstanding the preceding provisions of this Article, the term "permanent establishment" shall be deemed to include:
> a) the use of facilities solely for the purpose of storage, display or delivery of goods or merchandise belonging to the enterprise;
> b) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of storage, display or delivery;
> c) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of processing by another enterprise;
> d) the maintenance of a fixed place of business solely for the purpose of purchasing goods or merchandise or of collecting information for the enterprise;
> e) the maintenance of a fixed place of business solely for the purpose of carrying on, for the enterprise, advertising, the supply of information, scientific research, or other activities which have a preparatory or auxiliary character;

f) the maintenance of a fixed place of business solely for any combination of the activities mentioned in subparagraphs a) to e) of this paragraph, provided that the overall activity of the fixed place of business resulting from this combination is of a preparatory or auxiliary character.

5. Notwithstanding the provisions of paragraph 1 and 2, where a person - other than an agent of an independent status to whom paragraph 6 applies - is acting on behalf of an enterprise and has, and habitually exercises, in a Contracting State an authority to conclude contracts in the name of the enterprise, that enterprise shall be deemed to have a permanent establishment in that State in respect of any activities which that person undertakes for the enterprise, unless the activities of such person are limited to those mentioned in paragraph 4 which, if exercised through a fixed place of business, would not make this fixed place of business a permanent establishment under the provisions of that paragraph.

6. An enterprise shall not be deemed to have a permanent establishment in a Contracting State merely because it carries on business in that State through a broker, general commission agent or any other agent of an independent status, provided that such persons are acting in the ordinary course of their business.

7. The fact that a company which is a resident of a Contracting State controls or is controlled by a company which is a resident of the other Contracting State, or which carries on business in that other State (whether through a permanent establishment or otherwise), shall not of itself constitute either company a permanent establishment of the other.

## ARTICLE 6
## Income from Real Property

1. Income derived by a resident of a Contracting State from real property (including income from agriculture or forestry) situated in the other Contracting State may be taxed in that other State.

2. The term "real property" shall have the meaning which it has under the law of the Contracting State in which the property in question is situated. The term shall in any case include property accessory to real property, livestock and equipment used in agriculture and forestry, rights to which the provisions of general law respecting landed property apply, usufruct of real property and rights to variable or fixed payments as consideration for the working of, or the right to work, mineral deposits, sources and other natural resources; ships and aircraft shall not be regarded as real property.

3. The provisions of paragraph 1 shall apply to income derived from the direct use, letting, or use in any other form of real property.

4. The provisions of paragraphs 1 and 3 shall also apply to the income from real property of an enterprise and to income from real property used for the performance of independent personal services.

5. A resident of a Contracting State who is subject to tax in the other Contracting State on income from real property situated in the other Contracting State may, subject to the procedures of the domestic law of the other Contracting State, elect to compute the tax on such income on a net basis as if such income were attributable to a permanent establishment or a fixed base in such other State. Any such election shall be binding for taxable years as provided by the domestic law of the Contracting State in which the property is situated.

ARTICLE 7
Business Profits

1. The business profits of an enterprise of a Contracting State shall be taxable only in that State unless the enterprise carries on business in the other Contracting State through a permanent establishment situated therein. If the enterprise carries on business as aforesaid, the profits of the enterprise may be taxed in the other State but only so much of them as is attributable to that permanent establishment.

2. Subject to the provisions of paragraph 3, where an enterprise of a Contracting State carries on business in the other Contracting State through a permanent establishment situated therein, there shall in each Contracting State be attributed to that permanent establishment the business profits which it might be expected to make if it were a distinct and independent enterprise engaged in the same or similar activities under the same or similar conditions and which shall include only those profits derived from the assets or activities of the permanent establishment.

3. In determining the business profits of a permanent establishment, there shall be allowed as deductions expenses which are incurred for the purposes of the permanent establishment, including a reasonable allocation of executive and general administrative expenses, research and development expenses, interest, and other expenses incurred for the purposes of the enterprise as a whole (or the part thereof which includes the permanent establishment), whether incurred in the State in which the permanent establishment is situated or elsewhere.

4. Insofar as it has been customary in a Contracting State to determine the business profits to be attributed to a permanent establishment on the basis of an apportionment of the total profits of the enterprise to its various parts, nothing in paragraph 2 shall preclude that Contracting State from determining the profits to be taxed by such an apportionment as may be customary; the method of apportionment adopted shall, however, be such that the result shall be in accordance with the principles contained in the other paragraphs of this Article.

5. No business profits shall be attributed to a permanent establishment by reason of the mere purchase by that permanent establishment of goods or merchandise for the enterprise.

6. For the purposes of the preceding paragraphs, the business profits to be attributed to the permanent establishment shall be determined by the same method year by year unless there is good and sufficient reason to the contrary.

7. Where business profits include items of income which are dealt with separately in other Articles of the Convention, then the provisions of those Articles shall not be affected by the provisions of this Article.

8. For the purposes of this Convention, the term "business profits" includes income derived from the rental of tangible movable property and the rental or licensing of cinematographic films or works on film, tape, or other means of reproduction for use in radio or television broadcasting.


ARTICLE 8
Shipping and Air Transport

1. Profits of an enterprise of a Contracting State from the operation in international traffic of ships or aircraft shall be taxable only in that State.

2. For the purposes of this Article, profits from the operation of ships or aircraft in international traffic include profits derived from the rental of ships or aircraft if such rental profits are incidental to other profits described in paragraph 1.

3. The provisions of paragraph 1 shall also apply to profits from the participation in a pool, a joint business or an international operating agency.


ARTICLE 9
Associated Enterprises

1. Where
> a) an enterprise of a Contracting State participates directly or indirectly in the management, control or capital of an enterprise of the other Contracting State, or
> b) the same persons participate directly or indirectly in the management, control or capital of an enterprise of a Contracting State and an enterprise of the other Contracting State,

and in either case conditions are made or imposed between the two enterprises in their commercial or financial relations which differ from those which would be made between independent enterprises, then any profits which would, but for those conditions, have accrued to one of the enterprises, but, by reason of those conditions, have not so accrued, may be included in the profits of that enterprise and taxed accordingly.

2. a) Where a Contracting State proposes to include in the profits of an enterprise of that State, and to tax accordingly, profits on which an enterprise of the other Contracting State has

been charged to tax in that other State, the competent authorities of the Contracting States may consult pursuant to Article 25 (Mutual Agreement Procedure).

b) If pursuant to Article 25 the Contracting States agree on adjustments to the profits of each such enterprise that reflect the conditions which would have been made between independent enterprises, then each State shall make the agreed adjustment to the amounts charged on the profits of each such enterprise.


ARTICLE 10
Dividends

1. Dividends derived and beneficially owned by a resident of a Contracting State may be taxed in that State.

2 However, such dividends may also be taxed in the Contracting State in which the dividends arise according to the laws of that State, but if the beneficial owner of the dividends is a resident of the other Contracting State, the tax so charged shall not exceed

a) 5 percent of the gross amount of the dividends if the beneficial owner is a company which holds directly at least 10 percent of the voting stock of the company paying the dividends;

b) 15 percent of the gross amount of the dividends in all other cases.

Subparagraph b) and not subparagraph a) shall apply in the case of dividends paid by a person which is a resident of the United States and which is a Regulated Investment Company. Subparagraph a) shall not apply to dividends paid by a person which is a resident of the United States and which is a Real Estate Investment Trust, and subparagraph b) shall only apply if the dividend is beneficially owned by an individual holding an interest of less than 10 percent in the Real Estate Investment Trust.

This paragraph shall not affect the taxation of the company in respect of the profits out of which the dividends are paid.

3. Notwithstanding paragraph 2, dividends may not be taxed in the Contracting State of which the company paying the dividends is a resident if the beneficial owner of the dividends is a resident of the other Contracting State described in subparagraph 4 b) of Article 28 (Miscellaneous) that does not control the company paying the dividend.

4. The term "dividends" as used in this Article means income from shares or other rights, not being debt-claims, participating in profits, as well as income which is subjected to the same taxation treatment as income from shares under the law of the Contracting State in which the income arises.

5. The provisions of paragraphs 1 and 2 shall not apply if the beneficial owner of the dividends, being a resident of a Contracting State, carries on business in the other Contracting State of which the company paying the dividends is a resident, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the

dividends are attributable to such permanent establishment or fixed base. In such a case, the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services) shall apply.

6. Where a company is a resident of a Contracting State, the other Contracting State may not impose any tax on the dividends paid by the company, except insofar as

a) such dividends are paid to a resident of that other State, or

b) the dividends are attributable to a permanent establishment or a fixed base situated in that State.

7. A company that is a resident of Switzerland and that has a permanent establishment in the United States, or that is subject to tax on a net basis in the United States on items of income described in Article 6 (Income from Real Property) or Article 13 (Gains), may be subject in the United States to a tax in addition to the tax allowable under the other provisions of this Convention. Such tax, however, may be imposed only on

a) the portion of the business profits of the company attributable to the permanent establishment under this Convention, and

b) the portion of the income referred to in the preceding sentence that is described in Article 6 (Income from Real Property) or paragraphs 1 or 3 of Article 13 (Gains),

that represents the "dividend equivalent amount" of those profits and income; the term "dividend equivalent amount" shall, for the purposes of this paragraph, have the meaning that it has under the law of the United States as it may be amended from time to time without changing the general principle thereof.

8. The tax referred to in paragraph 7 shall not be imposed at a rate exceeding the rate specified in subparagraph 2 a).

## ARTICLE 11
### Interest

1. Interest derived and beneficially owned by a resident of a Contracting State shall be taxable only in that State.

2. The term "interest" as used in this Convention means income from debt-claims of every kind, whether or not secured by mortgage, and in particular, income from government securities and income from bonds or debentures, including premiums and prizes attaching to such securities, bonds or debentures, and including an excess inclusion with respect to a residual interest in a real estate mortgage investment conduit. However, the term "interest" does not include income dealt with in Article 10 (Dividends). Penalty charges for late payment shall not be regarded as interest for the purpose of this Convention.

3. The provisions of paragraph 1 shall not apply if the beneficial owner of the interest, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the interest is attributable to such permanent establishment or fixed base. In such a case, the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services) shall apply.

4. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the interest, having regard to the debt-claim for which it is paid, exceeds the amount which would have been agreed upon by the payer and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case the excess part of the payment shall remain taxable according to the laws of each Contracting State, due regard being had to the other provisions of this Convention.

5. Except as otherwise provided in paragraphs 1 or 3, interest paid by a company that is a resident of a Contracting State may be subject to tax by the other Contracting State only insofar as such interest is paid by a permanent establishment of such company located in that other State, or out of income described in Article 6 (Income from Real Property) or paragraph 1 of Article 13 (Gains) that is subject to tax on a net basis in that other State.

6. The provisions of paragraph 1 shall not apply to
      a) interest arising in the United States if the amount of such interest is determined by reference to receipts, sales, income, profits or other cash flow of the debtor or a related person, to any change in the value of any property of the debtor or a related person or to any dividend, partnership distribution or similar payment made by the debtor or a related person, but only to the extent that the interest does not qualify as portfolio interest under United States law, and
      b) an excess inclusion with respect to a residual interest in an entity that is treated as a real estate mortgage investment conduit under the law of the United States,
which may be taxed in the United States according to its laws.

ARTICLE 12
Royalties

1. Royalties derived and beneficially owned by a resident of a Contracting State shall be taxable only in that State.

2. The term "royalties" as used in this Convention means payments of any kind received as a consideration for the use of, or the right to use, any copyright of literary, artistic, or scientific work (but not including motion pictures, or films, tapes or other means of reproduction for use in radio or television broadcasting), any patent, trademark, design or model, plan, secret formula or process, or other like right or property, or for information concerning industrial, commercial, or scientific experience. The term

"royalties" also includes gains derived from the alienation of any such right or property which are contingent on the productivity, use, or disposition thereof.

3. The provisions of paragraph 1 shall not apply if the beneficial owner of the royalties, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the royalties are attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services) shall apply.

4. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the royalties, having regard to the use, right or information for which they are paid, exceeds the amount which would have been agreed upon by the payer and the person deriving the royalties in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case, the excess part of the payments shall remain taxable according to the law of each Contracting State, due regard being had to the other provisions of this Convention.

ARTICLE 13
Gains

1. Gains derived by a resident of a Contracting State that are attributable to the alienation of real property situated in the other Contracting State may be taxed in that other State.

2. For the purposes of this Article, the term "real property situated in the other Contracting State" shall include

    a) real property referred to in Article 6 (Income from Real Property); and

    b) shares or other comparable rights in a company that is a resident of that other State, the assets of which consist wholly or principally of real property situated in that other State, or an interest in a partnership, trust, or estate, to the extent attributable to real property situated in that other State.

In the United States, the term includes a "United States real property interest" as defined in the Internal Revenue Code as it may be amended from time to time without changing the general principles thereof.

3. Gains from the alienation of movable property forming part of the business property of a permanent establishment which an enterprise of a Contracting State has in the other Contracting State or of movable property pertaining to a fixed base available to a resident of a Contracting State in the other Contracting State for the purpose of performing independent personal services, including such gains from the alienation of such a permanent establishment (alone or with the whole enterprise) or such fixed base, may be taxed in that other State in accordance with its law.

4. Gains derived by an enterprise of a Contracting State from the alienation of ships or aircraft operated in international traffic shall be taxable only in that State. Gains described in Article 12 (Royalties) shall be taxable only in accordance with the provisions of Article 12.

5. Gains from the alienation of any property other than that referred to in paragraphs 1 through 4 shall be taxable only in the Contracting State of which the alienator is a resident.

6. Where a resident of a Contracting State alienates property in the course of an organization, reorganization, merger or similar transaction and profit, gain or income with respect to such alienation is not recognized for the purpose of taxation in that State, if requested to do so by the person who acquires the property, the competent authority of the other Contracting State may agree, subject to terms and conditions satisfactory to such competent authority, to defer the recognition of the profit, gain or income with respect to such property for the purpose of taxation in that other State until such time and in such manner as may be stipulated in the agreement.

7. If a resident of a Contracting State who is subject to income taxation in both Contracting States on a disposition of property is treated for the purposes of taxation by a Contracting State as having alienated property and is taxed in that State by reason thereof, and the domestic law of the other Contracting State at such time does not require or allow the resident to recognize gain or loss or otherwise permits the deferral of the gain or loss, then the resident may elect in his annual return of income for the year of such alienation to be liable to tax in the other Contracting State in that year as if he had, immediately before that time, sold and repurchased such property for an amount equal to its fair market value at that time. Such an election shall apply to all property described in this paragraph that is alienated by the resident in the taxable year for which the election is made or at any time thereafter.


## ARTICLE 14
### Independent Personal Services

1. Income derived by an individual who is a resident of a Contracting State in respect of the performance of personal services of an independent character shall be taxable only in that State, unless the individual has a fixed base regularly available to him in the other Contracting State for the purpose of performing his activities. If he has such a fixed base, that portion of the income attributable to the fixed base that is derived in respect of services performed in that other State also may be taxed by that other State.

2. In determining the income described in paragraph 1 that is taxable in the other Contracting State the principles of Article 7 (Business Profits} shall apply.


## ARTICLE 15
### Dependent Personal Services

1. Subject to the provisions of Articles 16 (Directors' Fees), 18 (Pensions and Annuities) and 19 (Government Service and Social Security), salaries, wages, and other similar remuneration derived by a resident of a Contracting State in respect of an employment shall be taxable only in that State unless the employment is exercised in the other Contracting State. If the employment is so exercised, such remuneration as is derived therefrom may be taxed in that other State.

2. Notwithstanding the provisions of paragraph 1, remuneration derived by a resident of a Contracting State in respect of an employment exercised in the other Contracting State shall be taxable only in the first-mentioned State if

> a) the recipient is present in the other State for a period or periods not exceeding in the aggregate 183 days in any twelve-month period commencing or ending in the taxable year concerned;

> b) the remuneration is paid by, or on behalf of, an employer who is not a resident of the other State; and

> c) the remuneration is not borne by a permanent establishment or a fixed base that the employer has in the other State.

3. Notwithstanding the preceding provisions of this Article, remuneration described in paragraph 1 that is derived by a resident of a Contracting State in respect of an employment as a member of the regular complement of a ship or aircraft operated in international traffic shall be taxable only in that State.

## ARTICLE 16
### Director's Fees

Directors' fees and other similar payments derived by a resident of a Contracting State in his capacity as a member of the board of directors of a company that is a resident of the other Contracting State may be taxed in that other Contracting State.

## ARTICLE 17
### Artistes and Sportsmen

1. Notwithstanding the provisions of Articles 14 (Independent Personal Services) and 15 (Dependent Personal Services), income derived by a resident of a Contracting State as an entertainer, such as a theatre, motion picture, radio, or television artiste, or a musician, or as a sportsman, from his personal activities as such exercised in the other Contracting State may be taxed in that other State, except where the amount of the gross receipts derived by such entertainer or sportsman, including expenses reimbursed to him or borne on his behalf, from such activities does not exceed ten thousand United States dollars ($10,000) or its equivalent in Swiss francs for the taxable year concerned.

2. Where income in respect of activities exercised by an entertainer or a sportsman who is a resident of a Contracting State in his capacity as such accrues not to the entertainer or sportsman

himself but to another person, that income may be taxed in the Contracting State in which the activities of the entertainer or sportsman are exercised, notwithstanding the provisions of Articles 7 (Business Profits) and 14 (Independent Personal Services), unless it is established that neither the entertainer or sportsman nor persons related thereto (whether or not residents of that State) participate directly or indirectly in the receipts or profits of that other person in any manner, including the receipt of deferred remuneration, bonuses, fees, dividends, partnership distributions, or other distributions.

## ARTICLE 18
## Pensions and Annuities

1. Subject to the provisions of Article 19 (Government Service and Social Security), pensions and other similar remuneration beneficially derived by a resident of a Contracting State in consideration of past employment shall be taxable only in that State.

2. Subject to the provisions of Article 19 (Government Service and Social Security), annuities derived and beneficially owned by a resident of a Contracting State shall be taxable only in that State. The term "annuities" as used in this paragraph means a stated sum paid periodically at stated tines during a specified number of years or for life under an obligation to make the payments in return for adequate and full consideration (other than services rendered).

## ARTICLE 19
## Government Service and Social Security

1.      a) Salaries, wages and other similar remuneration, other than a pension, paid by a Contracting State or a political subdivision or a local authority thereof to an individual in respect of services rendered to that State or subdivision or authority shall be taxable only in that State.
        b) However, such salaries, wages and other similar remuneration shall be taxable only in the other Contracting State if the services are rendered in that State and the individual is a resident of that State who:
                i) is a national of that State; or
                ii) did not become a resident of that State solely for the purpose of rendering the services.

2.       a) Any pension paid by, or out of funds created by, a Contracting State or a political subdivision or a local authority thereof to an individual in respect of services rendered to that State or subdivision or authority shall be taxable only in that State.
        b) However, such pension shall be taxable only in the other Contracting State if the individual is a resident of, and a national of, that State.

3. The provisions of Articles 15 (Dependent Personal Services), 16 (Directors' Fees) and 18 (Pensions and Annuities) shall apply to salaries, wages and other similar remuneration, and to pensions,

in respect of services rendered in connection with a business carried on by a Contracting State or a political subdivision or a local authority thereof.

4. Notwithstanding paragraph 2, social security payments and other public pensions paid by a Contracting State to an individual who is a resident of the other Contracting State may be taxed in that other State. However, such payments may also be taxed in the first Contracting State according to the laws of that State, but the tax so charged shall not exceed 15 percent of the gross amount of the payment.

ARTICLE 20

Students and Trainees

Payments which a student, apprentice, or business trainee, who is or was immediately before visiting a Contracting State a resident of the other Contracting State, and who is present in the first-mentioned State for the purpose of his full-time education or training, receives for the purpose of his maintenance, education or training shall not be taxed in that State provided that such payments arise from sources outside that State.

ARTICLE 21

Other Income

1. Items of income of a resident of a Contracting State, wherever arising, not dealt with in the foregoing Articles of this Convention shall be taxable only in that State.

2. The provisions of paragraph 1 shall not apply to income other than income from real property as defined in paragraph 2 of Article 6 (Income from Real Property), if the person deriving the income, being a resident of a Contracting State, carries on business in the other Contracting State through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the right or property in respect of which the income is paid is effectively connected with such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 14 (Independent Personal Services) as the case may be, shall apply.

3. The provisions of this Article shall not apply to income subject to tax by either Contracting State on wagering, gambling or lottery winnings.

ARTICLE 22

Limitation on Benefits

1. Subject to the succeeding provisions of this Article, a person that is a resident of a Contracting State and that derives income from the other Contracting State may only claim the benefits provided for in this Convention where such person:

    a) is an individual;

    b) is a Contracting State, a political subdivision or local authority thereof, or an agency or instrumentality of such State, political subdivision or authority;

    c) is engaged in the active conduct of a trade or business in the first-mentioned Contracting State (other than the business of making, managing or simply holding investments for the persons own account, unless these activities are banking, insurance or securities activities carried on by a bank, insurance company or registered securities dealer) and the income derived from the other Contracting State is derived in connection with, or is incidental to, that trade or business;

    d) is a recognized headquarters company for a multinational corporate group;

    e) is a company

        i) whose principal class of shares is primarily and regularly traded on a recognized stock exchange; or

        ii) if one or more companies described in clause i) are the ultimate beneficial owners of a predominant interest in such company;

    f) is a company, trust or estate, unless one or more persons who are not entitled to the benefits of this Convention under subparagraphs a), b), d), e) or g) are, in the aggregate, the ultimate beneficial owners of a predominant interest in the form of a participation, or otherwise, in such company, trust or estate; or

    g) is a family foundation resident in Switzerland, unless the founder, or the majority of the beneficiaries, are persons who are not entitled to the benefits of this Convention under subparagraph a), or 50 percent or more of the income of the family foundation could benefit persons who are not entitled to the benefits of this Convention under subparagraph a).

2. Notwithstanding the preceding paragraph, an entity described in paragraph 1 c) of Article 4 (Resident) may claim the benefits of this Convention, provided that more than half of the beneficiaries, members or participants, if any, in such organization are persons that are entitled, under this Article, to the benefits of this Convention.

3.     a) A company that is a resident of a Contracting State shall also be entitled to the benefits of Articles 10 (Dividends), 11 (Interest) and 12 (Royalties} if:

        i) the ultimate beneficial owners of more than 30 percent of the aggregate vote and value of all of its shares are persons that are resident in that Contracting State, and that would qualify for benefits under subparagraphs a), b), d), e), f) or g) of paragraph 1;

        ii) the ultimate beneficial owners of more than 70 percent of all such shares are persons described in subparagraph i) and persons that are residents of member states of the European Union or of the European Economic Area or parties to the North American Free Trade Agreement that are described in subparagraph b); and

iii) the amount of the expenses deductible from gross income that are paid or payable by the company for its preceding fiscal period (or; in the case of its first fiscal period, that period) to persons that would not qualify for benefits under subparagraphs a), b), d), e), f) or g) of paragraph 1, is less than 50 percent of the gross income of the company for that period.

b) For purposes of subparagraph a) ii) shares whose ultimate beneficial owner is a person that is a resident of a member state of the European Union or of the European Economic Area or a party to the North American Free Trade Agreement will be taken into account only if such person:

i) is a resident of a country with which the other Contracting State has a comprehensive income tax convention and that person is entitled to all of the benefits provided by the other Contracting State under that convention;

ii) would qualify for benefits under paragraph 1 if that person were a resident of the first-mentioned Contracting State and if references in such paragraph to the first-mentioned Contracting State were references to that person's state of residence; and

iii) would be entitled to a rate of tax in the other Contracting State under the convention between that person's country of residence and the other Contracting State in respect of the particular class of income for which benefits are being claimed under this Convention, that is at least as low as the rate applicable under this Convention.

4. Notwithstanding the provisions of paragraphs 1 through 3, where an enterprise of a Contracting State derives income from the other Contracting State, and that income is attributable to a permanent establishment which that enterprise has in a third jurisdiction, the tax benefits that would otherwise apply under the other provisions of the Convention will not apply to any item of income if the combined tax that is actually paid with respect to such income in the first-mentioned State and in the third jurisdiction is less than 60 percent of the tax that would have been payable in the first-mentioned State if the income were earned in that State by the enterprise and were not attributable to the permanent establishment in the third jurisdiction. Any dividends, interest or royalties to which the provisions of this paragraph apply shall be subject to tax at a rate that shall not exceed 15 percent of the gross amount thereof. Any other income to which the provisions of this paragraph apply will be subject to tax under the provisions of the domestic law of the other Contracting State, notwithstanding any other provision of the Convention. The provisions of this paragraph shall not apply if:

a) in the case of royalties, the royalties are received as compensation for the use of, or the right to use, intangible property produced or developed by the permanent establishment itself; or

b) in the case of any other income, the income derived from the other Contracting State is derived in connection with, or is incidental to, the active conduct of a trade or business carried on by the permanent establishment in the third jurisdiction (other than the business of making, managing or simply holding investments for the person's own account, unless these activities are banking, insurance or securities activities carried on by a bank, insurance company or registered securities dealer).

5. The competent authorities of the Contracting States shall consult together with a view to developing a commonly agreed application of the provisions of this Article. The competent authorities shall, in accordance with the provisions of Article 26 (Exchange of Information), exchange such information as is necessary for carrying out the provisions of this Article.

6. A person that is not entitled to the benefits of this Convention pursuant to the provisions of the preceding paragraphs may, nevertheless, be granted the benefits of the Convention if the competent authority of the State in which the income arises so determines after consultation with the competent authority of the other Contracting State.

7.         a) For the purposes of paragraph 1, the term "recognized stock exchange" means:
              i) any Swiss stock exchange on which registered dealings in shares take place;
              ii) the NASDAQ System owned by the National Association of Securities Dealers, Inc.  and any stock exchange registered with the Securities and Exchange Commission as a national securities exchange for purposes of the Securities Exchange Act of 1934;
              iii) the stock exchanges of Amsterdam, Frankfurt, London, Milan, Paris, Tokyo and Vienna; and
              iv) any other stock exchange agreed upon by the competent authorities of the Contracting States.
         b) For purposes of subparagraph d) of paragraph 1, a person shall be considered a recognized headquarters company if:
              i) it provides in its state of residence a substantial portion of the overall supervision and administration of a group of companies, (which may be part of a larger group of companies), which may include, but cannot be principally, group financing;
              ii) the group of companies consists of corporations resident in, and engaged in an active business in, at least five countries, and the business activities carried on in each of the five countries (or five groupings of countries) generate at least 10 percent of the gross income of the group;
              iii) the business activities carried on in any one country other than the Contracting State of residence of the headquarters company generate less than 50 percent of the gross income of the group;
              iv) no more than 25 percent of its gross income is derived from the other Contracting State;
              v) it has, and exercises, independent discretionary authority to carry out the functions referred to in subparagraph i)
              vi) it is subject to generally applicable rules of taxation in its country of residence; and
              vii) the income derived in the other Contracting State either is derived in connection with, or is incidental to, the active business referred to in subparagraph ii).

If the income requirements for being considered a recognized headquarters company (subparagraphs ii), iii), or iv)) are not fulfilled, they will be deemed to be fulfilled if the required ratios are met when averaging the gross income of the preceding four years.

## ARTICLE 23
## Relief from Double Taxation

1. In the case of Switzerland, double taxation shall be avoided as follows:

a) Where a resident of Switzerland derives income which, in accordance with the provisions of this Convention, may be taxed in the United States, Switzerland shall; subject to the provisions of subparagraphs b), c) and d) and paragraph 3, exempt such income from tax; provided, however, that such exemption shall apply to gains referred to in paragraph 1 of Article 13 (Gains) only if actual taxation of such gains in the United States is demonstrated. Switzerland may, in calculating tax on the remaining income of that resident, apply the rate of tax which would have been applicable if the exempted income had not been so exempted.

b) Where a resident of Switzerland derives dividends which, in accordance with the provisions of Article 10 (Dividends), may be taxed in the United States, Switzerland shall allow, upon request, and subject to the provisions of subparagraph c), a relief to such resident. The relief may consist of

i) a deduction from the Swiss tax on the income of that resident of an amount equal to the tax levied in the United States in accordance with the provisions of Article 10 (Dividends); such deduction shall not, however, exceed that part of the Swiss tax, as computed before the deduction is given, which is appropriate to the income which may be taxed in the United States; or

ii) a lump sum reduction of the Swiss tax; or

iii) a partial exemption of such dividends from Swiss tax, in any case consisting at least of the deduction of the tax levied in the United States from the gross amount of the dividends.

Switzerland shall determine the applicable relief and regulate the procedure in accordance with the Swiss provisions relating to the carrying out of international conventions of the Swiss Confederation for the avoidance of double taxation.

c) Where a resident of Switzerland derives income

i) described in paragraph 2 of Article 10 (Dividends) or paragraph 6 of Article 11 (Interest) which is not entitled to any reduction in U.S. withholding tax pursuant to those provisions; or

ii) which may be taxed in the United States in accordance with the provisions of Article 22 (Limitation on Benefits)

Switzerland shall allow the deduction of the tax levied in the United States from the gross amount of such income.

d) Where a resident of Switzerland derives payments that may be taxed by the United States pursuant to paragraph 4 of Article 19 (Government Service and Social Security), Switzerland shall provide a relief to such resident consisting of a deduction equal to the tax

levied in the United States, plus an exemption equal to one-third (1/3) of the net amount of such payment from Swiss tax.

2. In the case of the United States, double taxation shall be avoided as follows: In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a resident or citizen of the United States as a credit against the United States tax on income the appropriate amount of tax paid to Switzerland; and, in the case of a United States company owning at least 10 percent of the voting stock of a company which is a resident of Switzerland from which it receives dividends in any taxable year, the United States shall allow as a credit against the United States tax on income the appropriate amount of tax paid to Switzerland by that company with respect to the profits out of which such dividends are paid. Such appropriate amount shall be based upon the amount of tax paid to Switzerland. For purposes of applying the United States credit in relation to tax paid to Switzerland the taxes referred to in subparagraph 2 a) and paragraph 3 of Article 2 (Taxes Covered) shall be considered to be income taxes.

3. Where a resident of Switzerland is also a citizen of the United States and is subject to United States income tax in respect of profits, income or gains which arise in the United States, the following rules apply:

a) Switzerland will apply paragraph 1 as if the amount of tax paid to the United States in respect of such profits, income or gains were the amount that would have been paid if the resident were not a citizen of the United States; and

b) for the purpose of computing the United States tax on such profits, income or gains, the United States shall allow as a credit against United States tax the income tax paid or accrued to Switzerland after the application of subparagraph a), provided that the credit so allowed shall not reduce the amount of the United States tax below the amount that is taken into account in applying subparagraph a); and

c) for the purpose of subparagraph b), profits, income or gains described in this paragraph shall be deemed to arise in Switzerland to the extent necessary to avoid double taxation of such income; however, the rules of this subparagraph shall not apply in determining credits against United States tax for foreign taxes other than the taxes referred to in subparagraph 2 a) and paragraph 3 of Article 2 (Taxes Covered).

ARTICLE 24

Non-Discrimination

1. Nationals of a Contracting State shall not be subjected in the other Contracting State to any taxation or any requirement connected therewith, which is other or more burdensome than the taxation and connected requirements to which nationals of that other State in the same circumstances are or may be subjected. For purposes of United States taxation of income, United States nationals not resident in the United States are not in the same circumstances as Swiss nationals not resident in the United States.

This provision shall, notwithstanding the provisions of Article 1 (Personal Scope), also apply to persons who are not residents of one or both of the Contracting States.

2.          a) The taxation on a permanent establishment which an enterprise of a Contracting State has in the other Contracting State shall not be less favorably levied in that other State than the taxation levied on enterprises of that other State carrying on the same activities

b) The provisions of this paragraph shall not be construed as obliging a Contracting State to grant to residents of the other Contracting State any personal allowances, reliefs and reductions for taxation purposes on account of civil status or family responsibilities which it grants to its own residents.

3. Except where the provisions of paragraph 1 of Article 9 (Associated Enterprises), paragraph 4 of Article 11 (Interest), or paragraph 4 of Article 12 (Royalties) apply, interest, royalties and other disbursements paid by an enterprise of a Contracting State to a resident of the other Contracting State shall, for the purpose of determining the taxable profits of such enterprise, be deductible under the same conditions as if they had been paid to a resident of the first-mentioned State. Similarly, any debts of an enterprise of a Contracting State to a resident of the other Contracting State shall, for the purpose of determining the taxable capital of such enterprise, be deductible under the same conditions as if they had been contracted to a resident of the first-mentioned State.

4. Enterprises of a Contracting State, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other Contracting State, shall not be subjected in the first-mentioned State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which other similar enterprises of the first-mentioned State are or may be subjected.

5. The provisions of this Article shall, notwithstanding paragraph 2 of Article 2 (Taxes Covered), apply to taxes of every kind and description imposed by a Contracting State or a political subdivision or local authority thereof.

6. Nothing in this Article shall prevent the United States from imposing the tax described in paragraph 7 of Article 10 (Dividends).


ARTICLE 25
Mutual Agreement Procedure


1. Where a person considers that the actions of one or both of the Contracting States result or will result for him in taxation not in accordance with the provisions of this Convention, he may, irrespective of the remedies provided by the domestic law of those States, present his case to the competent authority of the Contracting State of which he is a resident or national.

2. The competent authority shall endeavor, if the objection appears to it to be justified and if it is not itself able to arrive at a satisfactory solution, to resolve the case by mutual agreement with the competent authority of the other Contracting State, with a view to the avoidance of taxation which is not in accordance with the Convention.

3. The competent authorities of the Contracting States shall endeavor to resolve by mutual agreement any difficulties or doubts arising as to the interpretation or application of the Convention. In particular, the competent authorities of the Contracting States may consult together to endeavor to agree:

a) to the same attribution of income, deductions, credits or allowances to a resident of a Contracting State and its permanent establishment situated in the other Contracting State;

b) to the same allocation of income, deductions, credits or allowances between a resident of a Contracting State and any associated person provided for in Article 9 (Associated Enterprises);

c) to the same characterization of particular items of income;

d) to the same characterization of persons;

e) to the same application of source rules with respect to particular items of income;

f) to a common meaning of a term;

g) to the application of the provisions of domestic law regarding penalties, fines, and interest in a manner consistent with the purposes of the Convention.

The competent authorities of the Contracting States may consult together for the elimination of double taxation in cases not provided for in the Convention.

4. The competent authorities of the Contracting States may communicate with each other directly for the purpose of reaching an agreement in the sense of the preceding paragraphs.

5. The competent authorities of the Contracting States may prescribe procedures to carry out the purposes of this Convention.

6. If any difficulty or doubt arising as to the interpretation or application of this Convention cannot he resolved by the competent authorities in a mutual agreement procedure pursuant to the previous paragraphs of this Article, the case may, if both competent authorities and all affected taxpayers agree, be submitted for arbitration, provided the taxpayers agree in writing to be bound by the decision of the arbitration board. The decision of the arbitration board in a particular case shall be binding on both Contracting States with respect to that case. The procedures shall be established in an exchange of notes between the Contracting States. The provisions of this paragraph shall have effect after the Contracting States have so agreed through the exchange of diplomatic notes.

ARTICLE 26
Exchange of Information

1. The competent authorities of the Contracting States shall exchange such information (being information available under the respective taxation laws of the Contracting States) as is necessary for carrying out the provisions of the present Convention or for the prevention of tax fraud or the like in relation to the taxes which are the subject of the present Convention. In cases of tax fraud,

      (a) the exchange of information is not restricted by Article 1 (Personal Scope) and

      (b) if specifically requested by the competent authority of a Contracting State, the competent authority of the other Contracting State shall provide information under this Article in the form of authenticated copies of unedited original records or documents.

Any information received by a Contracting State shall be treated as secret in the same manner as information obtained under the domestic law of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the assessment, collection, or administration of, the enforcement or prosecution in respect of, or the determination of appeals in relation to, the taxes covered by the Convention. Such persons or authorities shall use the information only for such purposes. No information shall be exchanged which would disclose any trade, business, industrial or professional secret or any trade process.

2. Each of the Contracting States may collect such taxes imposed by the other Contracting State as though such taxes were the taxes of the former State as will ensure that the exemption or reduced rate of tax granted under Articles 10 (Dividends), 11 (Interest), 12 (Royalties) and 18 (Pensions and Annuities) of the present Convention by such other State shall not be enjoyed by persons not entitled to such benefits.

3. In no case shall the provisions of this Article be construed so as to impose upon either of the Contracting States the obligation to carry out administrative measures at variance with the regulations and practice of either Contracting State or which would be contrary to its sovereignty, security or public policy or to supply particulars which are not procurable under its own legislation or that of the State making application.

4. The competent authorities may release to an arbitration board established pursuant to paragraph 6 of Article 25 (Mutual Agreement Procedure) such information as is necessary for carrying out the arbitration procedure. The members of the arbitration board shall be subject to the limitations on disclosure described in this Article.

ARTICLE 27
Members of Diplomatic Missions and Consular Posts

1. Nothing in this Convention shall affect the fiscal privileges of members of diplomatic missions or consular posts under the general rules of international law or under the provisions of special agreements.

2. Insofar as, due to fiscal privileges granted to diplomatic agents or consular officers under the general rules of international law or under the provisions of special international agreements, income is not subject to tax in the receiving State, the right to tax shall be reserved to the sending State.

3. Notwithstanding the provisions of Article 4 (Resident), an individual who is a member of a diplomatic mission, consular post or permanent mission of a Contracting State which is situated in the other Contracting State or in a third State shall be deemed for the purposes of the Convention to be a resident of the sending State if:

a) in accordance with international law he is not liable to tax in the receiving State in respect of income from sources outside that State, and

b) he is liable in the sending State to the same obligations in relation to tax on his total income as are residents of that State.

4. The Convention shall not apply to international organizations, to organs or officials thereof and to persons who are members of a diplomatic mission, consular post or permanent mission of a third State, being present in a Contracting State and not treated in either Contracting State as residents in respect of taxes on income.

ARTICLE 28
Miscellaneous

1. This Convention shall not restrict in any manner any exclusion, exemption, deduction, credit, or other allowance now or hereafter accorded

a) by the laws of either Contracting State; or

b) by any other agreement between the Contracting States.

2. Notwithstanding the provisions of subparagraph 1 b):

a) Notwithstanding any other agreement to which the Contracting States may be parties, a dispute concerning whether a measure is within the scope of this Convention shall be considered only by the competent authorities of the Contracting States, as defined in subparagraph 1 f) of Article 3 (General Definitions) of this Convention, and the procedures under this Convention exclusively shall apply to the dispute.

b) Unless the competent authorities determine that a taxation measure is not within the scope of this Convention, the nondiscrimination obligations of this Convention exclusively shall apply with respect to that measure, except for such national treatment or most-favored-nation obligations as may apply to trade in goods under the General Agreement on Tariffs and Trade. No national treatment or most-favored-nation obligation under any other agreement shall apply with respect to that measure.

c) For the purpose of this paragraph, a "measure" is a law, regulation, rule, procedure, decision, administrative action, or any other form of measure.

3. For the implementation of paragraphs 1 and 2 of Article 7 (Business Profits), paragraph 5 of Article 10 (Dividends), paragraph 3 of Article 11 (Interest), paragraph 3 of Article 12 (Royalties), paragraph 3 of Article 13 (Gains), paragraph 2 of Article 14 (Independent Personal Services), and paragraph 2 of Article 21 (Other Income), any income, gain or expense attributable to a permanent establishment during its existence is taxable or deductible (under otherwise applicable principles) in the Contracting State where such permanent establishment is situated even if the payments are deferred until such permanent establishment has ceased to exist.

4. In determining the taxable income for purposes of taxation in a Contracting State of an individual who renders personal services and who is a resident, but not a national, of that State, contributions paid by, or on behalf of, such individual to a pension or other retirement arrangement that is established and maintained and recognized for tax purposes in the other Contracting State shall be treated in the same way for tax purposes in the first-mentioned State as a contribution paid to a pension or other retirement arrangement that is established and maintained and recognized for tax purposes in that first-mentioned State, provided that:

a) the individual was not a resident of that State, and was contributing to that pension or other retirement arrangement immediately before he began to exercise employment in that State; and

b) the competent authority of that State agrees that the pension or other retirement arrangement in the other Contracting State generally corresponds to a pension or other retirement arrangement recognized for tax purposes by that first-mentioned State.

The benefits of this paragraph shall extend for a period not exceeding five taxable years beginning with the individual's first taxable year during which the individual rendered personal services in the first-mentioned Contracting State. For purposes of this paragraph, a pension or other retirement arrangement is recognized for tax purposes in a Contracting State if the contributions to, or earnings of, the arrangement would qualify for tax relief in that State.

5. The appropriate authority of either Contracting State may request consultations with the appropriate authority of the other Contracting State to determine whether amendment to the Convention is appropriate to respond to changes in the law or policy of either Contracting State. If these consultations determine that the effect of the Convention or its application have been unilaterally changed by reason of domestic legislation enacted by a Contracting State such that the balance of benefits provided by the Convention has been significantly altered, the authorities shall consult with each other with a view to amending the Convention to restore an appropriate balance of benefits.

ARTICLE 29
Entry into Force

1. This Convention shall be subject to ratification in accordance with the applicable procedures of each Contracting State and instruments of ratification shall be exchanged as soon as possible.

2. The Convention shall enter into force upon the exchange of instruments of ratification and its provisions shall have effect:

a) in respect of tax withheld at the source, to amounts paid or credited on or after the first day of the second month next following the date on which this Convention enters into force; b) in respect of other taxes, to taxable periods beginning on or after the first day of January next following the date on which this Convention enters into force.

3. Notwithstanding paragraph 2, where any greater relief from tax would have been afforded to a person entitled to the benefits of the Convention between the Swiss Confederation and the United States of America for the avoidance of double taxation with respect to taxes on income, signed at Washington on May 24, 1951 ("prior Convention"), under that Convention than under this Convention, the prior Convention shall, at the election of such person, continue to have effect in its entirety for a twelve-month period from the date on which the provisions of this Convention otherwise would have effect under paragraph 2.

4. The prior Convention shall cease to have effect when the provisions of this Convention take effect in accordance with paragraphs 2 and 3.

## ARTICLE 30
### Termination

This Convention shall remain in force until terminated by a Contracting State. Either Contracting State may terminate this Convention at any time provided that at least 6 months' prior notice of termination has been given through diplomatic channels. In such event, the Convention shall cease to have effect:

a) in respect of tax withheld at the source, to amounts paid or credited on or after the first day of January next following the expiration of the 6 months' period; b) in respect of other taxes, to taxable periods beginning on or after the first day of January next following the expiration of the 6 months' period.

DONE at Washington, in duplicate, in the English and German languages, the two texts having equal authenticity, this 2nd day of October, 1996.

FOR THE UNITED STATES                    FOR THE SWIS
OF AMERICA:                              CONFEDERATION:
    (s) Lawrence H. Summers              (s) Kasper Villiger

## PROTOCOL

At the signing today of the Convention between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income, the

undersigned have agreed upon the following provisions, which shall form an integral part of the Convention:

1.  <u>With reference to paragraph 2 of Article 2 Taxes Covered</u>
    The reference to "Federal income taxes imposed by the Internal Revenue Code" in subparagraph b) does not include social security taxes. Income taxes on social security benefits, however, are covered.

2.  <u>With reference to paragraph 1 of Article 4 Resident</u>)
    Residents of Switzerland who make a spousal election under I.R.C. section 6013 will continue to be treated as residents of Switzerland and will also be subject to U.S. taxation as residents.

3.  <u>With reference to Article 7 (Business profits)</u>
    The United States tax on insurance premiums paid to foreign insurers shall not be imposed on insurance or reinsurance premiums which are the receipts of a business of insurance carried on by an enterprise of Switzerland, whether or not that business is carried on through a permanent establishment in the United States, except to the extent that the risks covered by such premiums are reinsured with a person not entitled to the benefits of this or any other Convention which provides a similar exemption from U.S. tax.

4.  <u>With reference to paragraph 4 of Article 10 (Dividends) and paragraph 2 of Article 11 (Interest)</u>
    It is understood that participation in the profits of the obligor is a factor in determining whether an instrument nominally characterized as a debt-claim should be treated for purposes of the Convention as equity.

5.  <u>With reference to paragraph 7 of Article 10 (Dividends)</u>
    The general principle of the "dividend equivalent amount", as used in United States law, is to approximate that portion of the income mentioned in paragraph 7 of Article 10 that is comparable to the amount that would be distributed as a dividend if such income were earned by a subsidiary incorporated in the United States. For any year, a foreign corporation's dividend equivalent amount is equal to the after-tax earnings attributable to the foreign corporation's (i) income attributable to a permanent establishment in the United States, (ii) income from real property in the United States that is taxed on a net basis under Article 6, and (iii) gain from a real property interest taxable by the United States under paragraph 1 of Article 13, reduced by any increase in the foreign corporation's net investment in U.S. assets or increased by any reduction in the foreign corporation's net investment in U.S. assets.

6.  <u>With reference to paragraph 4 of Article 19 (Government Service and Social Security)</u>
    It is understood that the term "other public pensions" as used in this paragraph is intended to refer to United States tier 1 Railroad Retirement benefits.

7.  <u>With reference to subparagraph 1 c) of Article 22 (Limitation on Benefits)</u>
    a) The parties agree that whether the activities of a foreign corporation constitute an active trade or business must be determined under all the facts and circumstances. In general, a

trade or business comprises activities that constitute (or could constitute) an independent economic enterprise carried on for profit. To constitute a trade or business, the activities conducted by the resident ordinarily must include every operation which forms a part of, or a step in, a process by which an enterprise may earn income or profit. A resident of a Contracting State actively conducts a trade or business if it regularly performs active and substantial management and operational functions through its own officers or staff of employees. In this regard, one or more of such activities may be carried out by independent contractors under the direct control of the resident. However, in determining whether the corporation actively conducts a trade or business, the activities of independent contractors shall be disregarded.

b) A payment between related parties is to be treated as derived in connection with a trade or business only if the trade or business carried on in the first-mentioned Contracting State is substantial in relation to the activity carried on in the Contracting State that gives rise to the income in respect of which treaty benefits are being claimed. For these purposes, the recipient of income is related to the payor of the item of income if it owns, directly or indirectly, 10 percent or more of the shares (or other comparable rights) in the payor.

Whether a trade or business is substantial will be determined on the basis of all the facts and circumstances. Such determination will take into account the comparative sizes of the trades or businesses in each Contracting State (measured by reference to asset values, income and payroll expenses), the nature of the activities performed in each Contracting State, and, in cases where a trade or business is conducted in both Contracting States, the relative contributions made to that trade or business in each Contracting State. In making each determination or comparison, due regard will be given to the relative sizes of the U.S. and Swiss economies.

8.  With reference to paragraph 1 f) of Article 22 (Limitation on Benefits)

The parties agree that, in determining whether one or more persons who are not entitled to the benefits of the Convention under subparagraphs a), b), d), e) or g) of paragraph 1 of Article 22 are, in the aggregate, the ultimate beneficial owners of a predominant interest in such company, trust or estate, a Contracting State shall take into account, in addition to equity interests that such persons may hold in the company, trust or estate, other contractual interests that the person or persons may have in the company, trust or estate and the extent to which such person or persons receive, or have the right to receive, directly or indirectly, payments from that company, estate or trust (including payments for interest or royalties, but not payments at arm's length for the purchase or use of or the right to use tangible property in the ordinary course of business or remuneration at arm's length for services) that reduce the amount of the taxable income of the company, trust or estate, in order to deny benefits to a person that would otherwise qualify for benefits under subparagraph 1 f).

9.  With reference to Article 24 (Non-Discrimination)

Nothing in this Article shall prevent the United States from applying I.R.C. section 367(e) (1) or (e) (2) or section 1446.

10.  With reference to Article 26 (Exchange of Information)

The parties agree that the term "tax fraud" means fraudulent conduct that causes or is intended to cause an illegal and substantial reduction in the amount of the tax paid to a Contracting State.

Fraudulent conduct is assumed in situations when a taxpayer uses, or has the intention to use, a forged or falsified document such as a double set of books, a false invoice, an incorrect balance sheet or profit and loss statement, or a fictitious order or, in general, a false piece of documentary evidence, and in situations where the taxpayer uses, or has the intention to use a scheme of lies ("Lügengebäude") to deceive the tax authority. It is understood that the acts described in the preceding sentence are by way of illustration, not by way of limitation. The term "tax fraud" may in addition include acts that, at the time of the request, constitute fraudulent conduct with respect to which the requested Contracting State may obtain information under its laws or practices.

It is understood that, in determining whether tax fraud exists in a case involving the active conduct of a profession or business (including a profession or business conducted through a sole proprietorship, partnership or similar enterprise), the requested State shall assume that the record-keeping requirements applicable under the laws of the requesting State are the record-keeping requirements of the requested State.

DONE at Washington, in duplicate, in the English and German languages, the two texts having equal authenticity, this 2nd day of October, 1996.

FOR THE UNITED STATES                    FOR THE SWISS
OF AMERICA:                              CONFEDERATION:
    (s) Lawrence H. Summers                  (s) Kasper Villiger