IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Pauline Stonehill,                )
Co-executor and Co-special        )
administrator of the Estate       )
of Harry S. Stonehill,            )
                                  )
        Plaintiff                 )
                                  )
    v.                            )    No. 1:06-cv-00599 JDB
                                  )
Internal Revenue Service,         )
                                  )
        Defendant.                )
_____  )

**DECLARATION OF SCOTT A. KOCH**
**INFORMATION AND PRIVACY COORDINATOR**
**CENTRAL INTELLIGENCE AGENCY**

I, SCOTT A. KOCH, hereby declare and say:

1.  I am the Chief, Public Information Programs

Division (PIPD), Information Management Services (IMS),

within the Information Services Center, Directorate of

Support, Central Intelligence Agency (CIA).  I serve as the

CIA Information and Privacy Coordinator (Coordinator).  I

have held these positions since 9 August 2004.  I make this

declaration in support of CIA's motion for extension of

time filed in the above-captioned matter.

2.  I have served with the United States Government

for approximately sixteen years and, in addition to my

current positions, have held other supervisory positions

with the CIA in the fields of records management and information review and release.

3.  In my capacities of Chief of PIPD/IMS and Coordinator, I am responsible for managing the Freedom of Information Act (FOIA), Privacy Act (PA), and Executive Order 12958[1] Mandatory Declassification Review programs in the CIA.  These responsibilities include directing searches of CIA records systems pursuant to public requests for records under these programs, and coordinating the reviews of any records retrieved in such searches.  These review processes include undertaking any intra-agency or inter-agency coordination and referrals necessary in light of the information found in responsive records.[2]

4.  As part of my official duties, I ensure that the CIA administratively processes FOIA and PA requests, including the search, retrieval, analysis, review, redaction, and release of documents, in accordance with the

---

[1] Executive Order 12958 was amended by Executive Order 13292, effective March 25, 2003.  See Exec. Order No. 13292, 68 Fed. Reg. 15315 (Mar. 28, 2003).  All citations to Exec. Order No. 12958 are to the Order as amended by Exec. Order No. 13292.  See Exec. Order No. 12958, 3 C.F.R. 333 (1996), *reprinted as amended in* 50 U.S.C.A. § 435 note at 180 (West Supp. 2006).

[2] A "coordination" occurs when a CIA-originated document contains information from another agency, and the CIA contacts that agency to obtain guidance on whether to release or withhold that agency's information.  A "referral" occurs when CIA possesses a document that originated with another agency.  In such a case, CIA transmits the document to the originating agency for a direct response to the FOIA or Privacy Act requestor.

applicable laws and regulations and as efficiently as possible with the personnel and resources available.

5.  Through the exercise of my official duties, I am familiar with plaintiff's request for information that is the subject of this civil action.  I make the following statements based upon my personal knowledge and the information made available to me in my official capacity.

6.  The purpose of this declaration is to provide a description of the CIA's process for responding to FOIA and PA requests and to explain the CIA's need for a reasonable delay to complete processing of plaintiff's request.  I will include in my explanation the additional administrative burdens imposed by the nature of both the records systems involved and the information at issue, the necessity of referring records to various CIA components as well as to other agencies to ensure that no classified information, intelligence sources and methods, or otherwise exempt information is inadvertently disclosed, and the status of plaintiff's request vis-à-vis other pending FOIA requests.  The declaration of Nancy J. Ward dated 16 March 2007 is incorporated herein by reference.

## PLAINTIFF'S FOIA REQUEST

7.  On 10 July 1998, Plaintiff filed FOIA Request No. 99-12084 with the Internal Revenue Service (IRS) seeking

3

"all records, files, hearing transcripts, notes or
memoranda of meetings or telephone conversations, and other
data in your possession, custody, or control pertaining to
Robert P. Brooks [and] Harry S. Stonehill[.]"

8.  On 15 March 2001, Plaintiff filed a renewed
request with the IRS for documents responsive to Request
No. 99-12084.

9.  On 18 May 2001, the IRS located eight boxes of
documents responsive to Request No. 99-12084.  On 28
September 2001, the IRS located eighty-six additional boxes
of documents responsive to Request No. 99-12084.  The IRS
documents containing CIA-originated information were
contained within these ninety-four boxes.

10.  As stated in the Ward declaration dated 16 March
2007, on 10 October 2002, the IRS sent to the CIA for
coordination one 21-page IRS document.  Ward declaration
¶ 22.  On 22 January 2003, CIA responded to the IRS and
stated that the CIA information in that document could be
released in part with deletions made on the basis of FOIA
exemptions (b)(1) and (b)(3), and PA exemptions (d)(5),
(j)(1), and (k)(1).  As stated in the Ward declaration at
¶ 22, on or about 30 January 2007, the IRS informed CIA
that it had more than 500 pages of documents responsive to
the request that required CIA coordination.

## CIA RECORDS SYSTEMS

11.  Any intelligence or security agency continually faces the risk that there may be a spy within its ranks or that it may be subject to hostile penetration.  Paragraphs 7-10 of the Ward declaration describe the decentralization and compartmentalization of the Agency's records system as counter-intelligence and security precautions to minimize the potential damage to national security that could result from a spy in the Agency's midst.

12.  While the counterintelligence advantages of decentralization and compartmentalization are obvious, one disadvantage is equally obvious:  inherent inefficiencies created in the records search and retrieval processes. These inefficiencies affect not only the day-to-day activities of CIA employees trying to perform their mission, but also the process of responding to FOIA and PA requests.

## PROCESSING OF FOIA/PRIVACY ACT REQUESTS

13.  The Ward declaration describes the Agency's procedures for processing FOIA and PA requests at ¶¶ 11-21.  The CIA makes every attempt to promptly and expeditiously respond to any request but the volume of information review demands as well as the nature of the information involved necessarily results in unavoidable

delays in processing.  In responding to FOIA requests, the
overwhelming majority of the CIA redactions are based on
FOIA Exemptions (b)(1) and (b)(3).  By definition, an error
on the part of the CIA that leads to the disclosure of such
exempt information would reveal information about
intelligence collection, sources, methods, or capabilities
and thereby could reasonably be expected to damage this
country's national security.  Accordingly, the utmost care
must be given to ensuring proper and thorough review of
responsive documents before they are released to a FOIA
requester.

### FACTORS AFFECTING CIA'S FOIA BACKLOG

14.  During the past ten years, the CIA has
undertaken and continues to undertake numerous initiatives
to reorganize its information review infrastructure,
implement technological improvements, and recruit, develop
and retain skilled personnel to perform information review
duties.  All of these initiatives have been aimed in part
at reducing the Agency's backlog of pending FOIA requests.[3]
Indeed, as detailed below, these efforts have met with
significant success.  From Fiscal Year (FY) 1999 to

---

[3] As noted in the plan and report submitted in mid-2006 by the CIA to
the Attorney General and the Director of the Office of Management and
Budget in response to Executive Order 13392, the CIA indicated that
"many of the requirements put forward in E.O. 13392 are already
reflected in current CIA procedures" and noted that CIA "has reduced
its FOIA backlog for eight consecutive years."

FY 2006, the CIA reduced its FOIA backlog on average about 15 percent annually.

15.   Because of such efforts, the CIA has been able to steadily and significantly reduce, though not entirely eliminate, its FOIA and PA backlog.  The reasons for this continued backlog are twofold:  (1) there has been a steady increase over the years in the number of information release demands being made on the CIA[4]; and (2) the process of responding to FOIA and other declassification review requests in a manner which avoids inadvertent disclosure of classified information is necessarily time-consuming.

16.   The CIA's regulations provide for the processing of FOIA and PA requests on a first-in, first-out basis.  32 C.F.R. § 1900.34.  As noted in the Ward declaration at ¶ 19, when the CIA receives a FOIA or PA request, it assigns it a reference number and places the request in a queue.[5]  The CIA assigns a reference number to a request immediately upon receipt, even before the request is reviewed and formally accepted.  Using this reference number, PIPD can then track the request from its arrival in IMS throughout CIA's processing.  The CIA uses two tracks

---

[4] For example, the CIA received an average of 693 mandatory declassification review requests per year from members of the public during FY 2001-2005.  In FY 2006, the CIA received 959 such requests.
[5] Privacy Act requests are included in FOIA queues and reports, because the Privacy Act requests are searched under both statutes.  *See* 32 C.F.R. § 1901.21.

for processing requests. The first or complex track, contains the majority of requests and involves all requests that have to be tasked to one or more CIA directorates for search and review. The second track contains those requests that concern previously requested information or information previously reviewed, declassified and released, or that seek information the existence of which would be a classified fact, if indeed such information existed.

17. The demands on the CIA's information review resources, as well as the careful procedures followed for responding to FOIA requests, are summarized below for the purpose of illustrating to the Court why the CIA requires additional time to complete processing of plaintiff's request.

18. Despite the CIA's diligence and strenuous efforts to comply with the time limits imposed by the Court for responding to a request, the volume of information review demands as well as the nature of the information involved necessarily results in unavoidable delays in processing in many cases. As previously noted in the Ward declaration at ¶ 20, our review of documents takes longer than would be the case with non-intelligence information because the CIA must carefully scrutinize each responsive document to ensure that it does not reveal intelligence

sources or methods.  This requires close coordination with or reliance on experts from various components in CIA who possess the substantive expertise to determine what can be released.  In addition, because many documents contain information from other agencies, careful external, as well as internal, coordination is essential, as in this case.

19.  The Ward declaration also describes why processing individual requests is very time consuming at ¶¶ 15-17.  The CIA's records systems, like the CIA itself, are diverse, decentralized, and compartmented.  They are designed and managed by the components whose activities the records systems are designed to service.  Within each component, the search for and review of any responsive records is performed by only those personnel with knowledge of, and authorized access to, the information at issue. The records systems have been decentralized and compartmented purposefully to limit personnel access and to enhance their physical security, thus reducing the chance of successful penetration by hostile intelligence services.

20.  When a request or coordination is received, FOIA and PA analysts in PIPD review it to identify the CIA components most likely to have responsive documents. Consequently, regardless of where or in which records systems responsive documents are found, all records must be

referred for review to the originating CIA component.  The
principal reason for this practice is to prevent the
unauthorized disclosure of classified or otherwise exempt
information.  The originating component is uniquely
knowledgeable about the kind of disclosures that could, for
example, jeopardize specific intelligence sources or
methods or foreign liaison relationship, and is therefore
best qualified to determine what damage, if any, reasonably
could be expected to result from an unauthorized release of
the information.  For similar reasons, and as required by
Section 3.6(b) of Exec. Order 12958, as amended, the CIA
will refer documents originating with other government
agencies, or containing another agency's information, to
those agencies for review.  In this case, the IRS referred
to the CIA 500 pages of IRS documents with CIA-originated
information.  These factors add to the time needed to
complete the review of information responsive to FOIA
requests.

    21.  As previously noted, once a responsive document
has been located, a careful line-by-line and word-by-word
examination of the document must be performed by
experienced information review officers to ensure that
classified information and other exempt categories of data
are protected, while at the same time permitting requesters

to receive all records or non-exempt, reasonably segregable portions thereof to which they are entitled by law. The intelligence field is one in which disclosure of a discrete piece of information by itself may be innocuous, but its release in conjunction with other, seemingly harmless bits of information may result in the disclosure of an intelligence secret. Accordingly, it is often necessary to analyze considerable material beyond the particular documents responsive to the FOIA Request.

22. The processing of FOIA and PA requests is also impacted by another category of requests received from members of the public: mandatory declassification and review (MDR) requests. Every year the Agency receives several hundred such requests. For example, during FY 2001, 2002, 2003, 2004, and 2005, the CIA received an average of 693 MDR requests per year. During FY 2006, however, the number of MDR requests rose significantly. In FY 2006, the CIA received 959 MDR requests, a 38 percent increase over the average number received annually during the preceding five years.

23. Delays in the CIA's processing of FOIA and PA requests can also occur as a result of unanticipated demands placed on the CIA's information and release system by non-FOIA matters. For example, the CIA's information

review and release staffs are frequently called upon to
work on ad hoc non-FOIA information requests, such as to
conduct searches for and review of CIA records in
connection with numerous criminal, civil, and Congressional
investigations and inquiries, which vary widely in scope
and urgency.  Recent examples include responding to records
requests from the National Commission on Terrorist Attacks
Upon the United States (colloquially known as the "9-11
Commission") and the President's Commission on the
Intelligence Capabilities of the United States Regarding
Weapons of Mass Destruction (WMD) as well as reviewing
information in response to the inevitable follow-on
requests for declassification of their reports and the
underlying documentation, which often continue long after a
commission may have completed work.

    24.  In addition to supporting such ad hoc requests,
information review and release officers also support
various civil and criminal investigations and prosecutions.
For example, information review personnel are engaged in
reviewing records as part of ongoing efforts to prosecute
individuals supporting international terrorism, including
those designated with providing material support to
international terrorism and enemy combatants.  In a
recently "concluded" trial, hundred, if not thousands, of

hours were expended reviewing a variety of CIA's most sensitive intelligence products and briefings. Frequently, such cases are followed by requests to review transcripts of closed hearings, pleadings and associated filings for declassification and public release. It is generally impossible to predict such requests in advance and, as a result, they place an additional burden on information review resources.

25. Another development significantly impacting the Agency's ability to process FOIA requests are competing legal mandates, i.e., other statutes that direct that records on specific topics or issues be reviewed for declassification and release. The most notable is the President John F. Kennedy Assassination Records Collection Act of 1992 (JFK Records Act).[6] Notwithstanding that the independent Assassination Records Review Board ceased operations on 30 September 1998, there are continuing commitments to review or re-review certain records. For example, in July 2003, CIA re-reviewed and reprocessed the JFK Sequestered Collection, which concerns the House Select Committee on Assassinations records, and in 2004, the administrative files for the JFK declassification project (1992-2000), consisting of 7,250 pages, were transferred to

---

[6] Pub. L. 102-526, 106 Stat. 3443, reprinted at 44 U.S.C. § 2107 note.

NARA, bringing the total transferred under the JFK Act by the CIA to approximately 364,000 pages.

26.    Another statutory mandate is the Nazi War Crimes Disclosure Act (NWCDA), which mandates that the CIA search for and review for release various records on alleged Nazi war criminals.[7]  The Agency has released to NARA pursuant to the NWCDA nearly 44,000 pages of CIA material and 1.2 million pages from the Office of Strategic Services, CIA's predecessor.  Agency personnel also reviewed over 30,000 pages originated by other agencies in connection with this effort.  Originally set to disband in 2005, the Nazi War Crimes and Japanese Imperial Government Records Interagency Working Group, was extended until 2007.  As with many of the independent and Congressional commissions, Agency obligations to re-review (frequently multiple re-reviews) records for declassification and release extend far beyond the life of the respective group or board.

27.  Not surprisingly, however, among the more significant developments impacting FOIA and other information release programs in the last five and a half years have been the events of 9-11 and their aftermath, i.e., the continuing war on terrorism.  One need only to

---

[7]  Pub. L. No. 105-246, 112 Stat. 1859, reprinted at 5 U.S.C. § 552 note (2003).

read the newspaper or listen to the evening news to be
aware of some of the increased demands on information
review and release resources and the sensitive information
issues that have arisen, including the declassification
review and release of National Intelligence Estimates.
Foremost among these are requests generated by the Senate
Select Committee on Intelligence and House Permanent Select
Committee on Intelligence Joint Inquiry Into the Terrorist
Attacks of September 11, 2001 (Joint Inquiry) and the 9-11
Commission.  Most recently, in February 2007, the Archivist
of the United States requested that records of the 9-11
Commission be reviewed for declassification and release.

## CIA'S EFFORTS TO IMPROVE ITS FOIA PROCESSING

28.   The CIA has made significant efforts to improve
its processing under the FOIA and other information
statutes through continuous process improvements,
technological advances, and various reorganizations.
Through these efforts, the CIA was able to substantially
reduce its FOIA and PA backlog during each of the last nine
years.

29.   As mandated by the Electronic FOIA Amendments of
1996, CIA established a web site on the Internet located at
www.foia.ucia.gov.  This site provides electronic access to
frequently requested documents and educates the public

about its rights under the various access laws. As a result of increased availability of information on the Internet web site, including popular collections released under a number of information release efforts, the number of FOIA requests received can be expected to decline over time. Consequently, CIA has increasingly focused on populating its FOIA web site as expeditiously as possible. Although the CIA was approximately two years behind in posting documents at the beginning of FY 2006; by the end of FY 2006, we were essentially current. (It takes approximately one month to identify and consolidate released documents, perform the requisite security reviews, and transfer this information to the site contractor to upload.)

30.  The CIA's wide-ranging initiatives have enabled the Agency to significantly reduce its FOIA and PA backlog during each of the last nine years. Since the conclusion of FY 1997 when the backlog stood at 4,867 cases, CIA has steadily reduced its backlog to the point that at the conclusion of FY 2006, it had been reduced by over 80 percent to 896 cases. *See* Exhibit A.

31.  In 2001, the General Accountability Office (GAO)

prepared the first in a series of reports on the
implementation of the 1996 amendments to FOIA.[8]  In its 2002
and 2004 reports, the GAO noted that the CIA was "the only
agency with a processing rate over 100 percent in each year
for fiscal years 1998, 1999, 2000, and 2001" and "the only
agency that over the past 3 years [2000, 2001, and 2002]
has consistently decreased the number of requests in its
backlog of pending requests."[9]

    32.  Most recently, in February 2007, the GAO's
Director of Information Management Issues testified that
the CIA was one of only two agencies during FY 2003-2005
that had "processing rates above 100 percent in all three
years, meaning that each made continued progress in
reducing their number of pending cases."[10]  *See* Exhibit B.
In fact, the CIA has demonstrated steady progress, reducing
its backlog each of the last nine years.

    33.  Moreover, the CIA has sought to reduce its FOIA

---

[8] In this and subsequent reports, the GAO examined the FOIA processing
operations of "the 24 major agencies covered by the Chief Financial
Officers Act, as well as the Central Intelligence Agency", which
together handle approximately 97 percent of FOIA requests government-
wide. U.S. Gen. Accounting Office, *Information Management: Progress in
Implementing the 1996 Electronic Freedom of Information Act Amendments*,
GAO-01-378 (Washington, D.C.: Mar. 16, 2001).
[9] U.S. Gen. Accounting Office, *Information Management: Update on
Implementation of the 1996 Electronic Freedom of Information Act
Amendments,* 36 (August 2002) and *Information Management: Update on
Freedom of Information Act Implementation Status,* 35 (February 2004).
[10] U.S. Gen. Accountability Office, *FOIA: Processing Trends Show
Importance of Improvement Plans,* 30 (February 14, 2007). (The final GAO
report has not yet been issued.)

backlog by reducing not only the number of cases pending, but the time it takes to process these cases as well.  The CIA has steadily reduced the median numbers of days that cases in the backlog at the end of each fiscal year have been pending.  Of the 1866 cases in the backlog at the end of FY 2001, the median number of days pending was 605 for FOIA requests and 215 for Privacy requests.[11]  At the end of FY 2004, the median number of days pending for the 1150 cases in the backlog had been reduced to 349 days for FOIA requests and 127 days for Privacy requests. At the end of FY 2006, the median days of pendency for the 896 FOIA/PA cases carried over into FY 2007 was 234 and 74 days, respectively.

### CIA'S ESTIMATED TIME FOR COMPLETION OF PLAINTIFF'S FOIA REQUEST

    34.  The CIA has treated plaintiff's FOIA request as having been accepted on the date on which the IRS' request for coordination was received by the CIA.  At that time, the Agency had over 960 FOIA requests in various stages of processing; of these, approximately 700 currently remain ahead of plaintiff's request in the complex queue.

    35.  The CIA is making all reasonable efforts to

---

[11] As noted earlier, all Privacy Act requests are processed under FOIA as well as the Privacy Act (n.7).

comply with the Court's and FOIA's requirements and deadlines. Regrettably, compliance with these deadlines is not always possible. The most equitable way to reduce the cases on hand and ensure that each request receives the attention it deserves is to process these requests pursuant to the first in/first out system described in paragraph 30 above. Based upon the request, the manner and level of the records search, the nature of potentially responsive documents, and the careful, multi-step review the CIA must conduct to prevent the inadvertent release of classified national security or other exempt information, and relative placement in the processing queue, my best estimate is that CIA will be able to complete processing this request by 16 April 2007.

36. For the above reasons, the CIA submits this declaration in support of defendant's motion for extension of time to allow the CIA to process plaintiff's request in accordance with applicable law and regulations and in an orderly, fair manner.

* * * *

I declare under penalty of perjury that the foregoing

is true and correct.

Executed this 20ᵗʰ day of March, 2007.

Scott A. Koch
**Information & Privacy Coordinator**
**Central Intelligence Agency**