FD-302 (Rev. 1-25-60)

FEDERAL BUREAU OF INVESTIGATION

Date _5/9/62_

Mr. JOHN E. JORDAN, Loan Officer, Export-Import Bank of Washington, on May 4, 1962, stated the payments on Credit Line 777-A-16 were made by the Export-Import Bank of Washington in accordance with the terms and conditions of the banks loan agreement with the Central Bank of the Phillipines dated December 10, 1956, Article III; that the payments on Credit Line 1022-B-16 were made by the Export-Import Bank of Washington in accordance with the terms and conditions of the banks loan agreement with the Central Bank of the Phillipines dated June 29, 1960, Article III.

Mr. JORDAN stated he would have no knowledge as to how Schmid and Company sent the documents in the above two Credit Lines to the Central Bank of the Phillipines; that the documents in possession of the Export-Import Bank of Washington were sent to the latter bank by the Central Bank of the Phillipines.

BOX 7-10636

On _5/4/62_ at _Washington, D. C._    File # _WFO 46-7400_

by _SA_ [                    ] jod    Date dictated _5/8/62_    b6 -1
b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

- 9 -    STONEHILL-22

WFO 46-7400

    56.  Agreement entered into on December 10, 1956, by and between the Central Bank of the Philippines (hereinafter referred to as the "Central Bank") and Export-Import Bank of Washington (hereinafter referred to as "Eximbank") an agency of the United States of America, signed Central Bank of the Philippines by M. CUADERNO, Governor, Export-Import Bank of Washington by LYNN U. STAMBAUGH, First Vice President, and Article III therein is herewith quoted:

<div align="center">"Article III</div>

<div align="center">"Advances under the Credit</div>

    "Upon request of the Central Bank, advances under the credit shall be made from time to time to reimburse the Central Bank for United States dollar exchange made available by it for the acquisition in the United States and the transportation to the Philippines of machinery, equipment, construction materials and services constituting one or more Approved Transactions.  Each such request shall be accompanied by a separate statement with respect to each Approved Transaction in connection with which reimbursement is desired and each such statement shall certify the following with respect to the Approved Transaction referred to therein:

       "(a)  An itemized list of the machinery, equipment, construction materials and services acquired in the United States.

       "(b)  That such machinery, equipment and construction materials have been exported from the United States and are destined to or have been received by the Philippine enterprise.

       "(c)  That all such machinery, equipment and construction materials which have been exported from the United States by ocean vessel have been transported from the United States in vessels of United States registry, as required by Public Resolution No. 17 of the 73rd Congress of the United States, except to the extent that a waiver of such requirement has been obtained as provided in said Public Resolution.

BOX 7-10637

STONEHILL-23

WFO 46-7400

"(d)  The amount of United States dollar exchange made available by the Central Bank to assist in the acquisition of such materials, equipment, supplies and services and the transportation thereof to the Philippines.

"Upon receipt by Eximbank of each such request and accompanying statement or statements in form and substance satisfactory to it, Eximbank shall deposit the amount requested by the Central Bank, but not exceeding the total of the amounts of United States dollar exchange certified as aforesaid, to the account of the Central Bank in a commercial bank or other financial institution in the United States designated by the Central Bank and shall record the amount so deposited as an advance against the promissory note of the Central Bank described in Article IV."

57.  Amendatory Agreement (to agreement dated December 10, 1956) entered into this eighteenth day of July, 1958, by and between the Central Bank of the Philippines (hereinafter referred to as the "Central Bank") and Export-Import Bank of Washington (hereinafter referred to as "Eximbank"), an agency of the United States of America signed Central Bank of the Philippines by M. CUADERNO, Governor, Export-Import Bank of Washington by LYNN U. STAMBAUGH, First Vice President, and Article III therein is herewith quoted:

"Article III

"Except as modified herein all terms and conditions of the Agreement shall remain in full force and effect.

"IN WITNESS WHEREOF, the parties hereto have caused this amendatory agreement to be duly executed in duplicate at Washington, D. C., as of the date first mentioned above.

BOX 7-10638

"CENTRAL BANK OF THE PHILIPPINES

"s/ By _M. CUADERNO_ Governor

"EXPORT-IMPORT BANK OF WASHINGTO

"s/ By _LYNN U. STAMBAUGH_
               First Vice Presid

"Attest:

"s/ SIDNEY SHERWOOD
         Secretary

- 11 -

STONEHILL-24

WFO 46-7400

    58.  Agreement entered into this eighteenth day of
March, 1959, by and between the Central Bank of the Philippines
(hereinafter referred to as the "Central Bank") and Export-
Import Bank of Washington (hereinafter referred to as "Eximbank")
an agency of the United States of America signed Central Bank
of the Philippines by M. CUADERNO, SR., Governor and Export-
Import Bank of Washington by SAMUEL C. WAUGH, President and
Article III therein is herewith quoted:

<div align="center">"Article III</div>

<div align="center">"Advances under the Credit</div>

    "Upon request of the Central Bank, advances under
the credit shall be made from time to time to reimburse
the Central Bank for United States dollar exchange made
available by it for the acquisition in the United States
and the transportation to the Philippines of machinery,
equipment, construction materials and services con-
stituting one or more Approved Transactions.  Each such
request shall be accompanied by a separate statement with
respect to each Approved Transaction in connection with
which reimbursement is desired and each such statement
shall certify the following with respect to the Approved
Transaction referred to therein:

        "(a)  An itemized list of the machinery,
              equipment, construction materials
              and services acquired in the United
              States.

        "(b)  That such machinery, equipment and
              construction materials have been
              exported from the United States and
              are destined to or have been received
              by the Philippine enterprise.

        "(c)  That all such machinery, equipment
              and construction materials which have
              been exported from the United States
              by ocean vessel have been transported
              from the United States in vessels of
              United States registry, as required by
              Public Resolution No. 17 of the 73rd
              Congress of the United States, except
              to the extent that a waiver of such
              requirement has been obtained as pro-
              vided in said Public Resolution.

BOX 7- 10639

STONEHILL-25

- 12 -

WFO 46-7400

> "(d)  The amount of United States
> dollar exchange made available
> by the Central Bank to assist in
> the acquisition of such materials,
> equipment, supplies and services
> and the transportation thereof to
> the Philippines.

> "Upon receipt of Eximbank of each such request
> and accompanying statement or statements in form and sub-
> stance satisfactory to it, Eximbank shall deposit the
> amount requested by the Central Bank, but not exceeding
> the total of the amounts of United States dollar exchange
> certified as aforesaid, to the account of the Central
> Bank in a commercial bank or other financial institution
> in the United States designated by the Central Bank and
> shall record the amount so deposited as an advance against
> the promissory note of the Central Bank described in
> Article IV."

59.  Amendatory Agreement entered into this 29th day
of June, 1960, by and between the Central Bank of the Philippines
(hereinafter referred to as the "Central Bank") and Export-Import
Bank of Washington (hereinafter referred to as "Eximbank"), an
agency of the United States of America signed Central Bank of the
Philippines by M. CUADERNO, Governor, Export-Import Bank of
Washington by SAMUEL C. WAUGH, President and Article III therein
is herewith quoted:

> "Article III

> "Except as modified herein, all terms and
> conditions of the Agreement shall remain in full force
> and effect.

> "IN WITNESS WHEREOF, this agreement has been
> duly executed in duplicate by the CENTRAL BANK OF THE
> PHILIPPINES, at Manila, Republic of the Philippines, on
> the 15th day of June, 1960.

>                    "CENTRAL BANK OF THE PHILIPPINES

>                    "By S/ M. CUADERNO
>                           Governor   (Title)

> "Attest:

> "S/_____ (Illegible)
>         Secretary

BOX 7-10640

STONEHILL-26

WPO 46-7400

       "IN WITNESS WHEREOF, this agreement has
been duly executed in duplicate by EXPORT-IMPORT
BANK OF WASHINGTON, at Washington, District of
Columbia, United States of America, on the 29th day
of June, 1960.

            "EXPORT-IMPORT BANK OF WASHINGTON

            "By S/   SAMUEL C. WAUGH
                         President

"Attest:

   EDWARD S. CONGER
     Acting Secretary

BOX 7-10641

FD-302 (Rev. 1-25-60)          FEDERAL BUREAU OF INVESTIGATION

Date   5/9/62

      Mr. WALTER C. SAUER, Executive Vice President,
Export-Import Bank of Washington, on May 7, 1962, in answer
to the question as to whether the latter bank depended on
Suppliers Certificates Exhibit "D" furnished by Arthur W.
Schmid Company, Pittsburgh, Pennsylvania, for reimbursement
to the Central Bank of the Phillipines, stated that the Export-
Import Bank of Washington depended secondarily on Suppliers
Certificates, Exhibit "D" and that the latter bank depended
primarily on the Central Bank of the Phillipines for disbursements
to the Republic Glass Corporation of Manila.

---

BOX 7-10642

---

On  5/7/62      at   Washington, D. C.          File #   WFO 46-7400

.y   SA [                    ]ied                Date dictated   5/8/62          b6 -1
                                                                                 b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to
your agency; it and its contents are not to be distributed outside your agency.

STONEHILL-28

FD-302 (Rev. 1-25-60)

FEDERAL BUREAU OF INVESTIGATION

Date __5/18/62__

        Mr. JOHN E. JORDAN, Loan Officer, Export - Import
Bank of Washington, on May 15, 1962, when asked why the
balance $29,686.58 from Credit Lines 777-A-16 and 1022-B-16
was cancelled, stated that this amount was not utilized by
the Central Bank of the Philippines in submitting documenta-
tion for disbursement. Mr. JORDAN furnished the following
figures relative thereto:

| 777-A-16 | Original allocation to Central Bank of the Philippines | $1,314,676.00 |
| | Drawn down by Central Bank of the Philippines | 240,707.13 |
| | Balance cancelled and transferred to 1022-B-16 | 1,073,968.87 |
| | Drawn down by Central Bank of the Philippines | 1,044,282.29 |
| | Balance not utilized - - - - - - | $    29,686.58 |
| | Total disbursed to Central Bank of the Philippines by Export - Import Bank of Washington | $1,284,989.42 |

BOX 7-10643

On __5/15/62__ at __Washington, D. C.__ File # __WFO 46-7400__

by __SA__ [          ] :MAM _____ Date dictated __5/18/62__    b6 -1
                                                                   b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

STONEHILL-29

- 16* -

*I RS*
*(now personnel)*

FD-204 (Rev. 3-3-59)

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION

Copy to:  1-USA, SDNY
          1-USA, Washington, D.C.

Report of:
Date:  7/6/62

Office:  **PITTSBURGH**

b6 -1
b7C -1

Field Office File #:  46-2450

Bureau File #:  46-43464



Title:  REPUBLIC GLASS CORPORATION;
        HARRY S. STONEHILL

Character:  FRAUD AGAINST THE GOVERNMENT

Synopsis:
ARTHUR W. SCHMID CO., Pittsburgh, had contracts with Republic
Glass Corporation, Philippine Islands, to furnish machinery
and place in operation a glass plant in the Philippines.
Contract financed through Central Bank of Philippines who
in turn financed same through Import-Export Bank, Washington,
D.C.  Allegations were made to the effect SCHMID rebated
up to 50 percent of cost to HARRY S. STONEHILL (Organizer,
Director and President of Republic Glass Corporation) and
his associates.  SCHMID, in signed sworn statement, denies
giving any discounts, rebates or kickbacks to STONEHILL or
his associates, or to Republic Glass Corporation, its
affiliates or its agents.  Examination of books and records
of SCHMID Company failed to disclose any such rebates or
kickbacks.

BOX 7-10644

## RUC

ENCLOSURES TO BUREAU FOR TRANSMITTAL TO CRIMINAL DIVISION,
DEPARTMENT OF JUSTICE:

1) Signed sworn statement of ARTHUR W. SCHMID.

2) 47 sets of photostatic copies of invoices, sight
   drafts, affidavits to Import-Export Bank, shipping
   invoices, and Consular invoices for billings between
   10/8/58 and 8/6/59.

3) Proposal #2955-A dated 6/14/57 submitted to
   Republic Glass Corporation by ARTHUR W. SCHMID CO.

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to
your agency; it and its contents are not to be distributed outside your agency.

STONEHILL-30

PG 46-2450

4)   Qualifications pertaining to ARTHUR W. SCHMID CO.

5)   Agreement dated 12/10/56 between the Central Bank
of Philippines and Import-Export Bank of Washington, D.C.

6)   Agreement dated 7/18/58 between the Central Bank
of Philippines and Import-Export Bank of Washington, D.C.

7)   Agreement dated 3/18/59 between the Central Bank
of Philippines and Import-Export Bank of Washington, D.C.

8)   Agreement dated 6/29/60 between the Central Bank
of Philippines and Import-Export Bank of Washington, D.C.

-2-

BOX 7-10645
STONEHILL-31

PG 46-2450

DETAILS:

This investigation is based on information furnished to
the American Embassy, Manila, Philippines, by MENHART
SPIELMAN, former associate of HARRY S. STONEHILL, to
the effect that he received information, the sources
of which he cannot recall, that a glass manufacturer
from Philadelphia, Pa., named SCHMIDT (later ascertained
through investigation be Arthur W. Schmid Company,
Pittsburgh, Pa.) contracted to supervise and install
a glass plant in the Philippines which plant would be
known as Republic Glass Corporation; that this construction
was financed through the International Cooperation Admin-
istration; that HARRY S. STONEHILL was the principal
organizer of the Republic Glass Corporation and also was
a director and president of this corporation; and that
Schmid repaid over fifty percent on the cost of the
equipment to STONEHILL through an associate of STONEHILL's
known as IRA BLAUSTEIN, General Manager, Universal
Trading Corporation, Empire State Building, New York
City.

The Criminal Division of the Department of Justice
requested that ARTHUR SCHMID be contacted and inter-
viewed regarding this allegation; that examination of
his books and records should be made to see if any
rebates or kickbacks were made by SCHMID to STONEHILL
or his associates in regard to the work financed through
the Import-Export Bank.

-3-

BOX 7-10646
STONEHILL-32

FD-302 (Rev. 1-25-60)          FEDERAL BUREAU OF INVESTIGATION

Date _____ 7/5/62 _____


ARTHUR W. SCHMID, President, Arthur W. Schmid Company, 1414
Investment Building, Pittsburgh, was advised of the allega-
tion made against his company to the effect that they
possibly may have given discounts or rebates to HARRY S.
STONEHILL or Republic Glass Corporation in regard to the
contract SCHMID had with Republic Glass Corporation to
install a glass plant in the Philippine Islands. He was
advised that any rebate or kickback made in regard to the
part that was financed by Import-Export Bank may be a
Federal violation and anyone involved therein could be
prosecuted.

SCHMID was advised that he did not have to make a statement;
that any statement he would make could be used against him
in a court of law; and was also advised of his right to
an attorney.

SCHMID stated that in the early part of 1958, this
company contracted to construct a glass plant in the
Philippine Islands which was to be known as Republic
Glass Corporation; that one of the organizers and
principal officers of Republic Glass Corporation was
HARRY S. STONEHILL; that his company submitted a bid
of $1,314,676 to construct this plant which was broken
up as follows:

| | |
|---|---|
| Machinery, equipment and material | $1,107,176 |
| Supervision | 117,500 |
| Ocean freight | 90,000 |

He stated SCHMID received the contract and Republic
made arrangements to finance this contract at the
Central Bank of Philippines; that in turn, the Central
Bank of Philippines financed this contract through the
Import-Export Bank of Washington, D.C.

SCHMID stated that in accordance with this contract,
an irrevocable Letter of Credit in favor of Arthur W.
Schmid Company was established by Republic Glass Corporation

BOX 7-10647

On ___ 6/29/62 ___ at ___ Pittsburgh, Pa. ___ File # Pittsburgh 46-2450

by ___ SAA [ ] /cpg ___ Date dictated ___ 7/5/62 ___

-4-

b6 -1
b7C -1

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to
your agency; it and its contents are not to be distributed outside your agency.

STONEHILL-33

at the Chemical Corn Exchange Bank, New York City. This Letter of Credit was payable against invoices showing shipments made or services rendered.

SCHMID stated that he ascertained IRA BLAUSTEIN, Manager of Universal Trading Corporation, together with STONEHILL, attempted to negotiate through the Central Bank of Philippines to have the Letter of Credit to be drawn in favor of Universal Trading assignable to ARTHUR W. SCHMID. SCHMID stated to the best of his knowledge, this was never approved by the Central Bank of Philippines or the Import-Export Bank, and that neither he personally, nor any representative of his company, was ever contacted by BLAUSTEIN or any representative of Universal Trading Corporation. SCHMID stated that if the bank approved this procedure, he would not go through with his contract.

SCHMID advised that after the funds allotted to this contract by Import-Export Bank in the amount of $1,314,676 was exhausted, this company continued to ship machinery and equipment to Republic Glass Corporation to complete the contract and relied solely on the credit of Republic Glass Corporation to pay for this additional equipment and services. He stated that prior to the completion of this contract, the allocation for freight made by the Import-Export Bank in the amount of $90,000 was completely used up and as a result, Republic Glass Corporation owed SCHMID Company approximately $17,000 for freight which SCHMID Company had to pay.

SCHMID stated that Republic Glass Corporation later claimed to have many "offsets" against the contract and in order to collect the freight in the approximate amount of $17,000 and the additional machinery and material furnished, it was necessary for him to negotiate with Republic to make a settlement and stated a compromise was reached sometime in 1961 and that while Republic has made substantial payments in this regard, they are still paying off the balance in small payments. SCHMID stated his company has never given any discounts, rebates or kickbacks to Republic Glass Corporation or STONEHILL in regard to the construction of this plant and more particularly, in regard to the

FG 46-2450

shipments made that were financed by the Import-Export
Bank. He stated all values listed on these invoices
were true and correct and the only exceptions are when
the allocation for freight was exhausted, four shipments
were made where SCHMID had to pay the cost. All other
shipments made where SCHMID paid the cost of freight
were shown on the invoices.

SCHMID stated that he will furnish a signed sworn
statement in regard to the above information after
an examination of his books and records is completed.

SCHMID made available all the books and records of the
Arthur W. Schmid Company for any type examination desired.

-6-

BOX 7-10649
STONEHILL-35

FD-302 (Rev. 1-25-60)            FEDERAL BUREAU OF INVESTIGATION

Date _____ 7/5/62 _____


The records of the Arthur W. Schmid Company made available
by ARTHUR W. SCHMID consist of a general ledger, cash
receipts and disbursements journal, general journal,
subsidiary ledgers for accounts receivable and accounts
payable, job order register, cancelled checks and invoices.

Examination of the general ledger, general journal, cash
receipts and disbursements journal for the years 1958
through May, 1962, failed to disclose any type of payment
or account which would indicate Arthur W. Schmid Company
made a rebate, discount or kickback to STONEHILL or his
associates or to Republic Glass Corporation, its affiliates
or agents.

Examination of the general ledger shows the company has
$20,000 capital stock outstanding. The company's
surplus for 1958 was $34,796.53; for 1959 $53,539.95;
for 1960 $44,628.78; and for 1951 $45,211.58.

Set out below in schedule form is a summary of the shipments
made by Arthur W. Schmid Company under its contract with
Republic Glass Corporation which was financed by the
Import-Export Bank. This information was compiled from
invoices and other data furnished by the Import-Export Bank,
invoices furnished by Arthur W. Schmid Company, payments
made to Arthur W. Schmid Company taken from the cash
receipts journal and individual ledger account for Republic
Glass Corporation.

---

On _6/29-7/3/62_ at _Pittsburgh, Pa._ _____ File # _Pittsburgh 46-2450_     b6 -1

by _SAAS_ [                              ] _____ Date dictated _7/5/62_     b7C -1
                        cpg

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to
your agency; it and its contents are not to be distributed outside your agency.

BOX 7-10650

STONEHILL-36

PG 46-2450

### INFORMATION PER SHIPPING DOCUMENTS PER IMPORT-EXPORT BANK

| Date | Description | Invoice Number | Selling Price | Consular & Handling | Freight | Total | Date of Draft | Amount | Date Payments Recorded in Arthur W. Schmid Cash Receipts Book |
|---|---|---|---|---|---|---|---|---|---|
| **1958** | | | | | | | | | |
| Oct 8 | Services | 2653 | $2,500.00 | --- | --- | $2,500.00 | 11/13/58 | $ 625.00 | 11/19/58 |
| | | | | | | | 10/8/58 | 1,875.00 | 10/16/58 |
| 13 | Parts | 2654 | 162,167.00 | 121.22 | 18,425.63 | 180,713.85 | 10/16/58 | 135,535.29 | 10/20/58 |
| | | | | | | | | 45,178.46 | 1/7/59 |
| 27 | Machinery and Equipment | 2660 | 28,787.00 | 50.80 | 981.31 | 29,819.11 | 11/6/58 | 22,364.33 | 11/6/58 |
| | | | | | | | | 7,454.78 | 1/7/59 |
| Nov 4 | " " | 2664 | 94,800.00 | 94.48 | 12,182.10 | 107,076.55 | 11/6/58 | 80,307.41 | 11/12/58 |
| | | | | | | | | 26,769.14 | 1/7/59 |
| 18 | " " | 2677 | 12,780.00 | 41.97 | 2,423.80 | 15,245.77 | 11/20/58 | 11,434.33 | 11/24/58 |
| | | | | | | | | 3,811.44 | 1/7/59 |
| Dec 3 | " " | 2680 | 35,000.00 | 92.80 | 16,258.08 | 51,348.88 | 12/9/58 | 38,511.66 | 12/15/58 |
| | | | | | | | | 12,837.22 | 1/7/59 |
| **1959** | | | | | | | **1959** | | **1959** |
| Jan 27 | Machinery and Equipment | 2689 | 5,000.00 | 35.50 | 3,170.13 | 8,205.63 | Jan 29 | 8,205.63 | Feb 2 |
| Feb 5 | " " | 2693 | 43,766.00 | 85.58 | 860.25 | 44,711.83 | Feb 10 | 44,711.83 | 10 |
| 6 | " " | 2694 | 22,366.00 | 39.33 | 5,373.58 | 27,778.91 | 18 | 27,778.91 | 20 |
| 6 | " " | 2695 | 8,000.00 | 45.87 | 1,109.54 | 9,155.41 | 10 | 9,155.41 | 10 |
| Mar 4 | " " | 2698 | 2,307.00 | 23.50 | 56.00 | 2,386.50 | Mar 9 | 2,386.50 | Mar 13 |
| 4 | " " | 2699 | 16,680.00 | 30.00 | 207.03 | 16,917.03 | 10 | 16,917.03 | 16 |
| 4 | " " | 2701 | 24,400.00 | --- | --- | 24,400.00 | 4 | 24,400.00 | 11 |
| 12 | " " | 2699 | 7,190.00 | 32.24 | 1,065.14 | 8,287.38 | 16 | 8,287.38 | 23 |
| 26 | " " | ? | 11,500.00 | 38.15 | 1,215.26 | 12,753.41 | Apr 2 | 12,753.41 | Apr 9 |
| Apr 2 | " " | 97278 | 5,500.00 | 33.00 | 1,631.28 | 7,164.25 | 9 | 7,164.25) | 17 |
| 3 | " " | 2727 | 4,200.00 | 33.00 | 1,613.83 | 5,846.83 | 13 | 5,846.83) | 17 |
| 11 | " " | 2732 | 24,480.00 | 33.00 | 1,994.45 | 26,507.45 | 17 | 26,507.45 | 23 |
| 13 | " " | ? | 4,500.00 | 47.50 | 1,494.90 | 6,042.40 | 22 | 6,042.40 | 27 |
| 16 | Fee for Trip to Manila | 2719 | 2,500.00 | --- | --- | 2,500.00 | 16 | 2,500.00) | 22 |
| 16 | Technical Services and Fees | 2720 | 30,000.00 | --- | --- | 30,000.00 | 16 | 30,000.00) | 22 |
| | Machinery and Equipment | ? | 34,990.00 | 46.50 | 3,131.90 | 38,168.40 | May 5 | 38,168.40 | May 13 |

-8-

BOX 7-10651
STONEHILL-37

PG 46-2450

**INFORMATION PER SHIPPING DOCUMENTS PER IMPORT-EXPORT BANK**

| Date | Description | Invoice Number | Selling Price | Consular & Handling | Freight | Total | Date of Draft | Amount | Date Payments Recorded in Arthur W. Schmid Cash Receipts Book |
|---|---|---|---|---|---|---|---|---|---|
| May 5 | Machinery and Equipment | ? | 10,730.00 | 34.00 | 800.47 | 11,564.47 | May 11 | 11,564.47) | May 18 |
| 11 | " " | 2743 | 19,756.00 | 34.00 | 84.63 | 19,874.63 | 13 | 19,874.63) | 18 |
| 18 | " " | 2746 | 8,500.00 | 34.00 | 1,780.88 | 10,314.88 | 26 | 10,314.88 | June 1 |
| 25 | " " | 98225 | 4,997.00 | 48.70 | 838.11 | 5,383.81 | June 2 | 5,383.81 | 8 |
| 27 | " " | 98606 | 18,093.00 | 50.50 | 365.65 | 18,509.15 | 2 | 18,509.15 | 4 |
| 28 | Technical Services and Fees | 2751 | 30,000.00 | --- | --- | 30,000.00 | May 28 | 30,000.00 | 4 |
| 28 | Machinery and Equipment | 98860 | 5,883.00 | 44.00 | 126.00 | 6,053.00 | June 5 | 6,053.00 | 12 |
| 28 | " " | 98863 | 61,225.00 | 35.50 | 4,288.56 | 65,579.06 | 5 | 65,579.06 | 15 |
| June 2 | " " | 98904 | 5,000.00 | 44.00 | 1,037.03 | 6,081.03 | 5 | 6,081.03 | 12 |
| 5 | " " | 98852 | 800.00 | 34.00 | 147.00 | 981.00 | 12 | 981.00) | 18 |
| 5 | " " | 98862 | 23,050.00 | 49.00 | 553.92 | 23,652.92 | 12 | 23,652.92) | 18 |
| 19 | " " | 99340 | 51,181.00 | 109.00 | 1,448.15 | 52,738.15 | 30 (() | 52,738.15 | July 6 |
| 25 | " " | 99560 | 36,200.00 | 62.80 | 2,006.56 | 38,269.36 | July 5 | 38,269.36 | 13 |
| 26 | " " | 99412 | 53,358.00 | 69.00 | 3,708.97 | 57,135.97 | 15 | 57,135.97 | 24 |
| 30 | " " | 99557 | 11,852.00 | 34.00 | --- | 11,886.00 | 20 | 11,886.00 | 24 |
| ? | " " | ? | 56,542.00 | 104.00 | 5,042.70 | 61,158.70 | 15(2) | 56,646.00 | 28 |
| July 1 | " " | 99766 | 3,000.00 | 34.00 | --- | 3,034.00 | 26 | 3,034.00 | 27 |
| 2 | " " | 99408 | 140,290.00 | 38.37 | --- | 140,328.37 | 20 | 140,328.37 | 24 |
| 2 | " " | 99788 | 30,032.00 | 34.00 | 1,002.42 | 31,068.42 | 15(3) | 30,066.00 | 28 |
| 6 | " " | 99663 | 7,593.00 | 55.53 | --- | 7,648.53 | 20 | 7,648.33 | 24 |
| 8 | " " | 99826 | 7,715.00 | 54.00 | --- | 7,774.00 | 20 | 7,774.00 | 24 |
| 10 | " " | 99852 | 3,000.00 | 34.00 | --- | 3,034.00 | 23 | 3,034.00 | 24 |
| 18 | " " | 99974 | 13,304.00 | 61.50 | --- | 13,365.50 | 27 | 13,365.50 | 29 |
| ? | " " | 99953 | 4,010.00 | 34.00 | 105.28 | 4,149.28 | 26(4) | 4,044.00 | 28 |
| Aug 1 | " " | 10194 | 3,046.00 | --- | --- | 3,046.00 | Aug 14 | 3,046.00 | Aug 18 |
| 6 | " " | 10619 | 450.00 | --- | --- | 450.00 | 18 | 450.00 | 21 |
| | Totals per Import-Export Bank | | 1,193,050.00 | 2,061.31 | 95,998.51 | 1,291,169.82 | | 1,284,989.42 | |

-9-

BOX 7-10652    STONEHILL-38

PG 46-2450

Additional Shipments Per Arthur W. Schmid Records

| 1959 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Aug 21 | Machinery and Equipment | 10624 | 1,000.00 | | 86.39 | 1,086.39 | 1,086.39 | Sept. 14 |
| 26 | "    " | 10778 | 500.19 | | 78.40 | 578.59 | (9    500.19 | 14 |
| Sept 23 | Technical Services & Fees | 2769 | 2,500.00 | | --- | 2,500.00 | 2,500.00 | Oct.   1 |
| 23 | "    " | 2771 | 25,600.00 | | --- | 25,600.00 | 25,600.00 | 1 |
| | | | $1,222,650.19 | $2,061.31 | $96,163.30 | $1,321,174.80 | $1,314,676.00 | |

Summary of payments financed by Import-Export Bank

| | |
|---|---|
| Machinery, materials and equipment | 1,105,150.19 |
| Technical Assistance and Supervision | 117,500.00 |
| | 1,222,650.19 |
| Consular handling | 2,061.31 |
| Ocean freight | 96,163.30 |

Less unpaid freight
Invoice

| #99670(?) | 5,012.70 | |
|---|---|---|
| 99788 | 1,002.42 | |
| 99953 | 105.28 | |
| 10778 | 78.40 | 6,198.80 |
| | | 89,964.50 |

Total received by Schmid from
Import-Export Bank          $1,314,676.00

(1) The Accounts Receivable Ledger card for Republic Glass Corporation shows that Arthur W. Schmid Co. received $48,722.81 for Invoice #99346 dated 6/19/59 in amount of $52,738.15. The difference represented an arrangement between Chemical Corn Exchange Bank, New York, Arthur W. Schmid Co., and Westinghouse Electric Corp., whereby Chemical Corn paid Westinghouse direct $4,015.34 out of payment received by Arthur W. Schmid Co. of $52,738.15, to compensate Westinghouse for materials furnished to Republic Glass Corp. under this contract.
(2),(3),(4),(5) The following ocean freight charges billed by Arthur W. Schmid Co. were not collected from appropriations made by Import-Export Bank, since the amount allocated for freight by Import-Export Bank for this contract was then exhausted:

| Invoice # | Date | Amount of Freight |
|---|---|---|
| 99670 | 6/-/59 | $5,012.70 |
| 99788 | 7/2/59 | 1,002.42 |
| 99953 | 7/-/59 | 105.28 |
| 10778 | 8/26/59 | 78.40 |

-10-

BOX 7-10653
STONEHILL-39

PG 46-2450

It is to be noted that the individual ledger accounts
receivable for Republic Glass Corporation shows that on
January 7, 1959, the Import-Export Bank made a payment
of $97,600 to ARTHUR W. SCHMID when the payment should
have been $96,600.  ARTHUR SCHMID refunded this $1,000
on January 27, 1959.

A review of the job order for the contract with Republic
Glass Corporation shows that ARTHUR SCHMID ordered
materials for this job from numerous sources throughout the
United States.

The following is a list of the invoices showing that the
freight shipment was paid by ARTHUR W. SCHMID Company:

| Invoice Number | Date | Amount |
|---|---|---|
| 10619 | 8/6/59 | $   966.08 |
| 10194 | 8/14/59 | 1,494.22 |
| 99974 | 7/18/59 | 615.89 |
| 99852 | 7/10/59 | 147.84 |
| 99826 | 7/8/59 | 403.73 |
| 99663 | 7/6/59 | 1,604.04 |
| 99408 | 7/2/59 | 3,253.60 |
| 99766 | 7/1/59 | 352.80 |
| 99557 | 6/30/59 | 1,774.94 |
| TOTAL | | $10,613.14 |

A review of the cash receipts and disbursements journal
show that Arthur W. Schmid Company continued to make
shipments after August 6, 1959, to Republic Glass
Corporation and that between August 21 and September 23,
1959, the entire allocation made by the Import-Export
Bank was exhausted

-11-

BOX 7-10654 STONEHILL-40

PG 46-2450

SCHMID produced a letter from the Chemical Corn Exchange
Bank dated June 2, 1959, to Arthur W. Schmid Company
regarding L/C 837 491/31885 (S-4) advising that instructions
from the Philippine Bank, Manila, Philippines, in regard to the
contract with Republic Glass Corporation has extended the Letter
of Credit pertaining thereto until September 30, 1959.

After the funds were exhausted, the cash receipts and
disbursements journal showed that SCHMID continued to make
shipments and receive payments from Republic Glass Corporation.

The records of Arthur W. Schmid Company from 1958 through
1962 failed to show any accounts for or dealings with
Universal Trading Corporation, IRA BLAUSTEIN, U. S. Tobacco
Corporation, Philippine Tobacco Curing and Redrying Corporation,
Industrial Business Management, Robert F. Brooks or MENHART
SPIELMAN.

-12-

BOX 7-10655
STONEHILL-41

PG 46-2450

On July 3, 1962, ARTHUR W. SCHMID, President, Arthur W.
Schmid Company, 1414 Investment Building, Pittsburgh,
Pa., furnished the following signed statement:

> "1414 Investment Building
> Pittsburgh 22, Pennsylvania
>
> July 3, 1962
>
> "I, Arthur W. Schmid, having been duly sworn, give
> the following signed statement to [          ] and
> [          ] Special Agents of the Federal
> Bureau of Investigation, U. S. Department of Justice.
> This statement is given voluntarily and no threats
> were made against me or promises made to me to
> obtain this statement.  I have been advised of my
> right to an attorney and have been told this
> statement could be used against me in a court of
> law.
>
> "My position with the Arthur W. Schmid Company is
> President, which position I have held since the
> founding of the company in 1936.  The company was
> incorporated in 1947.  Our activities consist of
> engineering, contracting, supervision and consulting
> to the glass industry exclusively.
>
> "In early 1958 we negotiated a contract with the
> Republic Glass Corporation, Manila, Philippine
> Islands, for the purpose of constructing a Glass
> Plant.  We were obligated to supply machinery,
> equipment and materials and technical assistance.
> The total of this contract was $1,314,676.00, of
> which $117,500.00 was for technical services,
> $90,000.00 for ocean freight and the balance of
> $1,107.176.00 was to cover machinery, equipment
> and materials.  This contract was financed through
> the Central Bank of the Philippines and, in turn,
> through the Export-Import Bank, Washington, D.C.
> An irrevocable Letter of Credit in favor of Arthur
> W. Schmid Company, payable against invoices, was
> established through the Chemical Corn Exchange Bank,
> New York City.

b6 -1
b7C -1

-13-

BOX 7-10656
STONEHILL-42

PG 46-2450

"Regarding shipments against the above Letter of
Credit, there were additional ocean freight charges
of approximately $17,000.00, which we were unable to
collect after the Letter of Credit allocation for
ocean freight was exhausted. We also had shipped
equipment and materials in excess of the original
Letter of Credit, charges for which we were also
unable to collect. After about two years of nego-
tiating, and considering back charges which Republic
Glass Corporation made against us, we finally arrived
at a settlement figure.

"Under the financing arrangements with the Export-
Import Bank, all invoices submitted by Arthur W.
Schmid Company were for full value of equipment,
materials and services and ocean freight. No
kick-back, discounts, or other rebates were ever
made to Harry Stonehill, any of his associates, or
Republic Glass Corporation, or any of its affiliates
or agents.

"I have read the above statement consisting of two
pages, and the facts contained therein are true and
correct. I have signed the last page and initialled
all other pages and corrections.

"/s/A.W. Schmid

"Subscribed and sworn before me on July 3, 1962 at
Pittsburgh, Pennsylvania.

Special Agent
Federal Bureau of Investigation    b6 -1
                                    b7C -1

Special Agent, Federal Bureau of Investigation"

-14*-

BOX 7-10657
STONEHILL-43