IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAULINE STONEHILL, Co-executor and Co-special administrator of the Estate of Harry S. Stonehill, </br></br>Plaintiff, </br></br>v. </br></br>INTERNAL REVENUE SERVICE, </br></br>Defendant. | ) ) ) ) ) ) ) ) ) NO. 1:06-cv-00599 JDB ) ) ) ) ) |

**INTERNAL REVENUE SERVICE'S SECOND SUPPLEMENTAL STATEMENT OF
MATERIAL FACTS NOT IN GENUINE DISPUTE**

The Internal Revenue Service herein incorporates by reference the facts set forth in paragraphs one through 54 of the Internal Revenue Service's Statement of Material Facts Not in Genuine Dispute filed on March 19, 2007 (the "Statement of Facts") (PACER #29). Further, the Internal Revenue Service supplements its Statement of Facts and, pursuant to L.Civ.R. 7.1(h) and 56.1, asserts that the following additional facts are not in genuine dispute:

1.  On March 19, 2007, the Internal Revenue Service (the "Service") filed a partial Vaughn index and a motion for partial summary judgment. (PACER #27 & #28.)

2.  As of March 19, 2007, the Internal Revenue Service had not yet completed the Vaughn index with respect to various documents, including documents that

were sent to the FBI for review and redactions. Accordingly, the Service was unable to complete a motion for summary judgment with respect to those documents. (Campbell Decl. ¶8.)

3. In the course of responding to plaintiff's FOIA request, the Service determined that certain of the responsive documents were documents were created by the FBI. (Piersol Decl. ¶16.)

4. The documents were first sent to the FBI for redaction/withholding during the FOIA administrative process. The Service returned the documents to the FBI on February 28, 2007. The following documents were submitted to the FBI: Box 7 pages 10627-10657 and Box 59 pages 1433-1435, 1439-1447, 1454-1457 (the "FBI Documents.") (Piersol Decl. ¶16.)

5. The search for these documents is identical to the search for the documents described in paragraphs seven through 10 of the Service's Statement of Facts.

6. David M. Hardy is the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at the Federal Bureau of Investigation, Headquarters ("FBIHQ") in Washington, D.C. In his current capacity as Section Chief of RIDS, Hardy supervises approximately 200 employees who staff a total of ten (10) units and a field operational service center unit whose collective mission is to effectively plan, develop, direct and manage responses to requests for access to FBI records and information pursuant to the

FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and Presidential and Congressional directives. (Hardy Decl. ¶1.)

    7.  Due to the nature of his official duties, Hardy is familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, Hardy is aware of the treatment which has been afforded the 43 pages of responsive records referred to FBIHQ from the Internal Revenue Service, which were located in response to the FOIA/Privacy Act request made to the IRS by plaintiff, Pauline Stonehill. (Hardy Decl. ¶3.)

    8.  FBI was first advised of this litigation when contacted telephonically by the IRS on or about February 26, 2007, and, thereafter, the Service hand-delivered packages containing the referred documents to FBIHQ on February 28, 2007 and March 8, 2007.  At that time, the Service informed the FBI that a court deadline of March 19, 2007 had been previously set as the Service's deadline to file a motion for summary judgment.  Despite the short time frame to review and process these documents, as well as its numerous other competing litigation deadlines, the FBI attempted to meet the March 19, 2007 filing deadline.  However, several issues arose with regard to information withheld previously in the documents, and the FBI required several additional days to complete the review process. (Hardy Del. ¶5.)

9. FBIHQ completed processing of the documents on March 23, 2007. These 43 pages of processed records contain 16 pages that are being released with redactions described in further detail below, and 27 pages that are being released in full. These pages are included as Exhibit A to this declaration. (See Exhibit A.) These same records were previously processed by the FBI using civil discovery standards in response to a third-party subpoena seeking access to the same documents at issue here. As a result of the review under the FOIA, FBI determined that the more material could be released than was done under civil discovery. (Hardy Decl. ¶6.)

### EXPLANATION OF THE CODED FORMAT USED FOR THE JUSTIFICATION OF DELETED MATERIALS

10. All documents were processed to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. To further describe the information withheld could identify the material sought to be protected. Each page of Exhibit A is consecutively numbered "STONEHILL 1" through "STONEHILL 43" at the bottom right-hand corner of each page. The exemptions asserted by the FBI are FOIA Exemptions (b)(6) and (b)(7)(C). (Hardy Decl. ¶7.)

11. Copies of the pages contain, on their face, coded categories of exemptions which detail the nature of the information withheld pursuant to the provisions of the FOIA. No reasonably segregable, nonexempt portions are being withheld from plaintiff. The coded categories are provided to aid the Court and the plaintiff's review of the FBI's explanations of FOIA exemptions used to withhold the protected material. (Hardy Decl. ¶8.)

12. Each instance of information withheld pursuant to the FOIA on the attached documents is accompanied by a coded designation that corresponds to the categories listed below. For example, if "(b)(7)(C)-1" appears on a document, the (b)(7)(C) designation refers to Exemption (b)(7)(C) of the FOIA concerning "Unwarranted Invasion of Privacy." The numerical designation, "1" following the "(b)(7)(C)" narrows the main category to the more specific subcategory, "Names and/or Identifying Information of FBI Special Agents." (Hardy Decl. ¶9.) Listed below are the categories used to explain the FOIA exemptions asserted to withhold this material:

### SUMMARY OF JUSTIFICATION CATEGORIES

**Exemption (b)(6)    Clearly Unwarranted Invasion of Personal Privacy**

(b)(6)-1    Names and/or Identifying Information of FBI Special Agents. (Cited in conjunction with (b)(7)(C)-1).

(b)(6)-2    Names and/or Identifying Information of Non-FBI Federal Government Personnel. (Cited in

|             |  |
|---|---|
|  | conjunction with (b)(7)(C)-2). |
| (b)(6)-3 | Names and/or Identifying Information of Commercial Institution Employees. (Cited in conjunction with (b)(7)(C)-3). |
| (b)(6)-4 | Names and/or Identifying Information of Third Parties of Investigative Interest. (Cited in conjunction with (b)(7)(C)-4). |
| (b)(6)-5 | Names and/or Identifying Information Concerning Third Parties Merely Mentioned. (Cited in conjunction with (b)(7)(C)-5). |

**Exemption (b)(7)(C)**         **Unwarranted Invasion of Personal Privacy**

| | |
|---|---|
| (b)(7)(C)-1 | Names and/or Identifying Information of FBI Special Agents. (Cited in conjunction with (b)(6)-1). |
| b)(7)(C)-2 | Names and/or Identifying Information of Non-FBI Federal Government Personnel. (Cited in conjunction with (b)(6)-2). |
| (b)(7)(C)-3 | Names and/or Identifying Information of Commercial Institution Employees. (Cited in conjunction with (b)(6)-3). |
| (b)(7)(C)-4 | Names and/or Identifying Information of Third Parties of Investigative Interest. (Cited in conjunction with (b)(6)-4). |
| (b)(7)(C)-5 | Names and/or Identifying Information Concerning Third Parties         Merely Mentioned. (Cited in conjunction with (b)(7)(C)-5). |

## JUSTIFICATION FOR REDACTIONS

13. The paragraphs that follow explain the FBI's rationale for withholding each particular category of information under the specific exemption categories described above.

## EXEMPTION (b)(6)
## CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

14. In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name and/or identifying information appear in the pages at issue. When withholding information pursuant to this exemption, the FBI is required to balance the privacy interest of the individuals mentioned against any public interest in disclosure. In conducting this analysis, the public interest in disclosure was determined by whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to uphold and enforce the criminal laws of the United States and to provide leadership and criminal justice services to federal, state, municipal and international agencies and partners. In each instance where information was withheld, it was determined that individual privacy rights outweighed the public interest in disclosure. (Hardy Decl. ¶12.)

**(b)(6)-1**     **Names and/or Identifying Information of FBI Special Agents**

15.  Exemption (b)(6)-1 has been asserted in conjunction with Exemption (b)(7)(C)-1 to protect the names and/or identifying information of FBI Special Agents ("SAs") responsible for conducting investigations of individuals who have potentially violated or are violating the laws of the United States.  The documents in question are reports from Special Agents to various individuals, including Assistant United States Attorneys, proving information for the prosecution of tax evasion.  Disclosure of the identity of these individuals could subject them to unauthorized inquiries by members of the media and the general public who seek access to this type of information.  Accordingly, the FBI determined that the FBI SAs referenced in the responsive records maintain substantial privacy interests in not having their identities disclosed.  The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs.  The FBI could not identify any discernible public interest.  There have been no allegations that the FBI SAs engaged in any type of significant misconduct which would establish a public interest in disclosure.  Ultimately, disclosure of the names and/or identifying information of FBI SAs would shed no light on the performance of the FBI's mission to uphold and enforce the criminal laws of the United States and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. (Hardy Decl. ¶13.)

8

16. In balancing the substantial privacy interest of these individuals against no legitimate public interest in disclosure, the FBI has determined that this information regarding FBI SAs has been properly withheld pursuant to Exemption (b)(6)-1. Exemption (b)(6)-1 in conjunction to (b)(7)(C)-1 is invoked on the following pages: STONEHILL 14, 22, 28, 29, 30, 33, 36, 42, and 43. (Hardy Decl. ¶14.)

### (b)(6)- 2    Names and/or Identifying Information of Non-FBI Federal Government Personnel

17. Exemption (b)(6)-2 has been asserted in conjunction with Exemption (b)(7)(C)-2 to protect the names and/or identifying information of two non-FBI federal employees, a detective with the U. S. Navy and an IRS agent. The documents in question are materials created by the FBI concerning the investigation of Harry S. Stonehill. The release of this information could cause harassment of and/or undue embarrassment to these individuals, which would constitute an unwarranted invasion of their personal privacy. In making a determination whether to release such information, the public's interest in disclosure was balanced against the individuals right to privacy. The privacy interests of these individuals were determined to be stronger than any legitimate public interest in disclosure. Exemption (b)(6)-2 has been cited in conjunction with Exemption (b)(7)(C)-2 and is invoked on the following pages: STONEHILL 5 and 6. (Decl. ¶15.)

### (b)(6)-3   Names and/or Identifying Information of Commercial Institution Employees

18. Exemption (b)(6)-3 has been asserted in conjunction with (b)(7)(C)-3 to protect the name and/or identifying information, including the job title, of a bank employee in Memphis, Tennessee. This individual was in a position to furnish information to the FBI. To release this individual's identity could subject him/her to harassment, embarrassment, and/or could result in undue public attention which would be an unwarranted invasion of his/her personal privacy. In making a determination whether to release such information, the public's interest in disclosure was balanced against the individuals right to privacy. The privacy interests of this individual were determined to be stronger than any legitimate public interest in disclosure. Exemption (b)(6)-3 has been invoked in conjunction with (b)(7)(C)-3 on the following pages: STONEHILL 5, 9, 10, and 12. (Decl. ¶16.)

### (b)(6)-4   Names and/or Identifying Information of Third Parties of Investigative Interest

19. Exemption (b)(6)-4 has been asserted in conjunction with Exemption (b)(7)(C)-4 to withhold the names and/or identifying information, including bank account information, of several third parties who were of investigative interest to the FBI. Disclosure of the identities of third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure may embarrass them. For these reasons the FBI has determined that these individuals

maintain a substantial privacy interest in not having their identities disclosed. (Hardy Decl. ¶17.)

20. After identifying the substantial privacy interest of these third parties, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information would not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute a clearly unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names and/or identifying information of these third parties pursuant to Exemption (b)(6)-4. Exemption (b)(6)-4 in conjunction with Exemption (b)(7)(C)-4 is invoked on the following pages: STONEHILL 1, 5, 9, 10, 11, and 12.   (Hardy Decl. ¶18.)

### (b)(6)-5    Names and/or Identifying Information Concerning Third Parties Merely Mentioned

21. Exemption (b)(6)-5 has been asserted in conjunction with (b)(7)(C)-5 to withhold the name and/or identifying information of one individual merely mentioned in the referred documents who was not of investigative interest to the FBI. The referred document in question is a memorandum created by the FBI detailing various bank transactions related to the tax evasion investigation of Harry S. Stonehill. The third party mentioned in this memorandum maintains legitimate

privacy interests in not having his/her name disclosed. If the FBI disclosed the name and/or identifying information of this individual, the disclosure would reveal that this third party was connected with the FBI's investigation in some way, which can carry an extremely negative connotation. Disclosure of his/her identity could subject this individual to possible harassment or criticism and focus derogatory inferences and suspicion on him/her. Accordingly, the FBI determined that this third party maintains a substantial privacy interest in not having information about him/her disclosed. After identifying the substantial privacy interests of this individual, the FBI balanced the right to privacy against the public interest in disclosure. The FBI has determined that there is no public interest, and therefore, disclosure of this information would constitute a clearly unwarranted invasion of personal privacy. Exemption (b)(6)-5 in conjunction with (b)(7)(C)-5 is invoked on the following page: STONEHILL 11. (Hardy Decl. ¶19.)

**EXEMPTION 7**
**EXEMPTION 7 THRESHOLD**

22. Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the exemption. See 5 U.S.C. § 552 (b)(7). In this case, an invasion of personal privacy could reasonably be expected to result from disclosure. (Hardy Decl. ¶20.)

23. Before an agency can invoke any of the harms enumerated in Exemption

7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. The documents at issue in this case were compiled for law enforcement purposes in connection with the FBI's investigation into tax evasion by Harry Stonehill, which were part of file number 64-HQ-46933. (Hardy Decl. ¶21.)

## EXEMPTION (b)(7)(C)
## UNWARRANTED INVASION OF PERSONAL PRIVACY

24. When withholding information pursuant to this exemption, the FBI is required to balance the privacy interests of the individuals mentioned in the documents against any public interest in disclosure. In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of each individual whose name and/or identifying information appears in the documents at issue. The FBI identified the public interest in disclosure of the information to be whether the information in question would inform plaintiff or the general public about the FBI's performance of its mission to enforce federal criminal and national security statutes, and/or how the FBI actually conducts its internal operations and investigations. Every effort has been made to release all segregable information contained in these pages without infringing upon

the privacy rights of the individuals mentioned in these documents. As explained below, there is no legitimate public interest in the information that has been withheld pursuant to Exemption (b)(7)(C). (Hardy Decl. ¶23.)

### **(b)(7)(C)-1   Names and/or Identifying Information of FBI Special Agents**

25. Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemption (b)(6)-1 to protect the names of FBI SAs responsible for conducting investigations of individuals who have potentially violated or are violating the laws of the United States. The documents in question are reports from Special Agents to various individuals, including Assistant United States Attorneys, providng information for the prosecution of tax evasion. Disclosure of the names could subject these employees to unauthorized inquiries by members of the media and the general public who seek access to this type of information. Accordingly, the FBI determined that the FBI SAs referenced in the responsive records maintain substantial privacy interests in not having their identities disclosed. The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs. The FBI could not identify any discernible public interest. The disclosure of the names of FBI SAs would not demonstrate how the FBI performs its mission to uphold and enforce the criminal laws of the United States and to provide leadership and criminal justice services to

federal, state, municipal, and international agencies and partners.  There have been no allegations that the FBI SAs engaged in any type of significant misconduct which would establish a public interest in disclosure.  Ultimately, disclosure of the names of FBI SAs would shed no light on the performance of the FBI's mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.  Thus, disclosure of the names of these employees would constitute an unwarranted invasion of their personal privacy.  (Hardy Decl. ¶24.)

26.  In balancing the substantial privacy interest of these individuals against no legitimate public interest in disclosure, the FBI has determined that this information regarding FBI SAs has properly been withheld pursuant to Exemption(b)( 7)(C)-1.  Exemption (b)(7)(C)-1 in conjunction with Exemption (b)(6)-1 is invoked on the following pages:  STONEHILL 14, 22, 28, 29, 30, 33, 36, 42, and 43.  (Hardy Decl. ¶25.)

### (b)(7)(C)-2    Names and/or Identifying Information of Non-FBI Federal Government Personnel

27.  Exemption (b)(7)(C)-2 has been asserted in conjunction with Exemption (b)(6)-2 to protect the names of two non-FBI federal employees, a detective with the U. S. Navy and an IRS agent.  The documents in question are materials created by

the FBI concerning the investigation of Harry S. Stonehill.  The release of this information could cause harassment and/or undue embarrassment, which would constitute an unwarranted invasion of personal privacy.  There is no public interest served by disclosing the identity of this individual.  In making a determination whether to release such information, the public's interest in disclosure was balanced against the individual's right to privacy.  The privacy interests of these individuals were determined to be stronger than any legitimate public interest in disclosure.  Exemption (b)(7)(C)-2 has been cited in conjunction with Exemption (b)(6)-2 and is invoked on the following pages:  STONEHILL 5 and 6.  (Hardy Decl. ¶26.)

### (b)(7)(C)-3    Names and/or Identifying Information of Commercial Institution Employees

28.  Exemption (b)(7)(C)-3 has been asserted in conjunction with Exemption (b)(6)-3 to protect the name and job title of a bank employee in Memphis, Tennessee.  This individual was in a position to furnish information to the FBI.  To release this individuals identity could subject him/her to harassment, embarrassment, or could result in undue public attention which would be an unwarranted invasion of his/her personal privacy.  There is no public interest served by disclosing the identity of this individual.  In making a determination whether to release such information, the public's interest in disclosure was balanced against the individual's right to privacy.  The privacy interests of this individual was determined to be

stronger than any legitimate public interest in disclosure. Exemption (b)(7)(C)-3 in conjunction with Exemption (b)(6)-3 has been invoked on the following pages: STONEHILL 5, 9, 10, and 12. (Hardy Decl. ¶27.)

### (b)(7)(C)-4   Names and/or Identifying Information of Third Parties of Investigative Interest

29. Exemption (b)(7)(C)-4 has been asserted in conjunction with Exemption (b)(6)-4 to withhold the names and bank account numbers of several third parties who were of investigative interest to the FBI. Disclosure of the identities of third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure may embarrass them. For these reasons the FBI has determined that these individuals maintain a substantial privacy interest in not having their identities disclosed. (Hardy Decl. ¶28.)

30. After identifying the substantial privacy interest of these third parties, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information would not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute an unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names of these third parties pursuant to Exemption (b)(7)(C)-4. Exemption (b)(7)(C)-4 in conjunction with Exemption (b)(6)-4 is invoked on the following pages: STONEHILL 1, 5, 9, 10, 11,

and 12. (Hardy Decl. ¶29.)

### (b)(7)(C)-5    Names and/or Identifying Information Concerning Third Parties Merely Mentioned

31. Exemption (b)(7)(C)-5 has been asserted in conjunction with Exemption (b)(6)-5 to withhold the name of one individual merely mentioned in the referred documents. The referred document in question is a memorandum created by the FBI detailing various bank transactions related to the tax evasion investigation of Harry S. Stonehill. The individual mentioned in this memorandum was not of investigative interest to the FBI. This third party maintains legitimate privacy interests in not having his/her information disclosed. If the FBI disclosed the name, the disclosure would reveal that this third party was connected with the FBI's investigation, which carries an extremely negative connotation. Disclosure of his/her identity could subject this individual to possible harassment or criticism and focus derogatory inferences and suspicion on him/her. Accordingly, the FBI determined that this third party maintains a substantial privacy interest in not having information about him/her disclosed. After identifying the substantial privacy interests of this individual, the FBI balanced the right to privacy against the public interest in disclosure. The FBI has determined that there is no public interest in disclosure. Thus, disclosure of this information would constitute an unwarranted invasion of personal privacy. Exemption (b)(7)(C)-5 in conjunction with (b)(6)-5 has

been invoked on the following page: STONEHILL 11. (Hardy Decl. ¶30.)

    32. The Service is not claiming additional exemptions with respect to the FBI Documents.

Dated: March 27, 2007.

    Respectfully submitted,

    /s/ Brittney N. Campbell
    DAVID M. KATINSKY
    BRITTNEY N. CAMPBELL
    Trial Attorney, Tax Division
    U.S. Department of Justice
    P.O. Box 227
    Ben Franklin Station
    Washington, D.C. 20044
    Telephone: (202) 307-6435

OF COUNSEL:

JEFFREY TAYLOR
United States Attorney

CERTIFICATE OF SERVICE

IT IS CERTIFIED that service of the foregoing defendant's Statement of Material Facts has been made this 27th day of March, 2007, by mailing, postage prepaid, addressed to:

>JOHN R. GERSTEIN
>ROBERT E. HEGGESTAD
>JONATHAN COHEN
>Ross, Dixon & Bell, LLP
>2001 K Street, N.W.
>Washington, D.C. 20006-1040.


  /s/ Brittney N. Campbell
 BRITTNEY N. CAMPBELL