IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULINE STONEHILL, Co-executor )
and Co-special administrator of the )
Estate of Harry S. Stonehill, )
  )
        Plaintiff, )
  )
    v. )      NO. 1:06-cv-00599 JDB
  )
INTERNAL REVENUE SERVICE, )
  )
        Defendant. )

INTERNAL REVENUE SERVICE'S FOURTH MOTION FOR PARTIAL SUMMARY
JUDGMENT

The Internal Revenue Service, defendant, moves for partial summary judgment.

As grounds for its motion, defendant states that the material facts are not in dispute and

that it is entitled to judgment as a matter of law.  Specifically, defendant states that it

has (1) performed an adequate search for documents responsive to plaintiff's FOIA

request; and (2) with respect to the withheld documents identified on defendant's

Vaughn index, it has withheld only those documents, or portions thereof, authorized by

5 U.S.C. § 552(b).   Accordingly, the Court should dismiss this case.

Attached to this motion as Exhibit 1 is the declaration of Krista Piersol.  Attached

as Exhibit 2 is the declaration of Marilyn A. Dorn.  A statement of facts, supporting

memorandum of law, and proposed order are also filed with this motion.

DATED:        April 23, 2007

Respectfully submitted,

/s/ Brittney N. Campbell
DAVID M. KATINSKY
BRITTNEY N. CAMPBELL
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6435

OF COUNSEL:

JEFFREY TAYLOR
United States Attorney

<u>CERTIFICATE OF SERVICE</u>

IT IS CERTIFIED that service of the foregoing defendant's Motion for Partial

Summary Judgment has been made this 23rd day of April, 2007, by mailing, postage

prepaid, addressed to:

> JOHN R. GERSTEIN
> ROBERT E. HEGGESTAD
> JONATHAN COHEN
> Ross, Dixon & Bell, LLP
> 2001 K Street, N.W.
> Washington, D.C. 20006-1040.

> /s/ Brittney N. Campbell
> BRITTNEY N. CAMPBELL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PAULINE STONEHILL, Co-executor | ) | |
| and Co-special administrator of the | ) | |
| Estate of Harry S. Stonehill, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 1:06-cv-00599 JDB |
| | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF INTERNAL REVENUE SERVICE'S
<u>FOURTH MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

STATEMENT

The Internal Revenue Service incorporates by reference the facts enumerated in

the Internal Revenue Service's Statement of Material Facts Not in Genuine Dispute.

SUMMARY OF ARGUMENT

The Court should grant the Internal Revenue Service's for motion for partial

summary judgment here because based upon the material, undisputed facts, the

Service, as a matter of law, has (1) performed an adequate search for documents

responsive to plaintiff's FOIA request; and (2) with respect to the following documents,

withheld only those documents authorized by 5 U.S.C. § 552(b):  Chief Counsel Box 2

pages 008-050, 081-104, 106-232, 569-813; Chief Counsel Box 4 page 964; Chief Counsel

Box 7 pages 001-021, 152-172; Box 16 pages 79-83; and Box 84 pages 246-249 (the "CIA Documents").

First, the Service must execute a search reasonably calculated to uncover all relevant documents based upon the four corners of the FOIA request. Here, the Service searched all logical locations suggested by the FOIA request for the exact material requested.

Likewise, the Service's withholdings meet the standards prescribed by the FOIA:

- 5 U.S.C. § 552(b)(1), protects from disclosure documents that have been specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and are in fact properly classified pursuant to such Executive Order.

- 5 U.S.C. § 552(b)(3), in conjunction with Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C.A. § 403g, authorizes the withholding in part or in full documents that contain information relating to the functions of the CIA, including intelligence activities as well as intelligence sources and methods, and the names of CIA employees.

- 5 U.S.C. § 552(b)(5), in conjunction with the governmental deliberative process privilege, protects from compelled disclosure drafts of documents and other records, either in full or in part, containing advisory opinions and recommendations generated during the course of Chief Counsel and

5

DOJ attorneys' review and consideration of various legal guidance in conjunction with agency positions. To the extent that other documents reflect the opinions or recommendations of agency personnel involved in the drafting and review of such guidance, that information is also subject to the protections of the deliberative process privilege. Such documents are both predecisional and deliberative in nature. 5 U.S.C. § 552(b)(5), in conjunction with the attorney work product and attorney-client privileges, also protects from disclosure other discrete documents prepared by Chief Counsel attorneys which meet the requirements of these privileges, as well as of 26 U.S.C. § 6103(a).

## ARGUMENT

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); *see also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Matsushita Electronics Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Where the nonmoving party bears the burden of proof on an issue, the movant need not produce evidence showing the absence of a genuine issue of material fact, but instead the movant may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. To rebut the motion for summary judgement, plaintiff must "point to some facts in the record that demonstrate a genuine issue of material fact and, with all

6

reasonable inferences made in plaintiffs' favor, could convince a reasonable jury to find

for the plaintiffs." Reese v. Jefferson School District No. 143, 208 F.3d 736, 738 (9th Cir.

2000). Virtually all FOIA cases are resolved via summary judgment. *See* Manna v.

United States Dep't of Justice, 832 F. Supp. 866, 870, aff'd 51 F.3d 1158 (3d Cir. ), cert.

denied, 116 S. Ct. 477 (1995).  Summary judgment may be granted solely on the basis of

agency affidavits if they are "sufficiently detailed and are submitted in good faith."

Manna, 832 F. Supp. at 870.  Here, the pertinent facts are not in dispute and the issues in

this case can be decided as a matter of law.  The Service performed an adequate search

for documents responsive to plaintiff's two FOIA requests.  The Service is properly

withholding certain information pursuant to FOIA exemptions 3, 5, 6 and 7.

## I.
### THE SERVICE CONDUCTED A REASONABLE SEARCH FOR THE CONTROL NUMBERED DOCUMENTS IDENTIFIED IN PLAINTIFF'S AMENDED COMPLAINT

For the reasons set forth in the Service's Motion for Partial Summary Judgment

filed March 19, 2007 (PACER #27), the Service conducted a reasonable search for the

Documents.

## II.
### THE INTERNAL REVENUE SERVICE'S WITHHOLDINGS ARE JUSTIFIED UNDER THE GOVERNING FOIA EXEMPTIONS.

### A.      5. U.S.C. §552(b)(1)

The Service has properly withheld under 5 U.S.C. § 552(b)(1), certain documents

described in paragraph 26 of the Service's Third Supplemental Statement of Material

Facts Not in Genuine Dispute (the "Third Material Facts").

FOIA exemption (b)(1), 5 U.S.C. § 552(b)(1), provides that FOIA does not apply to matters that are:

(A)     specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy, and

(B)     is in fact properly classified pursuant to such Executive order.

5 U.S.C. § 552(b)(1).

Section 6.1(h) of Executive Order 12958, as amended[1] (the "Executive Order", defines "classified national security information" or "classified information" as "information that has been determined pursuant to this order or any predecessor order to require protection against unauthorized disclosure and is marked to indicate its classified status when in documentary form." Section 6.1(y) of the Order defines "national security" as the "national defense or foreign relations of the United States." Section 1.1(a) of the Executive Order provides that information may be originally classified under the terms of this order only if all of the following conditions are met:

(1)     an original classification authority is classifying the information;

(2)     the information is owned by, produced by or for, or is under the control of the United States Government;

(3)     the information falls within one or more of the categories of information listed in section 1.4 of this order; and

---

[1] Executive Order 12958 was amended by Executive Order 13292. See Exec. Order No. 13292 (Mar. 28, 2003). All citations to Exec. Order No. 12958 are to the Order as amended by Exec. Order No. 13292. See Exec. Order No. 12958, 3 C.F.R. 333 (1995), *reprinted as amended* in 50 U.S.C.A. § 435 note at 180 (West Supp. 2006).

(4)      the original classification authority

determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

Exec. Order 12958, § 1.1(a).

### 1. Original classification authority

Section 1.3(a) of the Executive Order provides that the authority to classify information originally may be exercised only by the President and, in the performance of executive duties, the Vice President; agency heads and officials designated by the President in the *Federal Register*; and United States Government officials delegated this authority pursuant to section 1.3(c) of the Order.  Section 1.3(c)(2) provides that TOP SECRET original classification authority may be delegated only by the President; in the performance of executive duties, the Vice President; or an agency head or official designated pursuant to section 1.3(a)(2) of the Executive Order.

In accordance with section 1.3(a)(2), the President designated the Director of Central Intelligence as an official who may classify information originally as TOP SECRET.[2]  At the time Marilyn Dorn  reviewed the CIA Documents, the Director of Central Intelligence had delegated original TOP SECRET classification authority to her under the authority of section 1.3(c)(2). (Dorn Decl. ¶14.)   Section 1.3(b) of the Executive

---

[2] Order of President, Designation under Executive Order 12958, 70 Fed. Reg. 21,609 (Apr. 21, 2005), *reprinted in* U.S.C.A. § 435 note at 192 (West Supp. 2006).  This order succeeded the prior Order of President, Officials Designated to Classify National Security Information, 60 Fed. Reg. 53,845 (Oct. 13, 1995), *reprinted in* U.S.C.A. § 435 note at 486 (West 2006), in which the President similarly designated the Director of Central Intelligence as an official who may classify information originally as TOP SECRET.

Order provides that original TOP SECRET classification authority includes the

authority to classify information originally as SECRET and CONFIDENTIAL.  Pursuant

to her review, Dorn determined that the documents contain information that is

currently and properly classified SECRET by an original classification authority. (Dorn

Decl. ¶15.)

### 2.  Damage to the national security

Section 1.2(a) of the Executive Order provides that information shall be classified

at one of three levels if the unauthorized disclosure of the information reasonably could

be expected to cause damage to the national security, and the original classification

authority is able to identify or describe the damage.  Information shall be classified TOP

SECRET if its unauthorized disclosure reasonably could be expected to result in

*extremely grave damage* to the national security; SECRET if its unauthorized disclosure

reasonably could be expected to result in *serious damage* to the national security; and

CONFIDENTIAL if its unauthorized disclosure reasonably could be expected to result

in *damage* to the national security.

With respect to the information for which FOIA Exemption (b)(1) is asserted in

this case, the unauthorized disclosure of the CIA-originated information in the CIA

Documents reasonably could be expected to result in serious damage to the national

security, and thus the information is classified SECRET.  The damage to national

security that reasonably could be expected to result from the unauthorized disclosure of

this classified information (Dorn Decl. ¶18.)

3. <u>Proper purpose</u>

The CIA has determined that no information has been classified in order to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security. (Dorn Decl. ¶20.)

4. <u>Categories of classified information</u>

Information may be classified only if it concerns one of the categories of information set forth in section 1.4 of the Executive Order. With respect to the information for which FOIA Exemption (b)(1) is asserted in this case, the CIA reviewed the CIA Documents that contain CIA-originated information and determined that they contain information that concerns one or more of the following classification categories in the Executive Order:

  a.    Information concerning intelligence activities or intelligence sources or methods [§ 1.4(c); and

  b.    Information concerning foreign relations or foreign activities of the United States, including confidential sources [§ 1.4(d)]. (Dorn Decl. ¶17.)

The documents being withheld pursuant to 5 U.S.C. §552(b)(1) are handwritten notes and memoranda that contain factual and legal discussions related to the Stonehill and Brooks cases. The CIA information withheld from each of the CIA Documents is

11

the same: it is information relating to intelligence sources and methods, intelligence activities, U.S. foreign relations and activities, CIA functions, and names of CIA employees.

(a.) Intelligence Sources

One of CIA's primary functions is to gather intelligence. To accomplish this, the CIA must rely on information from knowledgeable sources that the CIA can obtain only under an arrangement of absolute secrecy. Intelligence sources will furnish information only when they are confident that they are protected from retribution by absolute secrecy surrounding the source-CIA relationship. In other words, intelligence sources must be certain that the CIA will do everything in its power to prevent the public disclosure of their association with the CIA. The CIA relies on a variety of types of intelligence sources to collect foreign intelligence critical to our national security, including individual human sources. Intelligence sources, be they present or future, will not work for or cooperate with the CIA if they are convinced or believe that the CIA will not or cannot protect their identities. The consequences of disclosure of the source relationship are often swift and far-ranging, from economic reprisals to harassment, imprisonment, or possibly even death. Disclosure does not only cause harm to the source, but places in jeopardy the lives of every individual with whom the source has had contact, including his family and friends. (Dorn Decl. ¶28.)

Although the CIA Documents are more than forty years old, the source relationships still must be protected. The sources, whether current sources or former

sources, could still be subjected to retribution if their identity and relationship with CIA were disclosed.  In addition, disclosure of any source also risks the loss of other sources, current and future, who understandably are reluctant to believe the CIA's assurances that their relationship will be kept secret.  If those sources learn that the CIA publicly revealed the source relationships at issue here – or any other source relationship – those sources would be hesitant to trust the CIA to protect their relationship and so could terminate it.  The loss of such intelligence sources, and the accompanying loss in critical intelligence which they provide, would have serious effects upon the national security of this country. (Dorn Decl. ¶28.)

In this case, all twelve of the CIA Documents contain classified information that would reveal the identities of specific CIA sources in the Philippines in the 1960s. As stated above, revelation of the identities of these sources would not only jeopardize the individual sources and anyone with whom the sources were connected with, but also could interfere with the CIA's ability to recruit other sources or may impact the ability of CIA to maintain its current sources because the potential and current sources may fear that the CIA is not willing to protect their identities.  Accordingly, the CIA determined that disclosure of information related to intelligence sources reasonably could be expected to cause serious damage to the national security and should be withheld pursuant to FOIA Exemption (b)(1). (Dorn Decl. ¶29.)

(b) <u>Intelligence Methods</u>

Additionally, the information withheld in this case would identify particular intelligence methods CIA used in the Philippines in the 1960s, including the type of information CIA had (or may still have) an interest in, the identification of targets, and specific methods the CIA used (or may still use) to obtain the information.  (Dorn Decl. ¶30.)  Generally, intelligence methods are the means by which, and the manner in which, an intelligence agency accomplishes its mission.  One of the primary missions of foreign intelligence services is to discover the particular methods that the CIA uses.  To this end, foreign intelligence services scour open sources for officially released intelligence information.  These services are capable of gathering information from a myriad of sources, analyzing this information, and deducing means to defeat CIA collection efforts from disparate and seemingly unimportant details.  As such, a particular intelligence method's use in a particular situation, in addition to the method itself, must be protected. (Dorn Decl. ¶31.)

A particular intelligence method is effective only so long as it remains unknown and unsuspected by its target.  When an intelligence method is revealed, the target will likely take countermeasures.  Once the nature of an intelligence method, including the specific target of collection, or the fact of its use in a certain situation, is discovered, its continued successful use is in serious jeopardy. (Dorn Decl. ¶32.)  Accordingly, CIA must protect its methods from disclosure because such information would be of material assistance to those who would seeks to penetrate, detect, prevent,

or damage U.S. intelligence operations.  Knowledge of or insight into specific

intelligence collection methods would be of invaluable assistance to those who wish to

detect, penetrate, counter, or evaluate CIA's activities and collection efforts. (Dorn Decl.

¶33.)

       In this case, the classified information at issue may reveal intelligence

methods of collection such as if, when, and how the CIA collects certain intelligence

information.  Nine of the CIA Documents contain information that would reveal what

particular CIA intelligence collection methods were used in the Philippines and specific

CIA intelligence targets in the Philippines.  The revelation of specific CIA intelligence

methods and targets, although set out in documents more than forty years old, would

give hostile foreign intelligence services and current intelligence targets insight into

who or what the CIA was interested in and where the CIA concentrated its collection

efforts in the Philippines during the 1960s.  Additionally, the revelation of this

information might provide hostile foreign intelligence services with information that

could help them determine current intelligence methods and targets.  The CIA

continues to use many of the intelligence methods and to collect against many of the

same targets as it did in the 1960s.  Thus, the CIA determined that disclosure of this

information reasonably could be expected to cause serious damage to the national

security and should be withheld pursuant to FOIA Exemption (b)(1). (Dorn. Decl. ¶34.)

(c)  Intelligence Activities

Additionally, nine of the twelve CIA Documents contain information that would reveal CIA intelligence activities.  Except in exceptional circumstances, CIA does not reveal the existence of any specific intelligence activities.  CIA's covert intelligence interest in certain targets in a specific country also represents an intelligence activity, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security. (Dorn Decl. ¶36.)

To disclose the existence (or non-existence) of a particular intelligence collection effort, such as those directed at a specific country or specific individuals, would reveal U.S. intelligence targets, needs, priorities, and capabilities to those who actively seek to take advantage of any U.S. national security weakness.  The damage that would be caused by such an admission is clear.  Hostile organizations, such as foreign intelligence services, would be advised that CIA had targeted their activities and information; future intelligence collection operations would be made more difficult by such a revelation and, as a result, the conduct of such operations would become even more dangerous.  Nine of the twelve CIA Documents contain information that would reveal what type of information the U.S. collected in the Philippines, how the U.S. collected the information, and on whom or what the U.S. collected information.  (Dorn Decl. ¶36.)

As stated above, the effective collection of intelligence requires CIA to prevent disclosing to our adversaries the specific persons and areas in which the CIA is

16

interested and upon which it focuses its methods and resources. Accordingly, the CIA

determined that disclosure of this information reasonably could be expected to cause

serious damage to the national security and should be withheld pursuant to FOIA

Exemption (b)(1). (Dorn Decl. ¶37.)

(d)  <u>U.S. Foreign Relations and Activities</u>

In addition, nine of the CIA Documents contain information that would

reveal the specific nature of the liaison relationship between the United States and the

Philippines that is currently and properly classified at the SECRET level pursuant to

section 1.4(c) of Executive Order 12958. Although the United States has officially

acknowledged a liaison relationship with the Philippine N.B.I. during the time the

documents address, the exact nature of the relationship has not been officially

acknowledged or disclosed. Disclosure of this information, even though old, could

damage U.S. foreign relations with the Philippines. (Dorn Decl. ¶38.)

The U.S. currently enjoys a good relationship with the Philippines and the

Philippines expects the U.S. not to disclose details of that relationship. If the U.S. did

disclose those details, the Philippine government might take action against the U.S. and

its citizens who are in the Philippines. For example, if details of this relationship were

revealed, the Philippines could curtail its relationship with the U.S. Additionally, if the

details of this relationship were disclosed, other foreign services with whom CIA has a

relationship would tend to believe that CIA is unable or unwilling to keep the

relationship with those services secret and could limit or terminate those relationships,

17

resulting in a loss of valuable intelligence.  Additionally, foreign governments that are

considering entering into a similar relationship with CIA might decide not to do so.

(Dorn Decl. ¶38.)  Nine of the IRS documents contain information that would reveal

U.S. foreign activities in the Philippines, as discussed above.  Revelation of those

activities could cause damage. (Dorn Decl. ¶39.)

        Because the documents contain information that could negatively affect U.S

relations with the Philippines if disclosed and would reveal specific details about U.S.

activities with and in the Philippines, the CIA determined that disclosure of CIA-

originated information responsive to Plaintiff's request which pertains to the U.S.

foreign relations and U.S. foreign activities could reasonably be expected to cause

serious damage to national security, as well as to U.S. foreign relations, and should be

withheld pursuant to FOIA Exemption (b)(1). (Dorn Decl. ¶40.)

**B.** **5 U.S.C. §552 (b)(3) in conjunction with *Central Intelligence Agency Act of 1949* – Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C.A. § 403g (West Supp. 2006)**

        The Service has properly withheld under 5 U.S.C. § 552(b)(3), in conjunction with

Section 6 of the Central Intelligence Agency Act of 1949, certain documents that contain

information relating to the functions of the CIA, including intelligence activities as well

as intelligence sources and methods, and the names of CIA employees.

         FOIA Exemption 3 allows the withholding of information prohibited from

disclosure by another statute under certain circumstances.  5 U.S.C. § 552(b)(3).  Under

this exemption, if the Court determines that a relevant statute exists and that any of the

withheld information is within the statute's coverage, the material must be withheld no

matter how unwise or self-protective the statute may be.  *See* Fund for Constitutional

Gov't v. National Archives & Records Serv., 656 F.2d 856, 868 n.29 (D.C. Cir.1981);

Goland v. CIA, 607 F.2d 339, 350 n. 65 (D.C. Cir. 1978) (sole issue for decision is the

existence of a relevant statute and the inclusion of withheld material within the statute's

coverage).

The Service has properly withheld under 5 U.S.C. § 552(b)(3), certain documents

described in paragraph 27 of the Service's Third Statement Material Facts. FOIA

Exemption (b)(3) provides that the FOIA does not apply to matters that are:

> specifically exempted from disclosure by statute (other than section 552b of this
> title), provided that such statute
>
> > (A)     requires that the matters be withheld
> > from the public in such a manner as to leave no discretion on the issue, or
> >
> > (B)     establishes particular criteria for
> > withholding or refers to particular types of matters to be withheld . . .

5 U.S.C. § 552(b)(3).

Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C.A.

§ 403g (West Supp. 2006) is an exempting statute within the meaning of exemption 3.

The Act provides that in the interests of the security of the foreign intelligence activities

of the United States and in order to further implement section 403-1(i) of Title 50, which

provides that the Director of National Intelligence shall be responsible for the protection

of intelligence sources and methods from unauthorized disclosure, the CIA shall be exempted from the provisions of any law which requires the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the CIA. (Dorn Decl. ¶23.)

In accordance with section 403-4a(d) of the National Security Act of 1947, as amended, 50 U.S.C.A. § 403-4a(d) (West Supp. 2006), foremost among the functions of the CIA is the collection of intelligence through human sources or by other appropriate means. The CIA reviewed the CIA Documents and determined that all twelve documents contain information that if disclosed would reveal the functions of the CIA, including the conduct of collection of intelligence through human sources or by other appropriate means and the names of CIA officers. In the interests of the security of the foreign intelligence activities of the United States and in order to further implement the DNI's responsibility to protect intelligence sources and methods from unauthorized disclosure, the CIA relies on the Central Intelligence Agency Act of 1949 to withhold any information that would reveal the functions of the CIA, including the collection of foreign intelligence through intelligence sources and methods, and the names of CIA officers. (Dorn Decl. ¶24.)

In contrast to Executive Order 12958, the CIA Act's statutory requirement to further protect intelligence sources and methods by protecting CIA functions and names does not require the CIA to identify or describe the damage to national security that reasonably could be expected to result from their unauthorized disclosure. (Dorn

Decl. ¶25.)  In any event, the information relating to CIA functions and intelligence

sources and methods contained in the CIA Documents that is covered by the CIA Act's

statutory requirement is the same as the information relating to intelligence sources and

methods that is covered by the Executive Order for classified information.  Therefore,

the damage to national security that reasonably could be expected to result from the

unauthorized disclosure of CIA functions and intelligence sources and methods is co-

extensive with the damage that reasonably could be expected to result from the

unauthorized disclosure of classified information. (Dorn Decl. ¶25.)

    1.  <u>Functions</u>

    All twelve documents contain information relating to functions of the CIA,

which includes intelligence activities as well as intelligence sources and methods.  Such

information is protected from disclosure by the statutory requirements established by

section 6 of the CIA Act of 1949, as amended, 50 U.S.C.A. § 403g (West Supp. 2006) and

thus is withheld under Exemption (b)(3).  The information relating to CIA functions,

including intelligence activities and intelligence sources and methods, protected by the

CIA Act is the same as that protected as classified information by Executive Order

12958.  All twelve documents contain information relating to the functions of the CIA

that is exempt from disclosure pursuant to section 6 of the CIA Act and therefore

should be withheld pursuant to FOIA Exemption (b)(3). (Dorn Decl. ¶40.)

2.    <u>Names</u>

All twelve documents also contain the names of CIA employees.  Such

information is also protected from disclosure by the statutory requirements established

by section 6 of the CIA Act of 1949.  CIA employee names (as well as employee

numbers, titles, initials, signatures, etc.) are routinely withheld because the

Agency does not normally disclose the identity and affiliation of employees who may

come into public view during the course of their duties.  Such employees may have

served under cover or in sensitive positions or operations, may continue to do so, or

may do so in the future.   Disclosure of the identity of CIA employees who work, have

worked, or may in the future work undercover, could jeopardize the employee's life or

physical safety – as well as that of the employee's family – and that of those intelligence

sources and other individuals with whom the employee has had contact.  To this end, if

an officer's cover is compromised or his name revealed, he becomes a target for hostile

intelligence services and terrorist organizations.  (Dorn Decl. ¶42.)  Accordingly, the

twelve documents contain names of CIA employees that are exempt from disclosure

pursuant to section 6 of the CIA Act and thus should be withheld pursuant to FOIA

Exemption (b)(3).


**C.    <u>5 U.S.C. § 552(b)(3) in Conjunction with 26 U.S.C. § 6103(a)</u>**

The Service has properly withheld under 5 U.S.C. § 552(b)(3), in conjunction with

26 U.S.C. § 6103(a), certain documents that consist of third party tax return information

in their entirety or portions of documents that reference third party taxpayers as described in paragraph 6 of Piersol's Declaration and paragraph 33 of the Service's Third Statement of Material Facts.  FOIA Exemption 3 allows the withholding of information prohibited from disclosure by another statute under certain circumstances. 5 U.S.C. § 552(b)(3).  Under this exemption, if the Court determines that a relevant statute exists and that any of the withheld information is within the statute's coverage, the material must be withheld no matter how unwise or self-protective the statute may be.  *See* Fund for Constitutional Gov't v. National Archives & Records Serv., 656 F.2d 856, 868 n.29 (D.C. Cir.1981); Goland v. CIA, 607 F.2d 339, 350 n. 65 (D.C. Cir. 1978) (sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage).

Section 6103 of Title 26 is an exempting statute within the meaning of exemption 3; thus, documents protected under § 6103 are exempt from disclosure.  Long v. United States, 742 F.2d 1173, 1178-79 (9th Cir. 1984) (the basic policy decision in favor of nondisclosure was one made by Congress and because its applicability is limited by "a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw"); Lehrfeld v. Richardson, 132 F.3d 1463, 1466 (D.C. Cir. 1998); Tax Analysts v. Internal Revenue Service, 117 F.2d 607, 611 (D.C. Cir. 1997).  Section 6103's prohibitions are clear.  The section provides that tax returns and return information are to be kept confidential, unless disclosure is

permitted by Title 26.  Church of Scientology of California v. Internal Revenue Service,

484 U.S. 9 (1987).  The term "return information" is broadly defined as follows:

> a taxpayer's identity, the nature, source, or amount of his
> income, payments, receipts, deductions, exemptions, credits,
> assets, liabilities, net worth, tax liability, tax withheld,
> deficiencies, overassessments, or tax payments, whether the
> taxpayer's return was, or is being examined, or subject to
> other investigation or processing, or any other data, received
> by, recorded by, prepared by, furnished to, or collected by
> the Secretary with respect to a return or with respect to the
> determination of the existence, or possible existence of
> liability (or the amount thereof) of any person under this
> title for any tax, penalty, interest, fine, forfeiture, or other
> imposition or offense . . . .

 26 U.S.C. § 6103(b)(2)(A).

The Court of Appeals has held that this definition covers "'virtually any

information collected by the Internal Revenue Service regarding a person's tax

liability.'"  Landmark Legal Foundation v. Internal Revenue Service, 267 F.3d 1132, 1135

(D.C. Cir. 2001) (quoting Allan Karnes & Roger Lirely, Striking Back at the Internal

Revenue Service:  Using Internal Revenue Code Provisions to Redress Unauthorized

Disclosures of Tax Returns or Return Information, 23 Seton Hall L.Rev. 924, 933 (1993));

see also, Lehrfield, 132 F.3d at 1467 (deferring to the Service determination that

documents it receives or creates during an initial investigation of an organization

seeking tax-exempt status is "return information").  Moreover, in the event the

document is received or collected during an investigation of a person's tax liability or a

determination of whether such an investigation should be undertaken, the entire

document is "return information"; the Service is not free to withhold only taxpayer identifying information and release the remainder.  See Church of Scientology of Cal., 484 U.S. at 12. 17; Landmark Legal Foundation, 267 F.3d at 1137 (withheld return information included not only identities of third persons requesting the Service to investigate tax-exempt status of certain entities but also the contents of the letters they wrote).  Thus, Exemption 3 broadly authorizes the withholding here of information collected or received by Service personnel in the investigation of taxpayers as well as taxpayer identifying information in documents which are not themselves return information.

The withheld information consists of the actual tax returns and attached schedules filed by or on behalf of the third party taxpayer; identifying information of a third party taxpayer consisting of, *inter alia,* the name, address and taxpayer identification number of the third party taxpayer; documents recommending investigation and/or prosecution of a third party taxpayer; all correspondence to and from a third party or the third party's representative and all documents comprising the investigative and/or audit files of the third party taxpayer.  (Piersol Decl. ¶6).  Thus, the information constitutes tax return information of the third party(ies) as defined in § 6103.  The records, therefore, are protected from disclosure by FOIA exemption 3.  *See* DeSalvo v. Internal Revenue Service, 861 F.2d 1217 (10th Cir. 1988).


**D.    5 U.S.C. § 552(b)(5)**

The Service has also justifiably claimed protection under FOIA Exemption 5 for withholding the documents, or portions thereof, described in paragraph 7 of the Piersol declaration. Section 552(b)(5) protects from disclosure under the FOIA "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As the language suggests, Exemption 5 incorporates those privileges which the government enjoys in pretrial discovery under relevant statutes and case law. See United States v. Weber Aircraft Corp., 465 U.S. 792, 799 (1984); see also, NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148 (1975) ("Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency."). Nor are the needs of a particular FOIA plaintiff relevant to whether Exemption 5 applies; only documents "normally" or "routinely" disclosable in civil discovery are outside Exemption 5. Martin v. Office of Special Counsel, Merit Systems Protection Bd., 819 F.2d 1181, 1184 (D.C. Cir. 1987) (citing Sears, Roebuck & Co., 421 U.S. at 149); see also, Weber Aircraft Corp., 465 U.S. at 799 (test is whether documents "routinely" or "normally" disclosed upon a showing of relevance). The Service has justifiably withheld the documents, or portions thereof, described in paragraphs 8-11 of the Piersol declaration based upon their protection under two of the three well-established common law privileges: (1) the attorney work product doctrine; and (2) the governmental deliberative process privilege. Cf. Tax Analysts v. Internal Revenue Service, 294 F.3d 71, 76 (D.C. Cir. 2002) (three privileges encompassed in Exemption 5).

26

1.    The Attorney Work Product Doctrine

The Service has also properly withheld documents described at paragraph 8 of the Piersol declaration and paragraph 36 of the Service's Third Material Facts pursuant to Exemption 5 and the attorney work product doctrine.  The Supreme Court first extended protection to attorney work product in Hickman v. Taylor, 329 U.S. 495 (1947).  There, the Court held that a party could not obtain from the opposing party, without a showing of necessity, written statements obtained by the opposing party's attorney and the attorney's mental impressions formed in anticipation of litigation.  Id. at 509-13.  Exemption 5 clearly incorporates the attorney work product doctrine, and that doctrine includes, at a minimum, memoranda prepared by government attorneys in anticipation of litigation setting forth the attorney's view of the case and his litigation strategy.  Sears, Roebuck & Co., 421 U.S. at 154; see also, Tax Analysts v.  Internal Revenue Service, 152 F.Supp.2d 1 (D.D.C. 2001) (authorizing withholding of Technical Assistances under Exemption 5 and attorney work product doctrine because they were prepared in anticipation of litigation), aff'd in part, rev'd in part, 294 F.3d 71 (D.C. Cir. 2002); Delaney, Midgail & Young v. Internal Revenue Service, 826 F.2d 124 (D.C. Cir. 1987) (documents properly withheld even though no litigation actually occurred). Exemption 5 authorizes withholding regardless of whether the applicable material is deliberative or factual,  Martin, 819 F.2d at 1185-86, and regardless of whether it constitutes agency working law.  Tax Analysts v. Internal Revenue Service, 152 F.Supp.2 at 18.

27

The Service has properly withheld documents here under Exemption 5 and the attorney work product doctrine. They are documents prepared by Chief Counsel and DOJ attorneys during, and in reasonable anticipation of, various judicial proceedings arising out of the investigation and subsequent prosecutions of Stonehill, Brooks and numerous third party taxpayers. (Piersol Decl. ¶8.) The information being withheld includes the mental impressions, conclusions, opinions and litigation strategy of Chief Counsel attorneys, DOJ attorneys and the investigators (including Special Agents, Revenue Agents and Revenue Service Representatives) for use in, and in anticipation of, various court proceedings. (Id.) Thus, these are clearly exempt under 5 U.S.C. § 552(b)(5) and the attorney work product privilege.

2.    The Governmental Deliberative Process Privilege

The Service has justifiably withheld the documents and portions thereof described at paragraph 13 of the Piersol declaration and paragraph 41 of the Service's Third Material Facts, under Exemption 5 in conjunction with the governmental deliberative process privilege.    Exemption 5 indisputably includes within its ambit documents falling under the governmental deliberative process privilege. Sears, Roebuck & Co., 421 U.S. at 150; EPA v. Mink, 410 U.S. 73, 87 (1973). The privilege protects "documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" Sears, Roebuck & Co., 421 U.S. at 150 (quoting Carl Zeiss Stiftung v. V.E.B. Carl Zeisee, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966)). It also protects other subjective

documents reflecting the author's personal opinions prior to agency adoption of a policy. Tax Analysts, 294 F.3d at 80. Disclosure of such documents could inhibit "'frank discussion of legal or policy matters'" leading to weaker decisions and policies. Sears, Roebuck & Co., 421 U.S. at 150; *see also*, Mink, 470 U.S. at 87; Tax Analysts, 294 F.3d at 80. In determining whether the governmental deliberative process privilege protects a particular document, that document must be both predecisional and deliberative in nature. Mapother v. Department of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993); Judicial Watch, Inc., 108 F.Supp.2d at 35.

The Service withheld drafts of documents and other records, either in part or in full, containing advisory opinions and recommendations generated during the course of Chief Counsel and DOJ attorneys' review and consideration of various legal guidance in conjunction with agency positions. (Piersol Decl. ¶9.) Additionally, the Service withheld documents that reflect the opinions or recommendations of agency personnel involved in the drafting and review of such guidance.

<u>The Documents Are "Predecisional"</u>

The Service's withholdings here meet the first of the two requirements – that the documents must be predecisional. Predecisional means "antecedent to the adoption of an agency policy." Jordan v. United States Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc). Piersol specifically states that "[a]ll of the records being withheld pursuant to the deliberative process privilege are predecisional." (Piersol Decl. ¶9.)

Piersol further elaborates on the preparation of these documents in a manner that makes clear that the documents, in fact, predate the relevant decisions: "These documents were prepared by components within the agency, primarily within Chief Counsel, to assist the lead DOJ attorney and tax court attorneys handling the various litigation cases around the country involving Stonehill, Brooks and several third party taxpayers before reaching final decisions on how certain issues would be treated." (Id.) Thus, there can be no genuine dispute that the withheld documents and portions thereof are predecisional.

The Documents Are "Deliberative in Nature"

The withheld material is also deliberative in nature. The governmental deliberative process privilege does not protect only deliberative – as opposed to factual – communications; it protects from disclosure *all* communications which would expose publicly the agency's deliberative process. Russell v. Department of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *see also*, Dudman Comm. Corp. v. Department of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987) (asking whether disclosure would expose agency decisionmaking process and discourage candid discussion); Hamilton Securities Group, Inc. v. Department of Housing and Urban Dev., 106 F.Supp.2d 23, 31 (D.D.C. 2000) (same), aff'd, 2001 WL 238162 (D.C. Cir. Feb. 23, 2001). The withheld information contains opinions and/or recommendations reflecting the "give-and-take" of the agency's deliberative processes prior to the issuance of final guidance. Cf. Hamilton Securities Group, Inc., 106 F.Supp.2d at 31. As Piersol sets forth in her declaration, the

30

withheld information contains opinions and/or recommendations reflecting the "give-and-take" of the agency's deliberative processes leading to a decision on issues affecting litigation, including but not limited to, whether to file cases in the tax and district courts and what charges should be brought in companion criminal cases. (Piersol Decl. ¶9.) Moreover, the potential for the public seeing the changes made from the draft version of a document to the final version would "stifle the creative thinking and candid exchange of ideas ..." Dudman Comm. Corp., 815 F.2d at 1569 (draft manuscript of history of Air Force in Vietnam between 1961 and 1964 properly withheld); see also, Russell, supra (draft of Air Force historical document on use of herbicides in the Vietnam War, including factual summaries, properly withheld). Disclosure of the withheld information would expose the decision-making processes of the agency, including the Office of Chief Counsel, would discourage candid discussion within the agency. (Piersol Decl. ¶9.) Additionally, with respect to the final decisions that were made by various executives within the agency regarding the positions that should be taken with respect to the cases, the final decision-makers did not adopt or incorporate the deliberations contained in these withheld documents.(Id.)

    To the extent any factual information was so inextricably connected to the deliberative material that its disclosure would cause harm to the agency's deliberations, the information was withheld. (Id.) Also, when documents contained selective facts upon which analysis, opinions and recommendations were made, such that they too, reflect agency deliberations, those facts were withheld. (Id.) Finally, the records

31

withheld under FOIA exemption (b)(5) and the deliberative process privilege were not disclosed outside the agency or the Department of Justice personnel serving as counsel in the <u>Stonehill</u> litigation.  (Id.)  Accordingly, the documents described in the Piersol declaration and the Service's Material Facts are deliberative in nature and properly withheld.

CONCLUSION

For the reasons stated above, the Service search was adequate, and its withholdings justified.  Accordingly, based upon the undisputed facts, the Service is entitled to judgment as a matter of law.  The Service therefore respectfully requests that this Court grant its partial motion for summary judgment and dismiss this action with prejudice.

//

//

//

Dated: April 23, 2007.

Respectfully submitted,

/s/ Brittney N. Campbell
DAVID M. KATINSKY
BRITTNEY N. CAMPBELL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6435

32

OF COUNSEL:

JEFFREY TAYLOR
United States Attorney

<u>CERTIFICATE OF SERVICE</u>

IT IS CERTIFIED that service of the foregoing defendant's Memorandum in

Support of Motion for Partial Summary Judgment has been made this 23rd day of April,

2007, by mailing, postage prepaid, addressed to:

> JOHN R. GERSTEIN
> ROBERT E. HEGGESTAD
> JONATHAN COHEN
> Ross, Dixon & Bell, LLP
> 2001 K Street, N.W.
> Washington, D.C. 20006-1040.


> /s/ Brittney N. Campbell
> BRITTNEY N. CAMPBELL