IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAULINE STONEHILL, Co-executor and Co-special administrator of the Estate of Harry S. Stonehill,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INTERNAL REVENUE SERVICE,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)　NO. 1:06-cv-00599 JDB<br>)<br>)<br>)<br>) |

**INTERNAL REVENUE SERVICE'S THIRD SUPPLEMENTAL STATEMENT OF
MATERIAL FACTS NOT IN GENUINE DISPUTE**

　　The Internal Revenue Service herein incorporates by reference the facts set forth in paragraphs one through 54 of the Internal Revenue Service's Statement of Material Facts Not in Genuine Dispute filed on March 19, 2007 (the "Statement of Facts"). (PACER #29.) Further, the Internal Revenue Service supplements its Statement of Facts and, pursuant to L.Civ.R. 7.1(h) and 56.1, asserts that the following additional facts are not in genuine dispute:

　　1. On March 19, 2007, the Internal Revenue Service (the "Service") filed a partial Vaughn index and a motion for partial summary judgment. (PACER #27 & #28.)

　　2. As of March 19, 2007, the Internal Revenue Service had not yet completed the Vaughn index with respect to various documents, including certain documents that required coordination and review for additional FOIA exemptions by the

Central Intelligence Agency ("CIA"). (Piersol Decl. ¶2.) The documents were previously sent to the CIA for redaction/withholding during the FOIA administrative process. At that time, the CIA classified the documents as "Secret" and made redactions prior to their release. (Id.)

3. The search for these documents is identical to the search for the documents described in paragraphs seven through 10 of the Service's Statement of Facts.

4. The Service contacted the CIA to coordinate treatment of the documents for the purposes of this litigation. (Piersol Decl. ¶3.) The following documents were returned to the CIA on January 30, 2007 for review and redactions: Chief Counsel Box 2 pages 008-050, 081-104, 106-232, 569-813; Chief Counsel Box 4 page 964; Chief Counsel Box 7 pages 001-021, 152-172; Box 16 pages 79-83; and Box 84 pages 246-249. (Id.)

### THE CIA REDACTIONS

5. This case was assigned to Marilyn A. Dorn, at the CIA. Dorn is the Deputy Chief of the Policy and Community Action Staff (PCAS) of the National Clandestine Service (NCS) of the Central Intelligence Agency. At the time Dorn reviewed the records, she was the Information Review Officer (IRO) for the NCS. She was the NCS/IRO from August 2003 to January 2007. Prior to that time, Dorn was Associate NCS/IRO for one and a half years. As NCS/IRO, Dorn was responsible for the review of records maintained by offices in the NCS which may be responsive to Freedom of Information Act (FOIA) and Privacy Act requests, and Department of

Justice requests in criminal and civil proceedings. As part of her official duties, Dorn ensured that determinations as to the release or withholding of information in CIA documents were proper and did not jeopardize CIA interests, personnel, facilities, or intelligence activities, sources and methods. Therefore, when Dorn reviewed the records discussed in this declaration, she was authorized to conduct classification reviews and to make original classification and declassification decisions. Dorn has held operational and executive positions in the CIA since 1980. (Dorn Decl. ¶1.)

6. The NCS is the organization within CIA responsible for the conduct of foreign intelligence collection activities through the clandestine use of human sources. As such, the NCS is responsible for a multitude of missions: conducting CIA's foreign intelligence and counterintelligence activities, and covert action; coordinating liaison with foreign intelligence and security services; serving as the repository for foreign counterintelligence information; supporting clandestine technical collection; and coordinating CIA support to the Department of Defense. (Dorn Decl. ¶2.)

7. While NCS/IRO, as a senior CIA official under a written delegation of authority pursuant to section 1.3(c) of Executive Order 12958, as amended[1], Dorn held original classification authority at the TOP SECRET level. Dorn was

---

[1] Executive Order 12958 was amended by Executive Order 13292. See Exec. Order No. 13292 (Mar. 28, 2003). All citations to Exec. Order No. 12958 are to the Order as amended by Exec. Order No. 13292. See Exec. Order No. 12958, 3 C.F.R. 333 (1995), *reprinted as amended* in 50 U.S.C.A. § 435 note at 180 (West Supp. 2006).

authorized, therefore to conduct classification reviews and to make original classification and declassification decisions. (Dorn Decl. ¶3.)

8. The Chief, Information Management Systems, Chief Information Officer, appointed Dorn as Records Validation Officer (RVO) for purposes of this litigation. As RVO, Dorn has authorized access to all CIA records on any subject relevant to this litigation, and is authorized to sign declarations on CIA's behalf regarding CIA records systems searches and records contents, including those located in, or containing information under the purview of, CIA directorates other than the NCS. (Dorn Decl. ¶4.)

9. Through the exercise of her official duties, she is familiar with this civil action. (Dorn Decl. ¶5.)

I. INFORMATION AT ISSUE

10. The present action is based upon Plaintiff's July 10, 1998 FOIA request to the Service. On October 10, 2002, the Service sent to CIA for coordination one 21-page Service document. (This document is the same as the document described in paragraph 11, below, as items (3) and (4).) On January 22, 2003, CIA responded to Service and stated that the CIA information in that document could be released in part with deletions made on the basis of FOIA exemptions (b)(1) and (b)(3). (Dorn Decl. ¶7.)

11. On or about January 30, 2007, the Service informed CIA that

it had twelve additional documents responsive to the request that required CIA coordination described as follows: (1) and (2) two copies of a nine page memorandum dated March 9, 1966 from William McAleer, Director, the Internal Revenue Service, to Mitchell Rogovin, Assistant Attorney General, containing a factual and legal analysis of the Stonehill and Brooks cases; (3) and (4) two copies of a twenty-one page memorandum of an interview of a United States government employee regarding Stonehill and Brooks; (5) a twenty-four page report of an interview of Robert Chandler; (6) a forty-three page set of handwritten notes by Mr. Ragland; (7), (8), and (9) three copies of a one hundred and fifteen page Memorandum Of Fact And Law; (10) a five page set of handwritten notes regarding the prosecution of the Stonehill and Brooks cases; (11) a four page set of handwritten notes regarding certain government activity; and (12) a one page cover sheet (the "CIA Documents"). (Dorn Decl. ¶8.)

12. CIA reviewed the CIA Documents and determined that each contained information that had to be withheld on the basis of FOIA exemptions (b)(1) and (b)(3). (Dorn Decl. ¶9.)

II. <u>APPLICABLE FOIA EXEMPTIONS</u>

A. <u>FOIA Exemption (b)(1)</u>

13. The authority to classify information is derived from a succession of Executive orders, the most recent of which is Executive Order 12958. The CIA reviewed the twelve documents received from Service under the criteria established

by Executive Order 12958 and determined that the information withheld on the basis of FOIA Exemption (b)(1) is in fact properly classified pursuant to the Order. (Dorn Decl. ¶11.)

14. In accordance with section 1.3(a)(2) of the Executive Order, the President designated the Director of the CIA as an official who may classify information originally as TOP SECRET.[2] At the time Dorn reviewed the documents at issue, under the authority of section 1.3(c)(2), the Director of the CIA had delegated original TOP SECRET classification authority to Dorn. Section 1.3(b) of the Executive Order provides that original TOP SECRET classification authority includes the authority to classify information originally as SECRET and CONFIDENTIAL. With respect to the information for which FOIA Exemption (b)(1) is asserted in this case, Dorn reviewed the CIA Documents and determined that they contain information that is currently and properly classified SECRET by an original classification authority. (Dorn Decl. ¶15.)

15. *U.S. Government information* – Information may be originally classified only if the information is owned by, produced by or for, or is under the control of the United States Government. With respect to the information for which FOIA Exemption (b)(1) is asserted in this case, the CIA reviewed the CIA Documents and

---

[2] Order of President, Designation under Executive Order 12958, 70 Fed. Reg. 21,609 (Apr. 21, 2005), *reprinted in* U.S.C.A. § 435 note at 192 (West Supp. 2006). This order succeeded the prior Order of President, Officials Designated to Classify National Security Information, 60 Fed. Reg. 53,845 (Oct. 13, 1995), *reprinted in* U.S.C.A. § 435 note at 486 (West 2006), in which the President similarly designated the Director of the CIA as an official who may classify information originally as TOP SECRET.

has determined that the information is owned by the U.S. Government, produced by the U.S. Government, and under the control of the U.S. Government. (Dorn Decl. ¶16.)

    16. *Categories of classified information* – Information may be classified only if it concerns one of the categories of information set forth in section 1.4 of the Executive Order. With respect to the information for which FOIA Exemption (b)(1) is asserted in this case, the CIA reviewed the CIA Documents and determined that they contain information that concerns one or more of the following classification categories in the Executive Order:

    a.    Information concerning intelligence activities or intelligence sources or methods [§ 1.4(c); and

    b.    Information concerning foreign relations or foreign activities of the United States, including confidential sources [§ 1.4(d)]. (Dorn Decl. ¶17.)

    17. *Damage to the national security* - With respect to the information for which FOIA Exemption (b)(1) is asserted in this case, the unauthorized disclosure of the CIA-originated information in the twelve IRS documents responsive to Plaintiff's FOIA request reasonably could be expected to result in serious damage to the national security, and thus the information is classified SECRET. The damage to national security that reasonably could be expected to result from the unauthorized

disclosure of this classified information is described in the relevant paragraphs below. (Dorn Decl. ¶18.)

     18.  *Proper purpose* – The CIA reviewed the CIA Documents and determined that no information has been classified in order to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security. (Dorn Decl. ¶20.)

     19.  *Marking* – the Service reviewed the CIA Documents and determined that they are properly marked in accordance with section 1.6 of the Executive Order. When the CIA received the documents, however, they were not properly marked. During the CIA's review of the documents, the CIA determined their correct classification and affixed the proper markings to them.  After the CIA marked them, each document bore on its face one of the three classification levels defined in section 1.2 of the Order; the identity, by name or personal identifier and position, of the original classification authority (in this case it was Dorn); the agency and office of origin, if not otherwise evident; declassification instructions; and a concise reason for classification that, at a minimum, cited the applicable classification categories of section 1.4.  The CIA also properly redacted the classified information subject to withholding pursuant to FOIA Exemption (b)(1) and struck out the classification

block and original classification markings to indicate that the documents, as redacted, are UNCLASSIFIED. (Dorn Decl. ¶21.)

20. The CIA Documents are handwritten notes and memoranda that contain factual and legal discussions related to the Stonehill and Brooks cases. The CIA information withheld from each of the twelve documents is the same: it is information relating to intelligence sources and methods, intelligence activities, U.S. foreign relations and activities, CIA functions, and names of CIA employees. (Dorn Decl. ¶26.)

21. *Intelligence Sources* – In this case, all twelve CIA Documents contain classified information that would reveal the identities of specific CIA sources in the Philippines in the 1960s. The revelation of the identities of these sources would not only jeopardize the individual sources and anyone with whom the sources were connected with, but also could interfere with the CIA's ability to recruit other sources or may impact the ability of CIA to maintain its current sources because the potential and current sources may fear that the CIA is not willing to protect their identities. Accordingly, the CIA determined that disclosure of information related to intelligence sources reasonably could be expected to cause serious damage to the national security and should be withheld pursuant to FOIA Exemption (b)(1). (Dorn Decl. ¶29.)

22. *Intelligence Methods* - Additionally, the information withheld in this case would identify particular intelligence methods CIA used in the Philippines in the

9

1960s, including the type of information CIA had (or may still have) an interest in, the identification of targets, and specific methods the CIA used (or may still use) to obtain the information. (Dorn Decl. ¶30.)  Nine of the CIA Documents contain information that would reveal what particular CIA intelligence collection methods were used in the Philippines and specific CIA intelligence targets in the Philippines. Thus, the CIA determined that disclosure of this information reasonably could be expected to cause serious damage to the national security and should be withheld pursuant to FOIA Exemption (b)(1). (Dorn Decl. ¶34.)

      23. *Intelligence Activities* – Additionally, nine of the twelve CIA Documents contain information that would reveal CIA intelligence activities.  These documents contain information that would reveal what type of information the U.S. collected in the Philippines, how the U.S. collected the information, and on whom or what the U.S. collected information.  (Dorn Decl. ¶36.) The effective collection of intelligence requires CIA to prevent disclosing to our adversaries the specific persons and areas in which the CIA is interested and upon which it focuses its methods and resources.  Accordingly, the CIA determined that disclosure of this information reasonably could be expected to cause serious damage to the national security and should be withheld pursuant to FOIA Exemption (b)(1). (Dorn Decl. ¶37.)

      24. *U.S. Foreign Relations and Activities* – In addition, nine of the CIA Documents contain information that would reveal the specific nature of the liaison

relationship between the United States and the Philippines that is currently and properly classified at the SECRET level pursuant to section 1.4(c) of Executive Order 12958. Dorn. Decl. ¶38.) Although the United States has officially acknowledged a liaison relationship with the Philippine N.B.I. during the time the documents address, the exact nature of the relationship has not been officially acknowledged or disclosed. (Dorn Decl. ¶38.)  The documents also contain information that would reveal U.S. foreign activities in the Philippines. (Dorn. Decl. ¶39.)

25.  Nine of the twelve CIA Documents contain information that could negatively affect U.S relations with the Philippines if disclosed and would reveal specific details about U.S. activities with and in the Philippines.  Thus, the CIA determined that disclosure of CIA-originated information responsive to Plaintiff's request which pertains to the U.S. foreign relations and U.S. foreign activities could reasonably be expected to cause serious damage to national security, as well as to U.S. foreign relations, and should be withheld pursuant to FOIA Exemption (b)(1). (Dorn Decl. ¶40.)

26.  The following documents have been withheld, in full or in part, pursuant to Exemption b(1) and have been more fully described in the document description section of the <u>Vaughn</u> index submitted to the Court:

> CC Box 2-106-114, B2CC687-B2CC695, CCBox7001-CC Box7021, CC Box 152-CCBox 172, B2CC081-B2CC104, CCBox2008-CCBox2050, B2CC115-B2CC232, B2CC569-B2CC686, B2CC696-B2CC813, Box16-079-Box16-083, Box84-246-Box84-249, CCBox40964.

11

**B.    FOIA Exemption (b)(3) in conjunction with *Central Intelligence Agency Act of 1949* – Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C.A. § 403g (West Supp. 2006)**

27. The following documents have been withheld, in full or in part, pursuant to Exemption b(3) in conjunction with section 6 of the CIA Act and have been more fully described in the document description section of the <u>Vaughn</u> index submitted to the Court:

> CC Box 2-106-114, B2CC687-B2CC695, CCBox7001-CC Box7021, CC Box 152-CCBox 172, B2CC081-B2CC104, CCBox2008-CCBox2050, B2CC115-B2CC232, B2CC569-B2CC686, B2CC696-B2CC813, Box16-079-Box16-083, Box84-246-Box84-249, CCBox40964.

### THE SERVICE REDACTIONS

28. On April 17, 2007, the CIA General Counsel returned the redacted and/or declassified documents to the Service with a Vaughn Index describing their redactions. The Service then reviewed the documents to determine if they containedadditional material exempt from disclosure.

29. After a thorough review of the documents, the Service has determined that entire documents or portions of documents are exempt from disclosure based on the following FOIA exemptions: 5 U.S.C. §552(b)(3) in conjunction with 26 U.S.C. §6103 and 5 U.S.C. §552(b)(5) on the basis of the Work Product Privilege and the Deliberative Process Privilege. (Piersol Decl. ¶5.)

## EXEMPTION 3 IN CONJUNCTION WITH §6103(a)

30. Exemption (b)(3) is being asserted in conjunction with 26 U.S.C. § 6103, as the basis for withholding certain documents, or portions of documents, that are the actual tax returns of third parties, consist of third party return information in their entirety, those that reference specific third party taxpayers or the investigations/audits thereof for violations of the Internal Revenue Code. (Piersol Decl. ¶6.)

31. Exemption (b)(3) is being asserted in conjunction with 26 U.S.C. §6103(a) to withhold the returns and return information of individuals and entities other than Stonehill and Brooks.[3] (Piersol Decl. ¶6.) The Internal Revenue Service is withholding the following types of documents and/or information: the actual tax returns and all schedules attached thereto, filed by or on behalf of the third party taxpayer; identifying information of the third party taxpayer consisting of, *inter alia*, the name, address and taxpayer identification number of the third party taxpayer; documents recommending investigation and/or prosecution of the third party taxpayer; all correspondence to and from the third party or the third party's representative; and all documents comprising the investigative and/or audit files of the third party taxpayer. (Piersol Decl. ¶6.)

32. Plaintiff has not demonstrated a material interest, nor has plaintiff furnished the Service with consents of any third party taxpayers, other than William

---

[3] Plaintiff is entitled to the returns and return information of Brooks pursuant to a Power of Attorney.

Saunders, Sr. Accordingly, plaintiff has not demonstrated its entitlement to any third party tax information. (Piersol Decl. ¶6.)

33. The following documents have been withheld, in full or in part, pursuant to Exemption b(3) in conjunction with 26 U.S.C. §6103 and have been more fully described in the document description section of the Vaughn Index submitted to the Court:

> CC Box2 -106, CC Box2- 112, CC Box2- 113, CC Box2- 687,
> CC Box2- 115, CC Box2- 116, CC Box2- 117, CC Box2- 569,
> CC Box2- 570, CC Box2- 571, CC Box2- 696, CC Box2- 697,
> CC Box2- 698, CC Box2- 218-219, CC Box2- 223, CC Box2-
> 672-673, CC Box2- 677, CC Box2- 799-800, CC Box2- 804

## EXEMPTION (b)(5)

34. The Service is also withholding certain information in the Documents that is responsive to plaintiff's FOIA request pursuant to subsection (b)(5) of the FOIA. (Piersol Decl. ¶5.)

## WORK PRODUCT DOCTRINE

35. Pursuant to FOIA subsection (b)(5) and the work product doctrine (labeled as Attorney Work Product in the Vaughn index), the Service is withholding information that was prepared by Chief Counsel and DOJ attorneys during, and in reasonable anticipation of, various judicial proceedings arising out of the investigation and subsequent prosecutions of Stonehill, Brooks and numerous third party taxpayers. The information being withheld includes the mental impressions, conclusions, opinions and litigation strategy of Chief Counsel attorneys, DOJ

attorneys and the investigators (including Special Agents, Revenue Agents and Revenue Service Representatives) for use in, and in anticipation of, various court proceedings.  Even though at the time some of the documents were created, the Service was not in litigation with the taxpayers involved in these transactions, based on the numerous transactions involving the taxpayers and the financial and punitive ramifications of disallowing the tax benefits associated with these transactions, the agency fully expected many of those taxpayers involved in these transactions would pursue legal challenges if the Service took adverse action.  (Piersol Decl. ¶8.)

36.  The following documents are being withheld in whole or in part pursuant to the Work Product Doctrine and have been more fully described in the document description section of the Vaughn index submitted to the Court:

> CCBox2- 042, CCBox2- 046-050, CCBox2- 100-102,
> CCBox2- 104, CCBox2- 112, CCBox2- 113, CCBox2- 692,
> CCBox2- 693, CCBox2- 121, CCBox2- 124, CCBox2- 125,
> CCBox2- 218-232, CCBox2- 575, CCBox2- 578, CCBox2-
> 579, CCBox2- 672-686, CCBox2- 702, CCBox2- 705,
> CCBox2- 706, CCBox2- 799-813, Box 16-079-Box16-083.

DELIBERATIVE PROCESS PRIVILEGE

37.    The Service is withholding drafts of documents and other records, either in full or in part, containing advisory opinions and recommendations generated during the course of Chief Counsel and DOJ attorneys' review and consideration of various legal guidance in conjunction with agency positions. Furthermore, to the extent other documents reflect the opinions or recommendations of agency personnel involved in the drafting and review of such

guidance, that information is also subject to the protections of the deliberative process privilege. (Piersol Decl. ¶9.)

38. All of the records being withheld pursuant to the deliberative process privilege are pre-decisional. These documents were prepared by components within the agency, primarily within Chief Counsel, to assist the lead DOJ attorney and tax court attorneys handling the various litigation cases around the country involving Stonehill, Brooks and several third party taxpayers before reaching final decisions on how certain issues would be treated. The withheld information is also deliberative as it contains opinions and/or recommendations reflecting "the give-and-take" of the agency's deliberative processes leading to a decision on issues affecting litigation, including but not limited to, whether to file cases in the tax and district courts and what charges should be brought in companion criminal cases. The disclosure of these documents would expose the decision making processes of the agency, including the Office of Chief Counsel, in such a way as to discourage candid discussion within the agency and undermine its ability to perform its tax administration function. Further, with respect to the final decisions that were made by various executives within the agency regarding the positions that should be taken with respect to the cases, the final decision-makers did not adopt or incorporate the deliberations contained in these withheld documents by reference. (Piersol Decl. ¶9.)

39. Further, to the extent any factual information was so inextricably connected to the deliberative material that its disclosure would cause harm to the agency's deliberations, the information was withheld. Also, when documents contained selective facts upon which analysis, opinions and recommendations were made, such that they too, reflect agency deliberations, those facts were also withheld. (Piersol Decl. ¶9.)

40. Finally, the records withheld under FOIA exemption (b)(5) and the deliberative process privilege were not disclosed outside the agency or the Department of Justice personnel. (Piersol Decl. ¶9.)

41. The following documents are being withheld in whole or in part pursuant to the deliberative process privilege and have been more fully described in the document description section of the Vaughn Index submitted to the Court:

> CCBox2- 042, CCBox2- 046-050, CCBox2- 100-102,
> CCBox2- 104, CCBox2- 112, CCBox2- 113, CCBox2- 692,
> CCBox2- 693, CCBox2- 121, CCBox2- 124, CCBox2- 125,
> CCBox2- 218-232, CCBox2- 575, CCBox2- 578, CCBox2-
> 579, CCBox2- 672-686, CCBox2- 702, CCBox2- 705,
> CCBox2- 706, CCBox2- 799-813, Box 16-079-Box16-083.

Dated: April 23, 2007.

//
//
//
//
//
//
//
//

                Respectfully submitted,

                /s/ Brittney N. Campbell
                DAVID M. KATINSKY
                BRITTNEY N. CAMPBELL
                Trial Attorney, Tax Division
                U.S. Department of Justice
                P.O. Box 227
                Ben Franklin Station
                Washington, D.C. 20044
                Telephone: (202) 307-6435

OF COUNSEL:
JEFFREY TAYLOR
United States Attorney

CERTIFICATE OF SERVICE

IT IS CERTIFIED that service of the foregoing defendant's supplemental statement of material facts has been made this 23rd day of April, 2007, by mailing, postage prepaid, addressed to:

>JOHN R. GERSTEIN
>ROBERT E. HEGGESTAD
>JONATHAN COHEN
>Ross, Dixon & Bell, LLP
>2001 K Street, N.W.
>Washington, D.C. 20006-1040.

>/s/ Brittney N. Campbell
>BRITTNEY N. CAMPBELL