review of the documents, I determined their correct classification and affixed the proper markings to them. After I marked them, each document bore on its face one of the three classification levels defined in section 1.2 of the Order; the identity, by name or personal identifier and position, of the original classification authority (in this case it was me); the agency and office of origin, if not otherwise evident; declassification instructions; and a concise reason for classification that, at a minimum, cited the applicable classification categories of section 1.4. I also properly redacted the classified information subject to withholding pursuant to FOIA Exemption (b)(1) and struck out the classification block and original classification markings to indicate that the documents, as redacted, are UNCLASSIFIED.

B.    **FOIA Exemption (b)(3)**

22.    FOIA Exemption (b)(3) provides that the FOIA does not apply to matters that are:

specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute

(A)  requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or

(B)  establishes particular criteria for

11

withholding or refers to particular types of
matters to be withheld . . .

5 U.S.C. § 552(b)(3). I reviewed the twelve IRS documents
responsive to Plaintiff's request that contain CIA-
originated information and determined that there is one
relevant withholding statute.

23. *Central Intelligence Agency Act of 1949* – Section
6 of the Central Intelligence Agency Act of 1949, as
amended, 50 U.S.C.A. § 403g (West Supp. 2006), provides that
in the interests of the security of the foreign
intelligence activities of the United States and in order
to further implement section 403-1(i) of Title 50, which
provides that the DNI shall be responsible for the
protection of intelligence sources and methods from
unauthorized disclosure, the CIA shall be exempted from the
provisions of any law which requires the publication or
disclosure of the organization, functions, names, official
titles, salaries, or numbers of personnel employed by the
CIA. In accordance with section 403-4a(d) of the National
Security Act of 1947, as amended, 50 U.S.C.A. § 403-4a(d)
(West Supp. 2006), foremost among the functions of the CIA
is the collection of intelligence through human sources or
by other appropriate means.

24. I reviewed the twelve IRS documents

responsive to Plaintiff's request that contain CIA-
originated information and determined that all twelve
documents contain information that if disclosed would
reveal the functions of the CIA, including the conduct of
collection of intelligence through human sources or by
other appropriate means and the names of CIA officers.  In
the interests of the security of the foreign intelligence
activities of the United States and in order to further
implement the DNI's responsibility to protect intelligence
sources and methods from unauthorized disclosure, the CIA
relies on the Central Intelligence Agency Act of 1949 to
withhold any information that would reveal the functions of
the CIA, including the collection of foreign intelligence
through intelligence sources and methods, and the names of
CIA officers.

    25.  In contrast to Executive Order 12958, the
CIA Act's statutory requirement to further protect
intelligence sources and methods by protecting CIA
functions and names does not require the CIA to identify or
describe the damage to national security that reasonably
could be expected to result from their unauthorized
disclosure.  In any event, the information relating to CIA
functions and intelligence sources and methods contained in
the twelve IRS documents responsive to Plaintiff's request

that contain CIA-originated information that is covered by the CIA Act's statutory requirement is the same as the information relating to intelligence sources and methods that is covered by the Executive Order for classified information. Therefore, the damage to national security that reasonably could be expected to result from the unauthorized disclosure of CIA functions and intelligence sources and methods is co-extensive with the damage that reasonably could be expected to result from the unauthorized disclosure of classified information, which is described in the relevant paragraphs below. See ¶¶ 26-34.

## III.    INFORMATION TO BE WITHHELD

### A. FOIA EXEMPTION (b)(1)

26.  As listed above, the twelve IRS documents at issue are handwritten notes and memoranda that contain factual and legal discussions related to the Stonehill and Brooks cases. The CIA information withheld from each of the twelve documents is the same: it is information relating to intelligence sources and methods, intelligence activities, U.S. foreign relations and activities, and CIA functions, and the names of CIA employees.

27.  *Intelligence Sources* - One of CIA's primary functions is to gather intelligence. To accomplish this,

the CIA must rely on information from knowledgeable sources that the CIA can obtain only under an arrangement of absolute secrecy. Intelligence sources will furnish information only when they are confident that they are protected from retribution by absolute secrecy surrounding the source-CIA relationship. In other words, intelligence sources must be certain that the CIA will do everything in its power to prevent the public disclosure of their association with the CIA. The CIA relies on a variety of types of intelligence sources to collect foreign intelligence critical to our national security, including individual human sources. Intelligence sources, be they present or future, will not work for or cooperate with the CIA if they are convinced or believe that the CIA will not or cannot protect their identities. The consequences of disclosure of the source relationship are often swift and far-ranging, from economic reprisals to harassment, imprisonment, or possibly even death. Disclosure does not only cause harm to the source, but places in jeopardy the lives of every individual with whom the source has had contact, including his family and friends.

28. Although the twelve documents at issue are more than forty years old, the source relationships still must be protected. The sources, whether current sources or

former sources, could still be subjected to retribution if their identity and relationship with CIA were disclosed. In addition, disclosure of any source also risks the loss of other sources, current and future, who understandably are reluctant to believe the CIA's assurances that their relationship will be kept secret. If those sources learn that the CIA publicly revealed the source relationships at issue here - or any other source relationship - those sources would be hesitant to trust the CIA to protect their relationship and so could terminate it. The loss of such intelligence sources, and the accompanying loss in critical intelligence which they provide, would have serious effects upon the national security of this country.

29. In this case, all twelve IRS documents contain classified information that would reveal the identities of specific CIA sources in the Philippines in the 1960s. As stated above, revelation of the identities of these sources would not only jeopardize the individual sources and anyone with whom the sources were connected with, but also could interfere with the CIA's ability to recruit other sources or may impact the ability of CIA to maintain its current sources because the potential and current sources may fear that the CIA is not willing to protect their identities. Accordingly, I determined that disclosure of information

related to intelligence sources reasonably could be expected to cause serious damage to the national security and should be withheld pursuant to FOIA Exemption (b)(1).

30.  *Intelligence Methods* - Additionally, the information withheld in this case would identify particular intelligence methods CIA used in the Philippines in the 1960s, including the type of information CIA had (or may still have) an interest in, the identification of targets, and specific methods the CIA used (or may still use) to obtain the information.

31.  Generally, intelligence methods are the means by which, and the manner in which, an intelligence agency accomplishes its mission.  One of the primary missions of foreign intelligence services is to discover the particular methods that the CIA uses.  To this end, foreign intelligence services scour open sources for officially released intelligence information.  These services are capable of gathering information from a myriad of sources, analyzing this information, and deducing means to defeat CIA collection efforts from disparate and seemingly unimportant details.  As such, a particular intelligence method's use in a particular situation, in addition to the method itself, must be protected.

32.  A particular intelligence method is effective

only so long as it remains unknown and unsuspected to its target. When an intelligence method is revealed, the target will likely take countermeasures. Once the nature of an intelligence method, including the specific target of collection, or the fact of its use in a certain situation, is discovered, its continued successful use is in serious jeopardy.

33. Accordingly, CIA must protect its methods from disclosure because such information would be of material assistance to those who would seek to penetrate, detect, prevent, or damage U.S. intelligence operations. Knowledge of or insight into specific intelligence collection methods would be of invaluable assistance to those who wish to detect, penetrate, counter, or evaluate CIA's activities and collection efforts.

34. In this case, the classified information at issue may reveal intelligence methods of collection such as if, when, and how the CIA collects certain intelligence information. Nine of the IRS documents contain information that would reveal what particular CIA intelligence collection methods were used in the Philippines and specific CIA intelligence targets in the Philippines. The revelation of these specific CIA intelligence methods and targets, although set out in documents more than forty

18

years old, would give hostile foreign intelligence services and current intelligence targets insight into who or what the CIA was interested in and where the CIA concentrated its collection efforts in the Philippines during the 1960s. Additionally, the revelation of this information might provide hostile foreign intelligence services with information that could help them determine current intelligence methods and targets. The CIA continues to use many of the intelligence methods and to collect against many of the same targets as it did in the 1960s. Thus, I determined that disclosure of this information reasonably could be expected to cause serious damage to the national security and should be withheld pursuant to FOIA Exemption (b)(1).

35. *Intelligence Activities* – Additionally, nine of the twelve IRS documents contain information that would reveal CIA intelligence activities. Except in exceptional circumstances, CIA does not reveal the existence of any specific intelligence activities. CIA's covert intelligence interest in certain targets in a specific country also represents an intelligence activity, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security.

36. To disclosure the existence (or non-existence) of

19

a particular intelligence collection effort, such as those
directed at a specific country or specific individuals,
would reveal U.S. intelligence targets, needs, priorities,
and capabilities to those who actively seek to take
advantage of any U.S. national security weakness. The
damage that would be caused by such an admission is clear.
Hostile organizations, such as foreign intelligence
services, would be advised that CIA had targeted their
activities and information; future intelligence collection
operations would be made more difficult by such a
revelation and, as a result, the conduct of such operations
would become even more dangerous. Nine of the twelve IRS
documents contain information that would reveal what type
of information the U.S. collected in the Philippines, how
the U.S. collected the information, and on whom or what the
U.S. collected information.

37. As stated above, the effective collection of
intelligence requires CIA to prevent disclosing to our
adversaries the specific persons and areas in which the CIA
is interested and upon which it focuses its methods and
resources. Thus, I determined that disclosure of this
information reasonably could be expected to cause serious
damage to the national security and should be withheld
pursuant to FOIA Exemption (b)(1).

38. *U.S. Foreign Relations and Activities* – In addition, nine of the IRS documents contain information that would reveal the specific nature of the liaison relationship between the United States and the Philippines that is currently and properly classified at the SECRET level pursuant to section 1.4(c) of Executive Order 12958. Although the United States has officially acknowledged a liaison relationship with the Philippine N.B.I. during the time the documents address, the exact nature of the relationship has not been officially acknowledged or disclosed. Disclosure of this information, even though old, could damage U.S. foreign relations with the Philippines. The U.S. currently enjoys a good relationship with the Philippines and the Philippines expects the U.S. not to disclose details of that relationship. If the U.S. did disclose those details, the Philippine government might take action against the U.S. and its citizens who are in the Philippines. For example, if details of this relationship were revealed, the Philippines could curtail its relationship with the U.S. Additionally, if the details of this relationship were disclosed, other foreign services with whom CIA has a relationship would tend to believe that CIA is unable or unwilling to keep the relationship with those services secret and could limit or

terminate those relationships, resulting in a loss of valuable intelligence. Additionally, foreign governments that are considering entering into a similar relationship with CIA might decide not to do so.

39. Nine of the IRS documents also contain information that would reveal U.S. foreign activities in the Philippines, as discussed above. Revelation of those activities could cause damage, as described in paragraphs 30-37, above.

40. As stated, nine of the twelve IRS documents contain information that could negatively affect U.S relations with the Philippines if disclosed and would reveal specific details about U.S. activities with and in the Philippines. Thus, I determined that disclosure of CIA-originated information responsive to Plaintiff's request which pertains to the U.S. foreign relations and U.S. foreign activities could reasonably be expected to cause serious damage to national security, as well as to U.S. foreign relations, and should be withheld pursuant to FOIA Exemption (b)(1).

## B.    FOIA EXEMPTION (b)(3)

41. *Functions* - All twelve documents also contain information relating to functions of the CIA, which includes intelligence activities and well as intelligence

22

sources and methods. Such information is protected from disclosure by the statutory requirements established by section 6 of the CIA Act of 1949, as amended, 50 U.S.C.A. § 403g (West Supp. 2006), described in paragraphs 22-25, and thus is withheld under Exemption (b)(3). The information relating to CIA functions, including intelligence activities and intelligence sources and methods, protected by the CIA Act is the same as that protected as classified information by Executive Order 12958, and is described in paragraphs 26-37, above. Thus, I determined that all twelve documents contain information relating to the functions of the CIA that is exempt from disclosure pursuant to section 6 of the CIA Act and therefore should be withheld pursuant to FOIA Exemption (b)(3).

42. *Names* - All twelve documents also contain the names of CIA employees. Such information is also protected from disclosure by the statutory requirements established by section 6 of the CIA Act of 1949, as described in paragraphs 22-25, above. CIA employee names (as well as employee numbers, titles, initials, signatures, etc.) are routinely withheld because the Agency does not normally disclose the identity and affiliation of employees who may come into public view during the course of their duties. Such employees may have served under cover or in

sensitive positions or operations, may continue to do so, or may do so in the future.

43.    Disclosure of the identity of CIA employees who work, have worked, or may in the future work undercover, could jeopardize the employee's life or physical safety – as well as that of the employee's family – and that of those intelligence sources and other individuals with whom the employee has had contact.  To this end, if an officer's cover is compromised or his name revealed, he becomes a target for hostile intelligence services and terrorist organizations.

44.    Thus, I determined during my review that all twelve documents contain names of CIA employees that are exempt from disclosure pursuant to section 6 of the CIA Act and thus should be withheld pursuant to FOIA Exemption (b)(3).

## IV.  CONCLUSION

45.    For the reasons set forth above, the CIA information contained in the twelve documents forwarded to CIA is properly withheld on the basis of FOIA Exemptions (b)(1) and (b)(3).

* * * *

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of April, 2007.


Marilyn A. Dorn
Records Validation Officer
Central Intelligence Agency