UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULINE STONEHILL, Co-executor          )
and Co-special administrator of the     )
Estate of Harry S. Stonehill,           )
                                        )
                    Plaintiff,          )        Case No. 1:06-cv-599 (JDB)
                                        )
        v.                              )        Honorable John D. Bates
                                        )
INTERNAL REVENUE SERVICE,               )
                                        )
                    Defendant.          )
                                        )

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

356950 v 1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ IV

INTRODUCTION ........................................................................................................... 1

FACTS AND PROCEDURAL HISTORY ......................................................................... 8

I.    THE FOIA ADMINISTRATIVE PROCEEDING ..................................................... 8

      A.    The IRS Produced Five Documents in Response to Plaintiff's July 10, 1998
            FOIA Request .......................................................................................... 8

      B.    Plaintiff's FOIA Appeal was Denied by the IRS Based on Its Claim that
            Additional Responsive Documents "Could not be Located." ......................... 9

      C.    On March 15, 2001, the IRS Disclosure Officer Revealed That   Documents
            Responsive to the July 10, 1998 FOIA Were Located at the Office of the
            Assistant Chief Counsel, Office of Intelligence Operations............................ 9

      D.    The IRS "Discovery" of 92 Boxes of Documents Responsive to Plaintiff's
            July 10, 1998 FOIA Request. .................................................................... 10

      E.    The IRS List of Withheld Documents Identified Six Documents Withheld
            Based on its Assertion of Attorney-Work Product and Attorney-Client
            Privilege and the Confidential Informant Privilege........................................ 11

      F.    The IRS Appeals Decision .......................................................................... 12

      G.    The Underlying Litigation .......................................................................... 13

            1.    Plaintiff's Rule 60(b)(6) Motion .......................................................... 13

            2.    The Ninth Circuit Court of Appeals Reversal of the District Court's
                  Decision Denying Plaintiff's Rule 60(b) Motion .................................. 13

            3.    The District Court Ordered the Government to Produce all Relevant
                  Documents Withheld from the 92 IRS Boxes ....................................... 14

            4.    The Plaintiff's Motion to Compel Production of Documents Withheld
                  From the 92 Boxes. .......................................................................... 16

                  a)    The Court Rejected the Government's Assertion of Attorney-Client
                        Privilege and Work-Product Doctrine ......................................... 16

                  b)    The Court Denied Plaintiff's Motion to Compel Production of
                        Third-Party Taxpayer Information and Treaty Obligation
                        Information and Confidential Informant Information. .................... 17

                  c.)   The Court Denied Plaintiff's Motion to Compel Production of
                        Confidential Informant Information Redacted by the CIA.............. 18

                  d.)   The Court Allowed the Government to Redact IRS Documents
                        Based on Relevance Objections.................................................. 18

      H.    This Litigation .......................................................................................... 19

LEGAL STANDARD .................................................................................................20

    A.   Standard for Motion for Summary Judgment.............................................20

    B.   General Notions Under FOIA.....................................................................21

ARGUMENT.............................................................................................................22

II.   THE DOCTRINE OF COLLATERAL ESTOPPEL PREVENTS THE
      GOVERNMENT FROM ASSERTING THE ATTORNEY WORK-PRODUCT
      AND ATTORNEY-CLIENT PRIVILEGE AS THE BASIS FOR
      WITHHOLDING DOCUMENTS FROM THE PLAINTIFF IN THIS
      PROCEEDING...........................................................................................22

    A.   The Issue of Whether the Attorney-Work-Product and/or Attorney-Client
          Privilege Prevent Disclosure of Documents Withheld by the IRS Was
          Contested by the Parties and Submitted for Judicial Determination in
          Stonehill. .................................................................................................23

    B.   The District Court in Stonehill Determined that the Attorney-Client Privilege
          and Work-Product Doctrine do not Prevent Disclosure of Documents
          Withheld by the IRS. ................................................................................25

          1.   The Court's December 20, 2005 Decision Rejected the Government's
               Claim of Attorney Work Product and Attorney-Client Privilege.........................26

          2.   The Court's December 20, 2005 Decision is a Final Order for Purposes
               of Collateral Estoppel ...........................................................................27

    C.   Precluding the IRS from Relitigating  the Issue of Attorney Work-
          Product/Attorney-Client Privilege  Does Not Work a Basic Unfairness to the
          IRS. .........................................................................................................29

III.  THE GOVERNMENT HAS WAIVED ANY CLAIM OF PRIVILEGE NOT
      ASSERTED IN THE ORIGINAL DISTRICT COURT PROCEEDING...........................30

    A.   The IRS Has Waived the Deliberative Process Privilege.............................31

    B.   The IRS has Waived any Claim of Attorney Work-Product Doctrine Not
          Asserted in the Initial District Court Proceeding......................................32

    C.   The IRS has Waived any Claim of 6103 Third Party Taxpayer Return
          Information Not Asserted in the Initial District Court Proceeding ...............32

    D.   There are No Extraordinary Circumstances Justifying the IRS Assertion of
          New Exemptions in This proceeding..........................................................33

          1.   The Government's Failure to Assert FOIA Exemptions in the Original
               District Court proceeding was Not the Result of Error and it Does Not
               involve National Security or Serious Privacy Issues...........................................33

IV.  DOCUMENTS WITHHELD OR REDACTED BY THE GOVERNMENT
      BASED ON  RELEVANCE OBJECTIONS ARE NOT EXEMPT FROM
      DISCLOSURE ..........................................................................................35

A.    The Government's Relevance Redactions, Approved by the District Court In Stonehill, Are Not Exempt From Disclosure Under FOIA ...........................................36

B.    All Documents Withheld in Full Based on Relevance Objections Must be Produced. ...........................................................................................................................38

V.    THERE IS NO BASIS FOR THE FBI'S ASSERTION OF (B)(6)-2 AND (B)(7)(C)- TO PROTECT THE PRIVACY INTERESTS OF IRS AGENTS WHO PARTICIPATED WITH THE FBI IN THE STONEHILL INVESTIGATION. ...............39

VI.    CIA REDACTIONS ...........................................................................................................41

VII.   THIRD-PARTY TAX PAYER AND RETURN INFORMATION ...................................42

VIII.  TREATY INFORMATION ...............................................................................................42

IX.    THERE IS NO BASIS FOR REQUIRING THE PLAINTIFF TO PAY ADVANCE SEARCH COSTS TO IDENTIFY DOCUMENTS THAT HAVE ALREADY BEEN LOCATED OR TO PAY FOR TRANSCRIPTS THAT ARE IN THE POSSESSION OF GOVERNMENT ATTORNEYS REPRESENTING THE IRS ...............................................................................................................................43

CONCLUSION ...............................................................................................................................44

## TABLE OF AUTHORITIES

### FEDERAL CASES

Beck v. DOJ,
    997 F.2d 1489 (D.C. Cir. 1993)...............................................................................40

In re Brown,
    951 F.2d 564 (3d Cir. 1991) .................................................................................28

Crooker v. ATF,
    670 F.2d 1051 (D.C. Cir. 1981)............................................................................31

Dyndul v. Dyndul,
    620 F.2d 409 (3d Cir. 1980) .................................................................................28

Founding Church of Scientology of Washington, D.C., Inc. v. Smith,
    721 F.2d 828 (D.C. Cir. 1983)..............................................................................21

Iglesias v. CIA,
    525 F. Supp. 547 (D.D.C. 1981)......................................................................passim

Jordan v. United States Department of Justice,
    591 F.2d 753 (D.C. Cir. 1978), overruled on other grounds by Crooker v.
    Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1053 (D.C. Cir.
    1981) (en banc) ....................................................................................................31

King v. U.S. Department of Justice,
    830 F.2d 210 (D.C. Cir. 1987)..............................................................................41

LaRouche v. U.S. Department of Treasury,
    112 F. Supp. 2d 48 (D.D.C. 2000)..................................................................passim

Mack v. Department of Navy,
    259 F. Supp. 2d 99 (D.D.C. 2003)..................................................................20, 21

Maydak v. U.S. Department of Justice,
    218 F.3d 760 (D.C. Cir. 2000).........................................................................passim

Maydak v. U.S. Department of Justice,
    254 F. Supp. 2d 23 (D.D.C. 2003)..................................................................20, 21

McCutchen v. U.S. Department of Health & Human Services,
    30 F.3d 183 (D.C. Cir. 1994)................................................................................21

McLaughlin v. Bradlee,
    803 F.2d 1197 (D.C. Cir. 1986)..........................................................................1, 22

Metromedia Co. v. Fugazy,
    983 F.2d 350 (2d Cir. 1992), cert. denied, 508 U.S. 952, 124 L. Ed. 2d 662,
    113 S. Ct. 2445 (1993)........................................................................................28

National Archives & Records Admininstration v. Favish,
    541 U.S. 157 (2004) ..........................................................................................40

Otherson v. Department of Justice, I.N.S.,
    711 F.2d 267 (D.C. Cir. 1983)...........................................................................30

Piper v. U.S. Department of Justice,
    294 F. Supp. 2d 16 (D.D.C. 2003), ), as amended, 428 F. Supp. 2d 1 (D.D.C.
    2006), aff'd, 222 Fed. Appx. 1 (D.C. Cir. 2007), pet. for cert. filed, 75
    U.S.L.W. 3610 (U.S. May 3, 2007 (No. 06-1469) .................................................20, 21

Ryan v. Department of Justice,
    617 F.2d 781 (D.C. Cir. 1980)...........................................................................31

Senate of Puerto Rico ex rel Judiciary Committee v. U.S. Department of Justice,
    823 F.2d 574 (D.C. Cir. 1987)...........................................................................31

Stern v. FBI,
    737 F.2d 84 (D.C. Cir. 1984).............................................................................21

In re Subpoena Issued to Commodity Futures Trading Commission,
    370 F. Supp. 2d 201 (D.C. 2005), aff'd in part on other grounds, 439 F.3d 740
    (D.C. Cir. 2006)................................................................................................22

Washington Post Co. v. U.S. Department of Health & Human Services,
    795 F.2d 205 (D.C. Cir. 1986)...........................................................................30

Yamaha Corp. of America v. United States,
    961 F.2d 245 (D.C. Cir. 1992)..........................................................................5, 22

## STATE CASES

Lyndon LaRouche, Jr. v. U.S. Department of Justice,
    No. 90-2753 (HHG), 1993 WL 388601 (D.D.C. June 25, 1993) ...............................28

SEC v. R. J. Reynolds Tobacco Holdings, Inc.,
    No. MISC.A.03-1651 (JDB), 2004 WL 3168281 (D.D.C. June 29, 2004)..........35, 36

Thompson v. Department of Navy,
    No. 95-347 (RMU), 1997 WL. 527344 (D.D.C. Aug. 18, 1997) ............................6, 35

## DOCKETED CASES

United States v. Stonehill,
    No. 65-127 (C.D. Cal.) ...........................................................................................passim

## FEDERAL STATUTES

5 U.S.C. § 552 (b)(5) ..........................................................................................passim

26 U.S.C. § 6103 ................................................................................................passim

26 U.S.C. § 6105 ................................................................................................passim

Fed. R. Civ. P. 56(c) ................................................................................................20

## MISCELLANEOUS

Federal Rule of Civil Procedure 60(b)(6) ....................................................................3, 13

Moore's Federal Practice 3d, § 132.03[5][b][i] ................................................................28

Restatement (Second) of Judgments § 27 (1982)............................................................22

**INTRODUCTION**

For more than nine years, the Internal Revenue Service ("IRS") has vigorously resisted producing documents responsive to a Freedom of Information Act ("FOIA") request filed by Harry S. Stonehill ("Stonehill")[1] on July 10, 1998. During this period, the facts and issues relevant to the claims of privilege asserted by the IRS as the basis for withholding thousands of pages of documents, were litigated and finally decided by the District Court in United States v. Stonehill, No. 65-127 (C.D. Cal.) ("Stonehill")on December 10, 2005. Summary judgment is appropriate in this proceeding for several reasons including: (1) the District Court's December 20, 2005 order estopps the IRS from relitigating the issues of attorney-work product doctrine and attorney-client privilege;[2] (2) the IRS has waived the deliberative process privilege because it was not asserted as a basis for withholding the same documents in the original District Court proceeding; and (3) the documents withheld or redacted in the original District Court proceeding based on relevance objections are not exempt from disclosure in an FOIA proceeding.

Stonehill's July 10, 1998 FOIA request[3] sought documents from the Internal Revenue Service ("IRS") relating to the United States' involvement in raids conducted by the

---

[1] Mr. Stonehill died on March 20, 2002. Stonehills wife, Pauline Stonehill ("Plaintiff"), is the Co-executor and Co-special administrator of the Estate of Harry S. Stonehill.

[2] See McLaughlin v. Bradlee, 803 F.2d 1197, 1201 (D.C. Cir. 1986)

[3] The July 10, 1998 FOIA request was also filed on behalf of Stonehill's business partner Robert P. Brooks ("Brooks"). See Declaration of Robert E. Heggestad dated September 7, 2007 ("Heggestad Decl.") ¶ 2, Ex. 1. Stonehill died on March 20, 2002. See Heggestad Decl. ¶ 16.

Philippine National Bureau of Investigation ("NBI") on 17 of Stonehill's businesses in Manila on March 2, 1962. [4] On October 14, 1980, following almost 20 years of litigation, a judgment of $17.6 million was entered against Stonehill and his business partner Robert P. Brooks ("Brooks"). Although the Stonehill litigation involved tens of thousands of pages of Government correspondence and files relating to Stonehill and Brooks, on December 11, 1998, the IRS informed the Plaintiff that only five documents "responsive" to his FOIA request (e.g. documents related to Stonehill, Brooks or U.S. Tobacco Co.) could be located. The IRS assured Stonehill that the IRS had conducted "a thorough search of all available records under the jurisdiction of the Assistant Commissioner (International)."[5]

In response to FOIA requests and litigation, Stonehill eventually obtained hundreds of IRS documents related to the Government's investigation of Stonehill which were produced by the State Department, the Federal Bureau of Investigation ("FBI") and the Department of Justice Tax Division ("DOJ").[6] These documents revealed that IRS and FBI agents had presented false testimony a bout the United States' involvement in the raids during the District Court proceedings on Stonehill's motions to suppress filed in 1967, 1971 and 1974.[7] On

---

[4] Although the raids were subsequently held to be illegal by the Philippine and U.S. courts, the IRS was allowed to use the documents seized in the raids to support a net worth civil tax case filed against Stonehill and his business partner, Robert P. Brooks ("Brooks") on January 25, 1965. United States v. Stonehill, No. 65-127 (C.D. Cal.) ("Stonehill").

[5] See Heggestad Decl. ¶ 3, Ex. 2.

[6] See Heggestad Decl. ¶ 8.

[7] See Heggestad Decl. ¶ 8.

October 2, 2000, Stonehill filed a Rule 60(b)(6) motion in the District Court to vacate the judgment based on the Government's fraud on the Court.[8]

On March 15, 2001, in the midst of the Rule (60)(b) proceeding, Stonehill discovered that documents responsive to his 1998 FOIA request were located in the IRS Chief Counsel's office and requested that the IRS conduct a new search for these documents.[9] On May 18, 2001, the IRS informed Stonehill that eight boxes of documents had been located at the IRS Chief Counsel's office.[10] On September 28, 2001, one month after the District Court had denied the Plaintiff's Rule 60 (b)(6) motion,[11] the IRS reported to Stonehill that it had "discovered" an additional 86 boxes of documents.[12]

On December 19, 2002, the Court of Appeals reversed the District Court's decision, and directed the District Court to assist the Plaintiff in obtaining FOIA documents which had been withheld by the IRS from the 92 boxes.[13] On December 19, 2003, the District Court ordered the Government to produce all documents withheld from the 92 boxes of IRS

---

[8] On October 2, 2000, the Plaintiff filed a Motion to Vacate Judgments pursuant to Federal Rule of Civil Procedure 60(b)(6) and the Court's Inherent Power to Address Fraud on the Court ("Rule 60(b) motion") in the District Court for the Central District of California, United States v. Stonehill, No. 65-127 (C.D. Cal.) ("Stonehill"). See Heggestad Decl. ¶ 8. The Stonehill proceeding in California was consolidated with the proceedings in Hawaii and Oregon and transferred to the District Court in Portland, Oregon.

[9] See Heggestad Decl. ¶¶ 10-11.

[10] See Heggestad Decl. ¶ 12.

[11] On August 28, 2001, the District Court denied Stonehill's motion to stay the proceedings pending the IRS production and the completion of his review of the eight boxes of documents. See Heggestad Decl. ¶ 13, Ex.

[12] See Heggestad Decl. ¶ 14, Exs. 6, 7.

[13] See Heggestad Decl. ¶ 19, Ex. 11.

documents; the Court stated that although the Government would be allowed to assert privileges, he could not imagine any privileges that would apply.[14]

During the three years following the Court of Appeals remand, the facts and issues relating to the Government's various claims of privilege asserted as the basis for withholding documents from the 92 boxes were vigorously litigated by the parties.  On March 24, 2005, Stonehill filed a motion to compel production of approximately 2,000 documents withheld by the Government based on claims of attorney-work product doctrine and attorney-client privilege, the confidential informant privilege, the 6103 third-party tax-payer return information and 6105 treaty information privilege and Rule 6(e) of the Federal Rules of Criminal Procedure.[15]  On December 20, 2005,  the District Court issued an order granting in-part Stonehill's motion to compel.  The District Court rejected the Government's assertion of attorney-work product and attorney-client privilege as a basis for withholding documents from Stonehill and ordered the Government to produce all documents relevant to Stonehill's claim of fraud on the Court.[16]  The District Court upheld the Government's 6103 and 6105 privilege claims and allowed certain redactions made by the CIA.  Finally, the Court allowed the Government to withhold or redact documents based on the Government's objections as to relevance.

The documents withheld from the Plaintiff in this proceeding based on the IRS's assertion of attorney-work product doctrine and attorney-client privilege, the deliberative

---

[14] See Heggestad Decl. ¶ 21, Exs. 13, 14.

[15] See Heggestad Decl. ¶ 26.

[16] See Heggestad Decl. ¶ 30, Ex. 27.

process privilege, (b)(6)-2 and (b)(7)(C)- privacy interests of IRS agents and 6103 third party

tax return privilege are not justified on multiple grounds, including the following:

**The Government is estopped from asserting attorney-work product doctrine and**

**attorney- client privilege.**  The doctrine of collateral estoppel precludes the Government from

asserting attorney-work product doctrine and attorney-client privilege as a basis for

withholding documents from the Plaintiff in this proceeding because: (1) the facts and issues

related to those privileges were fully litigated by the parties in the initial District Court

proceeding during a period of almost three years; (2) the issues were determined in the initial

District Court proceeding which resulted in an order rejecting the Government's claims of

attorney work product doctrine and attorney-client privilege; and (3) the preclusion in this case

does work an unfairness on the Government because the stakes in initial District Court

proceeding involving Government fraud on the Court are far greater for the Government than

they are in this proceeding.[17] The District Court's order in Stonehill is a final decision for

purposes of collateral estoppel that prevents the Government from relitigating the same issues

in this proceeding.[18]  Accordingly, summary judgment is appropriate.

**The Government has waived any claim of deliberative process privilege.**  In the

Plaintiff's Rule 60(b)(6) proceeding, the Government did not assert the deliberative process

privilege in its privilege logs or in its oppositions to Stonehill's motion to compel (it was not

even raised by the IRS in its Appeals Decision as a possible basis for denying Stonehill FOIA

request for documents[19]).  Because it was not raised in the initial District court proceeding, the

---

[17] Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992).

[18] LaRouche v. U.S. Dep't of Treasury, 112 F. Supp. 2d 48, 56 (D.D.C. 2000)

[19] See Heggestad Decl. ¶ 20.

Government has waived any assertion of the deliberative process privilege as a basis for withholding 172 documents in this proceeding.[20]  Consequently, summary judgment is appropriate.

**The Government has waived any claim of attorney-work product doctrine, attorney-client privilege or third party tax payer privilege that was not previously asserted to prevent disclosure of documents in <u>Stonehill</u>.**  To the extent any document is arguably privileged, the IRS has waived any claim of attorney-work product, attorney-client or 6103 third-party taxpayer information privilege not asserted as a basis for withholding that document in the initial District Court proceeding.[21]  Summary judgment is appropriate for this reason as well.

**The Government's relevance objections asserted in <u>Stonehill</u> are not a proper basis for withholding documents in an FOIA proceeding.**  The documents withheld in Stonehill based on relevance objections are not exempt from disclosure in this proceeding because relevance to the issues being litigated plays no part in FOIA cases.[22]  Accordingly, summary judgment is appropriate.   In this proceeding, the IRS has asserted the attorney-work product, attorney-client and deliberative process privilege to protect the disclosure of documents withheld or redacted in <u>Stonehill</u> based on relevance objections.  Because the IRS is estopped from reasserting attorney-work product and attorney client privileges and has waived the deliberative process privilege, the documents redacted or withheld in <u>Stonehill</u> based on relevance are not exempt from disclosure in this proceeding.

---

[20] <u>Maydak v. U.S. Dep't of Justice</u>, 218 F. 3d 760, 764 (D.C. Cir. 2000).

[21] <u>Id.</u>

[22] <u>Thompson v. Dep't of Navy</u>, No. 95-347 (RMU), 1997 WL 527344, at *2 n.2 (D.D.C. Aug. 18, 1997).

**There Is No Basis for the FBI's Assertion of (b)(6)-2 and (b)(7)(C)-2 to protect the**

**privacy interests of IRS Agents who participated with the FBI in the Stonehill**

**investigation.** The IRS has failed to identify any substantial privacy rights to justify the

withholding of the name of an IRS agent who was the recipient of a memorandum forwarded

by FBI agent Robert Hawley on October 31, 1962.[23] The policy reasons for withholding the

names of third parties such as subjects, witnesses and informants mentioned in law

enforcement records do not apply to the IRS Revenue Agent involved in the Stonehill

investigation.[24] Here, the public interest is significant because the decision of Ninth Circuit

Court of Appeals on remand and the District Court's decision rejecting the Government's

claims of attorney work-product and attorney-client privilege, show that the Plaintiff has made

a prima facie case of Government fraud on the Court.

      **There is no basis for requiring the Plaintiff to pay advance search costs to identify**

**documents that have already been located by the IRS or transcripts that are in the**

**possession of Government attorneys representing the IRS.** The Plaintiff did not agree to

pay the IRS $5,000 in search costs for documents that had already been located by the IRS and

paid for by the Plaintiff in response to Stonehill's initial FOIA request.[25] There was also no

basis for requiring the Plaintiff to pay search fees for the deposition transcript of IRS agent

Sterling Powers or for a November 20,1984 hearing transcript that had already been located by

---

[23] The memorandum attached to the October 31, 1962 information memorandum
concerns the New York Bills of Lading Act Stonehill investigation and has been produced as
an attachment without redaction. See Declaration of David M. hardy, Ex. A, Document 6
(Docket Entry 35-5 filed March 27, 2007).

    [24] Iglesias v. CIA, 525 F. Supp. 547, 563 (D.D.C. 1981).

    [25] Plaintiff has not agreed to pay for a pro-rata cost of duplicating the audio tapes
because there has been no assurance from the IRS that the tapes will not be subsequently
withheld based on IRS assertion of FOIA exemptions. See Heggestad Decl. ¶ 50.

the IRS in the files of the Tax Division attorneys who represented the IRS in the Stonehill

litigation. Both of these transcripts have been provided to the Plaintiff pursuant to an

agreement with the IRS that Plaintiff would file no further FOIA requests with the IRS or the

Tax Division for a period of seven years.[26]

## FACTS AND PROCEDURAL HISTORY

I.      THE FOIA ADMINISTRATIVE PROCEEDING

    A.      **The IRS Produced Five Documents in Response to Plaintiff's July 10, 1998
        FOIA Request**

On July 10, 1998, Plaintiff filed a Freedom of Information Act ("FOIA") request with

the Internal Revenue Service ("IRS") Office of International Operations for all information

relating to Robert P. Brooks and Harry S. Stonehill ("Taxpayers") and United States Tobacco

Company.[27] The IRS produced five documents in response to the Plaintiff's request on

December 11, 1998.[28] According to the IRS Disclosure Officer, Steven Fletcher ("Fletcher"),

these five documents were located following "a thorough search of all available records under

the jurisdiction of the Assistant Commissioner (International)."[29] On January 5, 1999,

Plaintiff provided the IRS with documents obtained from the State Department, referencing

documents authored by IRS employees that had been sent to various United States' agencies in

---

[26] See Heggestad Decl. ¶ 51.

[27] Letter from R. Heggestad to S. Fleshner (July 10, 1998), attached as Heggestad
Decl. Ex. 1. Plaintiff also filed FOIA requests with the Federal Bureau of Investigation
("FBI"), the Tax Division of the Department of Justice ("DOJ"), the Department of State and
the Central Intelligence Agency ("CIA"). See Heggestad Decl. ¶¶ 4, 9.

[28] Letter from S. Fleshner to R. Heggestad with attachments (December 11, 1998),
attached as Heggestad Decl. Ex. 2.

[29] Id.

connection with the Stonehill case.[30]  On January 6, 1999, the IRS determined that the

documents did "not provide . . . information that would enable [ IRS] to locate additional

records, if they exist, that are not in [IRS] possession at this time."[31]  The IRS suggested that

the Plaintiff file a new FOIA request with the Department of Justice "where the case was

litigated . . . for a number of years" and advised Plaintiff that the International Operations

Disclosure Office could be of no further assistance "in the quest for these documents."[32]

**B.**    **Plaintiff's FOIA Appeal was Denied by the IRS Based on Its Claim that Additional Responsive Documents "Could not be Located."**

On July 31, 1999, the Plaintiff appealed the IRS decision that documents responsive to

Plaintiff's FOIA request could not be located.[33]  On October 29, 1999, the Chief of IRS

Disclosure Litigation denied the Plaintiff's appeal, stating that "through discussions with

appropriate Service employees, . . . these documents indeed cannot be found."[34]

**C.**    **On March 15, 2001, the IRS Disclosure Officer Revealed That Documents Responsive to the July 10, 1998 FOIA Were Located at the Office of the Assistant Chief Counsel, Office of Intelligence Operations.**

On November 30, 2000, the Tax Division and the FBI produced approximately 1,846

documents in response to FOIA litigation filed by the Plaintiff.[35]  These documents included

---

[30] Letter from R. Heggestad to S. Fleshner with attachments (Jan. 5, 1999), attached as Heggestad Decl. Ex. 3.

[31] Letter from S. Fleshner to R. Heggestad (Jan. 6, 1999), attached as Heggestad Decl. Ex. 4.

[32] Id.

[33] Heggestad Decl. ¶ 6.

[34] See letter from D. Squires, Chief of Disclosure Litigation, to R. Heggestad (October 29, 1999), attached as Heggestad Decl. Ex. 5.

[35] See Heggestad Decl. ¶ 9.

several hundred documents authored by the Chief Counsel for IRS International Operations Branch and by IRS agents involved in the <u>Stonehill</u> case from 1960 through 1976.[36]  On March 15, 2001, Plaintiff questioned the original IRS Disclosure Officer, Steven Fletcher, about the IRS-authored documents to determine why the documents had not been produced in response to Plaintiff's 1998 FOIA request.  Mr. Fletcher, who was no longer an IRS disclosure officer, acknowledged that documents responsive to the 1998 request were, in fact, available and could be found at the Office of the Assistant Chief Counsel, Office of Intelligence Operations. [37]

### D. The IRS "Discovery" of 92 Boxes of Documents Responsive to Plaintiff's July 10, 1998 FOIA Request.

On March 15, 2001, Plaintiff asked the Manager of the IRS Headquarters Disclosure Office to conduct a new search at the Office of the Associate Chief Counsel, International Operations Branch for documents responsive to Plaintiff's July 10, 1998 FOIA request.[38]  On May 18, 2001, IRS Tax Law Specialist, Carroll Field, reported that eight boxes of documents relating to the Stonehill case had been located in the Associate Chief Counsel's Office.[39]  On September 28, 2001, during the completion of Plaintiff's review of the eight boxes of IRS documents, Ms. Field, reported that an additional eighty-six boxes of documents, responsive to the July 10, 1998 FOIA request had been located at the Federal Records Center.[40]  The 92

---

[36] See <u>id.</u>

[37] On March 15, 2001, Mr. Fletcher, was not an IRS Disclosure Officer.  <u>See</u> Heggestad Decl. ¶ 10.

[38] <u>See</u> Heggestad Decl. ¶ 11.

[39] <u>See</u> Heggestad Decl. ¶ 12.

[40] <u>See</u> Heggestad Decl. ¶ 14; <u>see also</u> Letter from R. Fultz to R. Heggestad (Oct. 16, 2001), attached as Heggestad Decl. Ex.6.

boxes[41] of newly "discovered" IRS documents were produced to the Plaintiff for review between July 23, 2001 and October 2, 2002.[42]

**E.    The IRS List of Withheld Documents Identified Six Documents Withheld Based on its Assertion of Attorney-Work Product and Attorney-Client Privilege and the Confidential Informant Privilege.**

On November 14, 2002, at the conclusion of Plaintiff's review process, the IRS provided the Plaintiff with a list of the documents that had been withheld in full from the 8 boxes of documents located at the Chief Counsel's Office and from the 86 boxes of IRS documents located at the Federal Record Center.[43] The IRS list of withheld documents also identified the FOIA exemptions asserted as the basis for withholding each document: three documents were withheld pursuant to 5 U.S.C. § 552 (b)(5) based on the attorney work-product doctrine and on the attorney-client privilege[44]; three documents were withheld pursuant to 5 U.S.C. § 552 (b)(7)(C) and (b)(7)(D), based on privacy interests and protection of confidential sources.[45] The remainder of the documents identified in the IRS list were

---

[41] Although the IRS originally reported that 94 boxes of documents had been located, the IRS subsequently reported that Boxes 17 and 83 were missing from the Federal Records Center.  See Letter from C. Field to R. Heggestad (Nov. 14, 2002), attached as Heggestad Decl. Ex. 7.

[42] See Letter from R. Heggestad to C. Campbell (Mar. 15, 2001), attached as Heggestad Decl. Ex. 8.

[43] See Heggestad Decl. ¶ 17; Letter from C. Field to R. Heggestad (Nov. 14, 2002), attached hereto as Ex. 7.

[44] Id. Two documents located in Box 28 and Box 84 were withheld based on the attorney work-product doctrine and one document located in Box 84 was withheld based on the attorney-client privilege;

[45] Id. Three documents located in Boxes 16, 31 and 84 were withheld based on privacy interests and protection of confidential sources.

withheld pursuant to 5 U.S.C. § 552 (b)(3) in conjunction with IRC § 6103, third party

taxpayer information and § 6105, competent authority information.[46]

### F.    The IRS Appeals Decision

The IRS Final Decision[47] issued on November 26, 2002, was appealed by the Plaintiff

on December 10, 2002.[48]  On June 17, 2003, the IRS Office of General Appeals issued a

partial determination affirming the Disclosure Officer's response withholding documents

under (b)(5), (b)(7)(C) and (b)(7)(D).[49]  The Appeals decision identified ten documents

withheld pursuant to (b)(5), the attorney work-product and attorney-client privileges; two

documents withheld pursuant to (b)(7)(C), to protect privacy interests (the identity of law

enforcement officers) and two documents withheld pursuant to (b)(7)(D), to protect

confidential sources.  In its Appeals decision, the IRS stated that although Exemption 5 also

included the executive "deliberative process," only the "attorney work-product and attorney-

client privileges are here involved."[50]  In its decision, the IRS also advised Plaintiff that it

could not consider arguments regarding attorney/fraud or waiver in the context of an FOIA

proceeding, and that these issues would need to be resolved in a judicial proceeding.[51]

---

[46] See Heggestad Decl. ¶ 17; Letter from M. Sapero to R. Heggestad with attachments (Nov. 26, 2002), attached as Heggestad Decl. Ex. 9.

[47] IRS Final Decision (Nov. 26, 2002), attached as Heggestad Decl. Ex. 10.

[48] See Heggestad Decl. ¶ 18.

[49] See Heggestad Decl. ¶ 19.  At the time of the decision, the Appeals Office had not yet been provided access to responsive material withheld under 5 U.S.C. § 552(b)(3).  Appeals decision (June 17, 2003), at 1, attached as Heggestad Decl. Ex. 12.

[50] Appeals decision (June 17, 2003), at 3, attached as Heggestad Decl. Ex. 12.

[51] See Heggestad Decl. ¶ 20.

On March 8, 2004, the Appeals Office issued a final decision sustaining the denial of

access to the material withheld under 5 U.S.C. § 552(b)(3) in conjunction with IRC § 6103.[52]

## G.    The Underlying Litigation

### 1.    Plaintiff's Rule 60(b)(6) Motion

On October 2, 2000, the Plaintiff filed a Motion to Vacate Judgments pursuant to

Federal Rule of Civil Procedure 60(b)(6) and the Court's Inherent Power to Address Fraud on

the Court ("Rule 60(b) motion") in the District Court for the Central District of California,

United States v. Stonehill, No. 65-127 (C.D. Cal.) ("Stonehill").[53]  The Plaintiff's Rule 60(b)

motion was initially filed after Plaintiff obtained documents under the FOIA and in litigation

from the State Department, the Federal Bureau of Investigation ("FBI") and the Tax Division

of the Department of Justice.  During the course of the Rule 60(b) proceeding, the IRS began

its production of the 8 boxes of IRS documents discovered on May 18, 2001 and the 86 boxes

of IRS documents discovered on September 28, 2001.  On August 28, 2001, prior to the

Plaintiff's review of the 86 boxes of IRS documents, the District Court in Stonehill issued its

decision denying Plaintiff's Rule 60(b) motion.[54]

### 2.    The Ninth Circuit Court of Appeals Reversal of the District Court's Decision Denying Plaintiff's Rule 60(b) Motion

On January 31, 2002, Plaintiff appealed the District Court's decision denying

Plaintiff's Rule 60(b) motion to the Ninth Circuit court of Appeals.  On October 7, 2002, four

---

[52] See Heggestad Decl. ¶ 23.

[53] The Stonehill proceeding in California was consolidated with the proceedings in Hawaii and Oregon and transferred to the District Court in Portland, Oregon.

[54] The District Court denied Plaintiff's motion to stay a decision pending the completion of the review of IRS boxes.  Order, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.) (filed Aug. 28, 2001).  See, Heggestad Decl. ¶ 13.

months after the briefing had been completed in the Court of Appeals, and one week after the

Plaintiff had completed the review of the 86 IRS boxes, Plaintiff filed a motion to Supplement

the Record on Appeal based on new evidence obtained from the IRS. On December 19, 2002,

the Court of Appeals reversed and remanded the case for further proceedings to consider the

documents obtained after the District Court's decision. The Court of Appeals stated since "the

district court's ruling, Stonehill and Brooks have obtained more documents that may

substantially bolster their case that the government committed fraud on the court." Because

"Stonehill and Brooks still have more FOIA requests pending," the Court of Appeals directed

that "the district court should ensure that they have a fair opportunity to present their argument

to the court" and that it "should assist them in obtaining relevant evidence. . . ."[55]

### 3.    The District Court Ordered the Government to Produce all Relevant Documents Withheld from the 92 IRS Boxes

On December 19, 2003, approximately one year after the Court of Appeals had

directed the District Court to assist the Taxpayers in obtaining "all relevant evidence," the

District Court ordered the Government to produce all relevant documents from the 92 boxes of

IRS documents.[56]   The Court stated that although the Government could assert privileges, it

could not "imagine any privileges" that would apply to the withheld documents.[57]

---

[55] See Heggestad Decl. ¶ 19; Order, attached as Heggestad Decl. Ex. 11.

[56] See Hrg. Tr. at 24 (Dec. 19, 2003), attached as Heggestad Decl. Ex. 14. The District Court ruled that the Taxpayers were entitled to the 84 boxes of documents that the Government had discovered after the District Court's Rule 60(b) hearing and the eight additional boxes that the Taxpayers did not have a chance to analyze prior to the hearing. Id. at 23:18-24:11.

[57] Id. at 26:1-9.

On February 17, 2004, the Government began to comply with the District Court's order by producing 5,419 pages consisting largely of financial records.[58]  On April 2, 2004, the Government produced approximately 36,000 additional pages (likewise consisting largely of financial records) and a privilege log indicating that it withheld thousands of documents consisting of nearly twenty thousand pages based on various privilege claims, including attorney-client privilege/ work product doctrine, confidential informant, 26 U.S.C. § 6103, third party tax payer return information, and 26 U.S.C. § 6105, Treaty Obligation privilege.[59]  Supplemental Privilege Logs were produced by the Government on August 20, 2004,[60] August 27, 2004,[61] October 4, 2004,[62] October 15, 2004,[63] October 22, 2004,[64] October 29, 2004,[65] and November 23, 2004.[66]  The Government did not assert the deliberative process

---

[58] See Heggestad Decl. ¶ 22.

[59] See Heggestad Decl. ¶ 24, Ex. 51 (initial privilege log).  In its privilege log, the Government failed to provide meaningful descriptions for most of the withheld documents based on the attorney-client privilege and/or work-product doctrine.  The Government also made it virtually impossible for the Taxpayers to determine whether other alleged privileges apply – specifically, tax return information privilege and documents allegedly privileged by treaty obligations.  The Government's "privilege log" contained *no* identifying information about alleged tax return and treaty documents.  Heggestad Decl. ¶ 24, n.26.

[60] See Heggestad Decl. ¶ 25, Ex. 52.

[61] See Heggestad Decl. ¶ 25, Ex. 53.

[62] See Heggestad Decl. ¶ 25, Ex. 54.

[63] See Heggestad Decl. ¶ 25, Ex. 55.

[64] See Heggestad Decl. ¶ 25, Ex. 56.

[65] See Heggestad Decl. ¶ 25, Ex. 57.

[66] See Heggestad Decl. ¶ 25, Ex. 58.

privilege as a basis for withholding IRS documents either in its original privilege log or in any of its supplemental privilege logs.

**4.    The Plaintiff's Motion to Compel Production of Documents Withheld From the 92 Boxes.**

On March 24, 2005, the Plaintiff filed a Motion to Compel Production of Documents ("Motion to Compel").[67] The issues of fact and law regarding the merits of the Government's assertion of FOIA exemptions at issue in this case, except for the deliberative process privilege, were fully briefed by the parties and submitted to the Court for decision.[68]

**a)    The Court Rejected the Government's Assertion of Attorney-Client Privilege and Work-Product Doctrine**

On December 20, 2005, the Court rejected the Government's assertion of the work product doctrine and attorney-client privilege[69] and ordered the Government to turn over all documents that were relevant to the issue of whether the Government committed fraud on the Court.[70] Specifically, the Court ordered the Government to produce all documents regarding the 1966 Tax Division investigation into the Government's role in the 1962 raids, all notes given to or taken by Government counsel if the notes concern the Tax Division's investigation of the United States' involvement in the 1962 raids; and documents involving wiretaps if they relate to the raids.[71] The Court also ordered the Government to "disclose any other documents now being withheld if the document concerns either the Government's role in the 1962 raids

---

[67] See Heggestad Decl. ¶ 26, Ex. 24.

[68] See Heggestad Decl. ¶ 26, Exs. 16 – 24.

[69] Heggestad Decl. Ex. 27 (Order at 8).

[70] Id. (Order at 9).

[71] Id. (Order at 8-9).

or the Government's alleged attempts during the litigation of the motions to suppress or conceal its role in the raids."[72]

On April 27, 2006, the Court clarified its December 20, 2005 Order and held that the Government's role in the raids included "instigation" of the raids. The Court stated that it would rely on the Government to produce any document "if it has anything to do with the raids."[73]

### b) The Court Denied Plaintiff's Motion to Compel Production of Third-Party Taxpayer Information and Treaty Obligation Information and Confidential Informant Information.

The Court denied Plaintiff's motion to compel as to 26 U.S.C. § 6103 third party tax returns and return information, and treaty information based on 26 U.S.C. § 6105. The Court's ruling denying the Plaintiff's motion to compel production of third-party tax returns and return information was based on the Government's assurance that "it had reviewed the tax documents and turned over returns and return information that concerned persons and entities related to defendants, whether through a partnership or transaction."[74] The Court also denied any further discovery related to Stonehill's attorney, William Saunders, to the extent that "any of withheld tax documents relate to him."[75]

---

[72] Id. (Order at 9).

[73] Heggestad Decl. Ex. 39 (Hrg. Tr. at 2:21-3:15 (April 27, 2006)).

[74] Heggestad Decl. Ex. 27 (Order at 5-6).

[75] Id. (Order at 5).

**c.)    The Court Denied Plaintiff's Motion to Compel Production
of Confidential Informant Information Redacted by the
CIA.**

The Court denied Plaintiff's motion to compel production of documents redacted by

the Central Intelligence Agency ("CIA") to protect the identity of confidential sources of

information.[76]  The Court ordered the Government to submit for in-camera review documents

withheld by the CIA because of cooperation with foreign sources or government agencies.[77]

**d.)    The Court Allowed the Government to Redact IRS
Documents Based on Relevance Objections**

On April 12, 2006, the Court approved certain redactions made by the CIA on eleven

documents submitted by the Government for in-camera review during an ex-parte meeting

held with the Court and CIA and Tax Division attorneys on April 5, 2006.  In its April 12,

2006 order, the Court stated that its rulings on the CIA objections did not foreclose the

Government "from objecting to this court's rulings on relevance, as set forth in the December

20, 2005 order."[78]

On April 14, 2006, the Government produced 11 heavily redacted documents (out of

the approximately 2000 IRS documents withheld from the Plaintiff) that it had determined

---

[76] The Court's decision did not address the merits of Government redactions made
pursuant to 7(c) and 7(d).  Order at 7 (Dec. 20, 2005), attached as Heggestad Decl. Ex. 27.

[77] Id. at 8.  Following the Court's in-camera review of documents on April 5, 2006, the
Court ordered that the redacted portions of the documents be disclosed, subject to certain
guidelines: the names of individuals of the United States and Philippine Governments may be
redacted and substituted with "U.S. Government official" or "Philippine government official,"
information regarding general CIA activities not related to the case may be redacted and
information relating to stories from Newspapers concerning allegations of CIA activities may
be redacted.  Order, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.) (filed April 12,
2006), attached hereto as Ex. 28.

[78] Heggestad Decl. Ex. 28 (Order at 3 (April 12, 2006)).

were relevant based on the Court's December 20, 2005 order. [79]  On June 6, 2006, the Court

directed the Government to produce the 11 documents in camera to allow the Court to review

the Government's relevance objections. [80]  On July 12, 2006, the Court approved certain

relevance redactions made by the Government on the 11 CIA redacted documents and on two

pages of additional documents submitted by the Government for in-camera-review. [81]

### H.    This Litigation

This action was instituted by Pauline Stonehill, Co-executor and Co-special

administrator of the Estate of Harry S. Stonehill ("Plaintiff") under the Freedom of

Information Act, 5 U.S.C. § 552 ("FOIA"), to compel the complete production of agency

records concerning William W. Saunders ("Saunders"), Plaintiff's former attorney. [82]  On

August 11, 2006, Plaintiff filed her First Amended Complaint seeking all documents related to

Saunders and all documents responsive to Stonehill's FOIA request filed on July 10, 1998,

which sought "all records, files, hearing transcripts, notes of memoranda of meetings or

telephone conversations, and other data in [IRS] possession, custody or control pertaining to

Robert P. Brooks [and] Harry S. Stonehill."

---

[79] Letter from C. Duffy to R. Heggestad (April 14, 2006), attached as Heggestad Decl. Ex. 29.

[80] Hrg. Tr. at 5, 17 (June 6, 2006), attached as Heggestad Decl. Ex. 38.

[81] Hrg. Tr. (July 12, 2006), attached as Heggestad Decl. Ex. 41.

[82] Following the Court of Appeals remand, the Plaintiff discovered documents that revealed that Stonehill's Honolulu attorney, William W. Saunders, was a government informer who had provided confidential information regarding Swiss Bank accounts to the IRS as early as April 27, 1960.  Saunders appeared in Manila two years later, on June 18, 1962, after Stonehill and Brooks were arrested, to represent Stonehill and Brooks in the IRS civil tax investigation that he had initiated.  Saunders continued to represent Stonehill and provide information to the Government during the next several years.  On July 5, 2007, a jury in Honolulu unanimously found Saunders guilty on two counts of intentional breach of fiduciary duty of undivided loyalty and intentional breach of duty confidentiality.

## LEGAL STANDARD

**A.    Standard for Motion for Summary Judgment**

Summary judgment is appropriate when the pleadings, together with the declarations,

show that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on such a motion, "the court is

to view the record in the light most favorable to the party opposing the motion, giving the non-

movant the benefit of all favorable inferences that can reasonably be drawn from the record

and the benefit of any doubt as to the existence of any genuine issue of material fact." Mack

v. Dep't of Navy, 259 F. Supp. 2d 99, 104 (D.D.C. 2003).

In the context of FOIA, the agency bears the burden of justifying nondisclosure. Piper

v. U.S. Dep't of Justice, 294 F. Supp. 2d 16, 20 (D.D.C. 2003), as amended, 428 F. Supp. 2d 1

(D.D.C. 2006), aff'd, 222 Fed. Appx. 1 (D.C. Cir. 2007), pet. for cert. filed, 75 U.S.L.W. 3610

(U.S. May 3, 2007 (No. 06-1469). A court must decide whether the agency has sustained its

burden of demonstrating that the documents requested are exempt from disclosure under

FOIA. Mack, 259 F. Supp. 2d at 104. To this end,

> [T]he Court may award summary judgment to an agency solely on the
> basis of information provided in affidavits or declarations when the
> affidavits or declarations describe "the documents and the justifications
> for nondisclosure with reasonably specific detail, demonstrate that the
> information withheld logically falls within the claimed exemption, and
> are not controverted by either contrary evidence in the record nor by
> evidence of agency bad faith. The affidavits will not suffice if the
> agency's claims are conclusory, merely reciting statutory standards, or
> if they are too vague or sweeping.

Maydak v. U.S. Dep't of Justice, 254 F. Supp. 2d 23, 32 (D.D.C. 2003) (citations and internal

quotations omitted); see also Piper, 294 F. Supp. 2d at 20 (stating that declarations from

agency officials must be "clear, specific, and adequately detailed, setting forth the reasons for

non-disclosure in a factual and non-conclusory manner; they must also be submitted in good faith").

**B.    General Notions Under FOIA**

Recently, this Court has made clear that the purpose of FOIA is to "facilitate public access to Government documents" and it is "meant to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." McCutchen v. U.S. Dep't of Health & Human Servs., 30 F.3d 183, 184 (D.C. Cir. 1994) (citation omitted); see also Stern v. FBI, 737 F.2d 84, (D.C. Cir. 1984) ("The central purpose of FOIA is to 'open[] up the workings of government to public scrutiny' through the disclosure of government records.") (citation omitted); Mack, 259 F. Supp. 2d at 104 (noting that the purpose of FOIA is to "afford[] the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure"). To this end, FOIA itself expresses a presumption favoring disclosure. Founding Church of Scientology of Washington, D.C., Inc. v. Smith, 721 F.2d 828, 830 & n.4 (D.C. Cir. 1983). The reasoning behind this presumption is that "the public is entitled to know what its government is doing and why." Piper, 294 F. Supp. 2d at 20 (citation omitted). Accordingly, "a federal agency is required to release all records that are responsive to a request for the production of the records." Maydak, 254 F. Supp. 2d at 32. If it fails to do so, the Court is authorized to "enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." Id. (quoting 5 U.S.C. § 552(a)(4)(B)).

# ARGUMENT

**II.**   **THE DOCTRINE OF COLLATERAL ESTOPPEL PREVENTS THE GOVERNMENT FROM ASSERTING THE ATTORNEY WORK-PRODUCT AND ATTORNEY-CLIENT PRIVILEGE AS THE BASIS FOR WITHHOLDING DOCUMENTS FROM THE PLAINTIFF IN THIS PROCEEDING**

In this FOIA proceeding, the Government is collaterally estopped from withholding

documents based on the attorney work-product and attorney-client privilege because those

claims of privilege were rejected by the District Court in United States v. Stonehill, No. 65-

127 (C.D. Cal.) ("Stonehill"). See McLaughlin v. Bradlee, 803 F.2d 1197, 1201 (D.C. Cir.

1986) (under doctrine of collateral estoppel "once a court has decided an issue of fact or law

necessary to its judgment, that decision may preclude relitigation of the [same] issue in a suit

on a different cause of action involving a party to the first case.") (citation omitted).

To determine whether collateral estoppel operates to preclude litigation, the D.C.

Circuit has explained that the "standards  for establishing the preclusive effect of a prior

holding are":

> First, the same issue now being raised must have been contested by the
> parties and submitted for judicial determination in the prior case.
> Second, the issue must have been actually and necessarily determined
> by a court of competent jurisdiction in that prior case. See
> McLaughlin[, 803 F.2d at 1201]; Restatement (Second) of Judgments
> § 27 (1982) ("[w]hen an issue of fact or law is actually litigated and
> determined by a valid and final judgment, and the determination is
> essential to the judgment, the determination is conclusive in the
> subsequent action between the parties"). Third, preclusion in the
> second case must not work an unfairness to the party bound by the first
> determination.

Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992). See In re

Subpoena Issued to Commodity Futures Trading Comm'n, 370 F. Supp. 2d 201, 205 (D.C.

2005), aff'd in part on other grounds, 439 F.3d 740 (D.C. Cir. 2006).

In this case, each of the standards for establishing preclusive effect of the prior District

Court's decision in Stonehill have been met.  The issue of whether attorney-work product and

attorney-client privilege  protects disclosure of documents withheld by the IRS was contested

and submitted for a judicial determination in connection with the Plaintiff's motion to compel

in Stonehill.  The District Court, following extensive briefing by the parties on these issues,

rejected the Government's claims of attorney-work product and attorney-client privilege.

Finally, precluding the IRS from relitigating that issue in this case, does not work an

unfairness on the Government  because the IRS had the opportunity and a great incentive to

litigate that issue in a proceeding involving the Plaintiff's claim of Government fraud upon the

Court.  For these reasons, as discussed below, the District Court's decision in Stonehill is

conclusive regarding the merits of the Government's privilege claims in this proceeding.

**A.** **The Issue of Whether the Attorney-Work-Product and/or Attorney-Client Privilege Prevent Disclosure of Documents Withheld by the IRS Was Contested by the Parties and Submitted for Judicial Determination in Stonehill.**

The issue of whether the IRS has properly withheld documents in the FOIA proceeding

pursuant to the attorney-client privilege and work-product doctrine was previously litigated by

the parties in United States v. Stonehill, No. 65-127 (C.D. Cal.) ("Stonehill").  On December

19, 2003, pursuant to the Court of Appeals direction to the District Court to assist the

Taxpayers in obtaining FOIA documents withheld by the IRS in Stonehill,  the District Court

ordered the Government to produce all documents withheld from 92 boxes of IRS

documents.[83]  The Court also stated that although the Government could assert privileges, it

could not "imagine any privileges" that would apply to the withheld documents.[84]

On April 2, 2004, the Government produced a privilege log identifying thousands of

pages of documents withheld from the 92 boxes based on the Government's assertion of the

attorney work-product doctrine and the attorney-client privilege.  In Stonehill, as in this case,

the Plaintiff challenged the Government's decision to withhold documents in a motion to

compel filed on March 24, 2005 and in eight additional briefs that were filed by the parties

during the following eight months.[85]  The Plaintiff argued that the privileges asserted by the

Government did not prevent disclosure of documents because: (1) the Government's fraud on

the Court vitiated any applicable attorney client or work product privilege;[86] (2) the

Government had waived its privilege claims;[87] (3) the Government had withheld factual

---

[83] Hrg. Tr. at 23-24 (Dec. 19, 2003), attached as Heggestad Decl. Ex. 14. The withheld
documents that were at issue in *Stonehill* are the same documents that are at issue in this
proceeding.

[84] Id. at 26.

[85] See United States' Opp. to Defs.' Motion to Compel Production of Documents (June
6, 2005); Taxpayers' Reply Brief in Support of Motion to Compel (June 27, 2005); United
States' Surreply Regarding Defs.' Motion to Compel Production of Documents (July 29,
2005); Taxpayers' Response to Government's Surreply (Aug. 26, 2005); Supplement to
Taxpayers' Response to Government's Surreply (Sept. 1, 2005); Second Supplement to
Taxpayers' Response to Government's Surreply (Dec. 5, 2005); United States'
Response(Dec. 8,. 2005); Third Supplement to Taxpayers' Response to Government's
Surreply (Dec. 16, 2005), attached respectively as Heggestad Decl. Exs. 16, 17, 18, 19, 20, 21,
22 and 23.

[86] See Memo. of P&As in Support of Motion of the Taxpayers to Compel Production
of Documents, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.), at 43 (March 24,
2005), attached as Heggestad Decl. Ex. 24.

[87] See id. at 30.

information not protected by the attorney client and work-product privileges;[88] (4) the attorney- client privilege did not apply to Tax Division communications with agencies other than the IRS;[89] and (5) the attorney- work product doctrine was inapplicable because the Plaintiff had a substantial need for the documents.[90]

During the extensive briefing by the parties in connection with the Plaintiff's motion to compel, the issues of fact and law pertaining to the attorney work-product and attorney client privilege were litigated and submitted to the District Court for determination.[91]

> **B.      The District Court in Stonehill Determined that the Attorney-Client Privilege and Work-Product Doctrine do not Prevent Disclosure of Documents Withheld by the IRS.**

After considering the Plaintiff's motion to compel and the briefs submitted by both parties, the District Court in Stonehill rejected the Government's claim that attorney work-product and attorney-client privilege protected IRS documents from disclosure.  The Court ruled that because the Plaintiff had challenged the conduct of Government attorneys during the

---

[88] See id. at 23.

[89] See id. at 25.

[90] See id. at 11.

[91] The IRS has acknowledged that the issues litigated in Stonehill are identical to the issues in the FOIA proceeding. The initial Appeals decision stated that because "the issues to be resolved in the FOIA action and the refund proceeding are essentially the same, . . . to allow both suits to proceed would inevitably result in a waste of judicial resources." See Heggestad Decl. Ex. 12 (emphasis in original).  On September 5, 2003, the IRS Appeals Office informed Plaintiff's counsel that the administrative appeal would be suspended with regard to the 5 U.S.C. § 552(b)(3) issue, because "We respectfully decline concurrent review of the issues you raised in your FOIA appeal while a Federal Court has jurisdiction over the release of the identical material you sought to access pursuant to your request under the FOIA." See Heggestad Decl. Ex. 25.

litigation of the motions to suppress, the attorney-work product doctrine and attorney-client privilege did not prevent disclosure of documents withheld from the 92 boxes.[92]

### 1.    The Court's December 20, 2005 Decision Rejected the Government's Claim of Attorney Work Product and Attorney-Client Privilege

On December 20, 2005, the District Court granted the Plaintiff's Motion to Compel in-part and ordered the Government to produce all documents that were relevant to Plaintiff's claims of fraud upon the Court.  In its decision, the Court ordered the Government to turn over all of the following documents which had been withheld by the Government based on claims of attorney work-product and attorney-client privilege:  (1) the 1966 Tax Division investigation into the Government's role in the 1962 raids;[93] (2) all notes given to or taken by Government counsel if the notes concern the Tax Division's investigation of the United States' involvement in the 1962 raids;[94] (3) documents involving wiretaps if they relate to the raids;[95] and (4) *"any other documents* now being withheld if the document concerns either the Government's role in the 1962 raids or the Government's alleged attempts during the litigation of the motions to suppress to conceal its role in the raids."[96]

The District Court in Stonehill unequivocally rejected the Government's claim of work product doctrine and attorney-client privilege:

> According to the defendants, the United States has withheld documents relating to the 1966 investigation, citing the work product doctrine or attorney-client

---

[92] See Order at 8, attached as Heggestad Decl. Ex. 27.

[93] Order at 8, attached as Heggestad Decl. Ex. 27.

[94] Id.

[95] Id. at 9.

[96] Id.

privilege. However, because the defendants' motion to set aside the judgment accuses the government of intentionally concealing its role in the 1962 raids during litigation of the motions to suppress, I conclude that the government must turn over documents regarding the 1966 Tax Division investigation into the government's role in the 1962 raids. Because the defendant's motion to vacate challenges the conduct of the government's attorneys during the litigation of defendants' motions to suppress, the government must turn over notes given to, or taken by, government counsel if the notes concern the Tax Divisions investigation of United States' involvement in the 1962 raids.

*      *      *

The Government must disclose any other document now being withheld if the document concerns either the government's role in the 1962 raids or the government's alleged attempts during the litigation of the motions to suppress to conceal its role in the raids. [97]

### 2.    The Court's December 20, 2005 Decision is a Final Order for Purposes of Collateral Estoppel

The District Court's December 20, 2005 decision granting in-part the Plaintiff's motion to compel is a final order for purposes of collateral estoppel which precludes relitigation of whether the attorney work-product/attorney-client privilege is a proper basis for withholding documents from the 92 boxes of IRS documents . See LaRouche v. U.S. Dep't of Treasury, 112 F. Supp. 2d 48, 56 (D.D.C. 2000) (finality for purposes of issue preclusion is less rigid than it is in other contexts.) The Court in LaRouche addressed the issue of whether IRS documents were exempt from disclosure pursuant to FOIA exemptions and whether a decision by a District Court judge in a related proceeding involving the FBI collaterally

---

[97] Hrg. Tr. 2:21-3:15 (April 27, 2006), attached as Heggestad Decl. Ex. 39. The Court also clarified its December 20, 2005 Order and held that the Government's role in the raids included instigation of the raids and that the Court would rely on the Government to produce any document "if it has anything to do with the raids." Id. On April 14, 2006, four months following the Court's order, the Government produced eleven documents (out of the approximately 2500 documents withheld) that it claimed were relevant to the issues identified by the Court. Each of these documents had been previously withheld based on the Government's assertion of the attorney work-product doctrine and attorney-client privilege. See Heggestad Decl. ¶ 36.

estopped LaRouche from relitigating that issue with the Treasury Department. LaRouche

argued that the original District Court decision granting the Government's motion for partial

summary judgment did not preclude his litigation against the Treasury Department to obtain

the same two IRS documents[98] because the District Court's order granting the Government's

motion for partial summary judgment, issued by Judge Harold Green on June 25, 1993, was

not a final order.[99]

     The District Court held that Judge Green's decision that the withheld documents were

exempt from disclosure in the litigation with the FBI was a final decision which precluded

relitigation of the same issue with the Treasury Department:

> The Court rejects LaRouche's rigid concept of finality. Instead, the Court
> agrees with Treasury that "finality for purposes of issue preclusion is a more
> 'pliant' concept than it would be in other contexts.' Finality 'may mean little
> more than that the litigation of a particular issue has reached such a stage that a
> court sees no really good reason for permitting it to be litigated again.'" In re
> Brown, 951 F.2d 564 (3d Cir. 1991) (quoting Dyndul v. Dyndul, 620 F.2d 409,
> 412 (3d Cir. 1980)); see also Metromedia Co. v. Fugazy, 983 F.2d 350, 366 (2d
> Cir. 1992), cert. denied, 508 U.S. 952, 124 L. Ed. 2d 662, 113 S. Ct. 2445
> (1993); Moore's Federal Practice 3d, § 132.03[5][b][i], and cases cited therein.
> There is no doubt that Judge Greene intended his June 25, 1993 ruling
> pertaining to the SAR and CRL to be "final". The parties briefed the issues
> pertaining to those documents, the Court issued an opinion on those issues, and

---

[98] The two documents at issue, a special agents report (SAR) and a Criminal Reference
Letter (CRL), were located in both the files of the FBI and the IRS. Because one document
was authored by the IRS and the other document was authored by the FBI, the parties agreed
to litigate Larouche's claims pertaining to the IRS in one lawsuit and the claims pertaining to
the FBI document in another lawsuit, Lyndon LaRouche, Jr. v. United States Department of
Justice, No. 90-2753 (HHG), 1993 WL 388601 (D.D.C. June 25, 1993). In the FBI lawsuit,
the District Court issued an Order on June 25, 1993 that the SAR and CRL were protected
from disclosure under FOIA exemptions 3 and 5.

[99] Larouche also argued that the Treasury's attempt to apply the "law of the case
doctrine" should be rejected because the law of the case doctrine applies to issues being
litigated in the same case, but that it does not apply to issues being litigated in another case.
The law of the case doctrine holds that " a determination of an issue of law at one stage of a
case becomes 'the law of the case' and will not be reexamined in a subsequent stage of the
case." LaRouche, 112 F. Supp. 2d at 56.

the Court gave no indication that it intended to revisit those issues while the
parties were litigating the remainder of the case.

LaRouche, 112 F. Supp. 2d at 56.

In Stonehill, as in LaRouche, there is no doubt that Judge Panner intended his decision

rejecting the Government's claim of attorney work-product and attorney-client privilege to be

"final." The parties briefed those issues and the Court issued an opinion on those issues.[100]

Judge Panner gave no indication that he intended to revisit those issues while the parties were

litigating the remainder of the Rule 60(b)(6) proceeding.[101]

Under all of these circumstances Judge Panner's decision is a final decision for

purposes of collateral estoppel.

**C.    Precluding the IRS from Relitigating the Issue of Attorney Work-
Product/Attorney-Client Privilege Does Not Work a Basic Unfairness to
the IRS.**

Precluding the IRS from relitigating the issue of whether attorney work-product and

attorney-client privilege prevent disclosure of documents withheld from the 92 boxes, does not

work a basic unfairness on the IRS because the Government had an opportunity and the

incentive to litigate these issues in Stonehill. To support its argument that the IRS had

properly withheld documents pursuant to the attorney-client privilege and/or the work product

doctrine, the IRS submitted a six-hundred and seventy-two (672) page Privilege Log,[102] nine

---

[100] December 19, 2005 Order, attached as Heggestad Decl. Ex. 27.

[101] On April 20, 2006, Stonehill filed a second Motion to Require Production of
Documents Redacted by Department of Justice and Chief Counsel's Memorandum Dated
March 4, 1966. See Heggestad Decl. Ex. 37. Finally, on June 16, 2006, Stonehill filed a
Notice of Intentional Failure to Comply with Discovery Orders and Motion to Compel Full
Production. See Heggestad Decl. ¶ 37. The District Court ruled on these motions on June 6,
2006 and July 12, 2006.

[102] Heggestad Decl. Ex. 51.

Supplemental Privilege Logs,[103] a sixty (60) page Opposition to the Plaintiff's Motion to

Compel,[104] a Surreply in support of its opposition[105] and a Response to the Plaintiff's

Response to the Government's Surreply.[106]

The IRS incentive to litigate the issues in Stonehill is no less than it is in the current

proceeding. See Otherson v. Dep't of Justice, I.N.S., 711 F.2d 267, 273 (D.C. Cir. 1983)

("preclusion is sometimes unfair if the party to be bound lacked an incentive to litigate in the

first trial, especially in comparison to the stakes in the second trial"). Plaintiff's motion to

compel was filed to obtain documents to support Plaintiff's claim that the Government

committed fraud on the court. The stakes for the Government in the Rule 60(b) proceeding,

where Stonehill has alleged the Government committed fraud on the Court, are certainly as

great and arguably far greater than they are in this FOIA proceeding. To award the IRS the

relief that the District Court denied would unfairly subject the Plaintiff to multiple,

inconsistent adjudications on the same issue.

## III.    THE GOVERNMENT HAS WAIVED ANY CLAIM OF PRIVILEGE NOT ASSERTED IN THE ORIGINAL DISTRICT COURT PROCEEDING

The Government cannot assert privilege claims in this proceeding which were not

previously raised as the basis for withholding documents in the District Court proceeding in

Stonehill. See Maydak v. U.S. Dep't of Justice, 218 F. 3d 760, 764 (D.C. Cir. 2000) ("We

have plainly and repeatedly told the government that, as a general rule, it must assert all

exemptions at the same time, in the original district court proceedings.") See Washington Post

---

[103] Heggestad Decl. Exs. 52 – 58.

[104] Heggestad Decl. Ex. 16.

[105] Heggestad Decl. Ex. 18.

[106] Heggestad Decl. Ex. 22.

Co. v. United States Dep't of Health & Human Servs., 795 F.2d 205, 208 (D.C. Cir. 1986);

Ryan v. Department of Justice, 617 F.2d 781, 789, 792 (D.C. Cir. 1980); Jordan v. United

States Dep't of Justice, 591 F.2d 753, 779-80 (D.C. Cir. 1978) (en banc), overruled on other

grounds by Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1053 (D.C.

Cir. 1981) (en banc). See also Crooker v. ATF, 670 F.2d 1051 (D.C. Cir. 1981); Senate of

Puerto Rico ex rel Judiciary Comm. v. U.S. Dep't of Justice, 823 F.2d 574, 580 (D.C. Cir.

1987) (delay caused by permitting the government to raise its FOIA exemption claims one at a

time interferes with the statutory goals of "efficient, *prompt,* and full disclosure of

information.") (citation omitted).

 Because the Government did not assert the deliberative process privilege as a basis for

withholding documents in the original District Court proceeding in Stonehill, it has waived

any claim of deliberative process privilege as the basis for withholding documents in this

proceeding.  Similarly, the Government has waived any claims of attorney work-product

doctrine, attorney-client privilege[107] or 6103 third-party tax return privilege not previously

asserted as a basis for withholding documents from the Plaintiff in *Stonehill*.

 **A.      The IRS Has Waived the Deliberative Process Privilege**

 The Government has asserted the deliberative process privilege as the basis for

withholding one-hundred and seventy-two (172) documents in this proceeding.[108]  Because

that privilege was not asserted as a basis for withholding documents in Stonehill, the

---

 [107] As discussed supra at 29-30, the Government is estopped from raising any claim of attorney work product and/or attorney-client privilege in this proceeding.

 [108] See Chart titled Vaughn Deliberative Process Not Asserted by Tax Division, attached as Heggestad Decl. Ex. 43.

Government has waived any claim of deliberative process privilege as a basis for withholding these documents.[109]

**B.    The IRS has Waived any Claim of Attorney Work-Product Doctrine Not Asserted in the Initial District Court Proceeding**

The IRS has also asserted the attorney-work product doctrine as the basis for withholding 681 documents that were not withheld based on attorney-work product doctrine in the original District Court litigation.[110] Any claim of attorney-work product doctrine has been waived with respect to these documents.

**C.    The IRS has Waived any Claim of 6103 Third Party Taxpayer Return Information Not Asserted in the Initial District Court Proceeding**

FOIA Exemption 3 in conjunction with 26 U.S.C. § 6103, third-party tax return information, has also been raised for the first time by the IRS as the basis for withholding 157 documents previously withheld in the Stonehill litigation based only on attorney-work product and/or attorney-client privilege.[111] Any claim of 6103 as the basis for withholding these documents has been waived. Because the IRS is also estopped from asserting any claim of attorney-work product or attorney-client privilege as the basis for withholding any of these documents, these documents must be produced to the Plaintiff.

---

[109] Id.

[110] See Chart titled Vaughn AWP and Tax Division Not AWP, attached as Heggestad Decl. Ex. 59. Forty-eight of these documents were withheld by the IRS in the original District Court proceeding based only on attorney-client privilege. See Chart titled Vaughn Index AWP and Tax Division ACP Only, attached as Heggestad Decl. Ex. 44. Thirty-three documents were previously withheld in the Stonehill litigation based only on 26 U.S.C. § 6103. See Chart titled Tax Division Redacted Docs with 6103 and/or 6105 Privilege Only, attached as Heggestad Decl. Ex. 45.

[111] See Chart titled Vaughn 6103 Not Asserted by Tax Division, attached as Heggestad Decl. Ex. 46.

**D.    There are No Extraordinary Circumstances Justifying the IRS Assertion of New Exemptions in This proceeding**

The D.C. Circuit has recognized two exceptions for unusual circumstances beyond the Government's control, justifying the Government's failure to assert exemptions in the original District Court proceeding: (1) "extraordinary circumstances where, from pure human error, the government failed to invoke the correct exemption and will have to invoke the correct exemption and will have to release information compromising national security or sensitive, personal private information unless the court allows it to make an untimely exemption claim" and (2) "where a substantial change in the factual context of the case or an interim development in the applicable law forces the government to invoke an exemption after the original district court proceedings have concluded." Maydak, 218 F.3d at 767.

Neither of these exceptions justify the IRS assertion of privileges for the first time in this proceeding.

**1.    The Government's Failure to Assert FOIA Exemptions in the Original District Court proceeding was Not the Result of Error and it Does Not involve National Security or Serious Privacy Issues.**

The Government did not fail to invoke the correct exemption in the original District Court proceeding because of error. The IRS had almost a year to prepare its privilege logs in the Stonehill proceeding following the District Court's December 19, 2003 order. Richard Fultz, IRS Field Special Counsel in the Office of the Associate Chief Counsel (International)("ACCT") provided assistance to IRS personnel collecting, reviewing and asserting exemptions applicable in responding to the Plaintiff's July 10, 1998 FOIA request.[112] Mr. Fultz also participated in the review of documents in the 92 IRS boxes in connection with

---

[112] See Declaration of Richard Fultz (filed June 7, 2005) ¶ 1, attached as Heggestad Decl. Ex. 26.

the Plaintiff's motion to compel[113] and he assisted the Department of Justice in responding to discovery requests made in the Stonehill litigation.[114] He is currently assisting the IRS in this proceeding. Mr. Fultz has been intimately involved in the review and analysis of documents at issue in this case since 2000.[115]

From May 18, 2001, when the IRS "discovered" the initial eight boxes of documents responsive to the Plaintiff's FOIA request, until the submission of its final supplemental privilege log on January 21, 2005, the IRS and its counsel have had almost four years to review the documents withheld in this proceeding and to determine what privileges if any apply. The fact that after four years the IRS failed to cite the attorney-work product privilege as a basis for withholding 681 documents that it now claims are exempt from disclosure in this proceeding, suggests that the omission were not likely the result of error.

Significantly, the IRS does not claim that any of these omissions were the result of error. What is more likely is that after the District Court's decision rejecting attorney-work product doctrine and attorney-client privilege, the Government has decided that the deliberative process privilege remains a viable means to prevent disclosure of the withheld documents, and that work-product doctrine, rather than attorney-client privilege is easier to defend in this proceeding given narrower scope of waive applied to work product doctrine. Finally, none of the newly asserted privileges involve claims of national security or "serious" privacy concerns given the fact that the documents withheld are decades old. To the extent that serious privacy concerns exist, the names of third parties can easily be redacted from the

---

[113] Id. ¶ 2, attached as Heggestad Decl. Ex. 26.

[114] See Declaration of Richard D. Fultz (dated April 5, 2006), attached as Heggestad Decl. Ex. 48.

[115] Id. at ¶ 2.

145 documents that have been withheld in full based in part on newly asserted claims of 6103.[116]

> **2.    There Has Not Been a Substantial Change in the Factual Context of the Case or an Interim Development in the Applicable Law Since the Initial District Court Proceedings Were Concluded.**

All issues concerning the Plaintiff's motion to compel in Stonehill were resolved by the District Court following the July 12, 2006 hearing.  Since that time there have been no substantial changes in the factual context of the case or any interim developments in the applicable law.[117]

## IV.    DOCUMENTS WITHHELD OR REDACTED BY THE GOVERNMENT BASED ON  RELEVANCE OBJECTIONS ARE NOT EXEMPT FROM DISCLOSURE

Documents redacted or withheld from the Plaintiff in the initial District Court litigation based on relevance objections must be produced in this proceeding.  See Thompson v. Dep't of Navy, No. 95-347 (RMU), 1997 WL 527344, at *2 n.2 (D.D.C. Aug. 18, 1997) ("the most fundamental discovery and evidentiary principle, relevance to the issues being litigated, plays no part in FOIA cases") (citing Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980)); SEC v. R. J. Reynolds Tobacco Holdings, Inc., No. MISC.A.03-1651 (JDB), 2004 WL 3168281, at 12 (D.D.C. June 29, 2004) (Under FOIA. . . relevance is not taken into account when determining whether or not information should be disclosed pursuant to a third party request") (citing Nat'l Parks and Conservation Ass'n v. Kleppe, 547 F.2d 673,

---

[116] Chart: Vaughn 6103 Not Asserted by Tax Division, attached as Heggestad Decl. Ex. 46.

[117] Heggestad Decl. ¶ 48.

667-78 (D.C. Cir. 1976).[118]  Although the District Court in the Stonehill litigation allowed the

Government to withhold or redact information in documents based on relevance objections,

that ruling does not prevent the Plaintiff from seeking the same information through FOIA

proceedings.  SEC v. R. J. Reynolds Tobacco Holdings, Inc., supra, at *12.

> ### A.     The Government's Relevance Redactions, Approved by the District Court In Stonehill, Are Not Exempt From Disclosure Under FOIA

Based on the "scope and relevance rulings" in the District Court's December 20, 2005

Order ("Order")[119] in Stonehill,[120] on April 14, 2006, the Government produced ten[121]

documents.[122]  Three of these documents, which consist of 73 pages of notes of interviews

with IRS agents Robert Chandler ("Chandler")[123] and William Ragland ("Ragland")[124] and

FBI legal attaché Robert Hawley ("Hawley")[125] regarding their role in the raids, were initially

produced in heavily redacted form, e.g., 39 pages were entirely redacted and 15 pages were

partially redacted based on the Government's claim that the redactions were not relevant to the

---

[118] The Government admits that relevance is not a basis for withholding documents under the FOIA.  See Answer to Complaint at ¶ 45 (Docket Entry 6, filed June 8, 2006).

[119] Heggestad Decl. Ex. 27.

[120] The Court's December 10, 2005 Order required the Government to "turn over documents regarding the 1966 Tax Division investigation into the government's role in the 1962 raids" and to "turn over notes given to, or taken by, government counsel if the notes concern the Tax Division's investigation of United States' involvement in the 1962 raids." See Order at 8, attached as Heggestad Decl. Ex. 27.

[121] Document 5 is an excerpt from document 4.

[122] See Letter from C. Duffy to R. Heggestad (April 14, 2006), attached as Heggestad Decl. Ex. 29.

[123] See Document 2 attached as Heggestad Decl. Ex. 30.

[124] See Document 1, attached as Heggestad Decl. Ex. 31.

[125] See Document 10, attached as Heggestad Decl. Ex. 32.

1966 investigation. Two Chief Counsel's memoranda which summarized the results of the agents' interviews were also significantly redacted[126] by the Government based on relevance grounds.[127] Finally, the Government made relevance redactions on hand written notes of a telephone conversation with Harlow Huckabee[128] regarding McCarthy's interview with IRS Agent Chandler and on memorandum regarding the introduction of evidence of documents seized in the Philippines.[129]

On June 6, 2006, the Court ordered the Government to produce unredacted copies of the documents containing relevance redactions, for in-camera review.[130] Following the Court's in-camera review of the 11 documents, on July 12, 2006. the Government was allowed

---

[126] See Document 4, March 4, 1966 Memorandum of Fact and Law, attached as Heggestad Decl. Ex. 33 and Document 6, March 9, 1966 Memorandum from McAleer to Rogovin, attached as Heggestad Decl. Ex. 34. No relevance objections were asserted on Documents 7 and 8.

[127] The Court rejected the Government's claim that these documents were protected from disclosure based on the attorney work product and attorney-client privilege See December 20, 2005 Order at 8, attached as Heggestad Decl. Ex. 27. The reasons for rejecting the Government's claims of privilege, were explained by the Court: "...because the defendant's motion to set aside the judgment accuses the government of intentionally concealing its role in the 1962 raids during litigation of the motions to suppress, I conclude that the government must turn over documents regarding the 1966 Tax Division investigation into the government's role in the 1962 raids. Because defendants' motion to vacate challenges the conduct of the government's attorneys during the litigation of defendants' motions to suppress, the government must turn over notes given to, or taken by, government's counsel if the notes concern the Tax Division's investigation of United States involvement in the raids." Id.

[128] See Document 9, attached as Heggestad Decl. Ex. 35.

[129] See Document 11, attached as Heggestad Decl. Ex. 36.

[130] See Hrg. Tr. at 5:12-20; 17:1-14 (June 6, 2006), attached as Heggestad Decl. Ex. 38.

to maintain certain relevance redactions on five documents.[131]  The relevance redactions on

theses five documents, have no basis under FOIA and the documents should be produced in

unredacted form[132] to the Plaintiff.

**B.    All Documents Withheld in Full Based on Relevance Objections Must be Produced.**

The District Court's December 20, 2005 Order in <u>Stonehill</u> required the Government to

produce "*any other* documents now being withheld if the document concerns either the

Government's role in the 1962 raids or the Government's alleged attempts during the

litigation of the motions to suppress to conceal its role in the raids."[133] (emphasis added). After

the District Court overruled the Government's assertion of attorney-work product and

attorney-client privilege as the basis for withholding hundreds of documents, the Government

claimed that *none* of the documents withheld in full were responsive or relevant to the issues

---

[131] The Court allowed the Government to maintain the following relevance redactions: Document 1 (Ex. 31 hereto): pages 42, 46 to 50, (Tr. at 10:15-11:22, attached hereto as Ex. 41); Document 2 (Ex. 30 hereto): the last three lines of page 100 and the first and last paragraph of 101, and the first paragraph of 102, (Tr. at 12:20-14:25, Ex. 41 hereto); Document 4 (Ex. 33 hereto): the names of potential defendants at 116 (Tr. at 15:12-21, Ex. 41 hereto); information related to the bills of Lading case; 218-232 (Tr. at 18:6-18:11, Ex. 41 hereto); Document 6 (Ex. 34 hereto): information relating to Lukban's removal as NBI Director and effect on U.S. Litigation; the last half of bates-stamped 112 (page 7) and the first half of 113 (page 8); 106 (page 1) redaction of name of another individual involved in litigation; (Tr. at 18:16-20:8, Ex. 41 hereto); Document 9 (Ex. 35 hereto): last 5 lines of handwritten page; (Tr. at 20:10-20:14, Ex. 41 hereto).  The Court ordered the Government to produce Documents 10 and 11 in unredacted form.  Tr. at 20:15-20:19, Ex. 41 hereto.

[132] The Plaintiff is not disputing the CIA redactions approved by the District Court in <u>Stonehill</u> in this proceeding.

[133] Order at 9, attached as Heggestad Decl. Ex. 27.

in the Rule 60(b)(6) proceeding.[134]  In this FOIA proceeding, there is no basis for the

Government to withhold any of the documents withheld on relevance grounds or claims of

attorney work product and attorney-client privilege which were rejected in the initial District

Court proceeding.

Similarly, to the extent that documents that were previously withheld based on

relevance objections have been withheld in this proceeding based on newly asserted claims of

the  deliberative process privilege or 6103 third-party taxpayer information, those privileges

have been waived and the documents must be produced.

## V.    THERE IS NO BASIS FOR THE FBI'S ASSERTION OF (B)(6)-2 AND (B)(7)(C)- TO PROTECT THE PRIVACY INTERESTS OF IRS AGENTS WHO PARTICIPATED WITH THE FBI IN THE STONEHILL INVESTIGATION.

The FBI has asserted FOIA exemptions 6 and 7(C), 5 U.S.C. §§ 552 (b)(6) and

(b)(7)(C) to withhold FBI information on 16 out of 43 pages of documents referred by the IRS

to prevent the unwarranted invasion of the personal privacy of FBI Special Agents (b)(6)-and

(b)(7)(C)-1, non FBI federal personnel (b)(6)(c)-2 and (b)(7)(C) -2, information of commercial

institution employees (b)(6)-3 and (b)(7)(C)-3, third parties of investigative interest (b)(6)-4

and (b)(7)(C)-4,  and third parties merely mentioned (b)(6)-5 and (b)(7)(C)-5.  Except for the

name of an IRS agent[135] and redacted information related to the First National Bank in

Tennessee,[136]  the names of FBI Special Agents redacted to protect the identity of FBI Special

---

[134] The Taxpayers specifically identified 60 documents that they believed were relevant to the government's conduct in connection with the 1967, 1971 or 1975 motions to suppress.  See Appendices, attached as Heggestad Decl. Ex. 47.

[135] See Heggestad Decl. Ex. 34 (Document 6).

[136] See Heggestad Decl. Exs. 31, 33, 35, 32 and 36 (Documents 1, 5, 9, 10 and 11).

Agents in Washington, D.C., San Francisco and Pittsburg have previously been released to the Plaintiff.[137]

The FBI has failed to identify any substantial privacy rights to justify the withholding of the name of an IRS agent who was the recipient of a memorandum forwarded by FBI agent. Robert Hawley ("Hawley") on October 31, 1962.[138] The policy reasons for withholding the names of third parties such as subjects, witnesses and informants mentioned in law enforcement records do not apply to the IRS Revenue Agent involved in the Stonehill investigation.[139] In contrast, the names of IRS agents receiving information from Hawley on May 28, 1963[140] and in undated correspondence[141] forwarding a June 4, 1963 memorandum have not been redacted.

In determining whether exemption 7(C) applies to particular material, the Court must balance the substantial interest in privacy of the individual mentioned in the record against the public's interest in disclosure. Beck v. DOJ, 997 F.2d 1489, 1491 (D.C. Cir. 1993). Here, the public interest is significant because there is "more than a bare suspicion" of official misconduct. See Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172, 174 (2004). Two Ninth Circuit panelists stated that Hawley's lies were more than "just a few sort of

---

[137] Heggestad Decl. ¶ 47, Exs. 61, 62 and 63.

[138] The memorandum attached to the October 31, 1962 information memorandum concerns the New York Bills of Lading Act Stonehill investigation and has been produced as an attachment without redaction. See Declaration of David M. Hardy, Ex. A, Document 6 (Docket Entry 35-5 filed March 27, 2007).

[139] Iglesias v. CIA, 525 F. Supp. 547, 563 (D.D.C. 1981).

[140] See Declaration of David M. Hardy, Ex. A, Document 2 (Docket Entry 35-5 filed March 27, 2007).

[141] See Declaration of David M. Hardy, Ex. A, Documents 3 & 4 (Docket Entry 35-5 filed March 27, 2007).

innocent mistakes of fact"[142] and that McCarthy "at the time he filed his brief in this Court, knew things that should have precluded him from making certain representations to this Court."[143]  The Panel did not conclude that fraud occurred, but found evidence significant enough to remand the case.  Almost by definition, this is a "preliminary showing" that there is more than a bare suspicion of public misconduct.  This is one reason why, as the District Court stated after the remand, one cannot easily "imagine any privileges"[144] the Government can continue claiming.

The names of IRS agents involved in the Stonehill case have been released in literally thousands of documents produced by the IRS and the three primary IRS agents assigned to the Stonehill investigation in the Philippines, Robert Chandler, William Ragland and Sterling Powers are deceased.[145]  Presumably the IRS agent whose name has been deleted is deceased because the FBI has made no representation that the exemptions have been asserted to protect a person who is living.[146]  The IRS has asserted no reason justifying redaction of the IRS agents name to protect privacy interests.

## VI.    CIA REDACTIONS

The CIA has not asserted any privilege claims that were not previously asserted in the Stonehill litigation.  Although the Plaintiff does not believe that there is any real basis for the CIA redactions other than to diminish the role of the CIA in the wiretapping of Stonehill and

---

[142] See Nov. 6, 2002 Tr. at 7, attached as Heggestad Decl. Ex. 60.

[143] See Nov. 6, 2002 Tr. at 28-29, attached as Heggestad Decl. Ex. 60.

[144] See Dec. 19, 2003 Tr. at 26, attached as Heggestad Decl. Ex. 14.

[145] Heggestad Decl. ¶ 46.

[146] King v. U.S. Dep't of Justice, 830 F.2d 210 at 234, n.174 (D.C. Cir. 1987).

Brooks conducted by the Philippine NBI, the District Court's decision in <u>Stonehill</u> is binding on the Plaintiff in this proceeding.

## VII.   **THIRD-PARTY TAX PAYER AND RETURN INFORMATION**

The District Court in <u>Stonehill</u> denied Plaintiff's motion to compel production of documents withheld based on 26 U.S.C. § 6103 third party tax returns and return information. The Court's decision was reached in part based on its acceptance of the Government's statement that "it had reviewed the tax documents and turned over returns or return information that concerned persons and entities related to defendants, whether through a partnership or transaction."[147]   The Court's decision, however, does not prevent disclosure of documents withheld in this proceeding based on claims of 6103 privilege that were not asserted in <u>Stonehill</u>.  As previously discussed, any claim of 6103 not previously asserted in the District Court proceeding has been waived[148] and is not a proper basis for withholding documents in this proceeding.

## VIII.   **TREATY INFORMATION**

The District Court in <u>Stonehill</u> denied Plaintiff's motion to compel production of documents withheld based on 26 U.S.C. § 6105, which governs the confidentiality of information covered by international tax treaties.[149]   That decision is binding on the Plaintiff to the extent that the IRS has not asserted the 6105 privilege to withhold any document not previously claimed to be exempt based on 6105 in the Stonehill litigation.

---

[147] Order at 5-6, attached as Heggestad Decl. Ex. 27.

[148] <u>See</u> p. 32, <u>supra</u>.

[149] Dec. 20, 2005 Order at 6, attached as Heggestad Decl. Ex. 27.

IX.    **THERE IS NO BASIS FOR REQUIRING THE PLAINTIFF TO PAY ADVANCE SEARCH COSTS TO IDENTIFY DOCUMENTS THAT HAVE ALREADY BEEN LOCATED OR TO PAY FOR TRANSCRIPTS THAT ARE IN THE POSSESSION OF GOVERNMENT ATTORNEYS REPRESENTING THE IRS**

The Plaintiff did not agree to pay the IRS $5,000 in search costs for documents that had already been located by the IRS in response to Plaintiff's initial FOIA request. The Plaintiff had previously paid all search and duplication costs assessed by the IRS to process Plaintiff's FOIA request[150] and there is no basis for assessing additional search fees to locate documents requested by the Plaintiff in this proceeding that were not identified in the Government's original privilege log by IRS "control numbers." There was also no basis for requiring the Plaintiff to pay search fees for the deposition transcript of IRS agent Sterling Powers or for a November 20,1984 hearing transcript that had already been located by the IRS in the files of the Tax Division attorneys who represented the IRS in the Stonehill litigation.[151] Both of these transcripts were subsequently provided to the Plaintiff pursuant to an agreement with the IRS that Plaintiff would file no further FOIA requests with the IRS or the Tax Division for a period of seven years.[152]

---

[150] Heggestad Decl. ¶ 49.

[151] Heggestad Decl. ¶ 50.

[152] Id.

## CONCLUSION

For all of the foregoing reasons, Plaintiff, Pauline D. Stonehill, requests the Court to deny the Defendant's Motions of Partial Summary Judgment; and that judgment be entered in her favor.

Dated:  September 7, 2007

Respectfully submitted,

/s/        Robert E. Heggestad
Robert E. Heggestad (D.C. Bar. No. 953380)
Jonathan Cohen (D.C. Bar. No. 483454)
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C.  20006-1040
(202) 662-2000

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PAULINE STONEHILL**, Co-executor and Co-special administrator of the Estate of Harry S. Stonehill, | ) ) ) ) | |
| **Plaintiff,** | ) ) ) | **Case No. 1:06-cv-599 (JDB)** |
| **v.** | ) ) ) | **Honorable John D. Bates** |
| **INTERNAL REVENUE SERVICE,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to L. Civ. R. R. 7.1(h) and 56.1, the Plaintiff, Pauline Stonehill, asserts that the following facts are not in genuine dispute:

1.    On July 10, 1998, Plaintiff filed a Freedom of Information Act ("FOIA") request with the Internal Revenue Service ("IRS") Office of International Operations for all information relating to Robert P. Brooks and Harry S. Stonehill ("Taxpayers") and United States Tobacco Company.[1] Declaration of Robert E. Heggestad ("Heggestad Decl.") ¶ 1.

2.    The IRS produced five documents in response to the Plaintiff's request on December 11, 1998.[2] According to the IRS Disclosure Officer, Steven Fletcher ("Fletcher"),

---

[1] Letter from R. Heggestad to S. Fleshner (July 10, 1998), attached to Heggestad Decl. as Ex. 1. Plaintiff also filed FOIA requests with the Federal Bureau of Investigation ("FBI"), the Tax Division of the Department of Justice ("DOJ"), the Department of State and the Central Intelligence Agency ("CIA").

[2] Letter from S. Fleshner to R. Heggestad with attachments (December 11, 1998), attached to Heggestad Decl. as Ex. 2.

these five documents were located following "a thorough search of all available records under the jurisdiction of the Assistant Commissioner (International)."[3] Heggestad Decl. ¶ 2.

3.      On July 31, 1999, the Plaintiff appealed the IRS decision that documents responsive to Plaintiff's FOIA request could not be located. Heggestad Decl. ¶ 5.

4.      On October 29, 1999, the Chief of IRS Disclosure Litigation denied the Plaintiff's appeal, stating that "through discussions with appropriate Service employees, . . . these documents indeed cannot be found."[4] Heggestad Decl. ¶ 6.

5.      On October 2, 2000, the Plaintiff filed a Motion to Vacate Judgments pursuant to Federal Rule of Civil Procedure 60(b)(6) and the Court's Inherent Power to Address Fraud on the Court ("Rule 60(b) motion") in the District Court for the Central District of California, United States v. Stonehill, No. 65-127 (C.D. Cal.) ("Stonehill").[5] The Plaintiff's Rule 60(b) motion was initially filed after Plaintiff obtained documents under the FOIA and in litigation from the State Department, the Federal Bureau of Investigation ("FBI") and the Tax Division of the Department of Justice. These documents revealed that IRS and FBI agents had presented false testimony about the United States' involvement in the raids during the District Court proceedings on Stonehill's motions to suppress filed in 1967, 1971 and 1974. Heggestad Decl. ¶ 7.

6.      On November 30, 2000, the Tax Division and the FBI produced approximately 1,846 documents in response to FOIA litigation filed by the Plaintiff. These documents included several hundred documents authored by the Chief Counsel for IRS International Operations

---

[3] Id.

[4] See Letter from D. Squires, Chief of Disclosure Litigation, to R. Heggestad (October 29, 1999), attached to Heggestad Decl. as Ex. 5.

[5] The Stonehill case is lodged in the District Court in Portland, Oregon with Judge Owen M. Panner.

Branch and by IRS agents involved in the Stonehill case from 1960 through 1976. Heggestad Decl. ¶ 8.

7.    On March 15, 2001, Plaintiff's counsel questioned the original IRS Disclosure Officer, Steven Fletcher, about the IRS authored documents to determine why the documents had not been produced in response to Plaintiff's 1998 FOIA request. Mr. Fletcher, who was no longer an IRS disclosure officer, acknowledged that documents responsive to the 1998 request were, in fact, available and could be found at the Office of the Assistant Chief Counsel, Office of Intelligence Operations. Heggestad Decl. ¶ 9.

8.    On March 15, 2001, Plaintiff's counsel asked the Manager of the IRS Headquarters Disclosure Office to conduct a new search at the Office of the Associate Chief Counsel, International Operations Branch for documents responsive to Plaintiff's July 10, 1998 FOIA request.[6] Heggestad Decl. ¶ 10.

9.    On May 18, 2001, IRS Tax Law Specialist, Carroll Field, reported that eight boxes of documents relating to the Stonehill case had been located in the Associate Chief Counsel's Office. Heggestad Decl. ¶ 11.

10.    During the course of the Rule 60(b) proceeding, the IRS began its production of the eight boxes of IRS documents discovered on May 18, 2001. On August 28, 2001, prior to the completion of Plaintiff's review of the eight boxes of IRS documents, the District Court in Stonehill issued its decision denying Plaintiff's Rule 60(b) motion.[7] Heggestad Decl. ¶ 12.

11.    On September 28, 2001, during the completion of Plaintiff's review of the eight boxes of IRS documents, Ms. Field, reported that an additional 86 boxes of documents,

---

[6] See Letter from R. Heggestad to C. Campbell (March 15, 2001), attached to Heggestad Decl. as Ex. 8.

[7] The District Court denied Plaintiff's motion to stay a decision pending the completion of the review of IRS boxes. Order, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.) (filed Aug. 28, 2001).

responsive to the July 10, 1998 FOIA request had been located at the Federal Records Center.[8]

The 92 boxes[9] of newly "discovered" IRS documents were produced to the Plaintiff for review

between July 23, 2001 and October 2, 2002.[10] Heggestad Decl. ¶ 13.

    12.    On January 31, 2002, Plaintiff appealed the District Court's decision denying

Plaintiff's Rule 60(b) motion to the Ninth Circuit Court of Appeals. Heggestad Decl. ¶ 14.

    13.    On March 20, 2002, Harry S. Stonehill died. Heggestad Decl. ¶ 15.

    14.    On November 14, 2002, at the conclusion of Plaintiff's review of the 92 boxes of

IRS documents, the IRS provided Plaintiff with a list of the documents that had been withheld in

full from the eight boxes of documents located at the Chief Counsel's Office and from the 86

boxes of IRS documents located at the Federal Record Center.[11] The IRS list of documents

identified the FOIA exemptions asserted as the basis for withholding the following documents:

three documents were withheld pursuant to 5 U.S.C. § 552 (b)(5)[12] based on the attorney work-

product doctrine and on the attorney-client privilege; three documents were withheld pursuant to

5 U.S.C. § 552 (b)(7)(C) and (b)(7)(D),[13] based on privacy interests and protection of

confidential sources. The remainder of the documents described in the IRS list of documents

withheld from the 92 boxes were withheld pursuant to 5 U.S.C. § 552 (b)(3) in conjunction with

---

[8] See also Letter from R. Fultz to R. Heggestad (Oct. 16, 2001), attached to Heggestad Decl. as Ex. 6.

[9] Although the IRS originally reported that 94 boxes of documents had been located, the IRS subsequently reported that Boxes 17 and 83 were missing from the Federal Records Center. See Letter from C. Field to R. Heggestad (Nov. 14, 2002), attached to Heggestad Decl. as Ex. 7.

[10] Letter from R. Heggestad to C. Campbell (Mar. 15, 2001), attached to Heggestad Decl. as Ex. 8.

[11] Letter to R. Heggestad from C. Field (Nov. 14, 2002), attached to Heggestad Decl. as Ex. 7.

[12] Two documents located in Box 28 and Box 84 were withheld based on the attorney work-product doctrine and one document located in Box 84 was withheld based on the attorney-client privilege;

[13] Three documents located in Boxes 16, 31 and 84 were withheld based on privacy interests and protection of confidential sources.

IRC § 6103, third party taxpayer information and § 6105, competent authority information.[14] Heggestad Decl. ¶ 16.

15.    The IRS Final Decision[15] issued on November 26, 2002, was appealed by the Plaintiff on December 10, 2002.  Heggestad Decl. ¶ 17.

16.    On December 19, 2002, the Court of Appeals reversed and remanded the case for further proceedings to consider the documents obtained after the District Court's decision in the first instance.  In its memorandum decision, the Court of Appeals stated since "the district court's ruling, Stonehill and Brooks have obtained more documents that may substantially bolster their case that the government committed fraud on the court." During the hearing on November 6, 2002, two Ninth Circuit panelists stated that Hawley's lies were more than "just a few sort of innocent mistakes of fact"[16] --"it's pretty clear he lied" and that McCarthy "at the time he filed his brief in this Court, knew things that should have precluded him from making certain representations to this Court." Noting that "Stonehill and Brooks still have more FOIA requests pending," the Court of Appeals directed that "the district court should ensure that they have a fair opportunity to present their argument to the court" and that it "should assist them in obtaining relevant evidence. . . ."[17] Heggestad Decl. ¶ 18.

17.    On June 17, 2003, the IRS Office of General Appeals issued a partial determination affirming the Disclosure Officer's response withholding documents under (b)(5),

---

[14] Letter from M. Sapero to R. Heggestad with attachments (Nov. 26, 2002), attached to Heggestad Decl. as Ex. 9.

[15] IRS Final Decision (Nov. 26, 2002), attached to Heggestad Decl. as Ex. 10.

[16] See Nov. 6, 2002 Tr. at 7, attached as Heggestad Decl. Ex. 60.

[17] Opinion, Case No. 01-35943 (9th Cir. Dec. 19, 2002), attached to Heggestad Decl. as Ex. 11. See also Nov. 6, 2002 Tr. at 7, attached to Heggestad Decl. as. Ex. 60.

(b)(7)(C) and (b)(7)(D).[18]  The Appeals decision identified ten documents withheld pursuant to (b)(5), the attorney work-product and attorney-client privileges; two documents withheld pursuant (b)(7)(C), to protect privacy interests (the identity of law enforcement officers) and two documents withheld pursuant to (b)(7)(D), to protect confidential sources.  Although the Appeals decision recognized that Exemption 5 also included the executive "deliberative process," it stated that only the "attorney work-product and attorney-client privileges are here involved."[19]  In its decision, the IRS advised Plaintiff that it could not consider arguments regarding attorney/fraud or waiver in the context of an FOIA proceeding, and that these issues would need to be resolved in a judicial proceeding.  Heggestad Decl. ¶ 19.

18.     On December 19, 2003, the District Court ordered the Government to produce all relevant documents.[20]  The District Court ruled that the Taxpayers were entitled to the 84 boxes of documents that the Plaintiff had discovered after the hearing and the eight additional boxes that they had not had a chance to analyze prior to the hearing.[21]  The Court also stated that although the Government could assert privileges, it could not "imagine any privileges" that would apply to the withheld documents.[22]  Heggestad Decl. ¶ 20.

19.     On February 17, 2004, the Government responded to the Court's December 19, 2003 Order by producing 5,419 pages consisting largely of financial records.  Heggestad Decl. ¶ 21.

---

[18] At the time of the decision, the Appeals Office had not yet been provided access to responsive material withheld under 5 U.S.C. § 552(b)(3).  Appeals Decision (June 17, 2003), at 1, attached to Heggestad Decl. as Ex. 12.

[19] Appeals Decision (June 17, 2003), at 3, attached to Heggestad Decl. as Ex. 12.

[20] See Civil Minutes (Dec. 19, 2003), attached to Heggestad Decl. as Ex. 13; Hrg. Tr. at 24 (Dec. 19, 2003), attached to Heggestad Decl. as Ex. 14.

[21] Hrg. Tr. at 23:18-24:11 (Dec. 19, 2003), attached to Heggestad Decl. as Ex. 14.

[22] Id. at 26:1-9.

20.     On March 8, 2004, the Appeals Office issued a final decision sustaining the denial of access to the material withheld under 5 U.S.C. § 552(b)(3) in conjunction with IRC § 1603. In its decision, the Appeals Manager stated that "it appears the recent District Court order renders our further involvement moot."[23] Heggestad Decl. ¶ 22.

21.     On April 2, 2004, the Government produced approximately 36,000 additional pages (likewise consisting largely of financial records) and a privilege log indicating that it withheld thousands of documents consisting of nearly twenty thousand pages based on various privilege claims, including attorney-client privilege/ work product doctrine, confidential informant, 26 U.S.C. § 6103, third party tax payer return information and 26 U.S.C. § 6105, Treaty Obligation privilege.[24] Heggestad Decl. ¶ 23.

22.     The Government produced Supplemental Privilege Logs on August 20, 2004, August 27, 2004, October 4, 2004, October 15, 2004, October 22, 2004, October 29, 2004 and November 23, 2004.[25] Heggestad Decl. ¶ 24.

23.     On March 24, 2005, the Plaintiff filed a Motion to Compel Production of Documents ("Motion to Compel")[26]. The issues and facts related to the Government's assertion of various privileges was litigated in eight additional briefs that were filed by the parties during

---

[23] Appeals Decision (March 8, 2004), attached to Heggestad Decl. as Ex. 15.

[24] See Privilege Log, attached to Heggestad Decl. as Ex. 51. In its privilege log, the Government failed to provide meaningful descriptions for most of the withheld documents based on the attorney-client privilege and/or work-product doctrine. The Government also made it virtually impossible for the Taxpayers to determine whether other alleged privileges apply – specifically, tax return information privilege and documents allegedly privileged by treaty obligations. The Government's "privilege log" contained *no* identifying information about alleged tax return and treaty documents.

[25] The supplemental privilege logs are attached as Exhibits 52 – 58.

[26] See Memo. of P&As in Support of Motion of the Taxpayers to Compel Production of Documents, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.) (March 24, 2005), attached to Heggestad Decl. as Ex. 24.

the following eight months.[27] The Plaintiff argued that the Government's fraud on the Court vitiated any applicable attorney client or work product privilege,[28] that the Government had waived its privilege claims,[29] that the Defendant had withheld factual information not protected by the attorney client and work-product privileges,[30] that the attorney client privilege did not apply to Tax Division communications with agencies other than the IRS[31] and that the attorney work product doctrine was inapplicable because the Plaintiff had a substantial need for the documents.[32] Heggestad Decl. ¶ 25.

24.    During the extensive briefing by the parties in connection with the Plaintiff's motion to compel, the issues of fact and law pertaining to the attorney work-product and attorney client privilege were litigated and submitted to the District Court for determination.[33] Heggestad Decl. ¶ 26.

---

[27] See United States' Opp. to Defs.' Motion to Compel Production of Documents (June 6, 2005); Taxpayers' Reply Brief in Support of Motion to Compel (June 27, 2005); United States' Surreply Regarding Defs.' Motion to Compel Production of Documents (July 29, 2005); Taxpayers' Response to Government's Surreply (Aug. 26, 2005); Supplement to Taxpayers' Response to Government's Surreply (Sept. 1, 2005); Second Supplement to Taxpayers' Response to Government's Surreply (Dec. 5, 2005); United States' Response (Dec. 8,. 2005); Third Supplement to Taxpayers' Response to Government's Surreply (Dec. 16, 2005), attached to Heggestad Decl. respectively as Exs. 16, 17, 18, 19, 20, 21, 22, and 23.

[28] See Memo. of P&As in Support of Motion of the Taxpayers to Compel Production of Documents, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.), at 43 (March 24, 2005), attached to Heggestad Decl. as Ex. 24.

[29] See id. at 30, attached to Heggestad Decl. as Ex. 24.

[30] See id. at 23, attached to Heggestad Decl. as Ex. 24.

[31] See id. at 25, attached to Heggestad Decl. as Ex. 24.

[32] See id. at 11, attached to Heggestad Decl. as Ex. 24.

[33] The IRS has acknowledged that the issues litigated in Stonehill are identical to the issues in the FOIA proceeding. The initial Appeals decision stated that because "the issues to be resolved in the FOIA action and the refund proceeding are essentially the same, . . . to allow both suits to proceed would inevitably result in a waste of judicial resources." Ex. 12 (emphasis in original). On September 5, 2003, the IRS Appeals Office informed Plaintiff's counsel that the administrative appeal would be suspended with regard to the 5 U.S.C. § 552(b)(3) issue, because "We respectfully decline concurrent review of the issues you raised in your FOIA appeal while a Federal Court has jurisdiction over the release of the identical material you sought to access pursuant to your request under the FOIA." Ex. 25.

25.     In support of the Government's Opposition to Plaintiff's Motion to Compel, the Government submitted the Declaration of Richard Fultz, IRS Field Special Counsel in the Office of the Associate Chief Counsel (International)("ACCT"). As part of his responsibilities, Mr. Fultz provided assistance to IRS personnel collecting, reviewing and asserting exemptions applicable in responding to the Plaintiff's July 10, 1998 FOIA request.[34] Heggestad Decl. ¶ 27.

26.     As part of his official duties, Mr. Fultz also participated in the review of documents in the 92 IRS boxes in connection with the Plaintiff's motion to compel[35] and he assisted the Department of Justice in responding to discovery requests made in the Stonehill litigation.[36] Heggestad Decl. ¶ 28.

27.     On December 20, 2005, citing the Plaintiff's claims of fraud upon the Court, the Court ordered the Government to turn over all documents regarding the 1966 Tax Division investigation into the Government's role in the 1962 raids, all notes given to or taken by Government counsel if the notes concern the Tax Division's investigation of the United States' involvement in the 1962 raids; documents involving wiretaps if they relate to the raids and "any other documents now being withheld if the document concerns either the Government's role in the 1962 raids or the Government's alleged attempts during the litigation of the motions to suppress to conceal its role in the raids."[37] Heggestad Decl. ¶ 29.

28.     In its December 20, 2005 Order, the Court denied Plaintiff's motion to compel as to 26 U.S.C. § 6103 third party tax returns and return information, and treaty information based on 26 U.S.C. § 6105. The Court's ruling denying the Plaintiff's motion to compel production of

---

[34] See Declaration of Richard Fultz (filed June 7, 2005) ¶ 1, attached to Heggestad Decl. as Ex. 26.

[35] Id. ¶ 2, attached to Heggestad Decl. as Ex. 26.

[36] See Declaration of Richard D. Fultz (dated April 5, 2006), attached to Heggestad Decl. as Ex. 48.

[37] Order at 8-9, attached to Heggestad Decl. as Ex. 27.

third-party tax returns and return information was based on the Government's assurance that "it had reviewed the tax documents and turned over returns and return information that concerned persons and entities related to defendants, whether through a partnership or transaction."[38] Heggestad Decl. ¶ 30.

29.    On April 12, 2006, the Court approved certain redactions made by the CIA on eleven documents submitted by the Government for in-camera review during an ex-parte meeting held with the Court and CIA and Tax Division attorneys on April 5, 2006. In its April 12, 2006 order, the Court stated that its rulings on the CIA objections did not foreclose the Government "from objecting to this court's rulings on relevance, as set forth in the December 20, 2005 order."[39] Heggestad Decl. ¶ 34.

30.    On April 14, 2006,[40] the Government produced 11 heavily redacted documents (out of the approximately 2000 IRS documents withheld from the Plaintiff) that it had determined were relevant based on the "scope and relevance rulings" in the District Court's December 20, 2005 Order ("Order") in Stonehill,[41] Three of these documents, which consist of 73 pages of notes of interviews with IRS agents Robert Chandler ("Chandler")[42] and William Ragland ("Ragland")[43] and FBI legal attaché Robert Hawley ("Hawley")[44] regarding their role in

---

[38] Id. at 5-6.

[39] Id. at 3.

[40] See April 14, 2006 letter from C. Duffy to R. Heggestad, attached to Heggestad Decl. as Ex. 29.

[41] The Court's December 20, 2005 Order required the Government to "turn over documents regarding the 1966 Tax Division investigation into the government's role in the 1962 raids" and to "turn over notes given to, or taken by, government counsel if the notes concern the Tax Division's investigation of United States' involvement in the 1962 raids." See Order at 8, attached to Heggestad Decl. as Ex. 27.

[42] See Document 2, attached to Heggestad Decl. as Ex. 30.

[43] See Document 1, attached to Heggestad Decl. as Ex. 31.

[44] See Document 10, attached to Heggestad Decl. as Ex. 32.

the raids, were initially produced in heavily redacted form, e.g., 39 pages were entirely redacted and 15 pages were partially redacted based on the Government's claim that the redactions were not relevant to the 1966 investigation.  Two Chief Counsel's memoranda which summarized the results of the agents' interviews were also significantly redacted[45] by the Government based on relevance grounds.  Finally, the Government made relevance redactions on hand written notes of a telephone conversation with Harlow Huckabee[46] regarding McCarthy's interview with IRS Agent Chandler and on  memorandum regarding the introduction of evidence of documents seized in the Philippines.[47]  Heggestad Decl. ¶ 35.

31.    The Court rejected the Government's claim that these documents were protected from disclosure based on the attorney work product and attorney-client privilege  See December 20, 2005 Order at 8, attached to Heggestad Decl. as Ex. 27.  The  reasons for rejecting the Government's claims of privilege, were explained by the Court: "...because the defendant's motion to set aside the judgment accuses the government of intentionally concealing its role in the 1962 raids during litigation of the motions to suppress, I conclude that the government must turn over documents regarding the 1966 Tax Division investigation into the government's role in the 1962 raids.   Because defendants' motion to vacate challenges the  conduct  of  the government's attorneys during the litigation of defendants' motions to suppress, the government must turn over notes given to, or taken by, government's counsel if the notes concern the Tax Division's investigation of United States involvement in the raids." Id.  Heggestad Decl. ¶ 35.

---

[45] See Document 4, March 4, 1966 Memorandum of Fact and Law, attached to Heggestad Decl. as Ex. 33 and Document 6, March 9, 1966 Memorandum from McAleer to Rogovin, attached to Heggestad Decl. as Ex. 34.  No relevance objections were asserted on Documents 7 and 8.

[46] See Document 9, attached to Heggestad Decl. as Ex. 35.

[47] See Document 11, attached to Heggestad Decl. as Ex. 36.

32.    On April 20, 2006, the Plaintiff filed a second Motion to Require Production of Documents Redacted by Department of Justice and Chief Counsel's memorandum Dated March 4, 1966.[48] The District Court denied this motion on June 6, 2006.[49] Heggestad Decl. ¶ 36.

33.    On April 27, 2006, the Court clarified its December 20, 2005 Order and held that the Government's role in the raids included instigation of the raids and that the Court would rely on the Government to produce any document "if it has anything to do with the raids."[50] Heggestad Decl. ¶ 37.

34.    On June 6, 2006, the Court directed the Government to produce 11 documents redacted by the CIA in-camera to allow the Court to review relevance redactions made by the Government.[51] Heggestad Decl. ¶ 38.

35.    On June 16, 2006, the Plaintiff filed a Notice of Intentional Failure to Comply with Discovery Orders and Motion to Compel Full Production.  The District Court denied this motion on July 12, 2006.[52]  Heggestad Decl. ¶ 39.

36.    Following the Court's in-camera review of the 11 documents, on July 12, 2006. the Government was allowed to maintain certain relevance redactions on five documents.  The Court allowed the Government to maintain the following relevance redactions:  Document 1 (Ex. 31 hereto): pages 42, 46 to 50, (Tr. at 10:15-11:22, attached to Heggestad Decl. as Ex. 41);

---

[48] Motion to Require Production of Documents Redacted by Department of Justice and Chief Counsel's Memorandum Dated March 4, 1966, United States v. Stonehill, No. 65-127 (C.D. Cal.), attached to Heggestad Decl. as Ex. 37.

[49] Hrg. Tr. at 36-38 (June 6, 2006), attached to Heggestad Decl. as Ex. 38.

[50] Hrg. Tr. at 2:21-3:15 (April 27, 2006), attached to Heggestad Decl. as Ex. 39.

[51] See Hrg. Transcript at 5:12-20; 17:1-14 (June 6, 2006), attached to Heggestad Decl. as Ex. 38; Civil Minutes dated June 6, 2006, attached to Heggestad Decl. as Ex. 40.

[52] Hearing Tr. (July 12, 2006), attached to Heggestad Decl. as Ex. 41; July 12, 2006 Civil Minutes, attached to Heggestad Decl. as Ex. 42.

Document 2 (Ex. 30 hereto): the last three lines of page 100 and the first and last paragraph of 101, and the first paragraph of 102, (Tr. at 12:20-14:25, Ex. 41 hereto); Document 4 (Ex. 33 hereto): the names of potential defendants at 116 (Tr. at 15:12-21, Ex. 41 hereto); information related to the bills of Lading case; 218-232 (Tr. at 18:6-18:11, Ex. 41 hereto); Document 6 (Ex. 34 hereto): information relating to Lukban's removal as NBI Director and effect on U.S. Litigation; the last half of bates-stamped 112 (page 7) and the first half of 113 (page 8); 106 (page 1) redaction of name of another individual involved in litigation; (Tr. at 18:16-20:8, Ex. 41 hereto); Document 9 (Ex. 35 hereto): last 5 lines of handwritten page; (Tr. at 20:10-20:14, Ex. 41 hereto). The Court ordered the Government to produce Documents 10 and 11 in unredacted form. Tr. at 20:15-20:19, Ex. 41 hereto. Heggestad Decl. ¶ 40.

37.     After the District Court overruled the Government's assertion of attorney-work product and attorney-client privilege as the basis for withholding hundreds of documents, the Government claimed that *none* of the documents withheld in full were responsive or relevant.[53] Heggestad Decl. ¶ 41.

38.     The IRS has asserted the deliberative process privilege as the basis for withholding one-hundred and seventy-two (172) documents in this proceeding.[54]   Heggestad Decl. ¶ 42.

39.     The IRS has also asserted the attorney-work product doctrine as the basis for withholding 681 documents that were not withheld based on attorney-work product doctrine in

---

[53] The Taxpayers specifically identified 60 documents that they believed were relevant to the government's conduct in connection with the 1967, 1971 or 1975 motions to suppress. See Appendices (Exhibit OO to March 25, 2005 Motion to Compel), attached to Heggestad Decl. as Ex. 47.

[54] See Chart titled Vaughn Deliberative Process Not Asserted by Tax Division, attached to Heggestad Decl. as Ex. 43.

the original District Court litigation.[55]  The IRS has also asserted the attorney-work product

doctrine as the basis for withholding 48 documents that were previously withheld in Stonehill

based only on attorney-client privilege.[56] Heggestad Decl. ¶ 43.

40.    The IRS has asserted FOIA Exemption 3 in conjunction with 26 U.S.C. § 6103,

third-party tax return information as the basis for withholding 157 documents previously

withheld in the *Stonehill* litigation based only on attorney-work product and/or attorney-client

privilege.[57] Heggestad Decl. ¶ 44.

41.    The documents released to the Plaintiff in response to Plaintiff' July 10, 1998

FOIA request have included the names of almost every IRS agent involved in the investigation

of Stonehill released in literally thousands of IRS documents produced.  During the course of the

Rule 60(b) proceedings, I have been advised by the Government that the IRS agents assigned to

the Stonehill investigation in the Philippines,  Robert Chandler, William Ragland and Sterling

Powers are deceased. Heggestad Decl. ¶ 45.

42.    Documents previously released to the Plaintiff by the FBI have included the

unredacted names of FBI Special Agents from Pittsburg,[58] Washington, D.C.,[59] and San

Francisco.[60] Heggestad Decl. ¶ 46.

---

[55] See Chart titled Vaughn Deliberative Process Not Asserted by Tax Divison, attached to Heggestad Decl. as Ex. 43.

[56] See Chart titled Vaughn AWP and Tax Division ACP Only, attached to Heggestad Decl. as Ex. 44.  The IRS has also asserted attorney-work product doctrine as the basis for withholding 33 documents that were previously withheld in the Stonehill litigation based only on 26 U.S.C. § 6103.  See Chart titled Tax Division Redacted Docs with 6103 and/or 6105 Privilege Only, attached to Heggestad Decl. as Ex. 45.

[57] See Chart titled Vaughn 6103 Not Asserted by Tax Division, attached to Heggestad Decl. as Ex. 46.

[58] See Report of FBI Special Agent  Thomas J. Doody  (July 6, 1962), attached to Heggestad Decl. as Ex. 61. The report also includes the unredacted name of Special Agent Donald G. Fischer.  The names of both Special Agents were redacted in documents submitted with the FBI Vaughn Index.

[59] See Report of Special Agent Joseph A. Genau (Feb. 19, 1962) attached to Heggestad Decl. as Exhibit 62.

43.     Since the District Court's ruling on the Plaintiff's Motion to Compel Production of Documents from the 92 IRS boxes, there have been no changes in the factual context of the case.  Heggestad Decl. ¶ 47.

Dated:  September 7, 2007

Respectfully submitted,

/s/        Robert E. Heggestad
Robert E. Heggestad (D.C. Bar. No. 953380)
Jonathan Cohen (D.C. Bar. No. 483454)
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C.  20006-1040
(202) 662-2000

Attorneys for Plaintiff

---

[60] See Report of Special Agent Matthew J. Lightbody (Feb. 27, 1962), attached to Heggestad Decl. as Exhibit 63.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **PAULINE STONEHILL**, Co-executor and Co-special administrator of the Estate of Harry S. Stonehill, | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 1:06-cv-599 (JDB)** |
| **v.** | ) ) | **Honorable John D. Bates** |
| **INTERNAL REVENUE SERVICE,** | ) ) | |
| **Defendant.** | ) ) ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN GENUINE DISPUTE

1.      On March 15, 2001, Plaintiff's counsel questioned the original IRS Disclosure Officer, Steven Fletcher, to determine why documents had not been produced in response to Plaintiff's 1998 FOIA request.  Mr. Fletcher, who was no longer an IRS disclosure officer, acknowledged that documents responsive to the 1998 request were, in fact, available and could be found at the Office of the Assistant Chief Counsel, Office of Intelligence Operations. Declaration of Robert E. Heggestad ("Heggestad Decl.") ¶ 9.

2.      On March 15, 2001, Plaintiff's counsel asked the Manager of the IRS Headquarters Disclosure Office to conduct a new search at the Office of the Associate Chief Counsel, International Operations Branch for documents responsive to Plaintiff's July 10, 1998 FOIA request.[1] Heggestad Decl. ¶ 10.

---

[1] See Letter from R. Heggestad to C. Campbell (March 15, 2001), attached to Heggestad Decl. as Ex. 8.

3.    On August 28, 2001, the District Court in <u>Stonehill</u> issued its decision denying Plaintiff's Rule 60(b) motion.[2] Heggestad Decl. ¶ 12.

4.    On December 19, 2002, the Court of Appeals reversed and remanded the <u>Stonehill</u> case for further proceedings to consider the documents obtained after the District Court's decision in the first instance.  During the hearing on November 6, 2002, two Ninth Circuit panelists stated that Hawley's lies were more than "just a few sort of innocent mistakes of fact"[3] --"it's pretty clear he lied" and that McCarthy "at the time he filed his brief in this Court, knew things that should have precluded him from making certain representations to this Court."[4] Heggestad Decl. ¶ 18.

5.    The IRS has asserted the deliberative process privilege as the basis for withholding one-hundred and seventy-two (172) documents in this proceeding.  <u>See</u> Chart titled Vaughn Deliberative Process Not Asserted by Tax Divison, attached to Heggestad Decl. as Ex. 43. Heggestad Decl. ¶ 42.

6.    The IRS has also asserted the attorney-work product doctrine as the basis for withholding 681 documents that were not withheld based on attorney-work product doctrine in the original District Court litigation.  Chart titled Vaughn Deliberative Process Not Asserted by Tax Divison, attached to Heggestad Decl. as Ex. 43.  The IRS has also asserted the attorney-work product doctrine as the basis for withholding 48 documents that were previously withheld in <u>Stonehill</u> based only on attorney-client privilege.  <u>See</u> Chart titled Vaughn AWP and Tax Division ACP Only, attached to Heggestad Decl. as Ex. 44. The IRS has also asserted attorney-

---

[2] The District Court denied Plaintiff's motion to stay a decision pending the completion of the review of IRS boxes.  Order, <u>United States v. Stonehill</u>, No. 65-127 (OMP) (C.D. Cal.) (filed Aug. 28, 2001).

[3] <u>See</u> Nov. 6, 2002 Tr. at 7, attached as Heggestad Decl. Ex. 60.

[4] Opinion, Case No. 01-35943 (9th Cir. Dec. 19, 2002), attached to Heggestad Decl. as Ex. 11. <u>See also</u> Nov. 6, 2002 Tr. at 7, attached to Heggestad Decl. as. Ex. 60.

work product doctrine as the basis for withholding 33 documents that were previously withheld in the Stonehill litigation based only on 26 U.S.C. § 6103. <u>See</u> Chart titled Tax Division Redacted Docs with 6103 and/or 6105 Privilege Only, attached to Heggestad Decl. as Ex. 45. Heggestad Decl. ¶ 43.

7.     The IRS has asserted FOIA Exemption 3 in conjunction with  26 U.S.C. § 6103, third-party tax return information as the basis for withholding 157 documents previously withheld in the <i>Stonehill</i> litigation based only on attorney-work product and/or attorney-client privilege. <u>See</u> Chart titled Vaughn 6103 Not Asserted by Tax Division, attached to Heggestad Decl. as Ex. 46. Heggestad Decl. ¶ 44.

8.     The documents released to the Plaintiff in response to Plaintiff' July 10, 1998 FOIA request have included the names of almost every IRS agent involved in the investigation of Stonehill released in literally thousands of IRS documents produced.  The IRS agents assigned to the Stonehill investigation in the Philippines,  Robert Chandler, William Ragland and Sterling Powers are deceased.  Heggestad Decl. ¶ 45.

9.     Documents previously released to the Plaintiff by the FBI have included the unredacted names of FBI Special Agents from Pittsburg,[5] Washington, D.C,[6] and San Fransisco.[7] Heggestad Decl. ¶ 46.

10.     The Plaintiff did not agree to pay $5,000 in search costs for documents that had already been located by the IRS in response to Plaintiff's initial FOIA request because the

---

[5] <u>See</u> Report of FBI Special Agent  Thomas J. Doody  (July 6, 1962), attached to Heggestad Decl. as Ex. 61. The report also includes the unredacted name of Special Agent Donald G. Fischer.  The names of both Special Agents were redacted in documents submitted with the FBI Vaughn Index.

[6] <u>See</u> Report of Special Agent Joseph A. Genau (Feb. 19, 1962) attached to Heggestad Decl. as Exhibit 62.

[7] <u>See</u> Report of Special Agent Matthew J. Lightbody (Feb. 27, 1962), attached to Heggestad Decl. as Exhibit 63.

Plaintiff had previously paid all search and duplication costs assessed by the IRS to process Plaintiff's FOIA request. Heggestad Decl. ¶ 48.

11.    The deposition transcript of IRS agent Sterling Powers and a November 20, 1984 hearing transcript were located in the files of the Tax Division attorneys who represented the IRS in the Stonehill litigation.[8]  Both of these transcripts were subsequently provided to the Plaintiff pursuant to an agreement with the IRS that Plaintiff would file no further FOIA requests with the IRS or the Tax Division for a period of seven years.[9]  Heggestad Decl. ¶ 49.


Dated:  September 7, 2007

                                        Respectfully submitted,

                                        /s/        Robert E. Heggestad
                                        Robert E. Heggestad (D.C. Bar. No. 953380)
                                        Jonathan Cohen (D.C. Bar. No. 483454)
                                        ROSS, DIXON & BELL, LLP
                                        2001 K Street, N.W.
                                        Washington, D.C.  20006-1040
                                        (202) 662-2000

                                        Attorneys for Plaintiff

---

[8] See Letter from B. Campbell to R. Heggestad (May 2, 2007), attached to Heggestad Decl. as Ex. 49.

[9] See Letter from E. O'Connor/D. Hubbert to R. Heggestad (May 7, 2007), attached to Heggestad Decl. as Ex. 50.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE and PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN GENUINE DISPUTE was served by United States mail addressed to the following on this 7th day of September, 2007:

> Brittney N. Campbell
> David M Katinsky
> TAX DIVISION
> Post Office Box 227
> Ben Franklin Station
> Washington, D.C.  20044

> /s/      Robert E. Heggestad
> Robert E. Heggestad

356950 v 1