UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAULINE STONEHILL, Co-executor and Co-special administrator of the Estate of Harry S. Stonehill, <br><br>    **Plaintiff,**<br><br>v.<br><br>**INTERNAL REVENUE SERVICE**<br><br>    **Defendant.** | Case No. 06-599 (JDB)<br><br>Honorable John D. Bates |

## DECLARATION OF ROBERT E. HEGGESTAD

I, Robert E. Heggestad, declare:

1. I am co-counsel of record for Pauline Stonehill, Co-executor and Co-special administrator of the Estate of Harry S. Stonehill, ("Plaintiff") in this matter and in <u>United States v. Stonehill</u>, No. 65-127 (C.D. Cal.).

2. On July 10, 1998, Plaintiff filed a Freedom of Information Act ("FOIA") request with the Internal Revenue Service ("IRS") Office of International Operations for all information relating to Robert P. Brooks and Harry S. Stonehill ("Taxpayers") and United States Tobacco Company.[1]

---

[1] Letter from R. Heggestad to S. Fleshner (July 10, 1998), attached hereto as Ex. 1. Plaintiff also filed FOIA requests with the Federal Bureau of Investigation ("FBI"), the Tax Division of the Department of Justice ("DOJ"), the Department of State and the Central Intelligence Agency ("CIA").

357004 v 1

3.  The IRS produced five documents in response to the Plaintiff's request on December 11, 1998.[2] According to the IRS Disclosure Officer, Steven Fletcher ("Fletcher"), these five documents were located following "a thorough search of all available records under the jurisdiction of the Assistant Commissioner (International)."[3]

4.  To assist the IRS in locating additional responsive documents, on January 5, 1999, I provided the IRS with several documents obtained from the State Department, referencing documents authored by IRS employees that had been sent to various United States' agencies in connection with the Stonehill case.[4]

5.  On January 6, 1999, the IRS determined that the documents did "not provide ... information that would enable [IRS] to locate additional records, if they exist, that are not in [IRS] possession at this time."[5] The IRS suggested that the Plaintiff file a new FOIA request with the Department of Justice "where the case was litigated ... for a number of years" and advised Plaintiff that the International Operations Disclosure Office could be of no further assistance "in the quest for these documents."[6]

6.  On July 31, 1999, the Plaintiff appealed the IRS decision that documents responsive to Plaintiff's FOIA request could not be located.

---

[2] Letter from S. Fleshner to R. Heggestad with attachments (December 11, 1998), attached hereto as Ex. 2.

[3] Id.

[4] Letter from R. Heggestad to S. Fleshner with attachments (Jan. 5, 1999), attached hereto as Ex. 3.

[5] Letter from S. Fleshner to R. Heggestad (Jan. 6, 1999), attached hereto as Ex. 4.

[6] Id.

7.  On October 29, 1999, the Chief of IRS Disclosure Litigation denied the Plaintiff's appeal, stating that "through discussions with appropriate Service employees, ... these documents indeed cannot be found."[7]

8.  On October 2, 2000, the Plaintiff filed a Motion to Vacate Judgments pursuant to Federal Rule of Civil Procedure 60(b)(6) and the Court's Inherent Power to Address Fraud on the Court ("Rule 60(b) motion") in the District Court for the Central District of California, United States v. Stonehill, No. 65-127 (C.D. Cal.) ("Stonehill").[8] The Plaintiff's Rule 60(b) motion was initially filed after Plaintiff obtained documents under the FOIA and in litigation from the State Department, the Federal Bureau of Investigation ("FBI") and the Tax Division of the Department of Justice. These documents revealed that IRS and FBI agents had presented false testimony a bout the United States' involvement in the raids during the District Court proceedings on Stonehill's motions to suppress filed in 1967, 1971 and 1974

9.  On November 30, 2000, the Tax Division and the FBI produced approximately 1,846 documents in response to FOIA litigation filed by the Plaintiff. These documents included several hundred documents authored by the Chief Counsel for IRS International Operations Branch and by IRS agents involved in the Stonehill case from 1960 through 1976.

10.  On March 15, 2001, I questioned the original IRS Disclosure Officer, Steven Fletcher, about the IRS authored documents to determine why the documents had not been produced in response to Plaintiff's 1998 FOIA request. Mr. Fletcher, who was no longer an IRS disclosure officer, acknowledged that documents responsive to the 1998 request were, in fact,

---

[7] See Letter from D. Squires, Chief of Disclosure Litigation, to R. Heggestad (October 29, 1999), attached hereto as Ex. 5.

[8] The Stonehill case is lodged in the District Court in Portland, Oregon with Judge Owen M. Panner.

available and could be found at the Office of the Assistant Chief Counsel, Office of Intelligence Operations.

11. On March 15, 2001, I asked the Manager of the IRS Headquarters Disclosure Office to conduct a new search at the Office of the Associate Chief Counsel, International Operations Branch for documents responsive to Plaintiff's July 10, 1998 FOIA request.[9]

12. On May 18, 2001, IRS Tax Law Specialist, Carroll Field, reported that eight boxes of documents relating to the Stonehill case had been located in the Associate Chief Counsel's Office.

13. During the course of the Rule 60(b) proceeding, the IRS began its production of the eight boxes of IRS documents discovered on May 18, 2001. On August 28, 2001, prior to the completion of my review of the eight boxes of IRS documents, the District Court in Stonehill issued its decision denying Plaintiff's Rule 60(b) motion.[10]

14. On September 28, 2001, during the completion of Plaintiff's review of the eight boxes of IRS documents, Ms. Field, reported that an additional 86 boxes of documents, responsive to the July 10, 1998 FOIA request had been located at the Federal Records Center.[11] The 92 boxes[12] of newly "discovered" IRS documents were produced to the Plaintiff for review between July 23, 2001 and October 2, 2002.[13]

---

[9] See Letter from R. Heggestad to C. Campbell (March 15, 2001), attached hereto as Ex. 8.

[10] The District Court denied Plaintiff's motion to stay a decision pending the completion of the review of IRS boxes. Order, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.) (filed Aug. 28, 2001).

[11] See also Letter from R. Fultz to R. Heggestad (Oct. 16, 2001), attached hereto as Ex. 6.

[12] Although the IRS originally reported that 94 boxes of documents had been located, the IRS subsequently reported that Boxes 17 and 83 were missing from the Federal Records Center. See Letter from C. Field to R. Heggestad (Nov. 14, 2002), attached hereto as Ex. 7.

[13] Letter from R. Heggestad to C. Campbell (Mar. 15, 2001), attached hereto as Ex. 8.

15. On January 31, 2002, Plaintiff appealed the District Court's decision denying Plaintiff's Rule 60(b) motion to the Ninth Circuit Court of Appeals.

16. On March 20, 2002, Harry S. Stonehill died.

17. On November 14, 2002, at the conclusion of my review of the 92 boxes of IRS documents, the IRS provided me with a list of the documents that had been withheld in full from the eight boxes of documents located at the Chief Counsel's Office and from the 86 boxes of IRS documents located at the Federal Record Center.[14] The IRS list of documents identified the FOIA exemptions asserted as the basis for withholding the following documents: three documents were withheld pursuant to 5 U.S.C. § 552 (b)(5)[15] based on the attorney work-product doctrine and on the attorney-client privilege; three documents were withheld pursuant to 5 U.S.C. § 552 (b)(7)(C) and (b)(7)(D),[16] based on privacy interests and protection of confidential sources. The remainder of the documents described in the IRS list of documents withheld from the 92 boxes were withheld pursuant to 5 U.S.C. § 552 (b)(3) in conjunction with IRC § 6103, third party taxpayer information and § 6105, competent authority information.[17]

18. The IRS Final Decision[18] issued on November 26, 2002, was appealed by the Plaintiff on December 10, 2002.

19. On December 19, 2002, the Court of Appeals reversed and remanded the case for further proceedings to consider the documents obtained after the District Court's decision in the

---

[14] Letter to R. Heggestad from C. Field (Nov. 14, 2002), attached hereto as Ex. 7.

[15] Two documents located in Box 28 and Box 84 were withheld based on the attorney work-product doctrine and one document located in Box 84 was withheld based on the attorney-client privilege;

[16] Three documents located in Boxes 16, 31 and 84 were withheld based on privacy interests and protection of confidential sources.

[17] Letter from M. Sapero to R. Heggestad with attachments (Nov. 26, 2002), attached hereto as Ex. 9.

[18] IRS Final Decision (Nov. 26, 2002), attached hereto as Ex. 10.

first instance. In its memorandum decision, the Court of Appeals stated since "the district court's ruling, Stonehill and Brooks have obtained more documents that may substantially bolster their case that the government committed fraud on the court." During the hearing on November 6, 2002, two Ninth Circuit panelists stated that Hawley's lies were more than "just a few sort of innocent mistakes of fact"[19] --"it's pretty clear he lied" and that McCarthy "at the time he filed his brief in this Court, knew things that should have precluded him from making certain representations to this Court." Noting that "Stonehill and Brooks still have more FOIA requests pending," the Court of Appeals directed that "the district court should ensure that they have a fair opportunity to present their argument to the court" and that it "should assist them in obtaining relevant evidence. . . ."[20]

20.   On June 17, 2003, the IRS Office of General Appeals issued a partial determination affirming the Disclosure Officer's response withholding documents under (b)(5), (b)(7)(C) and (b)(7)(D).[21] The Appeals decision identified ten documents withheld pursuant to (b)(5), the attorney work-product and attorney-client privileges; two documents withheld pursuant (b)(7)(C), to protect privacy interests (the identity of law enforcement officers) and two documents withheld pursuant to (b)(7)(D), to protect confidential sources. Although the Appeals decision recognized that Exemption 5 also included the executive "deliberative process," it stated that only the "attorney work-product and attorney-client privileges are here involved."[22] In its decision, the IRS advised Plaintiff that it could not consider arguments regarding attorney/fraud

---

[19] See Nov. 6, 2002 Tr. at 7, attached as Heggestad Decl. Ex. 60.

[20] Opinion, Case No. 01-35943 (9th Cir. Dec. 19, 2002), attached hereto as Ex. 11. See also Nov. 6, 2002 Tr. at 7, attached hereto as Ex. 60.

[21] At the time of the decision, the Appeals Office had not yet been provided access to responsive material withheld under 5 U.S.C. § 552(b)(3). Appeals Decision (June 17, 2003), at 1, attached hereto as Ex. 12.

[22] Appeals Decision (June 17, 2003), at 3, attached hereto as Ex. 12.

or waiver in the context of an FOIA proceeding, and that these issues would need to be resolved in a judicial proceeding.

21. On December 19, 2003, the District Court ordered the Government to produce all relevant documents.[23] The District Court ruled that the Taxpayers were entitled to the 84 boxes of documents that the Plaintiff had discovered after the hearing and the eight additional boxes that they had not had a chance to analyze prior to the hearing.[24] The Court also stated that although the Government could assert privileges, it could not "imagine any privileges" that would apply to the withheld documents.[25]

22. On February 17, 2004, the Government responded to the Court's December 19, 2003 Order by producing 5,419 pages consisting largely of financial records.

23. On March 8, 2004, the Appeals Office issued a final decision sustaining the denial of access to the material withheld under 5 U.S.C. § 552(b)(3) in conjunction with IRC § 1603. In its decision, the Appeals Manager stated that "it appears the recent District Court order renders our further involvement moot."[26]

24. On April 2, 2004, the Government produced approximately 36,000 additional pages (likewise consisting largely of financial records) and a privilege log indicating that it withheld thousands of documents consisting of nearly twenty thousand pages based on various privilege claims, including attorney-client privilege/ work product doctrine, confidential

---

[23] See Civil Minutes (Dec. 19, 2003), attached hereto as Ex. 13; Hrg. Tr. at 24 (Dec. 19, 2003), attached hereto as Ex. 14.

[24] Hrg. Tr. at 23:18-24:11 (Dec. 19, 2003), attached hereto as Ex. 14.

[25] Id. at 26:1-9.

[26] Appeals Decision (March 8, 2004), attached hereto as Ex. 15.

informant, 26 U.S.C. § 6103, third party tax payer return information and 26 U.S.C. § 6105, Treaty Obligation privilege.[27]

25.  The Government produced Supplemental Privilege Logs on August 20, 2004, August 27, 2004, October 4, 2004, October 15, 2004, October 22, 2004, October 29, 2004 and November 23, 2004.[28]

26.  On March 24, 2005, the Plaintiff filed a Motion to Compel Production of Documents ("Motion to Compel")[29]. The issues and facts related to the Government's assertion of various privileges was litigated in eight additional briefs that were filed by the parties during the following eight months.[30] The Plaintiff argued that the Government's fraud on the Court vitiated any applicable attorney client or work product privilege,[31] that the Government had waived its privilege claims,[32] that the Defendant had withheld factual information not protected

---

[27] See Privilege Log, attached hereto as Ex. 51. In its privilege log, the Government failed to provide meaningful descriptions for most of the withheld documents based on the attorney-client privilege and/or work-product doctrine. The Government also made it virtually impossible for the Taxpayers to determine whether other alleged privileges apply – specifically, tax return information privilege and documents allegedly privileged by treaty obligations. The Government's "privilege log" contained *no* identifying information about alleged tax return and treaty documents.

[28] The supplemental privilege logs are attached as Exhibits 52 – 58.

[29] See Memo. of P&As in Support of Motion of the Taxpayers to Compel Production of Documents, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.) (March 24, 2005), attached hereto as Ex. 24.

[30] See United States' Opp. to Defs.' Motion to Compel Production of Documents (June 6, 2005); Taxpayers' Reply Brief in Support of Motion to Compel (June 27, 2005); United States' Surreply Regarding Defs.' Motion to Compel Production of Documents (July 29, 2005); Taxpayers' Response to Government's Surreply (Aug. 26, 2005); Supplement to Taxpayers' Response to Government's Surreply (Sept. 1, 2005); Second Supplement to Taxpayers' Response to Government's Surreply (Dec. 5, 2005); United States' Response (Dec. 8,. 2005); Third Supplement to Taxpayers' Response to Government's Surreply (Dec. 16, 2005), attached hereto respectively as Exs. 16, 17, 18, 19, 20, 21, 22, and 23.

[31] See Memo. of P&As in Support of Motion of the Taxpayers to Compel Production of Documents, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.), at 43 (March 24, 2005), attached hereto as Ex. 24.

[32] See id. at 30, attached hereto as Ex. 24.

by the attorney client and work-product privileges,[33] that the attorney client privilege did not apply to Tax Division communications with agencies other than the IRS[34] and that the attorney work product doctrine was inapplicable because the Plaintiff had a substantial need for the documents.[35]

27.  During the extensive briefing by the parties in connection with the Plaintiff's motion to compel, the issues of fact and law pertaining to the attorney work-product and attorney client privilege were litigated and submitted to the District Court for determination.[36]

28.  In support of the Government's Opposition to Plaintiff's Motion to Compel, the Government submitted the Declaration of Richard Fultz, IRS Field Special Counsel in the Office of the Associate Chief Counsel (International)("ACCT"). As part of his responsibilities, Mr. Fultz provided assistance to IRS personnel collecting, reviewing and asserting exemptions applicable in responding to the Plaintiff's July 10, 1998 FOIA request.[37]

29.  As part of his official duties, Mr. Fultz also participated in the review of documents in the 92 IRS boxes in connection with the Plaintiff's motion to compel[38] and he

---

[33] See id. at 23, attached hereto as Ex. 24.

[34] See id. at 25, attached hereto as Ex. 24.

[35] See id. at 11, attached hereto as Ex. 24.

[36] The IRS has acknowledged that the issues litigated in Stonehill are identical to the issues in the FOIA proceeding. The initial Appeals decision stated that because "the issues to be resolved in the FOIA action and the refund proceeding are essentially the same, . . . to allow both suits to proceed would inevitably result in a waste of judicial resources." Ex. 12 (emphasis in original). On September 5, 2003, the IRS Appeals Office informed Plaintiff's counsel that the administrative appeal would be suspended with regard to the 5 U.S.C. § 552(b)(3) issue, because "We respectfully decline concurrent review of the issues you raised in your FOIA appeal while a Federal Court has jurisdiction over the release of the identical material you sought to access pursuant to your request under the FOIA." Ex. 25.

[37] See Declaration of Richard Fultz (filed June 7, 2005) ¶ 1, attached hereto as Ex. 26.

[38] Id. ¶ 2, attached hereto as Ex. 26.

assisted the Department of Justice in responding to discovery requests made in the <u>Stonehill</u> litigation.[39]

30. On December 20, 2005, citing the Plaintiff's claims of fraud upon the Court, the Court ordered the Government to turn over all documents regarding the 1966 Tax Division investigation into the Government's role in the 1962 raids, all notes given to or taken by Government counsel if the notes concern the Tax Division's investigation of the United States' involvement in the 1962 raids; documents involving wiretaps if they relate to the raids and "any other documents now being withheld if the document concerns either the Government's role in the 1962 raids or the Government's alleged attempts during the litigation of the motions to suppress to conceal its role in the raids."[40]

31. In its December 20, 2005 Order, the Court denied Plaintiff's motion to compel as to 26 U.S.C. § 6103 third party tax returns and return information, and treaty information based on 26 U.S.C. § 6105. The Court's ruling denying the Plaintiff's motion to compel production of third-party tax returns and return information was based on the Government's assurance that "it had reviewed the tax documents and turned over returns and return information that concerned persons and entities related to defendants, whether through a partnership or transaction."[41]

32. The Court's December 20, 2005 Order also denied any further discovery related to Stonehill's attorney, William Saunders, to the extent that "any of withheld tax documents relate to him."[42]

---

[39] <u>See</u> Declaration of Richard D. Fultz (dated April 5, 2006), attached hereto as Ex. 48.

[40] Order at 8-9, attached hereto as Ex. 27.

[41] <u>Id.</u> at 5-6.

[42] <u>Id.</u> at 5.

33.     The Court's December 20, 2005 Order denied Plaintiff's motion to compel production of documents redacted by the Central Intelligence Agency ("CIA") to protect the identity of confidential sources of information.[43] The Court ordered the Government to submit for in-camera review documents withheld by the CIA because of cooperation with foreign sources or government agencies.[44]

34.     Following the Court's in-camera review of documents on April 5, 2006, the Court ordered that the redacted portions of the documents be disclosed, subject to certain guidelines: the names of individuals of the United States and Philippine Governments may be redacted and substituted with "U.S. Government official" or "Philippine government official," information regarding general CIA activities not related to the case may be redacted and information relating to stories from Newspapers concerning allegations of CIA activities may be redacted.[45]

35.     On April 12, 2006, the Court approved certain redactions made by the CIA on eleven documents submitted by the Government for in-camera review during an ex-parte meeting held with the Court and CIA and Tax Division attorneys on April 5, 2006. In its April 12, 2006 order, the Court stated that its rulings on the CIA objections did not foreclose the Government "from objecting to this court's rulings on relevance, as set forth in the December 20, 2005 order."[46]

---

[43] The Court's decision did not address the merits of Government redactions made pursuant to 7(c) and 7(d). Order at 7-8, attached hereto as Ex. 27.

[44] Order at 8, attached hereto as Ex. 27.

[45] Order, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.) (filed April 12, 2006), attached hereto as Ex. 28.

[46] Id. at 3.

36.     On April 14, 2006,[47] the Government produced 11 heavily redacted documents (out of the approximately 2000 IRS documents withheld from the Plaintiff) that it had determined were relevant based on the "scope and relevance rulings" in the District Court's December 20, 2005 Order ("Order") in Stonehill,[48] Three of these documents, which consist of 73 pages of notes of interviews with IRS agents Robert Chandler ("Chandler")[49] and William Ragland ("Ragland")[50] and FBI legal attaché Robert Hawley ("Hawley")[51] regarding their role in the raids, were initially produced in heavily redacted form, e.g., 39 pages were entirely redacted and 15 pages were partially redacted based on the Government's claim that the redactions were not relevant to the 1966 investigation. Two Chief Counsel's memoranda which summarized the results of the agents' interviews were also significantly redacted[52] by the Government based on relevance grounds.[53] Finally, the Government made relevance redactions on hand written notes

---

[47] See April 14, 2006 letter from C. Duffy to R. Heggestad, attached hereto as Ex. 29.

[48] The Court's December 20, 2005 Order required the Government to "turn over documents regarding the 1966 Tax Division investigation into the government's role in the 1962 raids" and to "turn over notes given to, or taken by, government counsel if the notes concern the Tax Division's investigation of United States' involvement in the 1962 raids." See Order at 8, attached hereto as Ex. 27.

[49] See Document 2, attached hereto as Ex. 30.

[50] See Document 1, attached hereto as Ex. 31.

[51] See Document 10, attached hereto as Ex. 32.

[52] See Document 4, March 4, 1966 Memorandum of Fact and Law, attached hereto as Ex. 33 and Document 6, March 9, 1966 Memorandum from McAleer to Rogovin, attached hereto as Ex. 34. No relevance objections were asserted on Documents 7 and 8.

[53] The Court rejected the Government's claim that these documents were protected from disclosure based on the attorney work product and attorney-client privilege See December 20, 2005 Order at 8, attached hereto as Ex. 27. The reasons for rejecting the Government's claims of privilege, were explained by the Court: "...because the defendant's motion to set aside the judgment accuses the government of intentionally concealing its role in the 1962 raids during litigation of the motions to suppress, I conclude that the government must turn over documents regarding the 1966 Tax Division investigation into the government's role in the 1962 raids. Because defendants' motion to vacate challenges the conduct of the government's attorneys during the litigation of defendants' motions to suppress, the government must turn over notes given to, or taken by, government's counsel if the notes concern the Tax Division's investigation of United States involvement in the raids." Id.

of a telephone conversation with Harlow Huckabee[54] regarding McCarthy's interview with IRS Agent Chandler and on memorandum regarding the introduction of evidence of documents seized in the Philippines.[55]

37. On April 20, 2006, the Plaintiff filed a second Motion to Require Production of Documents Redacted by Department of Justice and Chief Counsel's memorandum Dated March 4, 1966.[56] The District Court denied this motion on June 6, 2006.[57]

38. On April 27, 2006, the Court clarified its December 20, 2005 Order and held that the Government's role in the raids included instigation of the raids and that the Court would rely on the Government to produce any document "if it has anything to do with the raids."[58]

39. On June 6, 2006, the Court directed the Government to produce 11 documents redacted by the CIA in-camera to allow the Court to review relevance redactions made by the Government.[59]

40. On June 16, 2006, the Plaintiff filed a Notice of Intentional Failure to Comply with Discovery Orders and Motion to Compel Full Production. The District Court denied this motion on July 12, 2006.[60]

---

[54] See Document 9, attached hereto as Ex. 35.

[55] See Document 11, attached hereto as Ex. 36.

[56] Motion to Require Production of Documents Redacted by Department of Justice and Chief Counsel's Memorandum Dated March 4, 1966, United States v. Stonehill, No. 65-127 (C.D. Cal.), attached hereto as Ex. 37.

[57] Hrg. Tr. at 36-38 (June 6, 2006), attached hereto as Ex. 38.

[58] Hrg. Tr. at 2:21-3:15 (April 27, 2006), attached hereto as Ex. 39.

[59] See Hrg. Transcript at 5:12-20; 17:1-14 (June 6, 2006), attached hereto as Ex. 38; Civil Minutes dated June 6, 2006, attached hereto as Ex. 40.

[60] Hearing Tr. (July 12, 2006), attached hereto as Ex. 41; July 12, 2006 Civil Minutes, attached hereto as Ex. 42.

41. Following the Court's in-camera review of the 11 documents, on July 12, 2006, the Government was allowed to maintain certain relevance redactions on five documents.[61]

42. After the District Court overruled the Government's assertion of attorney-work product and attorney-client privilege as the basis for withholding hundreds of documents, the Government claimed that *none* of the documents withheld in full were responsive or relevant.[62]

43. The IRS has asserted the deliberative process privilege as the basis for withholding one-hundred and seventy-two (172) documents in this proceeding.[63]

44. The IRS has also asserted the attorney-work product doctrine as the basis for withholding 681 documents that were not withheld based on attorney-work product doctrine in the original District Court litigation.[64] The IRS has also asserted the attorney-work product doctrine as the basis for withholding 48 documents that were previously withheld in Stonehill based only on attorney-client privilege.[65]

---

[61] The Court allowed the Government to maintain the following relevance redactions: Document 1 (Ex. 31 hereto): pages 42, 46 to 50, (Tr. at 10:15-11:22, attached hereto as Ex. 41); Document 2 (Ex. 30 hereto): the last three lines of page 100 and the first and last paragraph of 101, and the first paragraph of 102, (Tr. at 12:20-14:25, Ex. 41 hereto); Document 4 (Ex. 33 hereto): the names of potential defendants at 116 (Tr. at 15:12-21, Ex. 41 hereto); information related to the bills of Lading case; 218-232 (Tr. at 18:6-18:11, Ex. 41 hereto); Document 6 (Ex. 34 hereto): information relating to Lukban's removal as NBI Director and effect on U.S. Litigation; the last half of bates-stamped 112 (page 7) and the first half of 113 (page 8); 106 (page 1) redaction of name of another individual involved in litigation; (Tr. at 18:16-20:8, Ex. 41 hereto); Document 9 (Ex. 35 hereto): last 5 lines of handwritten page; (Tr. at 20:10-20:14, Ex. 41 hereto). The Court ordered the Government to produce Documents 10 and 11 in unredacted form. Tr. at 20:15-20:19, Ex. 41 hereto.

[62] The Taxpayers specifically identified 60 documents that they believed were relevant to the government's conduct in connection with the 1967, 1971 or 1975 motions to suppress. See Appendices (Exhibit OO to March 25, 2005 Motion to Compel), attached hereto as Ex. 47.

[63] See Chart titled Vaughn Deliberative Process Not Asserted by Tax Divison, attached hereto as Ex. 43.

[64] See Chart titled Vaughn Deliberative Process Not Asserted by Tax Divison, attached hereto as Ex. 43.

[65] See Chart titled Vaughn AWP and Tax Division ACP Only, attached hereto as Ex. 44. The IRS has also asserted attorney-work product doctrine as the basis for withholding 33 documents that were previously withheld in the Stonehill litigation based only on 26 U.S.C. § 6103. See Chart titled Tax Division Redacted Docs with 6103 and/or 6105 Privilege Only, attached hereto as Ex. 45.

45.    The IRS has asserted FOIA Exemption 3 in conjunction with 26 U.S.C. § 6103, third-party tax return information as the basis for withholding 157 documents previously withheld in the *Stonehill* litigation based only on attorney-work product and/or attorney-client privilege.[66]

46.    The documents released to the Plaintiff in response to Plaintiff' July 10, 1998 FOIA request have included the names of almost every IRS agent involved in the investigation of Stonehill released in literally thousands of IRS documents produced. During the course of the Rule 60(b) proceedings, I have been advised by the Government that the IRS agents assigned to the Stonehill investigation in the Philippines, Robert Chandler, William Ragland and Sterling Powers are deceased.

47.    Documents previously released to the Plaintiff by the FBI have included the unredacted names of FBI Special Agents from Pittsburg,[67] Washington, D.C,[68] and San Fransisco.[69]

48.    Since the District Court's ruling on the Plaintiff's Motion to Compel Production of Documents from the 92 IRS boxes, there have been no changes in the factual context of the case.

49.    The Plaintiff did not agree to pay $5,000 in search costs for documents that had already been located by the IRS in response to Plaintiff's initial FOIA request because the

---

[66] See Chart titled Vaughn 6103 Not Asserted by Tax Division, attached hereto as Ex. 46.

[67] See Report of FBI Special Agent Thomas J. Doody (July 6, 1962), attached hereto as Ex. 61. The report also includes the unredacted name of Special Agent Donald G. Fischer. The names of both Special Agents were redacted in documents submitted with the FBI Vaughn Index.

[68] See Report of Special Agent Joseph A. Genau (Feb. 19, 1962), attached hereto as Exhibit 62.

[69] See Report of Special Agent Matthew J. Lightbody (Feb. 27, 1962), attached hereto as Exhibit 63.

Plaintiff had previously paid all search and duplication costs assessed by the IRS to process Plaintiff's FOIA request.

50.   The deposition transcript of IRS agent Sterling Powers and a November 20, 1984 hearing transcript were located in the files of the Tax Division attorneys who represented the IRS in the Stonehill litigation.[70] Both of these transcripts were subsequently provided to the Plaintiff pursuant to an agreement with the IRS that Plaintiff would file no further FOIA requests with the IRS or the Tax Division for a period of seven years.[71]

51.   Following the Court of Appeals remand, the Plaintiff discovered documents that revealed that Stonehill's Honolulu attorney, William W. Saunders, was a government informer who had provided confidential information regarding Swiss Bank accounts to the IRS as early as April 27, 1960. Saunders appeared in Manila two years later, on June 18, 1962, after Stonehill and Brooks were arrested, to represent Stonehill and Brooks in the IRS civil tax investigation that he had initiated. Saunders continued to represent Stonehill and provide information to the Government during the next several years. On July 5, 2007, a jury in Honolulu unanimously found Saunders guilty on two counts of intentional breach of fiduciary duty of undivided loyalty and intentional breach of duty confidentiality.

---

[70] See Letter from B. Campbell to R. Heggestad (May 2, 2007), attached hereto as Ex. 49.

[71] See Letter from E. O'Connor/D. Hubbert to R. Heggestad (May 7, 2007), attached hereto as Ex. 50.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct, and if called as a witness, I could and would competently testify thereto.

Executed this 7th day of September 2007 in Washington, D.C.

_____
Robert E. Heggestad