# Exhibit A-1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PAULINE STONEHILL, Co-executor and Co-special administrator of the Estate of Harry S. Stonehill, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:06-cv-599 (JDB) |
| v. | ) ) | Honorable John D. Bates |
| INTERNAL REVENUE SERVICE, | ) ) | |
| Defendant. | ) ) ) | |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTS AND PROCEDURAL HISTORY ......................................................... 8

I.    THE FOIA ADMINISTRATIVE PROCEEDING............................................ 8

    A.    The IRS Produced Five Documents in Response to Plaintiff's July 10, 1998 FOIA Request. ............................................................................. 8

    B.    Plaintiff's FOIA Appeal Was Denied by the IRS Based on Its Claim that Additional Responsive Documents "Could not be Located." ...................... 9

    C.    On March 15, 2001, the IRS Disclosure Officer Revealed That Documents Responsive to the July 10, 1998 FOIA Request Were Located at the Office of the Assistant Chief Counsel, Office of Intelligence Operations. ........................... 10

    D.    The IRS "Discovery" of 92 Boxes of Documents Responsive to Plaintiff's July 10, 1998 FOIA Request. ................................................................ 10

    E.    The IRS List of Withheld Documents Identified Six Documents Withheld Based on Its Assertion of Attorney Work-Product and Attorney-Client Privilege and the Confidential Informant Privilege. ................................... 11

    F.    The IRS Appeals Decision. ...................................................................... 12

    G.    The Underlying Litigation. ....................................................................... 13

        1.    Plaintiff's Rule 60(b)(6) Motion. ................................................... 13

        2.    The Ninth Circuit Court of Appeals Reversal of the District Court's Decision Denying Plaintiff's Rule 60(b) Motion. ................................. 14

        3.    The District Court Ordered the Government to Produce All Relevant Documents Withheld from the 92 IRS Boxes. ................................... 14

        4.    The Plaintiff's Motion to Compel Production of Documents Withheld From the 92 Boxes. ..................................................................... 16

            a)    The Court Rejected the Government's Assertion of Attorney-Client Privilege and Work Product Doctrine. ................................ 16

            b)    The Court Denied Plaintiff's Motion to Compel Production of Third-Party Taxpayer Information and Treaty Obligation Information and Confidential Informant Information. ......................... 17

            c)    The Court Denied Plaintiff's Motion to Compel Production of Confidential Informant Information Redacted by the CIA. ................ 18

            d)    The Court Allowed the Government to Redact IRS Documents Based on Relevance Objections. ................................................ 18

    H.    This Litigation. ....................................................................................... 19

LEGAL STANDARD ................................................................................ 20

    A.   Standard for Motion for Summary Judgment. ............................... 20

    B.   General Notions Under FOIA ....................................................... 21

ARGUMENT .......................................................................................... 22

II.    THE DOCTRINE OF COLLATERAL ESTOPPEL PREVENTS THE GOVERNMENT FROM ASSERTING THE ATTORNEY WORK-PRODUCT AND ATTORNEY-CLIENT PRIVILEGE AS THE BASIS FOR WITHHOLDING DOCUMENTS FROM THE PLAINTIFF IN THIS PROCEEDING ....................................................................................... 22

    A.   The Issue of Whether the Attorney Work-Product and/or Attorney-Client Privilege Prevent Disclosure of Documents Withheld by the IRS Was Contested by the Parties and Submitted for Judicial Determination in Stonehill. ........................................................................................ 23

    B.   The District Court in Stonehill Determined that the Attorney-Client Privilege and Work-Product Doctrine Do Not Prevent Disclosure of Documents Withheld by the IRS. ......................................................... 25

        1.   The Court's December 20, 2005 Decision Rejected the Government's Claim of Attorney Work-Product and Attorney-Client Privilege....................... 25

        2.   The Court's December 20, 2005 Decision is a Final Order for Purposes of Collateral Estoppel. ............................................................. 27

    C.   Precluding the IRS from Relitigating the Issue of Attorney Work-Product/Attorney-Client Privilege Does Not Work a Basic Unfairness to the IRS. ........................................................................................ 29

III.   THE GOVERNMENT HAS WAIVED ANY CLAIM OF PRIVILEGE NOT ASSERTED IN THE ORIGINAL DISTRICT COURT PROCEEDING. ......................... 30

    A.   The IRS Has Waived the Deliberative Process Privilege. ........................... 31

    B.   The IRS Has Waived Any Claim of Attorney Work-Product Doctrine Not Asserted in the Initial District Court Proceeding. ........................................ 31

    C.   The IRS Has Waived Any Claim of 6103 Third Party Taxpayer Return Information Not Asserted in the Initial District Court Proceeding. ........................... 32

    D.   There Are No Extraordinary Circumstances Justifying the IRS Assertion of New Exemptions in This Proceeding ................................................... 32

        1.   The Government's Failure to Assert FOIA Exemptions in the Original District Court Proceeding Was Not the Result of Error and It Does Not Involve National Security or Serious Privacy Issues.......................... 33

        2.   There Has Not Been a Substantial Change in the Factual Context of the Case or an Interim Development in the Applicable Law Since the Initial District Court Proceedings Were Concluded. ......................................... 33

IV.   DOCUMENTS WITHHELD OR REDACTED BY THE GOVERNMENT BASED ON RELEVANCE OBJECTIONS ARE NOT EXEMPT FROM DISCLOSURE. ................................................................................................. 35

   A.   The Government's Relevance Redactions, Approved by the District Court In Stonehill, Are Not Exempt From Disclosure Under FOIA ..................................... 36

   B.   All Documents Withheld in Full Based on Relevance Objections Must be Produced. .......................................................................................................... 38

V.    THERE IS NO BASIS FOR THE FBI'S ASSERTION OF (b)(6)-2 AND (b)(7)(C)(2) TO PROTECT THE PRIVACY INTERESTS OF IRS AGENTS WHO PARTICIPATED WITH THE FBI IN THE STONEHILL INVESTIGATION. ....................................................................................................... 39

VI.   CIA REDACTIONS. ............................................................................................... 41

VII.  THIRD-PARTY TAX PAYER AND RETURN INFORMATION .................................. 41

VIII. TREATY INFORMATION ....................................................................................... 42

IX.   THERE IS NO BASIS FOR REQUIRING THE PLAINTIFF TO PAY ADVANCE SEARCH COSTS TO IDENTIFY DOCUMENTS THAT HAVE ALREADY BEEN LOCATED OR TO PAY FOR TRANSCRIPTS THAT ARE IN THE POSSESSION OF GOVERNMENT ATTORNEYS REPRESENTING THE IRS. ........................................................................................ 43

CONCLUSION. ............................................................................................................... 44

## TABLE OF AUTHORITIES

### FEDERAL CASES

Beck v. DOJ,
    997 F.2d 1489 (D.C. Cir. 1993) .............................................................................40

In re Brown,
    951 F.2d 564 (3d Cir. 1991) ..................................................................................28

Crooker v. ATF,
    670 F.2d 1051 (D.C. Cir. 1981) ............................................................................31

Dyndul v. Dyndul,
    620 F.2d 409 (3d Cir. 1980) ..................................................................................28

Founding Church of Scientology of Washington, D.C., Inc. v. Smith,
    721 F.2d 828 (D.C. Cir. 1983) ..............................................................................21

Iglesias v. CIA,
    525 F. Supp. 547 (D.D.C. 1981) ..................................................................... passim

Jordan v. United States Department of Justice,
    591 F.2d 753 (D.C. Cir. 1978), overruled on other grounds by Crooker v. Bureau
    of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1053 (D.C. Cir. 1981) (en banc) ..............31

King v. U.S. Department of Justice,
    830 F.2d 210 (D.C. Cir. 1987) ..............................................................................41

LaRouche v. U.S. Department of Treasury,
    112 F. Supp. 2d 48 (D.D.C. 2000) .................................................................. passim

Mack v. Department of Navy,
    259 F. Supp. 2d 99 (D.D.C. 2003) ....................................................................20, 21

Maydak v. U.S. Department of Justice,
    218 F.3d 760 (D.C. Cir. 2000) ........................................................................ passim

Maydak v. U.S. Department of Justice,
    254 F. Supp. 2d 23 (D.D.C. 2003) ....................................................................20, 21

McCutchen v. U.S. Department of Health & Human Services,
    30 F.3d 183 (D.C. Cir. 1994) ...............................................................................21

McLaughlin v. Bradlee,
    803 F.2d 1197 (D.C. Cir. 1986) ..........................................................................1, 22

Metromedia Co. v. Fugazy,
  983 F.2d 350 (2d Cir. 1992), cert. denied, 508 U.S. 952, 124 L. Ed. 2d 662, 113 S.
  Ct. 2445 (1993) .............................................................................................................28

National Archives & Records Administration v. Favish,
  541 U.S. 157 (2004)......................................................................................................40

Otherson v. Department of Justice, I.N.S.,
  711 F.2d 267 (D.C. Cir. 1983) .....................................................................................30

Piper v. U.S. Department of Justice,
  294 F. Supp. 2d 16 (D.D.C. 2003), ), as amended, 428 F. Supp. 2d 1 (D.D.C.
  2006), aff'd, 222 Fed. Appx. 1 (D.C. Cir. 2007), pet. for cert. filed, 75 U.S.L.W.
  3610 (U.S. May 3, 2007 (No. 06-1469) ...................................................................20, 21

Ryan v. Department of Justice,
  617 F.2d 781 (D.C. Cir. 1980) .....................................................................................31

Senate of Puerto Rico ex rel Judiciary Committee v. U.S. Department of Justice,
  823 F.2d 574 (D.C. Cir. 1987) .....................................................................................31

Stern v. FBI,
  737 F.2d 84 (D.C. Cir. 1984) .......................................................................................21

In re Subpoena Issued to Commodity Futures Trading Commission,
  370 F. Supp. 2d 201 (D.C. 2005), aff'd in part on other grounds, 439 F.3d 740
  (D.C. Cir. 2006) ...........................................................................................................22

Washington Post Co. v. U.S. Department of Health & Human Services,
  795 F.2d 205 (D.C. Cir. 1986) .....................................................................................30

Yamaha Corp. of America v. United States,
  961 F.2d 245 (D.C. Cir. 1992) ...................................................................................5, 22

## STATE CASES

Lyndon LaRouche, Jr. v. U.S. Department of Justice,
  No. 90-2753 (HHG), 1993 WL 388601 (D.D.C. June 25, 1993) ..............................28

SEC v. R. J. Reynolds Tobacco Holdings, Inc.,
  No. MISC.A.03-1651 (JDB), 2004 WL 3168281 (D.D.C. June 29, 2004) ...............35, 36

Thompson v. Department of Navy,
  No. 95-347 (RMU), 1997 WL 527344 (D.D.C. Aug. 18, 1997) ......................1, 6, 35

## DOCKETED CASES

United States v. Stonehill,
    No. 65-127 (C.D. Cal.)..................................................................................................... *passim*

## FEDERAL STATUTES

5 U.S.C. § 552(b)(5) .......................................................................................................... *passim*

26 U.S.C. § 6103................................................................................................................ *passim*

26 U.S.C. § 6105................................................................................................................ *passim*

Fed. R. Civ. P. 56(c) ..............................................................................................................20

## MISCELLANEOUS

Federal Rule of Civil Procedure 60(b)(6) ...........................................................................3, 13

Moore's Federal Practice 3d, § 132.03[5][b][i] ........................................................................28

Restatement (Second) of Judgments § 27 (1982) .....................................................................22

## INTRODUCTION

For more than nine years, the Internal Revenue Service ("IRS") has vigorously resisted producing documents responsive to a Freedom of Information Act ("FOIA") request filed by Harry S. Stonehill ("Stonehill")[1] on July 10, 1998. During this period, the facts and issues relevant to the claims of privilege asserted by the IRS as the basis for withholding thousands of pages of documents, were litigated and finally decided by the District Court in United States v. Stonehill, No. 65-127 (C.D. Cal.) ("Stonehill") on December 10, 2005. Summary judgment is appropriate in this proceeding for several reasons including: (1) the District Court's December 20, 2005 order estopps the IRS from relitigating the issues of attorney work-product doctrine and attorney-client privilege;[2] (2) the IRS has waived the deliberative process privilege because it was not asserted as a basis for withholding documents in the original District Court proceeding;[3] and (3) the documents withheld or redacted in the original District Court proceeding based on relevance objections are not exempt from disclosure in an FOIA proceeding.[4]

---

[1] Mr. Stonehill died on March 20, 2002. See Declaration of Robert E. Heggestad dated September 7, 2007 ("Heggestad Decl.") ¶ 16. Stonehill's wife, Pauline Stonehill ("Plaintiff"), is the Co-executor and Co-special administrator of the Estate of Harry S. Stonehill.

[2] See McLaughlin v. Bradlee, 803 F.2d 1197, 1201 (D.C. Cir. 1986)

[3] Maydak v. U.S. Dep't of Justice, 218 F.3d 760, 764 (D.C. Cir. 2000).

[4] Thompson v. Dep't of Navy, No. 95-347 (RMU), 1997 WL 527344, at *2 n.2 (D.D.C. Aug. 18, 1997).

Stonehill's July 10, 1998 FOIA request[5] sought documents from the IRS relating to the United States' involvement in raids conducted by the Philippine National Bureau of Investigation ("NBI") on 17 of Stonehill's businesses in Manila on March 2, 1962. [6] On October 14, 1980, following almost 20 years of litigation, a judgment of $17.6 million was entered against Stonehill and his business partner Robert P. Brooks ("Brooks"). Although the Stonehill litigation involved tens of thousands of pages of Government correspondence and files relating to Stonehill and Brooks, on December 11, 1998, the IRS informed the Plaintiff that only five documents "responsive" to his FOIA request (e.g. documents related to Stonehill, Brooks or U.S. Tobacco Co.) could be located. The IRS assured Stonehill that the IRS had conducted "a thorough search of all available records under the jurisdiction of the Assistant Commissioner (International)."[7]

In response to FOIA requests and litigation, Stonehill eventually obtained hundreds of IRS documents related to the Government's investigation of Stonehill which were produced by the State Department, the Federal Bureau of Investigation ("FBI") and the Department of Justice Tax Division ("DOJ").[8] These documents revealed that IRS and FBI agents had presented false testimony about the United States' involvement in the raids during the District

---

[5] The July 10, 1998 FOIA request was also filed on behalf of Stonehill's business partner Robert P. Brooks ("Brooks"). See Heggestad Decl. ¶ 2, Ex. 1.

[6] Although the raids were subsequently held to be illegal by the Philippine and U.S. courts, the IRS was allowed to use the documents seized in the raids to support a net worth civil tax case filed against Stonehill and Brooks on January 25, 1965. United States v. Stonehill, No. 65-127 (C.D. Cal.) ("Stonehill").

[7] See Heggestad Decl. ¶ 3, Ex. 2.

[8] See Heggestad Decl. ¶ 8.

Court proceedings on Stonehill's motions to suppress filed in 1967, 1971 and 1974.[9]  On

October 2, 2000, Stonehill filed a Rule 60(b)(6) motion in the District Court to vacate the

judgment in Stonehill based on the Government's fraud on the Court.[10]

On March 15, 2001, in the midst of the Rule (60)(b) proceeding, Stonehill discovered

that documents responsive to his 1998 FOIA request were located in the IRS Chief Counsel's

office and requested that the IRS conduct a new search for these documents.[11]  On May 18,

2001, the IRS informed Stonehill that eight boxes of documents had been located at the IRS

Chief Counsel's office.[12]  On September 28, 2001, one month after the District Court had

denied the Plaintiff's Rule 60 (b)(6) motion,[13] the IRS reported to Stonehill that it had

"discovered" an additional 86 boxes of documents.[14]

On December 19, 2002, the Ninth Circuit Court of Appeals reversed the District

Court's decision, and directed the District Court to assist the Plaintiff in obtaining FOIA

documents which had been withheld by the IRS from the 92[15] boxes.[16]  On December 19,

---

[9] See Heggestad Decl. ¶ 8.

[10] The Plaintiff's Motion to Vacate Judgments pursuant to Federal Rule of Civil Procedure 60(b)(6) and the Court's Inherent Power to Address Fraud on the Court ("Rule 60(b) motion") was filed in the District Court for the Central District of California.  See Heggestad Decl. ¶ 8.  The Stonehill proceeding in California was consolidated with the proceedings in Hawaii and Oregon and transferred to the District Court in Portland, Oregon.

[11] See Heggestad Decl. ¶¶ 10-11.

[12] See Heggestad Decl. ¶ 12.

[13] On August 28, 2001, the District Court denied Stonehill's motion to stay the proceedings pending the IRS production and the completion of his review of the eight boxes of documents.  See Heggestad Decl. ¶ 13, Ex.

[14] See Heggestad Decl. ¶ 14, Exs. 6, 7.

[15] See Heggestad Decl. ¶ 14.  Although the IRS originally reported that 94 boxes of documents had been located, the IRS subsequently reported that Boxes 17 and 83 were

2003, the District Court ordered the Government to produce all documents withheld from the 92 boxes of IRS documents; the Court stated that although the Government would be allowed to assert privileges, it could not imagine any privileges that would apply.[17]

During the three years following the Court of Appeals remand, the facts and issues relating to the Government's various claims of privilege asserted as the basis for withholding documents from the 92 boxes were vigorously litigated by the parties. On March 24, 2005, Stonehill filed a motion to compel production of approximately 2,000 documents withheld by the Government based on claims of attorney work-product doctrine and attorney-client privilege, the confidential informant privilege, the 6103 third-party tax-payer return information and 6105 treaty information privilege and Rule 6(e) of the Federal Rules of Criminal Procedure.[18]

On December 20, 2005, the District Court issued an order granting in-part Stonehill's motion to compel. The District Court rejected the Government's assertion of attorney work-product and attorney-client privilege as a basis for withholding documents from Stonehill and ordered the Government to produce all documents relevant to Stonehill's claim of fraud on the Court.[19] The District Court upheld the Government's 6103 and 6105 privilege claims and allowed certain redactions made by the CIA. Finally, the District Court allowed the

---

missing from the Federal Records Center. See Letter from C. Field to R. Heggestad (Nov. 14, 2002), attached as Heggestad Decl. Ex. 7.

[16] See Heggestad Decl. ¶ 19, Ex. 11.

[17] See Heggestad Decl. ¶ 21, Exs. 13, 14.

[18] See Heggestad Decl. ¶ 26.

[19] See Heggestad Decl. ¶ 30, Ex. 27.

Government to withhold or redact documents based on the Government's objections as to relevance.

The documents withheld from the Plaintiff in this proceeding based on the IRS's assertion of attorney work-product doctrine and attorney-client privilege, the deliberative process privilege, (b)(6)-2 and (b)(7)(C)(2) - privacy interests of IRS agents and 6103 third-party tax return privilege are not justified on multiple grounds, including the following:

**The Government is estopped from asserting attorney work-product doctrine and attorney-client privilege.** The doctrine of collateral estoppel precludes the Government from asserting attorney work-product doctrine and attorney-client privilege as a basis for withholding documents from the Plaintiff in this proceeding because: (1) the facts and issues related to those privileges were fully litigated by the parties in the initial District Court proceeding during a period of almost three years; (2) the issues were determined in the initial District Court proceeding which resulted in an order rejecting the Government's claims of attorney work-product doctrine and attorney-client privilege; and (3) the preclusion in this case does work an unfairness on the Government because the stakes in the initial District Court proceeding involving Government fraud on the Court are far greater for the Government than they are in this proceeding.[20] The District Court's order in <u>Stonehill</u> is a final decision for purposes of collateral estoppel that prevents the Government from relitigating the same issues in this proceeding.[21] Accordingly, summary judgment is appropriate.

**The Government has waived any claim of deliberative process privilege.** In the Plaintiff's Rule 60(b)(6) proceeding, the Government did not assert the deliberative process

---

[20] <u>Yamaha Corp. of Am. v. United States</u>, 961 F.2d 245, 254 (D.C. Cir. 1992).

[21] <u>LaRouche v. U.S. Dep't of Treasury</u>, 112 F. Supp. 2d 48, 56 (D.D.C. 2000)

privilege in its privilege logs or in its oppositions to Stonehill's motion to compel (it was not even raised by the IRS in its Appeals Decision as a possible basis for denying Stonehill's FOIA request for documents[22]). Because it was not raised in the initial District Court proceeding, the Government has waived any assertion of the deliberative process privilege as a basis for withholding 172 documents in this proceeding.[23] Consequently, summary judgment is appropriate.

**The Government has waived any claim of attorney work-product doctrine, attorney-client privilege or third party taxpayer privilege that was not previously asserted to prevent disclosure of documents in Stonehill.** To the extent any document is arguably privileged, the IRS has waived any claim of attorney work-product, attorney-client or 6103 third-party taxpayer information privilege not asserted as a basis for withholding that document in the initial District Court proceeding.[24] Summary judgment is appropriate for this reason as well.

**The Government's relevance objections asserted in Stonehill are not a proper basis for withholding documents in an FOIA proceeding.** The documents withheld in Stonehill based on relevance objections are not exempt from disclosure in this proceeding because relevance to the issues being litigated plays no part in FOIA cases.[25] Accordingly, summary judgment is appropriate. In this proceeding, the IRS has asserted the attorney work-product, attorney-client and deliberative process privilege to protect the disclosure of

---

[22] See Heggestad Decl. ¶ 20.

[23] Maydak v. U.S. Dep't of Justice, 218 F. 3d 760, 764 (D.C. Cir. 2000).

[24] Id.

[25] Thompson v. Dep't of Navy, No. 95-347 (RMU), 1997 WL 527344, at *2 n.2 (D.D.C. Aug. 18, 1997).

documents withheld or redacted in <u>Stonehill</u> based on relevance objections. Because the IRS is estopped from reasserting attorney work-product and attorney client privileges and has waived the deliberative process privilege, the documents redacted or withheld in <u>Stonehill</u> based on relevance objections are not exempt from disclosure in this proceeding.

**There is no basis for the FBI's Assertion of (b)(6)-2 and (b)(7)(C)-2 to protect the privacy interests of IRS Agents who participated with the FBI in the Stonehill investigation.** The IRS has failed to identify any substantial privacy rights to justify the withholding of the name of an IRS agent who was the recipient of a memorandum forwarded by FBI agent Robert Hawley on October 31, 1962.[26] The policy reasons for withholding the names of third parties such as subjects, witnesses and informants mentioned in law enforcement records do not apply to the IRS Revenue Agent involved in the Stonehill investigation.[27] Here, the public interest is significant because the decision of Ninth Circuit Court of Appeals on remand and the District Court's decision rejecting the Government's claims of attorney work-product and attorney-client privilege, show that the Plaintiff has made a *prima facie* case of Government fraud on the Court.

**There is no basis for requiring the Plaintiff to pay advance search costs to identify documents that have already been located by the IRS or transcripts that are in the possession of Government attorneys representing the IRS.** The Plaintiff did not agree to pay the IRS $5,000 in search costs for documents that had already been located by the IRS and

---

[26] The memorandum attached to the October 31, 1962 information memorandum concerns the New York Bills of Lading Act Stonehill investigation and has been produced as an attachment without redaction. See Declaration of David M. Hardy, Ex. A, Document 6 (Docket Entry 35-5 filed March 27, 2007).

[27] <u>Iglesias v. CIA</u>, 525 F. Supp. 547, 563 (D.D.C. 1981).

paid for by the Plaintiff in response to Stonehill's initial FOIA request.[28]  There was also no

basis for requiring the Plaintiff to pay additional research costs or to pay search fees for the

deposition transcript of IRS agent Sterling Powers and a November 20,1984 hearing transcript

because those transcripts had already been located by the IRS in the files of the Tax Division

attorneys who represented the IRS in the Stonehill litigation.  Both of these transcripts have

been provided to the Plaintiff pursuant to an agreement with the IRS that Plaintiff would file

no further FOIA requests with the IRS or the Tax Division for a period of seven years.[29]

## FACTS AND PROCEDURAL HISTORY

### I.      THE FOIA ADMINISTRATIVE PROCEEDING.

#### A.      The IRS Produced Five Documents in Response to Plaintiff's July 10, 1998 FOIA Request.

On July 10, 1998, Plaintiff filed an FOIA request with the IRS Office of International

Operations for all information relating to Robert P. Brooks and Harry S. Stonehill

("Taxpayers") and United States Tobacco Company.[30]  The IRS produced five documents in

response to the Plaintiff's request on December 11, 1998.[31]  According to the IRS Disclosure

Officer, Stephen Flesner ("Flesner"), these five documents were located following "a thorough

---

[28] See Heggestad Decl. ¶ 49.  Plaintiff has not agreed to pay for a pro-rata cost of duplicating the audio tapes because there has been no assurance from the IRS that the tapes will not be subsequently withheld based on IRS assertion of FOIA exemptions. See Heggestad Decl. ¶ 50.

[29] See Heggestad Decl. ¶ 50.

[30] Letter from R. Heggestad to S. Flesner (July 10, 1998), attached as Heggestad Decl. Ex. 1.  Plaintiff also filed FOIA requests with the Federal Bureau of Investigation ("FBI"), the Tax Division of the Department of Justice ("DOJ"), the Department of State and the Central Intelligence Agency ("CIA"). See Heggestad Decl. ¶¶ 4, 9.

[31] Letter from S. Flesner to R. Heggestad with attachments (December 11, 1998), attached as Heggestad Decl. Ex. 2.

search of all available records under the jurisdiction of the Assistant Commissioner (International)."[32] On January 5, 1999, Plaintiff provided the IRS with documents obtained from the State Department, referencing documents authored by IRS employees that had been sent to various United States' agencies in connection with the Stonehill case.[33] On January 6, 1999, the IRS determined that the documents did "not provide . . . information that would enable [IRS] to locate additional records, if they exist, that are not in [IRS] possession at this time."[34] The IRS suggested that the Plaintiff file a new FOIA request with the Department of Justice "where the case was litigated . . . for a number of years" and advised Plaintiff that the International Operations Disclosure Office could be of no further assistance "in the quest for these documents."[35]

## B.    Plaintiff's FOIA Appeal Was Denied by the IRS Based on Its Claim that Additional Responsive Documents "Could not be Located."

On July 31, 1999, the Plaintiff appealed the IRS decision that documents responsive to Plaintiff's FOIA request could not be located.[36] On October 29, 1999, the Chief of IRS Disclosure Litigation denied the Plaintiff's appeal, stating that "through discussions with appropriate Service employees, . . . these documents indeed cannot be found."[37]

---

[32] Id.

[33] Letter from R. Heggestad to S. Flesner with attachments (Jan. 5, 1999), attached as Heggestad Decl. Ex. 3.

[34] Letter from S. Flesner to R. Heggestad (Jan. 6, 1999), attached as Heggestad Decl. Ex. 4.

[35] Id.

[36] Heggestad Decl. ¶ 6.

[37] See letter from D. Squires, Chief of Disclosure Litigation, to R. Heggestad (October 29, 1999), attached as Heggestad Decl. Ex. 5.

C.    **On March 15, 2001, the IRS Disclosure Officer Revealed That Documents Responsive to the July 10, 1998 FOIA Request Were Located at the Office of the Assistant Chief Counsel, Office of Intelligence Operations.**

On November 30, 2000, the Tax Division and the FBI produced approximately 1,846 documents in response to FOIA litigation filed by the Plaintiff.[38]  These documents included several hundred documents authored by the Chief Counsel for IRS International Operations Branch and by IRS agents involved in the Stonehill case from 1960 through 1976.[39]  On March 15, 2001, Plaintiff questioned the original IRS Disclosure Officer, Steven Flesner, about the IRS-authored documents to determine why the documents had not been produced in response to Plaintiff's 1998 FOIA request.  Mr. Flesner, who was no longer an IRS disclosure officer, acknowledged that documents responsive to the 1998 request were, in fact, available and could be found at the Office of the Assistant Chief Counsel, Office of Intelligence Operations. [40]

D.    **The IRS "Discovery" of 92 Boxes of Documents Responsive to Plaintiff's July 10, 1998 FOIA Request.**

On March 15, 2001, Plaintiff asked the Manager of the IRS Headquarters Disclosure Office to conduct a new search at the Office of the Associate Chief Counsel, International Operations Branch for documents responsive to Plaintiff's July 10, 1998 FOIA request.[41]  On May 18, 2001, IRS Tax Law Specialist, Carroll Field, reported that eight boxes of documents

---

[38] See Heggestad Decl. ¶ 9.

[39] See id.

[40] On March 15, 2001, Mr. Flesner, was not an IRS Disclosure Officer.  See Heggestad Decl. ¶ 10.

[41] See Heggestad Decl. ¶ 11.

relating to the <u>Stonehill</u> case had been located in the Associate Chief Counsel's Office.[42]  On

September 28, 2001, during the completion of Plaintiff's review of the eight boxes of IRS

documents, Ms. Field, reported that an additional eighty-six boxes of documents, responsive to

the July 10, 1998 FOIA request had been located at the Federal Records Center.[43]  The 92

boxes of newly "discovered" IRS documents were produced to the Plaintiff for review

between July 23, 2001 and October 2, 2002.[44]

      **E.**       **<u>The IRS List of Withheld Documents Identified Six Documents Withheld</u>**
             **<u>Based on Its Assertion of Attorney Work-Product and Attorney-Client</u>**
             **<u>Privilege and the Confidential Informant Privilege.</u>**

On November 14, 2002, at the conclusion of Plaintiff's review process, the IRS

provided the Plaintiff with a list of the documents that had been withheld in full from the 8

boxes of documents located at the Chief Counsel's Office and from the 86 boxes of IRS

documents located at the Federal Record Center.[45]  The IRS list of withheld documents also

identified the FOIA exemptions asserted as the basis for withholding each document: three

documents were withheld pursuant to 5 U.S.C. § 552(b)(5) based on the attorney work-product

doctrine and on the attorney-client privilege;[46] three documents were withheld pursuant to 5

U.S.C. § 552(b)(7)(C) and (b)(7)(D), based on privacy interests and protection of confidential

---

     [42] <u>See</u> Heggestad Decl. ¶ 12.

     [43] <u>See</u> Heggestad Decl. ¶ 14; <u>see also</u> Letter from R. Fultz to R. Heggestad (Oct. 16, 2001), attached as Heggestad Decl. Ex.6.

     [44] <u>See</u> Letter from R. Heggestad to C. Campbell (Mar. 15, 2001), attached as Heggestad Decl. Ex. 8.

     [45] <u>See</u> Heggestad Decl. ¶ 17; Letter from C. Field to R. Heggestad (Nov. 14, 2002), attached hereto as Ex. 7.

     [46] <u>Id.</u>  Two documents located in Box 28 and Box 84 were withheld based on the attorney work-product doctrine and one document located in Box 84 was withheld based on the attorney-client privilege;

sources.[47] The remainder of the documents identified in the IRS list were withheld pursuant to

5 U.S.C. § 552(b)(3) in conjunction with IRC § 6103, third party taxpayer information and §

6105, competent authority information.[48]

### F.    The IRS Appeals Decision.

The IRS Final Decision[49] issued on November 26, 2002, was appealed by the Plaintiff

on December 10, 2002.[50] On June 17, 2003, the IRS Office of General Appeals issued a

partial determination affirming the Disclosure Officer's response withholding documents

under (b)(5), (b)(7)(C) and (b)(7)(D).[51] The Appeals decision identified ten documents

withheld pursuant to (b)(5), the attorney work-product and attorney-client privileges; two

documents withheld pursuant to (b)(7)(C), to protect privacy interests (the identity of law

enforcement officers) and two documents withheld pursuant to (b)(7)(D), to protect

confidential sources.  In its decision, the IRS stated that although Exemption 5 also included

the executive "deliberative process,"  only the "attorney work-product and attorney-client

privileges are here involved."[52]  The IRS also advised Plaintiff that it could not consider

---

[47] Id.  Three documents located in Boxes 16, 31 and 84 were withheld based on privacy interests and protection of confidential sources.

[48] See Heggestad Decl. ¶ 17; Letter from M. Sapero to R. Heggestad with attachments (Nov. 26, 2002), attached as Heggestad Decl. Ex. 9.

[49] IRS Final Decision (Nov. 26, 2002), attached as Heggestad Decl. Ex. 10.

[50] See Heggestad Decl. ¶ 18.

[51] See Heggestad Decl. ¶ 20.  At the time of the decision, the Appeals Office had not yet been provided access to responsive material withheld under 5 U.S.C. § 552(b)(3).  Appeals decision (June 17, 2003), at 1, attached as Heggestad Decl. Ex. 12.

[52] Appeals decision (June 17, 2003), at 3, attached as Heggestad Decl. Ex. 12.

arguments regarding attorney/fraud or waiver in the context of an FOIA proceeding, and that these issues would need to be resolved in a judicial proceeding.[53]

On March 8, 2004, the Appeals Office issued a final decision sustaining the denial of access to the material withheld under 5 U.S.C. § 552(b)(3) in conjunction with IRC § 6103.[54]

### G.    The Underlying Litigation.

#### 1.    Plaintiff's Rule 60(b)(6) Motion.

On October 2, 2000, the Plaintiff filed a Motion to Vacate Judgments pursuant to Federal Rule of Civil Procedure 60(b)(6) and the Court's Inherent Power to Address Fraud on the Court ("Rule 60(b) motion") in Stonehill.[55] The Plaintiff's Rule 60(b) motion was initially filed after Plaintiff obtained documents under the FOIA and in litigation from the State Department, the FBI and the Tax Division of the Department of Justice. These documents revealed that IRS and FBI agents had presented false testimony about the United States' involvement in the raids during the District Court proceedings on Stonehill's motions to suppress filed in 1967, 1971 and 1974. During the course of the Rule 60(b) proceeding, the IRS began its production of the 8 boxes of IRS documents discovered on May 18, 2001 and the 86 boxes of IRS documents discovered on September 28, 2001. On August 28, 2001, prior

---

[53] See Heggestad Decl. ¶ 20.

[54] See Heggestad Decl. ¶ 23.

[55] The initial Stonehill proceeding was filed in California, consolidated with the proceedings in Hawaii and Oregon and subsequently transferred to the District Court in Portland, Oregon.

to the Plaintiff's review of the 86 boxes of IRS documents, the District Court in Stonehill issued its decision denying Plaintiff's Rule 60(b) motion.[56]

### 2. The Ninth Circuit Court of Appeals Reversal of the District Court's Decision Denying Plaintiff's Rule 60(b) Motion.

On January 31, 2002, Plaintiff appealed the District Court's decision denying Plaintiff's Rule 60(b) motion to the Ninth Circuit Court of Appeals. On October 7, 2002, four months after the briefing had been completed in the Court of Appeals, and one week after the Plaintiff had completed the review of the 84 IRS boxes, Plaintiff filed a Motion to Supplement the Record on Appeal based on new evidence obtained from the IRS. On December 19, 2002, the Court of Appeals reversed and remanded the case for further proceedings to consider the documents obtained after the District Court's decision. The Court of Appeals stated since "the District Court's ruling, Stonehill and Brooks have obtained more documents that may substantially bolster their case that the Government committed fraud on the court." Because "Stonehill and Brooks still have more FOIA requests pending," the Court of Appeals directed that "the District Court should ensure that they have a fair opportunity to present their argument to the court" and that it "should assist them in obtaining relevant evidence. . . ."[57]

### 3. The District Court Ordered the Government to Produce All Relevant Documents Withheld from the 92 IRS Boxes.

On December 19, 2003, approximately one year after the Court of Appeals had directed the District Court to assist the Taxpayers in obtaining "all relevant evidence," the District Court ordered the Government to produce all relevant documents from the 92 boxes of

---

[56] The District Court denied Plaintiff's motion to stay a decision pending the completion of the review of IRS boxes. Order, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.) (filed Aug. 28, 2001). See Heggestad Decl. ¶ 13.

[57] See Heggestad Decl. ¶ 19; Order, attached as Heggestad Decl. Ex. 11.

IRS documents.[58]  The Court stated that although the Government could assert privileges, it could not "imagine any privileges" that would apply to the withheld documents.[59]

On February 17, 2004, the Government began to comply with the District Court's order by producing 5,419 pages consisting largely of financial records.[60]  On April 2, 2004, the Government produced approximately 36,000 additional pages (likewise consisting largely of financial records) and a privilege log indicating that it withheld thousands of documents consisting of nearly 20,000 pages based on various privilege claims, including attorney-client privilege and work-product doctrine, confidential informant, 26 U.S.C. § 6103, third-party tax payer return information, and 26 U.S.C. § 6105, Treaty Obligation privilege.[61]  Supplemental Privilege Logs were produced by the Government on August 20, 2004,[62] August 27, 2004,[63] October 4, 2004,[64] October 15, 2004,[65] October 22, 2004,[66] October 29, 2004,[67] and November

---

[58] See Hrg. Tr. at 24 (Dec. 19, 2003), attached as Heggestad Decl. Ex. 14.  The District Court ruled that the Taxpayers were entitled to the 84 boxes of documents that the Government had discovered after the District Court's Rule 60(b) hearing and the eight additional boxes that the Taxpayers did not have a chance to analyze prior to the hearing.  Id. at 23:18-24:11.

[59] Id. at 26:1-9.

[60] See Heggestad Decl. ¶ 22.

[61] See Heggestad Decl. ¶ 24, Ex. 51 (initial privilege log).  In its privilege log, the Government failed to provide meaningful descriptions for most of the withheld documents based on the attorney-client privilege and/or work-product doctrine.  The Government also made it virtually impossible for the Taxpayers to determine whether other alleged privileges apply – specifically, tax return information privilege and documents allegedly privileged by treaty obligations.  The Government's "privilege log" contained *no* identifying information about alleged tax return and treaty documents.  Heggestad Decl. ¶ 24, n.26.

[62] See Heggestad Decl. ¶ 25, Ex. 52.

[63] See Heggestad Decl. ¶ 25, Ex. 53.

[64] See Heggestad Decl. ¶ 25, Ex. 54.

23, 2004.[68] The Government did not assert the deliberative process privilege as a basis for withholding IRS documents either in its original privilege log or in any of its supplemental privilege logs.[69]

### 4.    The Plaintiff's Motion to Compel Production of Documents Withheld From the 92 Boxes.

On March 24, 2005, the Plaintiff filed a Motion to Compel Production of Documents ("Motion to Compel").[70] The issues of fact and law regarding the merits of the Government's assertion of FOIA exemptions at issue in this case, except for the deliberative process privilege, were fully briefed by the parties and submitted to the Court for decision.[71]

### a)    The Court Rejected the Government's Assertion of Attorney-Client Privilege and Work Product Doctrine.

On December 20, 2005, the Court rejected the Government's assertion of the work-product doctrine and attorney-client privilege[72] and ordered the Government to turn over all documents that were relevant to the issue of whether the Government committed fraud on the Court.[73] Specifically, the Court ordered the Government to produce all documents regarding the 1966 Tax Division investigation into the Government's role in the 1962 raids, all notes

---

[65] See Heggestad Decl. ¶ 25, Ex. 55.

[66] See Heggestad Decl. ¶ 25, Ex. 56.

[67] See Heggestad Decl. ¶ 25, Ex. 57.

[68] See Heggestad Decl. ¶ 25, Ex. 58.

[69] See Heggestad Decl. ¶ ¶27, 43, n. 63, Ex. 43.

[70] See Heggestad Decl. ¶ 26, Ex. 24.

[71] See Heggestad Decl. ¶ 26, Exs. 16 – 24.

[72] Heggestad Decl. Ex. 27 (Order at 8).

[73] Id. (Order at 9).

given to or taken by Government counsel if the notes concern the Tax Division's investigation

of the United States' involvement in the 1962 raids; and documents involving wiretaps if they

relate to the raids.[74]  The Court also ordered the Government to "disclose any other documents

now being withheld if the document concerns either the Government's role in the 1962 raids

or the Government's alleged attempts during the litigation of the motions to suppress or

conceal its role in the raids."[75]

On April 27, 2006, the Court clarified its December 20, 2005 Order and held that the

Government's role in the raids included "instigation" of the raids.  The Court stated that it

would rely on the Government to produce any document "if it has anything to do with the

raids."[76]

      **b)**      **The Court Denied Plaintiff's Motion to Compel Production
of Third-Party Taxpayer Information and Treaty Obligation
Information and Confidential Informant Information.**

The Court denied Plaintiff's motion to compel as to 26 U.S.C. § 6103 third-party tax

returns and return information, and 26 U.S.C. § 6105 treaty information.  The Court's ruling

denying the Plaintiff's motion to compel production of third-party tax returns and return

information was based on the Government's assurance that "it had reviewed the tax

documents and turned over returns and return information that concerned persons and entities

related to defendants, whether through a partnership or transaction."[77]  The Court also denied

---

[74] Id. (Order at 8-9).

[75] Id. (Order at 9).

[76] Heggestad Decl. Ex. 39 (Hrg. Tr. at 2:21-3:15 (April 27, 2006)).

[77] Heggestad Decl. Ex. 27 (Order at 5-6).

any further discovery related to Stonehill's attorney, William Saunders, to the extent that "any of the withheld tax documents relate to him."[78]

> ### c) The Court Denied Plaintiff's Motion to Compel Production of Confidential Informant Information Redacted by the CIA.

The Court denied Plaintiff's motion to compel production of documents redacted by the Central Intelligence Agency ("CIA") to protect the identity of confidential sources of information.[79] The Court ordered the Government to submit for in-camera review documents withheld by the CIA because of cooperation with foreign sources or government agencies.[80]

> ### d) The Court Allowed the Government to Redact IRS Documents Based on Relevance Objections.

On April 12, 2006, the Court approved certain redactions made by the CIA on eleven documents submitted by the Government for in-camera review during an ex-parte meeting held with the Court and CIA and Tax Division attorneys on April 5, 2006. In its April 12, 2006 order, the Court stated that its rulings on the CIA objections did not foreclose the Government "from objecting to this court's rulings on relevance, as set forth in the December 20, 2005 order."[81]

---

[78] Id. (Order at 5).

[79] The Court's decision did not address the merits of Government redactions made pursuant to 7(c) and 7(d). Order at 7 (Dec. 20, 2005), attached as Heggestad Decl. Ex. 27.

[80] Id. at 8. Following the Court's in-camera review of documents on April 5, 2006, the Court ordered that the redacted portions of the documents be disclosed, subject to certain guidelines: the names of individuals of the United States and Philippine Governments may be redacted and substituted with "U.S. Government official" or "Philippine government official," information regarding general CIA activities not related to the case may be redacted and information relating to stories from newspapers concerning allegations of CIA activities may be redacted. Order, United States v. Stonehill, No. 65-127 (OMP) (C.D. Cal.) (filed April 12, 2006), attached hereto as Ex. 28.

[81] Heggestad Decl. Ex. 28 (Order at 3 (April 12, 2006)).

On April 14, 2006, the Government produced 11 heavily redacted documents (out of the approximately 2000 IRS documents withheld from the Plaintiff) that it had determined were relevant based on the Court's December 20, 2005 order. [82]  On June 6, 2006, the Court directed the Government to produce the 11 documents in-camera to allow the Court to review the Government's relevance objections.[83]  On July 12, 2006, the Court approved certain relevance redactions made by the Government on the 11 CIA redacted documents and on two pages of additional documents submitted by the Government for in-camera-review.[84]

### H.    This Litigation.

This action was instituted by the Plaintiff under FOIA, 5 U.S.C.§ 552, to compel the complete production of agency records concerning William W. Saunders, Plaintiff's former attorney.[85]  On August 11, 2006, Plaintiff filed her First Amended Complaint seeking all documents related to Saunders and all documents responsive to Stonehill's FOIA request filed on July 10, 1998, which sought "all records, files, hearing transcripts, notes of memoranda of

---

[82] Letter from C. Duffy to R. Heggestad (April 14, 2006), attached as Heggestad Decl. Ex. 29.

[83] Hrg. Tr. at 5, 17 (June 6, 2006), attached as Heggestad Decl. Ex. 38.

[84] Hrg. Tr. (July 12, 2006), attached as Heggestad Decl. Ex. 41.

[85] Following the Court of Appeals remand, the Plaintiff discovered documents that revealed that Saunders, was a government informer who had provided confidential information regarding Stonehill's Swiss Bank accounts to the IRS as early as April 27, 1960. Saunders represented Stonehill beginning in late 1959 and appeared in Manila two years later, on June 18, 1962, after Stonehill and Brooks were arrested, to represent Stonehill and Brooks in the IRS civil tax investigation that he had initiated.  Saunders continued to represent Stonehill and provide information to the Government during the next several years.  On July 5, 2007, a jury in Honolulu unanimously found Saunders guilty on two counts of intentional breach of fiduciary duty of undivided loyalty and intentional breach of duty confidentiality. See Heggestad Decl. ¶ 51.

meetings or telephone conversations, and other data in [IRS] possession, custody or control

pertaining to Robert P. Brooks [and] Harry S. Stonehill."

## LEGAL STANDARD

### A.    Standard for Motion for Summary Judgment.

Summary judgment is appropriate when the pleadings, together with the declarations,

show that there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on such a motion, "the court is

to view the record in the light most favorable to the party opposing the motion, giving the non-

movant the benefit of all favorable inferences that can reasonably be drawn from the record

and the benefit of any doubt as to the existence of any genuine issue of material fact." Mack

v. Dep't of Navy, 259 F. Supp. 2d 99, 104 (D.D.C. 2003).

In the context of FOIA, the agency bears the burden of justifying nondisclosure. Piper

v. U.S. Dep't of Justice, 294 F. Supp. 2d 16, 20 (D.D.C. 2003), as amended, 428 F. Supp. 2d 1

(D.D.C. 2006), aff'd, 222 Fed. Appx. 1 (D.C. Cir. 2007), pet. for cert. filed, 75 U.S.L.W. 3610

(U.S. May 3, 2007 (No. 06-1469)). A court must decide whether the agency has sustained its

burden of demonstrating that the documents requested are exempt from disclosure under

FOIA. Mack, 259 F. Supp. 2d at 104. To this end,

> [T]he Court may award summary judgment to an agency solely on the basis of
> information provided in affidavits or declarations when the affidavits or
> declarations describe "the documents and the justifications for nondisclosure
> with reasonably specific detail, demonstrate that the information withheld
> logically falls within the claimed exemption, and are not controverted by either
> contrary evidence in the record nor by evidence of agency bad faith. The
> affidavits will not suffice if the agency's claims are conclusory, merely reciting
> statutory standards, or if they are too vague or sweeping.

Maydak v. U.S. Dep't of Justice, 254 F. Supp. 2d 23, 32 (D.D.C. 2003) (citations and internal

quotations omitted); see also Piper, 294 F. Supp. 2d at 20 (stating that declarations from

agency officials must be "clear, specific, and adequately detailed, setting forth the reasons for non-disclosure in a factual and non-conclusory manner; they must also be submitted in good faith").

### B.    General Notions Under FOIA.

Recently, this Court has made clear that the purpose of FOIA is to "facilitate public access to Government documents" and it is "meant to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." McCutchen v. U.S. Dep't of Health & Human Servs., 30 F.3d 183, 184 (D.C. Cir. 1994) (citation omitted); see also Stern v. FBI, 737 F.2d 84 (D.C. Cir. 1984) ("The central purpose of FOIA is to 'open[] up the workings of government to public scrutiny' through the disclosure of government records.") (citation omitted); Mack, 259 F. Supp. 2d at 104 (noting that the purpose of FOIA is to "afford[] the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure"). To this end, FOIA itself expresses a presumption favoring disclosure. Founding Church of Scientology of Washington, D.C., Inc. v. Smith, 721 F.2d 828, 830 & n.4 (D.C. Cir. 1983). The reasoning behind this presumption is that "the public is entitled to know what its government is doing and why." Piper, 294 F. Supp. 2d at 20 (citation omitted). Accordingly, "a federal agency is required to release all records that are responsive to a request for the production of the records." Maydak, 254 F. Supp. 2d at 32. If it fails to do so, the Court is authorized to "enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." Id. (quoting 5 U.S.C. § 552(a)(4)(B)).

## ARGUMENT

**II.    THE DOCTRINE OF COLLATERAL ESTOPPEL PREVENTS THE
GOVERNMENT FROM ASSERTING THE ATTORNEY WORK-PRODUCT
AND ATTORNEY-CLIENT PRIVILEGE AS THE BASIS FOR
WITHHOLDING DOCUMENTS FROM THE PLAINTIFF IN THIS
PROCEEDING.**

In this FOIA proceeding, the Government is collaterally estopped from withholding

documents based on the attorney work-product and attorney-client privilege because those

claims of privilege were rejected by the District Court in Stonehill.  See McLaughlin v.

Bradlee, 803 F.2d 1197, 1201 (D.C. Cir. 1986) (under doctrine of collateral estoppel "once a

court has decided an issue of fact or law necessary to its judgment, that decision may preclude

relitigation of the [same] issue in a suit on a different cause of action involving a party to the

first case.") (citation omitted).

To determine whether collateral estoppel operates to preclude litigation, the D.C.

Circuit has explained that the "standards for establishing the preclusive effect of a prior

holding are":

> First, the same issue now being raised must have been contested by the parties
> and submitted for judicial determination in the prior case. Second, the issue
> must have been actually and necessarily determined by a court of competent
> jurisdiction in that prior case. See McLaughlin[, 803 F.2d at 1201];
> Restatement (Second) of Judgments § 27 (1982) ("[w]hen an issue of fact or
> law is actually litigated and determined by a valid and final judgment, and the
> determination is essential to the judgment, the determination is conclusive in
> the subsequent action between the parties"). Third, preclusion in the second
> case must not work an unfairness to the party bound by the first determination.

Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992). See In re

Subpoena Issued to Commodity Futures Trading Comm'n, 370 F. Supp. 2d 201, 205 (D.C.

2005), aff'd in part on other grounds, 439 F.3d 740 (D.C. Cir. 2006).

In this case, each of the standards for establishing preclusive effect of the prior District

Court's decision in Stonehill have been met.  The issues of whether attorney work-product and

attorney-client privilege protects disclosure of documents withheld by the IRS was contested and submitted for a judicial determination in connection with the Plaintiff's motion to compel in Stonehill. The District Court, following extensive briefing by the parties on these issues, rejected the Government's claims of attorney work-product and attorney-client privilege. Precluding the IRS from relitigating these issues in this case, does not work an unfairness on the Government because the IRS had the opportunity and a great incentive to litigate these same issues in Stonehill in connection with the Plaintiff's claim of Government fraud upon the Court. For these reasons, as discussed below, the District Court's decision in Stonehill is conclusive regarding the merits of the Government's privilege claims in this proceeding.

A. **The Issue of Whether the Attorney Work-Product and/or Attorney-Client Privilege Prevent Disclosure of Documents Withheld by the IRS Was Contested by the Parties and Submitted for Judicial Determination in Stonehill.**

The issue of whether the IRS has properly withheld documents in the FOIA proceeding pursuant to the attorney-client privilege and work-product doctrine was previously litigated by the parties in United States v. Stonehill, No. 65-127 (C.D. Cal.) ("Stonehill"). On December 19, 2003, pursuant to the Court of Appeals direction to the District Court to assist the Taxpayers in obtaining FOIA documents withheld by the IRS in Stonehill, the District Court ordered the Government to produce all documents withheld from 92 boxes of IRS documents.[86] The Court also stated that although the Government could assert privileges, it could not "imagine any privileges" that would apply to the withheld documents.[87]

---

[86] Hrg. Tr. at 23-24 (Dec. 19, 2003), attached as Heggestad Decl. Ex. 14. The withheld documents that were at issue in Stonehill are the same documents that are at issue in this proceeding.

[87] Id. at 26.

On April 2, 2004, the Government produced a privilege log identifying hundreds of pages of documents withheld from the 92 boxes based on the Government's assertion of the attorney work-product doctrine and the attorney-client privilege. In <u>Stonehill</u>, as in this case, the Plaintiff challenged the Government's decision to withhold documents in a motion to compel filed on March 24, 2005 and in eight additional briefs that were filed by the parties during the following eight months. [88] The Plaintiff argued that the privileges asserted by the Government did not prevent disclosure of documents because: (1) the Government's fraud on the Court vitiated any applicable attorney client or work product privilege;[89] (2) the Government had waived its privilege claims;[90] (3) the Government had withheld factual information not protected by the attorney client and work-product privileges;[91] (4) the attorney-client privilege did not apply to Tax Division communications with agencies other than the IRS;[92] and (5) the attorney work-product doctrine was inapplicable because the Plaintiff had a substantial need for the documents.[93]

---

[88] <u>See</u> United States' Opp. to Defs.' Motion to Compel Production of Documents (June 6, 2005); Taxpayers' Reply Brief in Support of Motion to Compel (June 27, 2005); United States' Surreply Regarding Defs.' Motion to Compel Production of Documents (July 29, 2005); Taxpayers' Response to Government's Surreply (Aug. 26, 2005); Supplement to Taxpayers' Response to Government's Surreply (Sept. 1, 2005); Second Supplement to Taxpayers' Response to Government's Surreply (Dec. 5, 2005); United States' Response (Dec. 8, 2005); Third Supplement to Taxpayers' Response to Government's Surreply (Dec. 16, 2005), attached respectively as Heggestad Decl. Exs. 16, 17, 18, 19, 20, 21, 22 and 23.

[89] <u>See</u> Memo. of P&As in Support of Motion of the Taxpayers to Compel Production of Documents, <u>United States v. Stonehill</u>, No. 65-127 (OMP) (C.D. Cal.), at 43 (March 24, 2005), attached as Heggestad Decl. Ex. 24.

[90] <u>See id.</u> at 30.

[91] <u>See id.</u> at 23.

[92] <u>See id.</u> at 25.

[93] <u>See id.</u> at 11.

During the extensive briefing by the parties in connection with the Plaintiff's motion to compel, the issues of fact and law pertaining to the attorney work-product and attorney client privilege were litigated and submitted to the District Court for determination.[94]

**B.    The District Court in Stonehill Determined that the Attorney-Client Privilege and Work Product Doctrine Do Not Prevent Disclosure of Documents Withheld by the IRS.**

After considering the Plaintiff's motion to compel and the briefs submitted by both parties, the District Court in Stonehill rejected the Government's claim that attorney work-product and attorney-client privilege protected IRS documents from disclosure. The Court ruled that because the Plaintiff had challenged the conduct of Government attorneys during the litigation of the motions to suppress, the attorney work-product doctrine and attorney-client privilege did not prevent disclosure of documents withheld from the 92 boxes.[95]

**1.    The Court's December 20, 2005 Decision Rejected the Government's Claim of Attorney Work-Product and Attorney-Client Privilege.**

On December 20, 2005, the District Court granted the Plaintiff's Motion to Compel in-part and ordered the Government to produce all documents that were relevant to Plaintiff's claims of fraud upon the Court. In its decision, the Court ordered the Government to turn over all of the following documents which had been withheld by the Government based on claims

---

[94] The IRS has acknowledged that the issues litigated in Stonehill are identical to the issues in the FOIA proceeding. The initial Appeals decision stated that because "the issues to be resolved in the FOIA action and the refund proceeding are essentially the same, . . . to allow both suits to proceed would inevitably result in a waste of judicial resources." See Heggestad Decl. Ex. 12 (emphasis in original). On September 5, 2003, the IRS Appeals Office informed Plaintiff's counsel that the administrative appeal would be suspended with regard to the 5 U.S.C. § 552(b)(3) issue, because "We respectfully decline concurrent review of the issues you raised in your FOIA appeal while a Federal Court has jurisdiction over the release of the identical material you sought to access pursuant to your request under the FOIA." See Heggestad Decl. Ex. 25.

[95] See Order at 8, attached as Heggestad Decl. Ex. 27.

of attorney work-product and attorney-client privilege: (1) documents related to the 1966 Tax Division investigation into the Government's role in the 1962 raids;[96] (2) all notes given to or taken by Government counsel if the notes concern the Tax Division's investigation of the United States' involvement in the 1962 raids;[97] (3) documents involving wiretaps if they relate to the raids;[98] and (4) "*any other documents* now being withheld if the document concerns either the Government's role in the 1962 raids or the Government's alleged attempts during the litigation of the motions to suppress to conceal its role in the raids."[99]

The District Court in Stonehill unequivocally rejected the Government's claim of work-product doctrine and attorney-client privilege:

> According to the defendants, the United States has withheld documents relating to the 1966 investigation, citing the work product doctrine or attorney-client privilege. However, because the defendants' motion to set aside the judgment accuses the government of intentionally concealing its role in the 1962 raids during litigation of the motions to suppress, I conclude that the government must turn over documents regarding the 1966 Tax Division investigation into the government's role in the 1962 raids. Because the defendant's motion to vacate challenges the conduct of the government's attorneys during the litigation of defendants' motions to suppress, the government must turn over notes given to, or taken by, government counsel if the notes concern the Tax Divisions investigation of United States' involvement in the 1962 raids.
>
> *             *             *
>
> The Government must disclose any other document now being withheld if the document concerns either the government's role in the 1962 raids or the

---

[96] Order at 8, attached as Heggestad Decl. Ex. 27.

[97] Id.

[98] Id. at 9.

[99] Id.

government's alleged attempts during the litigation of the motions to suppress to conceal its role in the raids. [100]

### 2. The Court's December 20, 2005 Decision is a Final Order for Purposes of Collateral Estoppel.

The District Court's December 20, 2005 decision granting in-part the Plaintiff's

motion to compel is a final order for purposes of collateral estoppel which precludes

relitigation of whether the attorney work-product/attorney-client privilege is a proper basis for

withholding documents from the 92 boxes of IRS documents. See LaRouche v. U.S. Dep't of

Treasury, 112 F. Supp. 2d 48, 56 (D.D.C. 2000) (finality for purposes of issue preclusion is

less rigid than it is in other contexts). The Court in LaRouche addressed the issue of whether

IRS documents were exempt from disclosure pursuant to FOIA exemptions and whether a

decision by a District Court judge, in a related proceeding involving the FBI, collaterally

estopped LaRouche from relitigating that issue with the Treasury Department. LaRouche

argued that the original District Court decision granting the Government's motion for partial

summary judgment did not preclude his litigation against the Treasury Department to obtain

the same two IRS documents[101] because the District Court's order granting the Government's

---

[100] Hrg. Tr. 2:21-3:15 (April 27, 2006), attached as Heggestad Decl. Ex. 39. The Court also clarified its December 20, 2005 Order and held that the Government's role in the raids included instigation of the raids and that the Court would rely on the Government to produce any document "if it has anything to do with the raids." Id. On April 14, 2006, four months following the Court's order, the Government produced eleven documents (out of the approximately 2500 documents withheld) that it claimed were relevant to the issues identified by the Court. Each of these documents had been previously withheld based on the Government's assertion of the attorney work-product doctrine and attorney-client privilege. See Heggestad Decl. ¶ 36.

[101] The two documents at issue, a special agents report (SAR) and a Criminal Reference Letter (CRL), were located in both the files of the FBI and the IRS. Because one document was authored by the IRS and the other document was authored by the FBI, the parties agreed to litigate Larouche's claims pertaining to the IRS in one lawsuit and the claims pertaining to the FBI document in another lawsuit, Lyndon LaRouche, Jr. v. United States Department of Justice, No. 90-2753 (HHG), 1993 WL 388601 (D.D.C. June 25, 1993). In the

motion for partial summary judgment, issued by Judge Harold Green on June 25, 1993, was not a final order.[102]

The District Court held that Judge Green's decision that the withheld documents were exempt from disclosure in the litigation with the FBI <u>was</u> a final decision which precluded relitigation of the same issue with the Treasury Department:

> The Court rejects LaRouche's rigid concept of finality. Instead, the Court agrees with Treasury that "finality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts.' Finality 'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" <u>In re Brown</u>, 951 F.2d 564 (3d Cir. 1991) (quoting <u>Dyndul v. Dyndul</u>, 620 F.2d 409, 412 (3d Cir. 1980)); <u>see also</u> <u>Metromedia Co. v. Fugazy</u>, 983 F.2d 350, 366 (2d Cir. 1992), <u>cert. denied</u>, 508 U.S. 952, 124 L. Ed. 2d 662, 113 S. Ct. 2445 (1993); <u>Moore's Federal Practice 3d</u>, § 132.03[5][b][i], and cases cited therein. There is no doubt that Judge Greene intended his June 25, 1993 ruling pertaining to the SAR and CRL to be "final". The parties briefed the issues pertaining to those documents, the Court issued an opinion on those issues, and the Court gave no indication that it intended to revisit those issues while the parties were litigating the remainder of the case.

<u>LaRouche</u>, 112 F. Supp. 2d at 56.

In <u>Stonehill</u>, as in <u>LaRouche</u>, there is no doubt that Judge Panner intended his decision rejecting the Government's claim of attorney work-product and attorney-client privilege to be "final." The parties briefed those issues and the Court issued an opinion on those issues.[103]

---

FBI lawsuit, the District Court issued an Order on June 25, 1993 that the SAR and CRL were protected from disclosure under FOIA exemptions 3 and 5.

[102] <u>Larouche</u> also argued that the Treasury's attempt to apply the "law of the case doctrine" should be rejected because the law of the case doctrine applies to issues being litigated in the same case, but that it does not apply to issues being litigated in another case. The law of the case doctrine holds that " a determination of an issue of law at one stage of a case becomes 'the law of the case' and will not be reexamined in a subsequent stage of the case." <u>LaRouche</u>, 112 F. Supp. 2d at 56.

[103] December 19, 2005 Order, attached as Heggestad Decl. Ex. 27.

Judge Panner gave no indication that he intended to revisit those issues while the parties were litigating the remainder of the Rule 60(b)(6) proceeding.[104]

Under all of these circumstances Judge Panner's decision is a final decision for purposes of collateral estoppel.

### C. Precluding the IRS from Relitigating the Issue of Attorney Work-Product/Attorney-Client Privilege Does Not Work a Basic Unfairness to the IRS.

Precluding the IRS from relitigating the issue of whether attorney work-product and attorney-client privilege prevent disclosure of documents withheld from the 92 boxes, does not work a basic unfairness on the IRS because the Government had an opportunity and the incentive to litigate these issues in Stonehill. To support its argument that the IRS had properly withheld documents pursuant to the attorney-client privilege and/or the work product doctrine, the IRS submitted a six-hundred seventy-two (672) page Privilege Log,[105] nine Supplemental Privilege Logs,[106] a sixty (60) page Opposition to the Plaintiff's Motion to Compel,[107] a Surreply in support of its opposition[108] and a Response to the Plaintiff's Response to the Government's Surreply.[109]

---

[104] On April 20, 2006, Stonehill filed a second Motion to Require Production of Documents Redacted by Department of Justice and Chief Counsel's Memorandum Dated March 4, 1966. See Heggestad Decl. Ex. 37. Finally, on June 16, 2006, Stonehill filed a Notice of Intentional Failure to Comply with Discovery Orders and Motion to Compel Full Production. See Heggestad Decl. ¶ 37. The District Court ruled on these motions on June 6, 2006 and July 12, 2006.

[105] Heggestad Decl. Ex. 51.

[106] Heggestad Decl. Exs. 52 – 58.

[107] Heggestad Decl. Ex. 16.

[108] Heggestad Decl. Ex. 18.

[109] Heggestad Decl. Ex. 22.

The IRS incentive to litigate the issues in <u>Stonehill</u> was no less than it is in the current proceeding. <u>See</u> <u>Otherson v. Dep't of Justice, I.N.S.</u>, 711 F.2d 267, 273 (D.C. Cir. 1983) ("preclusion is sometimes unfair if the party to be bound lacked an incentive to litigate in the first trial, especially in comparison to the stakes in the second trial"). Plaintiff's motion to compel in <u>Stonehill</u> was filed to obtain documents to support Plaintiff's Rule 60(b) motion. The stakes for the Government in that proceeding, where Stonehill has alleged the Government committed fraud on the Court, are certainly as great and arguably far greater than they are in this FOIA proceeding. To award the IRS the relief that the District Court denied would unfairly subject the Plaintiff to multiple, inconsistent adjudications on the same issue.

### III.     <u>THE GOVERNMENT HAS WAIVED ANY CLAIM OF PRIVILEGE NOT ASSERTED IN THE ORIGINAL DISTRICT COURT PROCEEDING.</u>

The Government cannot assert privilege claims in this proceeding which were not previously raised as the basis for withholding documents in the District Court proceeding in <u>Stonehill</u>. <u>See</u> <u>Maydak v. U.S. Dep't of Justice</u>, 218 F.3d 760, 764 (D.C. Cir. 2000) ("We have plainly and repeatedly told the government that, as a general rule, it must assert all exemptions at the same time, in the original district court proceedings.") <u>See</u> <u>Washington Post Co. v. United States Dep't of Health & Human Servs.</u>, 795 F.2d 205, 208 (D.C. Cir. 1986); <u>Ryan v. Department of Justice</u>, 617 F.2d 781, 789, 792 (D.C. Cir. 1980); <u>Jordan v. United States Dep't of Justice</u>, 591 F.2d 753, 779-80 (D.C. Cir. 1978) (en banc), <u>overruled on other grounds by</u> <u>Crooker v. Bureau of Alcohol, Tobacco & Firearms</u>, 670 F.2d 1051, 1053 (D.C. Cir. 1981) (en banc). <u>See also</u> <u>Crooker v. ATF</u>, 670 F.2d 1051 (D.C. Cir. 1981); <u>Senate of Puerto Rico ex rel Judiciary Comm. v. U.S. Dep't of Justice</u>, 823 F.2d 574, 580 (D.C. Cir. 1987) (delay caused by permitting the government to raise its FOIA exemption claims one at a

time interferes with the statutory goals of "efficient, *prompt,* and full disclosure of information.") (citation omitted).

Because the Government did not assert the deliberative process privilege as a basis for withholding documents in the original District Court proceeding in Stonehill, it has waived any claim of deliberative process privilege as the basis for withholding documents in this proceeding.  Similarly, the Government has waived any claims of attorney work-product doctrine, attorney-client privilege[110] or 6103 third-party tax return privilege not previously asserted as a basis for withholding documents from the Plaintiff in Stonehill.

### A.    The IRS Has Waived the Deliberative Process Privilege.

The Government has asserted the deliberative process privilege as the basis for withholding one-hundred and seventy-two (172) documents in this proceeding.[111]  Because that privilege was not asserted as a basis for withholding documents in Stonehill, the Government has waived any claim of deliberative process privilege as a basis for withholding these documents.[112]

### B.    The IRS Has Waived Any Claim of Attorney Work-Product Doctrine Not Asserted in the Initial District Court Proceeding.

The IRS has also asserted the attorney work-product doctrine as the basis for withholding 681 documents that were not withheld based on attorney work-product doctrine in

---

[110] As discussed supra, at 29-30, the Government is estopped from raising any claim of attorney work-product and/or attorney-client privilege in this proceeding.

[111] See Chart titled Vaughn Deliberative Process Not Asserted by Tax Division, attached as Heggestad Decl. Ex. 43.

[112] Id.

the original District Court litigation.[113]  Any claim of attorney work-product doctrine has been waived with respect to these documents.

### C. The IRS Has Waived Any Claim of 6103 Third-Party Taxpayer Return Information Not Asserted in the Initial District Court Proceeding

FOIA Exemption 3, in conjunction with 26 U.S.C. § 6103, third-party tax return information, has also been raised for the first time by the IRS as the basis for withholding 157 documents previously withheld in the Stonehill litigation based only on attorney work-product and/or attorney-client privilege.[114]  Any claim of 6103 as the basis for withholding these documents has been waived.  Because the IRS is also estopped from asserting a claim of attorney work-product or attorney-client privilege as the basis for withholding these documents, the documents must be produced to the Plaintiff.

### D. There Are No Extraordinary Circumstances Justifying the IRS Assertion of New Exemptions in This Proceeding.

The D.C. Circuit has recognized two exceptions for unusual circumstances beyond the Government's control, justifying the Government's failure to assert exemptions in the original District Court proceeding:  (1) "extraordinary circumstances where, from pure human error, the government failed to invoke the correct exemption and will have to invoke the correct exemption and will have to release information compromising national security or sensitive, personal private information unless the court allows it to make an untimely exemption claim"

---

[113] See Chart titled Vaughn AWP and Tax Division Not AWP, attached as Heggestad Decl. Ex. 59.  Forty-eight of these documents were withheld by the IRS in the original District Court proceeding based only on attorney-client privilege.  See Chart titled Vaughn Index AWP and Tax Division ACP Only, attached as Heggestad Decl. Ex. 44.  Thirty-three documents were previously withheld in the Stonehill litigation based only on 26 U.S.C. § 6103.  See Chart titled Tax Division Redacted Docs with 6103 and/or 6105 Privilege Only, attached as Heggestad Decl. Ex. 45.

[114] See Chart titled Vaughn 6103 Not Asserted by Tax Division, attached as Heggestad Decl. Ex. 46.

and (2) "where a substantial change in the factual context of the case or an interim development in the applicable law forces the government to invoke an exemption after the original district court proceedings have concluded." Maydak, 218 F.3d at 767.

Neither of these exceptions justify the IRS assertion of privileges for the first time in this proceeding.

1.   **The Government's Failure to Assert FOIA Exemptions in the Original District Court Proceeding Was Not the Result of Error and It Does Not Involve National Security or Serious Privacy Issues.**

The Government did not fail to invoke the correct exemption in the original District Court proceeding because of error. The IRS had almost a year to prepare its privilege logs in the Stonehill proceeding following the District Court's December 19, 2003 Order. Richard Fultz, IRS Field Special Counsel in the Office of the Associate Chief Counsel (International) ("ACCT") provided assistance to IRS personnel collecting, reviewing and asserting exemptions applicable in responding to the Plaintiff's July 10, 1998 FOIA request.[115] Mr. Fultz also participated in the review of documents in the 92 IRS boxes in connection with the Plaintiff's motion to compel[116] and he assisted the Department of Justice in responding to discovery requests made in the Stonehill litigation.[117] He is currently assisting the IRS in this proceeding. Mr. Fultz has been intimately involved in the review and analysis of documents at issue in this case since 2000.[118]

---

[115] See Declaration of Richard Fultz (filed June 7, 2005) ¶ 1, attached as Heggestad Decl. Ex. 26.

[116] Id. ¶ 2, attached as Heggestad Decl. Ex. 26.

[117] See Declaration of Richard D. Fultz (dated April 5, 2006), attached as Heggestad Decl. Ex. 48.

[118] Id. at ¶ 2.

From May 18, 2001, when the IRS "discovered" the initial eight boxes of documents responsive to the Plaintiff's FOIA request, until the submission of its final supplemental privilege log on January 21, 2005, the IRS and its counsel have had almost four years to review the documents withheld in this proceeding and to determine what privileges, if any, apply. The fact that after four years the IRS failed to cite the attorney work-product privilege as a basis for withholding 681 documents that it now claims are exempt from disclosure in this proceeding, suggests that the omissions were not likely the result of error.

Significantly, the IRS does not claim that any of these omissions were the result of error. What is more likely is that after the District Court's decision rejecting attorney work-product doctrine and attorney-client privilege, the Government has decided that the deliberative process privilege remains a viable means to prevent disclosure of the withheld documents, and that work-product doctrine, rather than attorney-client privilege is easier to defend in this proceeding given the narrower scope of waiver applied to work-product doctrine. Finally, none of the newly asserted privileges involve claims of national security or "serious" privacy concerns given the fact that the documents withheld are decades old. To the extent that serious privacy concerns exist, the names of third parties can easily be redacted from the 145 documents that have been withheld in full based in part on newly asserted claims of 6103.[119]

---

[119] See Chart titled Vaughn 6103 Not Asserted by Tax Division, attached as Heggestad Decl. Ex. 46.

2. **There Has Not Been a Substantial Change in the Factual Context of the Case or an Interim Development in the Applicable Law Since the Initial District Court Proceedings Were Concluded.**

All issues concerning the Plaintiff's motion to compel in <u>Stonehill</u> were resolved by the District Court following the July 12, 2006 hearing. Since that time there have been no substantial changes in the factual context of the case or any interim developments in the applicable law.[120]

IV. **DOCUMENTS WITHHELD OR REDACTED BY THE GOVERNMENT BASED ON RELEVANCE OBJECTIONS ARE NOT EXEMPT FROM DISCLOSURE.**

Documents redacted or withheld from the Plaintiff in the initial District Court litigation based on relevance objections must be produced in this proceeding. <u>See</u> <u>Thompson v. Dep't of Navy</u>, No. 95-347 (RMU), 1997 WL 527344, at *2 n.2 (D.D.C. Aug. 18, 1997) ("the most fundamental discovery and evidentiary principle, relevance to the issues being litigated, plays no part in FOIA cases") (citing <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 862 (D.C. Cir. 1980)); <u>SEC v. R. J. Reynolds Tobacco Holdings, Inc.</u>, No. MISC.A.03-1651 (JDB), 2004 WL 3168281, at 12 (D.D.C. June 29, 2004) (Under FOIA . . . relevance is not taken into account when determining whether or not information should be disclosed pursuant to a third party request") (citing <u>Nat'l Parks and Conservation Ass'n v. Kleppe</u>, 547 F.2d 673, 667-78 (D.C. Cir. 1976).[121] Although the District Court in the <u>Stonehill</u> litigation allowed the Government to withhold or redact information in documents based on relevance objections, that ruling does not prevent the Plaintiff from seeking the same information through FOIA proceedings. <u>SEC v. R. J. Reynolds Tobacco Holdings, Inc.</u>, <u>supra</u>, at *12.

---

[120] Heggestad Decl. ¶ 48.

[121] The Government admits that relevance is not a basis for withholding documents under the FOIA. <u>See</u> Answer to Complaint at ¶ 45 (Docket Entry 6, filed June 8, 2006).

A.    **The Government's Relevance Redactions, Approved by the District Court In Stonehill, Are Not Exempt From Disclosure Under FOIA.**

Based on the "scope and relevance rulings" in the District Court's December 20, 2005 Order ("Order")[122] in Stonehill,[123] on April 14, 2006, the Government produced ten[124] documents.[125] Three of these documents, which consist of 73 pages of notes of interviews with IRS agents Robert Chandler ("Chandler")[126] and William Ragland ("Ragland")[127] and FBI legal attaché Robert Hawley ("Hawley")[128] regarding their role in the raids, were initially produced in heavily redacted form, e.g., 39 pages were entirely redacted and 15 pages were partially redacted based on the Government's claim that the redactions were not relevant to the 1966 investigation. Two Chief Counsel's memoranda which summarized the results of the agents' interviews were also significantly redacted[129] by the Government based on relevance

---

[122] Heggestad Decl. Ex. 27.

[123] The Court's December 10, 2005 Order required the Government to "turn over documents regarding the 1966 Tax Division investigation into the Government's role in the 1962 raids" and to "turn over notes given to, or taken by, Government counsel if the notes concern the Tax Division's investigation of United States' involvement in the 1962 raids." See Order at 8, attached as Heggestad Decl. Ex. 27.

[124] Document 5 is an excerpt from document 4.

[125] See Letter from C. Duffy to R. Heggestad (April 14, 2006), attached as Heggestad Decl. Ex. 29.

[126] See Document 2, attached as Heggestad Decl. Ex. 30.

[127] See Document 1, attached as Heggestad Decl. Ex. 31.

[128] See Document 10, attached as Heggestad Decl. Ex. 32.

[129] See Document 4, March 4, 1966 Memorandum of Fact and Law, attached as Heggestad Decl. Ex. 33 and Document 6, March 9, 1966 Memorandum from McAleer to Rogovin, attached as Heggestad Decl. Ex. 34. No relevance objections were asserted on Documents 7 and 8.

grounds.[130] Finally, the Government made relevance redactions on handwritten notes of a

telephone conversation with Harlow Huckabee[131] regarding McCarthy's interview with IRS

Agent Chandler and on memorandum regarding the introduction of evidence of documents

seized in the Philippines.[132]

On June 6, 2006, the Court ordered the Government to produce unredacted copies of

the documents containing relevance redactions, for in-camera review.[133] Following the

Court's in-camera review of the 11 documents, on July 12, 2006, the Government was allowed

to maintain certain relevance redactions on five documents.[134] The relevance redactions on

---

[130] The Court rejected the Government's claim that these documents were protected
from disclosure based on the attorney work-product and attorney-client privilege. See
December 20, 2005 Order at 8, attached as Heggestad Decl. Ex. 27. The reasons for rejecting
the Government's claims of privilege, were explained by the Court: ". . . because the
defendant's motion to set aside the judgment accuses the government of intentionally
concealing its role in the 1962 raids during litigation of the motions to suppress, I conclude
that the government must turn over documents regarding the 1966 Tax Division investigation
into the government's role in the 1962 raids. Because defendants' motion to vacate challenges
the conduct of the government's attorneys during the litigation of defendants' motions to
suppress, the government must turn over notes given to, or taken by, government's counsel if
the notes concern the Tax Division's investigation of United States involvement in the raids."
Id.

[131] See Document 9, attached as Heggestad Decl. Ex. 35.

[132] See Document 11, attached as Heggestad Decl. Ex. 36.

[133] See Hrg. Tr. at 5:12-20; 17:1-14 (June 6, 2006), attached as Heggestad Decl. Ex.
38.

[134] The Court allowed the Government to maintain the following relevance redactions:
Document 1 (Ex. 31 hereto): pages 42, 46 to 50, (Tr. at 10:15-11:22, attached hereto as Ex.
41); Document 2 (Ex. 30 hereto): the last three lines of page 100 and the first and last
paragraph of 101, and the first paragraph of 102, (Tr. at 12:20-14:25, Ex. 41 hereto);
Document 4 (Ex. 33 hereto): the names of potential defendants at 116 (Tr. at 15:12-21, Ex. 41
hereto); information related to the Bills of Lading case; 218-232 (Tr. at 18:6-18:11, Ex. 41
hereto); Document 6 (Ex. 34 hereto): information relating to Lukban's removal as NBI
Director and effect on U.S. Litigation; the last half of bates-stamped 112 (page 7) and the first
half of 113 (page 8); 106 (page 1) redaction of name of another individual involved in
litigation; (Tr. at 18:16-20:8, Ex. 41 hereto); Document 9 (Ex. 35 hereto): last 5 lines of

theses five documents have no basis under FOIA and the documents should be produced in unredacted form[135] to the Plaintiff.

### B.    All Documents Withheld in Full Based on Relevance Objections Must be Produced.

The District Court's December 20, 2005 Order in <u>Stonehill</u> required the Government to produce "*any other* documents now being withheld if the document concerns either the Government's role in the 1962 raids or the Government's alleged attempts during the litigation of the motions to suppress to conceal its role in the raids."[136] (emphasis added).  After the District Court overruled the Government's assertion of attorney work-product and attorney-client privilege as the basis for withholding hundreds of documents, the Government claimed that *none* of the documents withheld in full were responsive or relevant to the issues in the Rule 60(b)(6) proceeding.[137]  In this FOIA proceeding, there is no basis for the Government to withhold any of the documents withheld on relevance grounds or claims of attorney work-product and attorney-client privilege which were rejected in the initial District Court proceeding.

Similarly, to the extent that documents that were previously withheld based on relevance objections have been withheld in this proceeding based on newly asserted claims of

---

handwritten page; (Tr. at 20:10-20:14, Ex. 41 hereto).  The Court ordered the Government to produce Documents 10 and 11 in unredacted form. Tr. at 20:15-20:19, Ex. 41 hereto.

[135] The Plaintiff is not disputing the CIA redactions approved by the District Court in <u>Stonehill</u> in this proceeding.

[136] Order at 9, attached as Heggestad Decl. Ex. 27.

[137] The Taxpayers specifically identified 60 documents that they believed were relevant to the Government's conduct in connection with the 1967, 1971 or 1975 motions to suppress. <u>See</u> Appendices, attached as Heggestad Decl. Ex. 47.

the deliberative process privilege or 6103 third-party taxpayer information, those privileges

have been waived and the documents must be produced.

**V.    THERE IS NO BASIS FOR THE FBI'S ASSERTION OF (b)(6)-2 AND
       (b)(7)(C)(2) TO PROTECT THE PRIVACY INTERESTS OF IRS AGENTS
       WHO PARTICIPATED WITH THE FBI IN THE STONEHILL
       INVESTIGATION.**

The FBI has asserted FOIA exemptions 6 and 7(C), 5 U.S.C. §§ 552(b)(6) and

(b)(7)(C) to withhold FBI information on 16 out of 43 pages of documents referred by the IRS

to prevent the unwarranted invasion of the personal privacy of FBI Special Agents (b)(6)-2

and (b)(7)(C)-1, non FBI federal personnel (b)(6)(c)-2 and (b)(7)(C)-2, information of

commercial institution employees (b)(6)-3 and (b)(7)(C)-3, third parties of investigative

interest (b)(6)-4 and (b)(7)(C)-4, and third parties merely mentioned (b)(6)-5 and (b)(7)(C)-5.

Except for the name of an IRS agent[138] and redacted information related to the First National

Bank in Tennessee,[139] the names of FBI Special Agents redacted to protect the identity of FBI

Special Agents in Washington, D.C., San Francisco and Pittsburg have previously been

released to the Plaintiff.[140]

The FBI has failed to identify any substantial privacy rights to justify the withholding

of the name of an IRS agent who was the recipient of a memorandum forwarded by FBI agent

Robert Hawley ("Hawley") on October 31, 1962.[141]  The policy reasons for withholding the

---

[138] See Heggestad Decl. Ex. 34 (Document 6).

[139] See Heggestad Decl. Exs. 31, 33, 35, 32 and 36 (Documents 1, 5, 9, 10 and 11).

[140] Heggestad Decl. ¶ 47, Exs. 61, 62 and 63.

[141] The memorandum attached to the October 31, 1962 information memorandum
concerns the New York Bills of Lading Act Stonehill investigation and has been produced as
an attachment without redaction.  See Declaration of David M. Hardy, Ex. A, Document 6
(Docket Entry 35-5 filed March 27, 2007).

names of third parties such as subjects, witnesses and informants mentioned in law enforcement records do not apply to the IRS Revenue Agent involved in the Stonehill investigation.[142]  Consequently, the names of IRS agents receiving information from Hawley on May 28, 1963[143] and in undated correspondence[144] forwarding a June 4, 1963 memorandum have not been redacted.

In determining whether exemption 7(C) applies to particular material, the Court must balance the substantial interest in privacy of the individual mentioned in the record against the public's interest in disclosure.  Beck v. DOJ, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  Here, the public interest is significant because there is "more than a bare suspicion" of official misconduct.  See Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172, 174 (2004). Two Ninth Circuit panelists stated that Hawley's lies were more than "just a few sort of innocent mistakes of fact"[145] and that McCarthy "at the time he filed his brief in this Court, knew things that should have precluded him from making certain representations to this Court."[146]  The Panel did not conclude that fraud occurred, but found evidence significant enough to remand the case.  Almost by definition, this is a "preliminary showing" that there is more than a bare suspicion of public misconduct.  This is one reason why, as the District Court

---

[142] Iglesias v. CIA, 525 F. Supp. 547, 563 (D.D.C. 1981).

[143] See Declaration of David M. Hardy, Ex. A, Document 2 (Docket Entry 35-5 filed March 27, 2007).

[144] See Declaration of David M. Hardy, Ex. A, Documents 3 & 4 (Docket Entry 35-5 filed March 27, 2007).

[145] See Nov. 6, 2002 Tr. at 7, attached as Heggestad Decl. Ex. 60.

[146] See Nov. 6, 2002 Tr. at 28-29, attached as Heggestad Decl. Ex. 60.

stated after the remand, one cannot easily "imagine any privileges"[147] the Government can continue claiming.

The names of IRS agents involved in the Stonehill case have been released in literally thousands of documents produced by the IRS and the three primary IRS agents assigned to the Stonehill investigation in the Philippines, Chandler, Ragland and Powers are deceased.[148] Presumably the IRS agent whose name has been deleted is also deceased because the FBI has made no representation that the exemptions have been asserted to protect a person who is living.[149] The IRS has asserted no reason justifying redaction of the IRS agent's name to protect privacy interests.

## VI.    CIA REDACTIONS.

The CIA has not asserted any privilege claims that were not previously asserted in the Stonehill litigation. Although the Plaintiff does not believe that there is any real basis for the CIA redactions other than to diminish the role of the CIA in the wiretapping of Stonehill and Brooks conducted by the Philippine NBI, the District Court's decision in Stonehill is binding on the Plaintiff in this proceeding.

## VII.   THIRD-PARTY TAX PAYER AND RETURN INFORMATION.

The District Court in Stonehill denied Plaintiff's motion to compel production of documents withheld based on 26 U.S.C. § 6103 third-party tax returns and return information. The Court's decision was reached in part based on its acceptance of the Government's statement that "it had reviewed the tax documents and turned over returns or return

---

[147] See Dec. 19, 2003 Tr. at 26, attached as Heggestad Decl. Ex. 14.

[148] Heggestad Decl. ¶ 46.

[149] King v. U.S. Dep't of Justice, 830 F.2d 210 at 234, n.174 (D.C. Cir. 1987).

information that concerned persons and entities related to defendants, whether through a partnership or transaction."[150]  The Court's decision, however, does not prevent disclosure of documents withheld in this proceeding based on claims of 6103 privilege that were not asserted in Stonehill.  As previously discussed, any claim of 6103 not previously asserted in the District Court proceeding has been waived[151] and is not a proper basis for withholding documents in this proceeding.

## VIII.    TREATY INFORMATION.

The District Court in Stonehill denied Plaintiff's motion to compel production of documents withheld based on 26 U.S.C. § 6105, which governs the confidentiality of information covered by international tax treaties.[152]  That decision is binding on the Plaintiff to the extent that the IRS has not asserted the 6105 privilege to withhold any document not previously claimed to be exempt based on 6105 in the Stonehill litigation.

---

[150] Order at 5-6, attached as Heggestad Decl. Ex. 27.

[151] See p. 32, supra.

[152] Dec. 20, 2005 Order at 6, attached as Heggestad Decl. Ex. 27.

**IX.    THERE IS NO BASIS FOR REQUIRING THE PLAINTIFF TO PAY ADVANCE SEARCH COSTS TO IDENTIFY DOCUMENTS THAT HAVE ALREADY BEEN LOCATED OR TO PAY FOR TRANSCRIPTS THAT ARE IN THE POSSESSION OF GOVERNMENT ATTORNEYS REPRESENTING THE IRS.**

The Plaintiff did not agree to pay the IRS $5,000 in search costs for documents that had already been located by the IRS in response to Plaintiff's initial FOIA request. The Plaintiff had previously paid all search and duplication costs assessed by the IRS to process Plaintiff's FOIA request[153] and there is no basis for assessing additional search fees to locate documents requested by the Plaintiff in this proceeding that were not identified in the Government's original privilege log by IRS "control numbers." There was also no basis for requiring the Plaintiff to pay search fees for the deposition transcript of IRS agent Powers or for a November 20, 1984 hearing transcript that had already been located by the IRS in the files of the Tax Division attorneys who represented the IRS in the Stonehill litigation.[154] Both of these transcripts were subsequently provided to the Plaintiff pursuant to an agreement with the IRS that Plaintiff would file no further FOIA requests with the IRS or the Tax Division for a period of seven years.[155]

---

[153] Heggestad Decl. ¶ 49.

[154] Heggestad Decl. ¶ 50.

[155] Id.

## CONCLUSION

For all of the foregoing reasons, Plaintiff, Pauline D. Stonehill, requests the Court to

deny the Defendant's Motions of Partial Summary Judgment; and that judgment be entered in

her favor.

Dated: September 7, 2007

Respectfully submitted,

 /s/        Robert E. Heggestad
Robert E. Heggestad (D.C. Bar. No. 953380)
Jonathan Cohen (D.C. Bar. No. 483454)
ROSS, DIXON & BELL, LLP
2001 K Street, N.W.
Washington, D.C.  20006-1040
(202) 662-2000

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing PLAINTIFF'S OPPOSITION TO

DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND CROSS-

MOTION FOR PARTIAL SUMMARY JUDGMENT, PLAINTIFF'S STATEMENT OF

MATERIAL FACTS NOT IN GENUINE DISPUTE and PLAINTIFF'S STATEMENT OF

MATERIAL FACTS IN GENUINE DISPUTE was served by United States mail addressed to

the following on this 7th day of September, 2007:

> Brittney N. Campbell
> David M Katinsky
> TAX DIVISION
> Post Office Box 227
> Ben Franklin Station
> Washington, D.C.  20044

> /s/    Robert E. Heggestad
> Robert E. Heggestad

358477 v 1