# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

PAULINE STONEHILL,

    Plaintiff,

       v.

INTERNAL REVENUE SERVICE,

    Defendant.

Civil Action No.  06-0599 (JDB)

## <u>MEMORANDUM OPINION</u>

The roots of this Freedom of Information Act ("FOIA") case date back over forty years.
Following a series of raids on Henry S. Stonehill's[1] business offices in the Philippines in 1962,
the IRS brought a civil tax case against Stonehill and his associate Robert P. Brooks in 1965.  In
1980, after nearly two decades of litigation, the IRS obtained a judgment of $17.6 million against
Stonehill and Brooks.  Many years later, in 1998, Stonehill filed the FOIA request that forms the
basis of this lawsuit.  In that request, Stonehill sought documents from the IRS concerning the
federal government's role in the 1962 raids on his offices.  After receiving only five documents
responsive to his 1998 request, Stonehill made another identical request in 2001, which in turn
generated a far larger volume of responsive documents.  The IRS also produced an extensive
privilege log detailing the material withheld by the agency under numerous FOIA exemptions

---

[1] Henry Stonehill died on March 20, 2002.  Pauline Stonehill, his widow and executor of
his Estate, is the plaintiff in this case.  Thus, the Court will hereinafter refer to plaintiff using the
feminine pronoun.

-1-

and applicable privileges.  Plaintiff now challenges those withholdings on various grounds in this

action.  Incredibly, the government has filed no fewer than five motions for summary judgment

here.  Plaintiff, for her part, has cross-moved for summary judgment in her favor.  Those motions

are now fully briefed and ripe for resolution.  After careful consideration, and for the reasons set

forth below, the Court will grant in part and deny in part each motion.

## BACKGROUND

The operative facts of this case are not seriously in dispute.  Despite the procedural

complexities and vast historical litigation record in this case, the crux of the matter is quite

simple.  In a related proceeding in the Central District of California (and the Ninth Circuit),

plaintiff is seeking to vacate the 1980 tax judgment against the estate by way of a Fed. R. Civ. P.

60(b)(6) motion.  She believes that the government is in possession of documents that will aid

her task of proving fraud on the court, which forms the basis of her Rule 60(b) motion.

Consequently, plaintiff has sought to undercover those documents both in the Rule 60(b)

discovery proceedings and by way of FOIA.  In this case, the IRS has not produced several

responsive documents that plaintiff argues have been improperly withheld.

The Rule 60(b) proceedings warrant a brief discussion here because the issues involved

there are related to many of the questions raised in the instant case.  In 2000, plaintiff filed a

motion to vacate the tax judgment citing documents "that revealed that IRS and FBI agents had

presented false testimony about the United States' involvement in the raids during the District

Court's proceedings on Stonehill's motions to suppress filed in 1967, 1971 and 1974."  Pl.'s

Opp'n & Cross-Mot. for Summ. J. (hereinafter "Pl.'s Mot.") at 13.  While the district court was

considering plaintiff's motion, the IRS began to produce to plaintiff purportedly newly discovered

documents that were responsive to plaintiff's FOIA request.  Id. at 13-14.  Before plaintiff had

completed her review of that new information, however, the district court denied her Rule 60(b)

motion.  Id. at 14.

    Plaintiff timely appealed that ruling and the Ninth Circuit reversed and remanded the

decision "for further proceedings to consider the documents obtained after the District Court's

decision."  Id.  The new documents, the Ninth Circuit reasoned, "'may substantially bolster

[plaintiff's] case that the Government committed fraud on the court,'" id. Ex. 11, and hence the

district court was ordered to assist plaintiff in obtaining any additional relevant evidence.  Id.

Consequently, beginning in 2003 the district court undertook the process of ensuring that

plaintiff had access to all relevant evidence, including information that plaintiff sought by way of

Rule 26 discovery mechanisms outside of the FOIA context.  During the course of the IRS's

subsequent production, the Service withheld several documents based on various applicable

exemptions, including: "attorney-client privilege and work-product doctrine, confidential

informant, 26 U.S.C. § 6103, third-party tax payer return information, and 26 U.S.C. § 6105,

Treaty Obligation privilege."  Id. at 15.  Plaintiff objected to many of those withholdings and thus

filed a motion to compel those documents with the district court.

    On December 20, 2005, the district court issued a ruling granting in part and denying in

part plaintiff's motion to compel.  See id. Ex. 27.  That decision is critical to the outcome of this

case because, at least in plaintiff's view, it definitively resolves under the principle of collateral

estoppel many of the issues presented in this case.  Specifically, the court rejected the

government's withholdings made on the basis of "work product doctrine or attorney-client

privilege."  Id. Ex. 27 at 8.  At the same time, the court upheld the government's asserted

-3-

exemptions relating to third-party tax return information (26 U.S.C. § 6103(h)(4)) and

confidential information covered by international tax treaties (26 U.S.C. § 6105).  Id. Ex. 27 at 4-

6.  Similarly, the court permitted the government to withhold information relating to confidential

informants.  Id. Ex. 27 at 7.  Finally, the CIA had made redactions on certain produced

documents and the court approved of those redactions on relevance grounds following in-camera

review at a subsequent date.  Id. Ex. 28.

Against that backdrop, plaintiff filed her First Amended Complaint on August 11, 2006,

seeking "all documents related to Saunders"[2] and all records responsive to its initial FOIA

request.  Id. at 19.  In response, the government produced a voluminous amount of documents

but has also compiled a lengthy privilege log, to which plaintiff now objects.  To begin with, the

IRS asserts FOIA exemption 5 U.S.C. § 552(b)(3) (hereinafter "Exemption 3"), in conjunction

with 26 U.S.C. § 6103(a), to "withhold the returns and return information of individuals and

entities other than Stonehill and Brooks."  Def.'s Third Supplemental Stmt. of Facts ¶ 31.

Exemption 3 applies to documents "specifically exempted from disclosure by statute," see 5

U.S.C. § 552 (b)(3), and the IRS contends that § 6103(a), which prevents the Service from

disclosing taxpayer information to third-parties without consent, is one such exempting statute.

Next, the IRS has withheld documents under 5 U.S.C. § 552(b)(5) (hereinafter

"Exemption 5"), which allows an agency to avail itself of privileges that would render inter-

_____

[2] William W. Saunders served as Henry Stonehill's attorney beginning in 1959 and
continued his representation of plaintiff for several years during the IRS civil tax investigation.
Pl.'s Mot. at 19 n. 85.  He was also evidently a government informant during that same period,
allegedly "provid[ing] information to the Government" throughout his concurrent representation
of Stonehill.  As plaintiff notes, Saunders was found guilty on "two counts of intentional breach
of fiduciary duty of undivided loyalty and intentional breach of duty [sic] confidentiality" in
2007.  Id.

agency or intra-agency memoranda unavailable "to a party other than an agency in litigation with the agency."  In other words, Exemption 5 permits an agency to withhold internal documents that would be privileged or otherwise undiscoverable in civil litigation.  Here, the IRS argues that it is "withholding information that was prepared by Chief Counsel and DOJ attorneys" in connection with the Stonehill and Brooks investigation under the work product doctrine.  Def.'s Third Supplemental Stmt. of Facts ¶ 35.  The Service has also withheld "drafts of documents and other records . . . containing advisory opinions and recommendations" regarding the Stonehill investigation pursuant to Exemption 5 and the deliberative process privilege.  Id. ¶ 27.

Turning to the next asserted exemption, the IRS has withheld certain documents "that constitute 'tax convention information' as defined under 26 U.S.C. § 6105(c)(1)," an exempting statute designed to shield foreign tax partners from potentially harmful disclosure of confidential information.  Def.'s Fourth Supplemental Stmt. of Facts ¶ 9.  The disputed documents, according to the Service, involve foreign taxing authorities, namely from Canada, Japan, and Australia.  The IRS argues that the information has been properly withheld under Exemption 3 because, pursuant to his authority under § 6105(c)(1) and § 6103(e)(7),[3] the Secretary has determined "that disclosure of such documents would constitute serious impairment of tax administration."  Def.'s Fifth Mot. for Partial Summ. J. at 15.

Finally, the Service has redacted from its disclosures the name of a particular IRS agent involved in the original Stonehill investigation, citing 5 U.S.C. §§ 552(b)(6) and (b)(7) as justification (hereinafter "Exemption 6" and "Exemption 7," respectively).  Exemption 6

---

[3] In relevant part, 26 U.S.C. § 6103(e)(7) permits inspection of tax returns if the Secretary determines "that such disclosure would not seriously impair Federal tax administration."

authorizes withholding of personnel information where disclosure would constitute a "clearly unwarranted invasion of personal privacy." See 5 U.S.C. § 552(b)(6). The IRS contends that disclosing the name of the agent involved would amount to an inappropriate invasion of privacy without any corresponding benefit to the public. Def.'s Opp'n at 14-15. Similarly, the Service maintains that it is permitted to withhold the name of the agent under Exemption 7, which authorizes "the withholding of information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. at 15; see also 5 U.S.C. § 522(b)(7)(C). Here, the IRS maintains that the redaction is appropriate because the agent has a legitimate privacy interest and the information was "compiled for a 'law enforcement purpose'": the Stonehill investigation. Def.'s Opp'n at 15.

Plaintiff does not dispute the merits of most of these exemptions.[4] Instead, she argues broadly that: (1) the district court in the Rule 60(b) proceedings has already decided the attorney-client and work product privilege issues adversely to the IRS; and (2) to the extent that the Service now asserts other exemptions with respect to various documents, those exemptions are inapposite here because they have been waived due to the fact that they were not previously asserted during the initial Rule 60(b) litigation. As for Exemptions 6 and 7, plaintiff argues that there is no legitimate privacy interest to protect in this case, and in any event, the public's interest

_____

[4] Indeed, plaintiff concedes several points at the outset. To begin with, plaintiff admits that the CIA redactions approved by the district court in the Rule 60(b) proceedings are binding on her here. Pl.'s Mot. at 41. Similarly, she states that the district court's decision on 26 U.S.C. § 6103 withholdings is also binding here, at least to the extent that the IRS claimed that privilege in the Rule 60(b) litigation. Id. at 41-42. In addition, plaintiff concedes that the district court's initial ruling on 26 U.S.C. § 6105 withholdings applies in full force here, but again only to the extent that the IRS asserted that privilege at the outset in the prior litigation. Id. at 42. Plaintiff maintains that the Service has waived these exemptions and privileges as to any documents to which it did not previously assert the applicable privilege in the Rule 60(b) proceedings.

in uncovering potential official misconduct outweighs the agent's privacy interest.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

### I.     Collateral Estoppel

Plaintiff's first argument is that the doctrine of collateral estoppel precludes the IRS in this proceeding from re-asserting the attorney-client and attorney work product privileges that it raised in the Stonehill Rule 60(b) proceeding.  Specifically, plaintiff contends that the district court's order on her motion to compel in the Rule 60(b) case bars re-litigation of the privilege issue here.  The Service responds that collateral estoppel does not apply because this proceeding does not involve the same issue raised in the prior motion to compel.  Moreover, the IRS argues, the district court did not in fact reach "the actual merits of the claims of privileges" in its order.  Def.'s Opp'n at 9.  For the reasons set forth below, plaintiff has the better of this argument.

Collateral estoppel, or issue preclusion, provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  Allen v. McCurry, 449 U.S. 90, 94 (1980).  The doctrine requires the following elements: (1) the issue raised must have been "submitted for judicial determination in [a] prior case"; (2) that issue must have "been actually and necessarily determined" in the prior case; and (3) preclusion in the present case "must not work an unfairness to the party bound by the first determination."  See Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992) (citing McLaughlin v. Bradlee, 803 F.2d 1197, 201 (D.C. Cir. 1986)); see also Martin v. Dep't of Justice, 488 F.3d 446, 454 (D.C. Cir. 2007).

Plaintiff's argument is straight-forward.  The IRS withheld certain documents in the Rule 60(b) proceeding on the basis of the attorney work product and attorney-client privileges, and the district court in that case rejected the application of those privileges in its motion to compel

decision.  Pl.'s Mot. at 23-25.  At the same time, plaintiff also claims that the "withheld documents that were at issue in Stonehill are the same documents that are at issue in this proceeding."  Id. at 23 n.86.  Moreover, plaintiff maintains that the IRS submitted "extensive briefing" on this very issue in the Rule 60(b) action.  Id. at 25.  Thus, as plaintiff would have it, preclusion would not work a basic unfairness upon the IRS because it had "the opportunity and incentive to litigate these issues in Stonehill" -- and, in fact, it did exactly that.  Id. at 29. Plaintiff concludes, then, that because the Service's Exemption 5 assertion here simply references typical civil litigation privileges, that FOIA exemption is not available because the district court in California has already decided that those privileges do not apply to these documents.

       Although it appears that plaintiff has stated a persuasive case for collateral estoppel, the IRS maintains that she cannot meet the threshold requirement for preclusion.[5]  The issue raised in the Rule 60(b) proceeding, according to the IRS, was not the same as the one presented here. Def.'s Opp'n at 7.  Indeed, the IRS insists that characterizing the two issues as the same would so "swell the concept of 'issue' . . . that the term [would] become[] virtually synonymous with 'demand for relief.'"  Id. (citing North v. Walsh, 881 F.2d 1088, 1095 (D.C. Cir. 1989)) (internal quotation marks omitted).  In essence, the IRS contends (somewhat simplistically) that because the attorney work product and attorney-client privileges were initially litigated in the context of a motion to compel in the Rule 60(b) proceeding, the present issue is not the same because this is a FOIA case.

       The IRS acknowledges that plaintiff's "demands for relief may be similar" in both

_____

       [5] The IRS does not appear to dispute plaintiff's contention that the district court's order on plaintiff's motion to compel amounts to a "final" order for these purposes.

instances, but it nevertheless contends that "FOIA is 'animated' by different policies than those informing the rules governing civil discovery in the federal courts." Id. (citing Horsehead Industries, Inc. v. EPA, 999 F. Supp. 59, 59 (D.D.C. 1998)).  That may be true, but the Court fails to see how that is relevant to the collateral estoppel analysis here.  For preclusion purposes, it makes no difference that FOIA and Rule 26 may not address the same underlying policy concerns; instead, the pertinent question is whether the previously litigated issue is the same. The IRS's argument -- that the two issues are distinct because the Rule 60(b) case involves plaintiff's "underlying federal tax liability," id. at 8, and this case involves a FOIA document request -- is misguided.  The scope of Exemption 5 (in this context, at least) is coextensive with the scope of the attorney work product and attorney-client privileges, and hence a direct holding on the application of those privileges in a prior proceeding addressing the same documents amounts to the "same issue" for purposes of collateral estoppel.

The authority cited by the IRS does not aid its argument here.  To begin with, the Service relies on Playboy Enterprises, Inc. v. Dep't of Justice, 677 F.2d 931 (D.C. Cir. 1982), for the proposition that the standards for disclosure can differ between FOIA and Rule 26 discovery.  Id. at 936 ("That for one reason or another a document may be exempt from discovery does not mean that it will be exempt from a demand under FOIA.").  That general rule is, of course, correct.  Be that as it may, however, the asserted FOIA Exemption 5 in this instance mirrors the Rule 26 discovery rules; indeed, the exemption is written to parallel civil discovery privileges. Similarly, North v. Walsh, 881 F.2d 1088 (D.C. Cir. 1989), is also inapposite.  In North, the D.C. Circuit explained that "because the factors determinative of [appellant's] two efforts to obtain documents are different -- relevance and need in one case, statutory exception in the other -- the

issues are not the same."  <u>Id.</u> at 1094.  But the "relevance" determinations that were at issue in

<u>North</u> have no application here.  It is entirely correct to say that a document withheld from

discovery because it is irrelevant to the civil case is not necessarily exempt from FOIA

disclosure.  That simply reflects the fact that FOIA does not have a relevance threshold.  So, too,

the absence of a demonstrable need for a document may be a basis for sustaining a qualified

privilege in civil discovery, but would not be material to an Exemption 5 analysis.  But those

distinctions have no bearing here.  In this case, the district court in California did not rely on

considerations of relevance or need, but instead made a decision on the privilege claims

employing the same criteria for review that are applied under Exemption 5.

Plaintiff has aptly framed the issue here.  For FOIA purposes, she argues that "the issue in

this proceeding is whether documents withheld by the Government based on claims of attorney-

client privilege and attorney work product doctrine would be available to the Plaintiff 'by law . . .

in litigation with the agency.'" Pl.'s Reply at 8 (quoting <u>EPA v. Mink</u>, 410 U.S. 73, 85-86

(1973)).  The Court agrees.  And the district court has already determined that plaintiff <u>is</u> entitled

to those documents in litigation with the IRS, rejecting the same privilege claims now asserted

through Exemption 5.  Hence, this Court is satisfied that the issues raised are the same for

purposes of collateral estoppel.

Turning to the second element of collateral estoppel, the IRS asserts that the district court

"never specifically addressed the actual merits of the claims of privileges and whether the

documents were properly withheld under the attorney client privilege and work product

doctrine." <u>Id.</u> at 9.  That is incorrect.  The district court specifically addressed documents

withheld by the IRS under "the work product doctrine or attorney-client privilege" and

"conclude[d] that the government must turn over [those] documents," including "notes given to, or taken by, government counsel." Pl.'s Mot. Ex. 27 at 8. It is difficult to conceive how the Service can seriously contend that the district court did not decide the merits of the privileges. Indeed, the IRS produced documents to plaintiff in respond to the district court's order -- documents that were, in fact, initially withheld as "privileged." <u>See</u> Pl.'s Mot. Ex. 29. It is hard to see why the IRS would have taken that step if it was not ordered to do so, particularly since the very act of disclosure would otherwise waive the asserted privilege. <u>See</u> <u>In re Grand Jury</u>, 475 F.3d 1299, 1305 (D.C. Cir. 2007) (explaining that disclosure of supposedly privileged documents to third-parties, including mere inadvertent disclosure, waives the privilege). In fact, as plaintiff correctly points out, the IRS effectively admitted this point in a letter to the district judge in the Rule 60(b) case that contained the following assertion: "*Pursuant to your previous rulings*, the Government did not make redactions on the 11 documents produced on April 14, 2006 based on the attorney-client privilege or the work product privilege, although many of the documents are clearly privileged."

Pl.'s Reply Ex. 2 (emphasis added).

The IRS does not dispute that plaintiff has satisfied the third prong of the collateral estoppel criteria. The Court notes, in any event, that there is no injustice created by applying preclusion here because, as plaintiff correctly notes, this exact issue has been fully and fairly litigated before the district court in the Rule 60(b) proceeding. Thus, plaintiff has met the requirements of collateral estoppel regarding the documents as to which the government previously asserted the attorney work product and attorney-client privileges. The IRS cannot withhold those documents on the basis of those privileges in this case pursuant to Exemption 5,

and the Court will therefore grant plaintiff's cross-motion for summary judgment on this point.

But that does not end the inquiry. As plaintiff notes, the IRS has now asserted the "attorney-work product doctrine as the basis for withholding 48 documents that were previously withheld in <u>Stonehill</u> based only on the attorney-client privilege."[6] Decl. of Robert Heggestad ¶ 44. The Service is <u>not</u> precluded by collateral estoppel from arguing that those forty-eight documents are privileged under the attorney work product doctrine because that issue was not litigated in the previous proceeding. As to those documents, plaintiff's only plausible procedural argument -- that is, aside from the merits of the privilege claim itself -- is waiver.

## II.    Waiver

According to plaintiff, the IRS has asserted "the deliberative process privilege as the basis for withholding one-hundred and seventy-two (172) documents in this proceeding." <u>Id.</u> ¶ 43. In addition to the new work product privilege claims described above, the Service has also asserted attorney work product doctrine "as the basis for withholding 681 documents that were not withheld based on attorney-work product doctrine in the original District Court litigation." <u>Id.</u> ¶ 44. Finally, the IRS now asserts FOIA Exemption 3, in conjunction with 26 U.S.C. § 6103, as the basis for withholding "157 documents previously withheld in the <u>Stonehill</u> litigation based only on attorney-work product and/or attorney-client privilege." <u>Id.</u> ¶ 45. In short, the government is asserting new and different privileges in response to the FOIA request that it did

---

[6] Indeed, one might wonder why plaintiff is attempting to reacquire many of the same documents that she should have already received in response to the Rule 60(b) motion to compel order. The short answer is that FOIA, unlike Rule 26, does not permit relevance redactions and plaintiff objects to many of the relevance redactions and withholdings made by the IRS in that proceeding. <u>See</u> Heggestad Decl. ¶ 42. In fact, plaintiff complained to the district court in California that the IRS was not complying in good faith with that court's discovery order. <u>Id.</u> ¶ 40. Presumably, plaintiff feels that she will have better luck through FOIA.

not raise with respect to some of those same documents in the Rule 60(b) proceeding. Plaintiff

argues that such new privilege assertions are impermissible because the government waived

those claims by failing to raise them in the initial <u>Stonehill</u> action. The IRS disputes that

contention, arguing principally that because the two proceedings are "entirely separate," Def.'s

Opp'n at 10, the waiver rule does not apply. After careful consideration, the Court concludes that

the IRS is correct.

       The crux of plaintiff's argument here is that the IRS was "required to assert all

exemptions at the same time in the original District Court proceedings," Pl.'s Reply at 9, which

has undeniably not occurred in this case. There is some force to plaintiff's argument. As she

correctly points out, although the two proceedings are indeed entirely separate, the "issues in

both" are nevertheless the same. <u>Id.</u> Moreover, none of the privilege claims that the government

advances for the first time in this case are unique to FOIA. That is, they were all theoretically

available to be asserted by the IRS in the Rule 60(b) proceeding. And the animating principle

behind the waiver rule, as plaintiff would have it, is "the same regardless of whether the original

District Court proceeding occurs in FOIA litigation or civil discovery litigation." <u>Id.</u>

       The trouble with plaintiff's argument, however, is that it is not supported by any legal

authority from this circuit or elsewhere. Plaintiff cites to various cases that hold that the

government is required to raise all of its FOIA exemptions at once or risk waiving them. <u>Id.</u>; <u>see,

e.g.</u>, <u>Maydak v. U.S. Dep't of Justice</u>, 218 F.3d 760, 764 (D.C. Cir. 2000). But, tellingly, all of

those cases involve either FOIA proceedings where an agency sought to add fresh exemptions

following an initial adverse ruling in the case (or changed circumstances) or instances where the

government attempted to rely on new FOIA exemptions for the first time on appeal. <u>See, e.g.</u>,

Maydak, 218 F.3d at 769 (declining to remand the case to permit the government to rely on fresh exemptions that it "declined . . . to raise . . . the first time around"); Washington Post Co. v. U.S. Dep't of Health & Human Servs., 759 F.2d 205, 208 (D.C. Cir. 1986) (rejecting the government's capacity to raise a new FOIA exception on remand to the district court); Ryan v. Dep't of Justice, 617 F.2d 781, 792 (D.C. Cir. 1980) (same); Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 779-80 (D.C. Cir. 1978) (refusing to allow the government to raise new exemptions for the first time on appeal), overruled on other grounds by Crooker v. ATF, 670 F.2d 1051, 1053 (D.C. Cir. 1981). None of those situations are presented by this case. Instead, this proceeding represents the first time that the IRS was able to raise any FOIA exemption as a basis for withholding documents.[7]

Recognizing that fact, plaintiff nevertheless takes the IRS to task for not citing "any cases that limit the application of the general waiver rule to District Court proceedings in which the underlying litigation was based on FOIA." Pl.'s Reply at 9 n.27. But that observation, while true, misses the mark. Indeed, plaintiff has not cited any cases that indicate that the FOIA waiver rule does apply to prior proceedings wholly independent of FOIA. And it is plaintiff's burden, not the government's, to evince precedent to support her waiver argument. She has not done so, and for good reason -- the Court is aware of no authority supporting the somewhat illogical position that the government has waived FOIA exemption claims because it failed to raise them in earlier non-FOIA proceedings.

Because plaintiff has not demonstrated that the waiver rule applies outside of the FOIA

---

[7] The Court, as previously stated, recognizes that the asserted exemptions in this case are not unique to FOIA. Nevertheless, the "general waiver rule" relied upon by plaintiff contemplates a scenario where the government attempts to raise fresh exemptions in a second, or the same, FOIA proceeding -- either on remand, on appeal, or in other FOIA litigation -- rather than in a separate (but related) civil action, as here.

context, the Court cannot accept her argument here.  Moreover, plaintiff has not challenged the merits of these asserted exemptions in this proceeding: her cross-motion for summary judgment rests entirely upon the procedural waiver argument.[8]  Consequently, since the Court will deny plaintiff's cross-motion for summary judgment with respect to the "waiver" documents, the IRS's motion for summary judgment with respect to these withholdings is not otherwise opposed by plaintiff.  Thus, the Court will grant the IRS's motion on those points.

### III.    Exemptions 6 and 7

That brings us to the final issue presented.  The IRS has withheld certain documents on the basis of Exemptions 6 and 7(c).  Plaintiff contends that those withholdings are inappropriate because the Service has failed to "identify any substantial privacy rights to justify the withholding of the name of an IRS agent who was the recipient of a memorandum forwarded by FBI agent Robert Hawley . . . on October 31, 1962."[9]  Pl.'s Mot. at 39.  According to plaintiff, the policy reasons underpinning Exemptions 6 and 7(c) -- namely the protection of "third parties such as subjects, witnesses and informants mentioned in law enforcement records," id. at 40 -- do not justify redacting the name of an "IRS Revenue Agent."  Id.  In response, the IRS argues that the revenue agent has a legitimate and cognizable privacy interest.  Moreover, according to the IRS

---

[8] Nor can plaintiff rely on the application of issue preclusion here to bar the IRS's privilege assertions.  That doctrine requires an issue to have been fully litigated in a prior proceeding.  See, e.g., Martin v. Dep't of Justice, 488 F.3d at 454.  As discussed above, the application of these privileges to these particular documents was not litigated in the initial Rule 60(b) litigation.

[9] In fact, the IRS has withheld additional information under these two exemptions, but according to plaintiff the balance of the redacted information, with the exception of "information related to the First National Bank in Tennessee," has actually "previously been released to Plaintiff."  Pl.'s Mot. at 39.  Thus, it is only the issue pertaining to the redacted IRS agent's name that is still contested.

the public has little, if any, interest in the name of a particular revenue agent.

Exemption 6 is "generally thought to protect intimate personal details the disclosure of which would be likely to cause embarrassment." Ripskis v. HUD, 746 F.2d 1, 3 (D.C. Cir. 1984). As the D.C. Circuit has explained:

> To determine whether release of a file would result in a clearly unwarranted invasion of personal privacy, [courts] must balance the private interest involved (namely, "the individual's right of privacy") against the public interest (namely, "the basic purpose of the Freedom of Information Act," which is "to open agency action to the light of public scrutiny").

Horowitz v. Peace Corps, 428 F.3d 271, 278 (D.C. Cir. 2005). Thus, the first step is to identify the privacy interest (if any) that the IRS agent has at stake here and whether disclosure of this information would amount to a clearly unwarranted invasion of that interest. Then the Court must balance that interest against the public's right to receive that information.[10]

Exemption 7(c) is closely related to Exemption 6. There are two distinguishing factors, however, neither of which is particularly relevant to this case. First, Exemption 7 in general applies only to information compiled for "law enforcement purposes." See 5 U.S.C. § 552(b)(7). Here, the IRS contends -- and plaintiff does not dispute -- that the information in question constitutes material compiled for "law enforcement purposes" because it was created during the course of the joint FBI and IRS investigation of Stonehill and his business associate. Def.'s Third Mot. for Summ. J. at 10. The second way that Exemption 7(c) differs from Exemption 6 is that Exemption 7(c) sets a slightly lower threshold for withholding. Specifically, while Exemption 6 requires a "clearly unwarranted invasion of personal privacy" to qualify for withholding,

---

[10]    Plaintiff does not appear to contest that the documents at issue here constitute "personnel" (or similar) files, which is a threshold requirement for Exemption 6. See 5 U.S.C. § 552(b)(6).

Exemption 7(c) requires only that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6) - (b)(7). The addition of the reasonable expectation language, coupled with the omission of the term "clearly," in Exemption 7(c) signals a somewhat lower bar for withholding material, but that distinction does not ultimately matter here. As explained below, because the Court concludes that the IRS has not identified any cognizable privacy invasion -- "clearly unwarranted" or otherwise -- the analysis is no different under Exemptions 6 and 7. And because Exemption 7(c) also requires courts to balance privacy interests against the public interest in disclosure, see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 776 (1989), the Court will analyze both asserted exemptions under the same framework. This conclusion is bolstered by the fact that the IRS itself has not argued that there is any real distinction between the privacy dimensions of Exemptions 6 and 7(c) in this case.

    The IRS insists that the revenue agent has a substantial privacy interest at stake here for the generic reasons that disclosure "could cause harassment and/or undue embarrassment or could result in undue public attention which would constitute an unwarranted invasion of personal privacy." Def.'s Opp'n at 16. In fact, the Service has offered little more than bare conclusory assessments that "[p]ublic disclosure of the names of . . . an agent with the IRS . . . would constitute an invasion of the individual['s] personal privacy." Def.'s Third Mot. for Partial Summ. J. at 9. Plaintiff attacks the IRS's contention in two ways. To begin with, she cites to Iglesias v. CIA, 525 F. Supp. 547 (D.D.C. 1981), to support the contention that the policy reasons underlying Exemptions 6 and 7(c) do not "apply to government employees involved in the investigation." Id. at 563. In that case, the court explained that "[government employees] should

-18-

not be able to hide behind the FOIA in an effort to keep secret the . . . investigatory process." Id. (quoting Canadian Javelin v. SEC, 501 F. Supp. 898, 904 (D.D.C. 1980)).  The court believed that because the government employees in that case had not been accused of wrong-doing, any privacy concerns relating to personal or embarrassing information were mitigated.  Id.  Moreover, because their "continued cooperation [was] not at stake," unlike, for instance, private citizens cooperating with a government investigation, the court saw no harm in ordering the disclosure of the employees' names.  Id.  Plaintiff asserts that the same logic applies to the IRS agent's name in this case.  Pl.'s Mot. at 40.

Plaintiff's second issue with the Service's privacy assertion here is simply that the names of other "IRS agents receiving information from Hawley on May 28, 1963 and in undated correspondence forwarding a June 4, 1963 memorandum have not been redacted."  Id. (emphasis added).  Thus, because the "names of IRS agents involved in the Stonehill case have been released in literally thousands of documents produced by the IRS," plaintiff cannot identify any reason (and the Service has not offered one) why the name of this particular agent should now be redacted.  Id. at 41.  This point alone forms a powerful rebuttal to the IRS's privacy assertion, and the Service has not provided a satisfactory response.  In short, the government offers no explanation as to why disclosure of this particular agent's name would cause embarrassment, undue harassment, etc.  Although the Service is correct that "information need not be intimate or embarrassing to qualify for protection," Def.'s Opp'n at 8 (citing Dep't of State v. Washington Post Co., 456 U.S. 595, 600 (1982)), and that privacy interests have been "found to exist in a wide variety of circumstances," id. at 10, it offers no explanation whatsoever as to why this case presents one of those identified circumstances.  Simply put, if the government's bare assertion

that a protected privacy interest is involved -- and that is all that is offered in this case -- is sufficient, then the FOIA privacy exemptions could effectively swallow the general rule favoring disclosure. The Court rejects that result and thus concludes that the IRS has not demonstrated that there is a sufficient privacy interest in the IRS agent's name for purposes of Exemptions 6 and 7(c) in the circumstances presented here, including release of numerous other agents' names in documents from the same period more than 45 years ago.

As for balancing the public's interest in disclosure against the individual's right to privacy, that inquiry tips in favor of plaintiff as well. The IRS correctly notes that the Supreme Court has held that the requesting party must demonstrate a public interest that closely relates to "the basic purpose of FOIA, which is to open agency action to the light of public scrutiny." Def.'s Third Mot. for Summ. J. at 11 (citing Reporters Comm. for Freedom of the Press, 489 U.S. at 772). The requester may not, as the Supreme Court put it, rely solely on the subjective "purpose for which the document" will be used by the requester. Reporters Comm., 489 U.S. at 772. As the Service would have it, the name of the agent at issue here "does little to shed light on an agency's performance of its statutory duties." Def.'s Opp'n at 14. Thus, according to the IRS, there is "little or no benefit to the public" in disclosure. Id. at 15.

Plaintiff responds that "the public interest [in disclosure] is significant" in this instance because she has demonstrated that there has been "'more than a bare suspicion' of official misconduct." Pl.'s Mot. at 40. Although that argument seems uncomfortably close to a subjective purpose, there is another cognizable interest here that inures to the public more generally. In Iglesias, the court explained that there is a "strong[] public interest in disclosing the names of employees and agents who worked on [a] case since they may be able to provide

-20-

valuable information in the context of a related civil suit." 525 F. Supp. at 563.  That benefit

runs to the public at large and falls squarely within the purview of the animating principles

behind FOIA.  The Supreme Court has repeatedly and emphatically stated that FOIA exemptions

are to be construed narrowly to conform with the statute's broad policy of disclosure.  See, e.g.,

Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 7-8 (2001); FBI v.

Abramson, 456 U.S. 615, 630 (1982).  Against that backdrop, the Court concludes that the

public's interest in disclosure here outweighs the very limited privacy interest that might exist in

the identity of IRS agent.  Thus, the Service may not withhold this information on the basis of

FOIA Exemptions 6 or 7(c).  Accordingly, the Court will grant plaintiff's motion for summary

judgment on this point.

## CONCLUSION

For the foregoing reasons, the Court will grant the IRS's various motions for summary

judgment in part and deny them in part, as well as grant in part and deny in part plaintiff's cross-

motion for summary.  A separate Order accompanies this Memorandum Opinion.


                                                    /s/
                                            JOHN D. BATES
                                        United States District Judge


Date:  January 10, 2008


-21-