UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULINE STONEHILL,

    Plaintiff,

    v.

INTERNAL REVENUE SERVICE

    Defendant.

Civil Action No. 06-0599 (JDB)

## MEMORANDUM OPINION

It has now been more than sixty years since the events that form the foundation of this Freedom of Information Act ("FOIA") case. In 1962, local authorities raided Henry S. Stonehill's[1] businesses in the Philippines, leading the IRS to bring a civil tax case against him and his associate. Almost two decades went by before the IRS obtained a $17.6 million judgment against the men. After another almost-two decades, Stonehill filed a FOIA request seeking documents related to the raids to support his mission to reverse that tax judgment. Another decade and another FOIA request later, this Court in 2008 granted partial summary judgment to both Stonehill and the IRS on some document-withholding claims and to the IRS on the sufficiency of its search. Stonehill v. I.R.S., 534 F. Supp. 2d 1 (D.D.C. 2008). Now, almost seventeen years since that judgment,

---

[1] Pauline Stonehill, Henry Stonehill's wife and co-executor of his estate, became the plaintiff in this litigation when Henry died in 2002. Stonehill v. I.R.S., 534 F. Supp. 2d 1, 2 n.1 (D.D.C. 2008). Pauline then died in 2023. Statement of Fact of Death [ECF No. 73-2] at 1. Accordingly, Dr. Patrick Lenz moved to substitute himself as plaintiff under Federal Rule of Civil Procedure 25, asserting himself co-executor of Henry's estate. Mot. for Substitution of Parties [ECF No. 73] at 1. In opposition to the motion, the IRS raises the same arguments that the National Archives and Records Administration ("NARA") did when opposing Dr. Lenz's motion to substitute in Stonehill v. Nat. Archives & Recs. Admin. ("NARA"), Civ. A. No. 22-3391 (CJN), 2024 WL 4286105 (D.D.C. Sept. 25, 2024). See generally Def.'s Resp. in Opp'n to Pl.'s Mot. to Substitute Parties [ECF No. 79]. In that case, the judge found NARA's arguments unavailing and granted Lenz's motion. NARA, 2024 WL 4286105, at 5–8. This Court agrees and grants Dr. Lenz's motion to substitute for the same reasons. See id.; see also First Am. Compl. for Inj. Relief ("Compl.") [ECF No. 12] at 2 ("Plaintiff Pauline Stonehill is the Co-executor . . . of the Estate of Harry S. Stonehill."); Def.'s Answer [ECF No. 6] at 1–8 (not raising the issue of whether an estate has statutory standing under FOIA).

1

Stonehill moves to set it aside under Federal Rule of Civil Procedure 60(b)(6) and this Court's inherent powers. Because neither avenue entitles Stonehill to such extraordinary relief, this Court denies the motion.

## BACKGROUND

### I. Factual Background

The facts underlying this case are well documented by this Court and others. See, e.g., Stonehill, 534 F. Supp. 2d at 3–6; Stonehill v. U.S. Dep't of Just. Crim. Div., Civ. A. No. 22-311 (JEB), 2023 WL 4685511, at *1–2 (D.D.C. July 21, 2023); Stonehill v. Nat. Archives & Recs. Admin. ("NARA"), Civ. A. No. 22-3391 (CJN), 2024 WL 4286105, at *1–2 (D.D.C. Sept. 25, 2024); Stonehill v. I.R.S. ("Stonehill II"), Civ. A. No. 19-cv-3644 (RDM), 2021 WL 1092166, at *1–2 (D.D.C. Mar. 22, 2021); Stonehill v. I.R.S., 558 F.3d 534, 536 (D.C. Cir. 2009) (collecting opinions relating to the civil tax case against Stonehill). What matters for the disposition of the instant motion is the ongoing dispute over eighty-six boxes of responsive documents.[2]

In 1998 and 2001, Henry Stonehill filed identical FOIA requests with the IRS seeking documents related to him and his associate. Stonehill, 534 F. Supp. 2d at 2–3. In its initial response to those requests, the IRS identified only eight boxes of responsive documents. Decl. of Richard D. Fultz, June 5, 2005 [ECF No. 77–11 at 24 of 118] ("Fultz Decl.") ¶¶ 2–3. Yet upon review of the eight boxes, the IRS found an SF-135, a form NARA uses to record its transmission and receipt of agency records. See Email from Mae J. Lew to Richard D. Fultz (Dec. 4, 2003) [ECF No. 77–4 at 8 of 74] ("Lew Email"); Recs. Transmittal & Receipts, SF-135, Nat'l Archives,

---

[2] The IRS attorneys' declarations submitted in this case "were inconsistent as to whether the IRS had located 82 out of 84 boxes or 84 out of 86," but "the parties here seem to have settled on the 86 figure." Stonehill II, 2021 WL 1092166, at *1 n.1; Pl.'s Corrected Mem. in Supp. of Mot. for Relief from J. Pursuant to Rule 60(b)(6) & the Ct.'s Inherent Power [ECF No. 77-3] ("Mot.") at 36; Def.'s Resp. in Opp'n to Pl.'s Mot. for Relief from J. Pursuant to 60(b)(6) & Ct.'s Inherent Powers [ECF No. 78] at 8 n.4.

https://perma.cc/934S-4XDX. The SF-135 stated that in 1981, the IRS sent eighty-six boxes of records related to the IRS's civil tax case against Stonehill to the Washington National Records Center ("WNRC"). Lew Email; see also Fultz Decl. ¶ 5. But when the IRS went to the WNRC in 2001 to review those boxes, they found only eighty-four boxes. Lew Email; Fultz Decl. ¶ 5. The WNRC did not have boxes 17 and 83 nor any record of their location, so the IRS and NARA deemed them missing. See Lew Email; Fultz Decl. ¶¶ 5–6; Stonehill II, 2021 WL 1092166, at *1.

## II.     Procedural History

This Court's involvement in the Stonehill saga began in 2006 when Stonehill filed a complaint alleging that the IRS improperly withheld documents in response to the 1998 and 2001 FOIA requests. See generally First Am. Compl. for Inj. Relief [ECF No. 12] ("Compl."). In response to the complaint, the IRS produced many additional documents, but it also withheld many others pursuant to various privileges and FOIA exemptions. Stonehill, 534 F. Supp. 2d at 4–5 (explaining the IRS's justifications for withholding); see also 5 U.S.C. § 552(b). Stonehill, in turn, contested the withholdings. See Stonehill, 534 F. Supp. 2d at 5. Eventually, the IRS moved for summary judgment on the issue of whether it had conducted a sufficient search for responsive documents, as well as on whether it properly withheld certain documents.[3] Stonehill opposed the IRS's motions and filed a cross-motion for summary judgment. Pl.'s Opp. to Def.'s Mot. for Partial Summ. J. & Cross-Mot. for Partial Summ. J. [ECF No. 51]. Nowhere in her opposition, motion, or memorandum did Stonehill contest whether the IRS's search was reasonable. See id.

---

[3] The IRS filed five motions for partial summary judgment. Stonehill, 534 F. Supp. 2d at 3. The first motion argued that summary judgment was appropriate on the issue of reasonable search, see Def.'s Mot. for Partial Summ. J. [ECF No. 27] at 8–16, as well as on issues of withholding certain documents, see id. at 16–35. The motions that followed incorporated by reference the arguments as to reasonable search and addressed the withholding of other documents. See generally Def.'s Second Mot. for Partial Summ. J. [ECF No. 33]; Def.'s Third Mot. for Partial Summ. J. [ECF No. 36]; Def.'s Fourth Mot. for Partial Summ. J. [ECF No. 39]; Def.'s Fifth Mot. for Partial Summ. J. [ECF No. 42].

3

at 22–43.  She only contested and moved for summary judgment on the issue of the propriety of the IRS's withholdings.  Id.

On January 10, 2008, this Court granted in part and denied in part both the IRS's and Stonehill's motions for summary judgment.  Stonehill, 534 F. Supp. 2d at 13.  On Stonehill's motion, this Court agreed that the IRS was collaterally estopped from asserting the attorney-client privilege over certain documents and that the IRS could not withhold the name of an IRS agent pursuant to particular FOIA exemptions.  See id. at 6–9, 10–13; Order Granting in Part & Den. in Part the IRS's Various Mot. for Summ. J. & Granting in Part and Den. in Part Pl.'s Cross-Mot. for Summ. J. [ECF No. 64] ("Order") at 1–2.  This Court granted the IRS's motions and denied Stonehill's motion in "all other respects," which included rejecting Stonehill's argument that the IRS had waived FOIA Exemptions 6 and 7(c)[4] by not raising the exemptions in the parallel, ongoing civil tax litigation.  Order at 2; Stonehill, 534 F. Supp. 2d at 10–13.  Stonehill then appealed the latter, but the D.C. Circuit affirmed this Court's grant of summary judgment. Stonehill, 558 F.3d at 542.

Now, in 2024, Stonehill seeks relief from this Court's 2008 judgment.  In her motion for relief under Rule 60(b)(6) and this Court's inherent powers, Stonehill argues that the IRS committed fraud on this Court by deeming boxes 17 and 83 missing, because it knew the boxes were never lost and was keeping the boxes hidden in a safe to avoid production.  See Pl.'s Corrected Mem. in Supp. of Mot. for Relief from J. Pursuant to Rule 60(b)(6) & the Ct.'s Inherent Power [ECF No. 77-3] ("Mot.") at 1–4.  Stonehill argues the IRS and its attorneys either intentionally or recklessly made false statements and introduced false evidence to this Court,

---

[4] FOIA Exemptions 6 and 7(c), respectively, exempt records "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and "records . . . compiled for law enforcement purposes . . . [that] could reasonably be expected to constitute an unwarranted invasion of personal privacy," id. § 557(b)(7)(C).

4

including two IRS attorneys' declarations that were part of the summary judgment record. See id. at 1–14; see generally Lew Email; Fultz Decl. To support her argument that the IRS knew the boxes were not missing, Stonehill primarily relies on documents she obtained in FOIA litigation that followed this Court's 2008 judgment. Id. at 1. These documents include: (1) a March 31, 2022, declaration by IRS attorney Helene R. Newsome stating the acting director of the NARA informed Newsome that, in 2021, NARA conducted a "manual check . . . of each numbered [Stonehill] box" and found "that Boxes 17 and 83 . . . were stored in their appropriate locations at the WRNC" and that NARA had no record that the two boxes were ever missing, Second Decl. of Helene R. Newsome [ECF No. 77-12 at 27 of 94] ("Newsome Declaration") ¶ 76;[5] and (2) NARA refiling labels that show that a box numbered 17 was refiled with NARA in 2013 and a box numbered 83 was refiled with the agency in 2009 and 2013, see E-mail from Brewer Thompson, Deputy FOIA Officer/Archivist, NARA, to Robert E. Heggestad (May 24, 2023) [ECF No. 77-21] at 35 of 128, 123–24 of 128.[6]

## ANALYSIS

Stonehill moves for relief from judgment under both Rule 60(b)(6) and this Court's inherent power to set aside a judgment for fraud on the court. But the former is untimely and Stonehill fails to establish she is entitled to the latter.

### I.    Federal Rule of Civil Procedure 60(b)(6)

---

[5] This declaration was submitted in Stonehill II, which centered around a FOIA request Stonehill made for documents related to the IRS's responses to the 1998 and 2001 FOIA requests. See 2021 WL 1092166 at *2. Notably, the judge in that case determined that there was no "evidence of lying by the IRS or efforts by Department of Justice lawyers or individuals working at the IRS to hide facts or engage in fraud on the Court" regarding boxes 17 and 83. Tr. of Mot. Hr'g at 15, Stonehill II, 2021 WL 1092166 [ECF 78-1] at 15:17–21.

[6] These labels were uncovered in NARA, 2024 WL 4286105, which centered around Stonehill's FOIA request for documents related to NARA's "storage transfer, and review of IRS and DOJ records about the Stonehill proceedings." Id. at *1 (internal quotation marks omitted).

Federal Rule of Civil Procedure 60(b) specifies five reasons a court may set aside a judgment: (1) "mistake . . . or excusable neglect," (2) "newly discovered evidence," (3) "fraud . . . misrepresentation, or misconduct by an opposing party," (4) "the judgment is void," and (5) "the judgment has been satisfied." Fed. R. Civ. P. 60(b)(1)–(5). Rule 60(b)(6) then adds a sort of catchall, permitting a court to set aside a judgment for "any other reason that justifies relief."

Here, Stonehill alleges she's entitled to relief from judgment because the IRS knowingly or recklessly submitted false testimony and made false statements to this Court. These allegations sound in "fraud . . . misrepresentation, or misconduct by an opposing party." Rule 60(b)(3). Yet a Rule 60(b)(3) motion "must be made . . . no more than a year after the entry of the judgment." Rule 60(c)(1). Given that the judgment here was entered almost 17 years ago, this deadline has long passed.

Likely because a motion under Rule 60(b)(3) would be untimely, Stonehill moves under Rule 60(b)(6). Unlike Rule 60(b)(3) motions, Rule 60(b)(6) motions need only be made "within a reasonable time." Rule 60(c)(1). So Stonehill's motion could be timely.[7] As the IRS rightly contends, however, this tried-and-true workaround fails. Def.'s Resp. in Opp'n to Pl.'s Mot. for Relief from J. Pursuant to 60(b)(6) & Ct.'s Inherent Powers [ECF No. 78] at 15–16. "[C]ourts have universally interpreted 'other'" in Rule 60(b)(6) "to mean other than the reasons specified in subsections 60(b)(1)–60(b)(5)." Baltia Air Lines, Inc. v. Transaction Mgmt., Inc., 98 F.3d 640, 642 (D.C. Cir. 1996) (quoting Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 249 (D.C. Cir. 1987)). Otherwise, "the time limitations on motions under 60(b)(1)–(3)" would be rendered "meaningless." Id. Hence, because Stonehill seeks "relief for reasons covered

---

[7] But see Carvajal v. Drug Enf't Admin., 286 F.R.D. 23, 26–27 (D.D.C. 2012) (explaining that "[i]n this Circuit, courts almost uniformly deny Rule 60(b)(6) motions as untimely when they are filed more than three months after judgment . . . [unless] plaintiff bore no fault for the delay and filed the motion as soon as feasible").

6

by subsection (b)(3), she [i]s not able to rely on subsection (b)(6)." In re Trigee Found., Inc., 318 F. Supp. 3d 304, 308 (D.D.C. 2018). Stonehill's Rule 60(b)(6) motion is equivalent to a Rule 60(b)(3) motion and thus this Court denies it as time-barred. See Khan v. Obama, Civ. A. No. 08-1101 (JDB), 2014 WL 4843907, at *17 (D.D.C. Sept. 2, 2014).

## II.     Fraud on the Court

While Rule 60(b) enumerates reasons for which a court may set aside a judgment, it "does not limit a court's power to . . . set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3); 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2870 (3d ed. 2024) (hereinafter "Federal Practice") ("The power to vacate a judgment that has been obtained by fraud upon the court is inherent in courts."). And, unlike a Rule 60(b) motion, a motion pursuant to a court's inherent powers may be made "at any time" for "after-discovered fraud upon the court." Dausuel v. Dausuel, 195 F.2d 774, 775 (D.C. Cir. 1952); see Bowie v. Maddox, 677 F. Supp. 2d 276, 278 (D.D.C. 2010). Stonehill's motion for relief from judgment pursuant to this Court's inherent powers is thus timely.

But vaulting the timeliness hurdle only forces Stonehill to confront a larger obstacle: the extraordinarily high standard for establishing fraud on the court. Fraud on the court is different than "ordinary fraud." See Bowie, 677 F. Supp. 2d at 278 n.2. It includes only "egregious" conduct that "subvert[s] the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform . . . its impartial task of adjudging cases." Id. at 278 (quoting Synanon Church v. United States, 579 F. Supp. 967, 974 (D.D.C. 1984)); see also Lockwood v. Bowles, 46 F.R.D. 625, 631 (D.D.C. 1969) ("[I]n order to set aside a judgment . . . because of fraud upon the court . . . it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." (citation omitted)). Put

7

differently, "[f]raud upon the court refers only to 'very unusual cases involving far more than an injury to a single litigant.'" Baltia Air Lines, 98 F.3d at 642–43 (quoting Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2870 (1995)). What is more, the fraud must have been committed intentionally, willfully, or recklessly. Bowie, 677 F. Supp. 2d at 279. And the movant must establish all this by "clear and convincing evidence." Id.

Stonehill does not meet this high bar for three separate reasons. To begin, the fraud Stonehill alleges is that the IRS and its attorneys submitted false declarations stating that boxes 17 and 83 were lost and otherwise lied to the Court about those boxes. See Mot. at 61 ("[T]he records produced by NARA and the email correspondence produced by the IRS during recent FOIA litigation[] confirm that the IRS knew that Boxes 17 and 83 were never lost and that [two] . . . [d]eclarations filed by the IRS . . . were false."). But "fraudulent documents, false statements, and perjury . . . do not generally constitute fraud on the court." Davis v. U.S. Dep't of Health & Hum. Servs., 968 F. Supp. 2d 176, 184 (D.D.C. 2013); Baltia Air Lines, 98 F.3d at 642. That is because such acts are considered "fraud between the parties" rather than fraud "directed to the judicial machinery itself." Baltia Air Lines, 98 F.3d at 642; Khan, 2014 WL 4843907, at *19. And that is true even when the acts were committed by a party's attorney. See Davis, 968 F. Supp. 2d at 184 (determining party did not establish fraud on the court when his "principal allegation . . . [wa]s that federal government attorneys" made misrepresentations to the court); More v. Lew, 34 F. Supp. 3d 23, 28, 30 & n.3 (D.D.C. 2014) (similar). Thus, even assuming Stonehill's allegations are true, she still fails to establish fraud on the court.

That raises the second reason that Stonehill's claim of fraud on the court fails: she does not establish the alleged fraud by clear and convincing evidence. The Newsome Declaration and the NARA records she relies upon show, at most, that NARA had a Stonehill box numbered 83 in

8

2009, a box numbered 17 in 2013, and boxes numbered 17 and 83 in 2021. From this, Stonehill concludes that, while this case was occurring from 2006 to 2008, the IRS and its lawyers knew or should have known the boxes originally labeled 17 and 83 were never missing. But these documents are far removed from the IRS and even farther removed from the IRS's conduct in this case. The actions described in the Newsome Declaration and the refiling labels were NARA's, not the IRS's; and, more to the point, the shipments reflected in the labels and the NARA acting director's search of the boxes occurred years after this litigation was terminated. The documents thus do not establish anything about what the <u>IRS and its declarants</u> knew or should have known about the boxes <u>during the course of this case</u>.[8] Indeed, the evidence instead consistently reflects that the IRS only received 84 boxes from NARA in 2001, with boxes 17 and 83 being absent.[9] Second, the IRS provides an at least possible explanation for why there may have been Stonehill boxes numbered 17 and 83 after this case was terminated, but not in 2001: the IRS created two additional boxes, and renumbered all the boxes, after some of the original boxes fell apart. See Email from Natalie McKinney to Mae J. Lew (Jan. 24, 2014) [ECF No. 77–4 at 64 of 74]. In short, Stonehill relies on conclusions and suppositions rather than clear and convincing evidence of intentional, egregious fraud. That's insufficient to establish fraud on the court. See <u>United States v. Est. of Stonehill</u>, 660 F.3d 415, 449 (9th Cir. 2011); Wright & Miller, Federal Practice § 2870.

Finally, Stonehill does not provide evidence that this Court was misled in making the judgment she seeks to set aside. See <u>Davis</u>, 968 F. Supp. 2d at 185. The IRS's averments that

---

[8] This Court also notes that the NARA acting director's statement that NARA <u>did not have records</u> of boxes 17 and 83 being lost does not clearly and convincingly show that the boxes were <u>actually</u> never lost, let alone that the IRS knew or should have known they were not lost during the relevant timeframe. See Email from Christopher Pinkney, NARA Acting Dir., to George Lassiter (Aug. 3, 2015) [ECF No. 77-4 at 70–74 of 74] (explaining that NARA could not confirm box records from before 2009, when NARA began using an electronic record system).

[9] Lew Email; Fultz Decl. ¶ 6; Email from Mae J. Lew to Christopher B. Sterner & Drita Tonuzi (Jan. 23, 2014) [ECF No. 77-4 at 60–62 of 74]; Decl. of Richard D. Fultz, March 16, 2007 [ECF No. 77-11 at 3–7 of 118] ¶ 5; Letter from Caroll Field to Robert E. Heggestad (Nov. 14, 2002) [ECF No. 77-6 at 21–37 of 102].

boxes 17 and 83 were lost at the time of its initial response to the FOIA requests neither influenced nor were relevant to this Court's determinations as to whether the IRS properly withheld responsive documents. Those determinations were based on whether the privileges and FOIA exemptions that the IRS had invoked applied to the documents the IRS actually admitted to finding. See Stonehill, 534 F. Supp. 2d at 6–13. And the statements about boxes 17 and 83 did not impact this Court's grant of summary judgment to the IRS on the issue of reasonable search, either. Stonehill did not contest the IRS's motion on that issue, so the Court granted the motion without needing to address the search for boxes 17 and 83—or for any documents whatsoever. Without any "proof [or] evidence that" the information the IRS allegedly lied about "would . . . have been relevant" to this Court's judgment, the extraordinary step of setting it aside for fraud on the court is not justified. Davis, 968 F. Supp. 2d at 185.

## CONCLUSION

Stonehill's motion for relief from judgment under Rule 60(b)(6) is untimely, and she fails to establish fraud on the court. Accordingly, this Court denies Stonehill's motion and leaves intact the nearly two-decades-old judgment in this case. A separate order consistent with this memorandum opinion shall issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: November 5, 2024